## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRUE THE VOTE, INC.,** | |
| *Plaintiff,* | Civ. No. 13-_____ |
| *v.* | |
| **INTERNAL REVENUE SERVICE, UNITED STATES OF AMERICA, STEVEN T. MILLER**, in his official capacity as Acting Commissioner of the Internal Revenue Service and in his individual capacity, **DOUGLAS H. SHULMAN**, in his individual capacity, **LOIS LERNER**, in her individual capacity, **SUSAN MALONEY**, in her individual capacity, **RONALD BELL**, in his individual capacity, **JANINE L. ESTES**, in her individual capacity, **FAYE NG**, in her individual capacity, and **UNKNOWN NAMED EMPLOYEES OF THE INTERNAL REVENUE SERVICE**, in their individual capacities, | |
| *Defendants.* | |

## Verified Complaint for Declaratory Judgment, Declaratory and Injunctive Relief and Damages

Kaylan L. Phillips (Ind. 30405-84)*
Noel H. Johnson (Wisc. 1068004)*
Zachary S. Kester (Ind. 28630-49)*
ACTRIGHT LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@actrightlegal.org
njohnson@actrightlegal.org
zkester@actrightlegal.org
*Counsel for Plaintiff*


*Pro Hac Vice Motions pending

Cleta Mitchell (D.C. 433386)
3000 K Street NW #600
Washington, DC 20007
(202) 295-4081 (direct)
(202) 431-1950 (cell)
(202) 672-5399 (fax)
cmitchell@foley.com
*Lead Counsel for Plaintiff*

John C. Eastman (Cal. 193726)*
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 (telephone and fax)
jeastman@chapman.edu

## Known Addresses of Parties

**TRUE THE VOTE, INC.,**
7232 Wynnwood Lane
Houston, TX 77008-6041

Civ. No. 13-_____

*Plaintiff,*

*v.*

**INTERNAL REVENUE SERVICE**,
1111 Constitution Avenue, N.W.
Washington, DC 20224

**UNITED STATES OF AMERICA**,
Ronald C. Machen, Jr.
United States Attorney for the District of Columbia,
United States Attorney's Office
ATTN: Civil Process Clerk
555 4th Street, NW
Washington, DC 20530

Eric H. Holder
Attorney General for the United States
Department of Justice
Room B-103
950 Pennsylvania Ave. NW
Washington DC 20530-0001

**STEVEN T. MILLER**, in his official capacity as
Acting Commissioner of the Internal Revenue
Service and in his individual capacity,
1111 Constitution Avenue, N.W.
Washington, DC 20224
(Residential address forthcoming)

**DOUGLAS H. SHULMAN**, in his individual
capacity,
(Residential address forthcoming)

**LOIS LERNER**, in her individual capacity,
6610 Fernwood Ct.
Bethesda, MD 20817

**SUSAN MALONEY**, in her individual capacity,
4753 Summerside Rd.
Cincinnati, OH 45244

**RONALD BELL**, in his individual capacity,
Internal Revenue Service
P.O. Box 2508
Cincinnati, OH 45201
(Residential address forthcoming)

**JANINE L. ESTES**, in her individual capacity,
10 Arbor Cir., #1018
Cincinnati, OH 45255

**FAYE NG**, in her individual capacity, and
Internal Revenue Service
P.O. Box 2508
Cincinnati, OH 45201
(Residential address forthcoming)

**UNKNOWN NAMED EMPLOYEES OF THE
INTERNAL REVENUE SERVICE**, in their
individual capacities,
1111 Constitution Avenue, N.W.
Washington, DC 20224

                                                    *Defendants*.

## Verified Complaint for Declaratory Judgment, Declaratory and Injunctive Relief and Damages

Plaintiff, True the Vote, Inc., by and through its counsel, hereby petitions this Court for a declaratory judgment that it is a tax-exempt organization pursuant to Section 501(a) and (c)(3) of the Internal Revenue Code of 1986, as amended (Title 26, United States Code), and complains against Defendants the Internal Revenue Service ("IRS"), the United States of America, and Steven T. Miller, Douglas H. Shulman, Lois Lerner, Susan Maloney, Ronald Bell, Janine L. Estes, Faye Ng and Unknown Named Employees of the Internal Revenue Service (collectively, "IRS Employees"), on personal knowledge as to those matters with which Plaintiff was personally involved, and on information and belief as to all other matters, as follows:

## Introduction

1.      This action arises out of Defendants' actions and inaction concerning Plaintiff True the Vote, Inc.'s application to the IRS for recognition as a tax-exempt charity pursuant to 26 U.S.C. §§ 501(c)(3), 509(a)(1), and 170(b)(1)(A)(vi).

