## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TRUE THE VOTE, INC.,**
7232 Wynnwood Lane
Houston, TX 77008-6041

                                        Civ. No. 13-cv-00734-RBW

                    *Plaintiff,*

  *v.*


**INTERNAL REVENUE SERVICE**,
1111 Constitution Avenue, N.W.
Washington, DC 20224

**UNITED STATES OF AMERICA**,
Serve: Eric H. Holder
Attorney General for the United States
Department of Justice
Room B-103
950 Pennsylvania Ave. NW
Washington DC 20530-0001

Serve: Ronald C. Machen, Jr.
United States Attorney for the District of Columbia,
United States Attorney's Office
ATTN: Civil Process Clerk
555 4th Street, NW
Washington, DC 20530


**DANIEL WERFEL**, in his official capacity as
Acting Commissioner of the INTERNAL REVENUE
SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

**STEVEN T. MILLER**, in his official and individual
capacity as former Deputy Commissioner, Services &
Enforcement, and Acting Commissioner, INTERNAL
REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

5006 Elsmere Place
Bethesda, MD 20814

**DOUGLAS H. SHULMAN**, in his official and individual capacity as former Commissioner, INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

2706 36th Street, N.W.
Washington, DC 20007

**WILLIAM WILKINS**, in his official and individual capacity as Chief Counsel, INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

[Residential address forthcoming]

**LOIS LERNER**, in her official and individual capacity as Director, Exempt Organizations Division, INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

6610 Fernwood Court
Bethesda, MD 20817

**HOLLY PAZ**, in her official and individual capacity as Acting Manager, Exempt Organizations Technical Unit, Acting Director, Office of Rulings & Agreements, and Director, Office of Rulings & Agreements, INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

5703 Northfield Road
Bethesda, MD 20817

**CINDY M. THOMAS,** in her official and individual capacity as Program Manager, Exempt Organizations Determinations Unit of the INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

11 Wesley Drive
Wilder, KY 41076-1472

2

**STEVEN GRODNITZKY**, in his official and
individual capacity as Manager, Exempt
Organizations Technical Unit,
INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

916 6th Street, NE
Washington, DC 20002

**DAVID FISH**, in his official and individual capacity
as Acting Director, Office of Rulings & Agreements,
INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

3623 37th St. N.
Arlington, VA  22207

**MICHAEL C. SETO**, in his official capacity and
individual capacity as Acting Manager, Technical
Unit, INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

1711 Massachusetts Avenue, N.W., #512
Washington, D.C. 20036

**SUSAN MALONEY**, in her official and individual
capacity as an Exempt Organizations Specialist,
INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

4753 Summerside Road
Cincinnati, OH 45244

**RONALD BELL**, in his official and individual
capacity as an Exempt Organizations Specialist,
INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224,

929 Main Street
Covington, KY 41011

**JANINE L. ESTES**, in her official and individual capacity as an Exempt Organizations Specialist, INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

8956 Richmond Road
Union, KY 41091

**FAYE NG**, in her official and individual capacity as an Exempt Organizations Specialist, INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, N.W.
Washington, DC 20224

6568 Pepperell Lane
Cincinnati, OH 45236, and

**UNKNOWN NAMED EMPLOYEES OF THE INTERNAL REVENUE SERVICE**, in their official and individual capacities,

*Defendants*.

## First Amended Verified Complaint for Declaratory Judgment, Injunctive Relief, and Compensatory, Statutory, and Punitive Damages

Plaintiff, True the Vote, Inc. ("True the Vote"), by counsel, respectfully states as follows for its complaint against Defendants the Internal Revenue Service ("IRS"), the United States of America (the "U.S. Government"), IRS Commissioner Daniel Werfel ("Commissioner Werfel"), and Steven T. Miller ("Mr. Miller"), Douglas H. Shulman ("Mr. Shulman"), William Wilkins ("Mr. Wilkins"), Lois Lerner ("Ms. Lerner"), Holly Paz ("Ms. Paz"), Steven Grodnitzky ("Mr. Grodnitzky"), David Fish ("Mr. Fish"), Michael C. Seto ("Mr. Seto"), Cindy M. Thomas ("Ms. Thomas"), Susan Maloney ("Ms. Maloney"), Ronald Bell ("Mr. Bell"), Janine L. Estes ("Ms. Estes"), Faye Ng ("Ms. Ng"), and Unknown Named Employees of the Internal Revenue Service (collectively, the "IRS Employees") (collectively, the "IRS Defendants").

4

## Introduction

1.      This action arises out of the IRS Defendants' wrongful acts and omissions concerning the application of True the Vote to the IRS for recognition as a tax-exempt educational and charitable organization pursuant to the following Sections of Title 26 of the U.S. Code, the Internal Revenue Code: 26 U.S.C. § 501(c)(3) ("Section 501(c)(3)"), 26 U.S.C. § 509(a)(1) ("Section 509(a)(1)"), and 26 U.S.C. § 170(b)(1)(A)(vi) ("Section 170(b)(1)(A)(vi)").

2.      True the Vote is a not-for-profit Texas corporation organized and operated exclusively or primarily for a charitable purpose.

3.      True the Vote is entitled to tax-exempt status by virtue of its status as a not-for-profit, non-partisan, charitable and educational organization. As stated in True the Vote's application for tax-exempt status (the "Application") and other information furnished to the IRS, True the Vote's mission is to promote and improve the integrity of the voting process in the United States. Its primary activity is to observe and promote better compliance with election laws and procedures through citizen participation. True the Vote seeks to educate the public about election law compliance and procedures. True the Vote works with any person or organization who shares its mission of supporting and promoting free and fair elections. True the Vote's charitable and educational purposes fall squarely within applicable legal precedent for tax-exempt status under Sections 501(c)(3), 509(a)(1) and 170(b)(1)(A)(vi).

4.      It has now been more than three years since True the Vote filed its Application with the IRS on July 15, 2010. Yet the Application remains pending at the IRS. As a practical matter, True the Vote's application has essentially been denied, albeit without benefit of the normal and customary appeals process to which applicants are entitled.

5.     Because of True the Vote's mission of promoting election integrity and its perceived association with "Tea Party" organizations, the IRS Defendants systematically targeted True the Vote's application for unwarranted delay and heightened review and scrutiny. As a result, True the Vote was deliberately subjected to numerous unnecessary, burdensome, and unlawful requests for information about its operations, activities, leadership, volunteers, associations, and affiliations.  The effect if not the intent of this wrongful conduct was to infringe the First Amendment rights of free speech and association of True the Vote and its members, supporters, and donors—both current and prospective.

6.     Under the IRS Defendants' unlawful scheme, True the Vote was forced to repeatedly furnish the IRS with information, materials, and documents that were not necessary to determine whether True the Vote was entitled to tax-exempt status. The IRS Defendants' repeated requests for additional information and documents were intended to harass True the Vote and to have a chilling effect on the First Amendment rights of current and prospective members and donors. Rather than use True the Vote's information and documents for any legitimate purpose, the IRS Defendants repeatedly accessed and inspected the information in violation of federal law that prohibits IRS agents from inspecting taxpayer information without authorization.

7.     By creating, developing, implementing, and applying this unlawful scheme, the IRS Defendants acted in violation of their oaths and duties to uphold the Constitution of the United States and the laws of the United States. Instead, the IRS Defendants exceeded their authority under federal law to recognize the status of tax-exempt charitable and educational organizations. True the Vote has been irreparably harmed, and its recognition as a tax-exempt

charitable and educational organization has been improperly withheld as a result of the IRS Defendants' actions.

8.      True the Vote has taken, in a timely manner, all reasonable steps to secure a determination from the IRS of its charitable and educational status.

9.      The IRS has failed to make a determination with respect to True the Vote's Application despite multiple efforts over three years by True the Vote to furnish to the IRS all information requested, including substantial information and materials unnecessary to the processing of True the Vote's Application.

10.     Due to the unwarranted and unlawful delay of the processing of its Application, True the Vote requested hardship status three times to seek an expedited processing of its Application.  However, no expedited process occurred.

11.     Attached as Exhibit A is a timeline describing True the Vote's correspondence with the IRS regarding its Application.

