**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| TRUE THE VOTE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-00734-RBW |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MOTION TO DISMISS COUNTS I, II, IV AND V
AND STATEMENT OF POINTS AND AUTHORITIES**

In its First Amended Complaint, the Plaintiff, True the Vote, Inc., makes the following claims: (1) a claim for a declaratory judgment determining that Plaintiff is a tax-exempt organization pursuant to 26 U.S.C. § 501(c)(3); (2) a claim for declaratory relief that the Internal Revenue Service and defendant Werfel, acting in his official capacity, violated Plaintiff's rights under the First Amendment to the U.S. Constitution, and an injunction to prevent further alleged unauthorized actions; (3) *Bivens* actions against the individual defendants for violations of Plaintiff's rights under the First Amendment; (4) claims for violations of 26 U.S.C. § 6103, which relates to the unauthorized inspection of tax returns or tax return information; and, (5) a claim against the Service and Service employees sued in their official capacities based on violations of the Administrative Procedure Act.  (Doc. 14 at 35-46.)

All of Plaintiff's claims relate to its request that the Service exempt Plaintiff from federal taxes under 26 U.S.C. § 501(c)(3).  Since Plaintiff filed this action, the Service has determined, with the concurrence of the United States Department of Justice, to grant Plaintiff's application for tax-exempt status and is in the process of issuing a favorable determination letter.  As a

result, Plaintiff's claims for a determination of its tax status (Count I), for declaratory and

injunctive relief under the First Amendment (Count II) and for judicial review under the APA

(Count V) will be moot.  Plaintiff's claims in Count II also are barred by operation of the

Declaratory Judgment Act and the Anti-Injunction Act, and the APA claim fails to state a claim

upon which relief can be granted since Plaintiff has two alternative legal remedies, namely a

section 7428 action and a *Bivens* action.  The only remaining claim against the government

defendants is the claim for damages for alleged unauthorized inspection of return information

(Count IV).[1]  As described below, Plaintiff has failed to state a claim upon which relief may be

granted as to Count IV.  The United States, on behalf of itself, the Service, and the Service

employees named in their official capacities, thus move to dismiss each of those claims, leaving

no other claims against them requiring a response.  Pursuant to Local Rule 7(a), a supporting

statement of points and authorities is incorporated with this motion.

## STATEMENT OF POINTS AND AUTHORITIES

## I.      PLAINTIFF'S CLAIMS RAISED IN COUNTS I, II AND V WILL BE MOOT.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome."  *Munsell v. Dep't of Agriculture*,

509 F.3d 572, 581 (D.C. Cir. 2007) (quoting *County of Los Angeles v. Davis*, 440 U.S. 626, 631

(1979)).  "[F]ederal courts are without power to decide questions that cannot affect the rights of

litigants in the case before them.  The inability of the federal judiciary to review moot cases

derives from the requirement of Art. III of the Constitution under which the exercise of judicial

---

[1] Count III, the *Bivens* count, is only against defendants in their individual capacities, all of
whom are being represented by private counsel, and thus, that Count is not brought against the
United States and is not addressed here.

2

power depends upon the existence of a case or controversy." *Id*. (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (internal quotation marks and citations omitted)).

Once Plaintiff has been given tax-exempt status, no "live" case or controversy will exist as to its claim in Count I. Through that claim, Plaintiff seeks a determination that it is an organization exempt from federal taxation. (Doc. 14 ¶ 141.) The Service has determined that Plaintiff is entitled to receive tax-exempt status and soon will send a letter to Plaintiff advising that its application has been granted. As a result, there will be nothing left for the Court to decide as to that claim.

Plaintiff's First Amendment claim in Count II similarly will be moot. In that count, Plaintiff seeks declaratory and injunctive relief to remedy alleged violations of its First Amendment rights. (Doc. 14 ¶¶ 150-61.) But there is no threat of imminent harm or ongoing harm for any declaration or injunction to remedy.

