## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUE THE VOTE, INC., | Case No. 1:13-cv-000734-RBW |
| Plaintiff, | <u>CIVIL ACTION</u> |
| v. | |
| INTERNAL REVENUE SERVICE, *et al.*, | <u>**ORAL ARGUMENT REQUESTED**</u> |
| Defendants. | |

### <u>INDIVIDUAL MANAGEMENT DEFENDANTS' MOTION TO DISMISS</u>

Defendants Steven Grodnitzky, Lois Lerner, Steven Miller, Holly Paz, Michael Seto, Douglas Shulman, Cindy Thomas and William Wilkins (collectively, "Individual Management Defendants") hereby move to dismiss Count III of Plaintiff's First Verified Amended Complaint ("Amended Complaint") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  Dismissal is appropriate as to Defendant Cindy Thomas because this Court lacks personal jurisdiction over her.  This Court should dismiss Count III of the Amended Complaint as to all the Individual Management Defendants because Plaintiff fails to state a claim for which relief may be granted.

WHEREFORE, the Individual Management Defendants respectfully request that this Court dismiss Count III of the Amended Complaint with prejudice.  A proposed order is attached.

Dated:  October 18, 2013

Respectfully Submitted,

/s/ Brigida Benitez
Brigida Benitez
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202) 429-3000
bbenitez@steptoe.com
DC Bar No. 446144

*Counsel for Defendants Steven Grodnitzky,
Lois Lerner, Steven Miller, Holly Paz,
Michael Seto, Douglas  Shulman, Cindy
Thomas and William Wilkins in their
individual capacities*

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUE THE VOTE, INC., | Case No. 1:13-cv-000734-RBW |
| Plaintiff, | <u>CIVIL ACTION</u> |
| v. | |
| INTERNAL REVENUE SERVICE, *et al*., | |
| Defendants. | |

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>INDIVIDUAL MANAGEMENT DEFENDANTS' MOTION TO DISMISS</u>

Brigida Benitez
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202) 429-3000
bbenitez@steptoe.com
DC Bar No. 446144

*Counsel for Defendants Steven Grodnitzky,*
*Lois Lerner, Steven Miller, Holly Paz,*
*Michael Seto, Douglas Shulman, Cindy*
*Thomas and William Wilkins in their*
*individual capacities*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND..................................................................................................2

ARGUMENT ........................................................................................................................5

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER
      CINDY THOMAS ........................................................................................6

II.   PLAINTIFF CANNOT ASSERT A *BIVENS* CLAIM AGAINST
      THE INDIVIDUAL MANAGEMENT DEFENDANTS ....................................9

      A.    Controlling Precedent Mandates Dismissal of Plaintiff's
            *Bivens* Claim ..........................................................................10

      B.    Plaintiff Cannot Overcome the Individual Management
            Defendants' Qualified Immunity ..............................................13

            1.    Plaintiff Failed to Allege that Each Individual
                  Management Defendant Purposely Infringed
                  on Plaintiff's First Amendment Rights .........................14

            2.    Plaintiff Failed to Allege an Injury that is Actionable
                  Under the First Amendment...........................................17

            3.    Plaintiff Failed to Allege Conduct that Clearly
                  Violated True the Vote's First Amendment Rights .......18

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) ...................................................................................11

*Am. Directory Serv. Agency v. Beam,*
    131 F.R.D. 635 (D.D.C. 1990).....................................................................................6

*Anderson v. Creighton,*
    483 U.S. 635, 107 S. Ct. 3034 (1987).........................................................................13

*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074 (2011).................................................................................................18

*\*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................................ passim

*Atlantigas Corp. v. Nisource, Inc.,*
    290 F. Supp. 2d 34 (D.D.C. 2003)...............................................................................6

*Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,*
    403 U.S. 388, 91 S. Ct. 1999 (1971)................................................................... passim

*Buford v. Runyon,*
    160 F.3d 1199 (8th Cir. 1998) ...................................................................................14

*Burman v. Phoenix Worldwide Indus., Inc.,*
    437 F. Supp. 2d 142 (D.D.C. 2006) (Walton, J.) ...................................................6, 8

*Bush v. Lucas,*
    462 U.S. 367, 103 S. Ct. 2404 (1983).........................................................................11

*Cameron v. IRS,*
    773 F.2d 126 (7th Cir. 1985) .....................................................................................10

*Cameron v. Thornburgh,*
    983 F.2d 253 (D.C. Cir. 1993) ...................................................................................14

*Cornell v. Kellner,*
    539 F. Supp. 2d 311 (D.D.C. 2008)........................................................................6, 7

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61, 122 S. Ct. 515 (2001)............................................................................13

*Crawford-El v. Britten*,
  93 F.3d 813 (D.C. Cir. 1996), *vacated on other grounds*, 523 U.S. 574, 118 S. Ct.
  1584 (1998) ........................................................................................................................17

*Crawford-El v. Britton*,
  523 U.S. 574, 118 S. Ct. 1584 (1998) ...............................................................................19

*Dooley v. United Techs. Corp.*,
  786 F. Supp. 65 (D.D.C. 1992) ............................................................................................8

*Edwards v. City of Santa Barbara*,
  150 F.3d 1213 (9th Cir. 1998) ...........................................................................................18

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996) ...........................................................................................10

*First Chi. Int'l v. United Exchange Co.*,
  836 F.2d 1375 (D.C. Cir. 1988) ........................................................................8, 12, 14, 18

*Fishburn v. Brown*,
  125 F.3d 979 (6th Cir. 1997) .............................................................................................11

