IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUE THE VOTE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:13-cv-00734-RBW |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO PLAINTIFF'S MOTION TO STAY AGENCY ACTION**

The United States of America, by and through its undersigned counsel, hereby responds in opposition to Plaintiff's Motion to Stay Agency Action (Doc. 68). The Court should deny Plaintiff's ("True the Vote") Motion requesting the Court issue an order to exempt certain material from disclosure under § 6104 of the Internal Revenue Code, which imposes requirements on True the Vote and the Internal Revenue Service ("IRS") to release information related to True the Vote's tax-exemption application. First, True the Vote does not explain or provide support for the Court's authority to issue a stay to suspend application of a valid federal statute not at issue or challenged in this case. Second, True the Vote's request for a stay of agency action under 5 U.S.C. § 705 is unsupported as there has been no adverse agency action. Third, and finally, even assuming there is authority to grant True the Vote's relief, True the Vote fails to meet the minimum requirements to obtain a stay of agency action. Specifically, True the Vote has failed to provide any substantive argument showing 1) a likelihood of success on the merits; 2) that irreparable injury will result unless the stay is granted; and that issuance of a stay

will result in (3) no substantial hardships; or 4) harm to the public interest. Indeed, each of these factors weighs against the imposition of a stay. As such, the United States respectfully requests that the Court deny True the Vote's motion.

**I.      Introduction**

In its First Amended Complaint, True the Vote makes the following claims: (1) a claim for a declaratory judgment determining that Plaintiff is a tax-exempt organization pursuant to 26 U.S.C. § 501(c)(3); (2) a claim for declaratory relief that the IRS and defendant Daniel Werfel, acting in his official capacity, violated True the Vote's rights under the First Amendment to the U.S. Constitution, and an injunction to prevent further alleged unauthorized actions; (3) a *Bivens* action against the individual defendants for violations of True the Vote's rights under the First Amendment; (4) a claim for damages for violations of 26 U.S.C. § 6103, which relates to the unauthorized inspection of tax returns or tax return information; and (5) a claim against the IRS and IRS employees sued in their official capacities based on violations of the Administrative Procedure Act. (Doc. 14 at 35-46.) All of True the Vote's claims relate to its request that the IRS exempt True the Vote from federal taxes under 26 U.S.C. § 501(c)(3).

The United States, on behalf of itself, the IRS, and the IRS employees named in their official capacities, has moved to dismiss the claims raised in Counts I, II, IV and V of True the Vote's First Amended Complaint. (Doc. 54.) As the motion to dismiss states, since True the Vote filed this action, the IRS with the concurrence of the Department of Justice determined to grant True the Vote's application for tax-exempt status, and at the time the motion to dismiss was filed, a favorable determination letter was forthcoming. As a result, the federal defendants argued that True the Vote's claims for a determination of its tax status (Count I), for declaratory

and injunctive relief under the First Amendment (Count II) and for judicial review under the APA (Count V) would be moot. By letter dated September 26, 2013, the IRS granted True the Vote's application for tax-exempt status, officially rendering the claims raised in Counts I, II and V moot.

The federal defendants also moved to dismiss True the Vote's claim for damages for alleged unauthorized inspection of return information (Count IV) for failure to state a claim upon which relief may be granted. The *Bivens* claim (Count III) is only against defendants in their individual capacities, all of whom are being represented by private counsel. Thus, that claim is not brought against the United States and was not addressed in the federal defendants' motion to dismiss.

**II.     There is No Authority for the Court to Suspend the Application of IRC § 6104.**

For organizations granted tax-exempt status, the Internal Revenue Code requires disclosure of the organization's application for such status, "together with *any papers* submitted in support of such application." 26 U.S.C. § 6104 (emphasis added). True the Vote does not challenge the validity of IRC § 6104. Instead, it merely requests an order suspending the statute's application, as applied to it.

