# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TRUE THE VOTE, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | Civ. No. 13-cv-00734-RBW |
| | ) | |
| v. | ) | Judge Reggie B. Walton |
| | ) | |
| INTERNAL REVENUE SERVICE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## REPLY IN SUPPORT OF THE CINCINNATI DEFENDANTS' MOTION TO DISMISS

Jeffrey A. Lamken (D.C. Bar No. 440547)
Justin V. Shur (D.C. Bar No. 973855)
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (phone)
(202) 556-2001(fax)
jlamken@mololamken.com
jshur@mololamken.com

*Counsel for Susan Maloney, Ronald Bell,*
*Janine L. Estes, and Faye Ng*

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    The Cincinnati Defendants Are Not Subject to This Court's
Personal Jurisdiction ........................................................................................... 2

    A.    True the Vote Does Not Plead Facts Supporting General Jurisdiction ............... 2

    B.    True the Vote Does Not Plead Facts Establishing Specific Jurisdiction ............ 5

    C.    Plaintiff's Conspiracy Theory Fails As Well ...................................................... 6

        1.    The Intra-Corporate Conspiracy Doctrine Bars Plaintiff's Theory ........... 6

        2.    Plaintiff Has Not Properly Pleaded Conspiracy ......................................... 8

II.    True the Vote Has No Cause of Action Under *Bivens* ...................................... 9

    A.    True the Vote Seeks To Extend *Bivens* to a New Context ............................... 10

    B.    Special Factors Counsel Hesitation Before Extending *Bivens* Here ................. 12

        1.    The Internal Revenue Code Presents a Comprehensive Remedial
Scheme—Including § 7428—That Counsels Hesitation ......................... 12

        2.    The Legislative History of § 7433 Does Not Assist Plaintiff ................... 14

        3.    No Special Factors Favor Extending *Bivens* ........................................... 18

    C.    True the Vote Has Adequate, Alternative Remedies ......................................... 19

III.    The Cincinnati Defendants Are Entitled to Qualified Immunity ............................... 20

    A.    The Cincinnati Defendants' Conduct Was Objectively Reasonable ................. 21

    B.    True the Vote's Injury Is Insufficient To Establish a Violation of Clearly
Established Rights ............................................................................................. 24

CONCLUSION ............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Adams Fruit Co. v. Barrett*, 494 U.S. 638, 110 S. Ct. 1384 (1990)..............................................12

*Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034 (1987) ....................................21, 22, 23

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009)........................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................ *passim*

*Bob Jones Univ. v. Simon*, 416 U.S. 725, 94 S. Ct. 2038 (1974)............................................15, 24

*Bothke v. Fluor Eng'rs & Constr., Inc.*, 834 F.2d 804 (9th Cir. 1987) ........................................15

*Bush v. Lucas*, 462 U.S. 367, 103 S. Ct. 2404 (1983) ....................................................................18

*Cameron v. IRS*, 773 F.2d 126 (7th Cir. 1985)..............................................................................15

*Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468 (1980) ....................................16, 17, 20

*Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362 (1983) ......................................................10

*Cornell v. Kellner*, 539 F. Supp. 2d 311 (D.D.C. 2008) ..............................................................4

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515 (2001)............................................16

*Crawford-El v. Britton*, 93 F.3d 813 (D.C. Cir. 1996) ................................................................24

*Curly v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) ..............................................................24

*Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264 (1979) ..............................................................10

*Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977)..............................................................10, 11

*Doe v. Rumsfeld*, 683 F.3d 390 (D.C. Cir. 2012)........................................................................10

*Dorman v. Thornburgh*, 740 F. Supp. 875 (D.D.C. 1990) ..........................................................9

*Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 653 F. Supp. 1200
    (E.D. Mich. 1986) ..................................................................................................................25

*El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996)..................................................2

*FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008) ............................................8

*G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S. Ct. 619 (1977) ..................................15

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846 (2011) ............................................3

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271 (11th Cir. 1998)......................................................4

*Hartley v. Wilfert*, 918 F. Supp. 2d 45 (D.D.C. 2013)....................................................11

*Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695 (2006)......................................................11, 23

*Hatfill v. Ashcroft*, 404 F. Supp. 2d 104 (D.D.C. 2005) ..........................................................24, 25

*Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987)...........................................................11

*Herrmann v. Moore*, 576 F.2d 453 (2d Cir. 1978) ................................................................7

*Hudson Valley Black Press v. IRS*, 409 F.3d 106 (2d Cir. 2005) ................................................14

*Johnson v. Nyack Hosp.*, 954 F. Supp. 717 (S.D.N.Y. 1997) ...................................................8

*Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401 (4th Cir. 2003).............................................14, 18

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
115 F.3d 1020 (D.C. Cir. 1997) .................................................................................8

*Keese v. United States*, 632 F. Supp. 85 (S.D. Tex. 1985) ......................................................15

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S. Ct. 1473 (1984).....................................3

*Kelley v. District of Columbia*, 893 F. Supp. 2d 115 (D.D.C. 2012)..........................................7, 8

*Kim v. United States*, 618 F. Supp. 2d 31 (D.D.C. 2009) ........................................................13

*Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011) ...........................................................13, 18

*Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002)........................................................11

*Lojeski v. Boandl*, 788 F.2d 196 (3d Cir. 1986).....................................................................15

*Marsoun v. United States*, 591 F. Supp. 2d 41 (D.D.C. 2008) ................................................13

*Martin v. District of Columbia*, 2013 WL 5106074 (D.D.C. Sept. 16, 2013) .............................7, 8

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031 (11th Cir. 2000) .......................................6

*McBeth v. Himes*, 598 F.3d 708 (10th Cir. 2010)...................................................................24

*Messerschmidt v. Millender*, 132 S. Ct. 1235 (2012) ...........................................................23

*Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989)..............................18

*Navab-Safavi v. Broadcasting Bd. of Governors*, 650 F. Supp. 2d 40 (D.D.C. 2009) ................11

*Preister v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000) ................................................25

*Reichle v. Howards*, 132 S. Ct. 2088 (2012) ................................................11, 21, 22, 25

*Rodriguez v. United States*, 629 F. Supp. 333 (N.D. Ill. 1986) ................................................15

*Schweiker v. Chilicky*, 487 U.S. 412, 108 S. Ct. 2460 (1988) ................................................10, 19, 20

*Second Amendment Found. v. U.S. Conference of Mayors,*
      274 F.3d 521 (D.C. Cir. 2001)................................................6

*Simpkins v. District of Columbia*, 108 F.3d 366 (D.C. Cir. 1997)................................................9

*Stafford v. Briggs*, 444 U.S. 527, 100 S. Ct. 774 (1980) ................................................4

*Tabb v. District of Columbia*, 477 F. Supp. 2d 185 (D.D.C. 2007)................................................6, 7

*United States v. Dykema*, 666 F.2d 1096 (7th Cir. 1981) ................................................25

*United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116 (D.D.C. 2006)................................................8

*United States v. Stanley*, 483 U.S. 669, 107 S. Ct. 3054 (1987)................................................19

*Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107 (D.D.C. 2008) ................................................4

*Weaver v. Gross*, 605 F. Supp. 210 (D.D.C. 1985) ................................................7

*Weise v. Jenkins*, 796 F. Supp. 2d 188 (D.D.C. 2011)................................................11

*Wiggins v. Equifax Inc.*, 853 F. Supp. 500 (D.D.C. 1994)................................................7

*Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588 (2007)................................................19

*Williams v. Fed. Nat'l Mortg. Ass'n*, No. Civ. A05-1438 (JDB),
      2006 WL 1774252 (D.D.C. June 26, 2006)................................................7

