## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TRUE THE VOTE, INC.,**

*Plaintiff*,

*v.*

Civ. No. 13-cv-00734-RBW

**INTERNAL REVENUE SERVICE**, *et al.*,

*Defendants*.

**Hearing Requested**

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY TO PREVENT FURTHER SPOLIATION OF, AND TO PRESERVE AND RESTORE, <u>EVIDENCE AND DISCOVERABLE INFORMATION</u>

4825-9472-2076.2

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT .................................................................. 2

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 12

III.  PROCEDURAL STANDARDS ................................................................ 18

    A.  Federal Rule 65 Authorizes Preliminary Injunctive Relief to Preserve the Status Quo and Prevent Irreparable Harm. .......................................... 18

    B.  This Court Has Discretion Under Federal Rule 26 to Order Expedited Discovery, Including Discovery of Electronically Stored Information. .............. 19

IV.  ARGUMENT ...................................................................................... 21

    A.  The Relief That True the Vote Seeks Is Necessary to Preserve Not Only the Status Quo But Relevant Evidence and the Integrity of the Judicial System. ........................................................................................... 21

    B.  True the Vote Faces Further Irreparable Injury Unless Defendants Are Ordered to Preserve Evidence and Submit to the Requested Inspection. ............. 23

    C.  The Likelihood of Success, Balance of Equities, and Public Interest All Weigh in Favor of Preliminary Injunctive Relief and Expedited Discovery. ........ 24

        1.  True the Vote has demonstrated sufficient likelihood of success for both a document preservation order and expedited discovery. ........... 24

        2.  The balance of equities weighs heavily in favor of the document preservation order and expedited discovery that Plaintiff seeks............... 25

        3.  The public interest in the integrity of the judicial process warrants both preliminary injunctive relief and expedited discovery. ................... 27

    D.  The Court Should Exercise Its Rule 26(d) Discretion and Expedite Discovery for the Purpose of Restoring and Preserving Relevant Electronic Evidence. ........................................................................... 27

        1.  The expedited discovery sought by True the Vote easily  satisfies the "reasonableness" or "good cause" test................................ 29

V.  CONCLUSION .................................................................................... 31

4825-9472-2076.2

# **TABLE OF AUTHORITIES**

## Cases

*Am. Friends Serv. Comm. v. Webster*,
  485 F. Supp. 222 (D.D.C. 1980) ......................................................................................19, 22

*Am. LegalNet, Inc. v. Davis*,
  673 F. Supp. 2d 1063, 1069 (C.D. Cal. 2009) ......................................................................23

*Antioch Co. v. Scrapbook Borders, Inc.*,
  210 F.R.D. 645 (D. Minn. 2002)...........................................................................19, 21, 28

*Citizens for Responsibility & Ethics v. Exec. Office of the President*,
  No. 07-1707, 2007 U.S. Dist. LEXIS 97574 (D.D.C. Oct. 19, 2007) ....................................26

*City of Moundridge v. Exxon Mobil Corp.*,
  429 F. Supp. 2d 117 (D.D.C. 2006) .....................................................................................18

*Crawford-El v. Britton*,
  523 U.S. 574 (1998)..............................................................................................................19

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,*
  234 F.R.D. 4 (D.D.C. 2006)........................................................... 18, 19, 20, 22-24, 30

*Ellsworth Assocs. v. United States*,
  917 F. Supp. 841 (D.D.C. 1996) .............................................................................. 20, 29-30

*Escareno v. Lundbeck, LLC*,
  No. 3:14-cv-257-B, 2014 U.S. Dist. LEXIS 66824 (N.D. Tex. May 15, 2014) ......................5

*In re Fannie Mae Derivative Litig.*,
  227 F.R.D. 142 (D.D.C. 2005).......................................................................................20, 26

*FTC v. NAFSO VLM, Inc.*,
  No. CIV S-12-0781 KJM-EFB, 2012 U.S. Dist. LEXIS 44244 (E.D. Cal. Mar.
  29, 2012) ........................................................................................................................19, 22

*Guttenberg v. Emery*,
  No. 13-2046 (JDB), 2014 U.S. Dist. LEXIS 37101 (D.D.C. Mar. 19, 2014)...................24, 30

*Holmes v. Amerex Rent-A-Car*,
  180 F.3d 294 (D.C. Cir. 1999). ..............................................................................................11

*Ingersoll v. Farmland Foods, Inc.*,
No. 10-6046-CV-SJ-FJG, 2013 U.S. Dist. LEXIS 15943 (W.D. Mo. Feb. 6, 2013) ................................................................................................... 24-25

*Judicial Watch, Inc. v. IRS*,
No. 13-1559 (D.D.C.) ..................................................................................... 12

*Landwehr v. FDIC*,
282 F.R.D. 1 (D.D.C. 2010) ............................................................................ 29

*Metal Bldg. Components, L.P. v. Caperton*,
No. CIV-04-0256 MV/DJS, 2004 U.S. Dist. LEXIS 28854 (D.N.M. Apr. 2, 2004) ............................................................................................................... 29

*Notaro v. Koch*,*
95 F.R.D. 403 (S.D.N.Y. 1982) .................................................20, 23, 24, 26, 29

*Orrell v. Motorcarparts of Am., Inc.*,
No. 3:06CV418-R, 2007 U.S. Dist. LEXIS 89524 (W.D.N.C. Dec. 5, 2007)............. 21, 28-29

*Playboy Enters. v. Welles*,
60 F. Supp. 2d 1050 (S.D. Cal. 1999) ............................................................... 29

*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011) .................................................................... 19, 23

*Simon Prop. Grp. L.P. v. MySimon, Inc.*,
194 F.R.D. 639 (S.D. Ind. 2000) ................................................................. 21, 29

*Treppel v. Biovail Corp.*,
233 F.R.D. 363 (S.D.N.Y. 2006) ................................................................. 23, 25

*United States v. Sum of $70,990,605*,
No. 12-1905 (RWR), 2013 U.S. Dist. LEXIS 167158 (D.D.C. Nov. 25, 2013) .................... 23

*Warner Bros. Records Inc. v. Doe*,
527 F. Supp. 2d 1 (D.D.C. 2007) ............................................................. 19-20, 29

*Watts v. SEC*,
482 F.3d 501 (D.C. Cir. 2007) ......................................................................... 19

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................................................................................... 19

*Z St., Inc. v. Koskinen*,*
No. 12-cv-0401 (KBJ), 2014 U.S. Dist. LEXIS 71638 (D.D.C. May 27, 2014)..... 3, 12-13, 25

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003) ........................................................................21

**Statutes and Regulations**

5 U.S.C. § 706 ....................................................................................................12

26 U.S.C. § 7428 ................................................................................................25

26 U.S.C. § 6103 ................................................................................................12

44 U.S.C. § 3101 ............................................................................................2, 15

44 U.S.C § 3102 ..................................................................................................2

36 C.F.R. 1222.34 ................................................................................................2

Federal Records Act ...........................................................................15-16, 24, 26-27

Freedom of Information Act ...............................................................................27

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......................................................................................5

Fed. R. Civ. P. 26 ...................................................................................19, 21-22

Fed. R. Civ. P. 26(b)(1) .....................................................................................21

Fed. R. Civ. P. 26(d)(1) .....................................................................................19

Fed. R. Civ. P. 26(f) ..............................................................................4, 5, 12, 19

Fed. R. Civ. P. 26(f)(2) .....................................................................................4-5

Fed. R. Civ. P. 34 ...............................................................................................21

Fed. R. Civ. P. 34(a)(1) .................................................................................11, 20

Fed. R. Civ. P. 65 .........................................................................................11, 18, 22

IRM § 1.10.3.2.3(2) ...........................................................................................16

IRM § 1.10.3.2.3(3) .......................................................................................11, 16

IRM § 1.10.3.2.3(5) ...........................................................................................16

IRM § 1.15.1.5(1)(D) .........................................................................................16

H. Res. 574, 113th Cong. (2nd Sess. 2014) ......................................................17

4825-9472-2076.2

Letter of Darrell Issa, H. Comm. on Oversight & Gov't Reform, to John
    Koskinen, Internal Revenue Serv. (June 16, 2014) ................................................................14

Letter from Darrell Issa, H. Comm. on Oversight & Gov't Reform, to Jacob Lew,
    Dept. of the Treasury (Aug. 2, 2013)...................................................................................15

Letter from Darrell Issa & Jim Jordan, H. Comm. on Oversight & Gov't Reform,
    to Daniel Werfel, Internal Revenue Serv. (June 4, 2013).....................................................15

Letter from Leonard Oursler to Ron Wyden, Dept. of the Treasury (June 13,
    2014) ..............................................................................................................................17, 27

