# Exhibit H:

# June 18, 2014 Response to Preservation Letter – IRS Counsel



**U.S. Department of Justice**

**Tax Division**

| | |
|---|---|
| *717 N. Harwood* | *Main Line: 214-880-9721* |
| *Dallas, Texas 75201* | *Attorney's Direct Line: 214-880-9733* |
| *Suite 400* | *Fax: 214-880-9741/9774* |

TWA:MJK:GHartt:dcl
DJ 5-16-4583
CMN 2013101880

June 18, 2014

**VIA ELECTRONIC MAIL**

Ms. Cleta Mitchell
Foley & Lardner LLP
3000 K Street, N.W., Suite 600
Washington, D.C.  20007-5109

Re:   *True the Vote, Inc. v. Internal Revenue Service*
       Civil No. 13-734                    (USDC DC)

Dear Ms. Mitchell:

We have received your letter dated June 16, 2014, related to the so-called spoliation of evidence in the above-referenced case and the preservation obligations of the parties.  We do not believe it to be appropriate or necessary to address your unwarranted attacks on the government and its counsel at this time.  However, in an effort to respond to your questions and concerns, we have enclosed a memo entitled "Description of IRS Email Collection and Production" that was submitted to Congress on June 13, 2014.

Sincerely yours,

*Grover Hartt, III*

GROVER HARTT, III
Senior Litigation Counsel

Enclosure

cc:   Joseph A. Sergi
      Senior Litigation Counsel

      Thomas J. Kane
      Senior Level Counsel, Office of Chief Counsel
      Internal Revenue Service

Exhibit H - Page 1 of 28



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

NATIONAL DIRECTOR
FOR LEGISLATIVE
AFFAIRS

June 13, 2014

The Honorable Ron Wyden          The Honorable Orrin Hatch
Chairman                         Ranking Member
Committee on Finance             Committee on Finance
United States Senate             United States Senate
Washington, DC  20510            Washington, DC  20510

Dear Mr. Chairman and Ranking Member Hatch:

I am writing to provide an update on IRS document productions to Congress.
As of mid-March 2014, the Senate Finance Committee and the House Ways & Means
Committee had received the documents the IRS identified as related to the processing
and review of applications for tax-exempt status as described in the May 2013 report by
the Treasury Inspector General for Tax Administration. *See* Enclosure 1. As my August
29, 2013 letter to you described, in order to produce those documents, we ran agreed
search terms on many (then 77, now 83) custodians' electronic materials, reviewed the
resulting materials for responsive documents, and produced them. *See* Enclosure 2.
Production of those materials identified as responsive from the agreed custodians and
search terms was completed three months ago. *See* Enclosure 1.

The IRS hopes that your investigation can be concluded and the Senate Finance
Committee's report issued in the very near future so that the IRS can then take further
corrective action to address issues, where necessary. Congressional reports are
important to learn from, address, and move beyond the problems and concerns
identified. Your committee's conclusions and recommendations will be a critically
important step in that process.

More than 250 IRS employees have spent over 120,000 hours working on compliance
with several investigations stemming from last May's report related to the processing
and review of applications for tax-exempt status by the Treasury Inspector General for
Tax Administration. We have responded to hundreds of Congressional requests for
information. In so doing, the IRS has incurred a direct cost of nearly $10 million. We
have spent an additional $6-8 million to optimize existing information technology
systems and ensure a stable infrastructure for the production and required redactions to
protect taxpayer information. I have attached a document describing some of the
challenges and limitations that the IRS faced in its production process. *See* Enclosure 3.

Since mid-March, in response to Chairman Dave Camp's request and Chairman Darrell
Issa's subpoena, the IRS has been reviewing and producing all remaining email for
which Lois Lerner was a custodian – regardless of search terms, relevance, or subject

matter. In other words, these Lerner documents are beyond and in addition to the already-produced Lerner materials the IRS identified as related to the processing and review of applications for tax-exempt status, which your Committee had received by mid-March. In addition, as described in Enclosure 3, when unavailable from Ms. Lerner's custodial account, we are producing Lerner-related email (i.e., email on which Ms. Lerner was an author or recipient) from other custodians regardless of subject matter. In certain instances, such as personal conversations between Ms. Lerner and her family regarding health issues, we expect to make the materials available here at the IRS for interested Congressional staff to come review. In all, the IRS has produced or will produce or make available approximately 67,000 emails in which Ms. Lerner was an author or a recipient. As per your staff's request, we will continue to include your committee in our productions until or unless you instruct us otherwise.

Sincerely,

Leonard Oursler

Enclosures (3)

cc: The Honorable Dave Camp, Chairman, House Ways and Means Committee
   The Honorable Sander Levin, Ranking Member, House Ways and Means Committee
   The Honorable Carl Levin, Chairman, Senate Permanent Subcommittee on Investigations
   The Honorable John McCain, Ranking Member, Senate Permanent Subcommittee on Investigations
   The Honorable Darrell Issa, Chairman, House Committee on Oversight and Government Reform
   The Honorable Elijah Cummings, Ranking Member, House Committee on Oversight and Government Reform



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

COMMISSIONER

March 19, 2014

The Honorable Ron Wyden
Chairman, Committee on Finance
United States Senate
Washington, DC  20510

Dear Mr. Chairman:

As I have testified, I believe that oversight is a critically important management tool. We can benefit from insights of those entrusted with the oversight function, including Congressional committees and the Treasury Inspector General for Tax Administration (TIGTA).

