## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUE THE VOTE, INC.          ) | |
|          ) | |
|     Plaintiff,          ) | |
|          ) | |
|     v.          ) | Civil Action No. 1:13-cv-00734-RBW |
|          ) | |
| UNITED STATES OF AMERICA, *et al.*,  ) | |
|          ) | |
|     Defendants.          ) | |

## UNITED STATES' RESPONSE OPPOSING
## TRUE THE VOTE'S MOTION FOR
## PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

TAMARA W. ASHFORD
Acting Assistant Attorney General, Tax Division

GROVER HARTT, III (TX 09174500)
Senior Litigation Counsel
CHRISTOPHER R. EGAN (TX 24036516)
Trial Attorney
U.S. Department of Justice, Tax Division
717 N. Harwood Street, Suite 400
Dallas, Texas  75201
(214) 880-9733; (214) 880-9741 (FAX)
Grover.Hartt@usdoj.gov

JOSEPH A. SERGI (DC 480837)
Senior Litigation Counsel
U.S. Department of Justice, Tax Division
555 4th Street, N.W., JCB 7207
Washington, D.C.  20001
(202) 305-0868; (202) 307-2504 (FAX)
Joseph.A.Sergi@usdoj.gov

JENNIFER D. AUCHTERLONIE (WA 29481)
LAURA C. BECKERMAN (CA 278490)
CHRISTOPHER D. BELEN (VA 78281)

LAURA M. CONNER (VA 40388)
JEREMY N. HENDON (OR 982490)
PHILIP M. SCHREIBER (DC 502714)
Trial Attorneys
U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C.  20001
(202) 514-2000

**TAMARA W. ASHFORD**
<u>**Acting United States Attorney**</u>
July 2014

## TABLE OF CONTENTS

A.   Plaintiff Has Not Shown the Elements Required for Injunctive Relief . . . . . . . . . . . . . .  2

  1.   Plaintiff Has Not Shown a Likelihood of Injury: the IRS Has Taken Reasonable
       Steps to Preserve All Relevant Evidence and No Spoliation Has Occurred . . . . .  2
         a.   The IRS has properly preserved evidence relevant to this case's claims and
              defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
         b.   The evidence shows that no spoliation has occurred . . . . . . . . . . . . . . . . .  5
         c.   In similar cases where the movant cannot show imminent danger of
              evidence destruction, courts have refused to impose preservation
              injunctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
  2.   Plaintiff's Requested Injunction Will Harm Others and Harm the Public
       Interest by Violating 26 U.S.C. § 6103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

  3.   Plaintiff Has Not Shown that it is Likely to Succeed on the Merits . . . . . . . . . .  14

B.   Plaintiff's Early Discovery Would Consume Extraordinary Resources Without
     Providing any Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

  1.   Plaintiff Has Shown No Danger of Evidence Destruction . . . . . . . . . . . . . . . . .  16
  2.   The Burden Imposed by Plaintiff's Requested Discovery Violates Proportionality
       Requirements in the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . .  16
  3.   Plaintiff is Not Likely to Succeed on the Merits . . . . . . . . . . . . . . . . . . . . . . . . .  19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

## TABLE OF AUTHORITIES

**Cases:**

*Balfour Beatty Rail, Inc. v. Vaccarello*, 3:06-CV-551-J-20MCR, 2007 WL 169628, *3
(M.D. Fla. Jan 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) . . . . . . . 2
*City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 127 (D.D.C. 2006) . . . . . . . . 2
*Citizens United v. FEC*, 530 F. Supp.2d 274, 278 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 2
*Clarke v. Washington Metro. Area Transit Auth.*, 904 F. Supp. 2nd 11, 19-20 (D.D.C. 2012) . . 5,6
*Consolidated Edison Company v. United States*, 90 Fed. Cl. 228, 258 (2009) . . . . . . . . . . . . . . 7
*Davis v. Billington*, 2014 WL 2888679, *15 n.5 (D.D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Faith Satellite Radio, LLC v. Lutheran Church Missouri Synod*, CIV.A. 10-1373,
2010 WL 3909467 (D.D.C. Oct. 4, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Gerlich v. Department of Justice*, 711 F.3d 161, 171 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . 6
*In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*It's a 10, Inc. V. Beauty Elite Group, Inc.*, 932 F. Supp. 2d 1325, 1335 (S.D. Fla. 2013) . . . . . . 9
*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,19
*Kissinger v. Reports Committee for Freedom of the Press*, 445 U.S. 136, 148-150(1980) . . . . . 6
*Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Lehrfeld v. Richardson*, 954 F. Supp. 9 (D.D.C. 1996), aff'd, 132 F.3d 1463 . . . . . . . . . . . . . 12
*Rossi v. United States*, Case No. 11-12576, 2013 WL 7137774 (E.D. Mich. May 2, 2013) . . . . . 7
*Spadone v. McHugh*, 842 F.Supp. 2d 592, 300 (D.DC. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Spencer Trask Software & Info. Servs., LLC v. Rpost Int'l Ltd.*,
206 F.R.D. 367 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85 (D. Conn. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 18
*United Air Lines, Inc. V. United States*, 26 F.R.D. 213, 219 (D. Del. 1960) . . . . . . . . . . . . . . . 16
*United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 497-498 (2001) . . . . . 11
*United States v. Sum of $70,990,605*, 2013 U.S. Dist. LEXIS 167158, at *10, *38-*39
(D.D.C. Nov. 25, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,9,10
*Windsor v. United States*, 379 Fed. Appx. 912, 916 (11th Cir. Ga 2010) . . . . . . . . . . . . . . . . . . 9
*Wis. Gas Co. V. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Zhi Chen v. D.C.*, 839 F. Supp.2d 7, 12-13 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Z Street, Inc. V. Koskinen*, No. 1:12-cv-00401-KBJ, Dkt. 49 (D.D.C. May 27, 2014) . . . . . . . . 6

