**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TRUE THE VOTE, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | Civ. No. 13-cv-00734-RBW |
| | ) | |
| v. | ) | Judge Reggie B. Walton |
| | ) | |
| INTERNAL REVENUE SERVICE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**CINCINNATI DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

Jeffrey A. Lamken (D.C. Bar No. 440547)
Justin V. Shur (D.C. Bar No. 973855)
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (phone)
(202) 556-2001 (fax)
jlamken@mololamken.com
jshur@mololamken.com

*Counsel for Susan Maloney, Ronald Bell,
Janine L. Estes, and Faye Ng*

## <u>**TABLE OF CONTENTS**</u>

<u>Page</u>

ARGUMENT ..................................................................................................................... 1

I.  True the Vote Is Not Entitled to a Preliminary Injunction Against
    the Cincinnati Defendants .......................................................................................... 2

    A.  True the Vote Has Not Shown a Likelihood—Much Less the
           Required Near Certainty—of Irreparable Harm ...................................... 2

    B.  The Remaining Factors Weigh Against Relief ...................................... 5

II.  The Requested Relief Is Incompatible with Qualified Immunity and
    Grossly Overbroad in Any Event ............................................................................. 6

III.  Expedited Discovery Is Unwarranted ...................................................................... 8

    A.  True the Vote Is Not Entitled to Expedited Discovery Under the
           *Notaro* Test Because It Has Not Shown Irreparable Harm.................................. 8

    B.  True the Vote Is Not Entitled to Expedited Discovery Under
            the Reasonableness Test ....................................................................... 9

IV.  True the Vote's Conduct Raises Concerns for the Individual Defendants............................ 9

CONCLUSION.................................................................................................................. 10

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*3D Global Solutions, Inc. v. MVM, Inc.*, No. 13-7015,
   2014 WL 2722412 (D.C. Cir. June 17, 2014)................................................................8

*Am. Friends Serv. Comm. v. Webster*, 485 F. Supp. 222 (D.D.C. 1980)........................................4

*Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645 (D. Minn. 2002)...................................7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)..............................................................7

*Beattie v. Barnhart*, 663 F. Supp. 2d 5 (D.D.C. 2009) .....................................................2, 3, 4, 5

*Big Cats of Serenity Springs, Inc. v. Vilsack*, No. 13-cv-03275,
   2014 WL 2198000 (D. Colo. May 27, 2014)..............................................................8

*Citizens for Responsibility & Ethics v. Exec. Office of the President*,
   No. 1:07-cv-01707-HHK (D.D.C. Oct. 19, 2007), Dkt. No. 11 ................................4

*City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117 (D.D.C. 2006)..........................2

*Comm. in Solidarity with People of El Salvador v. Sessions*,
   929 F.2d 742 (D.C. Cir. 1991) ....................................................................................2

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Trans. Auth.*,
   234 F.R.D. 4 (D.D.C. 2006)........................................................................................8

*In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (D.D.C. 2005) .............................................8

*FTC v. NAFSO VLM, Inc.*, No. Civ. S-12-0781, 2012 WL 1131573
   (E.D. Cal. Mar. 29, 2012) ..........................................................................................7

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982) .......................................................6

*Landwehr v. FDIC*, 282 F.R.D. 1 (D.D.C. 2010) ..........................................................................9

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806 (1985) ..........................................................6

*Moore v. Hartman*, 388 F.3d 871 (D.C. Cir. 2004) ......................................................................6

*Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982)..........................................................................8

*Orrell v. Motorcarparts of Am., Inc.*, No. 3:06-cv-418-R,
   2007 WL 4287750 (W.D.N.C. Dec. 5, 2007).........................................................4, 7

*Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050
   (S.D. Cal. 1999) .................................................................................4, 7

*Siegert v. Gilley*, 500 U.S. 226, 111 S. Ct. 1789 (1991)....................................6

*Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639 (S.D. Ind. 2000) .................4, 7

*Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) ................................6

*United States v. Sum of $70,990,605*, No. 12-cv-1905-RWR,
   2013 WL 6157977 (D.D.C. Nov. 25, 2013) ....................................1, 2, 4, 5

*Walker v. Wilburn*, No. 3:13-cv-4896-D, 2013 WL 6728070
   (N.D. Tex. Dec. 20, 2013) .............................................................6, 9

