**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TRUE THE VOTE, INC., Plaintiff, | ) | |
| v. | ) | Civil Action No. 13-734 (RBW) |
| INTERNAL REVENUE SERVICE, et al., Defendants. | ) | |

## MEMORANDUM OPINION

The plaintiff, True the Vote, Inc., filed this civil action against the Internal Revenue Service ("IRS"), the United States of America, and several IRS officials in both their official and individual capacities,[1] alleging violations of the Frist Amendment, the Internal Revenue Code, 26 U.S.C. § 6103 (2012), the Administrative Procedure Act, 5 U.S.C. § 706 (2012), and seeking declaratory and injunctive relief. See First Amended Complaint ("Compl.") ¶¶ 13, 139-214. Currently before the Court is the Plaintiff's Motion for Preliminary Injunction and Expedited Discovery to Prevent Further Spoliation of, and to Preserve and Restore, Evidence and Discoverable Information ("Pl.'s Mot."). Upon careful consideration of the parties' submissions[2] and their oral argument presented to the Court on July 11, 2014, the Court concludes for the following reasons that it must deny the plaintiff's motion.

---

[1] The individual defendants are: David Fish, Steven Grodnitzky, Lois Lerner, Steven Miller, Holly Paz, Michael Seto, Douglas Shulman, Cindy Thomas, William Wilkins, Susan Maloney, Ronald Bell, Janine L. Estes, and Fay Ng.

[2] In addition to the submissions already identified, the Court considered the following filings made by the parties in rendering its decision: (1) the Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and Expedited Discovery to Prevent Further Spoliation of, and to Preserve and Restore, Evidence and Discoverable Information ("Pl.'s Mem."); (2) the Individual Management Defendants' Opposition to Plaintiff's Motion for

(continued . . .)

## I. BACKGROUND

The plaintiff "is a not-for-profit Texas corporation organized and operated exclusively or primarily for a charitable purpose." Compl. ¶ 2. On July 15, 2010, the plaintiff filed an application with the IRS for tax-exempt status pursuant to the Internal Revenue Code, 26 U.S.C. §§ 501(c)(3), 509(a)(1), 170(b)(1)(a)(vi). Id. ¶¶ 3-4. The plaintiff alleges that because of its "mission of promoting election integrity and its perceived association with 'Tea Party' organizations, the IRS Defendants systematically targeted [the plaintiff's] . . . application for unwarranted delay and heightened review and scrutiny," thereby subjecting the plaintiff "to numerous unnecessary, burdensome, and unlawful requests for information about its operations, activities, leadership, volunteers, associations, and affiliations." Id. ¶ 5. The defendants have filed motions to dismiss the complaint, which are now ripe for resolution. See ECF Nos. 54, 59, 63, 64.

The plaintiff "and its counsel first learned of [certain] missing emails [of some of the defendants] from published reports late in the day on Friday, June 13, 2014. According to initial and subsequent news reports, at least two years' worth of emails . . . have gone missing." Pl.'s Mem. at 5. The plaintiff alleges that "[t]he lost emails belong to at least seven IRS employees implicated in" the case currently before this Court. Id. In particular, the plaintiff complains about emails belonging to defendant Lois Lerner, "who directed the IRS division responsible for [allegedly] targeting applicants for tax-exempt status perceived to have conservative political views." Id. "According to published accounts, the hard drive on Ms. Lerner's IRS computer

---

(. . . continued)
Preliminary Injunction and Expedited Discovery ("Indv. Defs.' Mem."); (3) the United States' Response Opposing True the Vote's Motion for Preliminary Injunction and Expedited Discovery ("United States' Mem."); and (4) the Cincinnati Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction and Expedited Discovery ("Cin. Defs.' Mem.").

'crashed' just ten days after a June 3, 2011 congressional letter inquired about the possible targeting of donors to politically conservative groups." Id. at 5-6.

On June 30, 2014, the plaintiff filed its motion for preliminary injunctive relief and expedited discovery, which requests an order from the Court directing the defendants "to preserve and prevent further destruction of all documents and electronically stored information within the scope of [Federal Rules of Civil Procedure] 26(b) and 34(a)(1)(A) in their possession, custody, and control." Pl.'s Mot. at 1. The plaintiff further requests that the Court direct the parties to conduct a discovery conference pursuant to Federal Rule of Civil Procedure 26(f). Id. at 1. Finally, the plaintiff asks the Court to authorize a third party forensic expert to conduct "expedited discovery" regarding the emails by inspecting and examining the electronic media that contain or contained electronically stored information that might be relevant to the plaintiff's case. Id. at 1-2. The defendants oppose the plaintiff's motion.

