IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| TRUE THE VOTE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-00734-RBW |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT AS TO REMAINING
CLAIMS AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES**

**Table of Contents**

STATEMENT OF POINTS AND AUTHORITIES….……………………………………2

I.      Background……………………………………………………………………………2

        A.      Factual background……………………………………………………………2

        B.      The claims for declaratory and injunctive relief that remain following the D.C.
                Circuit opinion…………………………………………………………………4

II.     Plaintiffs' claims for declaratory and injunctive relief present no live or ongoing case or
        controversy for the Court to decide …………………………………………………....5

        A.      Plaintiff's claim for declaratory and injunctive relief in Count II is moot.............6

        B.      Plaintiff's claim for declaratory and injunctive relief in Count V is moot...........11

        C.      Plaintiff's claim in Count I for a determination of its
                tax-exempt status is moot…………………………………………………..12

III.    To the extent that Plaintiff alleges that it might be subjected to discriminatory conduct in
        the future, it is not now entitled to relief on such speculative claims…………………12

        A.      This Court lacks jurisdiction to consider future harm…………………………...12

                1.      Plaintiff lacks standing to claim future harm……………………………14

                2.      Any claim of future harm is not ripe…………………………….…17

        B.      The D.C. Circuit's opinion did not call into question this Court's previous
                rejection of the future harm allegations………………………………………18

IV.     Conclusion...............................................................................………19

# Table of Authorities

**Cases**                                              **Page(s)**

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) .................................................................................... 15

*Citizens for Responsibility & Ethics in Washington v. SEC,*
   858 F. Supp. 2d 51, 62-63 (D.D.C. 2012) ................................................................... 9

*City of Houston v. Dep't of Hous. & Urban Dev.,*
   24 F.3d 1421 (D.C. Cir. 1994) .................................................................................. 17

*Clapper v. Amnesty Int'l USA,*
   133 S. Ct. 1138 (2013) ............................................................................. 14, 15, 16, 17

*Cobell v. Jewell,*
   802 F.3d 12 (D.C. Cir. 2015) .................................................................................... 17

*Conservation Force, Inc. v. Jewell,*
   733 F.3d 1200 (D.C. Cir. 2013) ..................................................................... 13, 17, 18

*County of Los Angeles v. Davis,*
   440 U.S. 626 (1979) ................................................................................................... 6

*DeFunis v. Odegaard,*
   416 U.S. 312 (1974) ................................................................................................... 7

*Del Monte Fresh Produce Co. v. United States,*
   570 F.3d 316 (D.C. Cir. 2009) .................................................................................. 13

*Lujan v. Defs. Of Wildlife,*
   504 U.S 555 (1992) .............................................................................................. 13, 14

*Munsell v. Dep't of Agriculture,*
   509 F.3d 572 (D.C. Cir. 2007) ................................................................................ 6, 7

*NorCal Tea Party Patriots v. IRS,*
    No. 1:13-CV-341, 2014 WL 3547369 (S.D. Ohio July 17, 2014)............................................. 11

*Qassim v. Bush,*
    466 F.3d 1073 (D.C. Cir 2006) ......................................................................................... 13

*Raines v. Byrd,*
    521 U.S. 811 (1997)......................................................................................................... 14

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) ..................................................................................................... 14

*True the Vote v. IRS,*
    831 F.3d 551 (D.C. Cir. 2016) ................................................................................. passim

*True the Vote, Inc. v. IRS,*
    71 F. Supp. 3d 219 (D.D.C. 2014) ............................................................................. 13, 14

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990).......................................................................................................... 14

*Williams v. Lew,*
    819 F.3d 466 (D.C. Cir. 2016) .......................................................................................... 16

Constution

First Amendment .................................................................................................................... 4

Statutes

Administrative Procedure Act........................................................................................ 4, 11, 23

26 U.S.C. § 501(c) ......................................................................................................... Passim

26 U.S.C. § 7428.............................................................................................................. 4, 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| TRUE THE VOTE, INC. ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|    v. ) | Civil Action No. 1:13-cv-00734-RBW |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
|    Defendants. ) | |
| _____) | |

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT AS TO REMAINING
CLAIMS AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES**

On August 5, 2016, the D.C. Circuit affirmed the dismissal of Plaintiff's *Bivens*

(Count III) and wrongful inspection (Count IV) claims, but reversed and remanded the dismissal

of Plaintiff's other claims for equitable relief.  Those claims for declaratory and injunctive relief

are rooted in Plaintiff's allegations that the federal defendants targeted Plaintiff's application for

tax-exempt status under section 501(c)(3) of the Internal Revenue Code for heightened scrutiny

and issued unconstitutional and overly broad requests for information, all based on Plaintiff's

viewpoints, and that action on Plaintiff's application was unreasonably delayed.  In 2014, this

Court dismissed the now-remanded claims on the grounds of mootness.  But on Plaintiff's

appeal, which was combined for argument and decision with the similar claims presented in

*Linchpins of Liberty, Inc., et al. v. Internal Revenue Service*, No. 13-77 (D.D.C.), the D.C.

