UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRUE THE VOTE, INC.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**INTERNAL REVENUE SERVICE, *et al*.,**<br><br>*Defendants*. | Civ. No. 13-cv-00734-RBW<br><br>**Oral Hearing Requested** |

# NOTICE AS TO PLAINTIFF'S ENTITLEMENT TO DECLARATORY RELIEF

On October 14, 2016, this Court ordered the Plaintiff to advise the Court as to what declaratory relief the Plaintiff believes it is entitled to receive based on the current record. (Dkt. 109.) Plaintiff TTV ("TTV"), through counsel, respectfully submits this notice in response to the Court's order.

**Procedural History**

On July 15, 2010, TTV filed its application for recognition as a tax-exempt entity with the Internal Revenue Service ("IRS"). (First Amend. Compl. (Dkt. 14-6), ¶ 53.) Pursuant to a viewpoint-based policy that identified and subjected certain organizations to heightened review and scrutiny, the IRS intentionally delayed TTV's application for over three years, and propounded numerous, unnecessary, and burdensome requests for information on it. (*Id*. ¶¶ 73-129.)

As alleged by TTV, the Defendants "developed and implemented a written and unwritten policy for identifying and subjecting certain applicants for tax-exempt status to additional and heightened review and scrutiny, based solely on a notion . . . that groups should be targeted for

1

such review based on their purpose, mission, and/or name(s)." (Dkt. 14 ¶ 73) (hereafter, the "Targeting Scheme").

On July 22, 2013, TTV filed the First Amended Verified Complaint against the IRS, the United States of America, and several IRS officials in both their official and individual capacities. (Dkt. 14.)

The Amended Complaint contained five counts:

> (1) Count one seeks declaratory relief that TTV is entitled to enjoy tax-exempt status as a charitable organization described in 26 U.S.C. § 501(c)(3) (2012). (*See* Dkt. 14 ¶¶ 140-41.)
>
> (2) Count two seeks a declaratory judgment that the Targeting Scheme violated TTV's First Amendment rights, and injunctive relief to prevent additional violations of those rights. (*See id*. ¶¶ 150-52, 158.)
>
> (3) Count three seeks monetary damages under *Bivens* against certain defendants in their individual capacities for their participation in the Targeting Scheme. (*See id*. ¶¶ 164-65.)
>
> (4) Count four seeks monetary damages for unauthorized disclosures and inspections of TTV's tax return information in violation of 26 U.S.C. § 6103. (*See id*. ¶¶ 168-187.)
>
> (5) And count five asserts violations of the Administrative Procedure Act for the Targeting Scheme. (*See id*. ¶¶ 189-206.)

On September 26, 2013, in response to this litigation, the IRS finally granted TTV's application for recognition as a tax-exempt organization. (Dkt. 65-1.) On October 23, 2014, this Court dismissed TTV's Amended Complaint in its entirety. *True the Vote, Inc. v. IRS*, 71 F. Supp. 3d 219 (D.D.C. 2014).

On August 5, 2016, the United States Court of Appeals for the D.C. Circuit reversed this Court's determination that TTV's claims for declaratory and injunctive relief were moot. *True the Vote, Inc. v. IRS*, 831 F.3d 551 (D.C. Cir. 2016). The D.C. Circuit held that the IRS's decision to grant TTV's application for recognition as a tax-exempt entity did not moot TTV's

2

claims for declaratory and injunctive relief for violations of TTV's First Amendment rights. *See id*. at 561-63. The D.C. Circuit further held that the IRS "has not carried its burden to establish mootness because it has not demonstrated that (1) there is no reasonable expectation that the conduct will recur [or] (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id*. at 562-63 (internal quotations and citations omitted). The D.C. Circuit concluded: "The allegations of the complaint are quite sufficient to warrant a merits disposition based on adjudication of substantive evidence, not simply a dismissal at the pleadings stage." *Id*. at 563. The D.C. Circuit remanded for further proceedings consistent with its opinion. *Id*. at 564.

