1

**Government Exhibit**

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLUMBIA

 3   TRUE THE VOTE, INC.            .
                    Plaintiff,      .
 4   vs.                            .   Docket No. CV 13-734-RBW
                                    .
 5   INTERNAL REVENUE               .
       SERVICE, et al.,             .
 6                                  .
                    Defendants.     .
 7   . . . . . . . . . . . . . . . .x
     LINCHPINS OF LIBERTY, et al.,  .
 8                  Plaintiffs,     .   Docket No. CV 13-777-RBW
     vs.                            .
 9                                  .
     UNITED STATES OF AMERICA       .   Washington, D.C.
10                                  .   November 17, 2016
                    Defendants.     .
11   . . . . . . . . . . . . . . . .x   2:30 p.m.

12                TRANSCRIPT OF STATUS CONFERENCE

13       BEFORE THE HONORABLE SENIOR JUDGE REGGIE B. WALTON

14                  UNITED STATES DISTRICT JUDGE

15   APPEARANCES:

16   For the Plaintiff       William E. Davis, Esquire
     True the Vote:          FOLEY & LARDNER LLP
17                           One Biscayne Tower
                             2 South Biscayne Boulevard, Ste. 1900
18                           Miami, FL 33131

19                           Cleta Deatherage Mitchell, Esquire
                             FOLEY & LARDNER
20                           3000 K Street, NW - 6th Floor
                             Washington, DC 20007-5143
21

22

23

24

25
```

```
 1   APPEARANCES: [Cont'd]

 2   For the Plaintiff
     Linchpins of Liberty: Carly Gammill
 3                         AMERICAN CENTER FOR LAW & JUSTICE

 4                         Julian A. Fortuna, Esquire
                           TAYLOR, ENGLISH, DUMA, LLP
 5                         1600 Parkwood Circle, Suite 400
                           Atlanta, GA 30339
 6
     For the Defendant:    Joseph A. Sergi
 7                         Laura Beckerman
                           Laura Connor
 8                         U.S. DEPARTMENT OF JUSTICE
                           Tax Division
 9                         555 Fourth Street, NW
                           Washington, DC 20001
10

11
     Court Reporter:   Cathryn J. Jones, RPR
12                     Official Court Reporter
                       Room 6521, U.S. District Court
13                     333 Constitution Avenue, N.W.
                       Washington, D.C. 20001
14

15

16

17
     Proceedings recorded by machine shorthand, transcript
18   produced by computer-aided transcription.

19

20

21

22

23

24

25
```

```
 1                        P R O C E E D I N G S
 2              THE DEPUTY CLERK:  Your Honor, In re:  This
 3   afternoon's matter True the Vote, Incorporated versus IRS,
 4   et al., Civil Action 13-734.  Also Linchpin Liberty versus
 5   the IRS, Civil Action 13-777.  Ask the parties to step
 6   forward and identify yourselves for the record, please.
 7              MR. MITCHELL:  Good afternoon, your Honor.  My
 8   name is William Davis.  I'm with the law firm of Foley &
 9   Lardner on behalf of True the Vote.  And with me in court
10   today is Cleta Mitchell, my partner, likewise from Foley &
11   Lardner, and the president of our client Katherine
12   Englebram.
13              THE COURT:  Good afternoon.
14              MS. GAMMILL:  Good afternoon, your Honor, Carly
15   Gammill from the American Center for Law and Justice.  With
16   me is Julian Fortuna, and we're here on behalf of the
17   Linchpins plaintiffs.
18              THE COURT:  Good afternoon.
19              MR. SERGI:  Good afternoon, your Honor, Joe Sergi
20   from the Department of Justice on behalf of the United
21   States.  And with me are Laura Conner and Laura Beckerman
22   also on behalf of the United States.
23              THE COURT:  Good afternoon.
24              MS. BENITEZ:  Good afternoon, your Honor, Brigida
25   Benitez of Steptoe & Johnson representing the individual
```

