**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRUE THE VOTE, INC.,** | |
| *Plaintiff*, | |
| *v.* | Civ. No. 13-cv-00734-RBW |
| **INTERNAL REVENUE SERVICE**, *et al*., | |
| | **Oral Argument Scheduled for March 2, 2017** |
| *Defendants*. | |

## TRUE THE VOTE'S REPLY IN SUPPORT OF MOTION FOR DISCOVERY UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(D)

It is clear from Government's opposition (Doc. 122) to True the Vote's Motion for Discovery (Doc. 120) that the Government is choosing to remain willfully ignorant to both the D.C. Circuit's opinion in this case, *True the Vote, Inc. v. IRS*, 831 F.3d 551, 563 (D.C. Cir. 2016), and this Court's Order of October 14, 2016, (Doc. 109). Though discussed as length in True the Vote's Opposition to the Government's Motion for Summary Judgment (Doc. 119), various aspects of the D.C. Circuit's opinion will be repeated here in order to demonstrate the groundless nature of the Government's position.

The D.C. Circuit could not have been clearer in its instructions to the Government: demonstrate that "(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *True the Vote*, 831 F.3d at 561. The jurisdictional question in this case thus depends on facts concerning all "effects" of the IRS Targeting Scheme. True the Vote's requested discovery is plainly "relevant," Fed. R. Civ. P. 26(b)(1), to those facts. The Government's

arguments to the contrary depend on its erroneously narrow view of its burden. For the following

additional reasons, True the Vote's Motion for Discovery should be granted.

I.      **The Status of True the Vote's Application is Irrelevant to the Jurisdictional**
        **Question of Mootness.**

Like a broken record, the Government again advances the argument that the granting of

True the Vote's application has made this case moot. (*E.g.*, Doc. 122 at 1-2.) The status of True

the Vote's application was considered by the D.C. Circuit and was held "immaterial" to the

question of mootness. *True the Vote*, 831 F.3d at 554. Simple logic demonstrates that the

Government's argument is baseless: if the granting of True the Vote's application made this case

moot, the D.C. Circuit would have ruled that this case was moot. But the D.C. Circuit ruled that

this case is not moot. It's that simple.

The Government misunderstands the purpose for which True the Vote requests discovery

concerning matters related to the processing of True the Vote's application (Doc. 120 ¶ 6(a)).

The IRS began to discriminate against True the Vote and other similar organizations on the basis

of viewpoint during the application process. Facts and communications concerning the creation,

revision, implementation, and scope of the Targeting Scheme during the application process

generally, and as they relate to True the Vote, are relevant to the issue of whether the effects of

the Targeting Scheme have been "completely and irrevocably eradicated." *True the Vote*, 831

F.3d at 561.

It is difficult to imagine any basis for withholding discovery of facts related to the very

conduct that gave rise to this lawsuit. Logically, in order to demonstrate that the Government's

conduct—and all its attendant effects—have ceased, the conduct must first be described. Yet the

Government refuses to describe with particularity the unlawful treatment to which it subjected

True the Vote, the effects of that treatment, and why such effects have been permanently

eradicated. Despite ignoring its burden, the Government now remarkably insists that True the Vote is not entitled to discover *any* facts related to this case.

The Government's argument further defies an explicit order of this Court, which instructed the Government to address why True the Vote "will not experience any negative consequences resulting from the alleged discriminatory targeting scheme employed by the defendants *throughout its tenure as a tax-exempt entity*." (Doc. 109 (emphasis added).) This Court's order plainly contemplates facts bearing on matters outside the application process.

Perhaps hoping this case will just magically disappear, the Government holds steadfast to its belief that this case is limited to the application process. That belief is simply untenable.

## II.   True the Vote's Requested Discovery Bears Directly on the Effects of the Government's Unlawful Conduct.

In its Reply to its Motion for Summary Judgment, which it incorporates by reference in its Opposition to True the Vote's 56(d) Motion (*see* Doc. 122 at 1 n.1), the Government takes issue with the fact that True the Vote has alerted the Court to the Government's admission that True the Vote is "entitled to discovery." (Doc. 121 at 3-4.) The Government contends that its admission was "outrageously" taken out of context. (*Id*. at 3.) However, even when it is read in its entirety it is hard to see how that admission is any less significant. In full, the Government's counsel admits the following:

> So they are entitled to discovery, we do not dispute that, but it has to be specific discovery to something that's relevant.
>
> If plaintiffs believe that further discovery is warranted they must specifically articulate what discovery is necessary and demonstrate how those responses will enable them to defeat our summary judgment motion.

(Hearing Transcript, Status Conference before Judge Reggie B. Walton, 13:24-25 through 14:1-6, November 17, 2016 (Doc 121-1)).

True the Vote has done precisely what the Government—and Rule 56(d)—have asked True the Vote to do—describe "specific discovery" that is "relevant" to the jurisdictional question of mootness. (Doc. 121-1.) According to the D.C. Circuit and this Court, the facts that are relevant are those that concern the "effects" of the IRS conduct and the consequences of those effects "throughout [True the Vote's] tenure as a tax-exempt entity." (Doc. 109.)

