UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **True the Vote, Inc.**;  *Plaintiff*, <br> v. <br> **Internal Revenue Service, et al.**; *Defendants*. | **Civil Case No.** 1:13-cv-000734-RBW <br><br> **Declaration of James Bopp, Jr. in Support of Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act** |

### Declaration of James Bopp, Jr.

I, James Bopp, Jr., make the following declaration pursuant to 28 U.S.C. § 1746:

1. I have been practicing law since 1973, and I am the owner of THE BOPP LAW FIRM ("BLF"). I and my firm have represented the Plaintiff in this action from late February 2017 through the present.

2. In May of 2013, Plaintiff True the Vote, Inc. ("TTV"), a not-for-profit Texas corporation organized and operated exclusively or primarily for a charitable purpose, filed suit against the IRS and certain individual employees, claiming violations of provisions of Titles 26 and 28 of the U.S. Code, the Administrative Procedures Act, and the protections of speech and association provided by the First Amendment—violations for which it sought damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and equitable relief by way of injunction and declaratory judgment. *See* Amended Verified Complaint (Doc. 14) ¶¶ 139-214. In October, 2014, this Court dismissed the *Bivens* and statutory actions under Fed. R. Civ. P. 12(b)(6) and the equitable claims under Fed. R. Civ. P. 12(b)(1). On appeal, the U.S. Court of Appeals for the District of Columbia affirmed the dismissal of the *Bivens* claim and the

**Declaration of James Bopp, Jr.**

statutory claims, but held that the equitable actions were not moot. *See True the Vote, Inc. v. IRS*, 831 F.3d 551 (D.C. Cir. 2016). On remand, in November, 2016, Defendants filed a motion for summary judgment, Plaintiffs filed notice with the Court of the basis for declaratory relief, (Doc. 112, 113, respectively), and on December 19, 2016, Defendants filed an Answer (Doc. 117). In January, 2017, Plaintiffs filed their opposition to Defendants' summary judgment, requesting discovery of Defendants under Fed. R. Civ. P. 56(d). (Doc. 119, 120). In mid-February, Defendants filed an opposition to discovery to which Plaintiff replied. (Doc. 122, 123). In late February, Plaintiff discharged their lawyers, and retained my firm to represent it in this matter. (*See*, *e.g.*, Doc. 124-129). In light of the change in counsel, hearing on Plaintiff's Fed. R. Civ. P. 56(d) motion was rescheduled. On April 12, 2017, this Court denied without prejudice Defendants' motion for summary judgment and ordered discovery of Defendants, to include document requests, interrogatories and depositions keyed to determining the current status of the IRS tax exemption application process and to past acts of alleged discrimination necessary to ascertain whether the IRS had, as it claimed, eradicated the effects of the alleged violation. (*See* Doc. 138). The scope of discovery was expanded and the deadline extended to late August by the Court on May 8, 2017. Thereafter, Parties jointly moved to extend time to complete discovery twice, (Doc. 145, 146) and then in December moved to suspend deadlines pending settlement discussions. (Doc. 148). On January 16, 2018, the Parties jointly moved for approval of a consent judgment resolving all outstanding claims, (Doc. 149), which was granted by this Court on January 21, 2018.

    3. My practice emphasizes not-for-profit corporate and tax law, campaign finance and elections law and I and my firm have represented dozens of individuals and organizations in

**Declaration of James Bopp, Jr.**         -2-

constitutional and civil rights litigation in various state and federal courts. *See* Resume of James Bopp, Jr., attached hereto as **Exhibit 1**. My firm is recognized as one of the nation's leading firms in the field of First Amendment and election law litigation.

4. I have been involved in approximately 100 constitutional and civil rights cases, including litigation vindicating First Amendment rights of non-profit corporations, and I have written numerous articles concerning constitutional and civil rights law.

5. I employ Courtney Milbank, Melena Siebert, and Jeffrey P. Gallant as attorneys in my firm. Each practices in constitutional civil rights and other complex federal litigation. *See* The Bopp Law Firm Biography, attached hereto as **Exhibit 2**.

6. Because I choose to operate my firm as a sole proprietorship without partners, attorneys with partner-level experience have the title of Senior Associate with my firm. Of the associates who worked on this case, Mr. Gallant has sufficient experience and expertise to be a partner at most law firms. *See* **Exhibit 2**.

7. I and attorneys at my firm performed the work on behalf of TTV for all proceedings after February 22, 2017, including the conduct of discovery, settlement discussions and negotiations, and the preparation and filing of Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act and the documentation in support thereof (the "Application").

