IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TRUE THE VOTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-00734-RBW |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' OPPOSITION TO PLAINTIFF'S APPLICATION AND MOTION
FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

## TABLE OF CONTENTS

DISCUSSION ..................................................................................................................1

I.      Plaintiff True the Vote does not qualify as a "prevailing party" under the EAJA..............2

        A.      *Plaintiff is not a prevailing party under the Consent Order*...................................4

        B.      *Plaintiff is not a prevailing party under the D.C. Circuit's interlocutory ruling on
                purely jurisdictional issues.* ..................................................................................7

II.     The United States' position in defending this action was substantially justified ...............9

III.    Special circumstances exist here that would make an award of attorneys' fees and costs
        under the EAJA unjust ......................................................................................................14

IV.     Even if an award of attorneys' fees and costs under the EAJA were allowed, Plaintiff's
        requests are excessive .......................................................................................................16

CONCLUSION.................................................................................................................19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Transport Ass'n of Canada v. FAA*,
  156 F.3d 1329 (D.C. Cir. 1998) ................................................................14, 15

*Am. Petroleum Inst. v. EPA*,
  72 F.3d 907 (D.C. Cir. 1996) ................................................................16

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*,
  187 F.3d 655 (D.C. Cir.1999) ................................................................16, 17

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
  81 F. Supp. 2d 602 (D. Md. 2000), *aff'd*, 237 F.3d 394 (4th Cir. 2001) ..................................5

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971) ................................................................ *passim*

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) ................................................................6

*Campaign for Responsible Transplantation v. Food & Drug Admin.*,
  511 F.3d 187 (D.C. Cir. 2007) ................................................................6

*Conservation Force v. Salazar*,
  916 F. Supp. 2d 15 (D.D.C. 2013) ................................................................16

*Ctr. for Food Safety v. Burwell*,
  126 F. Supp. 3d 114 (D.D.C. Sept. 4, 2015) ................................................................10

*D.C. v. Straus*,
  590 F.3d 898 (D.C. Cir. 2010) ................................................................2

*Dudley v. Washington Metro. Area Transit Auth.*,
  924 F. Supp. 2d 141 (D.D.C. 2013) ................................................................5

*Fabi Construction v. Sec. of Labor*,
  541 F.3d 407 (D.C. Cir. 2008) ................................................................16

*GasPlus, L.L.C. v. U.S. Dep't of Interior*,
  593 F. Supp. 2d 80 (D.D.C. 2009) ................................................................7

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................16

*Hill v. Gould*,
    555 F.3d 1003 (D.C. Cir. 2009) ......................................................................2, 9, 10

*Ivy Sports Med., LLC v. Burwell*,
    174 F. Supp. 3d 130 (D.D.C. 2016) ............................................................................10

*Kennecott Corp. v. E.P.A.*,
    804 F.2d 763 (D.C. Cir. 1986) ....................................................................................17

*Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*,
    310 F. Supp. 2d 333 (D.D.C. 2004) ....................................................................2, 7, 8

*Linchpins of Liberty, Inc., et al. v. Internal Revenue Service*,
    No. 13-777 (D.D.C.) ......................................................................................... *passim*

*Loving v. IRS*,
    2014 WL 12778284 (D.D.C. Sept. 19, 2014) ..............................................................16

*New Life Evangelistic Ctr., Inc. v. Sebelius*,
    847 F. Supp. 2d 50 (D.D.C. 2012) .........................................................................7, 8

*NorCal Tea Party Patriots v. IRS*,
    No. 1:13-CV-341, 2014 WL 3547369 (S.D. Ohio July 17, 2014) ..............................11

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ........................................................................................................9

*Porter v. Astrue*,
    2013 WL 5978623 (D.D.C. Nov. 2013) ......................................................................16

*Precision Concrete v. NLRB*,
    362 F.3d 847 (D.C. Cir. 2004) ......................................................................................9

*Qassim v. Bush*,
    466 F.3d 1073 (D.C. Cir. 2006) ..................................................................................11

*Role Models America, Inc. v. Brownlee*,
    353 F.3d 962 (D.C. Cir. 2004) ...............................................................................2, 18

*Spencer v. N.L.R.B.*,
    712 F.2d 539 (D.C. Cir. 1983) ......................................................................................9

*Taucher v. Brown-Hruska*,
    396 F.3d 1168 (D.C. Cir. 2005) ...............................................................................9, 11

*Thomas v. Nat'l Sci. Found.*,
    330 F.3d 486 (D.C. Cir. 2003) .................................................................................2, 6

iii

*Trahan v. Brady*,
    907 F.2d 1215 (D.C. Cir. 1990) ...............................................................................9

*True the Vote, Inc. v. IRS*,
    71 F. Supp. 3d 219 (D.D.C. 2014) ...............................................................3, 4, 11

*True the Vote, Inc. v. IRS*,
    831 F.3d 551 (D.C. Cir. 2016) ..................................................................... *passim*

*Wilkett v. ICC*,
    844 F.2d 867 (D.C. Cir. 1986) .............................................................................14

