**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **True the Vote, Inc.;** *Plaintiff,* | |
| *v.* | **Civil Case No.** 1:13-cv-000734-RBW |
| **Internal Revenue Service, et al.;** *Defendants.* | **Plaintiff's Reply to United States' Opposition to Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses** |

## Plaintiff's Reply to United States' Opposition to Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**

# Table of Contents

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   I.   TTV Achieved the Relief Sought in its Litigation Against the IRS Through the
Consent Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

  II.   TTV Is the Prevailing Party Under the Consent Order. . . . . . . . . . . . . . . . . . . . . . . . 3

       A.   The Consent Order Carries the Judicial Imprimatur Required Under
*Buckhannon* to Confer Prevailing Party Status on TTV. . . . . . . . . . . . . . . . . . . . . 4

       B.   The Consent Order Specifically Addresses Both Screening by Name and Policy
Positions and Viewpoint Discrimination While the IRS's Implemented
Changes to Procedures Do Not Address the Underlying Viewpoint
Discrimination Which Led to This Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       C.   The Consent Order's Declarations Have Prospective Effect. . . . . . . . . . . . . . . . . . 7

 III.   The United States' Position Is Not Substantially Justified Under the EAJA. . . . . . . . 12

       A.   The IRS's Conduct Underlying This Litigation Cannot Be Substantially
Justified. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       B.   The DOJ's Conduct During This Litigation Cannot Be Substantially Justified. . . 16

 IV.   Special Circumstances Do Not Exist That Make an Award of Attorneys' Fees Unjust. 17

  V.   TTV's Requested Fees Are Not Excessive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

       A.   TTV Is Entitled to a Bad Faith Enhancement Under the EAJA Because of the
IRS's Conduct That Gave Rise to This Litigation. . . . . . . . . . . . . . . . . . . . . . . . . 20

       B.   TTV Is Entitled to Enhanced Fees Because of the DOJ's Unnecessarily
Litigious Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

       C.   TTV's Attorneys' Billing Practices Are Fair and Reasonable. . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                                  i

# Table of Authorities

*Cases*

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6, 21, 22

*Blackman v. District of Columbia*, 390 F. Supp. 2d 16 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . 8

*Cobell v. Norton*, 407 F. Supp. 2d 140 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Davy v. CIA*, 456 F.3d 162 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*DL v. D.C.*, 187 F. Supp. 3d 1 (D.D.C. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*Gatson v. Bowen*, 854 F.2d 379 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ivy Sports Med., LLC v. Burwell*, 174 F. Supp. 3d 130 (D.D.C. 2016) . . . . . . . . . . . . . . . . . . . . 13

*Jean v. Nelson*, 863 F.2d 759, 776 (11th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*NLRB v. Holsum Bakers of P.R.*, No. 96-1065, 1998 U.S. App. LEXIS 10650 (D.C. Cir. Apr. 29, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Oregon Natural Resources Council v. Lyng*, 882 F.2d 1417 (9th Cir. 1989). . . . . . . . . . . . . . . 14

*Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pierce v. Underwood*, 487 U.S. 552 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Porter v. Astrue*, 2013 WL 5978623 (D.D.C. Nov. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Russell v. Heckler*, 866 F.2d 638 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Taucher v. Brown-Hruska*, 396 F.3d 1168 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Trahan v. Brady*, 907 F.2d 1215 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*True the Vote, Inc. v. IRS*, 71 F. Supp. 3d 219 (D.D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**

*True the Vote, Inc. v. IRS*, 831 F.3d 551 (D.C. Cir. 2016) . . . . . . . . . . . . . . . 2, 10, 14, 16-18, 21

*United States v. Wells Fargo Bank, NA*, 891 F. Supp. 2d 143 (D.D.C. 2012) . . . . . . . . . . . . . . . 8

*Univ. Legal Servs. Prot. & Advocacy, Inc. v. Knisley*, 2006 U.S. Dist. LEXIS 89140 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wilkett v. ICC*, 844 F.2d 867 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

### Constitutions, Statutes & Rules

28 U.S.C. § 2412(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2412(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 2412(d)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 2412(d)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S. Const., amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

### Other Authorities

Internal Revenue Manual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TIGTA 2013 Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

TIGTA 2015 Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 9, 18

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                          iii

On February 20, 2018, Plaintiff True the Vote, Inc. ("TTV") filed its *Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act*. On March 6, 2018, Defendant Internal Revenue Service ("IRS"), through its counsel at the U.S. Department of Justice, Tax Division ("DOJ"), timely responded. On March 8, 2018, this Court granted TTV a 30-Day Extension for its reply. TTV now timely replies.

## Argument

### I. TTV Achieved the Relief Sought in its Litigation Against the IRS Through the Consent Order.

Under the Equal Access to Justice Act ("EAJA"), a "prevailing party shall be awarded attorneys' fees and other expenses, . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "Prevailing party" is a legal term of art; the United States Supreme Court has summarized its view that a "prevailing party is one who has been awarded some relief by the court . . . ." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). TTV obtained the relief it sought in the litigation by the Consent Order herein.

On June 7, 2010, TTV organized as a non-profit corporation under laws in the State of Texas. (*First Am.Verified Compl.*, Doc. 14, ¶ 31). ("Compl."). Almost immediately, TTV applied for tax exemption under Section 501(c)(3) with the IRS, and the IRS received TTV's application no later than September 23, 2010. (*Def.'s Answer*, Doc. 117, ¶ 4). However, TTV did not receive its determination letter granting tax-exempt status until September 20, 2013. Instead of simply processing TTV's application in the same manner as all other applications received, the IRS

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                    1

implemented a methodology to target conservative groups for heightened scrutiny, by examining their names and policy positions. (*See Consent Order*, Doc. 150, ¶ 8(a),(b),(f)(h)). All of the conservative organizations that matched the IRS's screening methodology were subjected to heightened scrutiny. (*Id.* at ¶ 8(j)). The IRS's screening methodology resulted in substantial delays in processing TTV's application. (*Id.* at ¶ 40).