2.      True the Vote's application for tax-exempt status was filed with the IRS on July 15, 2010 and has been pending for nearly three years. Due to True the Vote's perceived conservative policy positions and affiliation with Tea Party organizations, the IRS and IRS Employees systematically targeted True the Vote's application for additional review and scrutiny, whereby True the Vote was deliberately subjected to numerous unnecessary and burdensome requests for information about its operations and affiliations. Consequently, True the Vote was forced to furnish to the IRS information and documents wholly unnecessary to the determination of True the Vote's tax-exempt status, which were repeatedly accessed and inspected by IRS agents. The processing of True the Vote's application was deliberately delayed

1

and its recognition as a tax-exempt organization has been improperly withheld as a result of Defendants' actions.

3.     Plaintiff brings this action pursuant to 26 U.S.C. § 7428 against Defendant United States of America for a declaratory judgment finding that True the Vote is a tax-exempt charity under 26 U.S.C. §§ 501(c)(3), 509(a)(1), and 170(b)(1)(A)(vi).

4.     Plaintiff brings this action against Defendant United States of America pursuant to 26 U.S.C. § 7431 for the recovery of statutory and/or actual and punitive damages caused by Defendant's willful, unauthorized inspection of Plaintiff's confidential tax return information in violation of 26 U.S.C. § 6103.

5.     Plaintiff brings this action against the IRS and Acting IRS Commissioner Steven T. Miller for declaratory and injunctive relief from violations of Plaintiff's rights of free speech and association under the First Amendment to the United States Constitution.

6.     Plaintiff brings this action against IRS Employees in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) to recover damages resulting from IRS Employees' violations of Plaintiff's rights under the First Amendment to the United States Constitution.

## Jurisdiction and Venue

7.     This Court has jurisdiction under 26 U.S.C. § 7431(a), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2201 (Declaratory Judgment Act).

8.     This Court also has jurisdiction under 28 U.S.C. § 1346(e) because this is an action brought pursuant to 26 U.S.C. § 7428.

9.     Plaintiff meets the qualifying preconditions for such an action in that (a) relief is sought by the organization the qualification or classification of which is at issue, § 7428(b)(1);

(b) the IRS has failed to make a determination with respect to Plaintiff's initial qualification as an organization described in § 501(c)(3), *id*. at (a)(2); (c) Plaintiff has exhausted its administrative remedies, *id*. at (b)(2); and (d) there are actual legal interests of sufficient immediacy to reflect an actual controversy between True the Vote and Defendant the United States of America, *id*. at (a).

10.     Venue is appropriate in this district under 26 U.S.C. § 7428(a).

11.     Venue is also appropriate under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

12.     Defendant United States of America is a proper defendant pursuant to 26 U.S.C. §§ 7431(a)(1) and 1346(e).

13.     This action is being brought within two years after the date of discovery by Plaintiff of the unauthorized inspections described herein. 26 U.S.C. § 7431(d).

14.     Personal jurisdiction over non-resident defendants is proper in this Court because acts giving rise to this Complaint were performed within this forum by other defendants in furtherance of a civil conspiracy engaged in by non-resident and resident defendants aimed at violating the statutory and constitutional rights of Plaintiff and others. (*See infra* ¶¶ 63-67.)

### The Parties

15.     Plaintiff True the Vote, Inc., is a not-for-profit corporation duly created on June 7, 2010 and validly existing under the laws of the State of Texas. True the Vote's current mailing address is in care of its registered agent:

> Catherine Engelbrecht
> 7232 Wynnwood Lane
> Houston, TX 77008-6041

16.     Defendants are the United States of America and the Internal Revenue Service.

3

17.     Defendant Steven T. Miller is the current Acting Commissioner of the IRS. He is responsible for managing, directing, and supervising the activities and executing and implementing the laws and policies of the IRS. He is sued in his official capacity and his individual capacity for acts and omissions occurring in connection with duties performed on the United States' behalf.