12.     It has been more than 270 days since the IRS received a substantially completed application for tax-exempt status from True the Vote, thereby confirming that True the Vote has exhausted its administrative remedies as required under 26 U.S.C. § 7428(b)(2).

13.     Accordingly, True the Vote seeks the following relief against the following IRS Defendants:

   a.   against the U.S. Government, a declaratory judgment pursuant to 26 U.S.C.
        § 7428 finding that True the Vote is a tax-exempt charitable and educational
        organization under Sections 501(c)(3), 509(a)(1), and 170(b)(1)(A)(vi);

b.   against the IRS and Commissioner Werfel, a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 to prevent further infringement of True the Vote's First Amendment rights of free speech and association;

c.   against the Defendant IRS Employees in their individual capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), actual and/or punitive damages resulting from the Defendant IRS Employees' violations of True the Vote's First Amendment rights of free speech and association;

d.   against the U.S. Government, pursuant to 26 U.S.C. § 7431, statutory and/or actual and punitive damages caused by the U.S. Government's willful, unauthorized inspection of True the Vote's confidential tax return information in violation of 26 U.S.C. § 6103; and

e.   against each of the IRS Defendants, in their official capacities, declaratory and injunctive relief from violations of the Administrative Procedure Act, 5 U.S.C. § 706 (the "APA").

## Jurisdiction and Venue

### (Subject Matter Jurisdiction)

14.   This Court has subject matter jurisdiction under 26 U.S.C. § 7431(a), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (Declaratory Judgment Act), and 5 U.S.C. § 702 (Administrative Procedure Act).

15.   This Court also has subject matter jurisdiction under 28 U.S.C. § 1346(e) because this is an action brought pursuant to 26 U.S.C. § 7428.

16.     True the Vote satisfies the prerequisites for an action under 28 U.S.C. § 7428 for the following reasons:

      a.     True the Vote seeks relief as to its qualification or classification under Section 501(c)(3), thereby satisfying the requirements of 28 U.S.C. § 7428(b)(1).

      b.     The IRS has failed to make a determination with respect to True the Vote's initial qualification as an organization described in Section501(c)(3), thereby satisfying the requirements of 28 U.S.C. § 7428(a)(2).

      c.     True the Vote has exhausted its administrative remedies, thereby satisfying the requirements of 28 U.S.C. § 7428(b)(2).

      d.     There are actual legal interests of sufficient immediacy to reflect an actual controversy between True the Vote and the U.S. Government, thereby satisfying the requirements of 28 U.S.C. § 7428(a).

17.     This Court is duly authorized and empowered pursuant to 26 U.S.C. § 7428 to issue a declaratory judgment granting the initial qualification for exempt status of an organization such as True the Vote as described in Section 501(c)(3) of the Code.

18.     Pursuant to 28 U.S.C. § 2201, Defendant U.S. Government has waived its sovereign immunity with regard to True the Vote's claims seeking declaratory relief from violations of its constitutional rights. Section 2201 does not bar review of these claims because they are not "with respect to Federal taxes."

19.     The Anti-Injunction Act, 26 U.S.C. § 7421(a), does not bar review of these claims because they are not brought "for the purpose of restraining the assessment or collection of any tax." Alternatively, these claims are not barred because they satisfy one or more of the judicially-created exceptions to the Anti-Injunction Act. *See, e.g.*, *Enochs v. Williams Packing and*

*Navigation Co.*, 370 U.S. 1 (1962); *South Carolina v. Regan*, 465 U.S. 367 (1984); *Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) (*en banc*).

20.     This Court is authorized pursuant to 28 U.S.C. § 2202 to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree," including injunctive relief.

21.     Pursuant to 5 U.S.C. § 702, the U.S. Government has waived its sovereign immunity in actions "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority…."

22.     The U.S. Government has waived its sovereign immunity pursuant to 26 U.S.C. § 7431, which provides taxpayers a cause of action for damages against the United States for knowing or negligent unauthorized inspection of tax return information in violation of 26 U.S.C. § 6103.

23.     Defendant U.S. Government is a proper defendant pursuant to 26 U.S.C. § 7431(a)(1) and 28 U.S.C. § 1346(e).

24.     This action is brought within two years after the date of discovery by True the Vote of the unauthorized inspections of its confidential taxpayer return information as described herein. 26 U.S.C. § 7431(d).

**(Personal Jurisdiction)**

25.     Personal jurisdiction over the IRS and U.S. Government is proper in this Court because they "maintain [their]…principal place of business in" the District of Columbia. D.C. Code § 13-422.

26.     Personal jurisdiction over Defendants Mr. Miller, Mr. Wilkins, Ms. Lerner, Ms. Paz, and Mr. Fish, and Unknown Named Employees of the IRS is proper in this Court because at

times relevant to this Complaint they "maintain[ed] [their]…principal place of business in" the District of Columbia, D.C. Code § 13-422, and have "transact[ed]…business in the District of Columbia," D.C. Code § 13-423(a)(1).

27.     Personal jurisdiction over Defendants Mr. Shulman, Mr. Grodnitzky, and Mr. Seto are proper in this Court because they are "domiciled in" the District of Columbia and at times relevant to this Complaint "maintain[ed] [their]…principal place of business in" the District of Columbia. D.C. Code § 13-422.

28.      Personal jurisdiction over defendants Mr. Thomas, Ms. Maloney, Mr. Bell, Ms. Estes, Ms. Ng, and Unknown Named Employees of the IRS is proper in this Court for the following reasons:

  a.  Each of the foregoing IRS Employees has established minimum contacts with this forum by virtue of deliberate actions or omissions, described more thoroughly herein, regarding the processing of True the Vote's application for tax-exempt status within this forum. Such involvement also satisfies the conditions for jurisdiction within this forum under D.C. Code § 13-423(a)(1) ("transacting…business in the District of Columbia") and D.C. Code § 13-423(a)(4) ("causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia" while "engag[ing] in [a] persistent course of conduct" within the District of Columbia);

  b.  Each of the foregoing IRS Employees worked in concert with one or more of the IRS Defendants residing in the District of Columbia—including the IRS, Mr. Miller, Mr. Shulman, Mr. Wilkins, Ms. Lerner, Ms. Paz, Mr. Grodnitzky, Mr. Fish, Mr. Seto, and Unknown Named Employees of the IRS—in furtherance of a

civil conspiracy aimed at creating, revising, implementing and applying the unlawful and discriminatory IRS Targeting Scheme, described more thoroughly herein, in violation of the statutory and constitutional rights of True the Vote and others.

**(Venue)**

29.     Venue is proper in this district under 26 U.S.C. § 7428(a), which requires such actions to be brought in either the United States Tax Court, the United States Court of Federal Claims, or the United States District Court for the District of Columbia.

30.     Venue is also appropriate under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## The Parties

**(Plaintiff)**

31.     Plaintiff True the Vote, Inc. is a not-for-profit corporation duly created on June 7, 2010 and validly existing under the laws of the State of Texas. True the Vote's current mailing address is in care of its registered agent:

> Catherine Engelbrecht
> 7232 Wynnwood Lane
> Houston, TX 77008-6041

**(The IRS Defendants)**

32.     Defendant IRS is an agency of the U.S. Government that is responsible for administration and enforcement of provisions of the Internal Revenue Code, as well as all other IRS rules, regulations, policies, procedures, and practices.

33.     Defendant the U.S. Government is a proper defendant pursuant to 5 U.S.C. § 702, 26 U.S.C. §§ 7428, 7431(a), and 28 U.S.C. § 1346(e).

34.     Defendant Commissioner Werfel is the Acting Commissioner of the IRS. As such, Commissioner Werfel is responsible for managing, directing, and supervising the activities and executing and implementing the laws and policies of the IRS. Commissioner Werfel is sued in his official capacity only.