Specifically, Plaintiff alleges that the Service engaged in a practice of subjecting certain applications for tax exemption to heightened scrutiny and delays in processing based on the perception that the applicants espoused conservative points of view and that the application of that policy to Plaintiff violated its rights under the First Amendment. (Doc. 14 ¶¶ 73-74, 150-51.) Plaintiff's claim hinges on the existence of an *ongoing* delay in the consideration of *its* application for tax exemption, but any such delay will have ended once Plaintiff is granted tax-exempt status. Assuming Plaintiffs' factual allegations are true, at best Plaintiff describes a past event that carries no present threat of injury *to Plaintiff* now that it will have attained tax-exempt status. Plaintiff's claim for declaratory and injunctive relief under the First Amendment will be moot because Plaintiff will no longer have standing, assuming it ever did, to pursue that relief. *See Munsell*, 509 F.3d at 581 (finding that, even if plaintiff could prove past violation of its First

Amendment rights, past conduct did not demonstrate "real and immediate threat" of future harm to justify declaratory and injunctive relief).

And Plaintiff's APA claim will be moot because it presents no "live" case or controversy for this Court to consider. Through its APA claim, Plaintiff seeks judicial review of what it calls the "functional denial of tax-exempt status" because of alleged "deliberate delay" in acting on its application. (Doc. 14 ¶ 204.) With the determination of Plaintiff's tax-exempt status in its favor, there will be no denial – either actual or "functional" – for the Court to review.

The Supreme Court's discussion of "final agency action" in *FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232 (1980) supports a finding that the granting of relief by the agency, even after suit has been brought, moots any APA claim. In that case, the Court found that an agency's decision to issue an administrative complaint – which had yet to be followed by a complete adjudication – did not qualify as final agency action, without which judicial review under the APA is unavailable. *Id.*, 449 U.S. at 239, 242-43. The FTC had brought a complaint against the Standard Oil Company of California, or "Socal," under the Federal Trade Commission Act, which authorized the FTC to bring administrative complaints against various entities upon "reason to believe" that the entity had or was using unfair competition methods or was engaged in unfair or deceptive acts involving commerce. *Id.*, 449 U.S. at 234.

The Supreme Court noted the decision of the appellate court, which had ruled that judicial review was appropriate at that stage and which also "suggested that the complaint would be 'insulated' from review because the alleged unlawfulness would be moot if Socal prevailed in the adjudication." *Id.*, 449 U.S. at 244 n.11. Contrary to the appellate court's suggestion, the Supreme Court found that that argument supported a conclusion that deferred judicial review until the final agency action, concluding that "the possibility that Socal's challenge may be

mooted in adjudication warrants the requirement that Socal pursue adjudication, not shortcut it."
*Id*. That discussion highlights how, as has happened here, administrative action in favor of the
party seeking it will render moot any further request for judicial review.

Once Plaintiff receives a determination of tax-exempt status, Plaintiff's claims in Counts
I, II and V will leave no real controversies for the Court to decide. Those claims thus will be
moot and should be dismissed.

## II.     THE RELIEF THAT PLAINTIFF SEEKS THROUGH COUNT II IS PRECLUDED BY STATUTE.

The Declaratory Judgment Act and the Anti-Injunction Act preclude the relief Plaintiff
seeks under the First Amendment in Count II: a declaratory judgment that the Service violated
Plaintiff's First Amendment rights by its treatment of Plaintiff's application for tax exemption
and an injunction to prevent further similar practices and policies. "In a case of actual
controversy within its jurisdiction,"[2] the Declaratory Judgment Act permits a court to issue a
declaratory judgment "except with respect to Federal taxes other than actions brought under
section 7428 of the Internal Revenue Code." 28 U.S.C. § 2201(a). With exceptions not relevant
here, the Anti-Injunction Act similarly prohibits lawsuits filed "for the purpose of restraining the
assessment or collection of any tax." 26 U.S.C. § 7421(a). Because of the similarity of those
Acts, they are viewed to "operate coterminously," and the determination of the application of one
also governs the other. *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C.
Cir. 1995).

---

[2] As described above in part I, Plaintiff's claim for declaratory and injunctive relief presents no "actual controversy" for this Court to decide.