*Harlow v. Fitzgerald*,
  457 U.S. 800, 102 S. Ct. 2727 (1982) ...............................................................................13

*Hudson Valley Black Press v. I.R.S.*,
  409 F.3d 106 (2d Cir. 2005)...............................................................................................11

*Int'l Shoe v. Washington*,
  326 U.S. 310, 66 S. Ct. 154 (1945)...................................................................................7, 8

*Judicial Watch, Inc. v. Rossotti*,
  317 F.3d 401 (4th Cir. 2003) .................................................................................11, 13, 19

*Kim v. United States*,
  632 F.3d 713 (D.C. Cir. 2011) ...........................................................................1, 10, 11, 13

*King Street Patriots, Inc. v. Texas Democratic Party*,
  No. D-1-GN-11-002363, Order Granting Mot. Summ. J. (Mar. 27, 2012) .........................3-4

*Klay v. Panetta*,
  924 F. Supp. 2d 8 (D.D.C. 2013) .......................................................................................14

*Krieger v. U.S. Dep't of Justice*,
  529 F. Supp. 2d 29 (D.D.C. 2008) .....................................................................................18

*Majhor v. Kempthorne*,
  518 F. Supp. 2d 221 (D.D.C. 2007) (Walton, J.) ..............................................................7, 8

*Marsoun v. United States*,
  591 F. Supp. 2d 41 (D.D.C. 2008), *reversed on other grounds*, 439 F. App'x 4
  (D.D.C. 2011) ............................................................................................................10

*McMillen v. U.S. Dep't of Treasury*,
  960 F.2d 187 (1st Cir. 1991) ....................................................................................11

*Morrow v. United States*,
  723 F. Supp. 2d 71 (D.D.C. 2010) (Walton, J.) ..................................................9, 10

*Pragovich v. United States*,
  602 F. Supp. 2d 194 (D.D.C. 2009) .........................................................................10

*Schadl v. Kupinse*,
  No. 99 Civ. 844, 2001 WL 471891 (D. Conn. 2001) .............................................10

*Spagnola v. Mathis*,
  859 F.2d 223 (D.C. Cir. 1988) .................................................................................11

*Taylor v. FDIC*,
  132 F.3d 753 (D.C. Cir. 1997) .................................................................................10

*Taylor v. Reilly*,
  685 F.3d 1110 (D.C. Cir. 2012) ...............................................................................18

*Whittington v. United States*,
  439 F. App'x 2 (D.C. Cir. 2011) ..............................................................................10

*Woodruff v. DiMario*,
  197 F.R.D. 191 (D.D.C. 2000) ...................................................................................9

**STATUTES**

5 U.S.C. § 702 ................................................................................................................12

26 U.S.C. § 501(c)(3) .............................................................................................. passim

26 U.S.C. § 508(a) ........................................................................................................19

26 U.S.C. § 6103 ........................................................................................................2, 12

26 U.S.C. § 7428 ........................................................................................................2, 12

26 U.S.C. § 7431 ............................................................................................................12

28 U.S.C. § 2201 ............................................................................................................12

D.C. Code § 13-423(a) ....................................................................................................7

**RULES**

Fed. R. Civ. P. 12(b)(2)...........................................................................................5-6, 8

Fed. R. Civ. P. 12(b)(6)...............................................................................................5

Defendants Steven Grodnitzky, Lois Lerner, Steven Miller, Holly Paz, Michael Seto, Douglas Shulman, Cindy Thomas and William Wilkins (collectively, "Individual Management Defendants") respectfully submit this Memorandum in Support of Individual Management Defendants' Motion to Dismiss.

## PRELIMINARY STATEMENT

This action stems from Plaintiff True the Vote's dissatisfaction with the manner in which the Internal Revenue Service ("IRS") reviewed and processed its application for tax-exempt status. In seeking redress from the IRS, Plaintiff also sued thirteen IRS employees, along with additional unnamed IRS employees, in their official and individual capacities. These employees include the Individual Management Defendants, who are eight former or current IRS officials, none of whom is alleged to have personally reviewed or processed Plaintiff's application. Despite the paucity of factual allegations, Plaintiff contends that the Individual Management Defendants violated its First Amendment rights of free speech and association, and has asserted a claim against them pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

Plaintiff's sole claim against the Individual Management Defendants falls squarely within D.C. Circuit precedent precluding a *Bivens* claim against IRS employees. In *Kim v. United States*, 632 F.3d 713, 717 (D.C. Cir. 2011), the D.C. Circuit held that IRS officials are not subject to suit under *Bivens* because the Internal Revenue Code provides potential litigants with a "comprehensive remedial scheme" of which they can avail themselves, as Plaintiff has done here by suing the IRS under both the Internal Revenue Code and the Administrative Procedure Act. Moreover, Plaintiff's vague and generalized allegations of a First Amendment violation are insufficient to overcome the Individual Management Defendants' qualified immunity from suit.

Accordingly, Plaintiff's *Bivens* claim – Count III of the Amended Complaint – should be dismissed with prejudice.