The broad statutory language plainly contradicts True the Vote's efforts to prevent the disclosure of some of the papers it submitted. *Cf. Tax Analysts v. IRS*, 350 F.3d 100, 104 (D.C. Cir. 2003) ("given the clarity of the statute's language and structure, we have no need to resort to legislative history"). In fact, courts that have addressed § 6104 have rejected efforts to restrict or limit the scope of what may be disclosed. *E.g., id.* at 103-104 (rejecting the government's argument that it could withhold documents); *Sklar v. Commissioner of Internal Revenue*,

282 F.3d 610, 616 (9th Cir. 2002) ("As the IRS concedes, some 'return information' prohibited from disclosure under § 6103 may nevertheless be required to be disclosed by tax-exempt entities under § 6104, because the disclosure prohibitions of § 6103 are subject to the mandatory disclosure requirements of § 6104. . . . This is fully consistent with the already extensive disclosure generally required of tax-exempt organizations under § 6104: in this case, the publication of the Church of Scientology's application for tax-exempt status, which contains detailed financial information about the organization, including its revenues and expenses."). Finally, the statute itself belies any hint that applicants should be able to dictate what parts of their application materials are subject to the disclosure requirements.  Section 6104 contains very limited exceptions where the Secretary of the Treasury can withhold information determined to relate to a "trade secret, patent, process, style of work, or apparatus, of the organization." 26 U.S.C. § 6104(a)(1)(D).  In enacting § 6104, Congress demonstrated that it was aware of the broad scope, but the legislature chose to only restrict those explicit categories.  True the Vote has not shown – or even alleged – that its information falls within any of these narrow exceptions; therefore, the mandatory disclosure requirement must be followed.

### III. 5 U.S.C. § 705 Does Not Authorize the Court to Stay Operation of a Statute, Nor Does It Authorize a Stay Where There Is No Adverse Agency Action to Review.

True the Vote invokes the portion of the Administrative Procedure Act codified at 5 U.S.C. § 705 as the sole basis for its motion to "stay" operation of Internal Revenue Code

§ 6104.[1] True the Vote, however, fails to meet key threshold requirements of § 705, which consequently does not afford True the Vote the relief it seeks.

Section 705 authorizes a court reviewing agency action only "to postpone the effective date of an *agency action* or to preserve status or rights *pending conclusion of the review proceedings*." 5 U.S.C. § 705 (emphases added). Thus, the language of that statute makes clear that it only applies to agency action. But True the Vote seeks to stay operation of a valid and applicable federal statute, not discretionary action on the part of an agency. In fact, True the Vote also seeks to stay the statutory requirement that *it* release information upon request. (Doc. 68 at 1.) The statutory language also establishes that § 705 contemplates only temporary relief from an adverse agency action pending judicial review of that action as an administrative-law corollary to a stay pending appeal of a court judgment.[2] Here, however, there is no adverse administrative action for which True the Vote may seek judicial review. Through its APA claim, True the Vote sought judicial review of what it called the "functional denial of tax-exempt status" because of alleged "deliberate delay" in acting on its application to the IRS for recognition of such status. (Doc. 14 ¶ 204.) With the determination of True the Vote's tax-

---

[1] True the Vote's relief could also be viewed as a request for an injunction. But True the Vote fails to meet the standard for that relief for the same reasons it fails under similar standards discussed herein. (*See infra* note 3 (discussing similar elements required for an injunction).)

[2] Indeed, the Supreme Court has noted that "[t]he relevant legislative history of that section . . . indicates that it was primarily intended to reflect existing law under the *Scripps-Howard* doctrine." *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974). That doctrine permitted courts to stay agency action, pending judicial appeal of that action, and was based by analogy on the "traditional stay granted by an appellate court pending review of an inferior court's decision." *Id.* at 73 (describing the impact of *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4 (1942)). Also, as will be described below, the elements that a party must establish to obtain a stay under § 705 are the same elements that a party must establish to obtain a stay pending appeal of a court judgment.

exempt status in its favor, there is no denial – either actual or "functional" – for the Court to review. Surely True the Vote does not seek to challenge the administrative action that has been rendered in its favor. Additionally, the subject of True the Vote's requested stay – Internal Revenue Code § 6104 – is not under judicial review in this action. True the Vote cannot use § 705 to seek a stay of "action" that is not the subject of its request for judicial review. To allow True the Vote to do so would subvert the function of § 705. For all those reasons, § 705 cannot be used to grant True the Vote the stay it seeks.