*Wilson v. Libby*, 498 F. Supp. 2d 74 (D.D.C. 2007) ................................................10

*Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008)................................................ *passim*

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
      296 F.3d 1154 (D.C. Cir. 2002)................................................5

*Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72 (D.D.C. 2004)................................................9

## Statutes, Rules, and Regulations

26 U.S.C. § 501 ...................................................................................................4

26 U.S.C. § 501(c)(3) ................................................................................... *passim*

26 U.S.C. § 7423 .................................................................................................12

26 U.S.C. § 7428 .......................................................................................... *passim*

26 U.S.C. § 7428(a)(2) .......................................................................................13

26 U.S.C. § 7428(b)(2)-(3) .................................................................................13

26 U.S.C. § 7431 .................................................................................................17

26 U.S.C. § 7433 ..............................................................................12, 14, 15, 17

28 C.F.R. § 50.15(a) ...........................................................................................12

D.C. Code § 13-423(a)(1) .....................................................................................5

D.C. Code § 13-423(a)(4) .....................................................................................5

Fed. R. Civ. P. 12(b)(6) .......................................................................................9

## Constitutional Provisions

U.S. Const. amend. I ..................................................................................... *passim*

U.S. Const. amend. IV ........................................................................................18

U.S. Const. amend. V ............................................................................................4

## Legislative Materials

H.R. Conf. Rep. No. 100-1104 (1988).........................................................15, 17

S. 2238, 100th Cong., 2d Sess., § 779 (1988) ...................................................15

Hearing on S. 579 and S. 604, S. Hrg. 100-131, pt. 1, 100th Cong. (1987) ...............17

S. Rep. No. 93-588 (1973) ..................................................................................16

134 Cong. Rec. 29,273 (1988) ...........................................................................15

134 Cong. Rec. 29,274 (1988) .....................................................................15, 17

**OTHER AUTHORITIES**

Internal Revenue Manual § 5.17.5.14(3) ........................................................................12

## <u>INTRODUCTION</u>

True the Vote does not dispute that the Supreme Court has refused to extend *Bivens* to any new contexts in more than three decades.  It does not deny that the Supreme Court and the courts of appeals have repeatedly cautioned against such extensions.   And it cites no case extending *Bivens* to this context—alleged viewpoint discrimination in the IRS's processing of a § 501(c)(3) tax-exemption application.  Extending *Bivens* here is particularly inappropriate given the complex web of remedies Congress has already provided—including 26 U.S.C. § 7428, an express declaratory judgment remedy specifically designed for § 501(c)(3) determinations.  Extending *Bivens* would eviscerate § 7428's carefully crafted boundaries—a short 90-day limitations period, a calibrated exhaustion requirement, and limits on the relief available.   True the Vote nowhere suggests otherwise.

True the Vote primarily argues that the legislative history of the 1988 Taxpayer Bill of Rights—which conferred a limited damages remedy for statutory and regulatory violations in tax ***collection*** efforts—evinces an intent to "preserve" *Bivens* here.  But True the Vote is not asking this Court to "preserve" *Bivens* in a context where *Bivens* was previously recognized.  It is asking this Court to extend *Bivens* to tax-exemption decisions, a tax ***determination***.  *Bivens* had not been extended to that context in 1988.  Nor could that extension have been consistent with the careful limits Congress established in § 7428.  Besides, Congress deliberately limited the express statutory damages remedy in the Taxpayer Bill of Rights to unlawful tax ***collection*** activities.  The same reasons that counseled Congress's hesitation before extending a damages action to tax ***determinations*** conclusively counsel hesitation before extending a judicially implied damages remedy to that same context here.

True the Vote, moreover, has not pleaded sufficient facts to establish a prima facie case of personal jurisdiction.  Its conspiracy theory for jurisdiction is neither legally sound nor

supported by the pleaded facts.  True the Vote's substantive claims fail to overcome qualified immunity.  True the Vote's application explicitly suggested its involvement in political activity that would disqualify it from tax-exempt status.  The Cincinnati Defendants' requests for additional information were not, in light of that, objectively unreasonable.  And True the Vote's effort to make this case about a "policy" is ill-conceived.  *Bivens* can be used to hold officers liable for their own unconstitutional acts; it is not a vehicle for challenging the validity of policies in the abstract.

## ARGUMENT

## I.      The Cincinnati Defendants Are Not Subject to This Court's Personal Jurisdiction

True the Vote's jurisdictional arguments all fail for essentially the same reason:  Far from showing that the Cincinnati Defendants had sufficient personal contacts with the District of Columbia, True the Vote focuses on the conduct of other individuals.  For that reason, True the Vote seeks refuge in a conspiracy theory.  But that theory is neither legally nor factually viable.

### A.      True the Vote Does Not Plead Facts Supporting General Jurisdiction

True the Vote does not dispute that general jurisdiction requires "continuous and systematic general business contacts with" the District of Columbia that are so extensive as to provide jurisdiction over any claim against the Cincinnati Defendants, regardless of the claim's nature.  *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (quotation marks omitted), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305, 130 S. Ct. 2278 (2010).  True the Vote asserts generally that some defendants "worked in close connection" with other IRS officials in D.C., sent applications for review to D.C., and "communicat[ed] with individuals in D.C. frequently via telephone or email."  Pl. Br. 7-8.  But plaintiff cites no case suggesting that sort of contact establishes general jurisdiction.  Nor could it.  General jurisdiction exists only where the contacts "with the State are so 'continuous and systematic' as to render"

the defendant "**essentially at home** in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (emphasis added).   True the Vote cannot make that showing.  If True the Vote were correct, the conduct it relies on would provide jurisdiction here over the Cincinnati Defendants regardless of the underlying facts—for a car accident in Texas or for a tort in Kalamazoo.  To state the proposition is to refute it.

More important, while True the Vote string cites parts of the Complaint without elaboration, it does not establish extensive contacts between the Cincinnati Defendants (Estes, Ng, Maloney, and Bell) and the District of Columbia.  Instead, True the Vote focuses on portions of the Complaint that address **other** defendants,[1] or that mention the Cincinnati Defendants without showing contact between them and the District of Columbia.[2]  The only specifically identified contact between a Cincinnati Defendant and the District of Columbia occurred when **the Taxpayer Advocate** in D.C.—not an IRS office alleged to have done wrong—contacted Mr. Bell to make an inquiry.  *See* Compl. ¶¶59-60 (cited Pl. Br. 8).  Mr. Bell reported that the application had been forwarded to Washington, D.C.  Compl. ¶60.  **Receiving** a single phone call **from** a

---

[1] True the Vote (at 8) invokes the TIGTA Report for the assertion that "Defendant Thomas repeatedly" had contacts with the IRS's offices in D.C., and cites Complaint ¶90, which addresses Mr. Grodnitzky.  *See also* Compl. ¶94 (discussing only Ms. Thomas).  But neither Thomas nor Grodnitzky is a Cincinnati Defendant.  True the Vote also invokes (at 8) Complaint ¶135, but that paragraph refers only to Defendants Miller, Shulman, Wilkins, Lerner, Paz, Fish, Grodnitzky, Seto, and Thomas—none are Cincinnati Defendants.  Nor does True the Vote's repeated reference to the TIGTA Report, *see* Compl. ¶86, which does not mention any Cincinnati Defendant by name, or to paragraphs of the Complaint referring to the "IRS EO Determinations Unit," *see* Compl. ¶¶86, 88, establish any such close connection.  General references to the Cincinnati Defendants' employer cannot establish personal jurisdiction. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13, 104 S. Ct. 1473, 1482 n.13 (1984).