*IRS Obstruction: Lois Lerner's Missing Emails: Hearing Before the H. Oversight
    and Gov't Reform Comm.*, 113th Cong. (June 23, 2014, 7:00 p.m.) (Answer of
    John A. Koskinen, Commissioner, Internal Revenue Service)
    http://oversight.house.gov/hearing/irs-obstruction-lois-lerners-missing-e-mails ...............9-10

*Hearing with IRS Commissioner John Koskinen Before the H. Comm. on Ways
    and Means*, 113th Cong. (2014) ..........................................................................................31

*Testimony of David S. Ferriero Archivist of the United States Before the House
    Committee on Oversight and Government Reform on "IRS Obstruction: Lois
    Lerner's Missing E-mails, Part II" Tuesday, June 24 2014*, 113th Cong. 1-3
    (2014), http://oversight.house.gov/wp-content/uploads/2014/06/Ferriero-
    NARA-Testimony-6-23-IRS-E-Mails.pdf ..............................................................................6

Howell, *Clinton Adviser Lanny Davis: IRS Scandal Needs An Independent
    Prosecutor*, Washington Times, June 28, 2014
    http://www.washingtontimes.com/news/2014/jun/28/clinton-adviser-irs-
    scandal-needs-independent-pros/.........................................................................................10

Dinan, *IRS's Lerner Sought Tax Audit of Iowa Sen. Chuck Grassley Over His
    Wife's Free Meal*, June 26, 2014,
    http://www.washingtontimes.com/news/2014/jun/26/irss-lerner-sought-tax-
    audit-iowa-sen-chuck-grassl/?page=all..................................................................................10

Eliana Johnson, *IRS Has Lost More E-mails*, National Review, June 17, 2014,
    *available at* http://www.nationalreview.com/corner/380576/irs-has-lost-more-
    e-mails-eliana-johnson...........................................................................................................5

Miller, Michael C. and Theodore, Jeffrey M., "A Road Map for Document
    Preservation: Keeping the Nightmares at Bay," ABA *Litigation Journal* (Oct.
    25, 2013) ...............................................................................................................................2

Patrick Howley, *IRS CANCELLED Contract with Email-Storage Firm Weeks
    After Lerner's Computer Crash*, June 22, 2014,
    www.dailycaller.com/2014/06/22/irs-cancelled-contract-with-email-storage-
    firm-weeks-after-lerners-computer-crash .............................................................................6

Patrick Howley, *Meet the Seven IRS Employees Whose Computers 'Crashed,'* Daily Caller, June 26, 2014, http://dailycaller.com/2014/06/26/meet-the-seven-irs-employees-whose-computers-crashed/ ...................................................................18

Stephen Ohlemacher, *IRS Says It Lost Lois Lerner's Emails in Targeting Probe*, Huffington Post, June 14, 2014, *available at* http://www.huffingtonpost.com/2014/06/14/irs-says-it-lost-lois-ler_n_5494762.html ...............................................................5

Press Release, "EXPOSED: IRS Kept Secret For Months, More Than Just Lerner Emails Lost, H. Comm. on Ways and Means (June 17, 2014) ................................................17

Press Release, House Committee on Ways and Means (June 17, 2014) ......................................14

http://www.oversight.house.gov/IRS ................................................................................... 16-17

http://waysandmeans.house.gov/uploadedfiles/4.9.14_lerner_referral_and_exhibits.pdf....................................................................................................................................16

http://ziostreet.wordpress.com/about ....................................................................................12

www.waysandmeans.house.gov/UploadedFiles/Non_6103_ltr_FINAL.pdf ...............................13

4825-9472-2076.2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TRUE THE VOTE, INC.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**INTERNAL REVENUE SERVICE**, *et al.*,<br><br>*Defendants*. | Civ. No. 13-cv-00734-RBW |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY TO PREVENT FURTHER SPOLIATION OF, AND TO PRESERVE AND RESTORE, <u>EVIDENCE AND DISCOVERABLE INFORMATION</u>

Plaintiff True the Vote, Inc. ("True the Vote"), by counsel, respectfully states as follows in support of its Motion for Preliminary Injunction and Expedited Discovery ("Motion"). The preliminary injunctive relief sought by True the Vote would prevent Defendants from engaging in and permitting any further destruction of evidence[1]—in addition to the emails that, according to the IRS, were previously "lost" by one or more Defendants *after* the "IRS Targeting Scheme" (Am. Compl. ¶ 73) was already the subject of litigation that has since been transferred to this Court and *after* congressional investigations were already well underway.[2]  The expedited discovery sought by True the Vote would permit an independent forensic examination of

---

[1] When the parties met and conferred with respect to the relief sought by True the Vote, counsel for the IRS contended that the pendency of its motion to dismiss meant that what True the Vote seeks to preserve and restore is not "evidence." Whether the documents and emails at issue are "evidence" cannot be decided unilaterally by Defendants.  True the Vote seeks to preserve all discoverable information within the scope of the Federal Rules of Civil Procedure.

[2] According to public statements by Defendant the Internal Revenue Service (the "IRS"), the lost emails were on the hard drive of a government computer issued to Defendant Lois Lerner ("Ms. Lerner").

1

computers, servers, computer systems, and records related to computers and computer systems in Defendants' possession, custody, and control. As part of the requested examination, the computer forensics expert would copy hard drives and other storage devices to prevent any further destruction of electronic evidence, whether inadvertent or intentional. To the extent that forensic examination reveals the loss of electronic evidence, the expert would also attempt to ascertain how and when the loss occurred and whether any of the missing emails, data, and other electronically stored information ("ESI") can be recovered.

## I.        PRELIMINARY STATEMENT

Even without a "litigation hold" letter, defendants, prospective defendants, and their counsel are obligated to preserve potentially relevant evidence in both hard copy and electronic evidence.  "Counsel and client must act to preserve evidence as soon as they are on notice of its relevance to current or future litigation."[3]  In this case, however, Defendants are held to an even higher standard.   As a federal agency, the IRS—including the various current and former employees of the IRS named as Defendants (collectively, the "Individual Defendants")—must "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency," 44 U.S.C. § 3101, "so that . . . records can be readily found when needed," 36 C.F.R. 1222.34; *see also* 44 U.S.C § 3102 ("The head of each Federal agency shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency."). These statutory obligations were further heightened by the fact that, long before True the Vote

---

[3] Miller, Michael C. and Theodore, Jeffrey M., "A Road Map for Document Preservation: Keeping the Nightmares at Bay," ABA *Litigation Journal* (Oct. 25, 2013) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)), *available at* http://www.steptoe.com/publications-9129.html.

filed suit, at least two events put Defendants on additional notice of their document preservation obligations.  First, Congress was publicly investigating the IRS's targeting of applicants for tax-exempt status perceived to have conservative political views.  Second, a pro-Israel group that had also been targeted by the IRS—Z Street, Inc.—had filed suit in federal court on August 25, 2010.[4]  Under the circumstances, True the Vote's litigation hold letter to Ms. Lerner and the other Individual Defendants was the epitome of a "belt and suspenders" precaution.

But True the Vote sent them such a letter anyway.  On September 17, 2013—after amending its original complaint to include as Defendants all of the individuals known at the time to have been involved in the targeting scheme and after learning the identity of their counsel—True the Vote sent standard form litigation hold letters[5] to counsel for the two groups of Individual Defendants: the "IRS Management Defendants"[6,7] and the "IRS Cincinnati

---

[4] This litigation, styled *Z Street, Inc. v. Koskinen*, is currently pending before this Court as Case No. 1:12-cv-00401.

[5] Copies of these litigation hold letters are attached as **Exhibit A**.

[6] The IRS Management Defendants are—in addition to Ms. Lerner—Steven Grodnitzky, Lois Lerner, Steven Miller, Holly Paz, Michael Seto, Douglas Shulman, William Wilkins, Cindy Thomas, and David Fish.

[7] Although David Fish is among the IRS Management Defendants, he is not currently represented by counsel.  Due to an accident, Mr. Fish at one time was incapacitated.  On September 26, 2013, this Court ordered that matters of his legal representation and the potential appointment of a guardian *ad litem* would be held in abeyance until further order of the Court.  (Dkt. # 58).  On April 1, 2014, counsel for the IRS informed counsel for True the Vote that Mr. Fish had recovered sufficiently to return to work and that further updates would be provided.  Not having received any such updates, counsel for True the Vote raised the issue during the course of the June 24, 2014 "meet and confer."  Counsel for the IRS Management Defendants admitted that she would be representing Mr. Fish.  After first requesting that counsel for True the Vote so notify the Court, she ultimately agreed to do so but has yet to actually enter an appearance on behalf of Mr. Fish.