Last year, TIGTA issued a report related to the determination process and the processing of applications for tax exempt status, *Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review*. Since then, we have taken substantive corrective actions to address the problems TIGTA had identified. We have:

- Created an expedited approval process for 501(c)(4) organizations that has significantly reduced our backlog
- Established an Accountability Review Board to assess individual employees' conduct and recommend discipline where appropriate
- Installed a new management team in the Exempt Organizations (EO) division
- Developed new training and conducted workshops on a number of critical issues, including the difference between issue advocacy and political campaign intervention, and the proper way to identify applications that require review of political campaign intervention activities
- Established a new process to document the reasons why applications are chosen for further review
- Issued guidelines for EO specialists on how to process requests for tax-exempt status involving potentially significant political campaign intervention
- Created a formal, documented process for EO  determinations personnel to request assistance from technical experts

For the past ten months, we have cooperated with multiple investigations on issues arising from the original TIGTA report. More than 250 IRS employees have spent nearly 100,000 hours working directly on compliance with the investigations -- at a direct cost of nearly $8 million. For our document collection and production, we worked closely with Congressional staff to select the relevant search terms and to identify the 83 custodians whose email was searched. As a result, your committee has:

2

- Interviewed 26 current and former IRS employees
- Received more than 690,000 pages of documents, including
    o Tens of thousands of IRS emails
    o Voluminous IRS training, management, and policy materials
    o Hundreds of case files for specific organizations

As you know, we have a duty to make redactions in order to protect taxpayer information before producing documents to committees that do not have authority under Internal Revenue Code Section 6103 to receive such information. Nonetheless, we have produced hundreds of thousands of redacted pages to those committees as well. In order to review, redact, and produce this volume of materials, we spent an additional $6-8 million to optimize existing information technology systems and provide a stable technology infrastructure to support our production efforts while protecting taxpayer-specific information.

We are transmitting today additional information that we believe completes our production to your committee and the House Ways and Means committee of documents we have identified as related to the processing and review of applications for tax-exempt status as described in the May 2013 TIGTA report. We will make redacted copies of these materials available to other committees as soon as we complete the redactions. We will, of course, continue to work with you and your staff on any follow-up questions that you may have.

In light of these productions, I hope that the investigations can be concluded in the very near future. Once we have the resulting reports, we can then take further corrective action, where necessary. These reports are important for us to learn from, address, and move beyond the problems and concerns identified as a result of the ongoing investigations. Your committee's conclusions and recommendations will be a critically important step in that process.

I look forward to working with you to rebuild taxpayer confidence in the IRS and in its ability to fairly and efficiently administer the nation's tax laws. If you have any questions, please contact me, or a member of your staff can contact Leonard Oursler, Director of Legislative Affairs, at (202) 317-6985.

Sincerely,

John A. Koskinen

cc: The Honorable Orrin Hatch
    Ranking Member, Senate Committee on Finance



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, D.C. 20224**

August 29, 2013

The Honorable Orrin Hatch
Ranking Member
Committee on Finance
United States Senate
Washington, D.C. 20510

Dear Senator Hatch:

I am responding to your request for documents relating to the application process for tax exemption by organizations that may be engaged in political activity. **Our response includes, where appropriate, information requested under IRC section 6103 (f)(1).** By separate letter, I am providing you with information that has IRC section 6103 information redacted.

We are committed to providing you with as complete a response as possible and our full cooperation with you and your staff in addressing this matter.

We are in the process of gathering relevant information responsive to your request. As part of this process, we have directed our document retention and retrieval specialists to perform an electronic data search of the records of all personnel we have identified who may have potentially relevant information. We are conducting this process under the litigation hold procedures detailed in IRS Chief Counsel Notice CC-2012-017. Much of the raw electronically stored information (ESI) requires decryption, which often corrupts files that must be restored manually before the search process can begin. Once we have the decrypted information, it is electronically searched using the terms in attached Appendix A. The resulting material is then reviewed manually to ensure the documents produced by the search terms are responsive to your request.

We are providing this partial response to your request, which consists of documents from multiple custodians, including Lois Lerner, Dave Fish, Steven Miller, Holly Paz, Steven Grodnitzsky, Jonathan Davis, Nikole Flax, and others. The documents are produced from ESI comprised of emails, attachments to emails, and other files not attached to emails ("loose files") that were responsive as described above.

These documents are Bates-stamped IRS0000176970–181055.

In addition to the above-referenced partial response, we are also providing you with documents that are responsive to several specific requests: your staff's request on August 5 for certain targeted subsets of the responsive material in our review database, and a request for documents related to screening workshops held in July 2010. These two requests are explained more fully below.

**IRS Document Request Discussion 8/5/2013**

On August 5, 2013 your staff provided us with a list of ten specific document requests to be identified from the responsive material in our review database.[1]  That list was later supplemented to include an eleventh such request.  Today we are producing the results of the searches conducted to respond to all eleven of these requests, including:

1.  Sensitive Case Report summary chart email. All emails containing the chart, as well as all emails replying to the original message or forwarding it.  These documents are Bates-stamped IRS0000141718–162642.

2.  All communications between the Directors of Rulings &Agreements (Robert Choi, Holly Paz, Dave Fish) to the Director of Exempt Organizations (Lois Lerner) containing or transmitting the Tea Party Sensitive Case Report or a summary of it and all the emails replying or forwarding the report or such summaries.  These documents Bates-stamped IRS0000154624-154647, IRS0000156478-156481, IRS0000156485- IRS0000156488, IRS0000156526-156529, IRS0000156535-156557, IRS0000158405-158416, IRS0000158456-158481, IRS0000159382-159383, IRS0000159426-159445, IRS0000160968-161001.

3.  All communications between Robert Choi, Holly Paz and Dave Fish and Lois Lerner transmitting or discussing Sensitive Case Reports from April 2010 to June 2013.  These documents are Bates-stamped IRS0000162643–163025.

4.  All emails with the Tea Party Sensitive Case Report attached, including all emails replying to or forwarding the original message.  These documents are Bates-stamped IRS0000163026–167868.

5.  Any emails between Steve Grodnitzky and Rob Choi and any emails between either/both of them and Lois Lerner regarding the Tea Party cases.  These documents are Bates-stamped IRS0000167869–167941.

6.  Calendars for Steve Miller, Doug Shulman, William Wilkins, Lois Lerner, Jonathan Davis, Nikole Flax, and any other chiefs of staff.[2]  These documents are Bates-stamped

---

[1] Unless otherwise indicated, we used search terms to identify this material.  We reviewed the results of the term searches to eliminate non-responsive and "false hit" documents.  In addition, we also flagged and have not produced today documents flagged as potentially privileged.  This flag is applied to documents that contain deliberation regarding: draft congressional correspondence; draft congressional testimony; draft questions for the congressional record; draft tax regulations and/or draft tax policy documents; and statutory analysis.  We will conduct a closer review of this material and either produce it, redact certain lines, or provide a summary by category of documents we ultimately conclude contain privileged material that should not be produced.  To date, our review database contains data that we have collected from 77 individuals, who are identified in attached Appendix B.  Other individuals' documents may be added to this database, including the material from any other individuals identified by you or your staff.