**Statutes:**

26 U.S.C. § 501(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,17
26 U.S.C. § 501(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
26 U.S.C. § 6103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11,12,14,17
26 U.S.C. § 6103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,13
26 U.S.C. § 6103(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
26 U.S.C. § 6103(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
26 U.S.C. § 6103(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
26 U.S.C. § 6103(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
26 U.S.C. § 6103(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
26 U.S.C. § 6103(h)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14

Fed. R. Civ. P. 26(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Fed. R. Civ. P. 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Fed. R. Civ. P. 26(b)(2)(C)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Fed. R. Civ. P. 34(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Miscellaneous:**

D.C. Local Rule 65.1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Federal Records Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Internal Revenue Manual 1.15.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
John L. Carroll, Proportionality in Discovery: A Cautionary Tale, 32 CAMPBELL L.REV.
    455, 460 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Patrick Oot, E-Discovery: Even IRS Computers Crash, LAW TECHNOLOGY NEWS
    (June 29, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
The Sedona Conference Commentary on Proportionality in Electronic Discovery,
    11 Sedona Conf. J. 289, 294 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
The Sedona Principles: Best Practices, Recommendations & Principles for Addressing
    Electronic Document Production, Second Edition, 34, 47 June 2007) . . . . . . . . . . . . . 17
Treasury Inspector General for Tax Administration (TIGTA) . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TRUE THE VOTE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-00734-RBW |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' RESPONSE OPPOSING
## TRUE THE VOTE'S MOTION FOR
## PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

This case involves Plaintiff's allegations that the IRS gave unnecessarily strict scrutiny to its application for tax exempt status under 26 U.S.C. § 501(c)(3). The IRS ultimately granted Plaintiff's application.  Thereafter, all of the defendants filed motions to dismiss all issues. Those motions are pending, and the Court has not set a discovery scheduling hearing.

Plaintiff now files a motion for injunctive relief and expedited discovery. Its motion should be denied. Plaintiff has shown none of the elements required for either remedy. Its motion relies upon  unsupported rhetoric about spoliation, but proffers no facts supporting  that spoliation has occurred. The IRS has taken extraordinary steps to preserve all relevant evidence. Starting before Plaintiff filed its complaint, the IRS issued broad preservation notices. Over 250 IRS employees have spent over 120,000 hours working to preserve and produce files related to this case and other Congressional investigations. None of those preserved files have been destroyed. The requested relief is unnecessary.

## A.  Plaintiff Has Not Shown the Elements Required for Injunctive Relief

"[I]njunctive relief is an 'extraordinary and drastic remedy,' and it is the movant's obligation to justify, 'by a clear showing,' the court's use of such a measure." *Citizens United v. FEC*, 530 F. Supp. 2d 274, 278 (D.D.C. 2008). To obtain injunctive relief, the requesting party must make a showing: "1) of a substantial likelihood of success on the merits, 2) of irreparable injury if the injunction is not issued, 3) that the injunction would not substantially injure other interested parties, and 4) that the injunction is in the public interest." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 300 (D.D.C. 2012). Plaintiff has shown none of those elements. In fact, Plaintiff fails to include a single affidavit to support its need for an injunction despite that supporting affidavits are mandatory under DC Local Rule 65.1(c): "The application shall be supported by all affidavits on which the Plaintiff intends to rely." Instead, their request points to newspaper articles, Congressional letters, and blog posts to support  its argument.

### 1.  Plaintiff Has Not Shown a Likelihood of Injury: the IRS Has Taken Reasonable Steps to Preserve All Relevant Evidence and No Spoliation Has Occurred

Showing a threat of irreparable harm is a "threshold requirement" for injunctive relief. *City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 127 (D.D.C. 2006). If a movant does not establish harm, injunctive relief must be denied. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (distinguished on unrelated grounds). To show a threat of harm, the movant "must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). In other words, speculation about potential harm does not justify injunctive relief. The movant must show that the harm is certain and imminent. *United States v. Sum of $70,990,605*, 2013 U.S. Dist. LEXIS 167158, at *10 (D.D.C. Nov. 25, 2013).

In its Motion's caption, Plaintiff claims that it needs protection against "further spoliation." This, of course, assumes that prior spoliation has occurred. Plaintiff *alleges* that the IRS's prior spoliation shows that future evidence destruction is likely, but no *facts* support that spoliation has occurred. As a result of a Congressional investigation, the IRS took steps to preserve relevant evidence even before it was required to in anticipation of litigation with Plaintiff.  Plaintiff has presented no evidence that any of  that preserved evidence has been destroyed.