*Wis. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ...................................2, 5

*Z Street, Inc. v. Koskinen*, No. 12-cv-0401-KBJ, 2014 WL 2195492
   (D.D.C. May 27, 2014) .....................................................................5

## RULES

Fed. R. Civ. P. 26(f) .............................................................................5, 8

## OTHER AUTHORITIES

*Catherine Engelbrecht Announces $1 MILLION Bounty for IRS Scandal
   Information*, Fox News (May 21, 2014),
   http://www.youtube.com/watch?v=_Pg6E20H7Es ...........................................10

*Cleta Mitchell on What Victims Think of Lost IRS E-mails*,
   Fox News (June 17, 2014), http://video.foxnews.com/v/
   3628339427001/cleta-mitchell-on-what-victims-think-of-lost-irs-e-
   mails/#sp=show-clips.........................................................................10

Cleta Mitchell, Twitter.com (July 1, 2014 12:33 PM),
   https://twitter.com/CletaMitchell/
   status/484057160289353728 ...............................................................10

Patrick Howley, *Meet the Seven IRS Employees Whose Computers "Crashed,"*
   The Daily Caller (June 26, 2014 12:10 PM), http://daily
   caller.com/2014/06/26/meet-the-seven-irs-employees-whose-computers-
   crashed/ .......................................................................................1

True the Vote, Twitter.com (June 17, 2014 10:30 PM),
   https://twitter.com/TrueTheVote/
   status/479134104462426114 ................................................................9

Scott Johnson, *Cleta Mitchell to the IRS: Answer This*, PowerLine
(June 16, 2014), http://www.powerlineblog.com/archives/2014/06/
cleta-mitchell-to-the-irs-answer-this.php ..................................................................................9

Scott Johnson, *Cleta Mitchell to the IRS: See You in Court*, PowerLine
(July 1, 2014), http://www.powerlineblog.com/archives/2014/07/cleta-
mitchell-to-the-irs-see-you-in-court.php ..................................................................................10

Defendants Ronald Bell, Faye Ng, Janine Estes, and Susan Maloney—the Cincinnati Defendants—respectfully submit this memorandum in opposition to Plaintiff True the Vote's motion for a preliminary injunction and expedited discovery.  True the Vote offers no evidence that any Cincinnati Defendant was involved in the IRS's loss of official emails.  It offers nothing to suggest that any Cincinnati Defendant failed to preserve relevant emails or documents on their home computers.  It offers no grounds for believing that the Cincinnati Defendants have destroyed or failed to preserve even a single document.  Yet True the Vote asks this Court to enter an extraordinary order opening the Cincinnati Defendants' homes to entry by an expert; authorizing that expert to search for and copy the contents of electronic devices; and allowing that expert to manipulate those copies to unlock additional information.  Such relief is both unnecessary and unwarranted.

## ARGUMENT

The Cincinnati Defendants learned about the IRS's alleged loss of data the same way as nearly everyone else in America: through news coverage that broke on June 13, 2014.  The Cincinnati Defendants had no involvement in the events leading to the loss of data or crashed hard drives.  No Cincinnati Defendant's hard drive crashed.[1]  And there is no evidence or reason to believe that any relevant material that may exist on the Cincinnati Defendants' home computers is not being preserved.  Plaintiff fails to meet the heavy burden of justifying the "extraordinary and drastic remedy" of a preliminary injunction against the Cincinnati Defendants.  *United States v. Sum of $70,990,605*, No. 12-cv-1905-RWR, 2013 WL 6157977, at *2

---

[1] The officials whose computers crashed were Lois Lerner, Nikole Flax, Michelle Eldridge, Kimberly Kitchens, Nancy Heagney, Julie Chen, and Tyler Chumny.  Patrick Howley, *Meet the Seven IRS Employees Whose Computers "Crashed,"* The Daily Caller (June 26, 2014), http://dailycaller.com/2014/06/26/meet-the-seven-irs-employees-whose-computers-crashed/.

(D.D.C. Nov. 25, 2013) (quotation marks omitted).  Its request is burdensome and overbroad. And the requested discovery is flatly barred by qualified immunity.