## II. STANDARD OF REVIEW

"'A plaintiff seeking a preliminary injunction must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest.'" Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)) (some alterations in original). Because it is "an extraordinary remedy," a preliminary injunction "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

The District of Columbia Circuit has applied a "sliding scale" approach in evaluating the preliminary injunction factors. Sherley, 644 F.3d at 392. Under this analysis,

> [i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor. For example, if the movant makes a very strong showing of irreparable harm and there is no substantial harm to the non-movant, then a correspondingly lower standard can be applied for likelihood of success . . . . Alternatively, if substantial harm to the nonmovant is very high and the showing of irreparable harm to the movant very low, the movant must demonstrate a much greater likelihood of success. It is in this sense that all four factors must be balanced against each other.

Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291–92 (D.C. Cir. 2009) (internal quotation marks and citations omitted).[3]

## III. ANALYSIS

### A. Whether a Preliminary Injunction Is Warranted

#### 1. Irreparable Harm

The plaintiff argues that the purported loss of the emails constitutes spoliation of evidence, and that it "will face irreparable injury to the fair adjudication of its claims—and consequently, its constitutional rights—if critical electronic information is not recovered and preserved." Pl.'s Mem. at 23. Moreover, counsel for the plaintiff represented at oral argument that the plaintiff does not trust the defendants to refrain from destroying other potential evidence relevant to its claims.

To demonstrate irreparable harm in this Circuit, a plaintiff's alleged "injury must be both certain and great; it must be actual and not theoretical. 'Injunctive relief will not be granted

[3] Several members of the Circuit have read the Supreme Court's decision in Winter to cast doubt on the continued validity of the sliding scale approach. See Davis, 571 F.3d at 1296 (Kavanaugh, J, joined by Henderson, J., concurring) ("[U]nder the Supreme Court's precedents, a movant cannot obtain a preliminary injunction without showing both a likelihood of success and a likelihood of irreparable harm, among other things" (emphasis in original)); Sherley, 644 F.3d at 393 ("Like our colleagues, we read Winter at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" (quoting Davis, 571 F.3d at 1296 (concurring opinion))). But the Circuit has had no occasion to decide this question because it has not yet encountered a post- Winter case where a preliminary injunction motion survived the less rigorous sliding-scale analysis. See Sherley, 644 F.3d at 393 ("We need not wade into this circuit split today because, as in Davis, as detailed below, in this case a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis."). Thus, because it remains the law of this Circuit, the Court must employ the sliding scale analysis here.

against something merely feared as liable to occur at some indefinite time.'" Wis. Gas. Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (citation omitted). Further, "the party seeking injunctive relief must show that '[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" Id. (citation omitted) (alterations in original). "Destruction of evidence may . . . rise to the level of irreparable harm." United States v. Sum of $70,990,605, __ F. Supp. 2d __, __, 2013 WL 6157977, at *4 (D.D.C. 2013); see also Citizens for Responsibility & Ethics in Washington v. Exec. Office of the President, Civ. No. 07-1707 (D.D.C. Oct. 19, 2007) (JMF/HHK), Report and Recommendation at 3 ("[I]f, as [the plaintiff] contends, the e-mails have been deleted, then the backup media are the only place where they may be and the obliteration of this backup media obviously threatens [the plaintiff] with irreparable harm. Indeed, the threat of such obliteration is a text book example of irreparable harm.").[4]

As indicated above, the plaintiff's allegations of irreparable harm are predicated on two assumptions. First, the plaintiff assumes that, absent an injunction directing the attempted recovery of the emails, they might never be recovered if recovery of the emails is possible. Second, the plaintiff assumes that spoliation has already occurred, and will therefore continue to occur unless the Court orders the defendants to preserve potential evidence going forward.