Circuit found that the United States had not established mootness under the voluntary cessation

doctrine because a small number of the *Linchpins* plaintiffs' applications for tax-exempt status

were still pending and because the evidence previously available to the Court did not establish

that the IRS has permanently suspended the conduct that gave rise to Plaintiff's claims.

The IRS has resolved the matters that concerned the D.C. Circuit and caused it to reverse and remand the declaratory and injunctive relief claims for further action consistent with its opinion.  True the Vote's application for tax-exempt status was granted earlier in this litigation, but now the IRS has acted on all the *Linchpins* plaintiffs' applications, where those plaintiffs still wished to receive a determination of their tax-exempt status, as described more fully in the motion for summary judgment filed today in that case.  The IRS also has permanently corrected the conduct that gave rise to Plaintiff's claims.  As a result, there remains no declaratory or injunctive relief that Plaintiff may obtain, and its remaining claims are thus moot. As described in more detail below, the United States is entitled to judgment dismissing the remaining claims.

## STATEMENT OF POINTS AND AUTHORITIES

**I.      Background.**

       A.      <u>Factual background.</u>

The events that form the basis of Plaintiff's Complaint are described in a 2013 Report from the Treasury Inspector General for Tax Administration ("TIGTA"), which found that, for an 18-month period starting in 2010, mismanagement and poor training resulted in the use of inappropriate criteria by IRS employees in the selection of applications for tax-exempt status for processing and additional scrutiny.  Specifically, TIGTA found that,

> The IRS used inappropriate criteria that identified for review Tea Party and other organizations applying for tax-exempt status based upon their names or policy positions instead of indications of potential political campaign intervention.  Ineffective management: 1) allowed inappropriate criteria to be developed and stay in place for more than 18 months, 2) resulted in substantial delays in processing certain applications, and 3) allowed unnecessary information requests to be issued.

(Doc. 14-6 at 3.)[1]  The report also outlined the interim steps that the IRS had already undertaken to fix the specific problems addressed in the report.  In addition to recommending that the IRS continue these interim steps, the TIGTA Report outlined nine additional steps that the IRS should take to ensure that the activity would not occur again.  As described in the attached declaration of Tamera L. Ripperda, the Director of the IRS Exempt Organizations Unit, the IRS implemented all those recommendations, as well as additional measures, to permanently change the procedures of the IRS to ensure that the events would not recur.

Within days of the issuance of the TIGTA Report, senior leadership and managers that permitted the activity were replaced and new leadership immediately began implementing changes to ensure that the events discussed in the TIGTA Report could never recur. (PSI Report at 172.)[2]  Following the Inspector General's report, various Congressional committees and subcommittees began their own investigations into the IRS.  For example, the Senate Finance Committee made findings similar to the ones outlined in the TIGTA Report and made further recommendations, which were implemented by the IRS, to ensure that the events would never occur again.[3]

---

[1] Citations to page numbers in record documents are to the page number in the upper right-hand corner assigned by the ECF system.

[2] On September 5, 2014, the United States Senate, Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, issued a report entitled, "IRS and TIGTA Management Failures Related to 501(c)(4) Applicants Engaged in Campaign Activity," S. Rpt. 113-26, *available at* https://www.gpo.gov/fdsys/granule/CPRT-113SPRT89800/CPRT-113SPRT89800/content-detail.html. *See also* S. Rep. No. 114-119, at 77 (2015).

[3] On August 5, 2015, the Senate Finance Committee released Senate Report 114-119, The Internal Revenue Service's Processing of 501(c)(3) and 501(c)(4) Applications for Tax-Exempt Status Submitted by "Political Advocacy" Organizations From 2010-2013, *available at* https://www.gpo.gov/fdsys/pkg/CRPT-114srpt119/html/CRPT-114srpt119-pt1.htm.

B.    The claims for declaratory and injunctive relief that remain following the D.C. Circuit opinion.

All of Plaintiff's claims relate to its application for tax-exempt status under Code section 501(c)(3).  In Count I, Plaintiff seeks a declaratory judgment under 26 U.S.C. § 7428 approving its tax-exempt status.[4]  (Doc. 14 ¶¶ 139-47; Doc. 14 at 47.)  After Plaintiff filed this action and before the United States filed its motion to dismiss the First Amended Complaint, the IRS granted Plaintiff's application.