On October 12, 2016, the parties appeared before this Court for a status conference. At the conclusion of that conference, this Court ordered TTV to advise the Court, on or before November 11, 2016, "as to what declaratory relief, if anything, it believes it is entitled to receive based on the current record." (Dkt. 109.)

**Argument**

Based on the undisputed facts on the record, TTV is entitled to a declaration that the IRS violated its First Amendment rights by engaging in viewpoint discrimination. But that alone does not resolve this case. There are many governmental documents that TTV intends to introduce into the record that further illuminate the allegations raised in its First Amended Complaint and that demonstrate the need for additional declaratory and injunctive relief. Further, the Government has sole possession of many relevant documents and information that TTV cannot obtain except through discovery. Without such discovery, the Court will not have a fully

developed record upon which it can fashion appropriate declaratory and injunctive relief—including the relief described herein.[1]

## I.     TTV Is Entitled to a Declaration that the IRS Violated its First Amendment Rights by Engaging in Viewpoint Discrimination.

TTV alleges that the IRS targeted it for discriminatory treatment based solely on its name and perceived political viewpoint (the "Targeting Scheme") (*see*, *e.g.*, Dkt. 14 ¶¶ 73-76.) Under this scheme, the IRS subjected TTV to a more burdensome and lengthy review process and demanded information from it that was "far too broad, asking questions of these organizations that weren't really necessary for the type of application." (Dkt. 14 ¶ 78.)

TTV's allegations were confirmed by the Treasury Inspector General for Tax Administration ("TIGTA"). (*See* Dkt. 14-6, hereafter, the "TIGTA Report.") The TIGTA Report found that TTV and other nonprofit groups were subjected to unwarranted and significant delays, burdensome demands for information, and other disparate treatment based on "inappropriate" criteria. According to TIGTA, the "inappropriate" criteria used by the IRS to target TTV and other organizations for discriminatory treatment included names and perceived conservative philosophies.

As the TIGTA Report concludes, "[b]y July 2010"—the time TTV submitted its application to the IRS—"Determinations Unit management stated that it had requested its specialists to be on the lookout for Tea Party applications." (Dkt. 14-6 at 12.) In August 2010, the criteria were formalized into a "be on the lookout" (BOLO) listing that was "distributed" throughout the Determinations Unit. (*Id.*) Subsequently, "expanded criteria" were developed that

---

[1] While TTV believes that it is entitled to discovery in the ordinary course, it intends to advise the Court regarding certain specific discovery it will seek once it has an opportunity to review the Motion for Summary Judgment filed by the Government (Dkt. 112).

included "additional names (Patriots and 9/12 Project) as well as policy positions espoused by organizations in their applications." (*Id.*) "The criteria focused narrowly on the names and policy positions of organizations instead of tax-exempt laws and Treasury Regulations." (*Id.* at 12-13.) Indeed, the following name and viewpoint-based criteria were used to determine that an applicant would be subjected to a more scrutinizing and substantially more time-consuming and expensive review process than applicants that did not share these names and philosophies:

- "Tea Party," "Patriots," or "9/12 Project" is referenced in the case file;
- Issues include U.S. Government spending, U.S. Government debt, or taxes;
- Education of the public via advocacy/lobbying to "make America a better place to live."; and/or
- Statements in the case file critical of how the country is being run.

(Dkt. 14-6 at 12; *see also*, Dkt. 14 ¶ 77 (applications for tax-exempt status selected for further review and scrutiny "simply because the applications" "used names like Tea Party or Patriots").)

At the most recent hearing in this case, the IRS admitted that it engaged in the conduct described by TIGTA.

> [T]he United States agrees this case started with the report issued by TIGTA. And the Tax Inspector General report found that the IRS used inappropriate criteria to identify tax exempt applications for review. The United States agrees with and has never disputed that conclusion …
>
> [T]he United States does not dispute and agrees with all these findings that inappropriate criteria were used to select applications for scrutiny, and that ineffective management in the IRS allowed that to continue for 18 months.