```
 1    management defendants.  And with me is Eric Nitz of the firm
 2    of Molo Lamken representing the land level individual
 3    defendants.
 4            THE COURT:  Good afternoon.  As I understand in
 5    reference to Linchpins, the applications that had not been
 6    acted on now have been in one way or the other; is that
 7    right?
 8            MS. GAMMILL:  Yes, your Honor, that's correct.
 9    And that those that wanted their applications that were on
10    file to be processed have received initial determinations.
11            THE COURT:  Okay.  So is there something else to
12    be done in reference to that?
13            MS. GAMMILL:  They're proposed, either they were
14    granted.  Or if it was a proposed denial that's a proposal
15    that still has to go through a process before a final
16    determination is rendered.
17            THE COURT:  Okay.  And from your prospective how
18    do we proceed in your litigation?
19            MS. GAMMILL:  Your Honor, I believe that we still
20    have much to deal with.  There's still quite a bit of
21    evidence that has not been put in the record.  And just very
22    simply I think that based on the Circuit Court's decision,
23    based on what we addressed last time that needed to be put
24    into the record and still has not been, that it's time for
25    discovery in this case.  I think that the Federal Rules
```

1   should be what determines the scope of that and that we
2   should begin that process.
3           THE COURT:  True the Vote, from your prospective
4   how do we proceed?
5           MR. MITCHELL:  Your Honor, we would echo that.
6   And also like to point out to the Court that with the DC
7   Circuit ruling did indicate that we are entitled to an
8   adjudication on the merits based on substantive evidence
9   even in the face of the fact that the application has been
10  granted.  And I would point the Court out also to our
11  complaint.  Count one of the complaint was the count where
12  we were actually seeking the exemption.  Count two of the
13  complaint if you look to the relief sought we were trying to
14  protect it.
15          Because in the wherefore clause of Count two to
16  the complaint it says in a request specifically an
17  injunction to prevent further implication of the scheme.
18  And it is our position that that subsumes the notion of tax
19  administration subsequent to the grant of the exemption.
20  And secondly, we believe that there should be discovery with
21  regard to the essential elements of voluntary cessation.  As
22  the Court is aware there's two prongs to that.  The first
23  one is no reasonable expectation of recurrence.  The second
24  is interim relief or events completely and irrevocably
25  eradicated the effects of the violation.

1           It's our position that with respect to those two
2    elements at least with regard to the recurrence we're
3    entitled to conduct some discovery with regard to the
4    standards for selection, for examination, management
5    controls, things of that nature that would prevent a
6    recurrence of this within the context of tax administration.
7           With regard to the effects quite honestly, Judge,
8    we don't know what we don't know.  We don't know to whom the
9    information that was inappropriately gathered has been
10   disseminated.  We don't know if it stayed within the IRS.
11   We'd like to find out.  We don't know the purpose for which
12   that information was obtained.  Until we know the answers to
13   those questions we really don't know what the effect is on
14   having you know, given that information.
15           As I'm sure the Court is aware, and it's in the
16   briefing papers, once the exemption is granted that
17   information becomes public information.  And we have
18   requested for its return.  The service has refused to return
19   it.  We believe we're continually at risk for the public
20   dissemination of information that was inappropriately
21   gathered.  So we believe that we should be allowed to
22   conduct some discovery to find out what we don't know and
23   those particular issues.
24           Our complaint also alleges that there was a
25   chilling effect on donors and that that could very well move

1    into the future and probably does.  But we don't know the
2    answer to that question until we know where the information
3    went.  It did stay within the confines of the IRS or did it
4    go elsewhere?
5              Lastly, with regard to the motion for summary
6    judgment that's currently pending I believe that we're
7    entitled to conduct discovery with regard to issues of fact
8    that could be within the advent of that motion for summary
9    judgment.  I don't think we have to take as gospel truth an
10   affidavit or a document which was filed along with it.  I
11   think we should be permitted to conduct some discovery.  And
12   frankly, we will probably be filing a Rule 56(d) motion in