Rather than articulate why the requested discovery is not relevant to those things, the Government argues that the requests relate to "speculative harms." (Doc. 122 at 6.) This is nothing more than purposeful conflation of the legal principles of mootness and standing. True the Vote no longer needs to establish standing. (*See* Doc. 119 at 6-10.) Rather, the burden in this case is entirely on the Government. The Government must address all "effects of the alleged violation," *True the Vote*, 831 F.3d at 561, "throughout [True the Vote's] tenure as a tax-exempt entity." (Doc. 109.) All injuries, whether present or future, that are a consequence of True the Vote having been discriminatorily targeted in the application process fall within the Government's burden under the voluntary cessation doctrine.

The Government was given a full opportunity to address why True the Vote will "not experience any negative consequences resulting from the alleged discriminatory targeting scheme employed by the defendants throughout its tenure as a tax-exempt entity." (Doc. 109.) The Government chose not to. Rather, the Government chose to address only the recommendations suggested by TIGTA regarding the application process. The Government cannot limit the scope of relevant evidence simply by reframing its burden to one that it prefers.

In short, True the Vote requests discovery related to the following categories of evidence:

1. Evidence regarding the processing of True the Vote's application for tax-exempt status. (Doc. 120-1 at 2.)

2.  Evidence concerning the retention and disclosure True the Vote's application material. (Doc. 120-1 at 3.)

3.  Evidence concerning the dissemination and sharing of True the Vote's application material both within and outside the IRS. (Doc. 120-1 at 4.)

4.  Evidence concerning the use of viewpoint-based criteria in any aspect of tax administration. (Doc. 120-1 at 6.)

5.  Evidence concerning the political interests and biases of IRS employees and officials. (Doc. 120-1 at 8.)

6.  Evidence concerning the training of IRS employees and evidence concerning the effectiveness of the training. (Doc. 120-1 at 10.)

7.  Evidence concerning ongoing oversight of True the Vote and any other effects of the alleged violations. (Doc. 120-1 at 12.)

Each of these categories—as described more specifically in the Motion for Discovery—is relevant to the known and plausibly-alleged "effects" of the IRS's conduct. The Government provides no arguments to the contrary.

Remarkably, the Government contends that True the Vote is not even entitled to its request to depose the Government's sole witness, Tamera L. Ripperda, the former Director of the IRS Exempt Organization Unit. (Doc. 122 at 5.) According to the Government, Ms. Ripperda's testimony concerns "detailed descriptions of how [the IRS] has resolved the problems that are the subject of Plaintiff's complaint." (Doc. 122 at 5.) In other words, the Government believes (erroneously) that Ms. Ripperda's testimony is effectively *dispositive* of all remaining issues in this case. It exceeds the bounds of reason for the Government to assert in the same breath that

5

True the Vote "has failed to justify its request[]" to depose Ms. Ripperda. (Doc. 122 at 5.) Ms. Ripperda's testimony cannot be relevant for the Government, but irrelevant for True the Vote.

The D.C. Circuit was clear: "The allegations of the complaint are quite sufficient to warrant a merits disposition *based on adjudication of substantive evidence*, not simply a dismissal at the pleadings stage." *True the Vote*, 831 F.3d at 563 (emphasis added). Without the opportunity to test the Government's version of the facts, an order granting the Government's Motion for Summary Judgment would be tantamount to a "dismissal at the pleadings stage." The Government's plea to "take our word for it" should be swiftly declined and this case should proceed to discovery.

Respectfully submitted this 16th day of February, 2017,

Michael J. Lockerby (D.C. 502987)
Cleta Mitchell (D.C. 433386)
FOLEY & LARDNER, LLP
Washington Harbour
3000 K Street NW Suite #600
Washington, DC 20007
(202) 672-5300 (telephone)
(202) 672-5399 (fax)
mlockerby@foley.com
cmitchell@foley.com
*Lead Counsel for Plaintiff*

William E. Davis (D.C. Bar No. 280057)
Mathew D. Gutierrez (Fla. 0094014)*
FOLEY & LARDNER, LLP
One Biscayne Tower
2 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 482-8404 (telephone)
(305) 482-8600 (fax)
wdavis@foley.com
mgutierrez@foley.com
*Counsel for Plaintiff*


Kaylan L. Phillips (D.C. 1110583)
            /s/ Noel H. Johnson
_____
Noel H. Johnson (Wisc. 1068004)*
Public Interest Legal Foundation
32 E. Washington, Suite 1675
Indianapolis, IN  46204
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@publicinterestlegal.org
njohnson@publicinterestlegal.org
*Counsel for Plaintiff*
*Pro Hac Vice Motions granted

John C. Eastman (Cal. 193726)*
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 x2 (telephone)
(714) 844-4817 (fax)
jeastman@chapman.edu
*Counsel for Plaintiff*

6

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 16th, 2017, I caused the foregoing REPLY IN SUPPORT OF MOTION FOR DISCOVERY UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(D) to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.


Dated: February 16, 2017

_____/s/ Noel H. Johnson_____<br>
Noel H. Johnson<br>
njohnson@publicinterestlegal.org