8. The services performed and the expenses incurred in the above-styled case by the aforementioned attorneys and myself are truly and accurately listed in the Bopp Law Firm Billing Statement, Exhibit 5 to *Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Application and Motion for Attorneys' Fees and Costs Under the Equal Access to*

**Declaration of James Bopp, Jr.**                -3-

*Justice Act*.

9. The services performed in the above-styled case by my firm, which are listed in the BLF Billing Statement, were reasonably and necessarily performed in Plaintiff's cause before this Court on the merits of the Plaintiff's claims and in pursuit of fees, costs and expenses under 28 U.S.C. § 2412, the Equal Access to Justice Act ("EAJA").

10. The services performed by the attorneys in my firm in the above-styled case are truly and accurately listed in the BLF Billing Statement's "gross hours" and "description" according to each service that was performed on Plaintiff's behalf.

11. Because the fees here are requested under the EAJA, the rates requested in the Application for my firm's work are without regard to the normal hourly rate a client would be charged or has paid for similar work or whether we have accepted the case on a contingency fee basis. Likewise, the hourly rates requested in the Application for the work of attorneys, paraprofessionals, and law clerks at the firms previously representing TTV in this matter—Foley & Lardner ("Foley"), the Public Interest Legal Foundation ("PILF"), and the Center for Constitutional Jurisprudence ("CCJ")—are not those that these firms would charge a client or have charged a client for similar work.

12. The Application requests fees based on two alternative provisions of the EAJA: "enhanced" rates based on the prevailing market rates in the relevant community, *see Cobell v. Norton*, 407 F. Supp. 2d 140, 170 (D. D.C. 2005), and the statutory EAJA rates adjusted for inflation. Thus, the rates requested are determined by the EAJA and cases applying the EAJA's provisions and are not those that these firms would charge a client or have charged a client for similar work.

**Declaration of James Bopp, Jr.**                     -4-

13. The "gross hours" spent by BLF, Foley, PILF, and CCJ have been adjusted by BLF counsel and/or by the respective firms to account for relative success and/or in billing judgment or otherwise as required by law, resulting in the "adjusted hours."

14. The attorneys' hours and related expenses have been adjusted to reflect a deduction for the unsuccessful claims according to the following process:

> The percentage of space in documents (briefs, motions, etc.) devoted to unsuccessful claims was calculated. For example, approximately 20% of the initial complaint was devoted to the unsuccessful claims.
>
> If the billing sheet was unspecified as to what issue or claim the attorney was working on, the hours were adjusted according to the relevant percentage devoted to the unsuccessful claims.
>
> If the billing description pertained only to one of the unsuccessful claims, that line item was "no charged."
>
> If the billing description pertained only to the successful claim(s), that line item remained fully chargeable, with no reduction of hours.

15. My firm also incurred expenses in the prosecution of this case and in bringing the Application. Those expenses are truly and accurately listed in BLF's Billing Statement. It is the normal practice of my firm to charge fee-paying clients for reasonable out of pocket expenses such as photocopying, travel, telephone costs, and electronic legal research fees.

16. Likewise, Foley and PILF incurred expenses in prosecution of this case for which they normally charge fee-paying clients. Expenses incurred by Foley and PILF are truly and accurately listed in Exhibit 4 to *Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's*

*Application and Motion for Attorneys' Fees and Costs Under the Equal Access to Justice Act.*

17. Under this Circuit's interpretation of the EAJA, however, only costs and expenses for copying, filing fees, hearing transcripts, and computer research are compensable, and in this Circuit, time spent traveling is compensable at half the normal rate. The Bopp Law Firm has accordingly made adjustments to the expenses and travel time actually incurred by Foley, PILF and BLF.

18. The reductions for the limited success, billing judgment, or otherwise required by law total approximately 292 hour for Foley, 526 hours for PILF, 86 hours for CCJ, and 8.4 hours for the BLF, or a total of approximately 912 hours actually spent by the firms in pursuit of TTV's claims or this Application. In addition, expenses for travel, postage, and other non-compensable expenses have been excluded. The total value of these adjustments to time and expenses is $431,027.03 under the EAJA "enhanced" rates and $185,929.31 under the EAJA regular rates, adjusted for inflation.

19. I believe that these adjustments more than adequately account for Plaintiff's partial success and correspond to the requirements of the EAJA as interpreted by courts in this Circuit and that no other reductions are warranted.

20. The total amounts requested as compensation for the successful prosecution of this case and in pursuit of fees, costs, and expenses are $1,933,888.06 should the Court decide that EAJA enhanced hourly rates are justified, and $750,922.79 under the EAJA statutory rates, adjusted for inflation.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on this 20th day of February, 2018.

*James Bopp, Jr.*
James Bopp, Jr.

**Declaration of James Bopp, Jr.** -7-