**Statutes**

28 U.S.C. § 2412(b) ................................................................................................15, 16

28 U.S.C. § 2412(d) .............................................................................................. *passim*

I.R.C. § 501(c)(3) ...........................................................................................................2

I.R.C. § 6103 ...................................................................................................................3

I.R.C. § 7428 ...................................................................................................................3

I.R.C. § 7431 .................................................................................................................17

**Other Authorities**

Fed. R. Civ. P. R. 56(d) .................................................................................................15

U.S. Const., amend. I .............................................................................................3, 4, 5

H.R. Rep. No. 1418, 96th Cong., 2d Sess. 11 ..............................................................14

2013 TIGTA Report ........................................................................................... *passim*

2015 TIGTA Report ..................................................................................................6, 12

2017 TIGTA Report .........................................................................................................6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUE THE VOTE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:13-cv-00734-RBW |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**UNITED STATES' OPPOSITION TO PLAINTIFF'S APPLICATION AND MOTION
FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Plaintiff True the Vote is not entitled to attorneys' fees, costs, or expenses because it is

not a "prevailing party" within the meaning of the Equal Access to Justice Act ("EAJA").  Even

if Plaintiff were a prevailing party, it still would not qualify to receive any of its requested

amounts because the United States' position in this action – that Plaintiff's claims are moot –

was substantially justified.  Indeed, this Court granted the United States' motion to dismiss this

case based on mootness.  And even if Plaintiff were a prevailing party and if the United States'

position were not substantially justified, the circumstances of this case make the award of

attorneys' fees "unjust" and not allowable under the EAJA.  Finally, Plaintiff should not be

awarded the full amount it has requested because its request is excessive.

**DISCUSSION**

Traditionally, a party bears its own costs of litigation.  However, a plaintiff may recover

attorney's fees against the United States if it demonstrates: (1) the plaintiff is a "prevailing

party"; (2) the position of the United States was "not substantially justified"; and (3) the plaintiff timely submits an itemized statement showing the actual time expended and rate applied.[1] 28 U.S.C. § 2412(d)(1), (d)(2) (commonly referred to as the Equal Access to Justice Act, or "EAJA").  All three elements are required.  Moreover, even if a plaintiff satisfies those requirements, "special circumstances" may "make an award unjust."  28 U.S.C. § 2412(d)(1)(A). The Court's determination whether to award attorney's fees is reviewed for abuse of discretion. *Hill v. Gould*, 555 F.3d 1003, 1006 (D.C. Cir. 2009).

I.      Plaintiff True the Vote does not qualify as a "prevailing party" under the EAJA.

When the party seeking fees under the EAJA is the plaintiff, the D.C. Circuit has "articulated a three-part test for determining prevailing-party status: (1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief."  *D.C. v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (citing *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–93 (D.C. Cir. 2003) (internal quotation marks and alterations omitted)).  Put another way, "[t]o be a prevailing party, a party must obtain a 'substantial part of' the relief it sought and the lawsuit must have caused 'a change in someone's primary conduct in the real world.'"  *Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*, 310 F. Supp. 2d 333, 336 (D.D.C. 2004) (quoting *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 966 (D.C. Cir. 2004)).  Plaintiff satisfies none of these elements.

---

[1] A plaintiff generally must also meet a net-worth limitation, but True the Vote is excused from that requirement because it is a tax-exempt organization under 26 U.S.C. § 501(c)(3).  *See* 28 U.S.C. § 2412(d)(2)(B).

In Plaintiff's original complaint, filed May 21, 2013, Plaintiff raised three separate claims:  a claim for the determination of its tax-exempt status under Internal Revenue Code ("I.R.C.") § 7428; a claim for damages for alleged violation of its First Amendment rights under *Bivens*; and a claim for damages for the alleged wrongful inspection of its return information in violation of I.R.C. § 6103.  (Doc. 1 ¶¶ 85-118.)  Plaintiff's amended complaint, filed July 22, 2013, included the three claims from the original complaint and added two more:  a claim for declaratory and injunctive relief that the IRS violated Plaintiff's First Amendment rights and a claim for the same declaratory and injunctive relief brought under the Administrative Procedure Act.  (Doc. 14 ¶¶ 148-61, 188-206.)

Plaintiff obtained none of the relief it requested in this suit.  Plaintiff's claim under I.R.C. § 7428 for a determination of its tax-exempt status (Count I)[2] became moot, prior to any Court action on the claim, when the IRS granted Plaintiff's application soon after it filed its complaint. Plaintiff conceded that this claim was moot and the Court dismissed it.  *True the Vote, Inc. v. IRS*, 71 F. Supp. 3d 219, 226 (D.D.C. 2014).  Plaintiff did not appeal the dismissal of that claim. (Ex. 1, True the Vote's Brief on Appeal, at 13 n.5.)  This Court also dismissed Plaintiff's *Bivens* (Count III) and wrongful inspection (Count IV) claims, *True the Vote*, 71 F. Supp. 3d at 229-35, and the D.C. Circuit affirmed the dismissal of those claims, *True the Vote, Inc. v. IRS*, 831 F.3d 551, 556-58 (D.C. Cir. 2016).