TTV sought various legal and equitable remedies in this litigation, most importantly the claim that "the existence and application of the IRS Targeting Scheme by the IRS . . . constitutes blatant viewpoint discrimination in violation of the First Amendment," for which TTV requested "[a] declaration that the IRS Targeting Scheme and any other similar policies are unconstitutional under the First Amendment to the United States Constitution." (*Compl.*, Doc. 14, at ¶ 156, Prayer for Relief at ¶ 2 ).[1] These requests for declaratory judgments, however, were deemed moot by this Court, *True the Vote, Inc. v. IRS*, 71 F. Supp. 3d 219, 229 (D.D.C. 2014), but the D.C. Circuit reversed, finding the changes the IRS had implemented, referenced in the Treasury Inspector General for Tax Administration 2013 Report ("TIGTA 2013"), were insufficient to ensure that the IRS's discriminatory activity could not recur. *See True the Vote*, 831 F.3d at 564.

Upon remand, the IRS produced the Treasury Inspector General for Tax Administration 2015 Report ("TIGTA 2015"), which allegedly detailed the types of "permanent" changes the IRS made after the TIGTA 2013. Through discovery, the IRS provided TTV with parts of its Internal

---

[1] Other relief sought, such as actual and punitive damages were denied by this Court and affirmed by the United States Court of Appeals for the District of Columbia. *See True the Vote, Inc. v. IRS*, 831 F.3d 551 (D.C. Cir. 2016).

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                     2

Revenue Manual ("IRM"), a training manual adopted in October 2015.

https://www.irs.gov/irm/part7/irm_07-020-002r (last checked April 10, 2018). The IRS again

purports the IRM made the type of permanent, irrevocable changes against viewpoint

discrimination TTV sought in this litigation; under the heading "General Case Processing

Considerations," it reads, "**Caution:** Review cases based on the **activities** of an organization, **not**

on words in a name or labels." *Id.* (emphasis in original). While this one subsection of the

training manual cautions against using the methodology of "reviewing cases" based upon names

or labels, it does not address in any way the larger underlying problem in the IRS's conduct:

viewpoint discrimination. Furthermore, Part 1.2 of the IRM contains broad "policy statements,"

and none of these policy statements address viewpoint discrimination in administering the IRC.

*See* https://www.irs.gov/irm/part1/irm_01-002-010 (last checked April 10, 2018). Employee

training manuals, and to perhaps a lesser extent, agency policy statements can be changed at any

point. Declaratory judgments by a court, however, carry the force of law.

The Consent Order negotiated between the parties does contain the type of declaratory

judgments against viewpoint discrimination sought by TTV in its Complaint. (*See Consent

Order*, Doc. 150, ¶¶ 48-50). Therefore, TTV achieved the relief sought in its litigation against the

IRS through the Consent Order and thus is a prevailing party.

## II. TTV Is the Prevailing Party Under the Consent Order Because It Changed the Legal Relationship Between TTV and the IRS.

The Consent Order approved by this Court contains a combination of IRS stipulations, Court

findings, and this Court's declaratory judgments. Taken together, the Consent Order also changes

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                                    3

the legal relationship between TTV and the IRS and confers prevailing party status upon TTV. The DOJ's assertions to the contrary have no merit. (U.S. Opp., Doc.152, 4). The Consent Order makes clear declaratory judgments about the illegality of the type of screening based upon name or policy positions engaged in by the IRS and about the viewpoint discrimination that TTV was subjected to by the IRS. (*See Consent Order*, Doc. 150, ¶¶ 48-50). These carry the judicial imprimatur required to confer prevailing party status on TTV. The Consent Order addresses the illegality of the IRS's viewpoint discrimination, while changes implemented at the IRS only address "case review" based upon taxpayers' names. *See* IRM 7.20.2.2. Therefore, the Consent Order also carries prospective effect against the IRS if the agency once again subjects TTV to illegal heightened scrutiny on the basis of its political viewpoint. The Consent Order's judicial imprimatur, specific declarations regarding political viewpoint discrimination, and prospective effect combine to change the legal relationship between TTV and the IRS and confer prevailing party status on TTV.

**A.   The Consent Order Carries the Judicial Imprimatur Required Under *Buckhannon* to Confer Prevailing Party Status on TTV.**

The DOJ's characterization of the Consent Order as a mere judicial pronouncement misreads the purpose of the Consent Order and both its current and future effects on the parties. (U.S. Opp., Doc.152, 6). The DOJ relies on *Buckhannon's* statement that a judicial pronouncement unaccompanied by "judicial relief" is not enough to confer prevailing party status on TTV. 532 U.S. at 606. However, the *Buckhannon* Court stated that "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                          4

parties necessary to permit an award of attorney's fees." *Id.* at 604 (internal citations omitted).

Therefore, a party may be considered a "prevailing party" for the purpose of awarding attorney's

fees with either: (1) an enforceable judgment on the merits; or (2) a settlement agreement

enforceable through a court-ordered consent decree. *Perez-Arellano v. Smith*, 279 F.3d 791, 793

(9th Cir. 2002). *See also, Univ. Legal Servs. Prot. & Advocacy, Inc. v. Knisley*, 2006 U.S. Dist.

LEXIS 89140, 9-10 (D.D.C. 2006). A court-ordered consent decree[2] does not have to include an

admission of liability to meet the *Buckhannon* standard to confer prevailing party status. 532 U.S.

at 604.

The DOJ acknowledged that the IRS stipulated that it was "wrong" to subject TTV to

heightened scrutiny, delay, and unnecessary intrusion, but asserts such stipulations do not give

rise to a violation of law. (U.S. Opp., Doc.152, n. 5). The DOJ seems to be arguing that the IRS's

actions were morally wrong, but not a violation of law or the U.S. Constitution. The Consent

Order, however, does not stop at the IRS's stipulations to its conduct. This Court, through

declaratory judgments, makes it clear the actions of the IRS are not just morally wrong, but that

"discrimination on the basis of political viewpoint in administering the United States tax code

violates fundamental First Amendment rights." (*Consent Order*, Doc. 150, ¶ 50).