18.     At times relevant to this Complaint, Defendant Douglas H. Shulman was the Commissioner of the IRS.  He was responsible for managing, directing, and supervising the activities and executing and implementing the laws and policies of the IRS. He is sued in his individual capacity for acts and omissions occurring in connection with duties performed on the United States' behalf.

19.     Defendant Lois Lerner is the Director of the Exempt Organizations Division of the IRS. She is sued in her individual capacity for acts and omissions occurring in connection with duties performed on the United States' behalf.

20.     Defendant Susan Maloney is an IRS Exempt Organizations Specialist who oversaw the processing of True Vote's application for tax-exempt status. She is sued in her individual capacity for acts and omissions occurring in connection with duties performed on the United States' behalf.

21.     Defendant Ronald Bell is an IRS Exempt Organizations Specialist who oversaw the processing of True the Vote's application for tax-exempt status. He is sued in his individual capacity for acts and omissions occurring in connection with duties performed on the United States' behalf.

22.     Defendant Janine L. Estes is an IRS Exempt Organizations Specialist who oversaw the processing of True the Vote's application for tax-exempt status. She is sued in her

4

individual capacity for acts and omissions occurring in connection with duties performed on the United States' behalf.

23.     Defendant Faye Ng is an IRS Exempt Organizations Specialist who oversaw the processing of True the Vote's application for tax-exempt status. She is sued in her individual capacity for acts and omissions occurring in connection with duties performed on the United States' behalf.

24.     Defendant Unknown Named Employees of the Internal Revenue Service are current and/or former directors, officers, agents, and employees of the IRS who developed, implemented, applied, approved or oversaw the unconstitutional IRS identification, review, and processing criteria and policies described herein. They are sued in their individual capacities for acts and omissions occurring in connection with duties performed on the United States' behalf. The identity of all individual named defendants liable to Plaintiff cannot be completely and accurately ascertained at this time, but will be more fully known after the completion of discovery.

25.     At all times relevant to this Complaint, IRS Employees were acting under color of federal law within the scope of their employment at the IRS.

## Factual Allegations

**True the Vote's Application for Tax-exempt Status**

26.     On June 7, 2010, KSP/True the Vote was duly created as a non-profit corporation under the laws of the State of Texas. (Exhibit B at 20.)

27.     KSP stands for "King Street Patriots," which is True the Vote's 26 U.S.C. § 501(c)(4) affiliate organization. King Street Patriots and True the Vote are separate and distinct entities.

5

28.     On August, 26, 2011, KSP/True the Vote changed its name to True the Vote, Inc.

29.     On July 15, 2010, True the Vote properly filed with the IRS its Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (Form 1023) (hereafter the "Application"). (Exhibit B.)

30.     In a February 15, 2011 letter, sent from the Cincinnati, Ohio IRS office, Defendant Susan Maloney indicated that the IRS needed more information from True the Vote in order to complete the IRS's consideration of True the Vote's Application. (Exhibit C.)

31.     In letters dated March 7, 2011 and March 8, 2011, True the Vote furnished to the IRS the information requested in the IRS's February 15 letter.

32.     On October 12, 2011, True the Vote's Legal Counsel contacted the IRS and its agent, Defendant Ronald Bell, to inquire as to the status of True the Vote's Application. During this phone conversation, Mr. Bell indicated that True the Vote's Application was being overseen by and had been forwarded to the IRS's Washington, D.C. office for additional review, with the Washington, D.C. office having primary approval responsibility.

33.     On November 8, 2011, True the Vote memorialized its October 12, 2011 phone conversation with the IRS and further submitted to the IRS additional information regarding its current and intended activities, together with the legal precedent that establishes the responsibility of the IRS to recognize True the Vote as a charitable and educational tax exempt organization.

34.     In a February 8, 2012 letter, sent from the Cincinnati, Ohio IRS office, Defendant Janine L. Estes indicated that the IRS needed even more information from True the Vote in order to complete the IRS's consideration of True the Vote's Application. (Exhibit D.)