35.     At times relevant to this Complaint, Defendant Mr. Miller was either the Deputy Commissioner for Services and Enforcement, or the Acting Commissioner, of the IRS. His current position with the U.S. Government is unknown to True the Vote. During the time that he was Deputy Commissioner for Services and Enforcement or the Acting Commissioner of the IRS, Mr. Miller was responsible for managing, directing, and supervising the activities of the IRS and executing and implementing the laws, regulations, and policies governing the activities of the IRS. Mr. Miller is sued in his official capacity, and pursuant to Fed. R. Civ. P. 4(i)(3), in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

36.     At times relevant to this Complaint, Defendant Mr. Shulman was the Commissioner of the IRS. At such times, he was responsible for managing, directing, and supervising the activities of the IRS and executing and implementing the laws, regulations, and policies governing the activities of the IRS. Mr. Shulman is sued in his official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

37.     Defendant Mr. Wilkins is the Chief Counsel for the IRS, appointed to that position by the President of the United States. At times relevant to this Complaint, Mr. Wilkins was responsible for interpreting, administering and enforcing the Internal Revenue laws, representing the IRS in litigation, and providing all other legal support needed by the IRS. He

13

and IRS Employees subject to his supervision and control were directly involved in the actions and activities described in this Complaint. Mr. Wilkins is sued in his official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

38.    At times relevant to this Complaint, Defendant Ms. Lerner was the Director of the Exempt Organizations Division of the IRS. At such times, she was responsible for planning, managing, directing, administering, enforcing, and executing the rules, policies and practices of the Exempt Organizations Division of the IRS. Ms. Lerner is sued in her official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in her individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

39.    At times relevant to this Complaint, Defendant Ms. Paz was either the Acting Manager, Exempt Organizations Technical Unit; the Acting Director, Office of Rulings and Agreements; or the Director, Office of Rulings and Agreements, of the IRS. Her current position with the government is unknown to True the Vote.  Ms. Paz was responsible for processing determination letter requests from exempt organizations seeking recognition of tax-exempt status, and providing assistance and guidance to other IRS officers and employees involved in such processing. Ms. Paz is sued in her official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in her individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

40.    Defendant Ms. Thomas is the Program Manager, Exempt Organizations Determinations Unit, of the IRS. She is the highest ranking IRS employee in the Exempt Organizations Determination Unit of the IRS, located in Cincinnati, Ohio. She is responsible for processing determination letter requests from exempt organizations seeking recognition of tax-

exempt status, and providing assistance and guidance to other IRS officers and employees involved in such processing. She is sued in her official and, pursuant to Fed. R. Civ. P. 4(i)(3), in her individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

41.     Defendant Mr. Grodnitzky is a Manager, Exempt Organizations Technical Unit, of the IRS. He is responsible for processing determination letter requests from exempt organizations seeking recognition of tax-exempt status, and providing assistance and guidance to other IRS officers and employees involved in such processing. He is sued in his official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government

42.      At times relevant to this Complaint, Defendant Mr. Fish was either the Acting Director, Exempt Organizations Office of Rulings and Agreements, or the Manager, Exempt Organizations, Guidance Unit, of the IRS. At such times, he was responsible for processing determination letter requests from exempt organizations seeking recognition of tax-exempt status, and providing assistance and guidance to other IRS officers and employees involved in such processing. His current position with the government is unknown to True the Vote. He is sued in his official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

43.     Defendant Mr. Seto is the Acting Manager, Exempt Organizations Technical Unit, of the IRS. He is responsible for processing determination letter requests from exempt organizations seeking recognition of tax-exempt status, and providing assistance and guidance to other IRS officers and employees involved in such processing. He is sued in his official capacity

15

and, pursuant to Fed. R. Civ. P. 4(i)(3), in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

44. Defendant Ms. Maloney is an IRS Exempt Organizations Specialist in the IRS Determinations Unit who oversaw the processing of True the Vote's application for tax-exempt status. She is sued in her official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in her individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

45. Defendant Mr. Bell is an IRS Exempt Organizations Specialist in the IRS Determinations Unit who oversaw the processing of True the Vote's application for tax-exempt status. He is sued in his official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

46. Defendant Ms. Estes is an IRS Exempt Organizations Specialist in the IRS Determinations Unit who oversaw the processing of True the Vote's application for tax-exempt status. She is sued in her official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in her individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

47. Defendant Ms. Ng is an IRS Exempt Organizations Specialist in the IRS Determinations Unit who oversaw the processing of True the Vote's application for tax-exempt status. She is sued in her official capacity and, pursuant to Fed. R. Civ. P. 4(i)(3), in her individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government.

48.     Defendant Unknown Named Employees of the Internal Revenue Service are current and/or former directors, officers, agents, and employees of the IRS who developed, implemented, applied, approved, or oversaw the unconstitutional IRS identification, review, and processing criteria and policies described herein. Each Unknown Named Defendant is sued in his or her official capacity and/or, pursuant to Fed. R. Civ. P. 4(i)(3), in his or her individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government. The identity of all individual named defendants liable to True the Vote cannot be completely and accurately ascertained at this time, but will be more fully known after the completion of discovery.

49.     At all times relevant to this Complaint, the IRS Employee Defendants were acting under color of federal law within the scope of their employment at the IRS.

## Factual Allegations

**True the Vote's Application for Tax-exempt Status**

50.     On June 7, 2010, an entity then known as KSP/True the Vote was duly created as a non-profit corporation under the laws of the State of Texas. (Exhibit B at 20.)

51.     KSP stands for "King Street Patriots," which was True the Vote's 26 U.S.C. § 501(c)(4) affiliated organization. King Street Patriots and True the Vote are separate and distinct corporate entities.

52.     On August, 26, 2011, KSP/True the Vote changed its name to True the Vote, Inc.

53.     On July 15, 2010, True the Vote properly filed with the IRS its Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (Form 1023) (Exhibit B.)

54.     True the Vote received no further contact from the IRS Defendants during calendar year 2010.

55.     On January 5, 2011, at the request of True the Vote, Sen. John Cornyn (R-TX) inquired of the IRS as to the status of True the Vote's application for tax-exempt status on behalf of his constituent, True the Vote, a Texas-based organization.

56.     In a February 15, 2011 letter sent from the Cincinnati, Ohio IRS office, Defendant Ms. Maloney requested additional information from True the Vote in order to complete the IRS' consideration of True the Vote's Application. (Exhibit C.)

57.     In letters dated March 7, 2011 and March 8, 2011, True the Vote furnished to the IRS the information requested in the IRS' February 15 letter.

58.     Following True the Vote's submission of the requested information, the IRS Defendants failed to proceed in a lawful manner to consider and grant True the Vote's application for tax-exempt status.

59.     On or around October 27, 2011, the IRS Taxpayer Advocate advised Sen. Cornyn in response to his January 5, 2011 inquiry that it had contacted Defendant Mr. Bell regarding the status of True the Vote's application and that Mr. Bell had informed the Taxpayer Advocate that he was waiting for a determination on True the Vote's Application from the IRS Washington D.C. office. (Exhibit G.)

60.     On October 12, 2011, True the Vote's legal counsel contacted the IRS and its agent, Defendant Mr. Bell, to inquire as to the status of True the Vote's Application. During this phone conversation, Mr. Bell stated that True the Vote's Application was being overseen by and had been forwarded to the IRS office in Washington, D.C. for additional review. According to Mr. Bell, the Washington, D.C. office had assumed primary approval responsibility.

61.     On November 8, 2011, True the Vote memorialized its October 12, 2011 phone conversation with the IRS in correspondence. Along with this November 8, 2011 correspondence, True the Vote submitted to the IRS additional information regarding its mission, purpose and activities, together with documentation of legal precedent in and before the IRS that provided the IRS Defendants the legal basis for granting to True the Vote recognition as a charitable and educational tax-exempt organization.

62.     Following True the Vote's submission of the legal precedent for recognition of True the Vote as a charitable and educational tax-exempt organization, the IRS Defendants still failed to proceed in a lawful manner to consider and grant True the Vote's application for tax-exempt status.

63.     In a February 8, 2012 letter, sent from the Cincinnati, Ohio IRS office, Defendant Ms. Estes stated that the IRS needed even more information from True the Vote to complete the IRS' consideration of True the Vote's Application. (Exhibit D.)

64.     In a letter dated March 20, 2012, True the Vote furnished to the IRS the information requested in the IRS' February 8, 2012 letter.

65.     Following True the Vote's submission of the requested information, the IRS Defendants again failed to proceed in a lawful manner to consider and grant True the Vote's application for exempt status.

66.     In an October 9, 2012 letter, sent from the Cincinnati, Ohio IRS office, Defendant Ms. Ng requested still more information from True the Vote in order to complete its consideration of its Application. (Exhibit E.)

67.     In a letter dated November 30, 2012, True the Vote furnished to the IRS the information requested in the IRS' October 9, 2012 letter.