The primary purpose of the Anti-Injunction Act is to protect the government's ability to assess and collect taxes expeditiously with a minimum of pre-enforcement judicial interference. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974). Here, even though Plaintiff couches its claim in Count II in constitutional terms, the determination of Plaintiff's tax-exempt status – and thus whether it owes federal taxes – remains at the heart of that claim. Any injunctive relief aimed at the Service's processes for determining Plaintiff's tax status necessarily interferes with the Service's tax collection. In that circumstance, the Court may grant a pre-enforcement injunction only if there are no circumstances whatsoever under which the government might ultimately prevail *and* if equity jurisdiction otherwise exists. *Alexander v. Americans United Inc.*, 416 U.S. 752, 758 (1974) (citing *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). The fact that Plaintiff raises a constitutional claim does not alter that analysis. *Americans United*, 416 U.S. at 759-63 (applying the *Williams Packing* criteria and denying injunctive relief to entity seeking tax-exempt status under section 501(c)(3) in its attempt to challenge the constitutionality of statute).

Here, it is clear that equity jurisdiction does not exist because Plaintiff has adequate legal remedies available to pursue its claims. Plaintiff not only has, but also has exercised, its alternative legal remedy to obtain a determination of its tax status under section 7428. And, to the extent that Plaintiff seeks a remedy directly dealing with its constitutional rights, it has pursued a claim under *Bivens*. The Anti-Injunction Act and the Declaratory Judgment Act thus bar the injunctive and declaratory relief that Plaintiff requests in Count II in connection with the determination of its tax status.

**III.    PLAINTIFF FAILS TO STATE A VIABLE CLAIM IN COUNT IV.**

Count IV, alleging that Service employees engaged in an unauthorized inspection of Plaintiff's tax return information by merely reviewing the information Plaintiff freely provided them, also fails to state a claim upon which relief can be granted.  As shown above, Plaintiff has alleged a variety of causes of action to recover damages arising from the application process.  All of Plaintiff's claims rely on the assertion that the Service wrongly "targeted" Plaintiff's application for unnecessary scrutiny.  All of Plaintiff's claims are based upon the nature and scope of the Service's requests that Plaintiff submit specific information in support of its application for exempt status.

Count IV is no different.  Plaintiff alleges the Service violated the confidentiality provision of the Internal Revenue Code, 26 U.S.C. § 6103, when Service employees reviewed the information submitted by Plaintiff.  Plaintiff's claim can be summarized as this: the Service should not have asked Plaintiff for certain information, and therefore, when the Plaintiff submitted information and the Service reviewed it, the Service violated section 6103 and damages should be awarded under 26 U.S.C. § 7431.

Plaintiff overreaches; calling this a section 6103 claim is nothing more than different wrapping paper around the same box.  Whether this series of events gives rise to liability under some other statute or legal principle, the Plaintiff does not state a claim for relief under section 6103 or 7431.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must make sufficiently detailed factual allegations in his complaint "to raise a right to relief above the speculative level." *Bell Atlantic*

*Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). In evaluating a Rule

12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the

complaint," *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007), and "grant the

plaintiff the benefit of all inferences that can be derived from the facts alleged," *Trudeau v. FTC,*

456 F.3d 178, 193 (D.C. Cir. 2006).  However, "a plaintiff's obligation to provide the grounds of

his entitlement to relief [in its complaint] requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555,

127 S.Ct. at 1965.  Moreover, the Court need not accept "legal conclusion[s] couched as ...

factual allegation[s]" or inferences that are not supported by facts set forth in the complaint.

*Trudeau,* 456 F.3d at 193.

Section 6103 serves to protect the confidentiality of tax return information, which is

defined broadly in 26 U.S.C. § 6103(b)(2) to include:

> a taxpayer's identity, the nature, source, or amount of his income, payments,
> receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability,
> tax withheld, deficiencies, overassessments, or tax payments, whether the
> taxpayer's return was, is being, or will be examined or subject to other
> investigation or processing, or any other data, received by, recorded by, prepared
> by, furnished to, or collected by the Secretary with respect to a return or with
> respect to the determination of the existence, or possible existence, of liability (or
> the amount thereof) of any person under this title for any tax, penalty, interest,
> fine, forfeiture, or other imposition, or offense.

Section 6103, however, contains numerous exceptions to the general principle of

confidentiality, including:

> Returns and return information shall, without written request, be open to
> inspection by or disclosure to officers and employees of the Department of the
> Treasury whose official duties require such inspection or disclosure for tax
> administration purposes.