## **FACTUAL BACKGROUND**

Plaintiff True the Vote is a non-profit organization created under the laws of Texas on June 7, 2010.  Compl. ¶ 31, Exh. B.  According to the First Verified Amended Complaint ("Amended Complaint"), on July 15, 2010, True the Vote filed its application for tax-exempt status with the IRS under 26 U.S.C. § 501(c)(3).  Compl. ¶ 53.   At the time of the filing of the Amended Complaint on July 22, 2013, the IRS had not made a determination on True the Vote's application.  Compl. ¶¶ 4, 70.   Under the Internal Revenue Code, if the IRS does not make a decision on an application within 270 days, the applicant may bring a declaratory judgment action seeking a declaration that it is exempt under § 501(c)(3).  26 U.S.C. § 7428.  In the instant action, True the Vote asserted a claim against the IRS pursuant to § 7428, as well as under § 6103 and the Administrative Procedure Act.  Compl. ¶ 140.  On September 22, 2013, the IRS granted Plaintiff's application, making True the Vote a tax-exempt organization retroactive to the date of its creation.

Among others, Plaintiff sued eight former or current management-level IRS employees in their "individual capacity for acts and omissions occurring in connection with duties performed on behalf of the U.S. Government."  Compl. ¶¶ 35-41, 43.  These individuals are:

- Douglas Shulman, former IRS Commissioner.  *See* Compl. ¶ 36.

- Steven Miller, former Acting IRS Commissioner and former IRS Deputy Commissioner for Services and Enforcement.  *See* Compl. ¶ 35.

- William Wilkins, who serves as IRS Chief Counsel.  *See* Compl. ¶ 37.

- Lois Lerner, former Director of the IRS Exempt Organizations Division.  *See* Compl. ¶ 38.

- Holly Paz, who has served as Acting Manager of the IRS Exempt Organizations Technical Unit, Acting Director and Director of the Office of Rulings and Agreements.  *See* Compl. ¶ 39.

- Steven Grodnitzky, who has served as Acting Manager of the IRS Exempt Organizations Technical Unit.  *See* Compl. ¶ 41.

- Michael Seto, who has served as Acting Manager of the IRS Exempt Organizations Technical Unit.  *See* Compl. ¶ 43.

- Cindy Thomas, who has served as Program Manager of the IRS Exempt Organizations Determinations Unit located in Cincinnati, Ohio. *See* Compl. ¶ 40.

The IRS Exempt Organizations Division administers tax law governing charities, foundations, and other entities not required to pay federal income tax.  *See* http://www.irs.gov/Charities-&-Non-Profits/About-IRS-Exempt-Organizations. Within the Exempt Organizations Division, the Determinations Unit is responsible for reviewing applications "as they are received to determine whether the organization qualifies for tax exempt status."  Compl. Exh. F at 7.  The Determinations Unit is located in Cincinnati, Ohio.  Compl. Exh. F at 7.  If the Determinations Unit "needs technical assistance processing applications, it may call upon the Technical Unit in the Rulings and Agreements office in Washington, D.C."  Compl. Exh. F at 7.

In about 2010, the IRS Exempt Organizations Division began receiving numerous inquiries from the public, media, watchdog groups, and legislators, who were concerned that certain tax-exempt organizations were engaged in "political campaign activity to an impermissible extent."  Compl. Exh. F at 49 (Management's Response to the Draft [Treasury Inspector General's] Report (Apr. 30, 2013)).[1]  That year, the IRS also began to see a significant

---

[1] *See, e.g., King Street Patriots, Inc. v. Texas Democratic Party*, No. D-1-GN-11-002363, Order Granting Mot. Summ. J., Mar. 27, 2012 (granting summary judgment to Texas Democratic Party on King Street Patriots' ("KSP") claims challenging constitutionality of Texas Election Code).  The action pertained to the political activities of KSP, True the Vote's affiliated organization.  *Id.*  Specifically, the

increase in the number of tax-exemption applications from organizations apparently engaged in, or intending to engage in political activity.  Compl. Exh. F. at 49.  Many of the applications were vague as to the activities the organizations planned to conduct and contained incomplete or inconsistent information regarding the organizations' involvement in political campaign activities.  Compl. Exh. F, at 50.  The IRS approached this influx of applications in the same way it handled such matters in other areas, such as credit counseling or down payment assistance. Compl. Exh. F at 49.  Specifically, the Exempt Organizations Division sought to assign cases to designated employees trained on the relevant issues.  Compl. Exh. F at 49.  Such a "centralization" approach is aimed at providing consistent and high-quality results, although occasionally, at least initially, it can result in slowing the processing for some applications. Compl. Exh. F at 49.

True the Vote was one of the organizations whose tax-exempt application was determined to need additional information in order to conclude whether it met the requirement for tax exemption.  True the Vote received three follow-up inquiries from the IRS Cincinnati office on February 15, 2011, February 8, 2012, and October 9, 2012. Compl. ¶¶ 56, 63, 66.  The inquiries pertained to, *inter alia*, whether True the Vote had endorsed political candidates, whether any of its members had held a public office, and whether it was associated with other tax-exempt organizations.  Compl. ¶ 129.

Plaintiff alleges that the IRS inquiries for information and documentation were overbroad and "wholly unnecessary to the determination of True the Vote's tax exempt status."  Compl. ¶ 128.  Plaintiff does not allege that any of the Individual Management Defendants was involved in

---

Texas Democratic Party alleged, *inter alia*, that KSP made unlawful contributions to the Texas Republican Party by training poll watchers in cooperation with the Republican Party and offering the watchers' services only to the Republican Party candidates.  *Id.*  In addition, KSP allegedly violated the Texas Election Code by holding candidate forums only for Republican candidates.  *Id.*

making these queries, nor that any of them was personally involved in processing True the

Vote's application.

Furthermore, Plaintiff alleges that in 2010, the IRS developed and implemented a written

and oral "targeting" policy pursuant to which tax-exemption applicants whose names, purposes,

or missions indicated affiliation with conservative political organizations were subjected to

"additional review and scrutiny, and deliberate delays in processing."  Compl. ¶¶ 73-74.