### IV. True the Vote Has Not Met Any of the Requirements To Obtain the Relief Requested.

Assuming that § 705 even applied to the circumstances here, True the Vote would have to demonstrate the following elements to qualify for a stay, pending judicial review, of agency action: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *see also State of Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987) (*citing Cuomo*); *Michigan Citizens for an Independent Press v. Thornburgh*, No. 88-2322, 1988 WL 90388, at *3 (D.D.C. Aug. 17, 1988) (*citing Cuomo* and *Celebrezze*).[3]

---

[3] The Court would employ the same analysis if it were to consider a preliminary injunction, which is an extraordinary and drastic remedy that should not be granted except in the most compelling of circumstances. *See Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011); *Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). In order to obtain a preliminary injunction, the movant must demonstrate by clear evidence that: 1) there is a substantial likelihood that the movant will prevail on the merits; 2) there is a substantial threat that the movant will suffer irreparable injury if injunctive relief is not granted; 3) the threatened injury to the movant outweighs the harm of the injunction to the non-moving party; and

Showing a mere possibility of harm is insufficient; an appellant must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("[T]he Ninth Circuit's 'possibility' standard is too lenient"); *see MarCon Inc. v. United States*, No. MC08-6562-S-EJL, 2010 WL 28026, at *1 (D. Idaho, July 14, 2010) (noting *Winter*'s clarification of the standard to be used in considering a stay pending appeal). As the moving party, True the Vote bears the burden of demonstrating that a stay is warranted. *See Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979).

As described more fully below, True the Vote has made no showing, clear or otherwise, of the four elements required to support the relief requested. Each factor is discussed below.

A. *True the Vote Cannot Show a Likelihood of Success on the Merits.*

True the Vote makes no claim on its chances of success. Instead, it concludes that "[t]he information and documents provided to the IRS by [T]rue the Vote contained confidential information that True the Vote would not [have] been forced to provide had the IRS processed

---

4) granting the injunction will not disserve the public interest. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *Canal Authority of State of Fla.*, 489 F.2d at 572.

Similarly, the standard for granting a stay pending appeal is effectively the same as that for issuing a preliminary injunction. *See Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). That standard employs four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.

*Golden Gate Restaurant v. City and County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008) (*quoting Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

True the Vote's application in the normal, customary and lawful manner." (Doc. 68 ¶ 4.) True the Vote does not identify any applicable case law, statutes, or regulations that would establish any chance of prevailing on the merits nor a likely chance of succeeding on appeal. Indeed, as described above and in the federal defendants' motion to dismiss, True the Vote cannot prevail on its APA claim for judicial review because there is no adverse agency action for the Court to review. Although True the Vote sought judicial review of what it called the "functional denial" of its application for tax-exempt status (Doc. 14 ¶ 204), there no longer is a "denial" of any sort for the Court to review now that True the Vote's tax-exempt status has been determined in its favor. True the Vote cannot possibly prevail now that its claim is moot.

 True the Vote's requested stay of "agency action" only implicates its APA claim. But even if True the Vote's other claims had any bearing on the requested stay, True the Vote likewise has scant chance of prevailing. To start, True the Vote's claim for a determination of tax status (Count I) is moot now that its application for tax-exempt status has been granted. True the Vote's claim for declaratory and injunctive relief to remedy alleged violations of its First Amendment rights (Count II) also is moot because there is no threat of imminent harm or ongoing harm for any declaration or injunction to remedy. True the Vote's claim under Count II hinges on the existence of an ongoing delay in the consideration of its application for tax exemption, but any such delay has ended with the grant of tax-exempt status. True the Vote's claim for declaratory and injunctive relief under the First Amendment is moot because True the Vote no longer has standing, assuming it ever did, to pursue that relief. True the Vote cannot prevail where the Court lacks jurisdiction to hear its claims.