[2] For example, True the Vote invokes ¶¶96-97, which say Ms. Paz, Mr. Grodnitzky, or Mr. Seto (none of whom are Cincinnati Defendants) developed guidelines for the Cincinnati Defendants to follow and that, under Ms. Thomas's direction, the "EO Determinations Unit" in Cincinnati followed them.  But they nowhere identify any contact between Estes, Ng, Maloney or Bell and anyone in Washington, D.C. in that process.  They at most suggest they received orders from Ms. Thomas in Cincinnati, under whose supervision they operated.

D.C.-based office and reporting that an application had been transferred there does not establish frequent communication or continuous and systematic business contacts. The "close connection" claimed by True the Vote thus is wholly unsupported. That leaves True the Vote solely with conclusory allegations that unspecified "IRS Employees" in Cincinnati were "working in concert" with IRS officials in D.C. Compl. ¶¶ 28, 86. But such generalizations, unsupported by the facts, are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Finally, there is no general jurisdiction over the Cincinnati Defendants because any contact they had with the District of Columbia occurred through their employment with the IRS. "[A]bsent minimum contacts other than those arising from federal employment, [a] court may not exercise personal jurisdiction over [a] federal official in his individual capacity." *Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 112 (D.D.C. 2008) (citing *Stafford v. Briggs*, 444 U.S. 527, 543-45, 100 S. Ct. 774, 784-85 (1980)). True the Vote does not dispute that. Pl. Br. 7. It instead argues the Cincinnati Defendants exceeded the scope of their official authority. *Id.* But the Cincinnati Defendants' actions, as alleged in the Complaint, all specifically relate to their job duties—the consideration of applications under § 501—and thus fall squarely within their "discretionary authority." *Id.* (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998)). The assertion of unconstitutional conduct does not alter that conclusion. Allegations of unconstitutional action were present in *Walton*, 533 F. Supp. 2d at 110 (alleging racial discrimination), and *Cornell v. Kellner*, 539 F. Supp. 2d 311, 313 (D.D.C. 2008) (alleging Fifth Amendment violations). Still, in both cases, contacts arising from federal employment *did not establish* jurisdiction in the District of Columbia. *Walton*, 533 F. Supp. 2d at 112; *Cornell*, 539 F. Supp. 2d at 314-15. The same is true here.

### B.    True the Vote Does Not Plead Facts Establishing Specific Jurisdiction

True the Vote's specific jurisdiction claim fails, too: The Complaint does not allege sufficient contacts between the Cincinnati Defendants and the District of Columbia.

1.    True the Vote asserts specific jurisdiction under D.C. Code § 13-423(a)(4).  But that requires "tortious injury in the District of Columbia," and True the Vote nowhere explains how it—a Texas corporation with no alleged activity in the District—suffered any injury here. *Compare* Pl. Br. 8-10, *with* Cincinnati Br. 12-13.   True the Vote similarly ignores § 13-423(a)(4)'s requirement that the Cincinnati Defendants "solicit business," engage in a "persistent course of conduct," or derive "substantial revenue from goods used or consumed, or services rendered" in the District of Columbia.  *See* Cincinnati Br. 12-13.  True the Vote's reliance on § 13-423(a)(4) is thus abandoned in substance if not form.

2.    True the Vote focuses on § 13-423(a)(1), which provides jurisdiction over those who "transact . . . business in the District of Columbia," where the claims "aris[e] from the particular transaction of business in the District."  *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002).  True the Vote asserts that "the Cincinnati Defendants requested, received, and inspected True the Vote's information, which was then, according to Defendant Bell himself, sent to the D.C. office for review."  Pl. Br. 9 (citing Compl. ¶¶ 59-60).  But the cited paragraphs say only that the Taxpayer Advocate and True the Vote's counsel called Mr. Bell, Compl. ¶¶ 59-60, and that Mr. Bell told them the application "was being overseen by and had been forwarded to the IRS office in Washington for additional review." Compl. ¶ 60.  That says **nothing** about any Cincinnati Defendant other than Mr. Bell; it identifies no connection between any Cincinnati Defendant and True the Vote's application, much less that the Cincinnati Defendants caused True the Vote's injury by transacting business in connection with that application in the District of Columbia.  Even as to Mr. Bell, the cited paragraphs never

accuse *him* of transferring or making the decision to transfer True the Vote's application to D.C. Cincinnati Br. 13.  Defendant Bell's report of that transfer no more establishes his (or any of the Cincinnati Defendants') personal participation than the *Washington Post*'s report of an election contest indicates that it chose the candidates or decided the outcome.  Indeed, the Complaint itself suggests IRS officials in Washington—not those in Cincinnati—made the decision to transfer cases to Washington, D.C.  Compl. Ex. H at 2.

At bottom, the exercise of personal jurisdiction—general or specific—requires that each Cincinnati Defendant have personal contacts with the District of Columbia.  Absent those contacts, it is neither fair, nor reasonable, nor lawful to force them to defend themselves hundreds of miles from their homes, jobs, and families.  The Cincinnati Defendants should be dismissed.

### C.     Plaintiff's Conspiracy Theory Fails As Well

Perhaps recognizing it pleaded only conduct by *other* defendants in the District of Columbia, True the Vote seeks refuge in a conspiracy theory.  Pl. Br. 10-24.  Jurisdiction in the District of Columbia, it urges, extends to any person who "acts directly or by an agent" to produce the necessary contacts with the forum.  *See, e.g.*, *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001).  The Cincinnati Defendants are line-level IRS employees.  The notion that their *superiors* in Washington D.C. acted as their "agents" is logically ill-fated.  The claim of conspiracy, in any event, is not properly pleaded.

### 1.     The Intra-Corporate Conspiracy Doctrine Bars Plaintiff's Theory

Under the intra-corporate conspiracy doctrine, "'a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves.'"  *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036-37 (11th Cir. 2000)).  As a result, "'there is no conspiracy if the conspiratorial conduct challenged is essentially a

single act by a single corporation acting exclusively through its own directors, officers, and employees.'" *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 119-20 (D.D.C. 2012) (quoting *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978)). That same principle extends to employees of a government agency accused of conspiring to commit constitutional violations, *e.g.*, *Martin v. District of Columbia*, No. 11-cv-1069(RC), 2013 WL 5106074, at *7-8 (D.D.C. Sept. 16, 2013), and it forecloses personal jurisdiction based upon conspiracy, *Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 504 (D.D.C. 1994) (no conspiracy jurisdiction where intra-enterprise conspiracy doctrine applied). Here, all defendants are employees of the IRS. As such, they "cannot conspire among themselves." *Tabb*, 477 F. Supp. 2d at 190.

True the Vote cannot evade that rule by claiming the Defendants were not "acting within the scope of their employment." *Tabb*, 477 F. Supp. 2d at 190. The "'relevant inquiry is whether the acts of the defendants were in fact taken on behalf of the corporation, each acting within the scope of their employment, or instead were taken ***solely*** for personal, nonbusiness motivations.'" *Williams v. Fed. Nat'l Mortg. Ass'n*, No. Civ. A05-1438 (JDB), 2006 WL 1774252, at *7 (D.D.C. June 26, 2006) (quoting *Weaver v. Gross*, 605 F. Supp. 210, 214-15 (D.D.C. 1985)); *see also Wiggins*, 853 F. Supp. at 504. True the Vote has not alleged any "personal, nonbusiness motivation" underlying the Cincinnati Defendants' actions. It alleges precisely the opposite, suing the Cincinnati Defendants "in [their] individual capacit[ies] for acts and omissions occurring ***in connection with duties performed on behalf of the U.S. Government***." Compl. ¶¶ 44-47 (emphasis added). True the Vote cannot have it both ways. *See Williams*, 2006 WL 1774252, at *7-8 (no personal motivation where counsel acknowledged defendants acted within scope of employment).