Defendants."[8]  Counsel for the IRS Cincinnati Defendants never responded at all.  The response from counsel for Ms. Lerner and the other IRS Management Defendants was both fast and furious.  Notwithstanding her belligerent tone, however, counsel for Ms. Lerner and the other IRS Management Defendants did at least promise to "abide by my legal and ethical obligations."[9]  At that point, if the attorneys who had appeared as counsel of record for Defendants knew that relevant evidence had already been "lost," they certainly were not telling.

Six months later, on March 28, 2014, True the Vote sought to schedule a conference with Defendants' counsel pursuant to Federal Rule of Civil Procedure 26(f).[10]  The required topics of discussion at such a Rule 26(f) conference include "issues about preserving discoverable information."  Fed. R. Civ. P. 26(f)(2).  That same day, counsel for the IRS responded: "Until the Court has ruled on the pending motions to dismiss, we believe it would be premature to schedule a Rule 26(f) conference."[11]  Four minutes later, counsel for the IRS Cincinnati Defendants weighed in: "We agree with the government."[12]  Fifteen minutes after that, counsel for Ms. Lerner and the other IRS Management Defendants responded: "We also agree with the government."[13]  Of course, Defendants' position that a Rule 26(f) conference is and was

---

[8] The IRS Cincinnati Defendants are Susan Maloney, Ronald Bell, Janine L. Estes, and Faye Ng.

[9] A copy of the September 25, 2013 response from counsel for Ms. Lerner and the other IRS Management Defendants is attached as **Exhibit B**.

[10] A copy of an email from counsel for True the Vote requesting such a Rule 26(f) conference, sent on March 28, 2014 at 10:39 a.m., is attached as **Exhibit C**.

[11] A copy of the email response from counsel for the IRS, sent on March 28, 2014 at 2:42 p.m., is attached as **Exhibit D**.

[12] A copy of the email response from counsel for the IRS Cincinnati Defendants, sent on March 28, 2014 at 2:46 p.m., is attached as **Exhibit E**.

[13] A copy of the email response from counsel for the IRS Management Defendants, sent on March 28, 2014 at 3:01 p.m., is attached as **Exhibit F**.

4

"premature" simply because a motion to dismiss is pending before this Court is unsupported by any governing rule, case law, or court order.[14]  To make matters worse, at no time before or after refusing to participate in a Rule 26(f) conference did counsel for Defendants ever disclose that the "issues about preserving discoverable information" (Fed. R. Civ. P. 26(f)(2)) included the fact that emails directly related to the subject matter of this litigation had been lost or destroyed.

The first and only disclosure of this fact to counsel for True the Vote did not come from counsel for any Defendant.  Instead, True the Vote and its counsel first learned of the missing emails from published reports late in the day on Friday, June 13, 2014.  According to initial and subsequent news reports, at least two years' worth of emails spanning a crucial time period relevant to this litigation have gone missing.[15]  The lost emails belong to at least seven IRS employees implicated in this case.  One of them is Ms. Lerner, who directed the IRS division responsible for targeting applicants for tax-exempt status perceived to have conservative political views.[16]  According to published accounts, the hard drive on Ms. Lerner's IRS computer "crashed" just ten days after a June 3, 2011 congressional letter inquired about the possible

---

[14] In fact, courts have ruled that a Rule 26(f) conference can proceed despite the pendency of a motion to dismiss. *See Escareno v. Lundbeck, LLC*, No. 3:14-cv-257-B, 2014 U.S. Dist. LEXIS 66824, at *5 (N.D. Tex. May 15, 2014) ("Filing a Rule 12(b)(6) motion to dismiss does not automatically stay discovery or require postponing a Rule 26(f) conference until the motion is resolved.").

[15] *See*, *e.g.*, Stephen Ohlemacher, *IRS Says It Lost Lois Lerner's Emails in Targeting Probe*, Huffington Post, June 14, 2014, *available at* http://www.huffingtonpost.com/2014/06/14/irs-says-it-lost-lois-ler_n_5494762.html.

[16] Eliana Johnson, *IRS Has Lost More E-mails*, National Review, June 17, 2014, *available at* http://www.nationalreview.com/corner/380576/irs-has-lost-more-e-mails-eliana-johnson.

4825-9472-2076.2

targeting of donors to politically conservative groups.[17]  More than three years elapsed, however, before the emails were reported missing, notwithstanding a federal statute requiring the agency to notify the National Archives and Records Administration ("NARA") of such a loss.[18] According to the National Archivist, NARA was first notified of the alleged loss by letter on June 13, 2014. *Id.*

On Monday, June 16, 2014—the next business day after public disclosure of the missing emails—True the Vote's counsel sent Defendants' counsel correspondence on the subject "Litigation Hold—Preservation of Responsive Evidence."[19]  The June 16, 2014 Document Preservation Letter posed a series of questions to Defendants' counsel, including the following:

> 1.    What steps did each of you, as counsel for the Defendants, each of them, take to ensure that any and all documents as described in the litigation hold letter and as required by federal law were, in fact, preserved?

> 2.    When did you learn that the destruction, loss or spoliation of emails of Defendant Lois Lerner had occurred?

> 3.    What steps have you, each of you, taken to restore Ms. Lerner's "lost" emails?

> 4.    Were the "lost" emails from Ms. Lerner's computer at the IRS or her home computer?

> 5.    Are there documents or records, as described in the Litigation Hold letter or the subpoenas issued to the IRS from any of the Committees, belonging to other defendants that have been "lost"?

---

[17] Patrick Howley,  *IRS CANCELLED Contract with Email-Storage Firm Weeks After Lerner's Computer Crash*, June 22, 2014, www.dailycaller.com/2014/06/22/irs-cancelled-contract-with-email-storage-firm-weeks-after-lerners-computer-crash.

[18]  *Testimony of David S. Ferriero Archivist of the United States Before the House Committee on Oversight and Government Reform on "IRS Obstruction: Lois Lerner's Missing E-mails, Part II" Tuesday, June 24 2014*, 113th Cong. 1-3 (2014), http://oversight.house.gov/wp-content/uploads/2014/06/Ferriero-NARA-Testimony-6-23-IRS-E-Mails.pdf.

[19] A copy of the June 16, 2014 correspondence from True the Vote's counsel (the "June 16, 2014 Document Preservation Letter") is attached as **Exhibit G**.

6

The June 16, 2014 Document Preservation Letter also sought Defendants' consent to the relief

sought by way of this Motion, inquiring as follows:

> In addition to seeking responses to the questions in this letter, we also seek
> your consent to immediately allow a computer forensics expert selected by TTV
> to examine the computer(s) that is or are purportedly the source of Ms. Lerner's
> "lost" emails, including cloning the hard drives, and to attempt to restore what
> was supposedly "lost," and to seek to restore any and all "lost" evidence pertinent
> to this litigation.

> We also seek access to all computers, both official and personal, used by
> any and all of the Defendants from and after July 1, 2010, in order to ensure
> preservation of the documents of all Defendants in this action.

By email correspondence dated June 18, 2014, counsel for the IRS responded that "[w]e

do not believe it to be appropriate or necessary to address your unwarranted attacks on the

government and its counsel at this time."[20]  Rather than respond to the specific questions posed

in the June 16, 2014 Document Preservation Letter, counsel for the IRS simply "enclosed a

memo entitled 'Designation of IRS Email Collection and Production' that was submitted to

Congress on June 13, 2014."

By email correspondence that same day, counsel for the IRS Cincinnati Defendants

disclaimed any responsibility, stating as follows:  "I do not represent Ms. Lerner; neither I nor

my clients had any involvement in the events described in your letter; and we have no control

over the IRS or how it stores computer equipment, such as individual hard drives."  Rather than

address the specific questions posed in True the Vote's June 16, 2014 Document Preservation

---

[20]  A copy of the June 18, 2014 response from counsel for the IRS is attached as
**Exhibit H**.

Letter, counsel for the IRS Cincinnati Defendants stated that "my clients are aware of their obligations regarding document preservation."[21]

Last but not least, counsel for the IRS Management Defendants weighed in with email correspondence calling the June 16, 2014 Document Preservation Letter "irresponsible," among other adjectives. Like counsel for the IRS Cincinnati Defendants, counsel for the IRS Management Defendants disclaimed any and all responsibility, stating:

> Your letter concerns the production of documents, including Lois Lerner's emails, by the Internal Revenue Service in connection with an investigation by the House Ways and Means Committee. As you know, I do not represent, control or direct the IRS nor do I have any involvement in the Congressional investigation. In this case, filed by your client, True the Vote, I represent a number of the individual defendants, including Ms. Lerner, who is no longer employed by the IRS. Neither she nor I have any control over documents in the custody or control of the IRS.