[2] As discussed with your staff, we have provided these calendars in Outlook monthly view format.  For some of these individuals, on some days, certain information is not visible.  As we informed your staff, we will both (a) provide fuller views of any particular days at your or their request; and (b) review and provide

IRS0000378201-378440.

7. Emails and calendar entries regarding a February/March/April 2011 meeting between Lois Lerner, Holly Paz and Cindy Thomas regarding the TAG spreadsheet. These documents are Bates-stamped IRS0000167942–168019.

8. Emails between the Office of Chief Counsel and EO Technical in late 2011/early 2012 regarding the guidesheet.[3] These documents are Bates-stamped IRS000054979–71169.

9. A copy of all documents in possession of Holly Paz at time of her interview with the Senate Committee on Finance and the House Committee on Ways and Means.[4] These documents are Bates-stamped IRS0000168020–168131.

10. All emails from or to Lois Lerner, Steve Miller, Doug Shulman, Nikole Flax, William Wilkins and Jonathan Davis that contain the words "tea party" or "advocacy cases" or just "advocacy." These documents are Bates-stamped IRS0000210063 -301111 and IRS0000301158-378200.

11. All emails to/from Lois Lerner from February 2010 to June 2013.[5] These documents are Bates-stamped IRS0000181056-197594, IRS0000197596-198508, IRS0000198510-203694, and IRS0000203696-210062.

### July 2010 Screening Workshop

To locate documents responsive to this request, we searched our database for all documents containing the terms "Screening Workshop." We reviewed the results of the term searches to eliminate non-responsive and "false hit" documents. In addition, we also flagged potentially

---

any responsive information in the calendars as we proceed with our review of these individuals' electronic material. In addition, you will note that for some of these individuals, there is little information prior to 2012. We have been informed that in a broad migration of computer systems from Windows XP to Windows 7, Outlook calendar information from before 2012 was lost. We are gathering and will produce responsive materials from any copies of that material we are able to locate.

[3] We previously produced this material on August 2, 2013.

[4] To respond to this request, we asked Ms. Paz' attorney to provide us with the material in her possession at the time of her interview and are producing today what her attorney provided to us.

[5] We have previously produced materials from Ms. Lerner on July 1, 2013; July 15, 2013; July 22, 2013; July 26, 2013; August 2, 2013; and August 14, 2013. Today's production completes our initial review of her emails. Prior to loading Ms. Lerner's electronic materials into the review database, the search terms at Appendix C -- a set of all terms proposed by congressional staff – were run against it to identify responsive materials, and it was subsequently reviewed manually for responsiveness. In addition, certain documents were flagged at the initial review stage as potentially privileged. We are currently conducting a closer review of these documents and will produce them either in full or with appropriate redactions, along with appropriate explanation, in our next production.

privileged material and will produce it as described in Footnote 1.  These documents are Bates stamped IRS0000168132–176969.

Furthermore, I am also providing you these documents in PDF.

I hope this information is helpful.  If you have any questions, please contact me or have your staff contact me at (202) 622-3724.

Sincerely,

Leonard Oursler
Area Director

## Description of IRS Email Collection and Production

Over the past year, the Internal Revenue Service made a massive document production in response to Congressional and other inquiries. This activity has been challenging since processing email for production to third parties is a more complex process for the IRS than it is for many private or public organizations. Below we analyze why it is so complicated for the agency to respond to what otherwise in this modern day seem like straightforward requests, including an assessment of what is and is not currently possible. Sophisticated IRS information technology systems are designed to facilitate tax administration, cost-effective use of resources, and preserve confidential taxpayer information, not to facilitate matters related to document preservation, collection, processing, and review. The IRS faces unique challenges in producing email to third parties because of how its email is stored, the security required for IRS email, and the laws protecting confidential taxpayer information from disclosure.

## I.  **Background**

Over the past year, four Congressional committees, the Treasury Inspector General for Tax Administration (TIGTA), and the Department of Justice have conducted investigations related to the processing and review of applications for tax-exempt status as described in the May 2013 TIGTA report, *Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review*. Congressional committees and individual members of Congress made hundreds of requests for information related to the issues raised in the TIGTA report.

In response, the IRS undertook an unprecedented document collection and production effort. As requested by investigators, electronic mail was a primary focus of IRS efforts. As of mid-March 2014, the Senate Finance Committee and the House Ways & Means Committee had received documents the IRS had identified as related to the processing and review of applications for tax-exempt status as described in the May 2013 report. Since then, IRS efforts have focused on completing the redaction of those materials for production to other committees and, in response to Congressional requests, production of email (on all topics) involving Lois Lerner, former Director of the Exempt Organizations division at the IRS.

More than 1.3 million pages of material have been produced; 750,000 pages in unredacted form to the Congressional committees authorized to receive taxpayer information protected under Section 6103[1] and another 600,000 pages in redacted format to other committees. None of the IRS systems (e.g., email storage, document collection functions) were designed to facilitate such extensive reviews and productions; as a result, the process required significant human capital and financial resources. More than 250 IRS and Chief Counsel employees have spent over 120,000 hours

---

[1] Under 26 U.S.C. §6103, tax "[r]eturns and return information shall be confidential," and may not be revealed absent statutory authority. Section 6103(f) provides that upon written request by the Chairman of the Senate Finance Committee or the House Ways & Means Committee, the IRS may provide such information to the Chairman's designee(s).

working on compliance with the investigations – at a direct cost of nearly $10 million. Many of these employees worked on the document production and review process to the exclusion of their normal workload for months at a time. The IRS also spent an additional $6-8 million to optimize existing information technology systems and ensure a stable infrastructure for those productions.

## II.     Physical Retention, Collection, and Production of Email

The IRS email system runs on Microsoft Outlook. Each of the Outlook email servers are located at one of three IRS data centers. Approximately 170 terabytes of email (178,000,000 megabytes, representing literally hundreds of millions of emails) are currently stored on those servers. For disaster recovery purposes, the IRS does a daily back-up of its email servers. The daily back-up provides a snapshot of the contents of all email boxes as of the date and time of the backup. Prior to May 2013, these backups were retained on tape for six months, and then for cost-efficiency, the backup tapes were released for re-use. In May of last year, the IRS changed its policy and began storing rather than recycling its backup tapes.[2]

### A.  Email Preservation

In late May 2013 and early June 2013, the IRS sent document retention notices to employees identified as having documents (including email) potentially relevant to the investigations. These notices instructed employees not to alter or destroy:

> all communications, documents drafted or reviewed,
> spreadsheets created or reviewed, notes from meetings,
> notes relating to specific taxpayers and/or applications,
> information requests to applicants, training materials, or any
> other items that relate to the process by which selection
> criteria were used to identify tax-exempt applications for
> advocacy organizations for review, including but not limited
> to Be On the Look Out, from January 1, 2008 to the present.[3]

In that same time frame, the IRS sent similar document retention notices to all employees in the IRS Tax Exempt and Government Entities function and its Chief Counsel counterpart; the IRS Communications and Liaison function; and all employees assigned to respond to the Congressional inquiries.