### a) *The IRS has properly preserved evidence relevant to this case's claims and defenses.*

Even before the IRS's preservation obligation arose in this case, the IRS took reasonable steps to preserve all relevant evidence. Over 250 IRS employees have spent over 120,000 hours working to preserve and produce files related to this case and other Congressional investigations. TTV Ex. H at 10-11. The IRS's efforts have cost nearly $10 million. *Id.* The IRS memo attached to Plaintiff's motion and Congressional testimony from IRS Commissioner Koskinen describe the IRS's preservation efforts. TTV Ex. H at 10 (memo); Gov. Ex. C (6-20 testimony); Gov. Ex. D (6-23 testimony). Because of a report issued by the Treasury Inspector General for Tax Administration (TIGTA), the IRS's efforts to preserve evidence began before Plaintiff filed its complaint. On May 14, 2013, TIGTA issued a report titled "Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review."[1] Two days after TIGTA issued its report—on May 16, 2013—the IRS issued broad preservation letters to key employees in the IRS's Tax Exempt group. *See* TTV Ex. H at 17. A copy of that notice is attached to Plaintiff's motion as

---

[1] *See* http://www.treasury.gov/tigta/auditreports/.

Ex. H at 17. By early June 2013, a larger group of employees had received preservation notices. TTV Ex. H at 11. In July, shortly after Plaintiff filed its Complaint, another litigation hold was sent to all employees in the IRS Tax Exempt and Government Entities function and its Chief Counsel counterpart; the IRS Communications and Liaison function; and all employees assigned to respond to Congressional inquiries. *Id.*

After sending preservation notices, the IRS collected copies of emails and other digital files from employees' computer hard drives and active email boxes located on IRS servers. TTV Ex. H at 12-13. Those collected files are now segregated on an IRS server. That server is backed up, and the IRS knows of no collected files that have been destroyed. *See* Comm'r Koskinen's Testimony, Gov. Ex. C at 8 ("There had not a single e-mail has been lost since the start of this investigation."), 20 ("since the start of this investigation, every e-mail has been preserved. Nothing has been lost. Nothing has been destroyed."), 125 ("Nothing has been destroyed during this investigation.").  Plaintiff simply ignores these facts and states, without support, that "In this case, the IRS has already destroyed or permitted the destruction of evidence in violation of the Federal Records Act and notwithstanding the pendency of litigation in this Court." TTV Memo. at 24.[2]

---

[2] For some reason, Plaintiff repeatedly states that it has not been provided any information that the IRS is preserving documents.  Despite these complaints, Plaintiff attaches two separate exhibits containing the information provided to them that explains the preservation and collection steps taken by the IRS, including a copy of the litigation hold letter sent. TTV Ex. H at 10-18 and Ex. O. Similarly, Plaintiff cites to Commissioner Koskinen's testimony to conclude that spoliation has occurred, but completely ignores the multiple statements that no information has been lost since the beginning of the Congressional investigation, which predated the filing of the lawsuit. At the very least, Plaintiff is being disingenuous.

### b)  *The evidence shows that no spoliation has occurred.*

Spoliation refers to the destruction of relevant evidence after litigation is reasonably foreseeable: "Once a party anticipates that it will be subject to litigation, the party has a duty to preserve any evidence that may be potentially relevant." *Clarke  v. Washington Metro. Area Transit Auth.*, 904 F. Supp. 2d 11, 19-20 (D.D.C. 2012). Timing and culpability are key factors when courts determine whether to impose corrective measures for spoliation. Courts in the D.C. Circuit must find three elements:  "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable fact finder could conclude that the lost evidence would have supported the claims or defense of the party that sought it." *Zhi Chen v. D.C.*, 839 F. Supp. 2d 7, 12-13 (D.D.C. 2011) (citation omitted); *see also Davis v. Billington*, 2014 WL 2882679, *15 n.5 (D.D.C. 2014).

The crash of Lois Lerner's hard drive does not meet the definition of spoliation or any of the factors courts consider when deciding whether to impose corrective measures.[3]

First, Ms. Lerner's drive crashed long before litigation became foreseeable. For spoliation purposes, a preservation obligation is triggered when litigation is reasonably foreseeable. *Clarke*,

---

[3] Plaintiff also makes reference to the fact that "The other emails alleged to be "missing" are those of six other IRS employees involved in the IRS Targeting Scheme." (Memo at 18). Plaintiff does not and cannot provide any support of the allegation that the hard drive crash of these six employees resulted in any lost information.  As a result, the discussion will focus on the hard drive of Lois Lerner.

904 F. Supp. 2d at 19-20.[4] This litigation was not foreseeable when Ms. Lerner's drive crashed. Her drive crashed in mid-2011. TTV Ex H at 25,  two years before both the TIGTA report and plaintiff's complaint.  Before it filed its complaint, Plaintiff's tax exempt application was pending with the IRS. Plaintiff answered an IRS information request on November 30, 2012, and counsel for Plaintiff inquired of the IRS about the status of Plaintiff's application on May 20, 2013, just one day before Plaintiff filed its complaint. Gov. Ex. A, B. Consequently, litigation was arguably not foreseeable one day before the complaint was filed, and certainly was not foreseeable two years in advance.