## I.    True the Vote Is Not Entitled to a Preliminary Injunction Against the Cincinnati Defendants

To obtain injunctive relief, True the Vote must make a "clear showing" (1) of irreparable injury, (2) of a substantial likelihood of success on the merits, and (3) that the balance of equities favors the injunction, *i.e.*, that the public interest outweighs any substantial injury to other interested parties. *See Sum of $70,990,605*, 2013 WL 6157977, at *2.  True the Vote makes none of those showings for the Cincinnati Defendants.

### A.  True the Vote Has Not Shown a Likelihood—Much Less the Required Near Certainty—of Irreparable Harm

True the Vote's request falters on the "'threshold requirement'" of irreparable harm. *Sum of $70,990,605*, 2013 WL 6157977, at *3 (quoting *City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 127 (D.D.C. 2006)).  That harm must be "both great and *certain to occur*." *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 9 (D.D.C. 2009) (emphasis added); *see also id.* (requiring "'harm [that] has occurred in the past and is likely to occur again' or that . . . is 'certain to occur in the near future.'" (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Harm that is "neither extant nor presently threatened, but only merely 'feared,'" is thus insufficient to support relief. *Beattie*, 663 F. Supp. 2d at 9 (quoting *Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 745-46 (D.C. Cir. 1991)).  For the Cincinnati Defendants, True the Vote offers no reasonable basis for fearing that relevant documents in their possession might be destroyed.  As an initial matter, True the Vote's 31-page memorandum contains no suggestion that the *Cincinnati Defendants'* personal computers hold relevant evidence. *See* Mem. 10.  More important, that memorandum never accuses the *Cincinnati*

2

*Defendants* of destroying evidence in this case or even threatening to do so.  It does not even suggest that the Cincinnati Defendants were among the IRS employees whose official emails were lost (nor could it, *see* p. 1 n.1, *supra*).   And it nowhere suggests that any Cincinnati Defendant had any role of any sort in those losses.

In fact, True the Vote's memorandum mentions the Cincinnati Defendants exactly twice—when discussing the letters it served on the Cincinnati Defendants' counsel, and when noting counsel's responses.  Mem. 3-4, 7-8.[2]  But even there, True the Vote only characterizes the Defendants' responses collectively and omits any mention of the Cincinnati Defendants' actual response.  *See id*. at 22 (citing Ex. H (Federal Defendants' letter) and Ex. J (Management Defendants' letter), but not Ex. I (Cincinnati Defendants' letter)).  There is a reason for that:  The response pointed out that counsel for the Cincinnati Defendants probably were copied on the demand "as a courtesy" since the Cincinnati Defendants had no "involvement in the events described in [True the Vote's] letter" and "no control over the IRS or how it stores computer equipment, such as [the] individual hard drives" that allegedly crashed.  *See id*. Ex. I.  It assured True the Vote that the Cincinnati Defendants are "aware of their obligations regarding document preservation," and invited True the Vote to "contact [the Cincinnati Defendants' counsel] if you have any further questions."   *Id*.   True the Vote did not, and has not, asserted any basis for believing the Cincinnati Defendants have done or would do anything wrong with respect to any documents in their custody.  Without even confronting that absence of evidence, True the Vote now demands a preliminary injunction against them.

---

[2] True the Vote's letter contained a lengthy list of discovery requests, demanding "access to all computers, both official and personal, used by any and all" of the Cincinnati Defendants.  Mem. Ex. G at 4.  The letter also contained a list of interrogatories, demanding information about the steps the Cincinnati Defendants have taken to preserve evidence.  *Id.* at 3-4.

Courts in this district regularly and properly refuse to enter document preservation injunctions under precisely those circumstances. In *Beattie*, the movant "merely allege[d] that [t]here is a *distinct possibility*" of evidence destruction. 663 F. Supp. 2d at 9 (emphasis added) (quotation marks omitted). But that was insufficient. *Id.* And *Sum of $70,990,605* refused an injunction where the movant claimed only that the government "tried to destroy" evidence. 2013 WL 6157977, at *4 (quotation marks omitted). True the Vote does not even go that far. It offers nothing more than purportedly "feared possibilities [that] fall short of the imminent threat of injury" required for a preliminary injunction. *Beattie*, 663 F. Supp. 2d at 9. Even "well-founded" fears do not warrant injunctive relief. *See Sum of $70,990,605*, 2013 WL 6157977, at *4. Here, True the Vote cannot muster even a well-founded fear that any relevant material on any Cincinnati Defendant's computer is endangered. The complete absence of any suggestion that the Cincinnati Defendants destroyed evidence or threatened to do so places this case at the opposite end of the spectrum from those invoked by True the Vote, nearly all of which involved concrete facts suggesting the prior destruction of evidence by the party against whom the injunction was sought.[3]