With respect to the recovery of the emails, it bears noting that the Treasury Inspector General for Tax Administration ("TIGATA"), which is independent from the IRS, has initiated a forensic investigation and recovery effort centered on the loss of the emails at issue in the plaintiff's motion. See generally ECF No. 92-1 (Declaration of Timothy P. Campus). The

[4] Magistrate Judge Facciola's Report and Recommendation was ultimately adopted as an order of the Court. See ECF No. 18 (Order) at 1-2, Citizens for Responsibility & Ethics in Washington v. Exec. Off. of the President, Civ. No. 07-01707 (HHK) (Nov. 12, 2007).

Deputy Inspector General has represented to the Court under penalty of perjury that the investigation is being conducted by individuals with "in-depth knowledge of investigative principles, techniques, methods, and procedures [who] have received professional investigative training." Id. ¶ 6; id. ¶ 7 ("The technical special agents assigned to the investigation have received extensive training in computer and electronic investigations to include training at the Federal Law Enforcement Training Center, the Department of Defense's Defense Cyber Investigations Training Academy, the National White Collar Crime Center, courses at the Federal Bureau of Investigation[,] as well as other training courses and seminars hosted by government agencies, universities[,] and private industry."). Accordingly, despite the general distrust of the defendants expressed by the plaintiff, the Court has no factual basis to concur with that distrust, not only as to the defendants but seemingly every component of the Department of the Treasury (and presumably of every component of the Executive Branch of the federal government), and therefore concludes that the issuance of an injunction will not further aid in the recovery of the emails, if such recovery is possible, but will rather only duplicate and potentially interfere with ongoing investigative activities.

As to the charges of past and future spoliation, the Court must consider first whether there is reason to believe that spoliation has occurred. Without a finding that spoliation previously occurred, there is little basis to conclude that the defendants will "continue" spoliating potential evidence. "Spoliation" is "defined as 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" Clarke v. Wash. Metropolitan Area Transit Auth., 904 F. Supp. 2d 11, 20 (D.D.C. 2012) (quoting D'Onofrio v. SFX Sports Grp., Inc., 2010 WL 3324964, at *5 & n.5 (D.D.C. Aug. 24, 2010)). And a party is obligated to not spoliate "'documents it knew or

reasonably should have known were relevant to the . . . litigation if it knew the destruction or alteration of those documents would prejudice the plaintiff[].'" Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1481 (D.C. Cir. 1995) (citation omitted).

The plaintiff argues first that the IRS was under the obligation not to spoliate evidence relevant to this case by virtue of an earlier filed case pending before another member of this Court, Z Street, Inc. v. Koskinen, __ F. Supp. 2d __, 2014 WL 2195492 (D.D.C. 2014). Specifically, the plaintiff contends that the filing of the Z Street case "had already placed the IRS and the Individual Defendants on notice of their obligations to preserve not only Ms. Lerner's emails but all evidence relevant to the" allegations made in the case before this Court. Pl.'s Mem. at 15 (emphasis in original).

"Z Street . . . is a non-profit corporation in Pennsylvania that is dedicated to educating the public about various issues related to Israel and the Middle East," which filed its complaint in December 2010. Z Street, __ F. Supp. 2d at __, 2014 WL 2195492, at *1. The plaintiff there alleges that the IRS "violated the First Amendment when it implemented an internal review policy that subjected Israel-related organizations that are applying for tax-exempt status under" 26 U.S.C. § 501(c)(3) "to more rigorous review procedures than other organizations applying for that same status" and Z Street argues "that this so-called 'Israel Special Policy' represents impermissible viewpoint discrimination on the part of the federal government." Id. Z Street further alleges that, under the "Israel Special Policy," certain tax-exempt status applications were "being sent to a special unit in the [IRS's] D.C. office to determine whether the organization's activities contradict the [Obama] Administration's public policies." Id. at 2.

Despite the plaintiff's creative argument to the contrary, the Court cannot conclude that the filing of the Z Street case created an obligation on the defendants to preserve evidence related

to this case. To be sure, both Z Street and this case involve claims against the IRS of impermissible viewpoint discrimination. However, the type of alleged viewpoint discrimination in the two cases is quite different. Whereas Z Street involves allegations of undue scrutiny of organizations that have certain views concerning Israel, this case concerns allegations of undue scrutiny of organizations that have conservative political views. The plaintiff did not argue either in its written submissions or during oral argument that the two viewpoints at issue are identical, nor does the Court find a reason to treat the two viewpoints as such. What the plaintiff seeks to do is have the Court draw an analogy between the two cases based on the fact that the two plaintiffs have opposed Obama Administration policies, and find from that similarity a preservation obligation applicable to this case arising from the filing of the Z Street litigation. That connective leap the Court cannot make. Although evidence in Z Street and evidence in this case might overlap—should this case survive the defendants' pending motions to dismiss—the Court declines to find that a preservation obligation on the defendants in this case arose from the fact that both parties have opposed Obama Administration policies even though grounded on factually different subjects.