True the Vote brings Count II under the First Amendment and seeks the following relief: (1) a declaration that the IRS "targeting scheme" and any other similar policies are unconstitutional under the First Amendment; and (2) an injunction to prevent the IRS from further implementing and applying the "targeting scheme"[5] and any other similar practices and policies.  (Doc. 14 ¶¶ 148-61; Doc. 14 at 47.)  Count V seeks the same declaratory relief as Count II, only under the Administrative Procedure Act.  (Doc. 14 ¶¶ 188-206; Doc. 14 at 47.)  Like Count II, Count V alleges that the federal defendants targeted Plaintiff's application for heightened scrutiny based on Plaintiff's viewpoints, and that the IRS deliberately delayed the consideration of Plaintiff's application.  (Doc. 14 ¶¶ 150-51, 155 (Count II allegations), ¶¶ 194,

---

[4] The D.C. Circuit "affirm[ed] the district court's dismissal of appellants' *Bivens* actions and statutory claims, but reverse[d] the district court's dismissal of the actions for injunctive and declaratory relief."  *True the Vote v. IRS*, 831 F.3d 551, 564 (D.C. Cir. 2016).  The D.C. Circuit opinion does not explicitly address Plaintiff's appeal of the dismissal of its section 7428 claim, which was brought pursuant to that statute for declaratory relief.  In the spirit of caution, we assume the claim for declaratory relief under section 7428 was among the claims for equitable relief that were reversed and remanded.

[5] In describing the "targeting scheme," Plaintiff alleges that the IRS engaged in a practice of subjecting certain applications for tax exemption to heightened scrutiny, unnecessary requests for information, and delays in processing based on the perception that the applicants espoused conservative points of view.  (Doc. 14 ¶¶ 73-74.)

204 (Count V allegations).)  Count V includes the additional allegation that the IRS asked

Plaintiff to provide information that was not necessary for the determination of its tax-exempt

status.  (Doc. 14 ¶¶ 199, 201.)

## II.    Plaintiffs' claims for declaratory and injunctive relief present no live or ongoing case or controversy for the Court to decide.

"As applied in the context of injunctive litigation, if there remains no conduct to be

enjoined, then normally there is no relief that need be granted, the case or controversy has

ceased, and the jurisdiction of the court has expired under Article III."  *True the Vote*, 831 F.3d

at 561.  That is the situation here, given that the IRS granted True the Vote's application for

tax-exempt status three years ago.

In reversing and remanding the dismissal of True the Vote's and the *Linchpins* plaintiffs'

claims for declaratory and injunctive relief, the D.C. Circuit was concerned that the United States

had not carried its heavy burden to show mootness under the voluntary cessation doctrine.  The

D.C. Circuit found that voluntary cessation had not occurred because some of the *Linchpins*

plaintiffs' applications had yet to be processed.  *True the Vote*, 831 F.3d at 561.  The D.C.

Circuit "advise[d] the IRS that a heavy burden of establishing mootness is not carried by proving

that the case is nearly moot, or is moot as to a 'vast majority' of the parties.  Their heavy burden

requires that they establish cessation, not near cessation."  *Id*. at 561.  But regardless of the

status of any of the *Linchpins* plaintiffs' applications, True the Vote's application was granted

three years ago, and its claims were moot as of that time.  To the extent that the D.C. Circuit

considered the status of the *Linchpins* plaintiffs' applications somehow relevant to True the

Vote's claims, the IRS has now acted upon all the *Linchpins* plaintiffs' applications,[6] as described in the motion for summary judgment filed today in that case.

The D.C. Circuit also was concerned that the United States had not shown that the IRS has permanently eradicated the conduct that gave rise to Plaintiff's claims.  In particular, the D.C. Circuit highlighted language from a June 2013 IRS report that the IRS has "suspended" the use of "Be-On-the-Lookout," or "BOLO" lists, as well as an IRS interim guidance memorandum announcing that the use of BOLO lists was "suspended until further notice."  *See True the Vote*, 831 F.3d at 563.  But the evidence now before this Court shows that the IRS has not just temporarily suspended the use of BOLO lists, but has permanently eliminated their use. (Ripperda Decl. ¶ 21.a; *see also* Statement of Material Facts ¶ 7.)  The IRS also has taken action to ensure that the other items about which Plaintiff complains are permanently resolved.  As discussed in more detail below as to the specific claims in each remaining count, there remains no declaratory or injunctive relief that Plaintiff may obtain.

      A.     <u>Plaintiff's claim for declaratory and injunctive relief in Count II is moot.</u>

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Munsell v. Dep't of Agriculture*, 509 F.3d 572, 581 (D.C. Cir. 2007) (quoting *County of Los Angeles v. Davis*, 440 U.S. 626, 631 (1979)).  "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.  The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial

---

[6] Except, as noted in the *Linchpins* motion to dismiss, for the *Linchpins* plaintiffs who previously had withdrawn their applications and later confirmed through their counsel that they do not wish the IRS to process their applications.

power depends upon the existence of a case or controversy."  *Id*. (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (internal quotation marks and citations omitted)).