Transcript of Status Conference Hearing, *True the Vote, Inc. v. Internal Revenue Service*, No. 1:13-cv-0734, at 5:24-6:18 (Oct. 12, 2016).

The IRS's admitted use of viewpoint-based criteria in its administration of the tax code is *per se* unconstitutional. Reviewing a case similar to this one, the D.C. Circuit "stated directly that, 'in administering the tax code, the IRS may not discriminate on the basis of viewpoint …..'" *True the Vote, Inc. v. IRS*, 831 F.3d 551, 560-61 (D.C. Cir. 2016) (quoting *Z St. v. Koskinen*, 791

5

F.3d 24, 30 (D.C. Cir. 2015). On appeal in this case, the D.C. Circuit affirmed that "'to process exemption applications pursuant to different standards and at different rates depending upon the viewpoint of the applicants" is 'a blatant violation of the First Amendment.'" *True the Vote*, 831 F.3d at 560-61 (quoting *Z St.*, 791 F.3d at 30). The D.C. Circuit was clear: the "IRS cannot defend its discriminatory conduct on the merits." *True the Vote, Inc*., 831 F.3d at 561.

Indeed, "the minimum requirement of neutrality is that a law not discriminate on its face." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533, 113 S. Ct. 2217, 2226 (1993). The written forms of the Targeting Scheme utterly fail this basic test of neutrality. As the D.C. Circuit found, the TIGTA Report is "replete with details of discriminatory processing and delay." *True the Vote*, 831 F.3d at 559.

By its very terms, the Targeting Scheme discriminated based on applicants' names and perceived political and philosophical viewpoints. In other words, "the specific motivating ideology or the opinion or perspective of the [applicant] [was] the rationale for the" Targeting Scheme. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Where a law discriminates against certain viewpoints on its face, it cannot be neutral and a discriminatory purpose is *presumed*:

> Discrimination against speech because of its message is presumed to be unconstitutional….When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

*Id.* at 828-29 (internal citations omitted); *see also Cincinnati v. Discovery Network*, 507 U.S. 410, 429 (1993) (explaining that "the *mens rea* of the city" is irrelevant where, by its terms, the law discriminates based on content).

The Supreme Court has specifically applied these principles to tax administration. "It is settled that speech can be effectively limited by the exercise of the taxing power. To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech. Its deterrent effect is the same as if the State were to fine them for this speech." *Speiser v. Randall*, 357 U.S. 513, 518 (1958) (internal citation omitted).

Because such blatant viewpoint discrimination constitutes a plain violation of the Constitution, TTV is entitled to a declaratory judgment that the IRS violated its First Amendment rights. But the case does not end there. In this case, the D.C. Circuit held that the IRS has not demonstrated that it has ceased using viewpoint-based criteria in its administration of the tax code. *True the Vote, Inc.*, 831 F.3d at 561-64. Therefore, additional relief is necessary here.

II.   **TTV is Entitled to a Declaration Preventing the Dissemination of the Information Unlawfully Obtained by the IRS to the Public.**

As stated by TTV in its Motion to Stay Agency Action (Dkt. 68), now that the IRS has—after more than three years, granted TTV's application for recognition of tax-exempt status—both the IRS and TTV are required to allow inspection of or provide a copy of TTV's application to anyone who asks for it. 26 U.S.C. § 6104(a)(1)(A) and (d)(1)(A)(i). In fact, once a request is made, TTV will face a $10 per-day penalty for each day it fails to produce the application. 26 U.S.C. § 6652(c)(1).

TTV's application materials include "any papers submitted in support of such application and any letter or other document issued by the IRS with respect to such application." 26 U.S.C. § 6104(a)(1)(4) and (d)(5). However, documents that are in the IRS's possession, but that are not related to an organization's application for tax exemption, are not subject to the public disclosure requirements of Section 6104. *Tax Analysts v. IRS*, 410 F.3d 715, 717 (D.C. Cir. 2005).