13   order to request the leave to do that.  So there are a
14   number of areas that we believe that we are entitled to
15   discovery on.
16             As of this date the government hasn't even
17   admitted, I guess we're going to see an answer in short
18   order, but they haven't admitted in open court that even
19   these activities constitute a constitutional violation.  And
20   if we're forced to litigate that issue we certainly can
21   litigate and discover the scope and the breath of what was
22   done and how it was developed and why it was developed and
23   where the information went.  So your Honor, I would submit
24   we're entitled to a, some discovery with regard to these
25   issues.

1               Thank you.
2               THE COURT:  Government.
3               MR. SERGI:  Thank you, your Honor.  Listening to
4    the two plaintiffs in this case where we are right now is
5    we're at a place where essentially all of the, well not
6    essentially because almost moot is not moot.  All of the
7    applications have been acted on in this case.  To the extent
8    and what Linchpin's counsel was explaining is if the IRS,
9    and we explain this in our papers.  If the IRS issues a
10   proposed denial what happens is it then goes over to the
11   groups who then can determine whether they want to file a
12   protest or a request for review from the Office of Appeals.
13   Until that happens they can take no further action on the
14   applications.
15              But we also think the fact that there are not
16   final determinations for those plaintiffs really wouldn't be
17   disposition or a matter for this case because there are no
18   allegations in the complaint or in this case that relate to
19   the process other than the application process done at
20   determinations because that's where the allegations of
21   discriminatory conduct.  They don't expend to the Office of
22   Appeals or any part of the IRS outside the context of the
23   initial processing of the applications.
24              And that's also kind of where we're having a
25   problem with listening to True the Vote's counsel.  Because

1  if I understand what he wants is essentially he would like
2  this Court to keep his case open for the entire existence of
3  the organization because some day there may be a problem
4  with an audit of them.
5         He said they need to know what they don't know.
6  Well, with that backdrop I want to discuss their discovery.
7  Well, they need what they don't know but what we do know is
8  what they put in their complaint. And what they put in
9  their complaint were activities that occurred during the
10 application process that were I believe they used the word
11 echoed, but since the report came after the TIGTA report
12 which were in the TIGTA report. That is their primary
13 source for most of this material. They embrace, in both of
14 the supplemental findings both Linchpins and True the Vote
15 embrace the 2013 TIGTA report. Now they would like to
16 ignore the 2015 TIGTA report that says the IRS has taken
17 adequate steps to fix the problems that occurred in the 2013
18 TIGTA report.
19         So we have now filed a dispositive motion. And
20 our dispositive motion is based on things that occur after
21 2013, that got rid of the conduct that was improper that
22 occurred prior to 2013. So basically although captioned as
23 a summary judgment motion you can take every single thing in
24 the complaint and assume everything they say is true and
25 this case would still go away. And that, it's for two

1    reasons.
2            One of them is the two threshold issues.  And
3    that's the other reason why I don't think we should get to
4    merit discovery of the underlying claims.  One is, the
5    underlying claims if you assume everything they said is
6    correct they don't really have to prove the underlying
7    claims for you to rule on our brief.  But first and
8    foremost, it's not clear how plaintiffs even have standing
9    that this case can go forward since all of the applications
10   have been acting on.
11           As you know standing comes from Article III.  It's
12   case or controversy.  And they have a very heavy burden.
13   And it is indeed their burden to show standing.  And they
14   have to show an injury that's concrete, traceable to the
15   challenge actionable and that's redressed by a favorable
16   ruling.  Your Honor, I haven't heard any of that yet.  I
17   haven't heard any harms.  We had in the last hearing we had
18   oh my God, rouse, audit, audit, audit, my clients are being
19   audit.  They're subject to an audit.  Well, your Honor, we
20   don't believe and this Court has previously ruled on that as
21   not being related to the application process and not being
22   pled in the complaint.
23           Well, we went back even though we didn't believe
24   it was part of this and we had the IRS check and none of the
25   plaintiffs are under audit.  And we went through and had in