But even if the dismissal of three of five counts is not sufficient of itself to deny Plaintiff "prevailing party" status, Plaintiff has not received relief under Count II (First Amendment) and

---

[2] References to count numbers reflect how Plaintiff numbered its claims in its amended complaint.

Count V (Administrative Procedure Act).[3]  Both Counts II and V alleged that the federal

defendants targeted Plaintiff's application for heightened scrutiny based on Plaintiff's

viewpoints, and that the IRS deliberately delayed the consideration of Plaintiff's application.

(Doc. 14 ¶¶ 150-51, 155 (Count II allegations), ¶¶ 194, 204 (Count V allegations).)  Count V

included the additional allegation that the IRS asked Plaintiff to provide information that was not

necessary for the determination of its tax-exempt status.  (Doc. 14 ¶¶ 199, 201.)

Plaintiff sought the following equitable relief:  (1) a declaration that the alleged "IRS

Targeting Scheme"[4] and any other similar policies are unconstitutional under the First

Amendment; (2) injunctive relief to prevent the IRS from further implementing and applying the

alleged "IRS Targeting Scheme" and any other similar practices and policies; and (3) injunctive

relief to prevent the IRS from illegally inspecting Plaintiff's return information.  (Doc. 14

¶¶ 148-61 (Count I), ¶¶ 188-206 (Count V); Doc. 14 at 47 (both counts).)  Plaintiff obtained none

of that relief from any Court involved in this action.

A.    *Plaintiff is not a prevailing party under the Consent Order.*

Plaintiff points to various parts of the Consent Order as changing the legal relationship

between itself and the IRS, but none of them actually do.  Plaintiff first points to paragraph 3 of

the Consent Order, which states that "[t]he IRS stipulates and this Court finds that TTV *alleged*

---

[3] This Court dismissed Plaintiff's claims for equitable relief under the First Amendment
(Count II) and under the Administrative Procedure Act (Count V) as moot.  *True the Vote*,
71 F. Supp. 3d at 226-29.  The D.C. Circuit, however, reversed the dismissal of those claims and
remanded them for further proceedings.  *True the* Vote, 831 F.3d at 564.

[4] In describing the "Targeting Scheme," Plaintiff alleged that the IRS engaged in a practice of
subjecting certain applications for tax exemption to heightened scrutiny, unnecessary requests for
information, and delays in processing based the applicants' espoused conservative points of
view.  (Doc. 14 ¶¶ 73-74.)

4

the IRS violated its constitutional rights when it screened TTV's tax-exempt application, significantly delayed processing its application; made harassing, probing, and unconstitutional requests for information based on the name, associations, and/or political viewpoints of TTV," and that the violations were ongoing.  (Doc. 151-8, Pl. Fee Mem., at 8 (citing Doc. 150, Consent Order, ¶ 3) (emphasis added.)  The fact that the United States acknowledges that Plaintiff made certain allegations in this action, and the fact that the Court signed the Consent Order containing that acknowledgment, do not constitute a finding by the Court that those allegations were true. Plaintiff correctly notes that, in the Consent Order, the parties agreed to a number of specific facts found in the May 14, 2013 Report from the Treasury Inspector General for Tax Administration ("TIGTA") and the August 5, 2015 Report of the Senate Finance Committee, both of which addressed the events that gave rise to Plaintiff's suit.  But nowhere in the Consent Order is there any conclusion that the stipulated facts gave rise to a violation of law.  Plaintiff sought a declaration that the IRS had violated its First Amendment rights, but the Consent Order contains no such declaration.[5]  Plaintiff also sought injunctive relief, but the Consent Order includes no injunction.  Plaintiff cannot therefore be said to have "prevailed."

Even if this Court had declared that the IRS conduct at issue violated Plaintiff's constitutional rights, that alone would not make Plaintiff a "prevailing party."  "[A] claimant is not a 'prevailing party' merely by virtue of having 'acquired a judicial pronouncement that the

---

[5]  Plaintiff wrongly argues (Doc. 151-8 at 9-10) that the IRS's acknowledgment in the Consent Order that its treatment of Plaintiff's application was "wrong" also means that the IRS's treatment of Plaintiff's application was "illegal" or "unconstitutional." But actions can be wrong without being in violation of the Constitution or otherwise illegal.  *See Dudley v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 141, 169 (D.D.C. 2013); *Baltimore Scrap Corp. v. David J. Joseph Co.*, 81 F. Supp. 2d 602, 603-604 (D. Md. 2000), *aff'd*, 237 F.3d 394 (4th Cir. 2001).

defendant has violated the Constitution unaccompanied by "judicial relief."'" *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 606 (2001)).  To qualify as a prevailing party under fee-shifting statutes, "[s]omething more than a mere 'judicial pronouncement' is necessary – there must also be 'judicial relief' on the merits of the plaintiff's claim." *Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 193 (D.C. Cir. 2007) (quoting *Buckhannon*, 532 U.S. at 606).