The IRS admits it screened TTV's application based upon its name or policy positions and

then subjected it to heightened scrutiny, inordinate delays, and unnecessary demands. (*Consent*

---

[2] A "consent order" carries the same judicial imprimatur as a "consent decree." *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) (doubting *Buckhannon* was "intended to be interpreted so restrictively as to require that the words 'consent decree' be used explicitly").

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                                    5

*Order*, Doc. 150, ¶ 40). Ten paragraphs after the IRS admits to these actions, this Court declares such viewpoint discrimination to be unlawful and unconstitutional. (*Id*. at ¶ 50). The IRS cannot, on one hand, admit to "mere wrongdoing," while on the other hand, agree to a Consent Order which declares such "wrongdoing" to be unlawful and unconstitutional. Therefore, the Consent Order carries the judicial imprimatur required under *Buckhannon* to confer prevailing party status to TTV.

> **B.   The Consent Order Specifically Addresses Both Screening by Name and Policy Positions and Viewpoint Discrimination While the IRS's Implemented Changes to Procedures Do Not Address the Underlying Viewpoint Discrimination Which Led to This Litigation.**

The IRS stipulates that it subjected some applicants, TTV included, to heightened scrutiny on the basis of their names or policy positions. (Consent Order, Doc. 150, ¶ 40). Using "Tea Party," "Patriots," and "9/12" was simply the methodology the IRS used to ferret out conservatives for the BOLO lists because those names revealed the groups as politically conservative organizations. (*See id.* at ¶ 8b). The Court declares these types of actions as unconstitutional. (*Id.* at ¶ 50). In order to reach the "absolute assurance" that discrimination will not recur, any IRS policy implemented to rectify such discrimination should deal directly with prohibiting viewpoint discrimination, which the IRS has not done.

After the D.C. Circuit rejected the IRS's voluntary cessation and mootness arguments, this case was remanded and further discovery was ordered from this Court. (Discovery Order, Doc. 138)*. The IRS produced documentation regarding its current training and procedures for applicant screening, which only addressed the case review use of names or labels, not policy

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                              6

positions or political viewpoints. *Supra* at 3.This training does not prohibit the consideration of

an organization's policy positions in its tax-exemption determinations, which was part of the

BOLO screening process, or prohibit discrimination based on the organization's political

viewpoints which was its goal. Moreover, IRS training procedures are different than policy; IRS

policy statements are in a different section of the manual and these policy statements also contain

no specific prohibition on viewpoint discrimination. *Supra* at 3.

The IRS also references the TIGTA 2015 as proof of how the IRS's implemented changes

ensure viewpoint discrimination will not recur. TIGTA 2015 contains audit reviews and findings

of IRS procedures, but does not itself implement any changes at the IRS. *See* TIGTA 2015 at 2.

TIGTA 2015 reviewed IRS training changes, elimination of BOLO lists, and determination of

applications for tax-exempt status "without regard to specific labels of any kind." TIGTA 2015 at

8. TIGTA 2015 also reviewed the IRS's creation of committees to "screen, review, and monitor

emerging issue referrals and to make appropriate recommendations regarding them." *Id.* at 8.

However, TIGTA 2015 did not identify any policy which prohibited viewpoint

discrimination. Thus, the IRS changes were not fundamental policy changes, but largely

cosmetic. The Consent Order deals directly with the root problem of the IRS's viewpoint

discrimination.

**C.   The Consent Order's Declarations Have Prospective Effect.**

The Consent Order carries prospective effect in the continuing legal relationship between

TTV and the IRS. A consent order has prospective effect when it resolves a legal question or

issue between the parties, is "inextricably intertwined" with an issue of agency non-compliance,

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                              7

or is one that offers a party post-consent order basis for action. *United States v. Wells Fargo Bank, NA*, 891 F. Supp. 2d 143, 146 (D.D.C. 2012) (holding consent order tailored to ending policies that led to discrimination and to assuring no discrimination recurs); *Blackman v. District of Columbia*, 390 F. Supp. 2d 16, 18 (D.D.C. 2005) (finding consent order "inextricably intertwined" with agency non-compliance, "persistent difficulties" achieving post-consent order compliance, and plaintiff "prevailed by virtue of Consent Order"); *NLRB v. Holsum Bakers of P.R.*, No. 96-1065, 1998 U.S. App. LEXIS 10650, at *4 (D.C. Cir. Apr. 29, 1998) (holding consent order basis for post-consent order action and original prevailing party status).

Here, the IRS implemented a screening methodology which enabled it to discriminate against organizations based upon their political viewpoint. *See* (*Consent Order*, Doc. 150, ¶ 8). TTV's legal protection against the IRS's viewpoint discrimination has been a primary legal concern throughout this litigation, and the IRS's implemented changes inadequately protect TTV against future viewpoint discrimination. *Supra* at 2, 6-7. However, the Consent Order will protect TTV in the future, if the IRS's viewpoint discrimination recurs. Therefore, the Consent Order contains prospective effect as it resolves a primary legal question between the parties by offering TTV protection against recurrence of the IRS's viewpoint discrimination.

Consent Orders offer important protection against future recurrences of the behavior underlying the litigation when the parties will have an ongoing relationship. *DL v. D.C.*, 187 F. Supp. 3d 1, 9 (D.D.C. 2016) (suit against D.C. School District for violations of Rehabilitation Act). The school district asserted the plaintiffs were not the prevailing parties based upon the

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                    8

declaratory judgments regarding district's past violations because it had implemented a "web of policies, safeguards, and personnel" that provided assurances violations would not recur. *Id.* at 9.