35.     In a letter dated March 20, 2012, True the Vote furnished to the IRS the information requested in the IRS's November 8 letter.

36.     In an October 9, 2012 letter, sent from the Cincinnati, Ohio IRS office, Defendant Faye Ng indicated that the IRS needed still more information from True the Vote in order to complete its consideration of its Application. (Exhibit E.)

37.     In a letter dated Nov. 30, 2012, True the Vote furnished to the IRS the information requested in the IRS's October 9, 2012 letter.

38.     True the Vote has incurred substantial costs in responding to the IRS's burdensome and unnecessary requests for information.

39.     Because the IRS deliberately and unnecessarily delayed the processing of True the Vote's Application, True the Vote was forced to forfeit foundational grants and other fundraising opportunities.

40.     True the Vote has taken, in a timely manner, all reasonable steps to secure a determination from the IRS.

41.     The IRS has failed to make a determination with respect to True the Vote's Application.

42.     True the Vote twice requested hardship status to expedite the processing of its Application.

43.     Attached as Exhibit A is a timeline describing True the Vote's correspondence with the IRS regarding its Application.

44.     It has been more than 270 days since the IRS received a substantially completed application for tax-exempt status from True the Vote.

7

45.     Therefore, under 26 U.S.C. § 7428(b)(2), True the Vote has exhausted its administrative remedies.

46.     True the Vote is a corporation organized and operated exclusively or primarily for a charitable purpose.

47.     As stated in True the Vote's Application and other information furnished to the IRS, True the Vote is a non-partisan charity with the mission of promoting and improving the integrity of the voting process in the United States. Its primary activity is to observe and promote better compliance with election laws and procedures. True the Vote also seeks to educate the public about the current state of election law compliance and procedural inadequacies. True the Vote will work with any person or organization interested in supporting free and fair elections.

48.     No part of True the Vote's earnings inures to the benefit of any private shareholder or individual.

49.     True the Vote does not participate or intervene in partisan political campaigns on behalf of or in opposition to any candidate for public office.

50.     To date, True the Vote has timely filed its IRS Form 990 for the relevant years.

**IRS Policy of Targeting Philosophically-Conservative Applicants for Tax-exempt Status**

51.     Beginning in 2010, and possibly earlier, the IRS and IRS Employees developed and implemented a written and unwritten policy for identifying and subjecting applicants for tax-exempt status to additional review and scrutiny. (This policy, as described more fully throughout this Complaint, is collectively referred to as the "IRS Review Policy").

52.     Under the IRS Review Policy, applications for tax-exempt status filed by organizations whose names, in the view of the IRS and IRS Employees, indicated a conservative

philosophical viewpoint or a viewpoint contrary to that held by the current Administration were subjected to additional review and scrutiny, and deliberate delays in processing.

53.     Under the IRS Review Policy, applications for tax-exempt status filed by organizations that were perceived to hold conservative policy positions or philosophical views contrary to those held by the current Administration were subjected to additional review and scrutiny, and deliberate delays in processing.

54.     Upon information and belief, under the IRS Review Policy, the IRS and IRS Employees engaged in other discriminatory conduct toward applicants for tax-exempt status that were perceived to hold conservative policy positions or philosophical views contrary to those held by the current Administration.

55.     On May 10, 2013, at a meeting of the Exempt Organizations Committee of the Tax Section of the American Bar Association, Defendant Lois Lerner, Director of the Exempt Organizations Division of the IRS, office explained that the IRS had selected applications for tax-exempt status for further review "simply because the applications" "used names like Tea Party or Patriots." Streckfus, EO Tax Journal 2013-82, May 11, 2013, *available in part at* http://electionlawblog.org/?p=50160.