68. Following True the Vote's submission of the requested information, the IRS Defendants yet again failed to proceed in a lawful manner to consider and grant True the Vote's application for exempt status.

69. True the Vote has acted in good faith in its dealings with the IRS Defendants— responding to all requests of the IRS for materials, documents, and information— notwithstanding that the information requested is and was well beyond the scope of the government's legitimate inquiries for purposes of ascertaining and acting on True the Vote's application for tax-exempt status.

70. Despite responding to each and every request propounded to True the Vote by Defendants, True the Vote has yet to receive recognition of its tax-exempt status from the IRS.

71. True the Vote has incurred substantial costs and expenses in responding to the IRS' burdensome, unnecessary, and unlawful requests for information.

72. Because the IRS Defendants deliberately and unnecessarily delayed the processing of its Application, True the Vote's ability to build its organization has been hindered and it has been forced to forfeit grants from grant-making foundations and other contributions and fundraising opportunities.

**IRS Scheme of Targeting Tea Party Applicants for Tax-exempt Status**

73. Beginning in 2010, and possibly earlier, the IRS Defendants developed and implemented a written and unwritten policy for identifying and subjecting certain applicants for tax-exempt status to additional and heightened review and scrutiny, based solely on a notion by the IRS Defendants that groups should be targeted for such review based on their purpose, mission, and/or name(s). (This policy, as described more fully throughout this Complaint, is collectively referred to as the "IRS Targeting Scheme.")

74.     Under the IRS Targeting Scheme, applications for tax-exempt status filed by organizations whose names, purpose(s), or mission(s)- in the view of the IRS Defendants—indicated a conservative philosophical viewpoint or a viewpoint supported by "Tea Party" organizations (the "Targeted Organizations") were subjected to additional review and scrutiny, and deliberate delays in processing.

75.     Under the IRS Targeting Scheme, the IRS Defendants engaged in other discriminatory conduct toward the Targeted Organizations.

76.     The IRS Defendants swept True the Vote into its IRS Targeting Scheme based solely on True the Vote's name, affiliation with King Street Patriots, and/or its mission and purpose of promoting election integrity.

77.     On May 10, 2013, at a meeting of the Exempt Organizations Committee of the Tax Section of the American Bar Association, Defendant Ms. Lerner—who was at the time the Director of the Exempt Organizations Division of the IRS—admitted in a response to a question she had planted in the audience that the IRS had selected applications for tax-exempt status for further review and scrutiny "simply because the applications" "used names like Tea Party or Patriots." Streckfus, EO Tax Journal 2013-82, May 11, 2013, *available in part at* http://electionlawblog.org/?p=50160.

78.     At that May 10, 2013 meeting, Defendant Ms. Lerner made the following additional admissions regarding the IRS Targeting Scheme:

   a.   "That was wrong, that was absolutely incorrect, insensitive, and inappropriate — that's not how we go about selecting cases for further review. We don't select for review because they have a particular name." *Id*.

   b.   "The other thing that happened was they also, in some cases, cases sat around for a while. "[The IRS] sent some letters out that were far too broad, asking questions of these organizations that weren't really necessary for the type of application." *Id*.

c. "[The IRS] went back and looked at questions that had been sent out to folks because some of them were extensive and where the questions weren't necessary we gave the organizations flexibility as to which questions they needed to answer and gave them more time to answer them. In some cases we told them to just ignore the letter we already sent and sent a new list of questions. In some cases we said we don't need those questions answered. We can deal with your application without responses to those questions." *Id.*

79.     At the time, Defendant Ms. Lerner apologized on behalf of the IRS for the way the IRS had handled the applications of the Targeted Organizations. *Id.*

80.     On or around May 14, 2013, the Treasury Inspector General for Tax Administration issued a report entitled "Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review" (the "TIGTA Report"). The TIGTA Report describes the results of the Inspector General's audit of the IRS Targeting Scheme. (Exhibit F.)

81.     The TIGTA Report concludes as follows:

The IRS used inappropriate criteria that identified for review Tea Party and other organizations applying for tax-exempt status based upon their names or policy positions instead of indications of potential political campaign intervention.  Ineffective management: 1) allowed inappropriate criteria to be developed and stay in place for more than 18 months, 2) resulted in substantial delays in processing certain applications, and 3) allowed unnecessary information requests to be issued.

(Exhibit F at 2.)

82.     Appendix VII to the TIGTA Report is a Comprehensive Timeline of Events. The timeline summarizes the involvement of various IRS agents and officers— including Defendant IRS Employees—in the creation, revision and implementation of the IRS Targeting Scheme. (Exhibit F at 37-38.)

83.     As described by the TIGTA Report, in March and April of 2010, the IRS Exempt Organizations ("EO") Determinations Unit in Cincinnati, Ohio, under the control and direction of Defendant Ms. Thomas, "began searching for…requests for tax-

exemption involving the Tea Party, Patriots, 9/12 and 26 U.S.C. § 501(c)(4) applications

involving political sounding names, *e.g.*, 'We the People' or 'Take Back the Country.'"

(Exhibit F at 36-37.)

84.     By July 2010, the EO "Determinations Unit management requested its specialists

to be on the lookout for Tea Party applications." (Exhibit F at 12, 36.)

85.     "In August 2010, the Determinations Unit distributed the first formal BOLO

listing. The criteria in the BOLO listing were Tea Party organizations applying for 26 U.S.C.

§ 501(c)(3) or 26 U.S.C. § 501(c)(4) status."[1] (Exhibit F at 12.)

86.     As detailed by the TIGTA Report, between 2010 and 2012, the EO

Determinations Unit and EO Specialists in the Cincinnati, Ohio IRS office, under the direction

and control of Defendant Ms. Thomas, worked in concert with the IRS EO Technical Unit and

other IRS offices in Washington, D.C. to develop and revise the unconstitutional IRS Targeting

Scheme and to process applications in accordance with the IRS Targeting Scheme. (Exhibit F at

19, 37-48.)

87.     In March 2010, and possibly earlier, Defendant Paz, who was then Acting

Manager of the EO Technical Unit, was aware of the existence and application of the IRS

Targeting Scheme. (Exhibit F at 37.)

88.     In March 2010, Defendant Ms. Paz requested that certain applications being

processed in accordance with the IRS Targeting Scheme in the IRS EO Determinations Unit,

under the direction and control of Defendant Ms. Thomas, be transferred to IRS offices in

Washington, D.C. (Exhibit F at 37.)

---

[1] "BOLO" stands for "Be On The Look Out." (Exhibit F at 6.)

89.     In April 2010, and possibly earlier, Defendant Mr. Grodnitzky, who was then
Acting Manager of the EO Technical Unit, was aware of the existence and application of the IRS
Targeting Scheme. (Exhibit F at 37.)

90.     In April 2010, Defendant Mr. Grodnitzky suggested the need for a "Sensitive
Case Report" regarding applications being processed in accordance with IRS Targeting Scheme.
(Exhibit F at 37.) Defendant Ms. Thomas agreed that a "Sensitive Case Report" was needed.
(*Id*.)

91.     In April 2010, Defendant Mr. Grodnitzky directed the preparation of a "Sensitive
Case Report" regarding processing applications for tax-exempt status submitted by the Targeted
Organizations. (Exhibit F at 38.)

92.     According to the TIGTA Report, the Sensitive Case Report was shared with the
Director, Office of Rulings and Agreements, and a chart summarizing the Sensitive Case Report
was provided to Defendant Ms. Lerner, the Director of the Exempt Organizations division.
(Exhibit F at 38.)

93.     In April 2010, the IRS EO Determinations Unit requested that the EO Technical
Unit provide assistance with identifying and processing the applications subject to the IRS
Targeting Scheme. (Exhibit F at 19.)

94.     Defendant Ms. Thomas requested status updates from the EO Technical Unit on
these requests for assistances several times. (Exhibit F at 20.)

95.     In May 2010, the Technical Unit began reviewing additional information request
letters prepared by the Determinations Unit. (Exhibit F at 32.)