26 U.S.C.§ 6103(h)(1).  "Tax administration" is defined broadly to mean "the administration,

management, conduct, direction, and supervision of the execution and application of the internal

revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions

to which the United States is a party," and it "includes assessment, collection, enforcement,

litigation, publication, and statistical gathering functions under such laws, statutes, or

conventions." 26 U.S.C. § 6103(b)(4).

A taxpayer has a private right of action "[i]f any officer or employee of the United States

knowingly, or by reason of negligence, inspects or discloses any return or return information

with respect to [the] taxpayer in violation of section 6103…." 26 U.S.C. § 7431.

## DISCUSSION

Plaintiff mistakenly asserts that the Service violated section 6103 when it "inspected" the

materials that Plaintiff submitted in support of its application for tax exempt status. (Doc. 14 ¶ ¶

169-187.) Plaintiff concedes, as it must, that "[a]ll information furnished by True the Vote to the

IRS is the 'return information' of True the Vote pursuant to 26 U.S.C. § 6103(b)(2)." (Doc. 14 ¶

173.) Indeed, such materials were "received by, … furnished to, or collected by the Secretary

…." 26 U.S.C. § 6103(b)(2)(A). Moreover, "all information communicated *to, from, and within*

*the IRS* regarding the actual or potential tax liabilities, audits, or *tax-exempt status* of a particular

organization falls under the broad definition of 'return information' in § 6103." *Landmark Legal*

*Foundation v. IRS*, 87 F. Supp. 2d 21, 26 (D.D.C. 2000), *aff'd*, 267 F.3d 1132, 1336 (D.C. Cir.

2001) (emphasis supplied). But what Plaintiff fails to do is state a claim for the unauthorized

inspection of that tax return information.

### A. **Plaintiff Fails to Identify the Information that the Service Wrongfully Inspected.**

Plaintiff does not identify *what* return information was wrongfully inspected. Surely,

Plaintiff would not argue that *all* the information it submitted in connection with its application

was off limits to the Service. But Plaintiff makes no effort whatsoever to describe what portion

9

of its return information was wrongfully inspected.  (See Doc. 14 ¶¶ 169-187.)[3]  Therefore,

Plaintiff fails to state a claim upon which relief may be granted.  *See, e.g.*, *Fostvedt v. United States*, 824 F. Supp. 978, 985-986 (D. Colo. 1993) (collecting cases where section 7431 claim was dismissed for insufficient specificity about information disclosed or inspected); *Schroeder v. United States*, No. 12-cv-00152, 2013 WL 3832445, at*2 (D. Nev. July 23, 2013) (dismissing section 7431 claim where plaintiff alleged "unlawful inspection of his 'tax return information'");

*Dean v. United States*, No. 09-3095, 2010 WL 1257792, at *4-5 (D.N.J. Mar. 29, 2010).

**B.**  **Section 6103 Does Not Bar the IRS From Inspecting the Very Same Information That Plaintiff Submitted for Consideration in Support of Its Tax Exempt Application.**

Plaintiff's section 6103 claim is flawed in ways that run deeper than insufficient pleading.

As with Plaintiff's other claims, the basis of the section 6103 claim is the nature of the Service's requests for information.  Plaintiff concludes that the inspection was unauthorized under section 6103 because the unspecified information was "furnished by True the Vote to the IRS Defendants in response to [1] questions the IRS Defendants knew or should have known to be unnecessary to the determination of True the Vote's tax exempt status," and "[2] questions asked in furtherance of the IRS Defendants' discriminatory and unconstitutional Targeting Scheme." (Doc. 14 ¶¶ 177-178.)  According to the Plaintiff, such inspection is "*per se* not for tax administration purposes."  (*Id.*)  *Cf.* 26 U.S.C. § 6103(b)(4) (defining "tax administration purposes").

---

[3]  To the extent that Plaintiff would identify any inspections prior to May 21, 2011, its claim would be time-barred because section 7431(d) requires that an action be filed within two years of when Plaintiff knew or reasonably should have known of the inspection.  (See Doc. 1 (filed May 21, 2013).)

Plaintiff's claim is that the Service and its employees targeted it for special treatment and requested the Plaintiff provide information in support of its application that was not truly necessary to the determination of its tax-exempt status.  Sections 6103 and 7431 provide a remedy for the improper inspection and disclosure of tax return information, not the Service's alleged improper obtaining of information.  As a result, Plaintiff's claim fails as a matter of law.