In asserting its *Bivens* claim, Plaintiff contends that the Individual Management

Defendants violated its First Amendment rights to free speech and association "by creating,

developing, implementing, and applying the IRS Targeting Scheme . . . and by failing to prevent

such development, implementation, and application by others under their direct supervision and

control despite actual knowledge of such unconstitutional conduct."  Compl. ¶ 165.  Plaintiff

further contends that the Individual Management Defendants "knew, or reasonably should have

known, that their actions and omissions would violate True the Vote's constitutional rights."

Compl. ¶ 166.  Plaintiff makes no allegation that the Individual Management Defendants

themselves created the alleged "targeting" policy.

## ARGUMENT

Defendant Thomas seeks dismissal of Plaintiff's *Bivens* claim on the ground that this

Court lacks personal jurisdiction over her.  Fed. R. Civ. P. 12(b)(2).  Collectively, the Individual

Management Defendants seek dismissal of Plaintiff's *Bivens* claim for failure to state a claim

upon which relief may be granted.   Fed. R. Civ. P. 12(b)(6).[2]  Plaintiff has not, and cannot, state

a *Bivens* claim against the Individual Management Defendants because controlling precedent

mandates dismissal of *Bivens* claims against IRS employees.  Nor can Plaintiff overcome the

---

[2] Ms. Thomas does not concede to this Court exercising personal jurisdiction over her by arguing, in the alternative, that the *Bivens* claim against her should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Individual Management Defendants' qualified immunity with its purported First Amendment claim.  The *Bivens* claim, therefore, should be dismissed with prejudice.

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER CINDY THOMAS

Taking the allegations of the Amended Complaint as true, Defendant Cindy Thomas is entitled to dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) because Plaintiff failed to establish both that Ms. Thomas, a resident of Kentucky, is subject to personal jurisdiction under the District of Columbia long-arm statute, and that she has minimum contacts with the District of Columbia.

Personal jurisdiction is "necessary to maintain a *Bivens* claim." *Cornell v. Kellner*, 539 F. Supp. 2d 311, 314 (D.D.C. 2008) (dismissing *Bivens* claims against IRS officials for lack of personal jurisdiction).  Plaintiff bears "the burden of establishing personal jurisdiction over each individual defendant." *Burman v. Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 147 (D.D.C. 2006) (Walton, J.) (citing *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003)).  To meet this burden, Plaintiff "must allege specific facts on which personal jurisdiction can be based." *Id.*  Plaintiffs cannot rely on conclusory allegations. *Id.*  Furthermore, Plaintiff "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." *Id.*  That is precisely what Plaintiff has done in this case.

This Court may assert personal jurisdiction over a defendant only if the plaintiff demonstrates that (1) the District of Columbia's long-arm statute authorizes service of process on the defendant; and (2) such a provision is consistent with the constitutional principles of due process. *Am. Directory Serv. Agency v. Beam*, 131 F.R.D. 635, 640 (D.D.C. 1990) (citations omitted).  The latter requirement places the burden on Plaintiff to demonstrate that there are "minimum contacts" between Ms. Thomas and the District of Columbia establishing that

litigation in this forum "does not offend traditional notions of fair play and substantial justice." *Majhor v. Kempthorne*, 518 F. Supp. 2d 221, 236 (D.D.C. 2007) (Walton, J.) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).  Here, Plaintiff has not satisfied either requirement to establish personal jurisdiction.

The District of Columbia long-arm statute provides, in relevant part, that a court is authorized to exercise personal jurisdiction over any person as to a claim for relief arising from the person's "(1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; or, (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  D.C. Code § 13-423(a).

Plaintiff failed to meet its burden of establishing that Ms. Thomas falls into one or more of these categories.  Nothing in the Amended Complaint suggests that she ever transacted business in the District of Columbia.  Employment with the IRS, which is headquartered in Washington, DC, without more, is "insufficient to support assertion of personal jurisdiction under the District of Columbia long-arm statute."  *Cornell*, 539 F. Supp. 2d at 315.  Likewise, the Amended Complaint is wholly devoid of any allegations that, in addition to her federal employment in Ohio, Ms. Thomas committed a single act within the District of Columbia that has any nexus to Plaintiff's *Bivens* claim.  Plaintiff has not alleged that Ms. Thomas was present in the District of Columbia for any of the purported actions or omissions on which its action is premised.  Plaintiff also failed to meet its burden to establish that Ms. Thomas caused a tortious

injury in the District of Columbia by an act or omission made outside of it.  Plaintiff is a resident of Texas and does not allege that the injuries occurred or manifested in the District of Columbia, as required by the long-arm statute.

Further, Plaintiff's conspiracy allegations do not save its otherwise deficient claim against Ms. Thomas.  The conspiracy allegations are nothing more than an attempt to aggregate the factual allegations against all individual defendants to establish personal jurisdiction over a non-resident.  As stated, allegations of a concerted action, without more, are insufficient for establishing personal jurisdiction.  *Burman*, 437 F. Supp. 2d at 147; *see also First Chi. Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988) (holding that "bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction").