True the Vote's claim for damages (Count IV) under 26 U.S.C. §§ 6103 and 7431, which allow a damages action for the unauthorized disclosure or inspection of confidential tax return information, also cannot succeed because True the Vote fails to state a cognizable claim under those provisions. True the Vote alleges that the IRS violated § 6103 by "inspecting" the information that True the Vote submitted in support of its application for tax-exempt status. True the Vote argues that the IRS should not have asked for the information and should have conducted its review differently. But how the IRS made its determination is immaterial to whether the IRS was allowed to look at the information once submitted. Moreover, § 7431 expressly bars an action for damages – like this one – that is based on an inspection that the taxpayer requested, and § 6103 expressly allows the IRS to inspect return information for "tax administration purposes," which includes the determination process triggered by True the Vote's application for tax-exempt status. True the Vote cannot succeed on the merits when it cannot even state a cognizable claim under the relevant statutes.

B. *True the Vote Has Shown No Irreparable Injury if the Stay Is Denied.*

True the Vote argues that, "If the IRS's actions are found unlawful, True the Vote will be irreparably harmed if its confidential information and documents are made part of True the Vote's application and publically disclosed under Section 6104." (Doc. 68, ¶ 5.) Despite this conclusory statement, True the Vote does not say how it will be irreparably harmed absent a stay. "In general, to show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. Economic loss does not constitute irreparable harm." *Acierno v New Castle County*, 40 F.3d 645, 653 (3d Cir.1994) (citations and quotations omitted). Irreparable harm must be of a peculiar nature and incapable of

pecuniary measurement. *Kos Pharms. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004). More than a mere risk of irreparable harm must be demonstrated; rather, there must a clear showing of immediate irreparable injury or a currently existing actual threat. *Cont'l Group v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir.1980). An injunction "may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Id.* (quotation and citation omitted). Here, True the Vote has not demonstrated any harm.

In fact, the opposite is true. True the Vote was informed on September 23, 2013, that it would receive its tax exemption.[4] At that point, IRC § 6104 applied to the disclosure of True the Vote's application and supporting documentation.[5] And yet, True the Vote waited almost two months – until November 15, 2013 – to first contact the Department of Justice about "disclosure issues."[6] And now that it has raised its concern, True the Vote has not alleged that it has received any request for a copy of its information or that it knows such a request is forthcoming. Nor has it stated exactly how such a request would irreparably harm it. At best, True the Vote seeks relief from a merely speculative future event. It has made no showing of the type of immediately threatened irreparable harm necessary to justify a stay.

---

[4] The exemption letter was provided on September 26, 2013. (Doc. 65-1.)

[5] True the Vote knew when it submitted its material supporting its application that, under § 6104, those materials would be made public if the application was granted. If True the Vote believed that certain information was not necessary or appropriate for a determination under § 501(c)(3), then it could have elected not to provide that information and then challenged any adverse determination.

[6] True the Vote states that it "has attempted to confer with counsel for the Government concerning this request, but the Government has not stated its position yet." (Doc. 68 at 1.) A few hours before it filed its Motion, True the Vote's counsel left a voicemail requesting the parties enter a consent order but made no mention of the motion.

Although True the Vote alleges that the IRS' February 8, 2012 and October 9, 2012 information requests were unlawful, it fails to allege how this alleged unlawful conduct would cause it irreparable harm. Further, True the Vote ignores that the information sought in those requests has been held to be within the bounds of information necessary for the "in toto" scrutiny that courts have deemed relevant to a tax-exempt status inquiry. *U.S. v. Dykema*, 666 F.2d 1096, 1101 (7th Cir. 1981). When analyzing whether an organization is engaged in activities forbidden by its tax-exempt status, courts scrutinize "the activities of the organization in toto . . . in order to appraise and measure whether the forbidden conduct amounted to a 'substantial' part of the organization's total activities." *Id.* (finding that an organization's correspondence, publications, and financial records are relevant to an inquiry into tax-exempt status).