True the Vote suggests that the Cincinnati Defendants lacked legal authority because they violated the Constitution in connection with the alleged "facially discriminatory" IRS Identification Scheme.  Pl. Br. 7.  But True the Vote cannot explain how "carrying out" the allegedly "facially discriminatory" policy advances some personal, nonbusiness motivation.  It has not suggested the Cincinnati Defendants personally opposed conservative viewpoints.  If unconstitutional conduct alone placed federal officials' actions outside the scope of their governmental employment, "the exception would swallow the rule, and [the intra-corporate conspiracy doctrine] would be meaningless." *Johnson v. Nyack Hosp.*, 954 F. Supp. 717, 723 (S.D.N.Y. 1997).  This Court thus has repeatedly applied the intra-corporate conspiracy doctrine to conspiracies involving violations of constitutional rights.  *See, e.g.*, *Martin*, 2013 WL 5106074, at *7-8; *Kelley*, 893 F. Supp. 2d at 119-20.  It forecloses True the Vote's jurisdictional conspiracy theory here.

## 2.    Plaintiff Has Not Properly Pleaded Conspiracy

True the Vote also fails to plead facts establishing "(1) the existence of a civil conspiracy . . . , (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1096 (D.C. Cir. 2008) (quotation marks omitted). There must be a "substantial" showing of a civil conspiracy "aimed at a forum." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 122 & n.6 (D.D.C. 2006).  Conversely, "'bald speculation' or a 'conclusory statement' that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (citation omitted).

Yet that is all True the Vote has alleged—conclusory allegations.  *See* Cincinnati Br. 14. True the Vote's own description of its Complaint makes that particularly clear.  The Complaint does not allege an agreement to "participat[e] in the conspiracy." *FC Inv. Grp. LC*, 529 F.3d at

8

1096.[3]  It accuses the Cincinnati Defendants of doing nothing more than "execut[ing] the IRS Targeting Scheme at the ground level by sending to True the Vote the burdensome and unnecessary requests for additional information."  Pl. Br. 16; *see also* Pl. Br. 21-23.[4]  But "ground level" implementation of superiors' policies is not conspiratorial agreement.  Policies "promulgated in Washington, D.C." are not "overt acts in furtherance of a conspiracy" that out-of-forum government employees join by "fulfill[ing] their duties in enforcing those already-enacted" policies.  *Dorman v. Thornburgh*, 740 F. Supp. 875, 878 (D.D.C. 1990).  Count 3 should be dismissed lack of personal jurisdiction over the Cincinnati Defendants.[5]

## II.    True the Vote Has No Cause of Action Under *Bivens*

Notwithstanding the Supreme Court's steadfast refusal to extend *Bivens* to any new context, True the Vote demands *Bivens*' expansion here.  But special factors counsel hesitation—and overwhelmingly so.  Rather than address those factors directly, True the Vote ignores the most significant ones.  Even as to arguments it does address, True the Vote relies on a flawed reading of legislative history and makeweight factors "favoring" *Bivens*' expansion.

---

[3] At least one court has further required a showing of each defendant's purposeful availment. *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 79-80, 83 (D.D.C. 2004).  As in *Jin*, True the Vote "seek[s] jurisdiction in the District of Columbia based on a variety of acts by alleged co-conspirators in the District about which [True the Vote] fail[s] to show the [Cincinnati Defendants] had *any* knowledge, control, approval or discretion." *Id.* at 83.  For that reason, purposeful availment is lacking, and the exercise of jurisdiction violates due process. *Id.* at 79-80.

[4] Specifically, True the Vote states that the "IRS EO Technical Unit . . . the IRS Office of Rulings and Agreements . . . [and] Defendant Ms. Lerner"—all D.C.-based IRS offices or officials—"developed and revised written and oral guidance on how IRS Employees . . . were to identify and process applications" and that "EO Specialists" like the Cincinnati Defendants "implemented and applied this written and oral guidance . . . ." Pl. Br. 19-20.

[5] True the Vote also requests jurisdictional discovery, but no discovery is required or appropriate absent reason to believe the required connection exists.  True the Vote never provides that reason.  Besides, such discovery would be futile because the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim in any event.  *See Simpkins v. District of Columbia*, 108 F.3d 366, 370 (D.C. Cir. 1997).

A.       **True the Vote Seeks To Extend *Bivens* to a New Context**

Because "implied causes of action are disfavored," *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 1948 (2009), the Supreme Court has resisted "suggestions that *Bivens* remedies be extended into new contexts," *Schweiker v. Chilicky*, 487 U.S. 412, 421, 108 S. Ct. 2460, 2467 (1988).  Creating a "*Bivens* action . . . is not something to be undertaken lightly."  *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012).

True the Vote insists it is not necessary to extend *Bivens* because *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977), already considered "whether there was a 'cause of action under *Bivens* for redress of First Amendment violations.' "  Pl. Br. 38.  But *Dellums* and its progeny extended *Bivens* to First Amendment retaliatory arrest and prosecution claims, not claims of improper processing of a § 501(c)(3) application.  When deciding whether a context is "new," it is not enough to simply urge that the same constitutional provision or prohibition is involved.  One must look to whether the case presents new "***legal and factual*** components."  *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) (en banc) (emphasis added).

Thus, in *Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362 (1983), the Supreme Court refused to recognize a *Bivens* remedy for employment discrimination in the military context despite previously recognizing a *Bivens* remedy for employment discrimination in the context of congressional staff, *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264 (1979).  Likewise, *Wilson v. Libby*, refused to extend *Bivens* to First Amendment retaliation claims asserted by an alleged CIA operative despite permitting such claims in other contexts.  *Wilson v. Libby*, 498 F. Supp. 2d 74, 84-96 (D.D.C. 2007), *aff'd* 535 F.3d 697, 705-10 (D.C. Cir. 2008).  The fact that this case could broadly be described as involving First Amendment retaliation claims is thus insufficient.  True the Vote must show that the precedents it invokes "reflect a potentially recurring scenario that has similar legal and factual components" to the one asserted here.  *Arar*, 585 F.3d at 572.

That it cannot do.  *Dellums* at most extended *Bivens* to claims of retaliatory arrest.  566 F.2d at 173, 194-96.  The claims here, by contrast, arise in the context of applications for tax-exempt status under a complex statute—the Internal Revenue Code.  They do not involve arrest, but concern inherently discretionary determinations of whether to seek more information.[6]  True the Vote thus errs when it quotes *Wilson v. Libby* for the proposition that "'[t]here is nothing novel about a *Bivens* remedy for a First Amendment retaliation claim against federal officials.' *Wilson*, 535 F.3d at 721."  Pl. Br. 39.  The quoted language comes from the *Wilson* dissent.  *See Wilson*, 535 F.3d at 721 (Rogers, J., concurring in part and dissenting in part).  The majority rejected that approach, refusing to extend *Bivens* retaliation claims beyond arrest and prosecution contexts.  *Id.* at 707-08.  True the Vote cannot cite any court of appeals decision that has extended *Bivens* to First Amendment retaliation claims in the context of IRS tax-exempt status determinations.[7]

Finally, True the Vote argues that IRS regulations recognize *Bivens* actions by providing for indemnification and representation by government or private counsel.  Pl. Br. 26-27 (citing

---

[6] The same reasoning distinguishes the other cases that True the Vote cites.  *See Haynesworth v. Miller*, 820 F.2d 1245, 1255 (D.C. Cir. 1987); *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 51-52 (D.D.C. 2013); *Navab-Safavi v. Broadcasting Bd. of Governors*, 650 F. Supp. 2d 40, 65-76 (D.D.C. 2009).  *Haynesworth* is inapposite for another reason as well.  The *Haynesworth* defendants did not "contest [the plaintiff's] ability to challenge this sort of prosecution in a *Bivens*-type action."  820 F.2d at 1255; *see also Lederman v. United States*, 291 F.3d 36, 39 (D.C. Cir. 2002) (assuming *Bivens* remedy and deciding case on qualified immunity grounds); *Weise v. Jenkins*, 796 F. Supp. 2d 188, 196 (D.D.C. 2011) (same).