Counsel for the IRS Management Defendants also stated that "discovery has not begun in this case, as there are pending motions to dismiss that have been filed with the Court. Therefore, there are no documents that are required to be produced at this time." Finally, counsel for the IRS Management Defendants asserted that the June 16, 2014 Document Preservation Letter "mischaracterizes prior correspondence in this case" but reiterated her prior commitment to "advise my clients as appropriate" and "abide by my legal and ethical obligations."[22]

In short, no Defendant provided any response to any of the specific questions posed in the June 16, 2014 Document Presentation Letter. No Defendant described the document preservation efforts, if any, that have been undertaken. Nor did counsel even deign to address

---

[21] A copy of the June 18, 2014 correspondence from counsel for the Cincinnati Defendants is attached as **Exhibit I**.

[22] A copy of the June 18, 2014 correspondence from counsel for the IRS Management Defendants is attached as **Exhibit J**.

whether Defendants would consent to the relief requested.  By email that same day, counsel for

True the Vote pointed out this latter omission, stating as follows:

> Specifically, your correspondence does [not] address whether your respective client(s) will consent to have a computer forensics expert access its, his, or her computer(s)—both "official" and "personal"—for the purpose of (1) cloning the hard drive(s), (2) attempting to restore any files that may have been lost or destroyed, inadvertently or deliberately; and (3) seeking to restore any electronically stored information pertinent to this litigation that may have been lost or destroyed.

The June 18, 2014 email from counsel for True the Vote concluded with a request to "meet and

confer" regarding the requested relief.[23]

Such a discussion finally took place on Tuesday, June 24, 2014.  At that time, counsel for

Defendants refused to discuss what steps—if any—their respective clients had previously taken

to preserve evidence.  (Counsel for the IRS also suggested that potentially relevant documents

were not really "evidence" because of the pendency of Defendants' motions to dismiss).

Counsel for Defendants also confirmed orally what seemed at least implicit from their lack of

any prior written response:  Defendants will not consent to forensic examination of any of the

computers in question.

Defendants' refusal to cooperate is all the more troubling because, according to IRS

Commissioner John Koskinen, the IRS has already "recycled" the hard drive of the IRS

computer used by Ms. Lerner in accordance with "the normal process."[24]  Yet this "recycling"

occurred *after* the filing in this Court of litigation involving the IRS Targeting Scheme and *after*

---

[23] A copy of a June 18, 2014 email from counsel for True the Vote is attached as **Exhibit K**.

[24] *IRS Obstruction: Lois Lerner's Missing Emails: Hearing Before the H. Oversight and Gov't Reform Comm.*, 113th Cong. (June 23, 2014, 7:00 p.m.) (Answer of John A. Koskinen, Commissioner, Internal Revenue Service) http://oversight.house.gov/hearing/irs-obstruction-lois-lerners-missing-e-mails/ (Answer of IRS Commissioner Koskinen at 26:46 in video).

the commencement of various congressional inquiries and investigations regarding the IRS Targeting Scheme in general and True the Vote's application in particular.  Regardless of its ostensible purpose, the IRS's "recycling" may well have had the effect of making it difficult if not impossible to retrieve the contents of the hard drive of the computer that Ms. Lerner used at work.  As for the computer(s) and PDAs that Ms. Lerner used both in and outside the office, her counsel simply refuses to even discuss what measures—if any—have been taken to preserve ESI. Yet according to published accounts, IRS officials used their home computers for "sensitive" communications, and Ms. Lerner's emails in which she sought to foment an audit of a U.S. Senator with whom she disagrees were reportedly sent from her BlackBerry.[25] Further, recent testimony of Commissioner Koskinen that "[s]ince January 1 of this year for example, over 2000 IRS employees have suffered hard drive crashes" suggests True the Vote's concerns about the security of additional documents are well founded.[26] And, yes, this stonewalling by Defendants' counsel inspires no confidence that additional hard drives and other storage devices containing relevant information will not face the same fate, forever destroying evidence relevant to the claims of True the Vote and other litigants before this Court.

---

[25] *See, e.g.*, Dinan, *IRS's Lerner Sought Tax Audit of Iowa Sen. Chuck Grassley Over His Wife's Free Meal*, June 26, 2014, http://www.washingtontimes.com/news/2014/jun/26/irss-lerner-sought-tax-audit-iowa-sen-chuck-grassl/?page=all; Howell, *Clinton Adviser Lanny Davis: IRS Scandal Needs An Independent Prosecutor*, Washington Times, June 28, 2014 http://www.washingtontimes.com/news/2014/jun/28/clinton-adviser-irs-scandal-needs-independent-pros/ (noting that email "message sent from her BlackBerry device to several IRS colleagues").

[26] *IRS Obstruction: Lois Lerner's Missing Emails: Hearing Before the H. Oversight and Gov't Reform Comm.*, 113th Cong. (June 23, 2014, 7:00 p.m.) (Answer of John A. Koskinen, Commissioner, Internal Revenue Service) http://oversight.house.gov/hearing/irs-obstruction-lois-lerners-missing-e-mails/. (Answer of IRS Commissioner Koskinen at 35:12 in video).

Equally troubling is the deafening silence from counsel for Defendants in response to other pertinent questions. Have forensic searches been conducted of the servers where IRS data (including emails) are stored permanently? Have proper searches and retrieval efforts (or any searches and retrieval efforts, for that matter) been performed by the vendors with which the Department of Treasury has entered into contracts—at taxpayer expense—for the purpose of archiving IRS emails? Have Defendants—including the Individual Defendants—preserved their electronic communications (emails) in hard copy format as required by Internal Revenue Manual Section 1.10.3.2.3(3)? What steps have Defendants and their counsel taken to preserve the "personal" documents and evidence, including emails, potentially relevant to this case?

The IRS Targeting Scheme has already deprived True the Vote of its constitutional rights to free speech, free association, and due process—among other protections of the Bill of Rights.[27] Without the relief sought in this Motion, True the Vote is likely to suffer additional irreparable harm to its constitutional rights and to its ability to pursue its claims. To restore and preserve evidence necessary for the just and proper adjudication of this case, True the Vote therefore respectfully requests that the Court enter an order:

> (a) allowing True the Vote access to Defendants' premises for purposes of inspecting computers and computer systems on which the "lost" documents are or may have been stored, including the servers on which IRS emails are stored, and the personal computers of the Individual Defendants;

> (b) entering a preliminary injunction directing Defendants (including all persons covered by Fed. R. Civ. P. 65(d)(2)) to preserve and prevent further destruction of all documents and electronically stored information within the scope of Fed. R. Civ. P. 26(b) and 34(a)(1)(A) in their possession, custody, and control;

> (c) requiring Defendants to provide True the Vote with sworn statements—about which True the Vote would have the opportunity to cross examine them—regarding

---

[27] Depending on the answer to True the Vote's questions, it may have additional claims because "negligent or reckless spoliation of evidence is an independent and actionable tort in the District of Columbia." *Holmes v. Amerex Rent-A-Car*, 180 F.3d 294, 296 (D.C. Cir. 1999).

11

Defendants' knowledge of the whereabouts of relevant information and documents, the preservation of such documents and information, and/or the destruction of such documents and information;

(d) requiring that the parties confer pursuant to Fed. R. Civ. P. 26(f) and plan for discovery within a reasonable time following the entry of the Order; and

(e) expedited discovery for the limited purpose of (a) ascertaining the whereabouts and security of documents and electronically stored information related to the IRS Targeting Scheme and True the Vote's application for exempt status and (b) developing a plan for restoring and preserving such documents and electronically stored information—including requiring the IRS to identify third party vendor(s) responsible for archiving and retrieving emails of IRS employees, and permitting True the Vote to depose such vendors.

True the Vote respectfully requests a hearing on this Motion.[28]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The IRS Targeting Scheme that is the subject of True the Vote's Amended Complaint involved the development and implementation of a targeting scheme whereby certain applicants for tax-exempt status were deliberately subjected to additional review and scrutiny based on their actual or perceived affiliations, missions, and substantive philosophical views. The constitutional rights impaired by the IRS Targeting Scheme include rights of free speech, free association, and due process, according to True the Vote's Amended Complaint. True the Vote also alleges violation of various statutes, include 26 U.S.C. § 6103 and 5 U.S.C. § 706 (Administrative Procedure Act).

When True the Vote filed suit in this Court on May 21, 2013, it was actually the second non-profit organization targeted by the IRS to do so. The first was Z Street, an organization that—according to its Web site—"is for those who are willing not only to support – but to defend – Israel, the Jewish State." *See* http://ziostreet.wordpress.com/about. Z Street filed suit on

---

[28] Notably, on June 27, 2014, Judge Emmet G. Sullivan granted plaintiff Judicial Watch's request for a status conference regarding the destruction of IRS records. Minute Order, June 27, 2014, *Judicial Watch, Inc. v. IRS*, No. 13-1559 (D.D.C.). The hearing is set for July 10, 2014.