### B.  Employees' Email Storage

The IRS has approximately 90,000 employees. Due to financial and practical considerations, the IRS has limited the total volume of email stored on its server by restricting the amount of email most individual users can keep in an inbox at any given time. This is not an uncommon practice within the government or the private sector.

---

[2] This practice of retaining rather than recycling tapes is estimated to cost approximately $200,000 annually.
[3] Litigation Hold, Attachment A.

2

According to estimates, it would cost well over ten million dollars to upgrade the IRS information technology infrastructure in order to save and store all email ever sent or received by the approximately 90,000 current IRS employees.

Currently, the average individual employee's email box limit is 500 megabytes, which translates to approximately 6,000 emails. *See* Attachment B.  Prior to July 2011, the limit was lower, 150 megabytes or roughly 1,800 emails. *See* Attachment C. The IRS does not automatically delete email in its employees' email account to meet these limits; rather, each employee is responsible for managing and prioritizing the information stored within his/her email box.

Historically, the email of IRS employees is stored in two locations – email in an individual's active email box and therefore saved on the IRS centralized network and email archived on the individual employee's computer hard drive.[4] If an email user's mailbox gets close to capacity, the system sends a message to the user noting that soon the mailbox will become unable to send additional messages.

When a user needs to create space in his or her email box, the user has the option of either deleting emails (that do not qualify as official records) or moving them out of the active email box (inbox, sent items, deleted items) to an archive. In addition, if an email qualifies as an official record, per IRS policy, the email must be printed and placed in the appropriate file by the employee.[5] Archived email is moved off the IRS email server and onto the employee's hard drive on the employee's individual computer. As a result, these IRS employees' emails no longer exist in the active email box of the employee and are not backed-up as part of the daily backup of the email servers. Email moved to a personal archive of an employee exists only on the individual employee's hard drive. An electronic version of the archived email would not be retained if an employee's hard drive is recycled or if the hard drive crashes and cannot be recovered.

## C. Email Collection

There have been questions from third parties about the speed of the review and production of IRS email materials; it is therefore important to understand the features of the IRS email system that make the process difficult and time-consuming. As noted above, the IRS has approximately 90,000 employees, each of whom conceivably could have responsive electronic data to any given request. There is no mechanism to allow IRS to search across its entire email system. To gather email from IRS employees, each potential custodian's mailbox and hard drive must be individually collected.

---

[4] The approximately 2,000 IRS Counsel employees (as opposed to IRS employees) have a system that allows archived email to be stored on a central drive.

[5] An official "record" is any documentary material made or received by an agency under federal law or in connection with the transaction of public business and appropriate for preservation (44 U.S.C. § 3301).  Not all of the emails on IRS servers or backup tapes qualify as official records; accordingly, the agency's email system does not retain all email indefinitely. Rather, individual employees are responsible for ensuring that any email in their possession that qualifies as a "record" is retained in accordance with the requirements in the Internal Revenue Manual (IRM) and Document 12990 (Record Control Schedules).

Collecting from a hard drive involves an Information Technology employee taking physical possession of the computer and copying the contents of the computer's hard drive. These collection efforts are inherently labor-intensive and time-consuming.

The technology used by the IRS does not permit the IRS to select identifiable emails or groups of emails relating to a particular matter from a particular employee. Instead, all of an employee's email must be collected to start the processing function and limited, if at all, later in the processing function by date restrictions and search terms.

The technology used by the IRS also does not permit the IRS to search the network across multiple employees' email in connection with a particular matter. Similarly, it is impossible currently to search all IRS employees' accounts for email to a particular domain. As a result, to find literally "all email" in the custody and control of IRS on a given topic or to a particular domain (e.g., a specific government agency), every single employee's email would need to be individually collected, then processed and reviewed for responsive material.

### D. Email Processing

After an employee's email is collected, it needs to be processed and properly formatted so that it can be searched and analyzed for content potentially responsive to a particular request for information. This typically involves "flattening" the email message to make it readable by, for example, an eDiscovery platform tool. This also involves decrypting the email message – for security and privacy reasons, much of IRS email is encrypted when sent. In order to decrypt an email message, the system must use the individual custodian's encryption certificate and multiple reprocessing steps, so that the email can be readable using an eDiscovery platform tool. Once properly flattened and decrypted, email can be loaded onto an eDiscovery platform tool, where it can be searched using search terms and/or date limitations when appropriate. At this point, the materials are ready for review.

### E. Email Review and Redaction to Protect Taxpayer Information

The final step before email can be produced involves identifying the relevant materials and taking steps where necessary to protect confidential taxpayer return information. In the course of our productions, the IRS has reviewed and produced email collected from 83 custodians. The IRS has a unique responsibility to protect confidential taxpayer information as required by I.R.C. § 6103.[6] All emails that might contain statutorily protected information must be reviewed and if necessary redacted.

Because when an email is sent it then exists in the author's and all recipients' email boxes, multiple copies of any one email occur frequently in document review. Although the IRS eDiscovery platform tool has a feature that eliminates certain duplicate emails before they are produced to a third party, the "deduping" feature only eliminates

---

[6] Taxpayers may have a civil cause of action when these taxpayer confidentiality rules are violated and IRS employees may be subject to disciplinary action and criminal penalties if they violate these rules.

duplicate emails that are virtually identical in every respect. A slight variance in the information contained in one email versus another, e.g., the time sent and the time received, results in the emails being treated as unique documents, which translates into increased review and processing times and added volume of documents produced to a third party.