Recognizing the weakness of its position, Plaintiff points to the litigation of a completely different taxpayer to try to establish that the IRS should have anticipated litigation. ("Long before Plaintiff filed suit, prior events had already placed the IRS and the Individual Defendants on notice of their obligations to preserve not only Ms. Lerner's emails but all evidence relevant to the IRS Targeting Scheme.")  Specifically, Plaintiff argues that the IRS's obligation to preserve began in 2010, when an entity named Z Street filed a complaint, but Z Street has no relationship to this case. Z Street is a different entity alleging different facts. Z-Street describes itself as a pro-Israel organization, *see Z Street, Inc. v. Koskinen*, No. 1:12-cv-00401-KBJ, Dkt. 49

---

[4] Plaintiff also cites the Federal Records Act to support its claim that the IRS should have preserved documents prior to Plaintiff's litigation.  Again, Plaintiff is mistaken.  The FRA is a collection of administrative recordkeeping statutes.  It does not automatically displace other standards for when courts should apply corrective sanctions for spoliation in a given case, nor is there support for Plaintiff's attempt to enforce the FRA through spoliation sanctions in this private, non-FRA litigation. *Cf. Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 148-150 (1980). Further, Plaintiff has not proven that any Federal Records have been lost. Not all emails sent by IRS employees are federal records. *See* I.R.M. 1.15.2 (describing IRS federal records). Even if all of the emails on Lois Lerner's crashed hard drive were federal records, the crashing of the hard drive was inadvertent, Plaintiff has no evidence to the contrary, and the IRS has taken extraordinary steps to recover  copies of those emails from other employees' computers and email boxes. *See* discussion below. *Compare Gerlich v. Department of Justice*, 711 F.3d 161, 171 (D.C. Cir. 2013) (focusing on the intention to destroy the records, and thus concluding that "a reasonable trier of fact could find that the record destruction was neither accidental nor simply a matter of utilizing the Department's record destruction schedule").

(D.D.C. May 27, 2014); TTV Mtn. at 3, and it contends that it was denied tax-exempt status because of a "special Israel policy," not as part of the problem identified in the TIGTA report that led to this complaint. In other words, Plaintiff is arguing that the IRS should anticipate litigation for every taxpayer when any taxpayer files suit on a particular issue. For example, if Taxpayer A files a refund action related to disallowance of mortgage interest, then, under Plaintiff's theory, the IRS is then on notice to permanently preserve all documents related to all taxpayers that have disallowed deductions. This is simply not the case. *See, e.g., Consolidated Edison Company v. United States,* 90 Fed. Cl. 228, 258 (2009) (rev'd on different grounds) ("Individual or corporate taxpayers should not have to immediately conclude that all audits by the IRS, or even extensive, IRS administrative proceedings to challenge results of those audits negative to the taxpayer, necessarily will lead to litigation. To the contrary, the IRS has an elaborate structure set up to administratively resolve disputes between the government and the taxpayer in an attempt to avoid litigation."). When Z-Street filed suit, spoliation principles required the IRS to preserve files relevant to Z-Street's particular claims and defenses. It did not require the IRS to preserve all files held by all Tax Exempt group employees. Nor did it create an anticipation of litigation or a preservation obligation for the Plaintiff's case.[5]

---

[5] Plaintiff also suggests that a June 3, 2011 letter from Chairman Camp related to audits involving the gift tax implications of five donors to conservative 501(c)(4) groups triggered "anticipation of litigation" for the Plaintiff case. This conclusion is unsupported as the letter does not mention Plaintiff nor relate to any issues in this case, which involve the applications of 501(c)(4) entities. Similarly, to the extent Plaintiff is attempting to rely on discussions with the Taxpayer Advocate or complaints to Senator John Cornyn to create some kind of anticipation of litigation, they do not even reference litigation, much less create an anticipation of it. *See, e.g., Rossi v. United States,* Case No. 11-12576, 2013 WL 7137774 (E.D. Mich. May 2, 2013) (Holding that litigation is not foreseeable in a tax case even where the taxpayers are threatening to file suit ."Many collection actions taken by the IRS elicit angry reactions and threats of litigation from taxpayers, so it is not reasonable for the IRS to foresee that a case will result in litigation prior to the filing of a lawsuit.").

Second, efforts to recover Ms. Lerner's hard drive show that the crash was unintentional. Emails attached to Plaintiff's motion show that Ms. Lerner asked IRS technology employees to recover her drive. TTV Ex. H at 26-28. Her drive was even sent to an IRS Criminal Investigation forensic lab. *Id.* Those emails indicate that the crash was unintentional, and Plaintiff  has produced no evidence to the contrary. Anyone that has owned a computer understands that hard drives crash. *See* Patrick Oot, *E-Discovery: Even IRS Computers Crash*, LAW TECHNOLOGY NEWS (June 29, 2014) *available at* http://www.lawtechnologynews.com. During 2014 alone, 2,000 IRS employees have suffered hard drive crashes. Gov. Ex. D at 14.  A crash alone provides no evidence of bad faith. Once again, because it lacks evidence, Plaintiff merely provides general negative statements about Ms. Lerner unrelated to the hard drive and do not even allege, let alone provide proof, that the crashed hard drive was "accompanied by a 'culpable state of mind.'" This is insufficient.