Perhaps recognizing that it cannot show "great and certain" injury with respect to the Cincinnati Defendants, True the Vote obfuscates. It generically refers only to "Defendants." Each of those generic references, however, describes conduct that cannot be attributed to the

---

[3] *See* Report and Recommendation at 2, *Citizens for Responsibility & Ethics v. Exec. Office of the President*, No. 1:07-cv-01707-HHK, (D.D.C. Oct. 19, 2007), Dkt. No. 11, (noting plaintiff complained that the "White House has deleted millions of e-mails"); *Orrell v. Motorcarparts of Am., Inc.*, No. 3:06-cv-418-R, 2007 WL 4287750, at *1 (W.D.N.C. Dec. 5, 2007) (describing plaintiff's earlier efforts to "wipe" hard drive containing evidence); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (noting "troubling discrepancies with respect to defendant's document production); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (noting "Defendant's own conduct of continuously deleting incoming and outgoing e-mails"); *Am. Friends Serv. Comm. v. Webster*, 485 F. Supp. 222, 232-33 (D.D.C. 1980) (describing previous "destruction of [FBI] field office records").

Cincinnati Defendants.  Each thus underscores the absence of any basis for relief against them.

For example, True the Vote writes that "Defendants' emails from the relevant time period were

belatedly reported as 'lost,' " Mem. 22, but no Cincinnati Defendant's emails were among those

allegedly lost by the IRS, and the Cincinnati Defendants are not alleged to have had any

involvement in that alleged mishap.[4]   True the Vote cannot rely on harm allegedly caused by

another party to justify enjoining the actions of the Cincinnati Defendants:  The " 'movant must

show that the alleged harm will *directly result from the action which the movant seeks to

enjoin*.' "  *Sum of $70,990,605*, 2013 WL 6157977, at *3 (emphasis added) (quoting *Wis. Gas

Co.*, 758 F.2d at 674).  Whatever happened at the IRS, there is simply no threatened conduct by

the individual-capacity Cincinnati Defendants that can plausibly be enjoined.

### B.   The Remaining Factors Weigh Against Relief

The remaining requirements for injunctive relief likewise weigh against an injunction.

For the reasons stated in the Cincinnati Defendants' motion to dismiss, *see* Dkt. Nos. 64, 77,

True the Vote is not likely to succeed on the merits.  Among other things, it appears singularly

unlikely that *Bivens* should be extended to this new context.  *See* Dkt. No. 64 at 15-32.[5]   Nor

does the balance of equities favor an injunction:  There can be no "strong public interest in favor

of issuing a preliminary injunction to preserve evidence that" the Cincinnati Defendants have

"not even threatened to destroy," much less one that supports the burdensome and intrusive

---

[4] Other examples abound.  True the Vote faults "Defendants" for failing to disclose the lost
emails in March when it proposed a Rule 26(f) conference.  Mem. 5.  Of course, the Cincinnati
Defendants—like most other ordinary Americans—had no idea the emails were lost at that time.

[5] The decision in *Z Street, Inc. v. Koskinen*, No. 12-cv-0401-KBJ, 2014 WL 2195492 (D.D.C.
May 27, 2014), has no bearing on the merits of Plaintiff's *Bivens* claim against the Cincinnati
Defendants because that case involved only official-capacity claims.

injunction requested here.  *Sum of $70,990,605*, 2013 WL 6157977, at *9; *see also Beattie*, 663 F. Supp. 2d at 10.