The plaintiff also argues the IRS's alleged disregard for and violation of the Federal Records Act, 44 U.S.C. §§ 2901-2909, 3101-3107 (2012), is a basis for finding that the defendants flouted an existing preservation obligation when defendant Lerner's hard drive crashed. See, e.g., Pl.'s Mem. at 2, 15-16, 26. While the IRS's obligation to maintain federal records is undoubtedly important, the alleged violations are a distraction from the questions currently and appropriately before the Court. First, there is no proof that "records," as that term is defined by the Act,[5] have been destroyed. More importantly, under the Federal Records Act,

[5] A "record" is defined as

(continued . . .)

there is "only one remedy for the improper removal[, defacing, alteration, or destruction] of a 'record' from [a government] agency. The head of an agency is required under 44 U.S.C. § 3106 to notify the Attorney General if he determines or 'has reason to believe' that records have been improperly removed," defaced, altered, or destroyed. Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 147-148 (1980) (quoting 44 U.S.C. § 3106) (emphasis added). Upon notification, the Attorney General can then initiate suit against the offending party. And "regardless of whether [a party] has violated the [Federal Records Act] . . . , Congress has not vested federal courts with jurisdiction to adjudicate that question upon suit by a private party." Id. at 149-50. Accordingly, even if there has been a Federal Records Act violation, the current action before this Court is not the appropriate vehicle to determine whether such a violation occurred. Without the authority to make that determination in the first instance, it would be inappropriate for the Court to predicate a finding of spoliation on a violation of the Federal Records Act.

Rather, the relevant question for the Court is whether the defendants have complied with their general obligation not to spoliate "'documents [they] knew or reasonably should have known were relevant to [this] . . . litigation if [they] knew the destruction or alteration of those documents would prejudice the plaintiff[].'" Shepherd, 62 F.3d at 1481 (emphasis added)

---

(. . . continued)

> all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them. Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included.

44 U.S.C. § 3301.

(citation omitted). Again, for the reasons stated above and based upon the current record, the Court cannot conclude that the defendants spoliated evidence. Because efforts to recover the emails at issue are ongoing, and because the plaintiff has presented no credible evidence to support its allegations that the defendants have spoliated evidence or its suspicion that they will do so in the future, the plaintiff has failed to show that it will suffer irreparable harm absent preliminary injunctive relief.

**2. Likelihood of Success on the Merits**

The plaintiff does not directly argue the merits of its underlying case in the motion currently before the Court. Indeed, the plaintiff states that "[a]t this juncture, . . . the preliminary injunction and related relief that True the Vote seeks is not addressed to the merits of its First Amendment and other constitutional and statutory claims." Pl.'s Mem. at 24 (emphasis in original). Rather, the plaintiff argues that, "[i]n these circumstances, 'certain courts relax the standard so that plaintiffs do not have to demonstrate likelihood of success on the merits of the litigation, as such consideration is not appropriate for evidence preservation.'" Id. at 24-25 (quoting Ingersoll v. Farmland Foods, Inc., No. 10-6046-CV-SJ-FJG, 2013 WL 461918, at *2 (W.D. Mo. Feb. 6, 2013)) (emphasis in original). However, the plaintiff cites no cases for this proposition from this Court or Circuit. Indeed, other members of this Court have found that a showing of likelihood of success is necessary where a plaintiff seeks a preservation order through a preliminary injunction motion. See, e.g., Citizens for Responsibility & Ethics in Washington v. Cheney, 577 F. Supp. 2d 328, 333-36 (D.D.C. 2008).

The plaintiff does argue in passing that it "has shown the requisite likelihood of success on the merits" and that the "[d]efendants' pending motions to dismiss border on the frivolous, for the reasons set forth in" the plaintiff's oppositions to those motions to dismiss. Pl.'s Mem. at 25.