Plaintiff's claims with respect to Count II are no longer live.  True the Vote brings Count II under the First Amendment and seeks the following relief:  (1) a declaration that the IRS "targeting scheme" and any other similar policies are unconstitutional under the First Amendment; and (2) an injunction to prevent the IRS from further implementing and applying the "targeting scheme" and any other similar practices and policies.  (Doc. 14 ¶¶ 148-61; Doc. 14 at 47.)

Those claims are rooted in Plaintiff's allegations that the federal defendants targeted Plaintiff's application for heightened scrutiny based on Plaintiff's viewpoints, and that the IRS deliberately delayed the consideration of Plaintiff's application.  (Doc. 14 ¶¶ 150-51, 155.)  As this Court observed and the D.C. Circuit agreed, Plaintiff's claims raise questions about the fairness of the *application* process.  In particular, the D.C. Circuit described True the Vote and the *Linchpins* plaintiffs as alleging "that their *applications for tax exempt status* were selected out" based on improper criteria.  *True the Vote*, 831 F.3d at 556 (emphasis added); *see also id.* ("Because their *applications* were subjected to extended delay and were not receiving the same processing as those of other organizations, and as they learned from other sources that the IRS might be employing improper and unconstitutional criteria, several applicants brought the present actions.") (emphasis added).[7]

_____

[7] The D.C. Circuit agreed that this Court "correctly identified the nature of this controversy and the nature of the government conduct subject to equitable relief."  *True the Vote*, 831 F.3d at 564.

Plaintiff's claims for declaratory and injunctive relief hinge on the existence of an *ongoing* practice of "targeting" and delay in the consideration of *its* application for tax exemption, but any such "targeting" or delay it experienced during the initial review of its application necessarily ended when the IRS acted on its application. Assuming that all of Plaintiff's factual allegations are true, at best Plaintiff describes a past event that carries no present threat of injury *to Plaintiff* since its application for tax-exempt status was acted on three years ago.

Even so, the IRS also has eliminated the conduct that formed the basis for Plaintiff's Complaint. Plaintiff bases its claims for declaratory and injunctive relief on its allegations that the IRS targeted Plaintiff's application for heightened scrutiny and issued unnecessary requests for information, all based on Plaintiff's viewpoints, and that the IRS unreasonably delayed the processing of its application. (Doc. 14 ¶¶ 150-51, 155, 194, 199, 201, 204.) The primary basis for those allegations is the TIGTA Report entitled "Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review," dated May 14, 2013 ("TIGTA Report of 2013"), which Plaintiff attached as Exhibit F to its First Amended Complaint. (Doc. 14 ¶¶ 81-108.) Assuming for purposes of this motion that Plaintiff's allegations of fact are true, Plaintiff nonetheless presents no live controversy for the Court to consider because the IRS has changed its practices to permanently eliminate the conduct complained of by Plaintiff. Not only is that conclusion supported by the attached declaration of Tamera L. Ripperda, the Director of the IRS Exempt Organizations Unit, but it also is supported by the findings of TIGTA, which provides

independent oversight of the IRS[8] and is a source that True the Vote itself has endorsed.

Following up on its initial report, TIGTA issued a new report, dated March 27, 2015, entitled

"Status of Actions Taken to Improve the Processing of Tax-Exempt Applications Involving

Political Campaign Intervention" ("TIGTA Report of 2015"), in which TIGTA concluded:

> The IRS has taken significant actions to address the nine recommendations made
> in our prior audit report.  These actions are designed to:  1) eliminate the selection
> of potential political cases based on names and policy positions, 2) expedite
> processing of Internal Revenue Code (I.R.C.) Section (§) 501(c)(4) social welfare
> organization applications, and 3) eliminate unnecessary information requests.

(TIGTA Report of 2015 at 2.)[9]  The IRS confirms that it has addressed all nine of TIGTA's

recommendations made in its initial report.  (Ripperda Decl. ¶ 21.)

Specifically as to the concerns raised in the Complaint, the IRS changed its procedures to

eliminate the use of BOLO lists or names, such as "Tea Party," "Patriots," or "9/12," to select

applications for review, examples cited by Plaintiff.  (Doc. 14 ¶¶ 83, 107.)  In its new report,

TIGTA notes that the IRS suspended the use of the BOLO list in June 2013 and that "decisions

---

[8] *See Citizens for Responsibility & Ethics in Washington v. SEC*, 858 F. Supp. 2d 51, 62-63
(D.D.C. 2012) (noting that existence of a report from the independent Office of Inspector
General gave the court "additional comfort that the SEC is taking seriously [the p]laintiff's
concerns with the prior policy and is undertaking efforts to ensure" its discontinuation).