7

The information and documents provided to the IRS by TTV contained confidential information that TTV would not been forced to provide had the IRS processed TTV's application in the normal, customary, and lawful manner. One of the issues in the current litigation is whether the IRS's demands for information from TTV violated TTV's constitutional rights and the Administrative Procedure Act and, therefore, whether the information and documents obtained by the IRS as a result of those demands are related to and thus part of, TTV's application. If the IRS's actions are found unlawful, TTV will be irreparably harmed if its confidential information and documents are made part of TTV's application and publicly disclosed under Section 6104.

Any information and documents submitted by TTV in its Form 1023, in the response to the IRS demand for information dated February 15, 2011, or in the November 8, 2011 supplement to that response, are however, properly considered part of TTV's application.

TTV has no other remedy to ensure that the documents in question are not improperly released. *See*, *e.g*., 26 U.S.C. §§ 6104(a)(1)(D), (d)(4); 6110(1)(l). This Court has the authority to prevent this irreparable harm by declaring that the information unlawfully obtained by the IRS shall be expunged and returned to TTV. 5 U.S.C. § 705 ("On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process . . . to preserve status or rights pending the conclusion of the review proceedings."). TTV is not asking the Court to prevent the operation of Section 6104 in its entirety but only with respect to the documents and information that were demanded by the IRS in perpetration of the Targeting Scheme that is the subject of this litigation.

**CONCLUSION**

TTV is entitled to a declaration on the current record that the IRS violated its First Amendment rights by engaging in viewpoint discrimination. But the case does not end there. In addition to the need for further declaratory relief, TTV has alleged ongoing harm for which injunctive relief is necessary. This filing responds narrowly to the Court's order requesting declaratory relief on the current record. TTV intends to seek additional declaratory and injunctive relief upon development of the record.

Dated: November 11, 2016

Respectfully submitted,

   /s/Noel H. Johnson

| | |
|---|---|
| Michael J. Lockerby (D.C. 502987) | Kaylan L. Phillips (D.C. 1110583) |
| Cleta Mitchell (D.C. 433386) | Noel H. Johnson (Wisc. 1068004)* |
| FOLEY & LARDNER, LLP | PUBLIC INTEREST LEGAL |
| Washington Harbour | FOUNDATION |
| 3000 K Street, N.W., Suite 600 | 209 West Main Street |
| Washington, DC 20007 | Plainfield, IN 46168 |
| (202) 672-5300 (telephone) | (317) 203-5599 (telephone) |
| (202) 672-5399 (fax) | (888) 815-5641 (fax) |
| mlockerby@foley.com | kphillips@publicinterestlegal.org |
| cmitchell@foley.com | njohnson@publicinterestlegal.org |
| *Lead Counsel for Plaintiff* | *Counsel for Plaintiff* |
| | |
| William E. Davis (D.C. 280057) | John C. Eastman (Cal. 193726)* |
| Mathew D. Gutierrez (Fla. 0094014)* | Center for Constitutional Jurisprudence |
| FOLEY & LARDNER, LLP | c/o Chapman University Fowler School of Law |
| One Biscayne Tower | |
| 2 South Biscayne Boulevard | One University Drive |
| Suite 1900 | Orange, CA 92866 |
| Miami, FL 33131 | (877) 855-3330 x2 (telephone) |
| (305) 482-8404 (telephone) | (714) 844-4817 (fax) |
| (305) 482-8600 (fax) | jeastman@chapman.edu |
| wdavis@foley.com | *Counsel for Plaintiff* |
| mgutierrez@foley.com | *Pro Hac Vice Motions granted |
| *Counsel for Plaintiff* | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 11, 2016, I caused True the Vote's NOTICE AS TO PLAINTIFF'S ENTITLEMENT TO DECLARATORY RELIEF to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

                                                /s/ Noel H. Johnson
                                                Noel H. Johnson
                                                njohnson@publicinterestlegal.org