```
 1    the declaration of ***Ms. Ripini, who we submitted who went
 2    through and explained the process that's in place so that
 3    people won't be audited.  So once again, whatever the
 4    activities were in the past and here the activity never even
 5    occurred that there was an audit, there are measures in
 6    place that would prevent that from recurring in the future
 7    and it's moot.
 8              But more importantly, the fact that they're acted
 9    on at all would give them -- it's a very big hurdle for them
10    to challenge something that would have occurred in the
11    application process.  They've had all of their applications
12    acted on.  And therefore, they have no standing unless they
13    can allege an actual harm that comes from the application
14    process.
15              So what we have there is the first prong which is
16    no standing.  Then when you go pass the no standing, if the
17    Court were to still make the case go forward we still have
18    the mootness allegation that says even if you assume
19    everything that's true the IRS has taken the proper steps to
20    ensure that it has never gone again.  And they are correct
21    in that they are entitled to discovery, but that discovery
22    should be viewed in the context of 56(d) in which case it
23    isn't maybe we'll find something.  They have to specifically
24    list exactly what it is that they need from this discovery.
25              So I will also mention with regards to the
```

1  standing issue that recently in the *Z Street* case which is a
2  case that is frequently cited by plaintiffs, and actually I
3  believe True the Vote's counsel said it was identical to
4  their case and that's why we should have had an early
5  litigation hold.  We, of course, disagree with that.
6         But they have a similar issue because in that case
7  the process was challenged.  And it went up on appeal.  And
8  they said the anti-injunction didn't apply because they're
9  only asking for the process not a result.  And they were
10 pending a very long time.  In that case recently the IRS
11 approved the Z Street application and then the judge in that
12 case issued an order to show cause as to why the case
13 shouldn't be dismissed.  And so that's why, that's because
14 we agree with that that the standing is very, very
15 important.
16         But even as I said if the Court would were to get
17 past the standing issue and allow some form of discovery we
18 think it should be important that it's limited to mootness.
19 Mootness is a threshold issue here.  Plaintiffs both filed
20 their complaints and more recently their statements for
21 declaratory relief that outline all the allegations and
22 conclusions and all of that occurred prior to 2013.  If I
23 understand them now what they want to do is go back and say
24 no, there's even more in 2013 that we didn't find, that
25 TIGTA didn't find.

1             I believe last week or the last time we were here
2    True the Vote's counsel said we want to know everything
3    TIGTA knew and then everything else they didn't know.  So
4    that kind of discovery now that the activity is gone it
5    would be equivalent of a fishing expedition, your Honor.  So
6    it's unclear whether there should be discovery on those
7    facts.
8             And to give an example of how burdensome if the
9    Court were to say maybe we could forward with some discovery
10   while I'm ruling on the mootness motion.  I want to give you
11   some statistics from the congressional investigation which
12   looked at the same issues that would be at issue in this
13   case.  Granted our issues would be limited to certain
14   taxpayers which would create their own problems given that
15   we would have to redact all the 6103 and review all the
16   documents to make sure that we aren't giving out other
17   taxpayers' information.
18            But in that case the IRS spent a 160,000 hours
19   collecting and reviewing material and it cost $20 million
20   dollars to do it.  And while we have what they produced as a
21   good start given the point that there are the 6103 cross and
22   that investigation was somewhat broader, and this case is a
23   subset, most of that information would need to be
24   re-reviewed for responsiveness, relevance and privilege.  So
25   they are entitled to discovery, we do not dispute that, but

1  it has to be specific discovery to something that's
2  relevant.
3          If plaintiffs believe that further discovery is
4  warranted they must specifically articulate what discovery
5  is necessary and demonstrate how those responses will enable
6  them to defeat our summary judgment motion.  We can then
7  demonstrate if we need to that the information has already
8  been produced or that the information sought is not material
9  to the resolution of the merits.
10         For example, if plaintiffs have an issue with
11 Ms. Ripperda's deposition because they say they can't take
12 our word for it then they should find the paragraph numbers
13 where they have an issue with it.  And if the Court allows
14 them discovery we believe probably the best way to do it
15 because we're dealing with an institution is to have
16 contention interrogatories or state the basis in
17 interrogatories where they say you say this in the
18 declaration what is the back up for that.  Or what is the
19 contention?
20         And that we think is the best mechanism to resolve
21 any specific confusion that plaintiffs have with regard to
22 the steps outlined in the declaration, which I mean it's a
23 very lengthy declaration that goes through a lot of steps.
24 And we tried to avoid any ambiquity, but if there is any
25 ambiquity and if the Court has any ambiquity we would be