The only specific adjudication in the Consent Order of True the Vote's claims in Counts II and V is that they are dismissed with prejudice.  (Doc. 150 at 13.)  If the Consent Order had included a substantive adjudication in Plaintiff's favor on Counts II and V, dismissal of those claims would have been inappropriate.  But the dismissal is entirely consistent with the parties' adoption of TIGTA's findings in 2015 (and reiterated in its 2017 Report) that the IRS had implemented recommendations made in TIGTA's 2013 Report to permanently change the conduct that gave rise to this action.  (*See* Doc. 150 ¶¶ 26-35, 41.)  Dismissal also is consistent with the parties' further stipulation that "[t]he IRS accepted all the recommendations in the Senate Finance Committee's report concerning the [tax-exempt] determinations process that were within its control – that is, those that did not involve tax policy matters or legislative action. They included 15 of the report's 18 bipartisan recommendations."  (Doc. 150 ¶ 36.)  Especially in light of those stipulations, Plaintiff cannot be considered a "prevailing party" on claims that the Court now has dismissed.  The Consent Order's dismissal of Plaintiff's remaining claims is not a judgment in Plaintiff's favor.

B.     *Plaintiff is not a prevailing party under the D.C. Circuit's interlocutory ruling on purely jurisdictional issues.*

Plaintiff contends that the D.C. Circuit's reversal of the prior dismissal and remand of the claims in Counts II and V operated to change the legal relationship between Plaintiff and the United States.  In 2014, this Court dismissed the claims in Counts II and V on the grounds of mootness because the IRS had granted Plaintiff's application for tax-exempt status soon after it filed this action, and thus the complained-of procedures regarding the application process no longer affected Plaintiff, as well as on the additional grounds that the IRS no longer engaged in the practices that served as the bases for Plaintiff's claims.  But on Plaintiff's appeal, which was combined for argument and decision with the similar claims presented in *Linchpins of Liberty, Inc., et al. v. Internal Revenue Service*, No. 13-777 (D.D.C.), the D.C. Circuit found that the United States had not established mootness under the voluntary cessation doctrine because (i) a small number of the *Linchpins* plaintiffs' applications for tax-exempt status were still pending, and (ii) the evidence previously available to this Court did not establish that the IRS had permanently suspended the conduct that gave rise to Plaintiff's claims.  As a result, the D.C. Circuit reversed the dismissal of Counts II and V and remanded those declaratory and injunctive relief claims for further action consistent with its opinion.

Because the D.C. Circuit addressed only the preliminary issue of whether Plaintiff's claims could proceed and determined nothing about the underlying merits of Plaintiff's claims in Counts II and V, Plaintiff is not a prevailing party as to those claims.  An order of remand must provide or compel a result on the merits for it to convey "prevailing party" status on a litigant. *See Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*, 310 F. Supp. 2d 333, 345 (D.D.C. 2004) (internal citation omitted) (finding that party was not entitled to attorney's fees on remanded claim when the remand did not reach the merits of the claim); *New Life Evangelistic Ctr., Inc. v.*

7

*Sebelius*, 847 F. Supp. 2d 50, 54 (D.D.C. 2012) (finding that remand of a summary judgment ruling did not convey "prevailing party" status when the remand "failed to supply any material relief" because it did not compel a substantive ruling).

Plaintiff's assertion that the IRS only changed its conduct after the D.C. Circuit's opinion is not supported by the record. Contrary to Plaintiff's assertion, the D.C. Circuit did not reject the United States' position on appeal that the IRS had already changed the conduct that was the subject of Plaintiff's complaint. The D.C. Circuit merely found that the United States "ha[d] not carried its heavy burden of establishing mootness by voluntary cessation," *True the Vote*, 831 F.3d at 563, – i.e., that it had not yet proven voluntary cessation – not that the voluntary cessation had not actually occurred. As to the D.C. Circuit's separate concern that the United States had not established mootness under the voluntary cessation doctrine because a small number of the *Linchpins* plaintiffs' applications for tax-exempt status were still pending, that concern did not impact Plaintiff because, as Plaintiff acknowledges (Doc. 150 ¶ 22), the IRS had granted Plaintiff's application in September 2013, *nearly three years before the D.C. Circuit issued its opinion in August 2016*. The D.C. Circuit's opinion could not have caused the IRS to act on Plaintiff's application because the IRS already had acted on it.

But even if Plaintiff's assertion about the timing of the IRS's voluntary changes were true, the IRS's *voluntary* change in conduct would not qualify as a court-ordered change in the legal relationship between the parties. The Supreme Court has "found that the 'catalyst theory,' which posits that a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct, was an inadequate basis to confer prevailing party status." *Lake Pilots Ass'n*, 310 F. Supp. 2d at 346 n.4.

Plaintiff is not the "prevailing party" here under the EAJA.  Accordingly, it is not entitled to receive an award of any of its attorneys' fees and costs.