The *DL* court rejected the school district's "assurances." In spite of defendants' *five year* period of sustained compliance, the court held it was not "absolutely clear" there could be no reasonable expectation of recurrence. *Id.* at 10. (emphasis added). The court reached this conclusion by considering that the school district had: (1) complied because of the litigation; (2) a long history of violations; (3) consistently and completely contested liability; and (4) a large, complex system that would require great effort to administer properly, and therefore presented a greater opportunity for recurrence of the violations. *See id.* at 10, 15 (comparing relatively simple, physical changes that decrease likelihood of recurrence).

Here, as long as TTV operates as a 501(c)(3) organization, it will have an ongoing relationship with the IRS because the IRS investigates organizations like TTV to ensure they are not participating in disallowed political campaign intervention activities. *See* TIGTA 2015 at 2. Because of this continuing relationship, the combination of IRS stipulations and this Court's declaratory judgments will legally protect TTV from a recurrence of the IRS's viewpoint discrimination. *See* (*Consent Order*, Doc. 150, ¶ 50).

The IRS subjected TTV to heightened scrutiny, unnecessary questions, and inordinate delays for nearly three years. (*Consent Order*, Doc. 150, ¶ 40). The *DL* court rejected an argument that declaratory judgments on prior violations have no effect when those violations had been discontinued for five years. As recently as 2016, the D.C. Circuit ruled the IRS had not

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                                       9

permanently abandoned its use of BOLO lists and other methods of politically-based scrutiny. *True the Vote* 831 F.3d at 561 (holding IRS's "heavy burden requires that they establish cessation, not near cessation).

The IRS's arguments in its Opposition align with the same resistance it showed at the late stages of this litigation. On April 6, 2017, this Court held a hearing to determine issues related to discovery. (Tr. of Mot. Hr'g, Doc. 139). This Court asked the attorney for the DOJ, "[y]ou're not suggesting that there was not inappropriate targeting of conservative groups are [you]?" The IRS's counsel equivocated in its answer, "Your Honor, no one, no one disputes that what the IRS did was wrong. But at the same time, that still does not answer whether that arose to a level of constitutional violation." *(Id.* at 28-29). The defendant's resistance to an admission of liability on past violations led the *DL* court to find an increased likelihood of recurrence. *DL*, 187 F. Supp. 3d at 10. On one hand, the IRS wants this Court to discount the declaratory judgments in the Consent Order as inapplicable to the IRS's past actions because it promises never to reinstate the practices which led to this litigation. (U.S. Opp., Doc.152, 6). On the other hand, it also continues to deny the illegality and unconstitutionality of its actions which led to this litigation. The *DL* court was right to look skeptically at a defendant who promises to continue to act legally, but who also denies liability for the actions which forced the litigation. The same skepticism is warranted here.

The IRS is a large and complex organization, with over 75,000 full-time positions. https://www.irs.gov/statistics/irs-budget-and-workforce (last visited April 3, 2018). The D.C.

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                                    10

school district the *DL* court characterized as "complex" has just under 10,000 employees. *See* https://dcps.dc.gov/sites/default/files/dc/sites/dcps/publication/attachments/FY16_DCPS_School _Budget_Overview.pdf (last visited April 3, 2018). The *DL* holding shows the complexity of the IRS lends itself to an increased risk that mismanagement or improper oversight could lead to a recurrence of viewpoint discrimination.

The IRS granted TTV its tax-exempt status within months of this litigation's commencement, after three years of heightened and unnecessary scrutiny based upon its political viewpoint. The IRS continues to characterize this heightened scrutiny as merely wrong, but denies its past actions were found to be illegal or unconstitutional. The IRS asserts this Court's declaratory judgments in the Consent Order do not apply to the IRS's past actions and do not carry prospective effect which changes the legal relationship between the IRS and TTV. The amount of oversight necessary for the IRS to maintain non-discriminatory policies and procedures makes it more likely such discrimination could recur, and makes the Consent Order more effective in its protection of TTV. All of these factors mean the Consent Order's declarations have prospective effect.

The Consent Order: (1) carries the judicial imprimatur required under *Buckhannon*; (2) specifically addresses viewpoint discrimination which the IRS does not in its implemented changes; and (3) has prospective effect. For all of these reasons, TTV is the prevailing party.[3]

---

[3] The DOJ argues that because Counts II and V of TTV's complaint were dismissed with prejudice, TTV cannot prevail on claims the court dismissed. (U.S. Opp., Doc.152, 6). The parties agreed to dismiss the remaining claims with prejudice because they had reached an

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                    11

### III. The United States' Position Is Not Substantially Justified Under the EAJA.

For a prevailing party to obtain an award of attorney's fees under the EAJA, the position of the United States must not be substantially justified. § 2412(d)(1)(B). The United States carries the burden to justify *both* its conduct which led to the litigation *and* its litigation position to the extent that the justification would satisfy a reasonable person. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (emphasis added). However, the Court cautioned substantially justified means "more than merely undeserving of sanctions for frivolousness" because the sanction standard is not the standard "of which a reasonable person would approve." *Id.* at 566.

The DOJ asserts its position defending this action was substantially justified. (U.S. Opp., Doc.152, 9). The DOJ virtually ignores the IRS's conduct underlying the litigation, and urges that only the changes to its "complained-of conduct" should be considered. (*Id.* at 13). The DOJ's analysis of subsequent changes misapplies the legal standard for determining whether the government was substantially justified. The DOJ focuses primarily on its argument that its mootness defense was justified. However, the DOJ still shows resistance to the D.C. Circuit ruling which rejected the mootness argument. *Infra*. at 16. In addition, the DOJ, as late as 2017, continued to question whether the IRS conduct was even a constitutional violation, in direct contradiction to the D.C. Circuit's decision. *Supra* at 10.

---

agreement regarding the stipulations and court declarations. *See* (Consent Order, Doc. 150, ¶ 47). Consent Orders necessarily bring an end to litigation, which requires a dismissal of claims. This dismissal with prejudice is not the same as a court dismissal due to lack of merit and does not deprive TTV of prevailing party status.