56.     Defendant Lerner further explained,

a.  "That was wrong, that was absolutely incorrect, insensitive, and inappropriate — that's not how we go about selecting cases for further review. We don't select for review because they have a particular name." *Id*.

b.  "The other thing that happened was they also, in some cases, cases sat around for a while. "[The IRS] sent some letters out that were far too broad, asking questions of these organizations that weren't really necessary for the type of application." *Id*.

c.  "[The IRS] went back and looked at questions that had been sent out to folks because some of them were extensive and where the questions weren't necessary we gave the organizations flexibility as to which questions they needed to answer

and gave them more time to answer them. In some cases we told them to just ignore the letter we already sent and sent a new list of questions. In some cases we said we don't need those questions answered. We can deal with your application without responses to those questions." *Id.*

57.     Director Lerner apologized on behalf of the IRS for the way the IRS had handled the applications of the targeted groups. *Id.*

58.     On or around May 14, 2013, the Treasury Inspector General for Tax Administration issued a report entitled "Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review" (hereafter "TIGTA Report"), which reviewed the circumstances surrounding and the nature of the IRS Review Policy. (Exhibit F.)

59.     The TIGTA Report concluded,

The IRS used inappropriate criteria that identified for review Tea Party and other organizations applying for tax-exempt status based upon their names or policy positions instead of indications of potential political campaign intervention.  Ineffective management: 1) allowed inappropriate criteria to be developed and stay in place for more than 18 months, 2) resulted in substantial delays in processing certain applications, and 3) allowed unnecessary information requests to be issued.

(Exhibit F at 2.)

60.     According to the TIGTA Report:

a.   In March and April of 2010, the IRS "Determinations Unit began searching for…requests for tax exemption involving the Tea Party, Patriots, 9/12 and 26 U.S.C. § 501(c)(4) applications involving political sounding names, *e.g.*, 'We the People' or 'Take Back the Country.'" (Exhibit F at 36.)

b.   "By July 2010, Determinations Unit management stated that it had requested its specialists to be on the lookout for Tea Party applications." (Exhibit F at 12.)

c.   "In August 2010, the Determinations Unit distributed the first formal BOLO listing. The criteria in the BOLO listing were Tea Party organizations applying for 26 U.S.C. § 501(c)(3) or 26 U.S.C. § 501(c)(4) status."[1] (Exhibit F at 12.)

---

[1] "BOLO" stands for "Be On The Look Out." (Exhibit F at 6.)

     d.   In January 2012, the IRS's written identification criteria included "'Political action type organizations involved in limiting/expanding government, educating on the constitution and bill of rights, [and] social economic reform/movement.'" (Exhibit F at 36.)

61.     Pursuant to the IRS Review Policy, "the Determinations Unit requested irrelevant (unnecessary) information" from applicants for tax-exempt status that were targeted for additional review and scrutiny. (Exhibit F at 24.)

62.     As detailed by the TIGTA Report, "This created burden on the organizations that were required to gather and forward information that was not needed by the Determinations Unit and led to delays in processing the applications." (Exhibit F at 24.)

63.     As detailed by the TIGTA Report, beginning in April 2010, the Determinations Unit and Determinations Specialists in the Cincinnati, Ohio IRS office worked in concert with the IRS Technical Unit and other IRS offices in Washington, D.C., to process applications in accordance with the IRS Review Policy. (Exhibit F at 19.)

64.     In April 2010, the IRS Determinations Unit and Determinations Specialists requested that the Technical Unit provide assistance with identifying and processing the applications subject to the IRS Review Policy. (Exhibit F at 19.) The IRS Determinations Unit Manager requested status updates on these requests for assistances several times. (Exhibit F at 20.)

65.     On numerous occasions, the IRS Technical Unit developed and revised written and verbal guidance on how IRS Employees were to identify and process applications in accordance with the IRS Review Policy. (Exhibit F at 42.)

66.     On numerous occasions, the IRS Technical Unit provided written and verbal guidance to the IRS Determinations Unit on how IRS employees were to identify and process applications in accordance with the IRS Review Policy. (Exhibit F at 19, 42 and 43.)

11

67.     The Determinations Unit implemented and applied the written and verbal guidance provided by the IRS Technical Unit on how to identify and process applications in accordance with the IRS Review Policy. (Exhibit F at 44.)

68.     The IRS Review Policy was developed under the jurisdiction of Defendants Miller, Shulman, Lerner and other IRS Employees. (Exhibit F at 35.)