96.     Between 2010 and 2012, the IRS EO Technical Unit—under the direction and
control of either Defendant Ms. Paz, Defendant Mr. Grodnitzky, or Defendant Mr. Seto—the

IRS Office of Rulings and Agreements—under the direction and control of either Defendant Ms. Paz or Defendant Mr. Fish—Defendant Ms. Lerner, and Unknown Named Employees of the IRS developed and revised written and oral guidance on how IRS Employees, including Defendant Ms. Thomas, Ms. Maloney, Ms. Estes, Mr. Bell, Ms. Ng, and Unknown Named IRS Employees were to identify and process applications in accordance with the IRS Targeting Scheme. (*See* Exhibit F at 19, 20, 37-48.)

97.     Between 2010 and 2012, the EO Determinations Unit—under the direction and control of Defendant Ms. Thomas—and EO Specialists implemented and applied this written and oral guidance on how to identify and process applications in accordance with the IRS Targeting Scheme. (*See* Exhibit F at 37-48.)

98.     Based on this written and oral guidance, IRS Employees prepared, reviewed, and issued letters requesting substantial additional information from True the Vote and hundreds of other applicants for tax-exempt status that were among the Targeted Organizations. (Exhibit F at 24 and 44.)

99.     In March 2012, a draft list of template questions prepared by a team of specialists was forwarded to the Guidance Unit—under the direction and control of Defendant Mr. Fish—for review. (Exhibit F at 45.)

100.     Pursuant to the IRS Targeting Scheme, "the Determinations Unit requested irrelevant (unnecessary) information" from the Targeted Organizations. (Exhibit F at 24.)

101.     As the TIGTA Report states: "This created a burden on the organizations that were required to gather and forward information that was not needed by the Determinations Unit and led to delays in processing the applications." (Exhibit F at 24.)

102.    The Targeted Organizations were not subjected to the IRS Targeting Scheme because their applications indicated "political activity" as that term is defined by the Internal Revenue Code and regulations, guidance and rulings of the IRS. Rather, the Targeted Organizations were subjected to this unconstitutional and otherwise illegal scheme because they were perceived to be associated with conservative policy positions and Tea Party organizations.

103.    On June 29, 2011, and likely earlier, Defendant Ms. Lerner was made aware of the existence and application of the IRS Targeting Scheme. (Exhibit F at 13 and 41.)

104.    On June 29, 2011, Defendant Ms. Lerner was presented with a briefing paper concerning the existence and application of the IRS Targeting Scheme. (Exhibit F at 41.)

105.    The primary author of the briefing paper was a specialist in the IRS EO Guidance Unit, which was under the direction and control of Defendant Mr. Fish. (Exhibit F at 41.)

106.    Defendant Mr. Seto reviewed the briefing paper before presenting it to Defendant Ms. Lerner. (Exhibit F at 41.)

107.    As early as June 29, 2011, and likely earlier, Defendants Ms. Lerner, Ms. Paz, Mr. Grodnitzky, Mr. Fish, Mr. Seto, Ms. Thomas, and Unknown Named Employees of the IRS were aware that applications for tax-exempt status were being subjected to additional and heightened review and scrutiny and delays in processing based solely on one or more of the following discriminatory criteria:

    a.   "Tea Party," "Patriots," or "9/12 Project" is referenced in the case file;

    b.   Issues include U.S. Government spending, U.S. Government debt, or taxes;

    c.   Education of the public via advocacy/lobbying to "make America a better place to live."; and/or

    d.   Statements in the case file criticize how the country is being run.

(Exhibit F at 41).

108.    Defendant Ms. Lerner did not engage in actions necessary to halt the application of the IRS Targeting Scheme despite knowing that it violated federal law and the First Amendment to the United States Constitution. Rather, starting in "January 2012 criteria again focused on the policy positions of organizations instead of tax-exempt laws and Treasury Regulations." (Exhibit F at 13.)

109.    Attached as Exhibit H is a July 17, 2013 letter from Members of Congress to Defendant Commissioner Werfel. This letter includes testimony describing the involvement of Defendant Mr. Wilkins, Defendant Ms. Lerner, and other IRS Employees in creating, overseeing, revising, and implementing the IRS Targeting Scheme.

110.    According to testimony of Carter Hull ("Mr. Hull"), an IRS tax law specialist in Washington, D.C. who was assigned to review some of the first applications of the Targeted Organizations, sometime in the winter of 2010-2011, the senior advisor to Defendant Ms. Lerner told Mr. Hull that Defendant Mr. Wilkins' office would need to review the applications of the Targeted Organizations. (Exhibit H at 2.)

111.    In an email to Defendant Mr. Seto, Defendant Ms. Lerner stated that the applications of the Targeted Organizations would need to go through a  "multi-tier review" and "they will eventually have to go [through her staff] and the chief counsel's office." (Exhibit H at 2.)

112.    Mr. Hull testified that this was the first time in his tenure as an IRS employee that Defendant Ms. Lerner's office had requested that he send applications for tax-exempt status to her office for review. (Exhibit H at 2.)

113.    On August 4, 2011, personnel from the Office of Rulings and Agreements—under the direction of Defendant Ms. Paz—and other IRS Employees held a meeting with Defendant Mr. Wilkins and his office "so that everyone would have the latest information on the [IRS Targeting Scheme]." (Exhibit F at 42.)

114.    Months later, Defendant Mr. Wilkins' office instructed Mr. Hull that "more information" was needed from the Targeted Organizations to process their applications for tax-exempt status. (Exhibit H at 3.)

115.    An IRS tax law specialist and an employee from Defendant Mr. Wilkins' office then prepared a "template" of questions that would be sent to the Targeted Organizations. (Exhibit H at 4.)

116.    The template questions included requests for information from the Targeted Organizations about the Targeted Organizations' political activities leading up to the 2010 election. (Exhibit H at 5.)

117.    Defendant Mr. Wilkins did not engage in actions necessary to halt the application of the IRS Targeting Scheme despite knowing that it violated federal law and the First Amendment to the United States Constitution. Rather, Defendant Mr. Wilkins and the Office of the Chief Counsel, under his direction and control, coordinated the development and implementation of the IRS Targeting Scheme.

118.    In January 2012, the IRS' written criteria used to identify and subject applications to the IRS Targeting Scheme included the following: "Political action type organizations involved in limiting/expanding government, educating on the constitution and bill of rights, [and] social economic reform/movement.'" (Exhibit F at 36.)

119.     In March 2012, and possibly earlier, Defendant Mr. Miller was made aware of the existence and application of the IRS Targeting Scheme.

120.     Defendant Miller did not engage in actions necessary to halt the application of the IRS Targeting Scheme despite knowing that it violated federal law and the First Amendment to the United States Constitution.

121.     In the spring of 2012, and possibly earlier, Defendant Mr. Shulman was made aware of the existence and application of the IRS Targeting Scheme.

122.     Defendant Shulman did not engage in actions necessary to halt the application of the IRS Targeting Scheme despite knowing that it violated federal law and the First Amendment to the United States Constitution.

123.     Defendants the IRS, Commissioner Werfel, Mr. Shulman, Mr. Miller, Mr. Wilkins, Ms. Lerner, Ms. Paz, Mr. Grodnitzky, Mr. Fish, Mr. Seto, Ms. Thomas, Ms. Maloney, Mr. Bell, Ms. Estes, Ms. Ng, and Unknown Named IRS Employees have not taken necessary actions to halt the IRS Targeting Scheme and to ensure that applicants subjected to the IRS Targeting Scheme instead received a determination for tax-exempt status despite actual knowledge that the IRS had received sufficient information from the applicants to make determinations of exempt status.

124.     The IRS Defendants knowingly developed, implemented, and applied the IRS Targeting Scheme in violation of the United States Constitution, the Internal Revenue Code governing tax-exempt organizations, procedures historically followed by the IRS, and Treasury Regulations.

125.     The IRS illegally and incorrectly categorized and characterized True the Vote based on its name, its affiliation with King Street Patriots, and other Tea Party groups, and the mission of True the Vote to protect the integrity of elections.

126.     True the Vote's Application was intentionally targeted for additional review and scrutiny by the IRS Defendants pursuant to the IRS Targeting Scheme because of True the Vote's affiliation with King Street Patriots and other Tea Party groups and the conservative policy positions these organizations are perceived to hold.

127.     King Street Patriots submitted its application for tax-exempt status as a social welfare organization in the spring of 2010. It has not yet received from the IRS a determination letter recognizing its tax-exempt status under 26 U.S.C. § 501(c)(4).