> **1.  Section 7431 Is Not a Remedy for Alleged Improper Requests For Information.**

Section 7431 does *not* limit what the Service's officers and agents can ask for in the course of an investigation.  That provision, therefore, is inapplicable in this case.  After an amendment in 1997, section 7431 provides a civil remedy for unauthorized inspection of tax return information.  *See* Taxpayer Browsing Protection Act, Pub. L. 105-35, 11 Stat. 1104 (1997) (amending section 7431 to include "inspection" as grounds for relief).  The legislative history – indeed the name of the legislation itself – belies any connection to the facts alleged by Plaintiffs in this case.

The "Taxpayer Browsing Protection Act" was squarely and exclusively aimed to deter Service employees and contractors from improperly accessing existing tax records.  *See id.* at H1466 (statement of Rep. Neal, "This legislation will provide a deterrent against IRS employees taking a quick look at tax returns for purposes not related to work."); *id.* at H1467 (statement of Rep. Kleczka, "This bill will prohibit unauthorized review or browsing of Federal tax information *which the IRS possesses*." (emphasis supplied)); Statement by President William J. Clinton Upon Signing H.R. 1226 (Taxpayer Browsing Protection Act), 33 Weekly Comp. Pres. Doc. 1226 (Aug. 11, 1997), 1997 WL 806823 ("Maintaining the confidentiality of the information submitted by taxpayers is critical to the operation of this system [of taxation]. …

This is a bipartisan issue on which everyone can agree: 'browsing' taxpayer information is wrong and we all condemn it.").

The legislation was spurred by reports that curious employees accessed taxpayers' records in Service files, including those belonging to celebrities. *E.g.,* 464 (statement of Rep. Camp, referring to reports of "IRS employees even browsing the records of celebrities like Tom Cruise"); *id.* at H1466 (statement of Rep. Neal, "IRS employees should not act on impulses based upon curiosity. It may be tempting to look at the tax files of such famous individuals as Lucille Ball, but everyone should have their expectation of privacy met."). The legislation itself, the committee report, the Congressional Record, and President Clinton's signing statement all unequivocally demonstrate that "inspection" was added to section 7431 to address a problem which is wholly different from the Plaintiff's allegations of improper requests for information.

Moreover, a thorough search of section 7431 case law did not produce a single case where a court has held that section 6103 or 7431 was an appropriate remedy for allegations of improper requests for information from a taxpayer. In fact, to the contrary, courts have recognized that section 7431 is limited to address "information handling" and not other functions performed by the Service. *See, e.g.*, *Venen v. United States*, F.3d 100, 105-107 (3d Cir. 1994) (concluding that section 7431 can only challenge "information handling," and was not applicable in a challenge to the underlying validity of the collection of tax); *Wilkerson v. United States*, 67 F.3d 112, 116-118 (5th Cir. 1995) (same).

### 2. Section 7431 Explicitly Bars Plaintiff's Claim Because Plaintiff Requested That the IRS Inspect the Information It Submitted for Review.

In the "Taxpayer Browsing Protection Act," Congress specifically barred section 7431 "inspection" claims if the taxpayer requested the inspection by the Service. *See* 26 U.S.C.

§ 7431(b)(2); Pub. L. 105-35 § 3(c) ("NO DAMAGES FOR INSPECTION REQUESTED BY

TAXPAYER").  That is common sense, but it is also an express limitation on the waiver of

sovereign immunity that must be strictly construed.  In order to evade this statutory bar to relief

in this case, Plaintiff baldly claims that it did not request the Service's inspections of the tax

return information it submitted to the Service.  (Doc. 14 ¶ 186.)  Plaintiff offers no factual

allegations to support that statement, and in fact, the circumstances and facts pled by Plaintiff

refute that assertion.  If Plaintiff was not requesting that the Service review the documents it

submitted, what was the purpose of submitting the information?  Plaintiff chose to file an

application for tax exempt status and, in the course of the Service's investigation, Plaintiff

submitted information in response to requests for additional information.  Plaintiff alleges no

reason for submitting the information other than the hope that the Service would review the

information and grant the pending application for tax-exempt status.  Accordingly, section

7431(b)(2) bars the relief that Plaintiff seeks because it requested that the Service inspect the

information.