Even if the long-arm statute allowed personal jurisdiction over Ms. Thomas, which it does not, forcing her to litigate in this forum would violate her due process rights.  To comply with due process requirements, Plaintiff must establish that Ms. Thomas has purposely "directed [her] activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities."  *Majhor*, 518 F. Supp. 2d at 237.  As discussed *supra*, no such showing is made here.  Asserting personal jurisdiction over Ms. Thomas solely on account of her federal employment, therefore, would offend the "traditional notions of fair play and substantial justice" informing the "minimum contacts" rule.  *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 71 (D.D.C. 1992) (quoting *Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. at 158.  Accordingly, dismissal of Plaintiff's *Bivens* claim against Ms. Thomas is required under Fed. R. Civ. P. 12(b)(2).

## II.    PLAINTIFF CANNOT ASSERT A *BIVENS* CLAIM AGAINST THE INDIVIDUAL MANAGEMENT DEFENDANTS

The D.C. Circuit has ruled that *Bivens* claims are unavailable against IRS employees because the Internal Revenue Code provides a comprehensive remedial scheme for allegedly aggrieved parties.  Moreover, the *Bivens* claim against the Individual Management Defendants should be dismissed because they are entitled to qualified immunity.  Plaintiff has failed to allege that each Individual Management Defendant infringed upon True the Vote's First Amendment rights so as to overcome the Individual Management Defendants' qualified immunity.  Plaintiff's *Bivens* claim should thus be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether a complaint has properly stated a claim upon which relief may be granted." *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (Walton, J.) (citing *Woodruff v. DiMario*, 197 F.R.D. 191, 193 (D.D.C. 2000)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949).

"Although the Court must accept the plaintiffs' factual allegations as true, conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that 'they plausibly give rise to an entitlement to relief.'" *Id.* at 76-77 (citing  *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950).  If the court "finds that

---

[3] Even if the Individual Management Defendants were subject to liability under *Bivens*, which they are not, this Court should nevertheless dismiss Count III of the Amended Complaint because Plaintiff has failed to state a claim upon which relief may be granted.  Plaintiff has made no specific allegations as to how any of the Individual Management Defendants acted to infringe Plaintiff's First Amendment rights.

the plaintiffs have failed to allege all the material elements of their cause of action, then the Court may dismiss the complaint without prejudice, . . . or with prejudice, provided that the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Id.* (citing *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997); *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)) (internal quotation marks omitted).

Under the 12(b)(6) standard, Plaintiff's *Bivens* claim is ripe for dismissal with prejudice. Plaintiff cannot cure the deficiencies in the Amended Complaint by repleading the *Bivens* claim.

### A.    Controlling Precedent Mandates Dismissal of Plaintiff's *Bivens* Claim

The D.C. Circuit has ruled that *Bivens* claims against IRS employees must be dismissed. *See Kim v. United States*, 632 F.3d 713, 717 (D.C. Cir. 2011) (affirming dismissal of a *Bivens* claim against IRS officials because the Internal Revenue Code contains a "comprehensive remedial scheme"); *Whittington v. United States*, 439 F. App'x 2, 3 (D.C. Cir. 2011) (holding *Kim* bars *Bivens* claims against IRS officials).[4]   Even prior to *Kim*, this Court had already held that *Bivens* remedies against IRS employees are precluded by the comprehensive statutory remedial scheme set forth in the Internal Revenue Code.  *Marsoun v. United States*, 591 F. Supp. 2d. 41, 47-48 (D.D.C. 2008), *reversed on other grounds*, 439 F. App'x 4, 5 (D.D.C. 2011); *see also Pragovich v. United States*, 602 F. Supp. 2d 194, 195 (D.D.C. 2009) ("No *Bivens* remedy is

---

[4] Courts have observed that additional policy reasons, *i.e.*, special factors that counsel hesitation, support precluding *Bivens* actions against IRS employees.  *Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir. 1985) (noting that recognizing a *Bivens* action against IRS employees could "interfere with the effective functioning of government"); *Schadl v. Kupinse*, No. 99 Civ. 844, 2001 WL 471891, at *4 (D. Conn. 2001) (explaining that allowing a *Bivens* action against IRS employees would interfere with the effective administration of the federal tax system).

available to the plaintiffs because the Internal Revenue Code contains a comprehensive remedial scheme.").[5]

Every circuit that has addressed this issue has declined to afford *Bivens* relief against IRS employees. *See Adams v. Johnson*, 355 F.3d 1179, 1188 (9th Cir. 2004) (collecting cases from First, Third, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits holding that *Bivens* relief was unavailable in actions against IRS agents due to comprehensive remedial scheme available under IRC); *see also Hudson Valley Black Press v. I.R.S.*, 409 F.3d 106, 113 (2d Cir. 2005) (no *Bivens* relief against IRS agents for First Amendment violations); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 403, 408-13 (4th Cir. 2003) (no *Bivens* remedies were available where complaint alleged that IRS employees conducted "retaliatory, politically-motivated, and unconstitutional" audits against § 501(c)(3) organization in violation of First and Fifth Amendments because there was comprehensive remedial scheme under tax code).[6]

Here, Plaintiff concedes that all the Individual Management Defendants were IRS employees at all times relevant to the allegations of the Amended Complaint. *See* Compl. ¶¶ 35-41, 43, 165. The *Bivens* remedy that Plaintiff seeks is, accordingly, unavailable. *See Kim*, 632 F.3d at 717. As the D.C. Circuit and this Court have recognized, the Internal Revenue Code

---

[5] Even if the comprehensive remedial scheme does not address a plaintiff's particular claim, a *Bivens* action is not available, since availability hinges on the comprehensiveness of the statutory scheme, not access to specific remedies. *See Bush v. Lucas*, 462 U.S. 367, 388-90, 103 S. Ct. 2404, 2416-17 (1983) (holding that a congressionally-created remedial scheme precluded a *Bivens* remedy even where such a remedy would not fully compensate the plaintiff for harm suffered); *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988 (*per curiam*) (*en banc*) ("[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention[,] the inability for a plaintiff to obtain complete relief under a particular statute is not a sufficient basis for awarding that plaintiff damages under *Bivens*.").