All aspects of an organization's personnel, relationships, activities, and management are relevant to determining whether an organization operates primarily for the public benefit. In *American Campaign Academy v. Comm'r*, the Tax Court denied the American Campaign Academy ("ACA")'s suit for declaratory judgment of tax-exempt status, finding that the organization operated for the private benefit of the Republican party, rather than for the public benefit. 92 T.C. 1053, 1079 (Tax Ct. 1989). The *ACA* Court's inquiry examined all aspects of ACA operations including: the political affiliation of academy graduates, the content of teaching aids and curriculum used by the academy, political affiliation of the donors, identity and political affiliation of the organization's directors, identity and political affiliation of the admissions panel members, and the content of the academy's application for admission. *See id.* at 1060, 1069, 1070, 1071.

Because § 501(c)(3) organizations are prohibited from participating in elections on behalf of candidates, an organization's election-related activities are relevant to its tax-exempt status determination. In *Ass'n of the Bar v. Comm'r*, the Second Circuit denied the New York Bar Association's suit for declaratory judgment of tax-exempt status, because the Bar Association published candidate ratings for both appointive and elective judgeships. *See* 858 F.2d 876, 880-81 (2d Cir. 1988). The Second Circuit found that, by "publish[ing] expressions of . . . opinion, made with an eye towards imminent elections," the Bar Association engaged in forbidden campaign activity. *See id.* at 880. As endorsement of candidates for public office or publication of candidate ratings constitutes forbidden campaign involvement for § 501(c)(3) organizations, the IRS can properly inquire into the organization's election-related activities, publications, communications, sponsorships, and other potential sources of campaign involvement. *See id.* at 880-81.

Inquiries designed to facilitate "scrutiny of the activities of the organization in toto" are necessary to determine whether the organization engages in activities prohibited by § 501(c)(3). *Dykema*, 666 F.2d at 1101. In *Dykema*, the Seventh Circuit ordered enforcement of an IRS summons seeking a wide range of church records as part of an examination into a church's tax-exempt status and the individual tax liability of the pastor. 666 F.2d at 1104. The breadth of the information and records that the Seventh Circuit found to be relevant covers every conceivable facet of the organization's operations. For example, the court held that the salary of the pastor, financial books, and documents relating to organization structure and assignment of the organization's income were relevant to determining possible improper inurement. *See Dykema*, 666 F.2d at 1101, 1103-04. Likewise, scrutiny of the organization's correspondence

and publications, activities, and financial records were relevant to determine whether a substantial part of the organization's activity consisted of attempts to influence legislation or whether it participated in political campaigns on behalf of any candidate. *See id.* at 1101, 1103. The Seventh Circuit also upheld IRS requests for information concerning the names of officers, directors, trustees or ministers, minutes of board meetings, names of persons ordained or otherwise recognized by the church, names of affiliated or subordinate organizations, documents reflecting the organization's principles and mission, and documents reflecting the conditions of membership. *See id.* at 1103-04.

While True the Vote has not identified which of the forty-four inquiries contained in the IRS' February 8, 2012 and October 9, 2012 requests it deems to be unlawful, a review of the requests reveals that they are aimed at just the type of "in toto" scrutiny of True the Vote's activities deemed appropriate by the Seventh Circuit in *Dykema*. For example, the IRS requested such relevant and appropriate information as a print-out of the organization's website, details of its social media advertising, names and information concerning key organization directors and administrators, minutes of board meetings, membership and recruitment information, affiliation with other organizations, and information covering aspects of potential political campaign activity.[7] (*See* Docket Nos. 1-4 and 1-5); for discussion of the broad swath of information

---

[7] True the Vote seeks to exclude from public disclosure approximately 700 pages it produced to the IRS in response to requests dated February 8, 2012 and October 9, 2012. The table of contents to those document responses, dated March 20, 2012 and November 30, 2012, respectively, are attached as Exhibit 1 and provide a general description of the type of information that True the Vote seeks to exclude. As can be seen, a majority of the information produced to the Service – e.g., the organization's website, its Facebook and Twitter accounts, research papers, online forms, and information included on its form 990EZ – would also already have been available to the general public.

relevant to an examination of tax-exempt status *see Dykema*, 666 F.2d at 1101, 1103-04; *ACA*, 92 T.C. at 1060, 1069, 1070, 1071.