[7] True the Vote cannot dodge this fact by stating *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 1701 (2006), "strongly suggested" that First Amendment claims are viable under *Bivens*.  Pl. Br. 38.  For one thing, since *Hartman*, the Supreme Court has twice cast doubt over the availability of *Bivens* to remedy First Amendment violations.  *See Reichle v. Howards*, 132 S. Ct. 2088, 1093 n.4 (2012); *Iqbal*, 556 U.S. at 675, 129 S. Ct. at 1948.  For another, the question is not whether *Bivens* extends to First Amendment claims.  It is whether *Bivens* extends to this particular context—First Amendment retaliation claims in connection with IRS tax-exempt status determinations.  *See* p. 10, *supra*.

26 U.S.C. § 7423; 28 C.F.R. § 50.15(a); Internal Revenue Manual § 5.17.5.14(3)).  But that does not mean *Bivens* actions necessarily extend to IRS agents generally or to this particular context. Counsel may be provided to argue, as here, that no *Bivens* remedy exists.  And even if *Bivens* extends to some IRS contexts—necessitating the provision of counsel and indemnification—that does not mean it extends to every context, or to tax-determination as opposed to collection efforts.  Providing fees and indemnification for *Bivens* claims recognizes the risk *Bivens* will be asserted; it does not deem the assertion meritorious.  In any event, what IRS regulations say is irrelevant.  The executive branch has no authority to create a cause of action or determine its scope.  *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649-50, 110 S. Ct. 1384, 1390-91 (1990).[8]

## B.      Special Factors Counsel Hesitation Before Extending *Bivens* Here

True the Vote elides the special factors that counsel hesitation here.  It does not address the violence that extending *Bivens* would work on the procedural requirements of § 7428, or the content and context of the asserted violation.  Indeed, True the Vote specifically addresses only ***one*** of the special factors counseling hesitation that the Cincinnati Defendants identified—Congress's creation of a limited damages remedy in 26 U.S.C. § 7433.  But even there it relies on a flawed reading of legislative history.

### 1.      The Internal Revenue Code Presents a Comprehensive Remedial Scheme—Including § 7428—That Counsels Hesitation

True the Vote does not seriously challenge the abundance of case law labeling the Internal Revenue Code a comprehensive remedial scheme.  *See* Cincinnati Br. 20-22.  Rather, True the Vote simply asserts that the cases refusing *Bivens*' expansion based on that compre-

---

[8] True the Vote notes the Government's assertion that *Bivens* is an alternative remedy.  We do not take the Government to endorse *Bivens*' expansion to this context.  Indeed, the Government has explained that True the Vote's *Bivens* claim "was not addressed in the federal defendants' motion to dismiss."  Dkt.73 at 3.

hensive regime "involved claims and claimants distinct from those present here."  Pl. Br. 40.  It is true that *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011), and *Marsoun v. United States*, 591 F. Supp. 2d 41 (D.D.C. 2008), involved due process claims rather than First Amendment claims.[9]  But True the Vote does not explain why a comprehensive remedial regime would counsel hesitation in one context but not the other.  Cincinnati Br. 19-24.  Nor does any such reason exist.  As in *Wilson v. Libby*, Congress's decision to provide an elaborate remedial scheme precludes courts from judicially engrafting additional remedies, "whether pled in terms of privacy, property, due process, or the First Amendment."  *Wilson*, 535 F.3d at 707-08.

True the Vote, moreover, ignores the irremediable conflict between *Bivens* and the careful limits Congress established in providing an express statutory remedy for tax-exemption determinations.  In creating a cause of action under § 7428, Congress limited the relief to declaratory judgments; imposed a short, 90-day limitations period; and interposed a tailored exhaustion requirement.  *See* § 7428(a)(2), (b)(2)-(3); Cincinnati Br. 24-27.  Superimposing a *Bivens* remedy would eviscerate each of those limits, replacing declaratory relief with damages, a 90-day limitations period with a year or more, and bypassing exhaustion.  Cincinnati Br. 24-27.  If that does not counsel hesitation, nothing would.  True the Vote does not contend otherwise.

Likewise, True the Vote sidesteps concerns arising from the content and context of the violations it alleges.  Section 501(c)(3) demands that IRS officials make discretionary judgments about an organization's entitlement to tax-exempt status after delving into the nature of that organization's participation in political campaigns and the substantiality of its lobbying activities—inquiries that necessarily touch upon First Amendment protected conduct.  Such exercises

---

[9] True the Vote criticizes the depth of *Kim*'s analysis.  But *Kim* is binding Circuit precedent.  Moreover, it explicitly "agree[d] with the district court's reasoning," 632 F.3d at 717, and the district court amply explained why the Internal Revenue Code is a comprehensive remedial scheme that counsels hesitation, *Kim v. United States*, 618 F. Supp. 2d 31, 37-40 (D.D.C. 2009).

of discretion, moreover, at most affect speech indirectly through the temporary denial of a tax benefit.  Given the tightrope IRS officials must walk to ensure compliance with both § 501(c)(3) and the First Amendment, extension of *Bivens* would chill IRS employees from effectively carrying out their job duties and fully enforcing the requirements of § 501(c)(3).

### 2.    The Legislative History of § 7433 Does Not Assist Plaintiff

Unable to address § 7428, True the Vote insists that the legislative history of § 7433—which creates an express damages action against IRS employees for statutory or regulatory violations in connection with ***tax collection***—shows that Congress meant to "preserve" *Bivens*' availability here.  Pl. Br. 40.  But Congress has not "plainly expressed an intention that the courts preserve *Bivens* remedies" in this context, and it has not "inadvertently omitted" a damages remedy for the injuries True the Vote asserts.  That is the conclusion reached by every court that considered the legislative record, *see Hudson Valley Black Press v. IRS*, 409 F.3d 106, 112-13 (2d Cir. 2005); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 410-13 (4th Cir. 2003), a conclusion this Court should join.