August 25, *2010*.  In that litigation, the IRS's resistance to providing discovery has recently been the subject of a decision by this Court. *See Z St., Inc. v. Koskinen*, No. 12-cv-0401 (KBJ), 2014 U.S. Dist. LEXIS 71638 (D.D.C. May 27, 2014).[29]

Shortly after Z Street filed suit, more suspicions arose regarding the neutrality of the IRS, spurring various congressional inquiries.  These congressional inquiries were prompted by reports from constituents about unprecedented delays by the IRS in processing applications for tax exempt status.  The various members of Congress who began contacting the IRS included Representative Darrell Issa ("Chairman Issa"), Chairman of the House Committee on Oversight and Government Reform ("Oversight Committee"), and Representative Dave Camp ("Chairman Camp"), Chairman of the House Ways & Means Committee ("Ways & Means").  One of the organizations affected by the delays was True the Vote.  True the Vote had filed its application for exempt status on July 15, 2010.  The application was not processed on a timely basis.  After an unusually prolonged delay, True the Vote sought assistance in early 2011 from its home state senator, John Cornyn (R-TX).  A copy of the Taxpayer Advocate Service's response to Senator Cornyn's January 5, 2011 letter regarding True the Vote's application is attached as **Exhibit L**.

On June 3, 2011, Chairman Camp sent a letter to then-IRS Commissioner Defendant Douglas Shulman inquiring about the potential targeting of taxpayers who donated money to conservative groups and seeking information regarding audits of 501(c)(4) organizations.[30]  The alleged "crash" of Ms. Lerner's hard drive occurred just ten days later but was not publicly disclosed for more than three years.

---

[29] This decision was the subject of True the Vote's Notice of Supplemental Authority (Dkt. #80), which included a copy of the decision (Dkt. #80-1).

[30] A copy of the June 3, 2011 letter from Chairman Camp is available at www.waysandmeans.house.gov/UploadedFiles/Non_6103_ltr_FINAL.pdf.

Meanwhile, beginning in February 2012, the IRS Targeting Scheme became the subject of numerous additional congressional inquiries.  At that time, Chairman Issa and Rep. Jim Jordan (R-OH), also of the Oversight Committee, requested a report from the Treasury Inspector General for Tax Administration ("TIGTA").  The subsequent TIGTA report, issued on May 14, 2013, found that the IRS had indeed targeted organizations based on their mission, purpose, and perceived political philosophy.

Following issuance of the TIGTA report last May, various congressional investigations and hearings ensued.  In connection with these investigations, various House committees have requested that the IRS and other federal agencies produce documents and records related to the IRS Targeting Scheme.  To put it mildly, the IRS has been less than cooperative in providing the requested information to Congress.  According to Chairman Issa, the IRS has engaged in "continued dilatory and obstructionist actions" that have impeded the Committees' investigations and the search for truth.[31]  Chairman Camp stated that the Committee's "entire investigation has been slow-walked by the Administration while they denied any wrongdoing and tried blaming 'low-level' workers in Cincinnati – all of which we have proven to be wrong."[32]

The document requests to the IRS included a June 4, 2013 request from the Oversight Committee for "[a]ll documents and communications sent by, received by, or copied to Lois

---

[31] Letter of Darrell Issa, H. Comm. on Oversight & Gov't Reform, to John Koskinen at p. 2, Internal Revenue Serv. (June 16, 2014), *available at* http://oversight.house.gov/wp-content/uploads/2014/06/2014-06-16-DEI-to-Koskinen-IRS-Lerner-emails-and-hearing-invite.pdf.  (attached as **Exhibit M**)

[32] *See* Press Release, House Committee on Ways and Means (June 17, 2014), *available at* http://waysandmeans.house.gov/news/documentsingle.aspx?DocumentID=384708.

14

Lerner…between January 1, 2009, and the present."[33]   The IRS produced no responsive documents.   In particular, the Oversight Committee received no emails from Ms. Lerner.   Accordingly, Chairman Issa issued a subpoena to Treasury Secretary Jacob Lew, the custodian of all IRS documents.[34]   On February 14, 2014, the subpoena was reissued to newly confirmed IRS Commissioner John Koskinen.   On several subsequent occasions—including as recently as March 26, 2014—Commissioner Koskinen swore under oath that his agency would provide all of Ms. Lerner's emails as required by the subpoena.[35]

Long before True the Vote filed suit, prior events had already placed the IRS and the Individual Defendants on notice of their obligations to preserve not only Ms. Lerner's emails but *all evidence* relevant to the IRS Targeting Scheme.   Defendants were certainly on notice by August 25, 2010, when Z Street filed suit.   Defendants were also on notice by early 2011, as a result of various congressional inquiries—including the January 5, 2011 inquiry from Senator Cornyn that specifically referenced True the Vote.

Long before the IRS Targeting Scheme prompted the filing of a complaint or the launch of a congressional inquiry or investigation, Defendants were obligated to preserve not only Ms. Lerner's emails but those of all Defendants *as a matter of law*.   The IRS is required by federal law to keep records of all agency emails and to print out hard copies of emails that qualify as "federal records" within the meaning of the Federal Records Act of 1950, 44 U.S.C. § 3101 *et*

---

[33] Letter from Darrell Issa & Jim Jordan, H. Comm. on Oversight & Gov't Reform, to Daniel Werfel, Internal Revenue Serv. (June 4, 2013), *available at* http://oversight.house.gov/wp-content/uploads/2013/11/2013-06-13-DEI-Camp-Jordan-Boustany-to-Lew-Treas-IRS-tax-exempt-applications-due-6-27.pdf.

[34] Letter from Darrell Issa, H. Comm. on Oversight & Gov't Reform, to Jacob Lew, Dept. of the Treasury (Aug. 2, 2013), *available at*. http://oversight.house.gov/wp-content/uploads/2013/08/8.2.13-Issa-to-Lew.pdf.

[35] *See* June 16, 2014 letter from Issa to Koskinen at p. 2-5 (**Exhibit M**).

*seq.* As interpreted by the IRS in its Internal Revenue Manual ("IRM"), the Federal Records Act "requires, among other things, that the head of each federal agency establish and maintain an active, continuing program for the economical and efficient management of agency records." IRM § 1.15.1.5(1)(D) (2013). The Federal Records Act "applies to email records just as it does to records…create[d] using other media." *Id.* § 1.10.3.2.3(2). According to the IRS, any email that is "[c]reated or received in the transaction of agency business" or "evidence of the government's function and activities" qualifies as a "federal record." *Id.* Any email that "meet[s] the definition of federal record [must] be added to the organization's files by printing them…and filing with related paper records." IRM § 1.10.3.2.3(3). Simply "maintaining a copy of an email or its attachments within the IRS email MS Outlook application does ***not*** meet the requirements of maintaining an official record." IRM § 1.10.3.2.3(5) (emphasis added). In other words, whatever hard drive(s) may or may not have crashed, hard copies of the emails of all Defendants' emails should be available for production in this litigation. In addition, the "crash" of Ms. Lerner's hard drive ought not to have affected emails that—although they originated with or were sent to Ms. Lerner—were exchanged with other Defendants.[36]

To date, Defendants' counsel have been unwilling to provide any information whatsoever regarding the whereabouts of electronic and hard copy evidence alike in the possession, custody, and control of the Defendants. Nor have Defendants' counsel explained whether safeguards are in place to maintain the integrity of their respective clients' emails, hard copy records, and other relevant evidence—much less what those safeguards may (or may not) be. The integrity of Ms. Lerner's emails is particularly important for two reasons. First, over the course of the last year,

---

[36] For example, the cc: recipients of the Dec. 4, 2012 email from Ms. Lerner in which she sought to have the IRS audit a U.S. Senator included Defendants Holly Paz and David Fish.

since the first public acknowledgement of the IRS Targeting Scheme, Ms. Lerner—the former head of the IRS' Exempt Organization Division—has emerged as a central figure in this controversy.  *See* http://www.oversight.house.gov/IRS.  Second, Ms. Lerner's emails and other documents are the principal source of information about her role in the IRS Targeting Scheme. In connection with congressional investigations, Ms. Lerner has already refused to testify—a refusal that has already prompted calls for her to be prosecuted criminally[37] and/or held in contempt as sought by a House resolution passed on May 7, 2014.[38]   At this juncture, there is no reason to believe that Ms. Lerner will willingly testify in this or any other legal proceeding.

Earlier this month—more than a year after receiving the first congressional request for Ms. Lerner's emails—the IRS informed the Senate Finance Committee and the House Committee on Ways and Means (which is also investing the IRS Targeting Scheme) that it could not produce Ms. Lerner's emails from a period of January 1, 2009–April 2011 due to an alleged "computer crash."[39]   According to the Ways and Means Committee, the IRS knew of the alleged loss of emails since at least February 2014—more than a month before IRS Commissioner Koskinen assured two congressional committees that the IRS would produce all of Ms. Lerner's

---

[37] On April 9, 2014, Ways & Means adopted a criminal referral of Ms. Lerner for her actions in violation of federal law regarding mistreatment of applicants for exempt organizations. A copy of this letter is attached as **Exhibit N**. The exhibits to this letter are available at http://waysandmeans.house.gov/uploadedfiles/4.9.14_lerner_referral_and_exhibits.pdf.