## III.    Investigations' Requests and IRS Production

The Congressional committees investigating issues raised in the May 2013 TIGTA report requested a broad array of materials, with date ranges that span multiple years (e.g., from 2009 through mid-2013). As outlined in the attached August 29, 2013 letter,[7] the IRS collaborated with Congressional staff to select search terms and custodians with the goal of gathering and producing information as prioritized by Congress. This document production effort has involved hundreds of people, hundreds of thousands of hours, and millions of dollars.

The IRS followed the process described above in preserving, collecting, processing, and reviewing material in response to Congressional requests related to the processing and review of applications for tax-exempt status as described in the May 2013 TIGTA report. The IRS completed a search of 83 custodians' email using specifically identified search terms, and reviewed the results for responsiveness and for confidential taxpayer information. When email was responsive, it was produced and redacted when required by Section 6103.

Generally, the IRS produced all documents to all six investigations. There are situations, however, in which materials were produced only to investigators with authority to see information protected by Section 6103. One such situation relates to taxpayer files, which are protected in their entirety. Another is a collection of Excel spreadsheets and associated documents that were produced in native format, which format cannot be redacted for Section 6103 material.

In responding to the investigations, the IRS has not withheld relevant documents on the grounds of privilege.

Many times over the course of the year, different committees expressed interest in specific people, time periods, or events. The IRS did its best to accommodate these requests and expedite material in the priority set by investigators. In early 2014, Chairmen Camp and Issa reiterated their requests for all of Lois Lerner's email, regardless of subject matter. Because of Ms. Lerner's unavailability for Congressional interviews and in response to the Chairmen's requests, the IRS agreed to produce or make available for Congressional review all of her email.

Fulfilling the request for Ms. Lerner's emails regardless of subject matter required the IRS to load additional email beyond the email responsive to search terms originally

---

[7] Attachment D, Leonard Oursler August 29, 2013 letter to Senator Baucus, also sent to Senators Hatch, Levin, and McCain and Congressmen Camp, Levin, Issa, and Cummings.

loaded for review from Ms. Lerner's custodial email box. By mid-March, IRS had produced to the tax-writing committees the Lerner-related (and other) materials it had identified as related to the processing and review of applications for tax-exempt status as described in the May 2013 TIGTA report.[8] IRS then focused on redacting materials for the non-taxwriters and processing the rest of Ms. Lerner's email for production.

Ms. Lerner's emails were subject to the same preservation and collection process as other materials that the IRS produced to investigators.[9] The IRS put Ms. Lerner on administrative leave as of May 23, 2013, at which date she was no longer permitted to access her computer or blackberry. On September 23, 2013 Ms. Lerner separated from the Service.

The electronic data collection for Ms. Lerner's custodial email was completed on May 22, 2013. According to personnel involved in the collection of Ms. Lerner's email, the materials on Ms. Lerner's computer were successfully captured in the data collection process.[10] All of the email from 2009 through 2013 that the IRS collected from Ms. Lerner's computer has or will be produced or made available to Congressional investigators.

As part of the IRS production of materials related to the TIGTA report, email from Ms. Lerner's email box and hard drive previously had been processed using search terms. By mid-March 2014 almost 8,000 such emails from Ms. Lerner's computer and mailbox had been produced in unredacted form. Another 3,000 emails involving Ms. Lerner (as author or recipient) from other custodians also had been produced in unredacted form, for a total of approximately 11,000 produced emails involving Ms. Lerner and related to the TIGTA report.

Producing email regardless of relevance required reprocessing what had been collected from Ms. Lerner so that the email reviewed and produced was no longer limited by search terms or subject matter. As the IRS reviewed Ms. Lerner's email for production and prepared to produce to investigators the balance of 2009-2013 materials from Ms. Lerner's custodial email account (unlimited by subject matter or search terms), it determined that her custodial email (from her email box and hard drive) contains very few emails prior to April 2011, while the number of Ms. Lerner's custodial emails dated after April 2011 is more voluminous. In total, more than 43,000 Lerner custodial emails exist between January 1, 2009 and May 22, 2013, all of which have been or will be produced.

---

[8] The IRS also assisted Ms. Lerner's attorneys in identifying and redacting Section 6103 information on documents located on her personal home computer and email on her personal email account.

[9] On May 16, 2013, the IRS Chief Counsel's office sent Ms. Lerner (and many others) a litigation hold notice instructing her not to alter or destroy: "all communications, documents drafted or reviewed, spreadsheets created or reviewed, notes from meetings, notes relating to specific taxpayers and/or applications, information requests to applicants, training materials, or any other items that relate to the process by which selection criteria were used to identify tax-exempt applications for advocacy organizations for review, including but not limited to Be On the Look Out, from January 1, 2008 to the present." Litigation Hold, Attachment A.

[10] TIGTA currently has custody of Ms. Lerner's computer.

Although the IRS is unable to interview Ms. Lerner to learn more, the IRS has determined that Ms. Lerner's computer crashed in mid-2011. *See* Attachment E. At that time, the IRS Information Technology Division tried -- at Ms. Lerner's request -- multiple processes to recover the information stored on her computer's hard drive. However, the data stored on her computer's hard drive was determined at the time to be "unrecoverable" by the IT professionals. Attachment F. Any of Ms. Lerner's email that was only stored on that computer's hard drive would have been lost when the hard drive crashed and could not be recovered.

In order to produce as much email on which Ms. Lerner was an author or recipient as possible, the IRS:

- Retraced the collection process for Ms. Lerner's computer to determine that all materials available in May 2013 were collected;
- Located, processed, and included in its production email from an earlier 2011 data collection of Ms. Lerner's email;
- Confirmed that back-up tapes from 2011 no longer exist because they have been recycled (which not uncommon for large organizations in both the private and public sectors);
- Searched email from other custodians for material on which Ms. Lerner appears as an author or recipient, then produced such email.

As a result of these efforts, the IRS identified approximately 24,000 Lerner-related emails between January 1, 2009 and April 2011 in addition to those related to the processing and review of applications for tax-exempt status as described in the May 2013 TIGTA report, which have already been produced. All such emails have been or will be produced or made available to Congressional committees. In total, Congressional committees have received or will receive more than 67,000 emails in which Ms. Lerner was an author or a recipient.

## IV.    Conclusion

The Internal Revenue Service has never before undertaken a document production of this size and scope. Hundreds of employees spent thousands of hours locating, processing, reviewing, and redacting documents for the Congressional Committees and other investigators. Because of how the IRS maintains and stores its email, certain challenges were inherent in the process and we have addressed those challenges in as comprehensive a manner as possible.