Finally, Plaintiff has not shown that any relevant Lerner files have been lost. Instead, Plaintiff cites to newspaper articles to support that allegation: "According to initial and subsequent news reports, at least two years' worth of emails spanning a crucial time period relevant to this litigation have gone missing." TTV Memo. at 5. This statement makes it appear they are arguing that any and all email that was on Ms. Lerner's hard drive when it crashed has been lost. That argument ignores an email's inherent nature. Emails are at least two-party files. The party sending the email has a copy, and the party receiving the email has a copy. Even if Ms. Lerner's hard drive contained relevant emails when it crashed, other copies may still exist. Even before Plaintiff filed suit, the IRS had taken extraordinary steps to preserve every existing copy. It has collected and preserved 67,000 emails that were sent to or from Lois Lerner between January 2009 through May 2013. Gov. Ex. D at 13 (Comm'r Koskinen's 6-23 Congressional

Testimony). Of those emails, 24,000 were found in other IRS employees computers and email accounts. The remaining 43,000 were found in Ms. Lerner's computer and email account. *Id.* at 13. In addition to those emails, the IRS understands that the White House and the Department of Treasury are searching for any Lerner emails stored in its computer systems. *Id.* at 15. Thus, Plaintiff has not proven that the IRS has lost any relevant files; it merely speculates that it has. As it has the burden to prove spoliation, this speculation is insufficient to justify the extraordinary relief demanded.

### c) *In similar cases where the movant cannot show imminent danger of evidence destruction, courts have refused to impose preservation injunctions.*

Courts considering injunctions in circumstances similar to this case have refused to impose special preservation requirements or allow discovery. Those courts have held that speculation about potential evidence destruction does not justify an injunction:

- *United States v. Sum of $70,990,605*, 2013 U.S. Dist. LEXIS 167158, *38-*39 (D.D.C. Nov. 25, 2013) ("the claimants have made no showing that there is a strong public interest in favor of issuing a preliminary injunction to preserve evidence that the government has not even threatened to destroy").

- *It's a 10, Inc. v. Beauty Elite Group, Inc.*, 932 F. Supp. 2d 1325, 1335 (S.D. Fla. 2013) ("Here, Plaintiff offers no proof that BEG is likely to damage or destroy its business records or other evidence relevant to this case.").

- *Windsor v. United States*, 379 Fed. Appx. 912, 916 (11th Cir. Ga. 2010) ("although Windsor alleged that Maid's attorneys had destroyed documents during the litigation of Maid I, the court noted that Maid I was litigated two-and-a-half years ago. Windsor acknowledged that the only evidence he had to support his claim was 'what [the attorneys] did in [Maid I].' Thus, Windsor failed to show that harm was 'actual and imminent.'").

In *United States v. Sum of $70,990,605*, for example, the District Court for the District of Columbia rejected a movant's request for an injunction that would have required the government to "gather, segregate, and preserve" all relevant evidence. 2013 U.S. Dist. LEXIS 167158, at *38-*39. Much like Plaintiff's purported fears in this case, the movant in *Sum* claimed that the

government would destroy evidence, but it failed to provide any evidence showing imminent danger of evidence destruction.

The movant argued that its rhetoric and fears were enough, but the court disagreed. The court first noted that showing harm was a "threshold requirement" for injunctions. *Id. at* \*10 (citations omitted). Instead of being theoretical and distant, the harm must be actual and imminent: "[T]he injury must be both certain and great; it must be actual and not theoretical. The moving party must show [t]he injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (citations omitted). When evidence destruction is cited as the harm, the court must find that destruction will occur without the injunction: "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur." *Id.* at 11 (citations omitted). As Plaintiff fails in this case, the movant in *Sum* failed to meet that high standard. The movant provided only "bare allegations that the government has destroyed evidence." *Id.* at 16. And even if the movant's fears were well founded, it did not show that destruction was imminent: "Even if the claimants' fears are well-founded, that falls well short of the imminence required for the court to grant the 'extraordinary and drastic remedy' of a preliminary injunction." *Id.* at 16. As in *Sum*, Plaintiff's unsubstantiated rhetoric does not show the certain and imminent harm courts must find before imposing an injunction.

## 2. Plaintiff's Requested Injunction Will Harm Others and Harm the Public Interest by Violating 26 U.S.C. § 6103

Although Plaintiff can show no harm to itself, its injunction would harm others. Plaintiff asks that its expert be allowed to examine IRS "computers, servers, computer systems," and other related records. In addition to being unjustified, such a broad examination would violate 26 U.S.C. § 6103 by exposing unrelated taxpayer information. Aspects of section 6103 are nuanced,

but its structure is simple. Subsection (a) of section 6103 provides the general prohibition that tax return information is confidential and cannot be disclosed or inspected. The other subsections to section 6103 contain exceptions to the prohibition that allow disclosure or inspection, but none of the exceptions would allow Plaintiff's expert to access IRS computers, servers, back-up tapes, or other data systems. The IRS has a statutory obligation to prevent the unauthorized disclosure of  taxpayer information to third parties. This court does not have authority to waive that obligation. *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 497-498 (2001) (rejecting argument that Court's discretionary power to enter injunction could ignore or override statute passed by Congress).