## II.    The Requested Relief Is Incompatible with Qualified Immunity and Grossly Overbroad in Any Event

Time and again, the Supreme Court has made clear that, until qualified immunity is resolved, discovery is forbidden.  "'Until this threshold immunity question is resolved,'" the Court has admonished, "'discovery should not be allowed.'"  *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S. Ct. 1789, 1793 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)); *accord Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985) ("defendant pleading qualified immunity is entitled to dismissal *before* the commencement of discovery" (emphasis added)).  That makes sense.  Qualified immunity "is an *immunity from suit* rather than a mere defense to liability."  *Mitchell*, 472 U.S. at 526, 105 S. Ct. at 2815.  It is designed to protect defendants not merely from monetary liability, but from the burdens of litigation, including discovery; once discovery begins, that protection is lost.  *Id.*  For similar reasons, decisions denying qualified immunity are immediately appealable—as are decisions subjecting a defendant to discovery before addressing immunity.  *Id.* at 526-29, 105 S. Ct. at 2815-17; *see also Moore v. Hartman*, 388 F.3d 871, 874-75 (D.C. Cir. 2004), *rev'd on other grounds*, 547 U.S. 250, 126 S. Ct. 1695 (2006).

That across-the-board prohibition on discovery before qualified immunity's resolution forecloses the relief True the Vote seeks here.  *See Walker v. Wilburn*, No. 3:13-cv-4896-D, 2013 WL 6728070, at *1 (N.D. Tex. Dec. 20, 2013) (denying motion for expedited discovery because "it seeks discovery without addressing the issue of qualified immunity").[6]  Indeed, True the Vote

---

[6] That same rationale disposes of True the Vote's grousing over "the deafening silence from counsel for Defendants in response to" the questions True the Vote posed in its letter.  Mem. 11.

does not merely seek discovery; it seeks extraordinarily intrusive discovery.  It asks for an order allowing a computer forensics professional of True the Vote's choosing to "inspect and examine . . . any computer hard drive . . . or related storage device," whether for business or personal use, that contains or has contained "documents and electronically stored information sent by, received by, or copied" to any of the Defendants.  Mem. 28.  The professional would have authority to *enter Defendants' homes*.  *Id.*  He would make copies of the storage media, taking with him copies of the Defendants' personal data.  And he would then manipulate the contents of the imaged data, taking "reasonably necessary action to restore deleted or lost data."  *Id.*  The Supreme Court has held that it is error to allow discovery against third parties to proceed when doing so would subject officials with an immunity defense to the burden of monitoring those proceedings.  *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86, 129 S. Ct. 1937, 1953 (2009).  *A fortiori* it prohibits subjecting officials to a suspicionless invasion and search of their homes by a stranger; having their private computers searched and copied; and having copies of all their files, including those with potentially intimate details of their lives—photographs, letters, etc.—hauled off by a stranger; and all of that without even the protection of a relevance screen by Defendants' own counsel.  A graver intrusion is hard to imagine.

True the Vote, for its part, addresses qualified immunity not at all.  That is critical:  Not one case cited by True the Vote orders expedited discovery over an unresolved qualified immunity issue.  *See FTC v. NAFSO VLM, Inc.*, No. Civ. S-12-0781, 2012 WL 1131573 (E.D. Cal. Mar. 29, 2012) (qualified immunity not at issue); *Orrell*, 2007 WL 4287750 (same); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645 (D. Minn. 2002) (same); *Simon Prop. Grp.*, 194

---

Courts have held that questions related to document preservation "are best characterized as interrogatories."  *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 373 (S.D.N.Y. 2006).  The Cincinnati Defendants had no obligation to respond because doing so would have subjected them to the burdens of discovery and invaded their immunity defense.

F.R.D. 639 (same); *Playboy Enters.*, 60 F. Supp. 2d 1050 (same).  In short, until the Cincinnati Defendants' qualified immunity defense is resolved, True the Vote's request for discovery is premature.  As a result, no Rule 26(f) conference is necessary either.[7]

## III.   Expedited Discovery Is Unwarranted

True the Vote's request satisfies neither of the two tests this district uses when considering expedited discovery, both of which are of questionable applicability in any event.

### A.   True the Vote Is Not Entitled to Expedited Discovery Under the *Notaro* Test Because It Has Not Shown Irreparable Harm

Expedited discovery under the *Notaro* test largely mirrors the requirements for a preliminary injunction.  *See In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142 (D.D.C. 2005) (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).  Thus, True the Vote must show (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the injury, and (4) some evidence that the benefits of expedited discovery outweigh the burdens it will impose.  *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Trans. Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006).