Given that another federal district court recently granted in part and denied in part motions to dismiss similar claims in another case, see NorCal Tea Party Patriots v. IRS, __ F. Supp. 2d __, __, 2014 WL 3547369, at *1, *14 (S.D. Ohio 2014), it is conceivable that each party has presented non-frivolous arguments regarding the viability of the plaintiff's claims in this case. The most the Court can conclude at this juncture is that the plaintiff has some likelihood of success. But even if the plaintiff is correct that it has a strong likelihood of success on the merits, it has failed to show irreparable harm, which is a prerequisite to obtaining injunctive relief. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

**3. Balance of the Equities**

The fact that the plaintiff has failed to demonstrate irreparable harm weighs in favor of the defendants. On the other hand, enjoining the defendants from destroying potential evidence—regardless of whether any potential evidence was previously destroyed—would not burden the defendants, because the IRS has already dedicated a significant amount of resources to its document preservation efforts. See United States' Mem. at 3 ("Over 250 IRS employees have spent over 120,000 hours working to preserve and produce files related to this case and other Congressional investigations [and] [t]he IRS's efforts have cost nearly $10 million." (citation omitted)). The Court thus concludes that the balance of the equities does not weigh strongly in favor of either party.

**4. Public Interest**

The public interest weighs strongly against the type of injunctive relief the plaintiff seeks. As the United States argues, "[s]ubsection (a) of section 6103 [of the Internal Revenue Code]

provides the general prohibition that tax return information is confidential and cannot be disclosed or inspected" subject to certain exceptions elsewhere in section 6103. See United States' Mem. at 11; see also 26 U.S.C. § 6103(a). Moreover, section 6103 repeatedly emphasizes a strong congressional policy that favors maintaining the confidentiality of tax returns and return information. See, e.g., 26 U.S.C. § 6103(h)(4)(D) ("A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration but only . . . to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to the congressional policy favoring the confidentiality of returns and return information as set forth in this title."); id. § 6103(i)(4)(D) ("In ruling upon the admissibility of returns or return information, and in the issuance of an order [in connection with certain criminal proceedings], the court shall give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title."). Allowing a third party, as requested by the plaintiff, to inspect IRS computers would necessarily result in the disclosure of tax returns and return information to that third party. Finally, while the recovery of the emails at issue is certainly in the public interest to the extent that government records were included among those emails, the public interest is already being served through the ongoing TIGTA investigation.

Having failed to satisfy the standard for the extraordinary remedy of preliminary injunctive relief, the Court must deny the plaintiff's motion for an injunction.

**B.      Whether Expedited Discovery Is Warranted**

The plaintiff argues that it is entitled to expedited discovery under either of the two tests that have been employed in this District. See Pl.'s Mem. at 20. "To determine whether

expedited discovery is appropriate, courts have developed two commonly recognized approaches: (1) the Notaro[ v. Koch, 95 F.R.D 403 (S.D.N.Y. 1982),] test and (2) the reasonableness, or good cause, test." Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth., 234 F.R.D. 4, 6 (D.D.C. 2006). Under the Notaro test,

> courts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

Notaro, 95 F.R.D. at 405. Because the Court has already concluded that the plaintiff has failed to make a showing of irreparable harm, the Court also concludes that the plaintiff cannot satisfy the Notaro test.

In any event, as Magistrate Judge John Facciola has noted, "[m]ore recent cases have rejected the Notaro test in favor of a reasonableness test, particularly in cases where the expedited discovery is related to a motion for a preliminary injunction." Disability Rights Council, 234 F.R.D. at 6. Indeed, a recent opinion issued by another member of this Court rejected the Notaro test. See Guttenberg v. Emery, __ F. Supp. 2d __, __, 2014 WL 1100982, at *6 (D.D.C. 2014) ("This Court agrees with those courts that have rejected the Notaro standard in favor of the reasonableness approach, an approach more suited to the application of the Court's broad discretion in handling discovery."). This Court agrees with that position.

Under the reasonableness test, "courts consider the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances." Disability Rights Council, 234 F.R.D. at 6. Courts "commonly consider[] . . . but are not limited to" the following factors:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

Id. (citation omitted). The Court therefore turns to the factors identified in Disability Rights Council.

**(1) Whether a preliminary injunction is pending.** As the Court has already determined, the plaintiff has failed to satisfy the standard for preliminary injunctive relief. Therefore, no motion for a preliminary injunction remains pending.