[9] This Court's prior mootness ruling was issued before the TIGTA Report of 2015.  As the D.C.
Circuit noted, that report was not part of the record on appeal and could not be considered for the
first time on appeal.  But the D.C. Circuit also noted that "the government is free to offer the
document in the district court."  *True the Vote*, 831 F.3d at 562.  In its motion to dismiss, the
United States had not argued that the claims for declaratory and injunctive relief were moot on
the grounds of the elimination of the BOLO list and other changes in IRS practices.  The United
States' mootness argument in the motion to dismiss was limited to the fact that True the Vote's
application for tax-exempt status had already been granted.  Because of that procedural posture,
the appellate record lacked evidence submitted by the United States in support of mootness, such
as the 2015 TIGTA Report and IRS declaration, that now are before this Court.

on referrals containing emerging issues are being made based upon activities and not names or policy positions."  (TIGTA Report of 2015 at 3, 4.)[10]  The IRS has confirmed that the suspension of the BOLO list is permanent, and that review of applications is based on the applicants' activities, not merely names or labels.  (Ripperda Decl. ¶ 21.a; *see also* Statement of Material Facts ¶ 7.)

The IRS also has permanently changed its procedures regarding the additional information that it might seek from applicants to ensure that the information requested is appropriate for the processing of an application.  Plaintiff's complaint (Doc. 14 ¶¶ 199, 201) that it was asked for additional information in support of its application for tax exemption and that the TIGTA Report of 2013 had determined that certain questions were unnecessary is thus moot. Even assuming those allegations are true, the IRS now has "developed and provided extensive political campaign intervention training for relevant Rulings and Agreements office employees, including all Determinations Unit employees."  (TIGTA Report of 2015 at 7; *see also* Ripperda Decl. ¶ 21.d.)  The TIGTA Report of 2015 also concludes that "[t]he required training appropriately addressed . . . the type of additional information that should be requested and the appropriate wording of questions in additional information request letters."  (TIGTA Report of 2015 at 8.)  But even if the IRS had not changed its procedures about the additional information that it might seek in the application stage, and if the IRS also had not instituted training on that topic that TIGTA has found to be effective, this Plaintiff would not continue to suffer from any

---

[10] The 2013 TIGTA Report did not recommend elimination of the BOLO list.  Instead, TIGTA merely suggested that the process of editing the BOLO list be made subject to supervisory review.  (Doc. 14-6 at 17.)  By eliminating the use of the BOLO list altogether, the IRS has gone beyond even what TIGTA recommended.

potentially inappropriate requests for information in the processing of its application because its application already was processed – and its tax-exempt status granted – three years ago.[11]  And as to the allegation of delay in Count II, True the Vote is no longer experiencing delay in the processing of its application, which was granted three years ago.

      B.     <u>Plaintiff's claim for declaratory and injunctive relief in Count V is moot.</u>

Count V seeks the same declaratory relief as Count II, only under the Administrative Procedure Act.  (Doc. 14 ¶¶ 188-206; Doc. 14 at 47.)  Like Count II, Count V alleges that the federal defendants targeted Plaintiff's application for heightened scrutiny based on Plaintiff's viewpoints, and that the IRS deliberately delayed the consideration of Plaintiff's application.  (Doc. 14 ¶¶ 150-51, 155 (Count II allegations), ¶¶ 194, 204 (Count V allegations).)  Count V includes the additional allegation that the IRS asked Plaintiff to provide information that was not necessary for the determination of its tax-exempt status.  (Doc. 14 ¶¶ 199, 201.)

As Count V seeks the same declaratory and injunctive relief as Count II, the Count V claim is moot for the same reasons discussed above in relation to Count II.  And as to the additional allegation that the IRS requested unnecessary information, the discussion above in part II.A shows the steps the IRS has taken to ensure that it seeks only appropriate information from applicants.

---

[11] This result is consistent with the ruling in another case that presented similar claims for declaratory and injunctive relief based on those plaintiffs' claims that the IRS had used unconstitutional criteria to select their applications for tax-exempt status for review, had issued irrelevant requests for information based on their viewpoints, and had unreasonably delayed the processing of their applications.  In that case, the United States District Court for the Southern District of Ohio found that the similar "claim[s] for declaratory and injunctive relief cannot be brought by the other Plaintiff Groups who have either had their applications for tax exempt status ruled upon or have withdrawn their applications."  *NorCal Tea Party Patriots v. IRS*, No. 1:13-CV-341, 2014 WL 3547369, at *9 n.11 (S.D. Ohio July 17, 2014).

    C.    <u>Plaintiff's claim in Count I for a determination of its tax-exempt status is moot.</u>

In Count I, True the Vote seeks a declaratory judgment under 26 U.S.C. § 7428 of its tax-exempt status.  As described above, the IRS granted True the Vote's application three years ago, leaving no further relief for the Court to grant True the Vote under this Count.