II.     The United States' position in defending this action was substantially justified.

Even if Plaintiff qualified as a "prevailing party" under the EAJA, it still would not be entitled to recover any of its attorneys' fees because the United States' position in this suit was substantially justified.  The United States' position is substantially justified if it is "'justified to a degree that could satisfy a reasonable person' or, in other words, has 'a reasonable basis in both law and fact.'"  *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Although a "substantially justified" argument requires something more than it not being frivolous, it "does not 'require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.'"  *Taucher*, 396 F.3d at 1173 (quoting *Spencer v. N.L.R.B.*, 712 F.2d 539, 557 (D.C. Cir. 1983)).  In determining whether the United States was substantially justified, the Court should analyze "the government's position looking prospectively from the time the government took this position, without the advantage of this Court's subsequent pronouncement on the actual meaning of the law."  *Trahan v. Brady*, 907 F.2d 1215, 1219 (D.C. Cir. 1990).

The Government lacks substantial justification if its position is "flatly at odds with the controlling case law," "obviously insufficient under well-established precedent," or advocated "in the face of an unbroken line of authority."  *Taucher*, 396 F.3d at 1174 (D.C. Cir. 2005) (quoting *Precision Concrete v. NLRB*, 362 F.3d 847, 851-52 (D.C. Cir. 2004)); *Hill v. Gould*,

555 F.3d 1003, 1008 (D.C. Cir. 2009).  The United States' position that Plaintiff's claims in

Counts II and V[6] were moot is none of those things.

"'[P]osition of the United States' means, in addition to the position taken by the United

States in the civil action, the action or failure to act by the agency upon which the civil action is

based . . . ."  28 U.S.C. § 2412(d)(2)(D).  "Despite focusing on both of the agency's actions and

the government's subsequent litigating position, the Court 'is not to review the different elements

of the government's position separately.'"  *Ivy Sports Med., LLC v. Burwell*, 174 F. Supp. 3d

130, 140 (D.D.C. 2016) (quoting *Ctr. for Food Safety v. Burwell*, 126 F. Supp. 3d 114, 123–24

(D.D.C. Sept. 4, 2015)).  "Instead, the Court must consider the agency's conduct and the

government's subsequent defense of that conduct 'as an inclusive whole,' and make 'only one

threshold determination for the entire civil action.'"  *Ivy Sports Med.*, 174 F. Supp. 3d at 140

(citations omitted).  Viewing the United States' position as a whole, the appropriate focus is

whether its mootness argument was substantially justified.

The United States moved to dismiss the claims in Counts II and V on the grounds of

mootness because the IRS had granted Plaintiff's application for tax-exempt status soon after it

filed this action, and thus the complained-of procedures regarding the application process no

longer could have been affecting Plaintiff.  (Doc. 54 at 2-5.)  This Court granted the motion to

dismiss, as well the United States' motion to dismiss similar claims in the related *Linchpins* case.

Even though the D.C. Circuit later reversed and remanded requiring further proof of voluntary

---

[6] As noted above, Plaintiff did not appeal the dismissal of its Count I claim, and the D.C. Circuit
affirmed the dismissal of all of Plaintiff's other claims.

cessation, certainly this Court's prior dismissal shows that the United States' position had "a reasonable basis in both law and fact." *Taucher*, 396 F.3d at 1173.

The ruling in another related case further supports the reasonableness of the United States' position. That case presented similar claims for declaratory and injunctive relief based on those plaintiffs' claims that the IRS had used unconstitutional criteria to select their applications for tax-exempt status for review, had issued irrelevant requests for information based on their viewpoints, and had unreasonably delayed the processing of their applications. In that case, the United States District Court for the Southern District of Ohio found that the similar "claim[s] for declaratory and injunctive relief cannot be brought by the other Plaintiff Groups who have either had their applications for tax exempt status ruled upon or have withdrawn their applications." *NorCal Tea Party Patriots v. IRS*, No. 1:13-CV-341, 2014 WL 3547369, at *9 n.11 (S.D. Ohio July 17, 2014).

The granting of True the Vote's application in 2013 certainly ended any prior delay in processing its application. But acting on the application meant more than just that the delay had long since ceased. Once Plaintiff's application was granted, it no longer was impacted by inappropriate selection criteria or any improper requests for additional information it may have received – even if the IRS still had been engaging in those activities, which it was not. That argument was and is supported by D.C. Circuit authority finding that Guantanamo Bay detainees' claims challenging their detention under an allegedly unlawful detention policy became moot upon their release. *See Qassim v. Bush*, 466 F.3d 1073, 1076 (D.C. Cir. 2006). The position on mootness that the United States advanced in its motion to dismiss is supported by relevant legal authority and thus is substantially justified.

11

This Court granted the United States' motion to dismiss on the advanced grounds that Counts II and V were moot because the IRS had acted on Plaintiff's application, as well as on the additional grounds that the IRS no longer was engaging in the practices that served as the bases for Plaintiff's claims.  The United States was substantially justified in defending this Court's dismissal on both those grounds when Plaintiff appealed.  This Court's well-reasoned opinion, *True the Vote*, 71 F. Supp. 3d at 226-29, shows that a reasonable person could conclude that the position on mootness was substantially justified, even though the D.C. Circuit later reversed the dismissal and remanded Counts II and V for further action.