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                    12

The government agency will necessarily have lost at least part of its case if the substantial justification question is reached. *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173, (D.C. Cir. 2005). The court does not re-litigate, but makes one threshold determination regarding the government's substantial justification for both the underlying agency conduct and the subsequent defense of that conduct; however, one part of the analysis does not swallow the other. *See Ivy Sports Med., LLC v. Burwell*, 174 F. Supp. 3d 130, 140 (D.D.C. 2016); *see also Taucher*, 396 F.3d 1168; *Trahan v. Brady*, 907 F.2d 1215, 1218 (D.C. Cir. 1990). To support its position that a threshold analysis by this Court should "appropriate[ly] focus" on whether its mootness argument was substantially justified, the DOJ relies primarily on *Ivy Sports Med.*, *Taucher*, and *Trahan*. (U.S. Opp., Doc.152, 9-10). Contrary to the DOJ's assertion; however, these courts do not "focus" only on the defense arguments made during the litigation, but also analyze the reasonableness of the underlying government *conduct. See Ivy Sports Med.*, 174 F. Supp. 3d at 145-46 (determining government substantially justified in rescinding approval for medical device *and* defense based on statutory interpretation, administrative law, and legislative history); *Trahan*, 907 F.2d at 1219-20 (holding government reasonable in interpretation regarding contents of consent form *and* defense based upon available law at time); *Taucher*, 396 F.3d at 1175-76 (finding reasonable government registration of publishers *and* defense as no controlling precedent existed).

Neither the IRS's discriminatory conduct which led to this litigation, nor the DOJ's actions during the litigation can be justified, and the IRS must justify both. Therefore, the IRS's position

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                           13

is not substantially justified under the EAJA.

**A.  The IRS's Conduct Underlying This Litigation Cannot Be Substantially Justified.**

The IRS's conduct underlying this litigation began in 2010, not in 2012 or 2013. (*Consent Order*, Doc. 150, ¶ 8). Targeting names and policy positions (such as concern about government debt) was the methodology used to discriminate based upon political viewpoint. *Supra* at 6. It is not only a hypothetical "reasonable person" under *Pierce* who would deem the underlying IRS conduct as unjustified. The D.C. Circuit recognized that the IRS "utterly failed" in its mission to "apply tax law with integrity and fairness to all" and such discriminatory conduct could not be defended. *True the Vote*, 831 F.3d at 559, 561 (referencing TIGTA 2013 at 6-7). When the agency action underlying the litigation is "patently unreasonable," the EAJA clearly supports a finding that the government is not substantially justified. *Trahan*, 907 F.2d at 1219 (citing, *inter alia*, *Oregon Natural Resources Council v. Lyng*, 882 F.2d 1417, 1428 (9th Cir. 1989); *Russell v. Heckler*, 866 F.2d 638, 640 (3d Cir. 1989); *Gatson v. Bowen*, 854 F.2d 379, 380-81 (10th Cir. 1988); *Wilkett v. ICC*, 844 F.2d 867, 872 (D.C. Cir. 1988)).

The DOJ virtually ignores any substantial justification analysis of the IRS's conduct underlying this litigation and instead focuses its analysis of whether the DOJ's mootness argument during the litigation was justified. (U.S. Opp., Doc.152, 9-13). The analysis of the DOJ's mootness argument is analyzed in the next section. *Infra*. at 16. However, the DOJ does state, "[e]ven if the IRS's administrative conduct is considered, and because mootness was the United States' position, the appropriate focus is what the agency did to change the complained-of

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                                14

conduct." (U.S. Opp., Doc.152, 13) (analysis of changes *supra* at 3,6,7).

The DOJ's focus on what the agency did to change its conduct completely misreads the substantial justification standard under the EAJA and court precedent. The standard under the EAJA is clear: the government must be substantially justified in both its *conduct underlying the litigation* and in its defense of those actions. *Cobell v. Norton*, 407 F. Supp. 2d 140, 152 (D.D.C. 2012) (emphasis added). The DOJ wants to start the analysis clock for the underlying actions at the point it allegedly began to change its "complained-of conduct." (U.S. Opp., Doc.152, 13). The clock for the underlying conduct did not start in 2012, when the IRS began to take some inadequate steps toward corrective action.[4] The underlying conduct began in 2010, when TTV was subjected to heightened scrutiny because of its political viewpoint. (*Consent Order*, Doc. 150, ¶¶ 8, 40). This Court's analysis of whether the IRS's underlying actions would satisfy a reasonable person that such actions were substantially justified must begin when the heightened scrutiny began, not when the agency partially addressed some of the underlying issues.

The IRS's systematic application of heightened scrutiny and inordinate delays to tax-exempt applicant organizations based upon their political viewpoints are the underlying actions to this litigation, and these actions are patently unreasonable. Because they are patently unreasonable,

_____

[4] The DOJ states that the IRS actions allegedly lasted for only 18 months and ended before, not after, Lois Lerner's apology in May 2013 detailed in the Consent Order. (U.S. Opp., Doc.152, n.7). While the 18 month period detailed in ¶ 8 of the Consent Order did occur prior to Ms. Lerner's apology, the fact remains that TTV was subjected to delays in its application even after this apology, not receiving its tax-exempt status until September 2013. As discussed *supra* at 10, the D.C. Circuit held in 2016, that the IRS had not permanently ceased this scrutiny, and the Consent Order's declaratory judgments were necessary to protect TTV. *Supra* at 7-11.

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                         15

the DOJ cannot show that it can satisfy a reasonable person that the IRS's actions were

"substantially justified." As a result of the DOJ's failure to show the substantial justification of

the IRS's actions, TTV is entitled to an award of attorneys' fees under the EAJA.

**B.   The DOJ's Conduct During This Litigation Cannot Be Substantially Justified.**

The *Pierce* standard also requires the DOJ to show its actions *during the litigation* would

"satisfy a reasonable person." *Pierce*, 487 U.S. at 565. (emphasis added). This litigation

commenced in 2013, three years after TTV was subjected to heightened scrutiny (*Verified*

*Compl.*, Doc. 1). The IRS could have permanently ceased systemic discrimination for all

organizations, including TTV, at any point in those three years. It did not do so.