69.     On June 29, 2011, and likely earlier, Defendant Lerner was made aware of the existence and application of the IRS Review Policy. (Exhibit F at 13 and 41.)

70.     Defendant Lerner did not engage in the necessary acts to halt the application of the IRS Review Policy. Rather, starting in "January 2012 criteria again focused on the policy positions of organizations instead of tax-exempt laws and Treasury Regulations." (Exhibit F at 13.)

71.     In May 2011, and possibly earlier, Defendant Miller was made aware of the existence and application of the IRS Review Policy.

72.     Defendant Miller did not engage in the necessary acts to halt the application of the IRS Review Policy despite knowledge of its existence.

73.     In May 2011, and possibly earlier, Defendant Shulman was made aware of the existence and application of the IRS Review Policy.

74.     Defendant Shulman did not engage in the necessary acts to halt the application of the IRS Review Policy despite knowledge of its existence.

75.     Defendants Shulman, Miller, Lerner and other IRS Employees have not engaged in the necessary acts to cause applications for tax-exempt status that were subjected to the IRS Review Policy to receive a determination despite long-standing knowledge that the IRS has had sufficient information to make those determinations.

76.     The IRS and IRS Employees knowingly developed, implemented and applied the IRS Review Policy in violation of tax-exempt laws and Treasury Regulations.

77.     The IRS illegally and incorrectly categorized and characterized True the Vote as "political" based on its name, affiliation with King Street Patriots, and the conservative policy positions it is perceived to hold.

78.     True the Vote's Application was intentionally targeted for additional review and scrutiny by the IRS and IRS Employees pursuant to the IRS Review Policy because of True the Vote's affiliation with King Street Patriots as well as the conservative policy positions these organizations are perceived to hold.

79.     King Street Patriots has also submitted its application for tax-exempt status as a social welfare organization. It has not received a determination letter.

80.     The IRS and IRS Employees made multiple, unnecessary, burdensome and voluminous requests for information and documentation wholly unnecessary to the determination of True the Vote's tax-exempt status but were propounded solely based on True the Vote's philosophical policy positions and its affiliation with King Street Patriots.

81.     The IRS and IRS Employees made certain requests for information of True the Vote specifically identified in the TIGTA Report as being unnecessary for the determination of True the Vote's tax-exempt status. (Exhibit F at 26.)

82.     The IRS and IRS Employees deliberately delayed the processing of True the Vote's Application on the basis of True the Vote's philosophical policy positions and its affiliation with King Street Patriots.

83.     The deliberate targeting of True the Vote for additional review and scrutiny caused and is continuing to cause the IRS to withhold a determination of True the Vote's tax-exempt status.

84.     The mistreatment and handling of True the Vote's application for tax-exempt status and the refusal of the IRS to recognize True the Vote as tax-exempt violates True the Vote's constitutional rights and has caused damages and financial hardship.

## COUNT I
### Declaratory Judgment Pursuant to 26 U.S.C. § 7428

85.     Plaintiff True the Vote realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

86.     Under 28 U.S.C. § 2201 of the Declaratory Judgment Act and 26 U.S.C. § 7428 of the  Internal Revenue Code ("Code"), this Court is empowered to issue a declaratory judgment regarding the initial qualification of an organization as an organization described in Section 501(c)(3) of the Code.

87.     True the Vote hereby seeks an Order declaring that it is exempt from federal income tax under Section 501(a) of the Code as a charity described in Sections 501(c)(3), 509(a)(1) and 170(b)(1)(A)(vi) of the Code.

88.     The unexplained and inexcusable delay in ruling on the substantially complete Form 1023 has caused True the Vote hardship and irreparable injury by thwarting significant and worthy donations from ready and willing donors.

89.     True the Vote is entitled to the relief requested because more than 270 days have passed since the filing of the substantially complete Form 1023 on July 15, 2010, and through no fault of True the Vote, the IRS still has not issued a Notice of Determination with respect to the

14

Application. Due to the passage of the statutorily prescribed timeframe, all administrative

remedies are deemed exhausted as a matter of law pursuant to 26 U.S.C. § 7428(b)(2).

90.     Pursuant to § 7430(a) of the Code, True the Vote is entitled to reasonable

attorney's fees, costs and expenses in the prosecution of this action.