128.     The IRS Defendants made multiple, unnecessary, burdensome, and voluminous requests for information and documentation wholly unnecessary to the determination of True the Vote's tax-exempt status. These requests were propounded solely based on True the Vote's name, its affiliation with King Street Patriots, and its mission and purpose of protecting the integrity of elections.

129.     The IRS and IRS Employees made certain requests for information of True the Vote specifically identified in the TIGTA Report as being unnecessary for the determination of True the Vote's tax-exempt status. (Exhibit F at 26.) For example, True the Vote was asked to provide the following information:

   a.   List each past or present board member, officer, key employee and members of their families who:

      a)   Has served on the board of another organization.

      b)   Was, is or plans to be a candidate for public office. Indicate the nature of each candidacy.

    c) Has previously conducted similar activities for another entity.

    d) Has previously submitted an application for tax-exempt status.

(Exhibit D at 3.)

  b. Do you or will you endorse candidates? If yes, explain and answer the following:

    a) Provide your endorsement criteria.

    b) Once a candidate is endorsed, how does your organization handle the endorsement?

    c) Provide a list of all candidates you have endorsed.

    d) Does your organization notify the candidate of the endorsement? If yes, explain.

    e) Do you provide any materials to candidates, which they may use to promote their candidacy? If so, please describe and provide copies of those materials.

(Exhibit D at 8.)

  c. You have indicated you have a close connection with King Street Patriots.

    a) Provide the address of the organization.

    b) Describe in detail the nature of the relationship.

    c) Do you work with the organization(s) regularly?

    d) Provide copies of all related contracts with such organizations.

    e) Describe the nature of all contacts with the organizations.

    f) Do you share employees, volunteers, resources, office space, etc. with the organization(s)? If yes, explain.

(Exhibit D at 8.)

  d. Are you associated with any other IRC 501(c)(3), 501(c)(4) or 527 organizations? If yes:

    a) Provide the name, federal employer identification number and address of each organization.

31

      b) Describe in detail the nature of the relationship(s).

      c) Do you work with the organization(s) regularly?

      d) Provide copies of all related contracts with such organizations.

      e) Describe the nature of all contacts with the organizations.

      f) Do you share employees, volunteers, resources, office space, etc. with the organization(s)? If yes, explain.

(Exhibit D at 8.)

    e. Do you engage in business dealings with any candidate(s) for public office or an organization associated with the candidate, such as renting office space or providing access to a membership list? If so, describe the relationship in detail and provide contracts or other agreements documenting the business relationship.

      (Exhibit D at 9.)

    f. Has any person or organization provided educational services to you? If yes, provide the following:

      a) The name of the person or organization.

      b) A full description of the services provided.

      c) The political affiliation of the person or organization.

(Exhibit D at 9.)

    g. Have you conducted candidate forums at which candidates for public office were invited to speak? If yes, provide the following:

      a) Details, including the nature of the forums.

      b) The candidates invited to participate.

      c) The candidates that did participate.

      d) The issues discussed.

      e) The time and location of the event.

      f)  Copies of all materials distributed regarding the forum and provided at the forum, including any internet material discussing or advertising the forum.

(Exhibit D at 9.)

      h.  You have submitted handouts on teambuilding and presentations used to mobilize and train your volunteers (including Tab 19 and Tab 20 of your response). However, we need additional information on the following:

            d)  Please describe how you partner with Local Parties, local Election Officials and other authorities to place your volunteers as poll workers or poll watchers.

(Exhibit E at 3.)

      i. Please provide a breakdown of the total number of volunteers you have trained as poll watchers that:

            i.  were appointed by Democratic candidates or the Democratic Party,

            ii.  were appointed by Republican candidates or the Republican Party,

            iii.  were appointed by other candidates and other political parties (please specify the names the other parties).

(Exhibit E at 4.)

      j. Please provide a breakdown of the total number of volunteers you have trained as poll workers that:

            i.  were appointed by the Democratic Party,

            ii.  were appointed by the Republican Party,

            iii.  were appointed by other political parties (please specify the names of the other parties)?

      (Exhibit E at 4.)

130.   The questions contained in Paragraph 129 are but a sampling of the intrusive and burdensome questions propounded to True the Vote by the IRS Defendants and is representative of the unnecessary and discriminatory questioning of True the Vote by the IRS.

131.     Certain of the burdensome questions propounded by the IRS to True the Vote further demonstrate the utter disregard by the IRS Defendants of information provided by True the Vote in its initial application filed in July 2010. In its Application, True the Vote stated under penalty of perjury that it did not "support or oppose candidates in political campaigns in any way[.]" (Exhibit B at 9.) As a Section 501(c)(3) organization, True the Vote engages in no partisan campaign intervention, endorses no political candidates and makes no political expenditures.

132.     The IRS Defendants deliberately delayed the processing of True the Vote's Application on the basis of True the Vote's mission and philosophy, its name, and its affiliation with King Street Patriots.

133.     The deliberate targeting of True the Vote for additional review and scrutiny caused and is continuing to cause the IRS to withhold a determination of True the Vote's tax-exempt status.

134.     The mistreatment and mishandling of True the Vote's application for tax-exempt status and the refusal of the IRS Defendants to issue a determination letter recognizing True the Vote's tax-exempt status violate True the Vote's constitutional rights and has caused the organization substantial damages and financial hardship.

135.     The IRS Targeting Scheme was developed, revised, and implemented under the authority of Defendants the IRS, Mr. Miller, Mr. Shulman, Mr. Wilkins, Ms. Lerner, Ms. Paz, Mr. Fish, Mr. Grodnitzky, Mr. Seto, Mr. Thomas, and Unknown Named IRS Employees in violation of the Constitution of the United States and federal law. (Exhibit F at 35.)

136.     According to an internal IRS memorandum released by the IRS as part of a status report on the IRS Targeting Scheme, applications for tax-exempt status continued to be subjected

to the onerous IRS Targeting Scheme until June 20, 2013, when it was allegedly suspended. Werfel, Charting a Path Forward at the IRS: Initial Assessment and Plan of Action, Appendix C, June 24, 2013, *available at*

http://www.irs.gov/pub/newsroom/Initial%20Assessment%20and%20Plan%20of%20Action.pdf.

137.   The application of the IRS Targeting Scheme to True the Vote has substantially and materially interfered with its ability to engage in free speech, free association, and activities in furtherance of its charitable purpose.

138.   The violations by Defendants of True the Vote's constitutional rights have caused irreparable harm to True the Vote. Such harm will continue unless this Court provides the requested relief.

## COUNT I
### Declaratory Judgment Pursuant to 26 U.S.C. § 7428
### (Against Defendant U.S. Government)

139.   Plaintiff True the Vote realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

140.   Under 28 U.S.C. § 2201 of the Declaratory Judgment Act and 26 U.S.C. § 7428 of the Internal Revenue Code (the "Code"), this Court is empowered to issue a declaratory judgment regarding the initial qualification of an organization as an organization described in Section 501(c)(3) of the Code.

141.   True the Vote hereby seeks an Order declaring that it is exempt from federal income tax under Section 501(a) of the Code as a charity described in Sections 501(c)(3), 509(a)(1) and 170(b)(1)(A)(vi) of the Code.

142.   No part of True the Vote's earnings inures to the benefit of any private shareholder or individual.

143.     True the Vote does not participate or intervene in partisan political campaigns on behalf of or in opposition to any candidate for public office.

144.     To date, True the Vote has timely filed its IRS Form 990 for the relevant years.

145.     The unexplained and inexcusable delay in ruling on the substantially complete Form 1023 has caused True the Vote hardship and irreparable injury by thwarting significant donations from ready and willing donors.

146.     True the Vote is entitled to the relief requested because more than 270 days have passed since the filing of the substantially complete Form 1023 on July 15, 2010, and through no fault of True the Vote, the IRS still has not issued a Notice of Determination with respect to the Application. Due to the passage of the statutorily prescribed review period, all administrative remedies are deemed exhausted as a matter of law pursuant to 26 U.S.C. § 7428(b)(2).

147.     Pursuant to § 7430(a) of the Code, True the Vote is entitled to reasonable attorneys' fees, costs, and expenses in the prosecution of this action.