### 3.  Under Section 6103, the IRS Was Authorized To Inspect the Information Submitted by the Plaintiff.

By relying on an argument that the inspection was "*per se* not for tax administration

purposes," Plaintiff implies that **no one** at the Service could inspect the information that Plaintiff

submitted without running afoul of section 6103.  *See* 26 U.S.C. § 6103(h)(1) (explicit exception

for employees of the Department of Treasury if for "tax administration purposes").  Plaintiff may

believe that the Service should not have asked for the information, but Plaintiff seeks a

nonsensical result: a taxpayer can submit information to the Service and then seek damages

under section 7431 if the Service reviews documents that the taxpayer believes the Service didn't

need.  Section 6103's purpose, however, is to protect information in the possession of the

Service, to prevent its unauthorized disclosure by the Service, and to prevent unauthorized inspection within the Service.  It strains credulity that Plaintiff, on the one hand, sought tax exempt status and asked the Service to determine its eligibility, but now claims the Service was barred from reviewing the information submitted in support of the application.  This plainly illustrates the Plaintiff's misplaced reliance on section 6103 as the remedy to Plaintiff's perceived harm.

Moreover, Plaintiff's own allegations demonstrate that the challenged inspections were authorized under section 6103(h)(1).  As alleged in the complaint, Plaintiff submitted the information to the Service in response to specific requests for additional information.  The Service requested the additional information in the course of investigating Plaintiff's eligibility for tax exempt status under the Internal Revenue Code.  Therefore, notwithstanding Plaintiff's conclusory statement to the contrary, the information was inspected in connection with tax administration – namely, the resolution of Plaintiff's application for tax exempt status.  That conclusion is consistent with this Court's reasoning in *Lehrfeld v. Richardson*, 954 F. Supp. 9 (D.D.C. 1996), where the Court definitively held that information relating to a tax-exempt application is "return information" for purposes of section 6103.  As the Court explained,

> IRS argues, and the Court concurs, that the *proceeding* involving the determination of an organization's tax-exempt application is an investigation of the taxpayer by the IRS directly related to that organization's tax liability . . . An official inquiry, into the qualification of an organization for tax-exempt status, even the initial inquiry, is *an IRS investigation* related to that organization's tax liability.

*Lehrfeld*, 954 F. Supp. at 13 (emphasis supplied).

Finally, Plaintiff's approach to section 7431 and 6103 would cause drastic consequences for the federal tax system.  If Plaintiff's interpretation of those sections is adopted by the Court, taxpayers who are dissatisfied with the Service's audit or investigation can obtain relief for

improper "inspection."  For example, if a taxpayer submits documentation of an income tax deduction, according to the Plaintiff's logic, *section 7431* would allow that taxpayer to challenge the *necessity* of each and every item of information on every page voluntarily submitted to the Service.  Courts would be enlisted to review the minute details of a routine audit to evaluate whether the Service requested more information than was necessary and, if so, award damages to the taxpayer as a violation of confidentiality.  All of this, Plaintiff argues, is contemplated by sections 6103 and 7431.  Plaintiff is wrong.  Those two statutes are aimed at protecting the confidentiality of tax return information from unauthorized disclosure or improper browsing. Those statutes do **not** extend to cover the second-guessing of the Service's requests for information during the course of an investigation.[4]

## IV.    PLAINTIFF FAILS TO STATE A VIABLE CLAIM IN COUNT V.

Under the Administrative Procedure Act, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  But that seemingly broad grant of judicial review is limited to "final agency action for which there is *no other adequate remedy* in a court."  *Id*. § 704 (emphases added).  The fact that Plaintiff has other legal remedies available to it precludes its claim for judicial review.

Not only does Plaintiff have other adequate legal remedies available, it has raised those other claims in this suit.  To the extent that Plaintiff seeks review of its application for tax-

---

[4] In addition to seeking damages, Plaintiff also seeks an injunction to "prevent the IRS from illegally inspecting [plaintiff's] return information."  (Doc. 14 at 47.)  Section 7431, however, does not waive sovereign immunity to allow for injunctions as a remedy for unauthorized inspection.  See 26 U.S.C. § 7431.  Moreover, as discussed above, the Anti-Injunction Act also bars this relief.  See 26 U.S.C. § 7421(a).

exempt status, Plaintiff has available – and has raised – a claim to determine whether it qualifies for tax-exempt status under 26 U.S.C. § 7428 (Count I of the Amended Complaint).  To the extent that Plaintiff seeks review to vindicate any alleged violations of its constitutional rights, Plaintiff has available – and again has raised – claims under *Bivens* (Count III of the Amended Complaint).  The fact that the plaintiff has other adequate legal remedies available precludes any judicial review that it seeks under the APA.