[6] *See also McMillen v. U.S. Dep't of Treasury*, 960 F.2d 187, 190-91 (1st Cir. 1991) (*per curiam*) (affirming dismissal of *Bivens* claims against IRS employees and noting that "the creation of a *Bivens* remedy would not be an appropriate response" where Congress "has given taxpayers all sorts of rights against an overzealous officialdom"); *Fishburn v. Brown*, 125 F.3d 979, 982-83 (6th Cir. 1997)(affirming summary judgment dismissal of *Bivens* claims against IRS employees because Congress already created a remedy for those violations).

provides a comprehensive remedial scheme for parties such as Plaintiff to pursue.  Plaintiff has

asserted that the Internal Revenue Code and the Administrative Procedure Act provide it with

remedies for its purported injuries.  Indeed, by filing this case, Plaintiff has availed itself of this

comprehensive remedial scheme.

    First, Plaintiff concedes that "[u]nder 28 U.S.C. § 2201 of the Declaratory Judgment Act

and 26 U.S.C. § 7428 of the Internal Revenue Code . . ., this Court is empowered to issue a

declaratory judgment regarding the initial qualification of an organization as an organization

described in Section 501(c)(3) of the Code."  Compl. ¶140.  Plaintiff seeks a declaratory

judgment against the U.S. Government in Count I of the Amended Complaint pursuant to 28

U.S.C. § 2201 of the Declaratory Judgment Act and 26 U.S.C. § 7428 of the Internal Revenue

Code.  Compl. ¶¶ 139-147.[7]

    Second, Plaintiff contends that "Title 26, U.S.C. § 6103 provides that tax '[r]eturns and

return information shall be confidential' and prohibits disclosure and inspection by United States

employees except as provided for by this provision."  Compl. ¶ 169.  Plaintiff concedes that

"Title 26, U.S.C. § 7431 provides taxpayers a cause of action for damages against the U.S.

Government for knowing or negligent unauthorized inspection of tax return information in

violation of 26 U.S.C. § 6103."  Plaintiff asserted a claim against the U.S. Government pursuant

to 26 U.S.C. §§ 6103, 7431.  Compl. ¶¶ 168-187.

    Finally, Plaintiff avers that "[t]he Administrative Procedure Act . . . provides a cause of

action for any person suffering legal wrong because of agency action, or adversely affected or

aggrieved by the agency action against the United States, a United States agency, or an officer

thereof."  Compl. ¶ 189 (citing 5 U.S.C. § 702).  Plaintiff asserted a claim against the IRS and

---

[7] It is worth noting that Plaintiff waited long after the 270-day statutory period had passed (over two years) to avail itself of a remedy pursuant to 26 U.S.C. § 7428 of the Internal Revenue Code.

IRS Employees in their official capacities, including the Individual Management Defendants, under the Administrative Procedure Act.  Compl. ¶¶ 188-206.

In any event, this Circuit has already declined to recognize *Bivens* claims against IRS employees because the Internal Revenue Code sets forth a comprehensive remedial scheme.  *See Kim*, 632 F.3d at 717.[8]  Consequently, the *Bivens* claim against the Individual Management Defendants should be dismissed.

### B.    Plaintiff Cannot Overcome the Individual Management Defendants' Qualified Immunity

This Court should dismiss Plaintiff's *Bivens* claim because the Individual Management Defendants are entitled to qualified immunity from suit.[9]  Qualified immunity protects government officials, including IRS employees, from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Qualified immunity is immunity from suit and "should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 3042 n.6 (1987).

In order to overcome qualified immunity, a plaintiff must plead sufficient facts that, accepted as true, support a conclusion that a government official intentionally violated a clearly

---

[8] The Supreme Court has made clear that "[b]ecause implied causes of action are disfavored, the court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" *Iqbal*, 556 U.S. at 675, 129 S. Ct. at 1947-48; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68, 122 S. Ct. 515, 520 (2001) (noting that in the years since *Bivens*, the Court has repeatedly identified new "special factors counseling hesitation" and has "consistently refused" to extend *Bivens* liability to any new context or new category of defendants.").

[9] *See Judicial Watch*, 317 F.3d at 409-12 (affirming district court dismissal of *Bivens* claim on qualified immunity grounds and also reasoning that the internal revenue code contained a comprehensive remedial scheme).

established statutory or constitutional right of which a reasonable person would have known. *See Iqbal*, 566 U.S. at 673, 129 S. Ct. at 1946-47 ("the sufficiency of [the] pleadings is both inextricably intertwined with and directly implicated by the qualified immunity defense") (internal citations and quotations marks omitted).  Plaintiff's Amended Complaint is devoid of such facts.

The Amended Complaint fails to trump the Individual Management Defendants' qualified immunity for at least three reasons.  <u>First</u>, True the Vote has not alleged that each of the Individual Management Defendants purposely and personally infringed on True the Vote's First Amendment Rights.  <u>Second</u>, True the Vote has not alleged that the Individual Management Defendants caused it to suffer an injury that is actionable under the First Amendment.  <u>Finally</u>, True the Vote has failed to allege conduct that a reasonable person would know clearly violated True the Vote's First Amendment rights.