Courts have deemed the type of information requested by the IRS to be within the realm of an appropriate inquiry into tax-exempt status. Thus, because it is the type of information collected and disclosed following a successful application for tax-exempt status and because True the Vote knew when it voluntarily submitted the information it could be disclosed upon receiving tax-exempt status, True the Vote cannot demonstrate that it will be irreparably harmed by any future disclosure.

### C. *True the Vote Does Not Show Any Harm to Others, And Public Interest Weighs in Favor of Disclosure under § 6104.*

In exercising their sound discretion, courts of equity should pay particular regard to the public consequences in employing the extraordinary remedy of injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). Injunctive relief or stays are not appropriate when the alleged harm is private or unique to the complaining party. In this case, the public interest would be best served by denying the motion to stay, which will allow *public inspection* of documents as authorized and required by § 6104.

Moreover, the prompt and efficient administration of federal taxes is always in the public interest; "'taxes are the life-blood of government, and their prompt and certain availability an imperious need.'" *Franchise Tax Bd. Of California v. U.S. Postal Service*, 467 U.S. 512, 523 (1984) (*quoting Bull v. United States*, 295 U.S. 247, 259-60 (1935)); *accord Mama's Enterprises, LLC v. United States*, 883 F. Supp. 2d 1128, 1138 (N.D. Ala. 2012); *but see United States v. Bretthauer*, No. 3:06-CV-00609, 2009 WL 277560, at * 3 (Feb. 5, 2009, D. Nev.) (weighing public interest in collection of taxes against the court's view that the public interest

also lies in preserving property rights until legal process is concluded). Compliance with the Internal Revenue Code is a necessary part in the administration of taxes, especially for a tax-exempt entity like True the Vote. Having obtained the benefit and privilege of tax exemption under the Internal Revenue Code, True the Vote must abide by the same Code's provisions requiring public disclosure of documents submitted in support of its application.

Furthermore, public disclosure of documents that form the basis of tax-exemption determinations promotes the strong public policy of ensuring that the tax laws are administered fairly and evenly. *See Tax Analysts*, 350 F.3d at 104 (discussing how that policy is advanced by the public availability of IRS determinations denying or revoking tax-exempt status). The documents that are the subject of True the Vote's Motion form part of the administrative record on which the determination of its tax-exempt status was made. Only a complete record can enable a member of the public to judge and hold the IRS accountable for whether it properly applied the law in granting True the Vote's tax-exempt status.

## V.    CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court deny True the Vote's Motion.

DATED: December 3, 2013

Respectfully submitted,

KATHRYN KENEALLY
Assistant Attorney General, Tax Division

<u>/s/ Grover Hartt, III</u>
GROVER HARTT, III (TX 09174500)
Senior Litigation Counsel
CHRISTOPHER R. EGAN (TX 24036516)
Trial Attorney
U.S. Department of Justice, Tax Division
717 N. Harwood Street, Suite 400
Dallas, Texas 75201
(214) 880-9733
(214) 880-9741 (FAX)
Grover.Hartt@usdoj.gov

JOSEPH A. SERGI (DC 480837)
Senior Litigation Counsel
U.S. Department of Justice, Tax Division
555 4th Street, N.W., JCB 7207
Washington, D.C. 20001
(202) 305-0868
(202) 307-2504 (FAX)
Joseph.A.Sergi@usdoj.gov

JENNIFER D. AUCHTERLONIE (WA 29481)
LAURA C. BECKERMAN (CA 278490)
CHRISTOPHER D. BELEN (VA 78281)
LAURA M. CONNER (VA 40388)
JEREMY HENDON (OR 982490)
PHILIP M. SCHREIBER (DC 502714)
U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C. 20001
(202) 514-2000

Trial Attorneys

Of Counsel:
RONALD C. MACHEN, JR. (DC 447889)
United States Attorney

ATTORNEYS FOR THE UNITED STATES

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUE THE VOTE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:13-cv-00734-RBW |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2013, I caused the OPPOSITION TO PLAINTIFF'S MOTION TO STAY AGENCY ACTION in the above-captioned matter to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

/s/ Grover Hartt, III
GROVER HARTT, III