Congress could not have intended to "preserve" *Bivens* in this context when enacting § 7433 in 1988 because, at that time, *Bivens* had not been, and could not have been, extended to this context.  As explained above, *Bivens* is utterly incompatible with the limits Congress imposed when, in 1976, it expressly authorized review of tax-exempt decisions through § 7428.  Because of that incompatibility, *Bivens* had been foreclosed from this context for a dozen years before § 7433 was enacted.  Congress cannot be deemed to have "preserved" a remedy that did not exist.  Indeed, while the legislative history of § 7433 notes a number of *Bivens* cases against IRS officials, not one of them involved a ***tax determination***, and none involved a determination

of tax-exempt status.  134 Cong. Rec. 29,273-74 (1988) (statement of Sen. Pryor).  To the contrary, each involved a *tax collection* activity such as the seizure of a citizen's property.[10]

The legislative history of § 7433 is not to the contrary.  As initially written, the bill that became § 7433 authorized a damages remedy against any IRS officer who carelessly, recklessly, or intentionally disregards "any provision of *Federal law*, or any regulation promulgated under the [Internal Revenue Code]" "in connection with any *determination* or collection of Federal tax."  S. 2238, 100th Cong., 2d Sess., § 779 (1988) (emphasis added).  The provision thus would have encompassed True the Vote's constitutional claims, which allege violations of "Federal law" and involve the "determination" of tax.  *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 739-40, 94 S. Ct. 2038, 2047 (1974).  But Congress did not enact that text.  The Conference Committee removed the references to "Federal law" *and* "determination . . . of Federal tax" from the bill.  *See* H.R. Conf. Rep. No. 100-1104, at 229 (1988).  Thus, as enacted, § 7433 authorizes a damages remedy against any IRS officer who carelessly, recklessly, or intentionally disregards "any provision . . . or any regulation promulgated under the [Internal Revenue Code]" "in connection with [the] *collection* of Federal tax."  True the Vote's claim is thus doubly excluded:  It is not premised on a "provision or . . . regulation promulgated under" the Internal Revenue Code; and tax-exempt status decisions involve the "determination," not the "collection of Federal tax."

True the Vote claims that Congress changed the term "Federal law" to "provision or . . . regulation" because it intended *Bivens* to fill that gap.  Pl. Br. 29.  But that does not address Congress's decision to limit § 7433 to actions undertaken in connection with the "collection" of a

---

[10] *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 359-60, 97 S. Ct. 619, 632 (1977); *Bothke v. Fluor Eng'rs & Constr., Inc.*, 834 F.2d 804, 805 (9th Cir. 1987); *Lojeski v. Boandl*, 788 F.2d 196, 197-98 (3d Cir. 1986); *Cameron v. IRS*, 773 F.2d 126, 128-29 (7th Cir. 1985); *Rodriguez v. United States*, 629 F. Supp. 333, 349 (N.D. Ill. 1986); *Keese v. United States*, 632 F. Supp. 85, 93-94 (S.D. Tex. 1985)

federal tax, and to exclude actions taken in connection with tax "determinations."  The most natural reason for that decision is that tax determinations are traditionally subject to judicial and administrative review.  Moreover, unlike collection activities, they do not have the immediate effect of physically dispossessing people of their possessions.  But whatever the reason for Congress's decision, *Congress's* hesitation in allowing money damages for tax determination decisions at the very least counsels hesitation before judicial creation of that remedy.

This is not a case where Congress's omission of damages remedies for certain claimants was "inadvertent."  *Wilson*, 535 F.3d at 705.  Congress considered providing a monetary remedy in connection with tax determinations; drafted a bill that would have provided it; and ultimately made a deliberate choice to delete it.  Nor did Congress mean to "preserve" a *Bivens* remedy in connection with tax determinations.  As explained above, there was no such remedy to preserve. *See* pp. 14-15, *supra*.

Even for "collection" claims, True the Vote's argument fails.  Only once, in *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468 (1980), has the Supreme Court concluded Congress plainly expressed an intention that a statutory remedy operate alongside *Bivens*.  The Court "found it 'crystal clear' that Congress intended the FTCA and *Bivens* to serve as 'parallel' and 'comple-mentary' sources of liability."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68, 122 S. Ct. 515, 520 (2001).  In enacting the statute in *Carlson*, Congress explicitly stated that "this provision should be viewed as a *counterpart* to the *Bivens* case and its progen[y]."  *Carlson*, 446 U.S. at 20, 100 S. Ct. at 1472 (quoting S. Rep. No. 93-588, at 3 (1973)).  Congress "thus contemplate[d] that victims of the kind of intentional wrongdoing alleged in [the *Carlson*] complaint shall have an action under FTCA against the United States as well as a *Bivens* action against the individual officials alleged to have infringed their constitutional rights."  *Id.*  No comparable legislative his-

tory can be found for § 7433.  The Conference Report—the legislative history most likely to explain the Conference Committee's decision to exclude constitutional violations from the scope of the damages remedy in § 7433—makes no mention of *Bivens* at all.  Instead, it underscores the narrowness of § 7433 as ultimately enacted.  H.R. Conf. Rep. No. 100-1104, at 229 (1988).

True the Vote relies on the testimony of Lawrence Gibbs, Commissioner of the IRS when Congress considered S. 579, another precursor bill to what ultimately became § 7433.  Although Gibbs did suggest a *Bivens* cause may have existed against IRS employees for some misconduct, Hearing on S. 579 and S. 604, S. Hrg. 100-131, pt. 1, 100th Cong. 243 (1987) (statement of Lawrence Gibbs), he never asserted that a statutory remedy "was not necessary," Pl. Br. 28.  Rather, he urged that one was unwise because it "could have a chilling effect on our ability to recruit and retain quality people," "inhibit proper enforcement of the tax laws," and because "the civil service system provides a variety of adverse personnel actions for conduct related offenses." S. Hrg. 100-131, pt. 1, at 251.  Senator Pryor's explanation and summary of S. 2223 (another version of the statute ultimately enacted as § 7433), *see* Pl. Br. 28-29, is equally unpersuasive.  Senator Pryor also stated that a "taxpayer that is harmed by unreasonable IRS actions ***does not have a specific right to recover damages from the IRS*** under present law."  134 Cong. Rec. 29,274 (1988) (statement of Sen. Pryor).  Senator Pryor thus at best offered contradictory accounts as to whether a *Bivens* action could be asserted.  That falls short of the "crystal" clarity that *Carlson* demands.  And it says nothing about Congress's decision not to authorize an action for tax determination decisions, as opposed to tax collection decisions, in any event.[11]

---

[11] True the Vote errs in claiming that, because some of Senator Pryor's statements post-dated the enactment of §§ 7428 and 7431, "Congress's statements" asserting *Bivens'* availability undermines the argument that Congress intended these sections to displace *Bivens*.  Pl. Br. 29 n.10. By the time Congress was considering § 7433, there was no *Bivens* action for allegedly unlawful tax-exemption determinations for Congress to "preserve."  *See* pp. 14-15, *supra*.

### 3.      No Special Factors Favor Extending *Bivens*

True the Vote asserts that "certain values, such as those protected by the first and fourth amendments, may be superior to the need to protect the integrity of the internal revenue system." Pl. Br. 41 (quoting *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1248 (10th Cir. 1989)).  But arguments regarding the primacy of First Amendment values could as easily have been made in *Wilson v. Libby*, in *Bush v. Lucas*, 462 U.S. 367, 103 S. Ct. 2404 (1983), or myriad other cases.  Courts have found it inappropriate to extend *Bivens* to First Amendment claims in new contexts nonetheless.  The question is not the relative balance of the interests.  It is *who* should do the balancing—"who should decide whether such a [damages] remedy should be provided."  *Bush*, 462 U.S. at 380, 103 S. Ct. at 2413.  Where Congress has already created a comprehensive and calibrated review mechanism—here, for tax-exemption applications— whether to supplement that regime with a damages remedy is a matter for Congress, not the courts.

*Gibbs*, moreover, is an outlier.  It cited no authority for the proposition that First and Fourth Amendment values—unlike due process values—overcome traditional special factors. And *Gibbs*'s reasoning has received heavy criticism because it contains no discussion of the relevant comprehensive regime, including Congress's "considered decision to forego creating a damages remedy for misconduct by IRS employees in connection with the determination of taxes." *Judicial Watch, Inc.*, 317 F.3d at 412-13.  True the Vote has little response.[12]  Finally, even *Gibbs* did not extend *Bivens* as far as True the Vote would here.  *Gibbs* concerned tax *collection* efforts, not the tax-exemption *determination* of which True the Vote complains.