[38] *See* H. Res. 574, 113th Cong. (2nd Sess. 2014), *available at* http://oversight.house.gov/wp-content/uploads/2014/04/4-10-14-CONTEMPT-REPORT-Full-Committee-Business-Meeting-Lois-Lerner1.pdf.

[39] Letter from Leonard Oursler to Ron Wyden, Dept. of the Treasury (June 13, 2014), *available at* http://waysandmeans.house.gov/uploadedfiles/6_13_14_irs_letter.pdf (attached as **Exhibit O**).

17

emails.[40]  Four days later, on June 17, 2014, the IRS claimed that Ms. Lerner's emails from the relevant time period are not the only ones "missing."   The other emails alleged to be "missing" are those of six other IRS employees involved in the IRS Targeting Scheme.[41]  *Id*. According to IRS Commissioner Koskinen, the IRS is still assessing the extent of this additional loss of information.  Of course, if what Commissioner Koskinen says is true, the IRS has already had more than three years to do so.

### III.   **PROCEDURAL STANDARDS**

#### A.   **Federal Rule 65 Authorizes Preliminary Injunctive Relief to Preserve the Status Quo and Prevent Irreparable Harm.**

True the Vote seeks to obtain information regarding the claimed "loss" of relevant evidence and to prevent further destruction of relevant evidence in the possession, custody, or control of Defendants, third party vendors or Defendants' counsel.  The relief sought by True the Vote includes an order directing Defendants to preserve all ESI and documentary evidence related to the IRS Targeting Scheme.

The basis for the relief sought by True the Vote includes Federal Rule of Civil Procedure 65, which authorizes preliminary injunctive relief "to maintain the status quo pending a final determination of the suit on the merits."  *City of Moundridge v. Exxon Mobil Corp*., 429 F. Supp. 2d 117, 126 (D.D.C. 2006).  In other words, it is designed to "'hold the parties in place until a trial can take place.'"  *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit*

---

[40] *See* Press Release, "EXPOSED: IRS Kept Secret For Months, More Than Just Lerner Emails Lost, H. Comm. on Ways and Means (June 17, 2014), *available at* http://waysandmeans.house.gov/news/documentsingle.aspx?DocumentID=384708.

[41] Patrick Howley, *Meet the Seven IRS Employees Whose Computers 'Crashed,'* Daily Caller, June 26, 2014, http://dailycaller.com/2014/06/26/meet-the-seven-irs-employees-whose-computers-crashed/ (listing the six employees in addition to Defendant Lerner whose computers allegedly crashed).

*Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006) (internal citations omitted).  Further, for equitable reasons, courts may "enjoin[] defendants from destroying evidence pending the resolution of this action." *FTC v. NAFSO VLM, Inc.*, No. CIV S-12-0781 KJM-EFB, 2012 U.S. Dist. LEXIS 44244, at *9 (E.D. Cal. Mar. 29, 2012).  This is true even where electronic evidence is being destroyed "through the normal use of the computer equipment."  *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 651 (D. Minn. 2002); *see also Am. Friends Serv. Comm. v. Webster*, 485 F. Supp. 222, 233 (D.D.C. 1980) (finding that plaintiff "will suffer significant, irreparable injury if defendants' continuing destruction of FBI files [in accordance with its record destruction program] is not enjoined").

To obtain a preliminary injunction pursuant to Rule 65, True the Vote "'must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest.'"  *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## B.   This Court Has Discretion Under Federal Rule 26 to Order Expedited Discovery, Including Discovery of Electronically Stored Information.

Federal Rule of Civil Procedure 26 "'vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.'"  *Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).[42]  "Although the Federal Rules of Civil Procedure do not provide specific standards for evaluating expedited discovery motions, the Rules do provide the court with the authority to direct expedited discovery in limited circumstances."  *Disability Rights Council*, 234 F.R.D. at 6; *see also Warner*

---

[42] When "authorized by…court order," parties may serve discovery requests before conferring as required by Rule 26(f). Fed. R. Civ. P. 26(d)(1).

*Bros. Records Inc. v. Doe*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007) ("Courts have wide discretion in discovery matters and have allowed parties to conduct expedited discovery where good cause is shown.").

"To determine whether expedited discovery is appropriate, courts have developed two commonly recognized approaches: (1) the *Notaro* test and (2) the reasonableness, or good cause, test." *Disability Rights Council*, 234 F.R.D. at 6. The "*Notaro* test" was articulated in the case of *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982). While courts have employed both tests, "[m]ore recent cases have rejected the *Notaro* test in favor of [the] reasonableness test, particularly in cases where the expedited discovery is related to a motion for a preliminary injunction." *Disability Rights Council*, 234 F.R.D. at 6; *see also Ellsworth Assocs. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief.").

The *Notaro* test requires the moving party to "demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142 (D.D.C. 2005) (quoting *Notaro*, 95 F.R.D. at 405).

The factors considered under the "reasonableness" standard for expedited discovery include: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the

20

request was made." *Disability Rights Council*, 234 F.R.D. at 6 (citing *In re Fannie Mae Derivative Litig.*, 227 F.R.D. at 143).

Under Federal Rule 26, parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending litigation." Fed. R. Civ. P. 26(b)(1). Moreover, Federal Rule 34 permits "a party or its representative to inspect, copy, test, or sample" any "tangible things" within the scope of permissible discovery under Rule 26. Fed. R. Civ. P. 34(a)(1). The scope of permissible discovery specifically "includ[es] computer hard drives of the computers which generated emails that were later improperly deleted." *Orrell v. Motorcarparts of Am., Inc.*, No. 3:06CV418-R, 2007 U.S. Dist. LEXIS 89524, at *18 (W.D.N.C. Dec. 5, 2007); *see also* Fed. R. Civ. P. 34 advisory committee's note ("Rule 34 applies to electronic data compilations from which information can be obtained only with the use of detection devices"); *Antioch Co.*, 210 F.R.D. at 652  ("[I]t is a well accepted proposition that deleted computer files, whether they be e-mails or otherwise, are discoverable."); *Simon Prop. Grp. L.P. v. MySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000) ("First, computer records, including records that have been 'deleted,' are documents discoverable under Fed. R. Civ. P. 34."); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) (Rule 34 permits discovery of "electronic documents that are currently in use,  . . . documents that may have been deleted and now reside only on backup disks.").

## IV.    ARGUMENT

### A.    The Relief That True the Vote Seeks Is Necessary to Preserve Not Only the Status Quo But Relevant Evidence and the Integrity of the Judicial System.

From Defendants' response (or lack thereof) to the September 17, 2013 "litigation hold" letters, True The Vote's subsequent request for a Rule 26(f) conference, and—most recently—True the Vote's June 16, 2014 Document Preservation Letter, one thing is clear: Defendants are

21

laboring under the misapprehension that they are above the law.  How else can one explain their characterization of a standard form "litigation hold" letter as being "designed to intimidate, threaten and harass"?  *See* Ex. B at 1.  At first, it was easy to dismiss this and other shrill and sarcastic rhetoric[43] as mere posturing and overzealous advocacy.  But even after Defendants' emails from the relevant time period were belatedly reported as "lost," their counsel has given no indication whatsoever that Defendants take their obligations to this Court seriously.  Notwithstanding reports of mysteriously disappearing emails, Defendants continue to dismiss legitimate requests for assurances that documents are being preserved as "unwarranted" (Ex. H) and "irresponsible" (Ex. J).  The Department of Justice attorneys acting as counsel for the IRS in this case—when prosecuting rather than defending claims—would certainly never countenance the argument that the simple expedient of filing a motion to dismiss relieves a defendant of the obligation to preserve evidence.  Actions do speak louder than words.  Here, Defendants' actions ***and*** words both speak loudly in support of the need for an order directing Defendants to preserve all electronically-stored evidence related to the IRS Targeting Scheme and permitting True the Vote to have an independent forensic examiner ascertain the scope of the damage already done and determine whether anything that has already been deleted can be salvaged.