**From:** Melcher Glenn J
**Sent:** Thursday, May 16, 2013 5:57 PM
**To:**

Lerner Lois G;

**Subject:** IMPORTANT LITIGATION HOLD NOTICE

**Importance:** High

**Categories:** NUUU

You are receiving this e-mail because you have been identified as a person who may have information potentially relevant to a TIGTA audit of criteria used to identify tax-exempt applications for review in which litigation is reasonably anticipated.

Information relevant to this matter will include all communications, documents drafted or reviewed, spreadsheets created or reviewed, notes from meetings, notes relating to specific taxpayers and/or applications, information requests to applicants, training materials, or any other items that relate to the process by which selection criteria were used to identify tax-exempt applications for advocacy organizations for review, including but not limited to Be On the Look Out, from January 1, 2008 to the present.

Under the Federal Rules of Civil Procedure, the Service has an obligation to search, identify, preserve, and isolate all paper records and electronically stored information (ESI) potentially relevant to the above-described matter. Generally, ESI includes, but is not limited to: all e-mail and attachments; word processing documents, spreadsheets, graphics and presentation documents, images, text files, and other information stored on hard drives or removable media (e.g., desktops, portable thumb drives and CDs), meta-data, databases, instant messages, transaction logs, audio and video files, voicemail, webpages, computer logs, text messages, and backup and archived material.

**Although we do not need you to gather the ESI at this time, please ensure that steps are put in place so that both ESI information and any paper documents are preserved and not deleted. You may already have been contacted by IRS IT to begin the preservation process but that does not change your obligations to preserve information and to respond to this email. Under no circumstances should ESI information or paper documents be destroyed until this matter is completed or a litigation hold is lifted.**

Please provide an e-mail response to this e-mail **within five business days.** In that e-mail, please also provide your SEID and indicate whether you created ESI of the following types while working on anything related to this matter.

1

Attachment A

1       E-mail and attachments

2.       Microsoft Office Suite documents (e.g., Word documents, Excel spreadsheets, PowerPoint presentations)

3.       ESI maintained in any other program, application, system or database – please specify.

Please indicate in the e-mail the timeframe during which the ESI was created and your post of duty at the time you created the ESI.  If you maintain a particular folder in your e-mail box or in your document folders related to this matter, please include the name of the folder(s) in your e-mail.  Also, please indicate whether any of the ESI is maintained offline, that is, on any external drive or storage device (e.g., CDs or flash drives).  If you have Grand Jury information of any kind on your computer or other storage device, please note that in your response.

Also provide a brief description of the paper files or documents you have related to this case and an estimate of the quantity of such paper files or documents, if any.

Once located, the ESI needs to be preserved and isolated.  Preservation of ESI means that the ESI cannot be altered or destroyed and must be maintained in its native format throughout the duration of this matter.  This means that all normal retention schedules related to the ESI have been suspended until such time as the ESI is isolated.  ESI is isolated when a mirror image of the ESI in its native format is created and moved to a separate drive, CD, or server for storage for the duration of the litigation.  This office will coordinate with the Service's IT personnel to have your ESI isolated and preserved.  You should expect IT personnel to need access to your computer and any removable storage devices when they collect the ESI.  In the meantime, do not alter or destroy the ESI.  The destruction of ESI could result in judicial sanctions against the agency.  This office also will coordinate the collection of any related paper documents you may have.

In the event you received this e-mail and, after a search of your records, you determine that you were not involved in any way in this matter, please provide an e-mail response to this e-mail **within five business days** informing the sender you were not involved in the subject matter described above.   .

If you have questions related to this e-mail, please contact the undersigned immediately.

Glenn J. Melcher
Special Counsel for E-Discovery
IRS Office of Chief Counsel
(Procedure and Administration)
Telephone: 202-622-2366
Glenn.J.Melcher@irscounsel.treas.gov

Exhibit H - Page 18 of 28



Skip Navigational Links

1 -> 1.10 -> 1.10.3

### 1.10.3-1     Reducing the Size of Your Mailbox
(07/08/2011)

The Secure Enterprise Messaging system (SEMS) establishes a standard size
of 500 MB (500 megabytes) for individual mailboxes. The system mails you
daily warning messages that the limit is being approached when your
mailbox reaches a size of 475 MB. When it exceeds the 500 MB limit, you
will receive the following warning each time you attempt to send a message:

- "You have exceeded your storage limit on your mailbox ".
- Delete some mail from your mailbox or contact your system
  administrator to adjust your storage limit. (Consider whether any of the
  items you want to delete may be a federal record. IRM 1.10.3.3.2
  above.)

It is not the practice of the SEMS staff to adjust any individual mailbox
storage limits, but rather to provide guidance on reducing the size of the
contents. The Outlook Help menu provides instructions for enabling and
configuring both Auto-archiving and Rules to manage mail and mailbox
folders to maintain proper storage limits.



## Standards for Using E-mail   1.10.3

**Exhibit 1.10.3-1 (02-20-2009)**
**Reducing the Size of Your Mailbox**

The Secure Enterprise Messaging system (SEMS) establishes a standard size of 150 MB (150 megabytes) for individual mailboxes. The system mails you daily warning messages that the limit is being approached when your mailbox reaches a size of 120 MB. When it exceeds the 150 MB limit, you will receive the following warning each time you attempt to send a message:

- "You have exceeded your storage limit on your mailbox".
- Delete some mail from your mailbox or contact your system administrator to adjust your storage limit. (Consider whether any of the items you want to delete may be a Federal Record. See IRM 1.10.3.3.2 above.)

It is not the practice of the SEMS staff to adjust any individual mailbox storage limits, but rather to provide guidance on how to reduce the size of the contents. Outlook help provides instructions for enabling and config-uring both Auto-archiving and Rules to manage mail and mailbox folders to maintain proper storage limits.



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

August 29, 2013

The Honorable Orrin Hatch
Ranking Member
Committee on Finance
United States Senate
Washington, D.C. 20510

Dear Senator Hatch:

I am responding to your request for documents relating to the application process for tax exemption by organizations that may be engaged in political activity.  **Our response includes, where appropriate, information requested under IRC section 6103 (f)(1).**  By separate letter, I am providing you with information that has IRC section 6103 information redacted.