Plaintiff's motion seeks an order that would include the following provisions:

a. Subject to the approval of the Court, Plaintiff would designate an independent, computer forensics expert to conduct discovery as True the Vote's representative (the "Expert").

b. [Plaintiff's] Expert would be permitted to inspect and examine (by entering Defendants' premises or other location, if necessary) any computer hard drive, server, back-up tape, or related storage device, whether for business or personal use, that contains or did contain documents and electronically stored information sent by, received by, or copied to all Defendants, including Ms. Lerner, between January 1, 2009, and the present.

c. [Plaintiff's] Expert would be permitted to take all reasonably necessary action to restore deleted or lost data.

d. [Plaintiff's] Expert would be permitted to make copies of any data recovered or restored. . . .
(Doc. 83 at 1-2.)[6]

---

[6] Although Plaintiff describes this proposal as "narrowly tailored," TTV Memo at 28, the "United States" and the "Internal Revenue Service" are Defendants, and, thus, the scope of the data sought by Plaintiff is extraordinarily broad.

11

Plaintiff is certainly aware of 26 U.S.C. § 6103, which – as it has argued – is designed to protect the confidentiality of taxpayers' information.  Indeed, Plaintiff's complaint seeks damages due to the alleged breach of section 6103, including the alleged improper inspection of Plaintiff's return information.  (Doc. 15 ¶¶ 168-187.)  Yet, Plaintiff now seeks to have its own expert take steps that would *on their face* violate section 6103 and the rights of innumerable taxpayers unconnected to Plaintiff.  Plaintiff explicitly proposes that this expert (compensated by Plaintiff) would "inspect," "examine," and "make copies" of data on systems containing IRS data and communications.  (Doc. 83 at 1-2.)  Plaintiff tries to justify this blatant breach of section 6103 in the name of preliminary, expedited discovery to vitiate Plaintiff's individual claims – which may or may not survive the pending motions to dismiss.  The Court should deny Plaintiff's proposed discovery as barred by and contrary to section 6103.

It cannot be credibly denied that taxpayer information protected by section 6103 will reside on the "computer hard drive, server, back-up tape, or related storage device, whether for business or personal use, that contains or did contain documents and electronically stored information sent by, received by, or copied to all Defendants, including Ms. Lerner, between January 1, 2009, and the present."  *See* 26 U.S.C. § 6103(b)(1), (2) (broadly defining "return" and "return information").  Documents and communications contained in those data sources, including communications involving the IRS employees named as Defendants, will not be limited to Plaintiff's own return information.  The information sought by Plaintiff, therefore, will include voluminous materials constituting "return information" of other taxpayers.  Such information cannot be inspected by or disclosed without an express provision of section 6103 that allows it.  *E.g.*, *Lehrfeld v. Richardson*, 954 F. Supp. 9 (D.D.C. 1996), *aff'd*, 132 F.3d 1463 (noting the district court granted summary judgment for IRS, in part, because "the IRS's failure

to search other files for documents submitted by third parties was reasonable because those documents were not subject to disclosure").  Plaintiff makes no attempt to demonstrate that an exception applies.  Nonetheless and for the Court's benefit, the Federal Defendants provide the following discussion to show that none of the exceptions cover Plaintiff's present motion.

Subsection (a) of section 6103 provides the general prohibition that tax return information is confidential and cannot be disclosed or inspected.  The other subsections to section 6103 contain exceptions to the prohibition that allow disclosure or inspection, but none of the exceptions would allow Plaintiff's expert to access IRS computers, servers, back-up tapes, or other data systems.  For example, subsection (e) allows disclosure to various persons "with a material interest," but none of the narrow categories enumerated by Congress would allow Plaintiff's expert broad access to "inspect and examine," to "make copies" of data, or to "take all reasonably necessary action to restore" data.

Section 6103(h) also allows inspection or disclosure, but none of those provisions authorize the relief sought by Plaintiff.  Subsection (h)(2) allows employees of the Department of Justice to (A) inspect return information if the taxpayer is a party or the party's tax liability is at issue, (B) inspect returns if an item on the return is at issue in a court proceeding where the Department of Justice employee is directly engaged,  and (C)  inspect returns or return information if the information relates to a transactional relationship between the taxpayer and a party to the proceeding.  See 26 U.S.C. § 6103(h)(2).  Subsection (h)(4) also allows disclosure in a court proceeding but only if (A) the taxpayer is a party or determining its liability is at stake, (B) the treatment of an item on the disclosed return is "directly related" to resolving an issue in the proceeding, (C) the information directly relates to a transactional relationship between taxpayer and a party (and resolution of an issue in the proceeding is directly affected), or (D)

13

pursuant to a court order arising out of a specified criminal statute or rule of procedure. See 26 U.S.C. § 6103(h)(4).

The countless taxpayers whose return information would be contained in the vast amount of data sought by Plaintiff are *not* parties to this proceeding. The treatment of an item on any tax return – even Plaintiff's return – will not be directly related to resolution of an issue in this proceeding. Nor has Plaintiff alleged any transactional relationship with other taxpayers, and – considering the nature of Plaintiff's pending claims – no such relationship will be relevant. Because Plaintiff cannot show that any of the statutory exceptions to confidentiality allow disclosure or inspection, Plaintiff's expert cannot be allowed to access the data Plaintiff seeks.