True the Vote has not met that standard.  As explained above (at 2-5), it has not alleged irreparable injury, making no allegation that the Cincinnati Defendants have destroyed evidence or threatened to do so.  *Fannie Mae*, 227 F.R.D. at 142 (holding plaintiff failed "to satisfy the stringent standard [for expedited discovery] because he has failed to demonstrate that any irreparable injury will result if the expedited discovery is not provided").  Moreover, the burden

---

[7] Plaintiff, moreover, cannot complain about the absence of a Rule 26(f) conference, Mem. 4-5, having agreed to defer it, *see* Ex. 1.  *See also 3D Global Solutions, Inc. v. MVM, Inc.*, No. 13-7015, 2014 WL 2722412, at *2 (D.C. Cir. June 17, 2014) (noting "litigant cannot avail himself of an error that he induced" (quotation marks omitted)).  Besides, because discovery would be premature, a Rule 26(f) conference would be as well.  *See Big Cats of Serenity Springs, Inc. v. Vilsack*, Civ. No. 13-cv-03275, 2014 WL 2198000, at *1 (D. Colo. May 27, 2014) (vacating previously scheduled Rule 26(f) conference in light of qualified immunity defense).

of discovery looms large:  It would work a near-complete and irrevocable loss of the Cincinnati Defendants' qualified immunity defense.  *See* pp. 6-8, *supra*.

### B.    True the Vote Is Not Entitled to Expedited Discovery Under the Reasonableness Test

Under the reasonableness test, expedited discovery is warranted only if the request is reasonable in light of the entire record to date and all surrounding circumstances.  *Landwehr v. FDIC*, 282 F.R.D. 1, 3 (D.D.C. 2010).  True the Vote's request is not.  It seeks corrective action against the Cincinnati Defendants without any evidence or suggestion that they destroyed or will destroy evidence.  And it requests extensive and burdensome discovery—even demanding entry into private homes—that would irrevocably destroy the qualified immunity defense.  True the Vote identifies not one case permitting such discovery before a qualified immunity defense has been resolved.  *See* pp. 7-8, *supra*.  Under these circumstances, subjecting the Cincinnati Defendants to extensive and intrusive discovery before resolution of qualified immunity is not reasonable.  *See Walker*, 2013 WL 6728070, at *1.

## IV.    True the Vote's Conduct Raises Concerns for the Individual Defendants

True the Vote's aggressive demand for an injunction against the Cincinnati Defendants, absent any evidence of wrongdoing, raises concerns—especially given Plaintiff's accompanying press campaign.  The same day True the Vote's counsel sent Defendants' counsel a five-page letter detailing the IRS's loss of data and demanding discovery, she sent that same letter to the media.[8]  True the Vote also posted a link to the letter on Twitter, and Plaintiff's counsel appeared on Fox News the next day.[9]  Its discovery motion was promptly released as well.[10]

---

[8] *See, e.g.*, Scott Johnson, *Cleta Mitchell to the IRS: Answer This*, PowerLine (June 16, 2014), http://www.powerlineblog.com/archives/2014/06/cleta-mitchell-to-the-irs-answer-this.php.

[9] *See* True the Vote, Twitter.com (June 17, 2014 10:30 PM), https://twitter.com/TrueTheVote/ status/479134104462426114 (tweeting "IRS attorneys have until high noon to respond to

And an association related to True the Vote has offered a $1 million bounty for information leading to Defendants' convictions.[11]

The judicial process is designed for the resolution of concrete disputes between adverse parties.  It should not be used as a tool for fomenting political scandal, much less attempting to terrorize and publicly demonize ordinary IRS employees, including those with homes and families hundreds of miles from Washington, D.C.

## **CONCLUSION**

True the Vote's motion for a preliminary injunction and expedited discovery should be denied.