**(2) The breadth of the discovery requests.** The discovery requested here, though it purports to be narrow, is actually quite broad. The plaintiff seeks permission for a third party forensic expert to access not only government property, but also personal property. See Pl.'s Mot. at 1 (seeking an order permitting inspection "by entering Defendants' premises or other location" of electronic media "whether for business or personal use"). Because the property at least partially comprises IRS computers, the searches would result in the disclosure of tax return and return information of individuals and entities that are not parties to this lawsuit in violation of 26 U.S.C. § 6103(a), as discussed above. Moreover, because discovery is sought from the individual defendants, the discovery is much broader than legally permissible at this point, because the individual defendants have all asserted qualified immunity defenses in their pending motions to dismiss. The Supreme Court has clearly instructed that "[o]nce a defendant pleads a defense of qualified immunity, . . . the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred" and "[u]ntil this threshold immunity question is resolved, discovery should not be allowed."[6] Siegert v. Gilley, 500 U.S. 226, 231 (1991) (citation and quotation marks omitted); see also Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("Moreover, because the entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving

[6] During oral argument, counsel for the plaintiff implicitly acknowledged this problem by indicating a willingness to treat the individual defendants differently than the IRS.

immunity questions at the earliest possible stage in litigation." (citation and quotation marks omitted) (emphasis in original)); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); Wuterich v. Murtha, 562 F.3d 375, 382 (D.C. Cir. 2009) (defense of qualified immunity "entitles government officials not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery . . . , as [i]nquiries of this kind can be particularly disruptive of effective government" (quotation marks and citation omitted) (emphasis in original)).

**(3) The purpose for requesting the expedited discovery.** Although the plaintiff repeatedly alleges that it will be harmed absent the recovery of any lost data, it is unclear why expedited discovery is needed, especially given ongoing efforts to recover and preserve the emails at issue by both the IRS and the TIGTA.

**(4) The burden on the defendants to comply with the requests.** The IRS represents that it has already expended a huge amount of resources on its document preservation efforts. See United States' Mem. at 3 ("Over 250 IRS employees have spent over 120,000 hours working to preserve and produce files related to this case and other Congressional investigations [and] [t]he IRS's efforts have cost nearly $10 million." (citation omitted)). As discussed above, the plaintiff requests access to both government and personal property, and granting that request would undoubtedly further burden the defendants. And again, the individual defendants have asserted a qualified immunity defense, and settled law "entitles government officials not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery" until those defenses have been addressed. Wuterich, 562 F.3d at 382.

**(5) How far in advance of the typical discovery process the request was made.**

Typically, discovery begins upon the resolution of any motions to dismiss. See, e.g., Bank of Am., N.A. v. FDIC, 908 F. Supp. 2d 60, 83-84 (D.D.C. 2012) ("[A] motion to dismiss is brought during the initial stages of a case, before discovery has commenced . . . ."). Because the defendants' motions to dismiss remain pending, the plaintiff's discovery request is premature. And although the IRS has known of the lost emails since June 2011, and failed to disclose the loss until recently, the Court cannot fault the defendants for the nondisclosures as related to this case as no disclosure obligation exists yet because discovery has not yet commenced.

In addition to the above factors, the fact that the plaintiff previously agreed to postpone a Rule 26(f) discovery conference until after the resolution of the pending motions to dismiss weighs against allowing expedited discovery. See Indv. Defs.' Mem., Ex. 1; Cin. Defs.' Mem., Ex. 1. The plaintiff's fears that emails or other information have been or might later be destroyed will not be alleviated by ordering the parties to draft a discovery plan or otherwise commence the discovery process immediately. Moreover, as a result of the filing of this case, the defendants are now on notice of their obligation to preserve any potentially relevant evidence, and the Court instructs the defendants to comply with that obligation. Overall, the reasonableness test factors weigh in favor of the defendants, with the exception of the fifth factor, which is neutral. Because the plaintiff has failed to satisfy either test for expedited discovery, the Court must therefore deny the plaintiff's request for this relief.

## IV. CONCLUSION

Because the plaintiff has not satisfied the standard for preliminary injunctive relief or the standard for expedited discovery, the Court denies the plaintiff's motion.[7]

**SO ORDERED** this 7th day of August, 2014.

REGGIE B. WALTON
United States District Judge

[7] An Order consistent with this Memorandum Opinion will be issued contemporaneously.