**III.    To the extent that Plaintiff alleges that it might be subjected to discriminatory conduct in the future, it is not now entitled to relief on such speculative claims.**

Notwithstanding that the Plaintiff's Complaint is limited to allegations of targeting in the application process and notwithstanding that the IRS granted Plaintiff's application three years ago, Plaintiff has suggested that it still needs declaratory and injunctive relief to protect it from the alleged "targeting scheme" by the IRS.  (Doc. 65 at 6, 12-13.)  Plaintiff ventures outside the Complaint to raise vague and speculative assertions about how the IRS might treat Plaintiff as a tax-exempt organization.  For instance, without alleging that it has ever been subject to a discriminatory audit, Plaintiff hypothesizes that it might face one in the future.  This Court previously rejected Plaintiff's attempt to argue future harm because the allegations were not adequately pled in the Complaint and because, in any event, it relied so heavily on unfounded conjectures that were insufficient to confer jurisdiction.  These reasons for dismissal remain appropriate, and nothing in the D.C. Circuit's opinion casts doubt on them.

    A.    <u>This Court lacks jurisdiction to consider future harm.</u>

Even if Plaintiff's failure to adequately plead future harm did not independently bar its argument, this Court would nonetheless lack jurisdiction to consider the claim because it relies on nothing more than speculation.  The conjectural nature of the claim implicates two independent jurisdiction barriers: standing and ripeness.  Unlike with Plaintiff's claim of past harm, this is not a question of voluntary cessation.  That is because the "'voluntary cessation . . . exception' appli[es] where [a] plaintiff would be 'subject[ed] . . . to the *same* harm'" in the future

that it faced prior to cessation.  *True the Vote, Inc. v. IRS*, 71 F. Supp. 3d 219, 228–29 (D.D.C.

2014) (quoting *Qassim v. Bush*, 466 F.3d 1073, 1075 (D.C. Cir 2006)) (emphasis and first,

fourth, and fifth alterations in District Court's opinion), *aff'd in part, rev'd in part and*

*remanded*, 831 F.3d 551 (D.C. Cir. 2016).  As this Court noted, the harm that Plaintiff says it

faced came from an "alleged IRS 'targeting scheme' during the plaintiff's tax-exempt application

process."  *Id.* at 228.  By contrast, Plaintiff now theorizes without any factual support that it

might at some point encounter different consequences now that its application has been

approved.

   As a result, Plaintiff faces the same hurdles as all litigants alleging that they have not yet

suffered a particular harm but might at some future time.  *See Conservation Force, Inc. v. Jewell*,

733 F.3d 1200, 1206 (D.C. Cir. 2013) (noting that a plaintiff claiming future harm must

"demonstrate both that 'the request for declaratory relief is ripe' and that [it has] 'standing to

bring such a forward-looking challenge'") (quoting *Del Monte Fresh Produce Co. v. United*

*States*, 570 F.3d 316, 321 (D.C. Cir. 2009)).  Whereas the Government bore the burden on

voluntary cessation, here it shifts to Plaintiff to establish standing and ripeness.  *Lujan v. Defs. of*

*Wildlife,* 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of

establishing [it].").  To carry that burden, Plaintiff must allege more than prior discrimination.

*See id.* at 564 ("Past exposure to illegal conduct does not in itself show a present case or

controversy . . . if unaccompanied by any continuing, present adverse effects.") (internal

quotation marks omitted).  Here, Plaintiff lacks standing to allege future harm, and even if it had

standing, the claim still would not be ripe.

1.      *Plaintiff lacks standing to claim future harm.*

Plaintiff previously raised the argument that jurisdiction is proper based on the "prospect of future harm," and this Court properly rejected the contention as "speculative." *True the Vote*, 71 F. Supp. 3d at 228.  Indeed, one of the "irreducible" requirements for standing is an "injury in fact." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).  That means that the alleged injury must be "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted).  Allegations of future harm can meet this standard only if the threatened injury is "certainly impending" or there is a "substantial risk" that it will occur.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143, 1150 n.5 (2013) (internal quotation marks omitted); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (same).  By contrast, "'[a]llegations of *possible* future injury' are not sufficient."  *Clapper*, 133 S. Ct. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis and alteration in original).  Standing requirements are "built on separation-of-powers principles" and serve "to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* at 1146.  Thus, Plaintiff's burden to show an injury in fact is "especially rigorous" when, as here, "reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

*Clapper* is a prime example of why Plaintiff lacks standing to argue future harm.  That case involved a challenge to Section 702 of the Foreign Intelligence Surveillance Act of 1978, which allows the Attorney General and the Director of National Intelligence to jointly request court approval to surveil individuals who are "not United States persons and are reasonably believed to be located outside the United States." *Clapper*, 133 S. Ct. at 1142 (internal quotation

marks and footnote omitted).  The plaintiffs alleged that their jobs required them to communicate with individuals abroad who might be subject to surveillance under Section 702.  *Id.*  For instance, some of the plaintiffs were lawyers who, as part of their jobs, talked to family members of suspected terrorists.  *Id.* at 1156–57 (Breyer, J., dissenting).