On Plaintiff's appeal, the United States submitted TIGTA's 2015 Report, which found that the IRS had implemented recommendations made in TIGTA's 2013 Report to permanently change the conduct that gave rise to this action.  TIGTA's 2015 Report, however, was issued after this Court's ruling on the motion to dismiss.  Because it was not part of the record before this Court, the D.C. Circuit did not consider it in issuing its ruling, but noted that "the government is free to offer the document in the district court" on remand.  *True the Vote*, 831 F.3d at 562.

After the D.C. Circuit reversed the dismissal of Counts II and V and remanded those claims for further action consistent with its opinion, the United States was reasonable in accepting the D.C. Circuit's invitation to offer the 2015 TIGTA Report to this Court in support of its mootness argument.  In addition to submitting the 2015 TIGTA Report, the United States also submitted the detailed declaration of the IRS Exempt Organizations Director who held that position during the time that many of the IRS's changes were implemented.  That declaration describes in detail the actions that the IRS took to permanently change the conduct that gave rise

to Plaintiff's suit.  Based on those submissions, a reasonable person could conclude that the United States' position on mootness was substantially justified in fact.

The United States also was reasonable in renewing its argument that the IRS's action granting Plaintiff's application in 2013 rendered the claims at issue moot.  The D.C. Circuit found that voluntary cessation had not occurred because some of the *Linchpins* plaintiffs' applications had yet to be processed.  *True the Vote*, 831 F.3d at 561.  The D.C. Circuit "advise[d] the IRS that a heavy burden of establishing mootness is not carried by proving that the case is nearly moot, or is moot as to a 'vast majority' of the parties.  Their heavy burden requires that they establish cessation, not near cessation." *Id*. at 561.  Regardless of the status of any of the *Linchpins* plaintiffs' applications, True the Vote's application was granted in 2013, and its claims were moot as of that time.  To the extent that the D.C. Circuit considered the status of the *Linchpins* plaintiffs' applications somehow relevant to True the Vote's claims, by the time the United States renewed its mootness argument in this Court, the IRS had acted upon all applications of the *Linchpins* plaintiffs that wanted their applications acted upon, thus resolving the D.C. Circuit's concern on that point.

At all stages of this litigation, the United States' position that Plaintiff's claims are moot has been substantially justified in law and in fact.  Even if the IRS's administrative conduct is considered, and because mootness was the United States' position, the appropriate focus is what the agency did to change the complained-of conduct.  As Plaintiff acknowledges, on May 10, 2013, before this suit was filed, the IRS apologized for its actions that gave rise to this suit and acknowledged that it should have done far better in handling applications for tax-exempt status. (See Doc. 150 ¶ 5; Doc. 151-8 at 8 n.5.)  Also before this litigation began, the 2013 TIGTA Report, including the IRS Management response, which was attached as Appendix VIII to the

2013 Report (Doc. 1 6 at 50-55), showed that the IRS already had made meaningful strides to correct the conduct at issue and to ensure that it never happened again. [7]

At all relevant stages in this litigation, the United States' position on mootness was substantially justified.  As a result, Plaintiff may collect none of the attorneys' fees and costs that it has requested.

III.    Special circumstances exist here that would make an award of attorneys' fees and costs under the EAJA unjust.

A party is not entitled to its attorneys' fees and costs under the EAJA if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  The "special circumstances" language in the EAJA was meant to be a "safety valve" to "insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts" and to "permit courts to rely on 'equitable considerations' in denying a fee award." *Wilkett v. ICC*, 844 F.2d 867, 874 (D.C. Cir. 1986), citing H.R. Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S. Code Cong. & Admin. News 4953, 4984, 4990.  The D.C. Circuit has said that a guiding principle in determining if special circumstances exist is to apply "traditional equitable principles." *Air*

---

[7] Plaintiff incorrectly implies, citing paragraph 8 of the Consent Order, that the IRS continued to use inappropriate criteria "for more than 18 months after Lerner admitted it was wrong [in May of 2013]."  (Doc. 151-8 at 14.)  Plaintiff's implication that inappropriate criteria were still in effect in 2015 is simply wrong.  In fact, the IRS had ceased using the inappropriate criteria by May 2012, long before the filing of Plaintiff's complaint.  (*See* Consent Order ¶ 8(g), (h); Doc. 1-6, TIGTA Report of 2013, at 7 ("The May 2012 criteria more clearly focus on activities permitted under the Treasury Regulations").)  Furthermore, contrary to Plaintiff's assertions, paragraph 8 of the Consent Order describes criteria in effect from 2010 through May of 2012 and makes no mention of Lerner's apology in 2013.  As a result, Plaintiff's statement is unsupported and incorrect.

*Transport Ass'n of Canada v. FAA*, 156 F.3d 1329, 1333 (D.C. Cir. 1998).  The equities do not favor an award of attorneys' fees and costs here.