Instead, the DOJ argued for five years that TTV's claims should be dismissed for mootness.

(Mem. of P.&A., Doc. 151-8, 15-16). The D.C. Circuit rejected this argument, not only for

organizations whose applications still remained pending, but for TTV as well. *True the Vote*, 831

F.3d at 554, 561-63 (holding differences in factual detail immaterial to ultimate decision and

statements of law applicable to Linchpins and TTV). Finding that the IRS had merely "suspended

[its discriminatory practices] until further notice," the D.C. Circuit ruled suspension did not

equate to permanently abandoning such practices. *See id*. Even today, the DOJ states, in direct

contradiction to the D.C. Circuit's ruling, "[r]egardless of the status of any of the Linchpins

plaintiffs' applications, True the Vote's application was granted in 2013, and its claims were

moot as of that time." (U.S. Opp., Doc.152, 13).

The DOJ argues that the defense of mootness was justified at the instant TTV received its

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                              16

tax-exempt status and when the IRS began to implement some inadequate changes in procedures. *Id.* This argument contradicts the D.C. Circuit's holding. *True the Vote* 831 F.3d at 561-563. In 2016, the D.C. Circuit was quite aware that TTV had already been granted its tax-exempt status yet still ruled that the "suspension until further notice" could be revoked at any time by the IRS. *Id.* Then, TTV could once again be subjected to the type of viewpoint discrimination that the court termed "a blatant violation of the First Amendment." *Id.* at 561.

The IRS still resists what the D.C. Circuit unequivocally stated in its opinion. As recently as 2017, the DOJ questioned whether what the IRS did "arose to a level of constitutional violation."*Supra* at 10. However, that "question" had in fact been answered when the D.C. Circuit deemed administering the tax code with viewpoint discrimination "a blatant violation of the First Amendment." *True the Vote*, 831 F.3d at 561. Because of its resistance to both the mootness ruling of the D.C. Circuit and that the IRS's actions were constitutional violations, the DOJ cannot show that it can satisfy a reasonable person that the IRS was "substantially justified" in its actions during the litigation. Therefore, the United States' position is not substantially justified under the EAJA.

### IV. Special Circumstances Do Not Exist That Make an Award of Attorneys' Fees Unjust.

If special circumstances exist to make an award of fees unjust, the court may refuse fees, even if the "prevailing party" and the "no substantial justification" elements are satisfied. § 2412(d)(1)(A). This equitable provision of the EAJA is designed to ensure the government is not "deterred from advancing in good faith the novel but credible extensions and interpretations

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                    17

of the law that often underlie vigorous enforcement efforts." *Wilkett*, 844 F.2d at 873 (internal

citations omitted). The DOJ asserts that awarding TTV attorneys' fees would be unjust due to

TTV's "limited success" and the procedural posture of this case but ignores the legal and

equitable principles described in *Wilkett*. (U.S. Opp., Doc. 152, 15).

For the IRS, "vigorous enforcement" efforts include determining whether an organization has

participated in political campaign activities that are disallowed. *See* TIGTA 2015 at 3. However,

the IRS and DOJ actions discussed go far beyond the "vigorous enforcement efforts" envisioned

by *Wilkett*. *Supra* at 1-2 . The IRS engaged in a methodology based upon names and policy

positions that was used to subject certain applicants to viewpoint discrimination. (*See Consent

Order*, Doc. 150, ¶¶ 8, 40). The D.C. Circuit made it clear that the IRS utterly failed in its

mission to apply the tax laws of this nation fairly and equitably and that the IRS's discriminatory

actions could not be defended. *True the Vote*, 831 F.3d at 559-61.The DOJ, however, ignores

how far the IRS strayed from proper enforcement efforts in its conduct.

Instead, the DOJ argues that an award of nearly $2 million is "unjust" because of the

"limited success" of TTV and the procedural posture of the case. (U.S. Opp., Doc. 152, 15).

However, as explained, TTV obtained the relief it sought. *Supra at* 1-3. The DOJ claims this

litigation did nothing to cause the IRS to change its conduct. *Id.* This argument ignores that the

IRS's lame attempt to change its conduct did nothing to permanently remedy the situation. *Supra*

at 2-3. The DOJ also continues to assert TTV's claims were moot in 2013, (U.S. Opp., Doc. 152,

13), and questioned, as late as 2017, whether the IRS's actions "arose to a level of constitutional

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                    18

violation." (Tr. of Mot. Hr'g, Doc. 139, 29). In the face of a Consent Order protecting TTV's constitutional rights, the DOJ still asserts this litigation caused no change in the IRS's conduct or any change to the legal relationship between the IRS and TTV. (U.S. Opp., Doc. 152, 2,15). These allegations are meritless. The Consent Order ensures TTV that it will never again be subjected to viewpoint discrimination in violation of its constitutional rights. *See Supra* at 7-11. Assurance of its constitutional rights was one of TTV's primary claims in this litigation. *Supra* at 2. TTV does not consider the sought-after, court-ordered assurance of its constitutional rights to be "limited success."[5]

Thus, the IRS actions that went far beyond vigorous enforcement, the Consent Order's assurances of TTV's rights, the DOJ's continued claims of mootness, the DOJ's recent questioning of whether constitutional violations occurred, and TTV's specific reservation of the right to ask for fees eliminate "special circumstances" that would make an award unjust. Refusing TTV an award of fees in the face of these circumstances would itself be manifestly unjust.