**COUNT II**
**Violation of the First Amendment to the United States Constitution**

91.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this

Complaint as though fully set forth herein.

92.     The IRS Review Policy under which True the Vote was deliberately subjected to

additional review and scrutiny on the basis of True the Vote's affiliations and the substantive

philosophical views, real or perceived, held by True the Vote constitutes a restriction on the

freedom of speech and association of True the Vote and the persons who operate and associate

with it, in violation of the First Amendment.

93.     The IRS Review Policy under which the determination of True the Vote's tax-

exempt status was deliberately delayed on the basis of True the Vote's affiliations and the

substantive philosophical views, real or perceived, held by True the Vote constitutes a restriction

on the freedom of speech and association of True the Vote and the persons who operate and

associate with it, in violation of the First Amendment.

94.     The existence and application of the IRS Review Policy by the IRS and IRS

Employees constitutes blatant viewpoint discrimination in violation of the First Amendment.

95.     Defendants IRS, Shulman, Miller, Lerner, Maloney, Bell, Estes, Ng and IRS

Employees knowingly and willfully applied the IRS Review Policy to True the Vote and other

applicants for tax-exempt status in violation of the First Amendment.

15

96.     Congress has not provided any alternative, existing process or remedy for protecting the constitutionally recognized interests violated by the Defendants. This Court may, therefore, recognize a remedy for damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

### COUNT III
### Violation of 26 U.S.C. § 6103

97.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

98.     Title 26, U.S.C. § 6103 provides that tax "[r]eturns and return information shall be confidential" and prohibits disclosure and inspection by United States employees except as provided for by this provision.

99.     Title 26, U.S.C. § 7431 provides taxpayers a cause of action for damages against the United States for knowing or negligent unauthorized inspection of tax return information in violation of 26 U.S.C. § 6103.

100.     "Return information" is defined very broadly to include

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b) [*IRC Sec. 6110(b)*]) which is not open to public inspection under section 6110 [*IRC Sec. 6110*][.]

26 U.S.C. § 6103(b)(2)(A)-(B).

16

101.    Because the IRS has not issued a written determination regarding True the Vote's Application, no information furnished by True the Vote to the IRS is open to public inspection under 26 U.S.C. §§ 6104 or 6110.

102.    All information furnished by True the Vote to the IRS is the "return information" of True the Vote pursuant to 26 U.S.C. § 6103(b)(2).

103.    Pursuant to the IRS Review Policy, the IRS and IRS Employees knowingly requested information from True the Vote that was and is unnecessary to its determination of True the Vote's tax-exempt status.

104.    Pursuant to the IRS Review Policy, the IRS and IRS Employees knowingly requested information from True the Vote in furtherance of the IRS's discriminatory and unconstitutional written identification and review policy.

105.    Title 26, U.S.C. § 6103(h) authorizes "inspection by…officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes."[2]

---

[2] The term "tax administration"--
(A) means—

    (i)     the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and

    (ii)    the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

(B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

26 U.S.C. § 6103(b)(4)(A)-(B).

106. Inspection of return information furnished by True the Vote to the IRS in response to questions the IRS knew or should have known to be unnecessary to the determination of True the Vote's tax-exempt status is not authorized under 26 U.S.C. § 6103 because it is *per se* not "for tax administration purposes."

107. Inspection of return information furnished by True the Vote to the IRS in response to questions asked in furtherance of the IRS's discriminatory and unconstitutional Review Policy is not authorized under 26 U.S.C. § 6103 because it is *per se* not "for tax administration purposes."

108. Each such inspection therefore violates 26 U.S.C. § 6103.

109. Each such inspection was made willfully or as a result of gross negligence.

110. At a minimum, each such inspection was made as a result of negligence.

111. Such inspections did not result from a "good faith, but erroneous interpretation of section 6103," 26 U.S.C. § 7431(b)(1), because knowingly unnecessary and unconstitutional actions cannot be made in good faith, nor can any law be interpreted in good faith to permit unconstitutional conduct or conduct knowingly outside of its permissible scope.