**COUNT II**
**Violation of the First Amendment to the United States Constitution**
**Declaratory and Injunctive Relief**
**(Against Defendants the IRS and Commissioner Werfel)**

148.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

149.     The First Amendment to the United States Constitution protects True the Vote's rights of free speech and association.

150.     The IRS Targeting Scheme under which True the Vote was deliberately subjected to additional review and scrutiny on the basis of True the Vote's affiliations, mission, and substantive philosophical views—actual or as perceived by the IRS Defendants—restricts the

36

freedom of speech and association of True the Vote and the persons associated with it, in violation of the First Amendment.

151.    The IRS Targeting Scheme under which the determination of True the Vote's tax-exempt status was deliberately delayed on the basis of True the Vote's affiliations, mission, and substantive philosophical views—actual or as perceived by the IRS Defendants—infringes upon the freedom of speech and association rights of True the Vote and the persons who operate, support, and associate with it, in violation of the First Amendment.

152.    The IRS Targeting Scheme was applied to True the Vote for the purpose of chilling True the Vote's expression of its views and right of free association in violation of the First Amendment.

153.    The application of the IRS Targeting Scheme to True the Vote has impaired the expressive associational effectiveness of True the Vote and its members.

154.    The conduct of Defendants the IRS and Commissioner Werfel has had a chilling effect on the willingness and ability of potential donors, grant-making foundations, and others to provide financial support to True the Vote.

155.    The deliberate delay of True the Vote's determination of exempt status for more than three years amounts to a functional denial of tax-exempt status, without True the Vote's having the benefit of its due process rights and an appeal of an actual denial.

156.    The existence and application of the IRS Targeting Scheme by the IRS and Commissioner Werfel constitutes blatant viewpoint discrimination in violation of the First Amendment.

157.     The existence and application of the IRS Targeting Scheme by the IRS and Commissioner Werfel constitutes First Amendment retaliation in violation of the First Amendment.

158.     Defendants the IRS and Commissioner Werfel knowingly and willfully applied the IRS Targeting Scheme to True the Vote and other applicants for tax-exempt status in violation of the First Amendment.

159.     Defendants the IRS and Commissioner Werfel have caused irreparable harm to True the Vote by violating True the Vote's First Amendment rights of freedom of speech and association.

160.     True the Vote has no other adequate remedy at law for Defendant IRS' violations of True the Vote's constitutional rights.

161.     This Court is empowered to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## COUNT III
### Violation of the First Amendment to the United States Constitution
### *Bivens* Action
### (Against Defendants Mr. Miller, Mr. Shulman, Mr. Wilkins, Ms. Lerner, Ms. Paz, Mr. Grodnitzky, Mr. Fish, Mr. Seto, Ms. Thomas, Ms. Maloney, Mr. Bell, Ms. Estes, Ms. Ng, and Unknown Named Employees of the Internal Revenue Service In Their Individual Capacities)

162.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

163.     The First Amendment to the United States Constitution protects True the Vote's right to free speech and association.

164.    In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403

U.S. 388 (1971), the Supreme Court recognized a civil action for money damages against federal

officials for constitutional violations while acting under the color of federal authority.

165.    Defendants Mr. Miller, Mr. Shulman, Mr. Wilkins, Ms. Lerner, Ms. Paz, Mr.

Grodnitzky, Mr. Fish, Mr. Seto, Ms. Thomas, Ms. Maloney, Mr. Bell, Ms. Estes, Ms. Ng, and

Unknown Named Employees of the IRS (the "IRS Employees"), while acting under the color of

federal authority, violated True the Vote's constitutional rights to free speech and association.

They did so by creating, developing, implementing, and applying the IRS Targeting Scheme to

True the Vote and by failing to prevent such development, implementation, and application by

others under their direct supervision and control despite knowledge of such unconstitutional

conduct.

166.    Defendant the IRS Employees knew, or reasonably should have known, that their

actions and omissions would violate True the Vote's constitutional rights.

167.    Congress has not provided any alternative, existing process, or remedy for

protecting the constitutionally recognized interests violated by the IRS Employees. This Court

may, therefore, recognize a remedy for damages under *Bivens v. Six Unknown Named Agents of*

*the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## COUNT IV
### Violation of 26 U.S.C. § 6103
### (Against Defendant the U.S. Government)

168.    Plaintiff realleges and incorporates by reference the preceding paragraphs of this

Complaint as though fully set forth herein.

169.    Title 26, U.S.C. § 6103 provides that tax "[r]eturns and return information shall be confidential" and prohibits disclosure and inspection by United States employees except as provided for by this provision.

170.    Title 26, U.S.C. § 7431 provides taxpayers a cause of action for damages against the U.S. Government for knowing or negligent unauthorized inspection of tax return information in violation of 26 U.S.C. § 6103.

171.    "Return information" is defined very broadly to include the following:

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b) [IRC Sec. 6110(b)]) which is not open to public inspection under section 6110 [IRC Sec. 6110][.]

26 U.S.C. § 6103(b)(2)(A)-(B).

172.    Because the IRS has not issued a written determination regarding True the Vote's Application, no information furnished by True the Vote to the IRS is open to public inspection under 26 U.S.C. §§ 6104 or 6110.

173.    All information furnished by True the Vote to the IRS is the "return information" of True the Vote pursuant to 26 U.S.C. § 6103(b)(2).

174.    Pursuant to the IRS Targeting Scheme, the IRS Defendants knowingly requested information from True the Vote that was and is unnecessary to its determination of True the Vote's tax-exempt status.

175.     Pursuant to the IRS Targeting Scheme, the IRS Defendants knowingly requested information from True the Vote in furtherance of the IRS' discriminatory and unconstitutional written identification and review policy.

176.     Title 26, U.S.C. § 6103(h) authorizes "inspection by…officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes."[2]

177.     Inspection of return information furnished by True the Vote to the IRS Defendants in response to questions the IRS Defendants knew or should have known to be unnecessary to the determination of True the Vote's tax-exempt status is not authorized under 26 U.S.C. § 6103 because it is *per se* not "for tax administration purposes."

178.     Inspection of return information furnished by True the Vote to the IRS Defendants in response to questions asked in furtherance of the IRS Defendants' discriminatory and unconstitutional Targeting Scheme is not authorized under 26 U.S.C. § 6103 because it is *per se* not "for tax administration purposes."

---

[2] The term "tax administration"--
    (A) means—

    (i)      the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and

    (ii)     the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

    (B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

26 U.S.C. § 6103(b)(4)(A)-(B).

179.    For example, the IRS Defendants knowingly inspected return information provided to the IRS in response to the non-exhaustive list of questions identified by the TIGTA report as "unnecessary," (Exhibit F at 26) *See supra* ¶¶ 117(a)-(j).

180.    True the Vote provided tax return information to the IRS Defendants in response to requests for additional information on March 7, March 8, and November 8, 2011 and on March 20 and November 30, 2012. (*See* Exhibit A.)

181.    This tax return information was inspected on and after these dates by IRS Employees—including Defendants Ms. Maloney, Mr. Bell, Ms. Estes, and Ms. Ng—who were the IRS agents to whom the information was addressed.

182.    The number of unauthorized inspections of True the Vote's return information and the identity of those who made the inspections cannot be completely and accurately ascertained at this time, but will be more fully known after the completion of discovery.

183.    Each such inspection was made willfully or as a result of gross negligence.

184.    At a minimum, each such inspection was made as a result of negligence.

185.    Such inspections did not result from a "good faith, but erroneous interpretation of section 6103," 26 U.S.C. § 7431(b)(1), because knowingly unnecessary and unconstitutional actions cannot be made in good faith, nor can any law be interpreted in good faith to permit unconstitutional conduct or conduct knowingly outside of its permissible scope.

186.    Such inspections were not requested by True the Vote, thus making it wrongful under 26 U.S.C. § 7431(b)(2).

187.    Each such inspection therefore violates 26 U.S.C. § 6103.

**Count V**
**Violations of the Administrative Procedure Act**
**(Against the IRS and the IRS Employees in Their Official Capacities)**

188.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this

Complaint as though fully set forth herein.

189.     The Administrative Procedure Act (the "APA") provides a cause of action for any

person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action against the United States, a United States agency, or an officer thereof. 5 U.S.C.

§ 702.