## CONCLUSION

Now that Plaintiff will receive a determination of tax-exempt status, Plaintiff's claims in Counts I, II and V simply leave no real controversies for the Court to decide.  Those claims – for a determination of its tax status, for declaratory and injunctive relief to remedy alleged violations of Plaintiff's First Amendment rights, and for judicial review under the Administrative Procedure Act – will be moot and should be dismissed.  In addition, the Court lacks jurisdiction to award the relief requested in Count II, and Count V fails to state a cognizable APA claim.

Plaintiff's claim in Count IV fares no better.  Plaintiff ignores the statutory structure and purpose of section 6103.  Section 6103(a) requires that the Service keep tax return information confidential by preventing unauthorized disclosures.  Section 6103 then provides a litany of exceptions to the general requirement of confidentiality, one – section 6103(h)(1) – which Plaintiff unsuccessfully attempts to address in its complaint.  But Plaintiff does not allege the Service failed to keep the materials confidential.  Instead, Plaintiff relies solely on an argument that the Service should never have requested the information from the Plaintiff, and then, having received the information, should not have looked at it.  That position, true or not, is inapposite to the purpose and parameters of section 6103.  A taxpayer cannot voluntarily give information to the Service during the course of an investigation prompted *by the taxpayer*, and then sue for

16

damages under sections 6103 and 7431 when the Service inspects the information.  To the extent

Plaintiff believed the questions asked by the Service were overbroad, redress may be available

but ***not*** through section 6103 and the narrow waiver of sovereign immunity in section 7431.

WHEREFORE, the United States respectfully prays the Court dismiss Counts I, II and V

under Fed. R. Civ. P. 12(b)(1) for mootness and dismiss Count IV under Fed. R. Civ. P. 12(b)(6)

for failure to state a claim upon which relief may be granted.

DATED: September 20, 2013

Respectfully submitted,

KATHRYN KENEALLY
Assistant Attorney General, Tax Division

/s/ *Grover Hartt, III*
GROVER HARTT, III (TX 09174500)
Senior Litigation Counsel
CHRISTOPHER R. EGAN (TX 24036516)
Trial Attorney
U.S. Department of Justice, Tax Division
717 N. Harwood Street, Suite 400
Dallas, Texas  75201
(214) 880-9733
(214) 880-9741 (FAX)
Grover.Hartt@usdoj.gov

JOSEPH A. SERGI (DC 480837)
Senior Litigation Counsel
U.S. Department of Justice, Tax Division
555 4th Street, N.W., JCB 7207
Washington, D.C.  20001
(202) 305-0868
(202) 307-2504 (FAX)
Joseph.A.Sergi@usdoj.gov

JENNIFER D. AUCHTERLONIE (WA 29481)
LAURA C. BECKERMAN (CA 278490)
CHRISTOPHER D. BELEN (VA 78281)
LAURA M. CONNER (VA 40388)
JEREMY HENDON (OR 982490)
PHILIP M. SCHREIBER (DC 502714)

U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C.  20001
(202) 514-2000

Trial Attorneys

Of Counsel:
RONALD C. MACHEN, JR. (DC 447889)
United States Attorney

ATTORNEYS FOR THE UNITED STATES

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ )
                                       )
TRUE THE VOTE, INC.                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )          Civil Action No. 1:13-cv-00734-RBW
                                       )
UNITED STATES OF AMERICA, *et al.*,    )
                                       )
            Defendants.                )
_____ )

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2013, I caused the Motion to Dismiss Counts I, II,

IV, and V and Statement of Points and Authorities in the above-captioned matter to be filed with

the United States District Court for the District of Columbia via the Court's CM/ECF system.


                              /s/ *Grover Hartt, III*_____
                              GROVER HARTT, III