> **1.    Plaintiff Failed to Allege that Each Individual Management Defendant Purposely Infringed on Plaintiff's First Amendment Rights**

In order to overcome qualified immunity, True the Vote must plead that each Individual Management Defendant, through his or her own actions, intentionally violated its First Amendment rights.  A defendant's liability under *Bivens* is limited to liability for the defendant's own actions.  *Buford v. Runyon*, 160 F.3d 1199, 1203 n. 7 (8th Cir. 1998).  "'Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*' or vicarious liability."  *Klay v. Panetta*, 924 F. Supp. 2d 8, 20-21 (D.D.C. 2013) (quoting *Iqbal*, 556 U.S. at 676, 129 S. Ct. at 1948).  *See also Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (concluding that plaintiff failed to state a *Bivens* claim against the Attorney General and Bureau of Prisons Director where it was based on a *respondeat superior* theory).

The allegations against the Individual Management Defendants boil down to contentions that each had varying degrees of knowledge regarding a so-called "targeting" policy that allegedly targeted certain § 501(c)(3) applications for heightened review based on purportedly discriminatory criteria.  Knowledge of an alleged constitutional violation – even assuming a constitutional violation has been alleged – does not trump qualified immunity.  *Iqbal*, 556 U.S. at 677, 129 S. Ct. at 1949 (explaining that "purpose rather than knowledge is required" to overcome qualified immunity).

Indeed, the Amended Complaint focuses on what each Individual Management Defendant purportedly knew, rather than what any of them did.  Plaintiff's sole contention with respect to Messrs. Shulman and Miller is that they became "aware" of the "targeting" policy in the spring of 2012.  Similarly, Mr. Grodnitzky, Mr. Seto and Ms. Lerner are alleged to have had some role with respect to reports regarding the "targeting" policy.  Plaintiff alleges that Mr. Grodnitzky "suggested" and "directed" the creation of a report regarding tax-exempt applications by targeted organizations.  Compl. ¶¶ 90-91.  Mr. Seto and Ms. Lerner are alleged to have reviewed a briefing paper regarding the "existence and application" of the "targeting" policy.  Compl. ¶ 104.  Furthermore, Ms. Lerner is alleged to have informed Mr. Seto that "targeted" organizations would be subject to "multi-tier" review.  Compl. ¶ 111.

Plaintiff further alleges that a so-called "targeting" policy was created *under* Ms. Thomas' "control and direction," but does not allege that she was personally involved in creating it.  Compl. ¶¶ 40, 83.  The Amended Complaint contends that Ms. Paz requested that certain applications be transferred from the IRS Ohio Determinations Unit to the IRS offices in Washington, DC, but does not allege that the True the Vote application was among those applications.  Compl. ¶ 88.  With respect to Mr. Wilkins, Plaintiff contends that he discussed the

"targeting" scheme and instructed a tax law specialist that the IRS should collect "more information" from certain applicants.  Compl. ¶¶ 37, 113-14.

Conspicuously absent from the Amended Complaint are allegations that any of the Individual Management Defendants personally received, reviewed, evaluated, processed or made any decisions with respect to True the Vote's § 501(c)(3) application.  There are no allegations that any of the Individual Management Defendants sent letters requesting additional information or communicated in any way with True the Vote.  Furthermore, there are no allegations that each of the Individual Management Defendants personally created the "targeting" policy or applied the "targeting" policy to True the Vote or any other applicant for § 501(c)(3) status.

To be sure, the Amended Complaint contains a conclusory allegation that "the IRS Defendants systematically targeted True the Vote's application for unwarranted delay and heightened review and scrutiny."  Compl. ¶ 5.  Plaintiff contends that "True the Vote was deliberately subjected to numerous unnecessary, burdensome, and unlawful requests for information about its operations, activities, leadership, volunteers, associations, and affiliations." *Id.*  Plaintiff further alleges that "[t]he effect if not the intent of this wrongful conduct was to infringe the First Amendment rights of free speech and association of True the Vote."  *Id.*  In addition, Plaintiff contends that "[t]he IRS Defendants' repeated requests for additional information and documents were intended to harass True the Vote and to have a chilling effect on the First Amendment rights of current and prospective members and donors."  Compl. ¶ 6.

These summary allegations against all of the named defendants in this case, as well as the defendants who are unknown named employees of the IRS, do not absolve True the Vote's failure to make factual allegations regarding each Individual Management Defendant's intentional violations of True the Vote's First Amendment rights.  In sum, Plaintiff has not

overcome each Individual Management Defendant's qualified immunity because it failed to plead facts to support a conclusion that each Individual Management Defendant intentionally infringed True the Vote's First Amendment rights.

### 2.   Plaintiff Failed to Allege an Injury that is Actionable Under the First Amendment

There is no actionable First Amendment claim unless "an official's acts 'would chill or silence a 'person of ordinary firmness' from future First Amendment activities." *See Crawford-El v. Britten*, 93 F.3d 813, 826 (D.C. Cir. 1996), *vacated on other grounds*, 523 U.S. 574, 601, 118 S. Ct. 1584, 1598 (1998)).  It is incumbent on Plaintiff to allege that it suffered the sort of injury that would be actionable under the First Amendment.  *Id.* at 826 ("some non-de minimis showing of injury is necessary in a constitutional tort action").  Plaintiff has not done so here.