---

[12] Plaintiff (at 41 n.18) asserts that *Kim* suffers from a similar defect.  But it fails to recognize that *Kim* binds this Court even if True the Vote erroneously faults its reasoning.  *See* p. 13 n.9, *supra*.  Because *Gibbs* is not binding, its persuasiveness is crucial.  As the Cincinnati Defendants and *Judicial Watch* make clear, that reasoning is conclusory at best.  Cincinnati Br. 23-24 & n.7.

True the Vote offers one "special factor" weighing in favor of *Bivens* liability—the supposedly "unprecedented, egregious, and prolonged abuses" alleged in the Complaint.  Pl. Br. 42-44.  But the Supreme Court has ***never*** looked to the nature of the alleged violation in deciding whether to extend *Bivens,* much less invoked that to ignore special factors counseling hesitation.  In *United States v. Stanley*, for example, the Court refused to extend *Bivens* to claims of human experimentation—the Army's secret, nonconsensual administration of hallucinogenic drugs to servicemembers.  483 U.S. 669, 671, 107 S. Ct. 3054, 3057 (1987).  And in *Schweiker*, the Court emphasized the gravity of the allegations:  "The trauma to respondents, and thousands of others like them, must surely have gone beyond what anyone of normal sensibilities would wish to see imposed on innocent disabled citizens."  487 U.S. at 428-29, 108 S. Ct. at 2470.  But it again refused to extend *Bivens*.  *Id.* at 429, 108 S. Ct. at 2470.  If human experimentation and the conduct in *Schweiker* do not justify extending *Bivens* despite special factors, the handling of True the Vote's tax-exemption application and the requests for additional information do not either.[13]

### C.    True the Vote Has Adequate, Alternative Remedies

*Bivens* also cannot be extended when Congress has provided an alternative remedy.  *Wilkie v. Robbins*, 551 U.S. 537, 550, 127 S. Ct. 2588, 2598 (2007).  In this case, Congress did precisely that, providing a declaratory judgment action under § 7428.  True the Vote complains that a declaratory judgment remedy is inadequate because it does not "compensate victims and serve a deterrent purpose."  Pl. Br. 34.  But the Supreme Court rejected that argument in *Schweiker*.  The Court concluded that, because the statutory remedy allowed claimants to obtain

---

[13] True the Vote occasionally suggests that the absence of an adequate remedy undermines the Cincinnati Defendants' argument that special factors counsel hesitation.  *See, e.g.*, Pl. Br. 39, 43.  But as the D.C. Circuit has made clear, "[t]he special factors analysis does not turn on whether the statute provides a remedy to the particular plaintiff for the particular claim he or she wishes to pursue."  *Wilson*, 535 F.3d at 709.

benefits that were improperly denied, "Congress . . . had not failed to provide meaningful safeguards or remedies for the rights" at issue.  487 U.S. at 425, 108 S. Ct. at 2468.  The *Schweiker* plaintiffs protested that the statutory remedy merely restored the benefits that they had been unconstitutionally denied and provided no independent compensation for the constitutional violation itself.  *Id.* at 427, 108 S. Ct. at 2469-70.  The Supreme Court disagreed, drawing "no distinction between compensation for a 'constitutional wrong' and the restoration of statutory rights that had been unconstitutionally taken away."  *Id.* at 427, 108 S. Ct. at 2470.  Thus, it rejected "the notion that statutory violations caused by unconstitutional conduct necessarily require remedies in addition to the remedies provided generally for such statutory violations."  *Id.*, 108 S. Ct. at 2470.  That is a complete answer to True the Vote's arguments.  True the Vote claims it was denied its "statutory" right to § 501(c)(3) tax-exempt status and that the denial was "caused by unconstitutional conduct."  *Id.*, 108 S. Ct. at 2470.  Under *Schweiker*, a "meaningful . . . remed[y]" need only "restor[e the] statutory rights that had been unconstitutionally taken away."  *Id.*, 108 S. Ct. at 2470.  That is the remedy § 7428 offers here.

True the Vote's remaining arguments fare no better.  True the Vote suggests (at 30-31) that, under *Carlson*, the legislative history of the alternative remedy—here, § 7428—must evince an intent to preempt *Bivens*.  But *Wilson* rejects that effort to leverage *Carlson* into the alternative remedy analysis.  *Wilson*, 535 F.3d at 93-94.  And True the Vote's invocation (at 34-35) of the differing procedural requirements for *Bivens* and § 7428 proves too much.  Those differences themselves are a special factor counseling hesitation.  *See* Cincinnati Br. 24-27.

## III.   The Cincinnati Defendants Are Entitled to Qualified Immunity

Finally, True the Vote fails to overcome qualified immunity.  Qualified immunity must be granted unless, at the time the officers acted, the scope of the right at issue was so "clear that *every* reasonable official would have understood that ***what he is doing*** violates that right."

*Reichle*, 132 S. Ct. at 2093 (emphasis added).  Ignoring the specificity of that inquiry, True the Vote urges that the relevant constitutional principles were clear.  But qualified immunity must be addressed in terms of specific conduct under the specific circumstances confronting the officer. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040 (1987).   Properly viewed at that level of granularity, True the Vote cannot prevail.

### A.   The Cincinnati Defendants' Conduct Was Objectively Reasonable

There is no dispute that, because of the limits on § 501(c)(3) status, IRS officials must inquire into the extent and scope of some First Amendment protected activities.  *See* Cincinnati Br. 29-30.   Here, True the Vote's application provided objectively reasonable grounds for inquiry.  True the Vote nowhere denies that its application suggested that it participated in dis-qualifying activity.  *Id.* at 40.  There was thus a "neutral, investigative reason" for the informa-tion requests.  *Iqbal*, 556 U.S. at 677, 129 S. Ct. at 1949.  And True the Vote nowhere claims that the Cincinnati Defendants were motivated by discriminatory animus.  It does not even hint that they opposed conservative or Tea Party viewpoints, much less that they requested additional information from True the Vote for those reasons.  Cincinnati Br. 36-38.

Instead, True the Vote insists animus is irrelevant because the Cincinnati Defendants' superiors created a facially discriminatory policy.  Pl. Br. 46.  But the Cincinnati Defendants can be liable only for their ***own*** discriminatory conduct, not that of others.  And True the Vote makes it clear that ***other*** IRS employees "developed and revised [the] written and oral guidance."  Pl. Br. 64-66.  True the Vote states that the Cincinnati Defendants "participated in creating, devel-oping, implementing, and applying the IRS Targeting Scheme to True the Vote," Pl. Br. 64, but that is just another way—and a conclusory one—of alleging they followed their superiors' directives on True the Vote's application.  More important, True the Vote identifies not one well-pleaded ***fact*** describing what ***each*** individual Cincinnati Defendant did in connection with its

application, much less why that conduct was unconstitutional. True the Vote alleges the Cincinnati Defendants "specifically inspected True the Vote's tax return information during the time that the unconstitutional IRS Targeting Scheme was in place and requested additional information." Pl. Br. 64-66. But that is group pleading. Moreover, reviewing information does not violate the Constitution. True the Vote's failure to identify the conduct for which each defendant is liable dooms its complaint. *Iqbal*, 556 U.S. at 676-78, 129 S. Ct. at 1948-49.