Whether based on Rule 26, Rule 65, or both, preservation of evidence pending trial is an appropriate exercise of the Court's discretion.  The government so recognized when it secured an order pursuant to a Rule 65 motion "enjoin[ing] defendants from destroying evidence pending the resolution of this action" in *FTC v. NAFSO VLM, Inc.*, No. CIV S-12-0781 KJM-EFB, 2012 U.S. Dist. LEXIS 44244, at *9.  Like the plaintiff in *Am. Friends Serv. Comm.*, True the Vote "will suffer significant, irreparable injury" without a preliminary injunction to prevent any

---

[43] *See, e.g.*, Ex. B at 1 ("I was not expecting flowers").

further document destruction.  485 F. Supp. at 233.  Under Rule 26, the expedited discovery that True the Vote seeks is appropriate because it is narrowly tailored is "to gain evidence to get the court to preserve the status quo" concerning information vital to the resolution of this case. *Disability Rights Council*, 234 F.R.D. at 7.[44]  In this case, it is hard to conceive why Defendants would oppose such an order.  The fact that they do underscores the need for such relief and the irreparable harm that True the Vote is likely to suffer without it.

### B.      True the Vote Faces Further Irreparable Injury Unless Defendants Are Ordered to Preserve Evidence and Submit to the Requested Inspection.

Irreparable injury is a prerequisite for both preliminary injunctive relief[45] and expedited discovery, at least under the *Notaro* test.  If the IRS's public statements about loss of emails are true, True the Vote has already suffered irreparable injury.  True the Vote will face irreparable injury to the fair adjudication of its claims—and consequently, its constitutional rights—if critical electronic information is not recovered and preserved.  The spoliation of evidence that has reportedly already occurred is itself proof that True the Vote faces further irreparable harm without the relief that that it seeks.  *See, e.g.*, *United States v. Sum of $70,990,605*, No. 12-1905 (RWR), 2013 U.S. Dist. LEXIS 167158, at *15-16 (D.D.C. Nov. 25, 2013) ("Destruction of evidence may also rise to the level of irreparable harm" where "proof of destroyed evidence or a threat of destroying evidence" exists); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 371 (S.D.N.Y. 2006) ("The burden of establishing the risk that documents will be destroyed in the future is

---

[44] *See also Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1069 (C.D. Cal. 2009) (expedited discovery request appropriate where limited to information to preserve the status quo).

[45] *See, e.g.*, *Sherley*, 644 F.3d at 392.

23

'often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place.'") (internal citations omitted).

In this case, the IRS has already destroyed or permitted the destruction of evidence in violation of the Federal Records Act and notwithstanding the pendency of litigation in this Court. The IRS's track record so far suggests the risk that additional destruction—inadvertent or otherwise—may be forthcoming. To prove its case, True the Vote needs access to information in Defendants' possession. Without a full and fair opportunity to review such information, True the Vote will be irreparably harmed.

### C.   The Likelihood of Success, Balance of Equities, and Public Interest All Weigh in Favor of Preliminary Injunctive Relief and Expedited Discovery.

In important respects, "the *Notaro* standard[] overlap[s] with the preliminary injunction standard." *Guttenberg v. Emery*, No. 13-2046 (JDB), 2014 U.S. Dist. LEXIS 37101, *21 (D.D.C. Mar. 19, 2014). In this case, the remaining factors relevant to the award of both a preliminary injunction and—under the *Notaro* test—expedited discovery all weigh in favor of the relief that True the Vote seeks.

### 1.   True the Vote has demonstrated sufficient likelihood of success for both a document preservation order and expedited discovery.

If allowed to continue destroying evidence and failing to have adequate preservation measures in place, Defendants can obviously make likelihood of success on the merits more difficult for True the Vote—along with other plaintiffs challenging the IRS Targeting Scheme. At this juncture, however, the preliminary injunction and related relief that True the Vote seeks is *not* addressed to the merits of its First Amendment and other constitutional and statutory claims. Rather, it is designed to "'hold the parties in place until a trial can take place.'" *Disability Rights Council*, 234 F.R.D. at 7 (internal citations omitted). In these circumstances, "certain courts relax the standard so that plaintiffs do not have to demonstrate likelihood of

success on the merits of the litigation, as **such consideration is not appropriate for evidence preservation**." *Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2013 U.S. Dist. LEXIS 15943, *6 (W.D. Mo. Feb. 6, 2013) (emphasis added) (internal citations omitted).  It would "'put the cart before the horse'" to "evaluate the merits of the litigation even before evidence has been gathered, let alone produced to the opposing party or submitted to the court." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006) (internal citations omitted).

By any measure, however, True the Vote has shown the requisite likelihood of success on the merits.  Defendants' pending motions to dismiss border on the frivolous, for the reasons set forth in the oppositions previously filed by True the Vote.[46]  In parallel litigation in which another organization targeted by the IRS has raised similar First Amendment and other claims, this Court recently rejected arguments similar to those advanced by the IRS in this case.   *See Z St., Inc. v. Koskinen*, No. 12-cv-0401 (KBJ), 2014 U.S. Dist. LEXIS 71638 (D.D.C. May 27, 2014) (denying IRS's motion to dismiss and rejecting argument that a viewpoint discrimination claim against the IRS is barred by Anti-Injunction Act and Declaratory Judgment Act and argument that declaratory judgment provision of 26 U.S.C. § 7428 provides an adequate remedy at law).[47]

### 2. The balance of equities weighs heavily in favor of the document preservation order and expedited discovery that Plaintiff seeks.

The only way that the relief sought by True the Vote could possibly harm Defendants would be by making it less likely that they can avoid having to answer for developing and implementing the IRS Targeting Scheme.  Making it more difficult for Defendants in this case to

---

[46] (Dkts. ## 65, 67)

[47] *See* Plaintiff's Notice of Supplemental Authority (Dkt. # 80).

destroy evidence with impunity is simply not the type of harm to the defendants that is even worthy of consideration under the "balance of equities" factor.  Under similar circumstances, this Court has found that the "balance of equities" warrants relief like that sought by True the Vote in this case.

In *Citizens for Responsibility & Ethics v. Exec. Office of the President*, No. 07-1707 (HHK/JMF), 2007 U.S. Dist. LEXIS 97574, at *2-3 (D.D.C. Oct. 19, 2007), the plaintiff complained that the White House had deleted millions of emails that it was supposed to keep. The plaintiff sought a temporary restraining order "requiring the White House to keep all backup tapes or similar media" that may contain deleted emails.  *Id.*   Although the government promised to keep all other information that had not yet been destroyed, the court granted the requested relief: "Unlike a court order, a declaration is not punishable by contempt." *Id.* at *4.

Like the plaintiff in *Citizens for Responsibility & Ethics*, True the Vote needs a court order to protect its interests.  Both before and after the filing of this litigation, the IRS, Ms. Lerner, and the other Individual Defendants have shown utter contempt for the rule of law.  They have shown no regard for the First Amendment, the Federal Records Act, the Internal Revenue Manual, congressional subpoenas, or any other law.  When asked that their clients comply with their document preservation obligations, counsel for Defendants have refused to even discuss the subject, sending letters dripping with venom instead. Under the circumstances, it is reasonable to expect that the only the prospect of contempt sanctions may finally get Defendants to take their legal and ethical obligations seriously.   If Defendants are in fact willing to abide by their obligations to this Court, they should have no objection to the relief that True the Vote seeks.  As this Court held in *In re Fannie Mae Derivative Litig.*, "the injury that will result without

26

expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  227 F.R.D. at 142 (quoting *Notaro*, 95 F.R.D. at 405).

**3.** **The public interest in the integrity of the judicial process warrants both preliminary injunctive relief and expedited discovery.**

This lawsuit presents significant questions regarding whether the federal government and/or its employees have violated the constitutional or statutory rights of American citizens. Assuring that relevant evidence relevant to these questions is preserved is in the public interest. In fact, the particular information and documents sought to be preserved are, by nature, public documents.  These documents are required to be kept—in both electronic and hard copy form— by the Federal Records Act and the Internal Revenue Manual.  But for their recent disappearing act, at least some of these documents are properly the subject of Freedom of Information Act requests.  The public has a right to know what its government has been up to.  The requested relief is not only in the public interest, it greatly benefits the public.

**D.** **The Court Should Exercise Its Rule 26(d) Discretion and Expedite Discovery for the Purpose of Restoring and Preserving Relevant Electronic Evidence.**

Three years after the fact, the IRS now claims that otherwise discoverable ESI relevant to True the Vote's claims has been "lost" and is "unrecoverable."[48]  Even if the ill-timed hard drive "crash" was truly an accident, and even if the IRS genuinely believes that the emails are "unrecoverable," the circumstances of the spoliation at issue cry out for a second opinion.  It may well prove to be the case that a computer forensics expert could recover evidence that the IRS has been unable to retrieve.  At the very least, such an expert could preserve whatever evidence has not already been wiped clean from the IRS's computers along with whatever is stored on the Individual Defendants' home computers, cell phones, and other PDAs.  Accordingly, True the

---

[48] June 13, 2014 Letter from Oursler to Wyden at 7 (**Exhibit O**).

Vote has narrowly tailored its request to accomplish these limited purposes. Subject to further specification as approved by this Court, True the Vote seeks to conduct discovery on an expedited basis as follows:

(1) Subject to the approval of the Court, True the Vote would designate an independent, computer forensics expert to conduct discovery as True the Vote's representative (the "Expert").