We are committed to providing you with as complete a response as possible and our full cooperation with you and your staff in addressing this matter.

We are in the process of gathering relevant information responsive to your request. As part of this process, we have directed our document retention and retrieval specialists to perform an electronic data search of the records of all personnel we have identified who may have potentially relevant information. We are conducting this process under the litigation hold procedures detailed in IRS Chief Counsel Notice CC-2012-017. Much of the raw electronically stored information (ESI) requires decryption, which often corrupts files that must be restored manually before the search process can begin. Once we have the decrypted information, it is electronically searched using the terms in attached Appendix A. The resulting material is then reviewed manually to ensure the documents produced by the search terms are responsive to your request.

We are providing this partial response to your request, which consists of documents from multiple custodians, including Lois Lerner, Dave Fish, Steven Miller, Holly Paz, Steven Grodnitzsky, Jonathan Davis, Nikole Flax, and others.  The documents are produced from ESI comprised of emails, attachments to emails, and other files not attached to emails ("loose files") that were responsive as described above.

These documents are Bates-stamped IRS0000176970–181055.

In addition to the above-referenced partial response, we are also providing you with documents that are responsive to several specific requests: your staff's request on August 5 for certain targeted subsets of the responsive material in our review database, and a request for documents related to screening workshops held in July 2010.  These two requests are explained more fully below.

**IRS Document Request Discussion 8/5/2013**

On August 5, 2013 your staff provided us with a list of ten specific document requests to be identified from the responsive material in our review database.[1] That list was later supplemented to include an eleventh such request. Today we are producing the results of the searches conducted to respond to all eleven of these requests, including:

1. Sensitive Case Report summary chart email. All emails containing the chart, as well as all emails replying to the original message or forwarding it. These documents are Bates-stamped IRS0000141718–162642.

2. All communications between the Directors of Rulings &Agreements (Robert Choi, Holly Paz, Dave Fish) to the Director of Exempt Organizations (Lois Lerner) containing or transmitting the Tea Party Sensitive Case Report or a summary of it and all the emails replying or forwarding the report or such summaries. These documents Bates-stamped IRS0000154624-154647, IRS0000156478-156481, IRS0000156485- IRS0000156488, IRS0000156526-156529, IRS0000156535-156557, IRS0000158405-158416, IRS0000158456-158481, IRS0000159382-159383, IRS0000159426-159445, IRS0000160968-161001.

3. All communications between Robert Choi, Holly Paz and Dave Fish and Lois Lerner transmitting or discussing Sensitive Case Reports from April 2010 to June 2013. These documents are Bates-stamped IRS0000162643–163025.

4. All emails with the Tea Party Sensitive Case Report attached, including all emails replying to or forwarding the original message. These documents are Bates-stamped IRS0000163026–167868.

5. Any emails between Steve Grodnitzky and Rob Choi and any emails between either/both of them and Lois Lerner regarding the Tea Party cases. These documents are Bates-stamped IRS0000167869–167941.

6. Calendars for Steve Miller, Doug Shulman, William Wilkins, Lois Lerner, Jonathan Davis, Nikole Flax, and any other chiefs of staff.[2] These documents are Bates-stamped

---

[1] Unless otherwise indicated, we used search terms to identify this material. We reviewed the results of the term searches to eliminate non-responsive and "false hit" documents. In addition, we also flagged and have not produced today documents flagged as potentially privileged. This flag is applied to documents that contain deliberation regarding: draft congressional correspondence; draft congressional testimony; draft questions for the congressional record; draft tax regulations and/or draft tax policy documents; and statutory analysis. We will conduct a closer review of this material and either produce it, redact certain lines, or provide a summary by category of documents we ultimately conclude contain privileged material that should not be produced. To date, our review database contains data that we have collected from 77 individuals, who are identified in attached Appendix B. Other individuals' documents may be added to this database, including the material from any other individuals identified by you or your staff.

[2] As discussed with your staff, we have provided these calendars in Outlook monthly view format. For some of these individuals, on some days, certain information is not visible. As we informed your staff, we will both (a) provide fuller views of any particular days at your or their request; and (b) review and provide

IRS0000378201-378440.

7.  Emails and calendar entries regarding a February/March/April 2011 meeting between Lois Lerner, Holly Paz and Cindy Thomas regarding the TAG spreadsheet.  These documents are Bates-stamped IRS0000167942–168019.

8.  Emails between the Office of Chief Counsel and EO Technical in late 2011/early 2012 regarding the guidesheet.[3]  These documents are Bates-stamped IRS000054979–71169.

9.  A copy of all documents in possession of Holly Paz at time of her interview with the Senate Committee on Finance and the House Committee on Ways and Means.[4]  These documents are Bates-stamped IRS0000168020–168131.

10.  All emails from or to Lois Lerner, Steve Miller, Doug Shulman, Nikole Flax, William Wilkins and Jonathan Davis that  contain the words "tea party" or "advocacy cases" or just "advocacy."  These documents are Bates-stamped IRS0000210063 -301111 and IRS0000301158-378200.

11.  All emails to/from Lois Lerner from February 2010 to June 2013.[5]  These documents are Bates-stamped IRS0000181056-197594, IRS0000197596-198508, IRS0000198510-203694, and IRS0000203696-210062.


**July 2010 Screening Workshop**

To locate documents responsive to this request, we searched our database for all documents containing the terms "Screening Workshop."  We reviewed the results of the term searches to eliminate non-responsive and "false hit" documents.  In addition, we also flagged potentially

---

any responsive information in the calendars as we proceed with our review of these individuals' electronic material.  In addition, you will note that for some of these individuals, there is little information prior to 2012.  We have been informed that in a broad migration of computer systems from Windows XP to Windows 7, Outlook calendar information from before 2012 was lost.  We are gathering and will produce responsive materials from any copies of that material we are able to locate.

[3] We previously produced this material on August 2, 2013.

[4] To respond to this request, we asked Ms. Paz' attorney to provide us with the material in her possession at the time of her interview and are producing today what her attorney provided to us.

[5] We have previously produced materials from Ms. Lerner on July 1, 2013; July 15, 2013; July 22, 2013; July 26, 2013; August 2, 2013; and August 14, 2013.  Today's production completes our initial review of her emails.  Prior to loading Ms. Lerner's electronic materials into the review database, the search terms at Appendix C -- a set of all terms proposed by congressional staff – were run against it to identify responsive materials, and it was subsequently reviewed manually for responsiveness.  In addition, certain documents were flagged at the initial review stage as potentially privileged.  We are currently conducting a closer review of these documents and will produce them either in full or with appropriate redactions, along with appropriate explanation, in our next production.

privileged material and will produce it as described in Footnote 1.  These documents are Bates stamped IRS0000168132–176969.