Plaintiff's request is wildly overbroad and premature. Plaintiff seeks a preliminary injunction, but its requested relief would *hurt* (not defend) the public interest in preserving section 6103's protection of confidential information. To the extent any of Plaintiff's claims survive the pending motions to dismiss, the remaining claim(s) will dictate the scope of discovery, if any, that is allowed by the Federal Rules and section 6103. Until that time, Plaintiff's proposal would violate section 6103, and, for that reason alone, Plaintiff's motion for discovery must be denied.

### 3. Plaintiff Has Not Shown that It Is Likely to Succeed on the Merits

As argued in the defendants' motions to dismiss, Plaintiff is not likely to succeed on the merits. This case's merits were resolved when the IRS granted Plaintiff's application for tax exempt status. Dkt. 54 at 1. The court lacks jurisdiction over the remaining claims. In its motion for injunctive relief, Plaintiff does not even argue that it will succeed on the merits. Instead, it argues—without evidentiary support—that it will win what it dubs the "frivolous" pending motions to dismiss. It does not address the merits. Thus, Plaintiff has shown no substantial likelihood of success on the merits. Plaintiff has not met the requirements for an injunction.

**B.  Plaintiff's Early Discovery Would Consume Extraordinary Resources Without Providing any Benefit**

In addition to failing to meet the requirements for an injunction, Plaintiff has failed to meet the requirements for early discovery. The early discovery requested by Plaintiff would require extraordinary resources without providing any commensurate benefits. Under Fed. R. Civ. P. 26(d), a party may not seek discovery until the parties have conferred under rule 26(f). *Faith Satellite Radio, LLC v. Lutheran Church Missouri Synod*, CIV.A. 10-1373, 2010 WL 3909467 (D.D.C. Oct. 4, 2010). A Rule 26(f) conference occurs within 21 days of a scheduling conference, but the Court has not ordered a scheduling conference in this case. Because the pending  motions to dismiss could dispose of all claims, scheduling discovery would be impractical. The Court has not yet decided which, if any, claims are viable, and, accordingly, such a conference is clearly premature.

Courts have the authority to allow early discovery, but no factors supporting early discovery are present in this case. Depending on the context, courts consider many different factors. In this case's context, the Court should consider the following factors: (1) the threat of injury to Plaintiff if discovery is not allowed; (2) the burden early discovery would place on the defendants; and (3) the likelihood that Plaintiff will prevail on the merits. *See Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010) (early discovery denied because requesting party showed no harm or probability for success on the merits, and discovery was burdensome); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367 (S.D.N.Y. 2002) (discovery denied because of pending motion to dismiss).  Plaintiff has established none of those factors.

**1. Plaintiff Has Shown No Danger of Evidence Destruction**

As with its request for injunction, Plaintiff cites its unsupported fear of evidence destruction as justification for early discovery. As described above, Plaintiff's fears have no substance. Lois's Lerner's hard drive crash occurred long before this litigation was foreseeable, and Plaintiff has presented no evidence that the crash was intentional or that relevant information is missing. Thus, Plaintiff can cite no threat of harm that justifies early discovery.

**2. The Burden Imposed by Plaintiff's Requested Discovery Violates Proportionality Requirements in the Federal Rules of Civil Procedure**

Because Plaintiff has shown no danger of evidence destruction, its extraordinary discovery requests violate the proportionality requirements in Fed. R. Civ. P. 26(b)(2)(C)(iii). Under that rule, the Court "must limit" discovery if its "burden or expense…outweighs its likely benefits." Put another way, "[i]t is well established that discovery has limits and that these limits grow more formidable as the showing of need decreases." *United Air Lines, Inc. v. United States*, 26 F.R.D. 213, 219 (D. Del. 1960); *see also* The Sedona Conference Commentary on Proportionality in Electronic Discovery, 11 Sedona Conf. J. 289, 294 (2010) ("The 'metrics' set forth in Rule 26(b)(2)(C)(iii) provide courts significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources."); John L. Carroll, *Proportionality in Discovery: A Cautionary Tale*, 32 CAMPBELL L.REV. 455, 460 (2010) (discussing importance of proportionality when considering requests for digital evidence). Plaintiff's requests are not proportional to the needs of this case.

On one side of the proportionality scale, the cost of Plaintiff's early discovery is high. Plaintiff wants to inspect and forensically image IRS hard drives and servers that contain

massive amounts of unrelated taxpayer information. Such an examination would disrupt IRS operations and disclose confidential taxpayer information in violation of 26 U.S.C. § 6103.

The on-site examination of IRS computers alone is extraordinarily intrusive. Under Fed. R. Civ. P. 34(a), parties are generally allowed to search their own records for responsive documents. Absent some improper conduct, courts must protect responding parties from intrusive computer searches by an opposing party. *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (granting writ of mandamus and vacating trial court order allowing direct search of Ford's databases); *Balfour Beatty Rail, Inc. v. Vaccarello*, 3:06-CV-551-J-20MCR, 2007 WL 169628, *3 (M.D. Fla. Jan. 18, 2007) ("allowing Plaintiff to gain access to Defendants' hard drives in this case would permit Plaintiff to engage in a fishing expedition.").

And Plaintiff wants to do more than just search IRS computers; it wants to forensically examine IRS computers and servers. The Sedona Conference[7] has noted that forensic examinations are expensive and difficult processes that should be used sparingly in civil litigation:

> Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail…
>
> making forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence.