July 7, 2014                                          Respectfully submitted,

                                                     /s/ Jeffrey A. Lamken
                                                     Jeffrey A. Lamken (D.C. Bar No. 440547)
                                                     Justin V. Shur (D.C. Bar No. 973855)
                                                     MOLOLAMKEN LLP
                                                     600 New Hampshire Avenue, N.W.
                                                     Washington, D.C.  20037
                                                     (202) 556-2000 (phone)
                                                     (202) 556-2001 (fax)
                                                     jlamken@mololamken.com
                                                     jshur@mololamken.com

                                                     *Counsel for Susan Maloney, Ronald Bell,*
                                                     *Janine L. Estes, and Faye Ng*

---

superlawyer @CletaMitchell re #LoisLerner's 'lost' emails"); *Cleta Mitchell on What Victims Think of Lost IRS E-mails*, Fox News (June 17, 2014), http://video.foxnews.com/v/3628339427001/cleta-mitchell-on-what-victims-think-of-lost-irs-e-mails/#sp=show-clips.

[10] *See* Scott Johnson, *Cleta Mitchell to the IRS: See You in Court*, PowerLine (July 1, 2014), http://www.powerlineblog.com/archives/2014/07/cleta-mitchell-to-the-irs-see-you-in-court.php; *see also* Cleta Mitchell, Twitter.com (July 1, 2014 12:33 PM), https://twitter.com/CletaMitchell/status/484057160289353728.

[11] *Catherine Engelbrecht Announces $1 MILLION Bounty for IRS Scandal Information*, Fox News (May 21, 2014), http://www.youtube.com/watch?v=_Pg6E20H7Es.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of July, 2014, I electronically filed the Cincinnati Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction and Expedited Discovery with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.


<u>/s/ Jeffrey A. Lamken</u>

Jeffrey A. Lamken

Exhibit 1

**Nitz, Eric**

| | |
|---|---|
| **From:** | CMitchell@foley.com |
| **Sent:** | Friday, March 28, 2014 5:45 PM |
| **To:** | Hartt, Grover (TAX) |
| **Cc:** | Lamken, Jeffrey; bbenitez@steptoe.com; WDavis@foley.com; MLockerby@foley.com; Kaylan Phillips; Noel Johnson (njohnson@actrightlegal.org) |
| **Subject:** | Re: True the Vote v. IRS, 1:13-cv-00734 (D.D.C.): Request for FRCP 26(f) Conference |

Well that's what we were thinking all along, but then became concerned that we maybe should go ahead. I don't disagree with waiting - just didn't want you guys to later say we missed a deadline!! Brigida might do that, right, Brigida? :)

Have a good weekend, everyone! Cleta

Sent from my iPhone

On Mar 28, 2014, at 2:42 PM, "Hartt, Grover (TAX)" <Grover.Hartt@usdoj.gov<mailto:Grover.Hartt@usdoj.gov>> wrote:

Cleta,

Until the Court has ruled on the pending motions to dismiss, we believe it would be premature to schedule a Rule 26(f) conference.

Grover

Grover Hartt, III
Senior Litigation Counsel
Department of Justice Tax Division
717 N. Harwood, Suite 400
Dallas, Texas 75201
214.880.9733
214.880.9741 (Fax)

From: CMitchell@foley.com<mailto:CMitchell@foley.com> [mailto:CMitchell@foley.com]
Sent: Friday, March 28, 2014 10:39 AM
To: Hartt, Grover (TAX); Lamken, Jeffrey (jlamken@mololamken.com<mailto:jlamken@mololamken.com>);
'bbenitez@steptoe.com<mailto:bbenitez@steptoe.com>'
Cc: WDavis@foley.com<mailto:WDavis@foley.com>; MLockerby@foley.com<mailto:MLockerby@foley.com>; Kaylan Phillips; Noel Johnson (njohnson@actrightlegal.org<mailto:njohnson@actrightlegal.org>)
Subject: True the Vote v. IRS, 1:13-cv-00734 (D.D.C.): Request for FRCP 26(f) Conference

Counsel,  I know we are all awaiting the judge's ruling(s) on your MTDs, but realized we should probably proceed to conduct the FRCP 26(f) conference.  What would be your availability to participate in such a conference?  Would next Friday, April 4 work?  We would suggest 10 am EDT, but if there is another time that would work better for others, let me know.   Once we agree on a date/time, I will circulate a dial-in number.

Thanks. Cleta

1

Cleta Mitchell, Esq.
Foley & Lardner, LLP
3000 K Street NW #600
Washington, DC 20007
(202) 295-4081 (direct)
(202) 431-1950 (cell)
(202) 672-5399 (fax)
cmitchell@foley.com<mailto:cmitchell@foley.com>

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.