The Supreme Court concluded that the plaintiffs lacked standing because they "have no actual knowledge" that their communications would be intercepted under the challenged law and instead "merely speculate and make assumptions."  *Id.* at 1148 (majority opinion).  As a result, the prospect of harm was too remote to confer standing.  In particular, the Court held that the plaintiffs' "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending."  *Id.*

Similarly, the D.C. Circuit routinely has found standing to be lacking based on the uncertainty of future harm.  For instance, the Court declined to exercise jurisdiction over a sheriff's challenge to the Department of Homeland Security's decision to defer "low-priority removals of non-dangerous [persons unlawfully present in the country] so that the [relevant] agencies can focus their resources on removing dangerous criminals and strengthening security at the border."  *Arpaio v. Obama*, 797 F.3d 11, 14 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 900 (2016).  The sheriff alleged that the policy would result in more crimes being committed, which in turn would force him to "spend more money policing [his] county and running its jails."  *Id.* The Court rejected this inference, noting that "[w]hen considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events . . ., as well as predictions of future injury that are not normally susceptible of labelling as 'true' or 'false.'"  *Id.* at 21 (internal quotation marks omitted).

Likewise, the D.C. Circuit rejected a challenge to the Debt Limit Statute (31 U.S.C. § 3101) brought by a holder of U.S. debt. *Williams v. Lew*, 819 F.3d 466, 469 (D.C. Cir. 2016). The plaintiff alleged that the statute, which places constraints on the Government's debt level, injured him by making a Government default more likely. *Id.* at 472. The Court concluded that the plaintiff lacked standing to pursue his "entirely conjectural" theory. *Id.* at 473. In other words, because he "fails plausibly to allege that any future injuries are '*certainly impending* to constitute injury in fact,' he cannot rely on such injuries to establish Article III standing." *Id.* (quoting *Clapper*, 133 S. Ct. at 1147) (emphasis in original).

The allegations here are just as speculative as they were in those other cases. Indeed, in order for the future harm to materialize, at least four events would have to occur. First, the IRS would need to resume use of improper criteria. For the reasons explained above, this is not only speculative, but also contrary to the IRS's unequivocal representations. Second, even if improper criteria were used in the future, they would need to be employed in contexts other than those alleged in the Complaint. As discussed, Plaintiff's Complaint alleges discrimination in the application process, but its future harm argument focuses on post-application treatment by the IRS.[12] Third, Plaintiff would need to face some type of future scrutiny, such as through an audit. And finally, the scrutiny would need to be caused by an improper motive. Plaintiff cannot sufficiently establish even one link, let alone all four, in this chain. As in *Clapper*, *Arpaio*, and *Williams*, Plaintiff's "theory of standing, which relies on a highly attenuated chain of

---

[12] The IRS has confirmed that Plaintiff is neither more nor less likely to be audited at some point in the future based on any additional scrutiny using inappropriate criteria that may have taken place during its application process. (Ripperda Decl. ¶ 27-29.)

possibilities, does not satisfy the requirement that threatened injury must be certainly

impending."  *Clapper*, 133 S. Ct. at 1148.

          2.     *Any claim of future harm is not ripe.*

      Even a plaintiff that demonstrates standing must also establish ripeness.  *See City of*

*Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994) (noting that if a

plaintiff has standing, declaratory relief is proper only "if the claim is ripe for review").  Like

standing, ripeness serves to prevent the expenditure of resources on speculative claims.  *See*

*Cobell v. Jewell*, 802 F.3d 12, 21 (D.C. Cir. 2015) ("Ensuring that issues presented are ripe for

decision protects against the premature adjudication of abstract disagreements and reserves

judicial power for resolution of concrete and fully crystalized disputes.") (internal quotation

marks omitted).  Ripeness involves two inquiries: "(1) the fitness of the issues for judicial

decision and (2) the hardship to the parties of withholding court consideration." *Id.* (internal

quotation marks omitted).