In addition to the reasons discussed above regarding the government's substantial justification for its litigation position, it would be unfair and unreasonable to award Plaintiff the fees and costs it seeks. Plaintiff is requesting nearly $2 million in attorneys' fees and costs in an action that never proceeded to merits discovery and in which the Court ordered extremely limited discovery in response to Plaintiff's Rule 56(d) Motion. In addition, three of the five counts in the first amended complaint did not survive a motion to dismiss. The remaining two counts were ultimately dismissed as well.  In settlement, Plaintiff received a Consent Order that includes the parties' adoption of specific facts found in the 2013 TIGTA Report and TIGTA's findings in its 2015 Report (and reiterated in its 2017 Report) that the IRS implemented recommendations made in TIGTA's 2013 Report. It was not Plaintiff or Plaintiff's complaint that caused the IRS to correct its conduct. Further, the IRS granted Plaintiff its tax-exempt status shortly after Plaintiff filed its complaint. Thus, the award of the large amount of fees claimed by Plaintiff would be grossly disproportional in comparison to the limited success it achieved.

A fee award is particularly inequitable given the treatment of the similarly situated plaintiffs in *Linchpins*.  The identical claims of the 38 remaining plaintiffs in *Linchpins* were dismissed without an award of attorneys' fees. (Case No. 1:13-cv-00777-RBW Doc. 143 ¶¶ 47-48.) And, unlike Plaintiff, the applications of a small number of the *Linchpins* plaintiffs had not been acted upon at the time the cases were before the D.C. Circuit, which was part of the basis for the D.C. Circuit's reversal of the mootness dismissal. Accordingly, the equities lay in favor of declining to award any attorneys' fees or costs in this action.

IV.   <u>Even if an award of attorneys' fees and costs under the EAJA were allowed, Plaintiff's requests are excessive.</u>

Plaintiff makes two separate requests for attorneys' fees and costs under the EAJA. Its first request is for $1,933,888 based on a "bad faith" enhancement of the normal statutory rates under 28 U.S.C. § 2412(b). As an alternative, it requests $750,922 under the normal EAJA rates. In either case, Plaintiff claims that its four law firms billed a total of 4,007 hours—the equivalent of one attorney working 40 hours per week, 50 weeks per year, for two years. Both of Plaintiff's requests are excessive, and it has not carried its burden to show that either is reasonable.

The general rule under the EAJA is that "Plaintiffs 'bear the burden of demonstrating the reasonableness of each element of their fee request.'" *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 28 (D.D.C. 2013) (quoting *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996)). "Degree of success is 'the most critical factor' in evaluating the reasonableness of a fee award." *Loving v. IRS*, 2014 WL 12778284, at *7 (D.D.C. Sept. 19, 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Also, fees may be awarded only for "time reasonably expended" on the litigation. *Porter v. Astrue*, 2013 WL 5978623, at *5 (D.D.C. Nov. 2013). Time that was wasted or otherwise unnecessary for the matter should be excluded. *Id.* The Court has wide discretion in reducing fee requests; it may reduce the requested hours by a percentage or may reduce particular line items in the fee request. *Id*. Fees must be sufficiently documented to be allowed. *Fabi Construction v. Sec. of Labor*, 541 F.3d 407, 411 (D.C. Cir. 2008). As discussed below, Plaintiff has not carried its burden.

When a litigant, like Plaintiff here, seeks a "bad faith" enhancement of the normal statutory rates under 28 U.S.C. § 2412(b), the burden is even higher.  "[T]he substantive standard for a finding of bad faith is stringent and attorneys' fees will be awarded only when extraordinary circumstances or dominating reasons of fairness so demand." *Ass'n of Am.*

16

*Physicians & Surgeons, Inc. v. Clinton,* 187 F.3d 655, 660 (D.C. Cir.1999) (quotation marks and citation omitted). "Further, the finding of bad faith must be supported by clear and convincing evidence, which generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain." *Id.* (quotation marks and citations omitted); *see also GasPlus, L.L.C. v. U.S. Dep't of Interior*, 593 F. Supp. 2d 80, 88 (D.D.C. 2009).

Here there are no such extraordinary circumstances.  There is no evidence that the United States acted in bad faith during this litigation.  This Court dismissed all of Plaintiff's claims, and although two claims were remanded for further proceedings, Plaintiff has now stipulated to the dismissal of those remaining claims. The parties agreed to settle this litigation under the terms of the Consent Order: Plaintiff's attempt to inject a finding of bad faith by the Court against the United States for the purpose of obtaining attorneys' fees should be summarily rejected.

Putting aside Plaintiff's argument for fee enhancement based on bad faith, Plaintiff's alternate request for $750,922 is objectionable and excessive for many reasons. The government will not attempt to go line-by-line through the hundreds of pages of billing statements Plaintiff filed for its four law firms, but we call the Court's attention to several transparent issues.