---

[5] The DOJ also argues that an award would be unjust because several of TTV's claims "did not survive a motion to dismiss" and because 38 *Linchpins* plaintiffs were dismissed without an award of attorneys' fees. (U.S. Opp., Doc. 152, 2,15). TTV accounted for the dismissals by removing the time and fees for unsuccessful claims from its calculations. (Mem. of P. & A., Doc. 151-8, at 24). *Linchpins* plaintiffs waived their rights to such fees in the Consent Order ending that litigation. (Case No. 1:13-cv-00777-RBW, Doc. 143, ¶ 48). TTV made no such waiver, and in fact, specifically reserved its right to seek an award of attorneys' fees under "any applicable law." (Consent Order Cover Letter, Doc. 151-17). TTV should not be denied fees simply because it reserved the right to do so when other similar plaintiffs did not, for reasons unbeknownst to this Court.

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                    19

## V. TTV's Requested Fees Are Not Excessive.

TTV is entitled to an enhanced attorney fee under the EAJA, and the requested rates are fair and reasonable given the totality of the circumstances. The EAJA's statutory fee ceiling may be increased if this Court determines either: (1) the IRS acted in bad faith, and TTV is entitled to an enhanced fee under § 2412(b); or (2) the IRS and DOJ were unnecessarily litigious, and TTV is entitled to an enhanced fee under § 2412(d)(2)(A).

**A.   TTV Is Entitled to a Bad Faith Enhancement Under the EAJA Because of the IRS's Conduct That Gave Rise to This Litigation.**

A bad faith enhancement to fees under § 2412(b) may be awarded when the government acted "vexatiously, wantonly, or for oppressive reasons." *See Cobell*, 407 F. Supp. 2d at 167. Actions in an "aspect of the conduct giving rise to the litigation" can justify a bad faith fee enhancement. *Id*. 168. The DOJ argues that TTV should not be awarded a bad faith enhancement because TTV must show, by clear and convincing evidence, that "extraordinary circumstances or dominating reasons of fairness so demand" and there is "no evidence that the United States acted in bad faith *during this litigation*." (U.S. Opp., Doc. 152, 17) (emphasis added). This conclusion misstates both the law surrounding a bad faith enhancement and TTV's arguments supporting the bad faith enhancement. TTV did not claim that it was due the bad faith fee enhancement because of the IRS's actions during this litigation in either its initial application for fees or in this reply.

The IRS's bad faith actions occurred in the IRS's conduct which gave rise to the litigation, as *Cobell* supports. *See* 407 F. Supp. 2d at 168. The record is replete with admissions and examples of the IRS's conduct which gave rise to this litigation. *See Supra at 1-2* . The viewpoint

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                        20

discrimination applied to conservative groups was egregious and obvious, causing the D.C.

Circuit to characterize the IRS's discriminatory conduct as an "utter failure" and indefensible.

*True the Vote, Inc.*, 831 F.3d at 559, 561.

The public officers at the IRS did not act as servants and agents of the people, nor did they

act within the limits of the U.S. Constitution. Instead, they subjected TTV to heightened scrutiny

because of its political viewpoint. TTV is entitled to a bad faith enhancement under the EAJA

because of the IRS's discriminatory conduct that gave rise to this litigation.

**B.   TTV Is Entitled to Enhanced Fees Because of the DOJ's Unnecessarily Litigious
        Actions.**

Enhanced rates may be awarded under § 2412(d)(2)(A) if the court finds a "special factor"

justifies such an enhancement. The government's "unusually litigious position" constitutes such

a special factor if it can be shown that its aggressive strategy was adopted in order to deter

attorneys subject to a statutory cap to operate at a loss. *Jean v. Nelson*, 863 F.2d 759, 776 n. 13

(11th Cir. 1988).

The DOJ completely ignores TTV's arguments regarding this special factor enhancement.

(*See* U.S. Opp., Doc. 152, 16-19). For over five years, the DOJ has continued to litigate when

there was "little factual dispute" between the parties as to the IRS's conduct. *True the Vote*, 831

F.3d at 555. It has now been almost eight years since the IRS began taking discriminatory actions

against TTV on the basis of its political viewpoint. (*See Consent Order*, Doc. 150, ¶ 8). The DOJ

continues to argue TTV's claims were moot as of 2013. (U.S. Opp., Doc. 152, 13). The DOJ, in

2017, questioned whether this viewpoint discrimination was really a constitutional violation, in

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                                    21

direct opposition to the conclusion of the D.C. Circuit. (Tr. of Mot. Hr'g, Doc. 139, 29). This stubborn refusal to acknowledge that TTV's claims were not moot or to acknowledge the IRS violated TTV's constitutional rights, forced TTV, a small organization with limited resources, to litigate against the vast power and resources of the DOJ for five years. This unnecessarily protracted litigation position, the statutory rate cap, and the disparity in resources virtually guaranteed TTV would be forced to rely on its attorneys to ultimately operate at a loss. TTV is entitled to a special factor enhancement under § 2412(d)(2)(A) because of the IRS's unnecessarily litigious actions.

**C.  TTV's Attorneys' Billing Practices Are Fair and Reasonable.**

TTV's Application details the billing records, calculations, and rate adjustments for unsuccessful claims and non-legal work, offers proof of the attorneys' skill, and demonstrates LSI Laffey Rates are the proper rates to use. (*See* Mem. of P.&A., Doc. 151-8, 23-28).

The DOJ makes a conclusory assertion that the number of hours TTV's counsel worked on the five years of litigation are excessive, but its own claims of mootness and resistance to constitutional declarations contributed significantly to the hours claimed. (U.S. Opp., Doc. 152, 16); *See Supra* at 21-22. TTV maintains its detailed documentation and evidence of the attorneys' skills justify the hours and rates sought. This Court does have wide discretion in reducing fee requests, if it finds that a portion of TTV's requests should be excluded. *Porter v. Astrue*, 2013 WL 5978623, at *5 (D.D.C. Nov. 2013).

**Lack of detail in billing records.** "Works on IRS issue" occurs in May 2013, before TTV's

Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA                                22

complaint was filed. (Foley Billing Records, Doc. 151-9, 2)[6]. This description is completely appropriate as TTV's counsel was analyzing which, if any claims, it would assert in the complaint. If the court in its discretion reduces for these descriptions, the total is 18.3 hours ($13,779.90 LSI rates; $3,422.46 EAJA statutory rates).