112. Such inspections were not requested by True the Vote. 26 U.S.C. § 7431(b)(2).

## Damages

113. Title 26, U.S.C. § 7431 authorizes damages "in an amount equal to the sum of—

(1) the greater of—
    (A) $ 1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or
    (B) the sum of--
        (i) the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus
        (ii) in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus
(2) the costs of the action, plus

18

(3) in the case of a plaintiff which is described in section 7430(c)(4)(A)(ii), reasonable attorneys fees, except that if the defendant is the United States, reasonable attorneys fees may be awarded only if the plaintiff is the prevailing party (as determined under section 7430(c)(4)).

114.    The number of unauthorized inspections of Plaintiff's return information cannot be completely and accurately ascertained at this time, but will be more fully known after the completion of discovery. At minimum, Defendant United States of America is liable for $1,000 for each unauthorized inspection by employees of the United States.

115.    Defendants' conduct has caused True the Vote to incur substantial costs preparing responses to the IRS's unnecessary, burdensome and unconstitutional requests for information.

116.    Because the IRS and IRS Employees deliberately delayed the processing of True the Vote's Application, True the Vote was forced to forfeit a foundation grant in the amount of $25,000 that was contingent on True the Vote receiving its tax-exempt status.

117.    Because the IRS and IRS Employees deliberately delayed the processing of True the Vote's Application, True the Vote was forced to forgo applying for grants from other foundations that had committed to support True the Vote.

118.    Because the IRS and IRS Employees deliberately delayed the processing of True the Vote's Application, True the Vote was forced to forgo other fundraising opportunities.

119.    WHEREFORE, the Plaintiff prays for the relief set forth below.

## Prayer for Relief

Plaintiffs respectfully request the following relief:

1.  Declare that the Plaintiff is exempt from federal income taxation under Section 501(a) of the Internal Revenue Code as a charity described in Sections 501(c)(3), 509(a)(1) and 170(b)(1)(A)(vi) of the Internal Revenue Code;

2. Declare the IRS Review Policy and any other similar policies unconstitutional under the First Amendment to the United States Constitution;

3. Permanently enjoin the IRS from further implementing and applying the IRS Review Policy and any other similar policies;

4. Permanently enjoin the IRS from illegally inspecting the Plaintiff's return information;

5. Order Defendant IRS to adopt and implement the recommendations identified in the TIGTA Report;

6. Award Plaintiff $1,000 in damages for each unauthorized inspection of its return information;

7. Award Plaintiff actual damages in excess of $85,000 incurred as a result of the IRS Review Policy and the IRS Employees' violations of Plaintiff's constitutional rights;

8. Award Plaintiff actual damages incurred as a result of the unauthorized inspections of its return information;

9. Award Plaintiff punitive damages;

10. Award Plaintiff costs and reasonable attorney fees; and

11. Award such other relief as the Court deems just.

Respectfully submitted this 21st day of May, 2013.


Kaylan L. Phillips (Ind. 30405-84)*  
Noel H. Johnson (Wisc. 1068004)*  
Zachary S. Kester (Ind. 28630-49)*  
ACTRIGHT LEGAL FOUNDATION  
209 West Main Street  
Plainfield, IN 46168  
(317) 203-5599 (telephone)  
(888) 815-5641 (fax)  
kphillips@actrightlegal.org  
njohnson@actrightlegal.org  
zkester@actrightlegal.org  
*Counsel for Plaintiff*


\_\_s/Cleta Mitchell_____  
Cleta Mitchell (D.C. 433386)  
3000 K Street NW #600  
Washington, DC 20007  
(202) 295-4081 (direct)  
(202) 431-1950 (cell)  
(202) 672-5399 (fax)  
cmitchell@foley.com  
*Lead Counsel for Plaintiff*

John C. Eastman (Cal. 193726)*  
Center for Constitutional Jurisprudence  
c/o Chapman University School of Law  
One University Drive  
Orange, CA 92866  
(877) 855-3330 (telephone and fax)  
jeastman@chapman.edu  
*Counsel for Plaintiff*

*\*Pro Hac Vice Motions pending*

21

**VERIFICATION OF COMPLAINT
PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May ⎵20⎵, 2013

Catherine Engelbrecht
President, True the Vote, Inc.