190.     Pursuant to 5 U.S.C. § 702, the U.S. Government has waived its sovereign

immunity in actions seeking relief other than money damages and stating a claim that an agency

or an officer or employee thereof acted or failed to act in an official capacity or under color of

legal authority.

191.     Pursuant to 5 U.S.C. § 706, this Court shall hold unlawful and set aside agency

action, findings, and conclusions found to be

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance
> with law;

> (B) contrary to constitutional right, power, privilege, or immunity;

> (C) in excess of statutory jurisdiction, authority, or limitations, or short of
> statutory right;

> (D) without observance of procedure required by law;

192.     Defendant the IRS is an agency of the U.S. Government for purposes of the APA.

193.     Defendants Commissioner Werfel, Mr. Shulman, Mr. Miller, Mr. Wilkins, Ms.

Lerner, Ms. Paz, Mr. Fish, Mr. Seto, Ms. Thomas, Ms. Maloney, Mr. Bell, Ms. Estes, Ms. Ng,

and Unknown Named Employees of the IRS, at times relevant to this Complaint, were officers of an agency of the U.S. Government for purposes of the APA.

194.    The IRS Defendants' discriminatory and unlawful application of the IRS Targeting Scheme to True the Vote based on True the Vote's mission, its perceived philosophical policy positions, and its affiliation with King Street Patriots and other groups constitutes final agency action that is contrary to True the Vote's constitutional rights to due process under the Fifth Amendment, and freedom of speech and association under the First Amendment.

195.    Title 26, U.S.C. § 501(a) exempts from federal income tax groups described in 26 U.S.C. § 501(c)(3).

196.    Title 26 U.S.C. § 508(a)(1) requires organizations seeking tax-exempt status under 26 U.S.C. § 501(c)(3) to "give[] notice to the Secretary in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status."

197.    Pursuant to 26 U.S.C. § 7803(2), the IRS Commissioner is empowered to administer, manage, conduct, direct, and supervise the execution and application of the internal revenue laws.

198.    Title 26, C.F.R. § 1.501(a)-1 permits the IRS Commissioner to "require any additional information deemed necessary for a proper determination of whether a particular organization is exempt under section 501(a)."

199.    The IRS Defendants' application of the IRS Targeting Scheme to True the Vote, under which the IRS Defendants required True the Vote to provide information wholly unnecessary for a determination of True the Vote's tax-exempt status, violated the IRS

Defendants' statutory and agency authority under the Internal Revenue Code and the rules and regulations promulgated thereunder.

200.    The IRS Defendants' application of the IRS Targeting Scheme to True the Vote is contrary to the intention of Congress as expressed in 26 U.S.C. §§ 501(a), 501(c)(3), and 508(a).

201.    The IRS Defendants' application of the IRS Targeting Scheme to True the Vote, under which IRS Defendants required True the Vote to provide information wholly unnecessary for a determination of True the Vote's tax-exempt status, violated the IRS Defendants' authority under Internal Revenue Manual § 7.20.2.4.1, which requires "requests for additional information" to be "relevant to the paragraph of section 501(c) appropriate to the applicant."

202.    The IRS Defendants departed from customary and established procedures in the processing the applications of the Targeted Organizations, applying arbitrary and subjective criteria for consideration of True the Vote's Application and which criteria are still unknown to True the Vote and other Targeted Organizations. (*See* Exhibit H.) Such criteria were created and implemented without observance of procedures required by law, exceed the statutory and agency authority of the IRS Defendants, are arbitrary and capricious, and are contrary to law. True the Vote has no knowledge or notice of the legal standard(s) by which its Application has been judged and processed by the IRS Defendants.

203.    The IRS Defendants have subjected True the Vote to discriminatory treatment in the processing of its Application and have applied subjective criteria to True the Vote that have not been applied to other applicants for exempt status.

204.    The deliberate delay of True the Vote's determination for nearly three years amounts to a functional denial of tax-exempt status, while depriving True the Vote of its due process right to appeal an adverse decision on the Application.

205.   The IRS Defendants' functional denial of True the Vote's Application was arbitrary and capricious and contrary to law.

206.   True the Vote has no other adequate remedy at law for the IRS Defendants' violations of True the Vote's constitutional and statutory rights.

## Damages

207.   Title 26, U.S.C. § 7431 authorizes damages "in an amount equal to the sum of—

(1) the greater of—
    (A) $ 1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or
    (B) the sum of--
        (i) the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus
        (ii) in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus
(2) the costs of the action, plus
(3) in the case of a plaintiff which is described in section 7430(c)(4)(A)(ii), reasonable attorneys fees, except that if the defendant is the United States, reasonable attorneys fees may be awarded only if the plaintiff is the prevailing party (as determined under section 7430(c)(4)).

208.   The number of unauthorized inspections of True the Vote return information cannot be completely and accurately ascertained at this time, but will be more fully known after the completion of discovery. At minimum, Defendant the U.S. Government is liable for $1,000 for each unauthorized inspection by employees of the U.S. Government.

209.   The IRS Defendants' conduct has caused True the Vote to incur substantial costs preparing responses to the IRS Defendants' unnecessary, burdensome and unconstitutional requests for information.

210.   Because the IRS Defendants delayed the processing of True the Vote's Application, True the Vote was forced to forfeit a foundation grant in the amount of $25,000 that was contingent on True the Vote receiving its tax-exempt status.

46

211.    Because the IRS Defendants deliberately delayed the processing of True the Vote's Application, True the Vote was forced to return a foundation grant in the amount of $35,000 that was contingent on True the Vote receiving its tax-exempt status.

212.    Because the IRS and IRS Employees deliberately delayed the processing of True the Vote's Application, True the Vote was forced to forgo applying for grants from other grant-making foundations that had committed to support True the Vote.

213.    Because the IRS and IRS Employees deliberately delayed the processing of True the Vote's Application, True the Vote was forced to forgo other fundraising opportunities.

214.    WHEREFORE, True the Vote prays for the relief set forth below.

## Prayer for Relief

Plaintiff True the Vote respectfully requests the following relief:

1.  A declaration that the True the Vote is exempt from federal income taxation under Section 501(a) of the Internal Revenue Code as a charity described in Sections 501(c)(3), 509(a)(1) and 170(b)(1)(A)(vi) of the Internal Revenue Code;

2.  A declaration that the IRS Targeting Scheme and any other similar policies are unconstitutional under the First Amendment to the United States Constitution;

3.  Injunctive relief to prevent the IRS from further implementing and applying the IRS Targeting Scheme and any other similar practices and policies;

4.  Injunctive relief to prevent the IRS from illegally inspecting True the Vote's the return information;

5.  An award to True the Vote of $1,000 in damages for each unauthorized inspection of its return information;

6. An award to True the Vote in excess of $85,000 in actual damages for its costs and losses incurred as a result of the IRS Targeting Scheme and the IRS Employees' violations of True the Vote's constitutional rights;

7. An award to True the Vote of actual damages incurred as a result of the unauthorized inspections of its return information;

8. An award to True the Vote punitive damages pursuant to 26 U.S.C. § 7431 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971);

9. Costs and reasonable attorneys' fees under 26 U.S.C. § 7431 and 28 U.S.C. § 2412 or other statute; and

10. Such other relief as the Court deems just.


Respectfully submitted this 22nd day of July, 2013


Kaylan L. Phillips (D.C. 1110583)
Noel H. Johnson (Wisc. 1068004)*
Zachary S. Kester (Ind. 28630-49)*
ACTRIGHT LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@actrightlegal.org
njohnson@actrightlegal.org
zkester@actrightlegal.org
*Counsel for Plaintiff*

John C. Eastman (Cal. 193726)*
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 (telephone and fax)
jeastman@chapman.edu
*Counsel for Plaintiff*

s/Cleta Mitchell
Michael J. Lockerby (D.C. 502987)**
Cleta Mitchell (D.C. 433386)
FOLEY & LARDNER, LLP
Washington Harbour
3000 K Street NW Suite #600
Washington, DC 20007
(202) 672-5300 (telephone)
(202) 672-5399 (fax)
mlockerby@foley.com
cmitchell@foley.com
*Lead Counsel for Plaintiff*

*Pro Hac Vice Motions granted*
** *Pro Hac Vice Motion pending*

48

**VERIFICATION OF COMPLAINT
PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 20, 2013

Catherine Engelbrecht
President, True the Vote, Inc.