The Amended Complaint contains legal conclusions that the purported effect of the IRS Defendants' actions "was to infringe the First Amendment rights of free speech and association of True the Vote."  Compl. ¶ 5.  Plaintiff never identifies how these particular Defendants infringed its First Amendment rights nor does it explain in what ways True the Vote's speech was impacted as a result of the delayed processing of its application.  It is not reasonable to infer that a person of ordinary firmness would be silenced by a delay in processing a tax-exempt application.[10]  Plaintiff fails to allege that it suffered an injury as a result of conduct that is actionable under the First Amendment.

---

[10] True the Vote has not alleged how it has been silenced.  Indeed, quite the opposite appears to be true.  True the Vote's website proclaims that "[b]y Election Day, 2010 True the Vote had 1,000 poll workers trained and ready to observe the election process at Harris County polling stations."  It further states that "[i]mmediately after the successful operation in Harris County, True the Vote began to reach out nationwide to help citizens in other counties, in other states learn how to train poll workers to "true" the vote in their home districts."  http://www.truethevote.org/about/history/.  This is hardly the picture of an organization that has been silenced.

There are simply no facts alleged, that taken as true, support a conclusion that the Individual Management Defendant's conduct caused Plaintiff to alter or withhold its speech or association with its members or others. *See Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 58 (D.D.C. 2008) ("[W]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.").

### 3.   Plaintiff Failed to Allege Conduct that Clearly Violated True the Vote's First Amendment Rights

Showing that each Individual Management Defendant's conduct violated clearly established law "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011), *see also Taylor v. Reilly*, 685 F.3d 1110, 1113-14 (D.C. Cir. 2012). The allegations in the Amended Complaint fall far short of alleging that each Individual Management Defendant engaged in conduct that amounts to a clearly established constitutional violation. *See supra* Part II.B.1.

Plaintiff contends that it was singled out for heightened scrutiny, along with other organizations with similar missions or affiliations. Compl. ¶ 5. First, and significantly, Plaintiff fails to allege that any one of the Individual Management Defendants singled it out for heightened scrutiny or that any of them did anything in connection with True the Vote's application. There is no concrete connection alleged between the Individual Management Defendants and True the Vote.

Second, taking Plaintiff's allegations as true, they alone do not assert a clearly established constitutional violation. *See Edwards v. City of Santa Barbara*, 150 F.3d 1213, 1216 n. 3 (9th Cir. 1998) ("The fact that a majority of those prosecuted under the ordinance have been anti-

abortion protesters does not permit an automatic inference of discriminatory purpose."). [11]  All applicants for § 501(c)(3) status face some level of scrutiny.  *See* 26 U.S.C. §§ 501(c)(3), 508(a). That is provided for in the Internal Revenue Code.  Some applicants will encounter a more stringent level of scrutiny than others.  And, as a result, processing times for each applicant may differ.  Bad faith cannot be presumed.  *See Crawford-El v. Britton*, 523 U.S. 574, 588, 118 S. Ct. 1584, 1592 (1998) (observing that "[i]t is obvious, of course, that bare allegations of malice would not suffice to establish a constitutional claim").  It is Plaintiff's burden to show that it was targeted for an impermissible purpose.

Finally, *even if* the Individual Management Defendants were alleged to have reviewed Plaintiff's application, and had done so on the basis of its political activities, this is explicitly provided for in the statute, and cannot be the basis of a constitutional injury.  "Section 501(c)(3) provides an explicit basis for the IRS to investigate [applicant's] tax-exempt status and determine if its "political" activities merit a change in its status." *Judicial Watch*, 317 F.3d at 407 (holding that it was possible and even "plausible" that the IRS's pursuit of an audit in that case was prompted by its legitimate suspicions that the petitioner's "earnest efforts to assist in the impeachment of President Clinton" constituted the sort of "prohibited political activity" barred by 501(c)(3) status.).

For the above stated reasons, the allegations of the Amended Complaint fail to overcome the Individual Management Defendants' qualified immunity from suit.

---

[11] The "obvious alternative explanation" for the IRS allegedly applying heighted scrutiny to True the Vote is that the IRS was legitimately investigating whether Plaintiff qualified for tax-exempt status under § 501(c)(3).  *See Iqbal*, 556 U.S. at 682, 129 S. Ct. at 1951 (providing that discrimination is not a plausible conclusion where an "obvious alternative explanation" for an allegedly unconstitutional policy was that a legitimate policy had produced disparate, incidental impact on supposedly "targeted" groups, "even though the purpose of the policy was to target [no such groups]" ).

**CONCLUSION**

For the foregoing reasons, the Individual Management Defendants respectfully request

that Count III of the Amended Complaint be dismissed with prejudice.

Dated:  October 18, 2013

Respectfully Submitted,

/s/ Brigida Benitez
Brigida Benitez
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202) 429-3000
bbenitez@steptoe.com
DC Bar No. 446144
*Counsel for Defendants Steven Grodnitzky,*
*Lois Lerner, Steven Miller, Holly Paz,*
*Michael Seto, Douglas  Shulman, Cindy*
*Thomas and William Wilkins in their*
*individual capacities*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

TRUE THE VOTE, INC.,

                                    Plaintiff,

        v.

INTERNAL REVENUE SERVICE, *et al*.,

                                    Defendants.

Case No. 1:13-cv-000734-RBW

<u>CIVIL ACTION</u>

<u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that on October 18, 2013, I caused the Individual Management

Defendants' Motion to Dismiss and Memorandum in Support of Individual Management

Defendants' Motion to Dismiss to be filed and served electronically upon registered parties with

the United States District Court for the District of Columbia via the Court's CM/ECF system.



                        <u>/s/ Brigida Benitez</u>
                        BRIGIDA BENITEZ