The Complaint also does not show that, under the circumstances confronting the Cincinnati Defendants, any competent IRS employee "would understand that ***what he is doing violates***" violates the First Amendment. *Anderson*, 483 U.S. at 640, 107 S. Ct. at 3039 (emphasis added). Seeking to avoid that inquiry, True the Vote suggests (at 67) that it need only show a clearly established "right to be free from First Amendment retaliation and viewpoint discrimination in the qualification and conferral of a government benefit." But the Supreme Court has repeatedly emphasized that the "contours" of the right must be so established that, under the circumstances, the illegality of the officers' conduct was obvious. *Id.*; *Reichle*, 132 S. Ct. at 2094. Evaluating objective reasonableness "require[s] examination of the information possessed by the" government officials. *Anderson*, 483 U.S. at 641, 107 U.S. at 3040. True the Vote must therefore show that no "reasonable [IRS] officer could have believed" the Cincinnati Defendants' information requests were "lawful, in light of clearly established law and the information" that the Cincinnati Defendants "possessed" when considering True the Vote's application. *Id.*

True the Vote cannot make that showing. Section 501(c)(3) by its terms requires the Cincinnati Defendants to consider protected expression: Organizations that engage in substantial lobbying or directly participate in campaigns are ineligible for tax-exempt status. *See* Cincinnati Br. 3-5. As a result, it was not "entirely unreasonable" for the Cincinnati Defendants to believe

the identification criteria represented an effort to identify political entities with possible eligibility issues. *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1246, 1249 (quotation marks omitted). Many of the allegedly discriminatory criteria do not directly reference viewpoint (such as "Patriots" or "9/12 Project"), while others suggest involvement in substantial lobbying and campaign intervention. For example, the policy allegedly identified applications whose "[i]ssues include U.S. Government spending," "[e]ducation of the public via advocacy/lobbying," and "[s]tatements . . . criticiz[ing] how the country is being run." Compl. ¶107. Because these criteria all suggest participation in prohibited political activity, the Identification Scheme was not so obviously discriminatory that a reasonable IRS employee "would understand that what he is doing violates" the First Amendment. *Anderson*, 483 U.S. at 640, 107 S. Ct. at 3039.

The objective reasonableness of the Cincinnati Defendants' alleged actions becomes more apparent in light of True the Vote's application, which disclosed facts suggesting improper private inurement and substantial lobbying. Cincinnati Br. 38-40.[14] Confronted with such an application—even an application otherwise flagged under discriminatory criteria—additional inquiry is not so "entirely unreasonable" or "plainly incompetent" as to foreclose immunity. *Messerschmidt*, 132 S. Ct. at 1246, 1249 (quotation marks omitted). "[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman v. Moore*, 547 U.S. 250, 260, 126 S. Ct. 1695, 1704 (2006).

True the Vote argues that outside the context of arrest or prosecution, the existence of cause is irrelevant. Pl. Br. 66-67. That is true, but it favors immunity: If probable cause forecloses suit for intrusions that require probable case, the presence of cause should foreclose

---

[14] True the Vote's assertion (at 67) that "True the Vote's application was targeted for further review based on criteria not relevant to its qualification for a tax-exemption" is not supported by any specific factual allegations in the Complaint or attachments. The TIGTA Report says nothing about True the Vote's application.

violations arising from information requests that require no cause at all.  Indeed, courts have applied *Hartman*'s absence-of-cause requirement to administrative investigations.  *See McBeth v. Himes*, 598 F.3d 708, 719-20 (10th Cir. 2010) (applying absence-of-cause requirement to investigation by state Department of Human Services).

### B.   True the Vote's Injury Is Insufficient To Establish a Violation of Clearly Established Rights

Finally, True the Vote does not deny that First Amendment retaliation requires conduct that would deter a person of reasonable firmness from exercising his rights.  "'[W]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.'"  *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 119 (D.D.C. 2005) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).  True the Vote points to no allegation pleading specific facts showing a "change in [its] behavior."  True the Vote instead asks this Court to infer monetary loss from withheld donations.  Pl. Br. 52-53.  But *Bob Jones* recognized that, while delay associated with § 501(c)(3) determinations "may place an organization claiming tax-exempt status in a precarious financial position, the problems presented ***do not rise to the level of constitutional infirmities*** . . . ."  *Bob Jones Univ.*, 416 U.S. at 747, 94 S. Ct. at 2051 (emphasis added).

True the Vote finds injury in the "legal and personal expenses associated with responding to the IRS's intrusive inquiries," comparing those expenses to the "small" pecuniary losses in *Crawford-El.*  Pl. Br. 52.  But precedent requires that the conduct be capable of deterring a person of ordinary firmness ***in the plaintiff's position***.  *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), *vacated on other grounds*, 523 U.S. 574, 118 S. Ct. 1584 (1998).  A minor pecuniary loss may deter a prison inmate with little or no income (like those in the cases True the

Vote cites at 51-52[15]), but True the Vote cannot show those losses would deter an organization like itself.  Indeed, True the Vote continued exercising its First Amendment rights while its application remained pending.  "[H]aving failed to show that [its] First Amendment rights were *actually chilled*, [True the Vote] has not stated a claim for which relief can be granted."  *Hatfill*, 404 F. Supp. 2d at 119.

Even if the conduct here were sufficiently chilling, that would not necessarily have been so clear at the time that no reasonable officer could have disagreed.  To the contrary, the information requests were not so overwhelmingly burdensome that existing precedent put the existence of the required chill "beyond debate."  *Reichle*, 132 S. Ct. at 2093.  That is especially true given that "[s]crutiny of the activities of the organization in toto" is permissible to ascertain compliance with § 501(c)(3).  *United States v. Dykema*, 666 F.2d 1096, 1101 (7th Cir. 1981); *see also Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 653 F. Supp. 1200, 1205-06 (E.D. Mich. 1986) (granting qualified immunity to IRS employees requesting additional information of § 501(c)(3) applicant), *aff'd* 845 F.2d 113 (6th Cir. 1988).[16]  Because the conduct was not "so far beyond the hazy border between" conduct that is sufficiently chilling and conduct that is not, qualified immunity must be granted.  *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000); *see also* Cincinnati Br. 42.

## CONCLUSION

For these reasons, this Court should grant the Cincinnati Defendants' Motion to Dismiss.

---

[15] On top of pecuniary loss, many inmates also asserted injuries related to mental and emotional distress, which True the Vote does not and cannot claim here.  *See* Pl. Br. 51-52.

[16] The Complaint also does not allege the Cincinnati Defendants' knowledge of the specific injuries True the Vote has identified (at 53)—such as the loss of two foundation grants.  The loss of those grants is therefore not among the "information possessed by" the Cincinnati Defendants that would be relevant when determining whether the conduct's unconstitutionality would be obvious to any reasonable officer.

December 17, 2013                          Respectfully submitted,

                                           /s/ Jeffrey A. Lamken
                                           Jeffrey A. Lamken (D.C. Bar No. 440547)
                                           Justin V. Shur (D.C. Bar No. 973855)
                                           MOLOLAMKEN LLP
                                           600 New Hampshire Avenue, N.W.
                                           Washington, D.C.  20037
                                           (202) 556-2000 (phone)
                                           (202) 556-2001 (fax)
                                           jlamken@mololamken.com
                                           jshur@mololamken.com

                                           *Counsel for Susan Maloney, Ronald Bell,*
                                           *Janine L. Estes, and Faye Ng*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December, 2013, I electronically filed the Reply in Support of the Cincinnati Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ Jeffrey A. Lamken
Jeffrey A. Lamken (D.C. Bar No. 440547)
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (phone)
(202) 556-2001 (fax)
jlamken@mololamken.com

*Counsel for Susan Maloney, Ronald Bell,*
*Janine L. Estes, and Faye Ng*