(2) The Expert would be permitted to inspect and examine (by entering Defendants' premises or other location, if necessary) any computer hard drive, server, back-up tape, or related storage device that contains or did contain documents and electronically stored information sent by, received by, or copied to all Defendants, including Ms. Lerner, between January 1, 2009, and the present.

(3) The Expert would be permitted to take all reasonably necessary action to restore deleted or lost data.

(4) The Expert would be permitted to make copies of any data recovered or restored.

(5) Copies of any recovered data would be produced to Defendants' counsel and the Court, but not to True the Vote or its counsel, until such time that the recovered data, subject to any applicable privilege, must be produced in response to subsequent discovery requests.

(6) Defendant IRS would be required to provide sworn statements concerning: (a) the type of email system(s) software used; (b) diagrams of the hardware/software operational systems; (c) the IRS's retention policies and procedures, including retention of data backups, (d) any investigation, inquiries, or forensic review of the "crash" of Ms. Lerner's hard drive and any IRS servers regarding the same.

Where electronic data has already been or may be lost or deleted, other courts have often approved similar discovery protocols to permit the attempted recovery and preservation of the lost information. For example, in *Antioch Co.,* the court permitted the plaintiffs—on an expedited basis—to appoint a neutral expert in computer forensics who would "attempt to resurrect data which [had] been deleted from the Defendants' computer equipment." 210 F.R.D. 650-52. Similarly, in *Orrell v. Motorcarparts of America, Inc.*, No. 3:06CV418-R, 2007 U.S. Dist. LEXIS 89524, *7 (W.D.N.C. Dec. 5, 2007), the plaintiff claimed her home computer had "crashed," thereby destroying all responsive evidence. The court "conclude[d] that the Defendant [was] entitled to conduct a forensic examination of the [plaintiff's] home computer, at

28

the Defendant's expense, and to an Order prohibiting the destruction of additional evidence." *Id.* at *23; *see also Simon Prop. Group L.P. v. MySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) ("plaintiff is entitled to attempt (at its own expense) the task of recovering deleted computer files" by "select[ing] and pay[ing] an expert who will inspect the computers in question to create a 'mirror image' or 'snapshot' of the hard drives"); *Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (allowing court-appointed computer specialist, as an officer of the court, access to party's computer system on a finding of systematic deletion of relevant e-mails).

As previously discussed, the relief sought by True the Vote satisfies the standards for preliminary injunctive relief and expedited discovery under *Notaro*. It also satisfies the so-called "reasonableness" or "good cause" test.

### 1. The expedited discovery sought by True the Vote easily satisfies the "reasonableness" or "good cause" test.

The "reasonableness" test is a "more liberal approach" than the *Notaro* test. It "directs the court to decide the motion based on the reasonableness of the request in light of all of the surrounding circumstances." *Landwehr v. FDIC*, 282 F.R.D. 1, 3 (D.D.C. 2010) (citations and quotations omitted). In fact, under this standard, courts have granted requests for expedited discovery simply where "good cause" is shown. *See Warner Bros. Records Inc.*, 527 F. Supp. 2d at 2 (permitting expedited discovery where request was narrowly tailored and information sought was "not only relevant but crucial to the prosecution of plaintiffs' claims"). Such "good cause" exists here. On balance, the factors considered under the "reasonableness" standard weigh heavily in favor of the limited expedited discovery that True the Vote seeks.

### a. Expedited discovery is "reasonable" because it is coupled with a motion for preliminary injunction to preserve the status quo.

"[E]xpedited discovery is frequently necessary and appropriate in cases involving requests for a preliminary injunction." *Metal Bldg. Components, L.P. v. Caperton*, No. CIV-04-

29

0256 MV/DJS, 2004 U.S. Dist. LEXIS 28854, *9 (D.N.M. Apr. 2, 2004) (citing *Ellsworth Assocs., Inc. v. United States,* 917 F.Supp. 841, 844 (D.D.C. 1996) (holding that good cause for expedited discovery may exist where a party seeks a preliminary injunction)).  In this case, True the Vote's Motion does not seek relief on the merits.  Rather, it is appropriately designed "to gain evidence to get the court to preserve the status quo" concerning information vital to the resolution of this case. *Disability Rights Council*, 234 F.R.D. at 7.

Without the requested discovery on an expedited basis, the requested injunction will not fully preserve the status quo.  It is first necessary to attempt recovery of emails and other electronic information from storage devices that Defendants claim contain no recoverable information. Only then can the requested injunction preserve all relevant evidence and prevent irreparable harm until the normal discovery process begins.

### b. Expedited discovery is "reasonable" because it is narrowly tailored to preserve and prevent destruction of evidence.

"The Court first examines the scope of the proposed discovery to assess whether it is reasonable." *Guttenberg,* 2014 U.S. Dist. LEXIS 37101, at *23. Unlike the plaintiff in *Guttenberg*, True the Vote does ***not*** "seek relatively broad discovery on issues going to the merits of their case." *Id.*  Rather, True the Vote seeks limited access—by a neutral third-party expert—to a narrowly defined set of hard drives and electronic data storage devices in order to independently verify the scope of recoverable information and to preserve that information.

In this case, the IRS has unilaterally declared emails to and from certain current and former IRS employees who are implicated in the IRS Targeting Scheme to be "lost" and "unrecoverable."  Without the requested relief, True the Vote likely will not get the chance to independently verify the accuracy of these claims.   The need for relief is plainly urgent.   IRS Commissioner Koskinen claims that the IRS has already destroyed the hard drive used by Ms.

Lerner at work, allegedly in the usual course of business.[49]  Without the requested relief, emails and other electronic data generated by other IRS employees are likely to meet a similar fate.

### V.        CONCLUSION

The fact that Defendants have filed a motion to dismiss does not give them *carte blanche* to destroy or permit the destruction of documents and discoverable information that are relevant to the IRS Targeting Scheme in general and the application of True the Vote for exempt status. If the IRS's public statements about "recycling" Ms. Lerner's hard drive are true, that alone establishes spoliation of evidence that violates federal statutes and regulations, the Federal Rules of Civil Procedure, and professional ethics and responsibility.  These statements, coupled with the refusal of Defendants' counsel, to provide any assurances about what has been and will be done to preserve evidence underscore the need for the relief that True the Vote seeks.  Such relief is not uncommon in commercial litigation.  It is all the more warranted here in view of the First Amendment and related constitutional issues raised by True the Vote's claims.

Date: June 30, 2014

---

[49] *Hearing with IRS Commissioner John Koskinen Before the H. Comm. on Ways and Means*, 113th Cong. (2014), *available at* http://www.c-span.org/video/?320046-1/irs-targeting-investigation (answer of IRS Commissioner Koskinen at 26:46 in video)

31

Respectfully submitted,

/s/Michael J. Lockerby
Cleta Mitchell (D.C. 433386) (lead)
Michael J. Lockerby (D.C. 502987)
FOLEY & LARDNER, LLP
Washington Harbour
3000 K Street NW Suite #600
Washington, DC 20007
(202) 672-5300 (telephone)
(202) 672-5399 (fax)
cmitchell@foley.com
mlockerby@foley.com

*Counsel for Plaintiff*


Kaylan L. Phillips (D.C. 1110583)
Noel H. Johnson (Wisc. 1068004)*
ActRight Legal Foundation
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@actrightlegal.org
njohnson@actrightlegal.org

*Counsel for Plaintiff*


*Pro Hac Vice Motions granted*

William E. Davis (D.C. Bar No. 280057)
Mathew D. Gutierrez (Fla. 0094014)*
FOLEY & LARDNER, LLP
One Biscayne Tower
2 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 482-8404 (telephone)
(305) 482-8600 (fax)
wdavis@foley.com

mgutierrez@foley.com

*Counsel for Plaintiff*


John C. Eastman (Cal. 193726)*
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, California 92866
(877) 855-3330 x2 (telephone)
(714) 844-4817 (fax)
jeastman@chapman.edu

*Counsel for Plaintiff*

4825-9472-2076.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2014, I caused the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY TO PREVENT FURTHER SPOLIATION OF, AND TO PRESERVE AND RESTORE, EVIDENCE AND DISCOVERABLE INFORMATION to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

I further certify I will cause a true and correct copy of the foregoing to be served upon the following Defendant, for whom no counsel of record has yet entered an appearance, via U.S. Certified Mail at his last known address, as follows:


**DAVID FISH**
3623 37th St. N.
Arlington, Virginia  22207


Dated: June 30, 2014                    /s/ Michael J. Lockerby
                                        Michael J. Lockerby
                                        mlockerby@foley.com

                                        *Counsel for Plaintiff*

4825-9472-2076.2