Furthermore, I am also providing you these documents in PDF.

I hope this information is helpful.  If you have any questions, please contact me or have your staff contact me at (202) 622-3724.

Sincerely,

Leonard Oursler
Area Director

| **From:** | Douglas Akaisha |
|---|---|
| **Sent:** | Monday, June 13, 2011 10:19 AM |
| **To:** | Grant Joseph H; Medina Moises C; &TEGE:EO 1750 Penn Ees |
| **Cc:** | Cook Janine; Marks Nancy J; Livingston Catherine E; Ingram Sarah H; Flax Nikole C; Holland Tiwana M; Lemons Terry L; Siereveld Brett L; Teser Cheryl A |
| **Subject:** | LOIS LERNER HARD DRIVE CRASH |

Lois' hard drive has crashed on her computer and will be without email.  If you need to contact Lois please call her at 202-283-8848.  For immediate attention, contact Akaisha Douglas at 202-283-9488.

Akaisha Douglas
IRS, Exempt Organizations
202-283-9488

| | |
|---|---|
| **From:** | Lerner Lois G |
| **Sent:** | Saturday, August 06, 2011 7:49 PM |
| **To:** | Wilburn Lillie V |
| **Cc:** | Letourneau Diane L; Froehlich Carl T |
| **Subject:** | Re: Careful What You Ask For - UPDATE |

Thanks for trying. I really do appreciate the effort. Sometimes stuff just happens.
Lois G. Lerner--------------------------
Sent from my BlackBerry Wireless Handheld

**From:** Wilburn Lillie V
**Sent:** Friday, August 05, 2011 07:38 PM
**To:** Lerner Lois G
**Cc:** Letourneau Diane L; Froehlich Carl T
**Subject:** Re: Careful What You Ask For - UPDATE

Hello Ms Lerner, I was just about to send you an update.

Unfortunately the news is not good. The sectors on the hard drive were bad which made your data unrecover able.

I am very sorry. Everyone involved tried their best.


Lillie Wilburn
Field Director, HQ CSSC
202-302-4160
--------------------------
Sent using BlackBerry

**From:** Lerner Lois G
**Sent:** Friday, August 05, 2011 07:06 PM
**To:** Wilburn Lillie V
**Cc:** Letourneau Diane L; Froehlich Carl T
**Subject:** RE: Careful What You Ask For - UPDATE

## Thanks!  just saw this--any further word/

*Lois G. Lerner*
Director of Exempt Organizations


**From:** Wilburn Lillie V
**Sent:** Monday, August 01, 2011 7:57 PM
**To:** Lerner Lois G

1

Exhibit 11 - Page 26 of 28
Attachment P

**Cc:** Letourneau Diane L; Froehlich Carl T
**Subject:** RE: Careful What You Ask For  - UPDATE

Ms Lerner,

As a last resort, we sent your hard drive to CI's forensic  lab to attempt data recovery.    The CI tech working on the recovery is unexpectedly out until Aug 3rd and promised to update  me when he returns.

I will send you a status on Friday morning.


# Lillie V. Wilburn

Field Director, Headquarters CSSC
Customer Service Support
Information Technology Division
OS:CTO:EU:C:HQ
Desk:   202-622-0732
Mobile:  202-302-4160
Fax:      202-622-8873
lillie.wilburn@irs.gov

**From:** Lerner Lois G
**Sent:** Wednesday, July 20, 2011 4: 40 PM
**To:** Wilburn Lillie V
**Cc:** Letourneau Diane L; Froehlich Carl T
**Subject:** RE: Careful What You Ask For

**Thanks for the update--I'll keep my fingers crossed**

*Lois G. Lerner*
Director of Exempt Organizations


**From:** Wilburn Lillie V
**Sent:** Wednesday, July 20, 2011 12:10 PM
**To:** Lerner Lois G
**Cc:** Letourneau Diane L; Froehlich Carl T
**Subject:** RE: Careful What You Ask For

Ms. Lerner,

I checked with the technician and he still has your drive.    He wanted to exhaust all avenues to recover the data before sending it to the "hard drive cemetery."    Unfortunately, after receiving assistance from  several highly skilled technicians including HP experts, he still cannot recover  the data.

I do have one other possibility that I am looking into and I hope to update you on the progress  soon.

# Lillie V. Wilburn

Field Director, Headquarters CSSC
Customer Service Support
Information Technology Division

2

OS:CTO:EU:C:HQ
Desk:    202-622-0732
Mobile:  202-302-4160
Fax:      202-622-8873
lillie.wilburn@irs.gov

**From:** Lerner Lois G
**Sent:** Wednesday, July 20, 2011 10:46 AM
**To:** Froehlich Carl T
**Cc:** Letourneau Diane L; Wilburn Lillie V
**Subject:** RE: Careful What You Ask For

**We can only try--but it may be too late--don't they send them off to the hard drive
cemetery?  In any event, thanks to all.**

*Lois J. Lerner*
Director of Exempt Organizations

**From:** Froehlich Carl T
**Sent:** Tuesday, July 19, 2011 6:43 PM
**To:** Lerner Lois G
**Cc:** Letourneau Diane L; Wilburn Lillie V
**Subject:** Re: Careful What You Ask For

Lois,

Lillie Wilburn will call Diane in the morning. If she can't fix it nobody can.

Carl

**From:** Lerner Lois G
**Sent:** Tuesday, July 19, 2011 05:21 PM
**To:** Froehlich Carl T
**Cc:** Letourneau Diane L
**Subject:** Careful What You Ask For

**It was nice to meet you this morning --although I would have preferred it was under different
circumstances. I'm taking advantage of your offer to try and recapture my lost personal
files.  My computer skills are pretty basic, so nothing fancy --but there were some documents
in the files that are irreplaceable.  Whatever you can do to help, is greatly appreciated.  I've
cced my exec assistant.  It's always a good idea to include her emails to me because she gets
to my emails far faster than I do.  Thanks!**

*Lois J. Lerner*
Director of Exempt Organizations