*The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, Second Edition, 34, 47 (June 2007) (available at https://thesedonaconference.org/publication/The%20Sedona%20Principles).

---

[7] The Sedona Conference is a nonprofit, 501(c)(3) research and educational institute dedicated to the advanced study of law and policy in the areas of antitrust law, complex litigation, and intellectual property rights.

Thus, courts have refused to order forensic examinations where parties have failed to show extraordinary need. *See, e.g., Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85 (D. Conn. 2012) (burden imposed by inspection of electronic records outweighed benefit). In *John B. v. Goetz*, for example, the Sixth Circuit provided mandamus relief from a court order requiring a forensic examination of government computer systems. 531 F.3d 448 (6th Cir. 2008). The trial court in that case ordered a forensic examination of the defendants' computers "to ensure the preservation of all existing electronically stored information." *Id.* at 455. The defendants included various government officials with the State of Tennessee. To protect the imaged information, the trial court ordered the U.S. Marshal to take possession of the forensic images under seal until further order.

The defendants sought mandamus relief, and the Sixth Circuit granted it. The Sixth Circuit first noted the significant privacy concerns: "the media at issue will almost certainly contain confidential state or private personal information that is wholly unrelated to the litigation." *Id.* at 460. To override those privacy interests, a request for forensic imaging "must be premised on an interest significant enough to override that risk." *Id.* at 460. As Plaintiff alleges in this case, the plaintiffs in *John B.* claimed that the defendants would not produce all relevant information. The Sixth Circuit rejected that skepticism as grounds for forensic imaging: "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *Id.* at 461.

On the proportionality scale's other side, Plaintiff has not shown that its discovery would yield any benefit. As described above, the IRS has adequately preserved relevant evidence, and none of that preserved evidence has been destroyed. Plaintiff cites to Lois Lerner's crashed hard drive, but the IRS has already attempted to recover that drive. Shortly after it crashed, emails

indicate that IRS technology employees examined the drive and tried to recover its files. TTV Ex. H at 26-28. The drive was even sent to a Criminal Investigation forensic lab for a more-thorough examination. *Id.* at 27. Forensic employees determined that the drive's files were unrecoverable. *Id.* It appears that the IRS then recycled and destroyed the hard drive in accordance with its regular business practice. *Id;* Gov. Ex. C at 14. Thus, Plaintiff has not even shown that there is a drive to forensically examine. It wants to fish through other IRS drives and servers, but it has not shown that any new evidence exists in those sources. In short, the burden of  Plaintiff's requested discovery far outweighs its speculative benefit.

### 3.  Plaintiff Is Not Likely to Succeed on the Merits

The burden of Plaintiff's requested discovery is especially unjustified when one considers that Plaintiff has not shown that it is likely to succeed on the merits. As discussed above, the United States resolved this case's merits when it granted Plaintiff its tax exempt status. The court lacks jurisdiction over all remaining issues. Conducting discovery at this early stage is neither efficient nor justified.

## Conclusion

Faced with specific requirements, Plaintiff brings only empty rhetoric. It has shown none of the elements required for  injunctive relief or early discovery. Most importantly, it has not shown that the relief is necessary. The IRS has taken reasonable steps to preserve all relevant evidence. None of that preserved evidence has been destroyed. Plaintiff's motion for injunctive relief and expedited discovery should be denied.

DATED: July 7, 2014

                           Respectfully submitted,

                           TAMARA W. ASHFORD
                           Acting Assistant Attorney General, Tax Division

                           */s/ Joseph A. Sergi*
                           JOSEPH A. SERGI (DC 480837)
                           Senior Litigation Counsel
                           U.S. Department of Justice, Tax Division
                           555 4th Street, N.W., JCB 7207
                           Washington, D.C.  20001
                           (202) 305-0868; (202) 307-2504 (FAX)
                           Joseph.A.Sergi@usdoj.gov

                           GROVER HARTT, III (TX 09174500)
                           Senior Litigation Counsel
                           CHRISTOPHER R. EGAN (TX 24036516)
                           Trial Attorney
                           U.S. Department of Justice, Tax Division
                           717 N. Harwood Street, Suite 400
                           Dallas, Texas  75201
                           (214) 880-9733; (214) 880-9741 (FAX)
                           Grover.Hartt@usdoj.gov

                           JENNIFER D. AUCHTERLONIE (WA 29481)
                           LAURA C. BECKERMAN (CA 278490)
                           CHRISTOPHER D. BELEN (VA 78281)
                           LAURA M. CONNER (VA 40388)
                           JEREMY N. HENDON (OR 982490)
                           PHILIP M. SCHREIBER (DC 502714)
                           Trial Attorneys
                           U.S. Department of Justice, Tax Division
                           555 4th Street, N.W.
                           Washington, D.C.  20001
                           (202) 514-2000

Of Counsel:
RONALD C. MACHEN, JR. (DC 447889)
United States Attorney

                           ATTORNEYS FOR THE UNITED STATES

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

TRUE THE VOTE, INC.

           Plaintiff,

        v.

UNITED STATES OF AMERICA, *et al.*,

          Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:13-cv-00734-RBW

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 7, 2014, I caused the attached Response in the above-captioned matter to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

                          /s/ *Joseph A. Sergi*
                          JOSEPH A. SERGI

21