      Plaintiff fails the fitness for judicial decision prong for the same reason it lacks

standing—namely, the claim is too attenuated.  In *Conservation Force*, the plaintiffs challenged

alleged delays by the Fish and Wildlife Service in evaluating applications for permits to import

certain hunting "trophies."  733 F.3d at 1205.  As the lawsuit was pending, the Service issued a

proposed rule that would eliminate the permit requirement.  *Id.* at 1206.  The plaintiffs claimed

that they nonetheless could suffer future harm, and the D.C. Circuit acknowledged that this harm

could materialize if the following chain of events occurred: 1) the Service did not finalize the

proposed rule; 2) the plaintiffs, following the failure to finalize the rule, sought permits; and 3)

the Service unreasonably delayed acting on their applications.  *Id.*  However, the Court

determined that the challenge was not ripe because there was "no reason to entangle [itself] in

the issue based on such a speculative possibility." *Id.* (internal quotation marks and alternation

omitted).  Plaintiff's future harm claim is similarly not ripe because, as discussed, it relies on a

highly attenuated chain of events.

Plaintiff is also unable to demonstrate hardship from deferred review. The Court noted in

*Conservation Force* that the lack of any "outstanding permit application that is presently being

delayed" cut against finding hardship. *Id.* at 1207.  Similarly, Plaintiff does not have any

outstanding application for tax-exempt status.  Its application already has been approved.  If

Plaintiff believes at some future time that it has faced discrimination outside of the application

process, it might have a ripe challenge at that point.  Until then, however, the future harm claim

is premature.

<p style="padding-left: 2em;">B. <u>The D.C. Circuit's opinion did not call into question this Court's previous<br>rejection of the future harm allegations.</u></p>

The D.C. Circuit's opinion did not cast doubt on either of the two reasons—that the

allegations were not in the Complaint and that there is no jurisdiction—this Court previously

gave for rejecting the future harm allegations.  In particular, the D.C. Circuit described Plaintiff

and other challengers as alleging "that their *applications for tax exempt status* were selected out"

based on improper criteria.  *True the Vote*, 831 F.3d at 556 (emphasis added); *see also id.*

("Because their *applications* were subjected to extended delay and were not receiving the same

processing as those of other organizations, and as they learned from other sources that the IRS

might be employing improper and unconstitutional criteria, several applicants brought the

present actions.") (emphasis added).  Thus, the D.C. Circuit, like this Court, understood

Plaintiff's Complaint to be limited to alleged harm that occurred during the application process.

The D.C. Circuit, in remanding for further proceedings to determine whether allegations related

to the application process were moot, did not give Plaintiff license either to venture outside the

<p style="text-align: center;">18</p>

Complaint or to raise a speculative claim of future harm. As a result, this Court should, as it previously did, reject Plaintiff's attempt to manufacture jurisdiction based on an unsubstantiated future harm theory.

## IV.    Conclusion.

No one disputes that the IRS used certain criteria and engaged in other conduct in processing applications for tax-exempt status that it should not have done, both as found by TIGTA and acknowledged by the IRS itself. Whether what went wrong rises to the level of a constitutional injury is an issue that this Court has yet to decide, and the United States has not conceded that legal point. But something having gone wrong in the processing of applications, whether it constitutes a constitutional injury or not, the point remains that what happened next is exactly what should have happened: an independent oversight body (TIGTA) became involved and conducted an extensive investigation of what happened, it made its recommendations to correct the objectionable conduct, and the IRS implemented all of those recommendations. And all of that took place with the additional and intense scrutiny of Congress exercising its oversight function. Something having gone wrong in the first place, the process to correct that problem worked as it was supposed to, leaving no need for the Court to grant declaratory or injunctive relief.

The fact that the IRS granted True the Vote's application three years ago leaves no live or ongoing issues to be resolved as to its claims, which centered on the application process. And, as described, the IRS has permanently changed its procedures that gave rise to Plaintiff's claims. As a result, Plaintiff is not entitled to the declaratory and injunctive relief that it seeks.

DATED: November 11, 2016

Respectfully submitted,

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General
Tax Division

s/ Joseph A. Sergi
JOSEPH A. SERGI (DC 480837)
Senior Litigation Counsel
U.S. Department of Justice, Tax Division
555 4th Street, N.W., JCB 7207
Washington, D.C. 20001
(202) 305-0868; (202) 307-2504 (FAX)
Joseph.A.Sergi@usdoj.gov

LAURA C. BECKERMAN (CA 278490)
LAURA M. CONNER (VA 40388)
JOSEPH R. GANAHL (MD)
JEREMY N. HENDON (OR 982490)
GERALD A. ROLE (DC 415274)
Trial Attorneys
U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C. 20001
(202) 514-2000

Of Counsel:
CHANNING D. PHILLIPS
United States Attorney

ATTORNEYS FOR THE UNITED STATES

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ ) |  |  |
| TRUE THE VOTE, INC. | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 1:13-cv-00734-RBW |
|  | ) |  |
| UNITED STATES OF AMERICA, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____) |  |  |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2016, the United States' Motion for Summary Judgment as to Remaining Claims and Supporting Statement of Points and Authorities in the above-captioned matter was filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

s/ *Joseph A. Sergi*
JOSEPH A. SERGI