**Lack of detail in billing records.** Under *Kennecott Corp. v. E.P.A.*, 804 F.2d 763, 767 (D.C. Cir. 1986), "[f]ee applicants bear the heavy obligation to present well-documented claims." (citations and internal quotations omitted). Many of the billing records filed in support of Plaintiff's application lack sufficient detail. For example, Foley & Lardner, LLP's records contain entries in which an attorney billed numerous hours for "Work on IRS issue." (Doc. 151-9 at 2). From that description, it is impossible to determine what work that attorney performed and whether the work was reasonable.

17

The adjustments supposedly made by Plaintiff's counsel to reflect deductions for the unsuccessful claims in the complaint for damages under I.R.C. § 7431 and for alleged constitutional violations by individual defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)—see page 24 of the Memorandum—are inadequately documented. On page 37 of Doc. 151-9, a Foley & Lardner attorney bills 4.30 hours for research "to identify and outline allegations made concerning each defendant," which appears to relate to the *Bivens* defendants. There is no way to verify whether the adjustments have accurately been made.

**Charges for "fundraising" or other non-legal work.** Plaintiff asks the government to pay for work "on fundraising for IRS Litigation costs" and "grant proposal for IRS litigation" (Doc. 151-9 at 5) and "draft/forward outline regarding IRS Litigation Fund" (Doc. 151-9 at 6). Those tasks are not compensable because they do not represent legal work.

**Possible duplication of efforts.** Plaintiff has had four different law firms representing it in this case: The Public Interest Legal Foundation ("PILF"), The Center for Constitutional Jurisprudence ("CCJ"), Foley & Lardner ("Foley"), and The Bopp Law Firm, PC ("BLF"). Multiple attorneys from each firm billed time to the case. PILF, CCJ, and Foley represented Plaintiff initially, Plaintiff discharged them, and it hired BLF to take over. Plaintiff does not explain what, if anything, was done to avoid duplication of efforts. It is Plaintiff's burden to show that its attorneys worked efficiently.

**"Media relations" charges.** In the D.C. Circuit, "the government cannot be charged for time spent in discussions with the press." *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004). Foley's records contain charges for "Receive/review press calls; send documents to media" (Doc. 151-9 at 2); "press conference call regarding IRS lawsuit"

(Doc. 151-9 at 3); "news coverage regarding [IRS employee] Holly Paz" (Doc. 151-9 at 4); and "appear on Tony Perkins radio show" (Doc 151-9 at 23). Charges of this type are not allowable.

**Questionable charges for service of process and electronic legal research.**

Although not large, numerous charges appear in connection with service of process on the individual *Bivens* defendants. (*See* Doc. 151-10 at 7 ("Discuss needs for home addresses of defendants with KLP").) All of the *Bivens* charges were dismissed, so these billings should be disallowed.

Further, Foley seeks more than $17,000 for "electronic legal research" with no description of when the research was conducted, by whom, or why. (Doc. 151-12 at 5.) That documentation is insufficiently detailed.

## CONCLUSION

Plaintiff does not qualify to receive its requested attorneys' fees. As an initial matter, Plaintiff was not the prevailing party in this action. There has been no court-ordered change in the legal relationship of the parties, Plaintiff has obtained no judgment on the merits in its favor, and Plaintiff has obtained no judicial relief on the merits. Instead, Plaintiff consented to the dismissal of its claims in Counts II and V, the only claims that survived both this Court's prior order of dismissal and the D.C. Circuit's ensuing opinion. Even if Plaintiff were a "prevailing party" within the meaning of the EAJA, it still would not be entitled to an award of attorneys' fees because the United States was substantially justified in its position that Plaintiff's claims were moot. As a result, the United States asks the Court to decline to award Plaintiff any attorneys' fees and costs.

19

DATED: March 6, 2018                    Respectfully submitted,

                                        RICHARD E. ZUCKERMAN
                                        Principal Deputy Assistant Attorney General
                                        Tax Division

                                        s/ Joseph A. Sergi
                                        JOSEPH A. SERGI (DC 480837)
                                        Senior Litigation Counsel
                                        U.S. Department of Justice, Tax Division
                                        555 4th Street, N.W., JCB 7207
                                        Washington, D.C. 20001
                                        (202) 305-0868; (202) 307-2504 (FAX)
                                        Joseph.A.Sergi@usdoj.gov

                                        LAURA M. CONNER (VA 40388)
                                        STEVEN M. DEAN (DC 1020497)
                                        JOSEPH R. GANAHL (MD)
                                        W. CARL HANKLA (DC 411665)
                                        JEREMY N. HENDON (OR 982490)
                                        Trial Attorneys
                                        U.S. Department of Justice, Tax Division
                                        555 4th Street, N.W.
                                        Washington, D.C. 20001
                                        (202) 514-2000

                                        Of Counsel:
                                        JESSIE K. LIU
                                        United States Attorney

                                        ATTORNEYS FOR THE UNITED STATES

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TRUE THE VOTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-00734-RBW |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2018, the *UNITED STATES' OPPOSITION TO PLAINTIFF'S APPLICATION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES* was filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

s/ *Joseph A. Sergi*
JOSEPH A. SERGI