**Adjustments for Unsuccessful Claims.** Foley had a total of 29.5 hours that were related to unsuccessful claims[7] and inadvertently charged ($17,480.00 LSI rates; $5,546.79 EAJA statutory rates). (Foley Billing Records, Doc. 151-9, 2, 3, 9, 14, 19, 20, 25, 29, 37, 45, 46, 47, 61, 68, 84, 99, 113, 114, 116). PILF had a total of 64 hours that were related to unsuccessful claims and inadvertently charged ($17,497.80 LSI rates; $11,606.87 EAJA statutory rates).(PILF Billing Records, Doc. 151-10, 7, 9, 10, 11, 14, 23, 25, 27, 28, 29, 30, 32, 34, 35, 36, 37, 38, 39, 40, 42, 43, 44, 47, 50, 59, 70, 72, 74, 81, 82, 83, 89, 94, 95, 107, 156).

**Charges for "fundraising" or other non-legal work.** In both fundraising instances the DOJ references, (U.S. Opp. to Pl.'s App., Doc. 152, 18), the time has been adjusted to zero and no charges were claimed. TTV has found exactly one other fundraising line item, totaling 0.4 hours that was inadvertently charged ($308.80 LSI rates; $76.02 EAJA statutory rates). (Foley Billing Records, Doc. 151-9, 56).

---

[6] The page number cited refers to the firm's LSI rates record. The corresponding EAJA record with the identical narrative has not been re-cited to reduce confusion.

[7] In the interest of justice and thoroughness, TTV once again reviewed all four firms' billing records for unsuccessful claims, fundraising, media, and other non-legal work; the vast majority had already been properly reduced. Inadvertent charges related mostly to the claims surrounding individual defendants and have been corrected herein.

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                                23

**Possible duplication of efforts.** This Court can determine, through the detailed narratives, when the firms collaborated and when they worked separately on various issues and stages of the litigation, but in any instance, the records provide documentation of efficient work. *See* ([Firm] Billing Records, Docs. 151-9, -10, -11, -13).

**Media relations charges.** - Foley had a total of 8.2 hours related to media or press and inadvertently charged (including two charges referenced in (U.S. Opp. to Pl.'s App., Doc. 152, 19); ($6,375.40 LSI rates; $1,549.68 EAJA statutory rates). (Foley Billing Records, Doc. 151-9,4,23,52,53,85,89). PILF had a total of 5.5 hours that were related to unsuccessful claims and inadvertently charged ($2,231.00 LSI rates; $1,033.77 EAJA statutory rates). (PILF Billing Records, Doc. 151-10,4,5,8,9,10,12,35,36,37,99).

**Questionable charges for service of process and electronic legal research.** The questionable charges for service of process referenced in (U.S. Opp. to Pl.'s App., Doc. 152, 19) are accounted for in the unsuccessful claims. Supra at 23. The total charged for electronic legal research is $21,674.39. TTV suggests it should, at the most, be reduced by 50%, or $10,837.20, to account for the research surrounding unsuccessful claims.

Only 107.6[8] out of the 4,007 hours billed by the four firms are related to unsuccessful claims, fundraising, or media that the DOJ asserts as improper. That is only 2.6% of the total hours billed, which shows TTV's billing practices are fair and reasonable. The total LSI reduction is

---

[8] Total does not include the 18.3 hours discussed in the lack of detail section, *supra* at 23, but does include the 50% suggested reduction for electronic legal research.

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                24

$54,730.20; the total EAJA statutory rate reduction is $30,650.33. Therefore, TTV now requests a total enhanced LSI fee of $1,879,157.86, or a total EAJA statutory rate fee of $720,272.46.

## Conclusion

TTV achieves the relief sought in this litigation against the IRS through the Consent Order, which changes the legal relationship between TTV and the IRS and carries the judicial imprimatur required under *Buckhannon.* The Consent Order has prospective effect because it specifically addresses both name and viewpoint discrimination while the IRS's implemented changes to procedures do not address the underlying political viewpoint discrimination which led to this litigation. Therefore, TTV is the prevailing party. The United States' position is not substantially justified under the EAJA because the DOJ cannot show either the IRS's underlying actions or its own actions during the litigation were substantially justified. Special circumstances do not exist that make an award of attorneys' fees unjust. TTV's requested fees are not excessive because either it is entitled to a bad faith enhancement due to the IRS's underlying conduct, or it is entitled to a special factor enhancement due to the DOJ's unnecessarily litigious actions. Finally, TTV's billing records are fair and reasonable. Therefore, TTV is entitled to the attorneys' fees, costs, and expenses of $1,879,157.86 (LSI) or $720,272.46 (EAJA statutory rates).

**Pl.'s Reply to Def.'s Opp.
To Pl.'s App. And Mot. for
Attn'y. Fees, Costs, and Exp. Under
EAJA**                            25

April 11, 2018                                  Respectfully submitted,

                                                /s/ James Bopp, Jr.

                                                James Bopp, Jr. (D.C. Bar No. CO0041)
                                                Courtney Turner Milbank*
                                                THE BOPP LAW FIRM, P.C.
                                                The National Building
                                                1 South 6th Street
                                                Terre Haute, Indiana 47807
                                                (812) 232-2434
                                                (812) 235-3685 (fax)
                                                *Attorneys for Plaintiff*
                                                *Admitted *pro hac vice*

**Pl.'s Reply to Def.'s Opp.**
**To Pl.'s App. And Mot. for**
**Attn'y. Fees, Costs, and Exp. Under**
**EAJA**                          26

## Certificate of Service

I hereby certify that on April 11, 2018, I caused the *Plaintiff's Reply to United States' Opposition to Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses* in the above captioned matter to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

/s/ James Bopp, Jr.
James Bopp, Jr.