## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

TRUE THE VOTE, INC.,              )
                                 )
         Plaintiff,          )
                                 )
        v.                 )        Civil Action No. 13-734 (RBW)
                                 )
INTERNAL REVENUE SERVICE, et al.,   )
                                 )
        Defendants.       )
_____)

## MEMORANDUM OPINION

The plaintiff, True the Vote, Inc., brought this civil action against the Internal Revenue Service ("IRS"), the United States of America, and several IRS officials in their official capacities,[1] alleging violations of the First Amendment to the United States Constitution; the Internal Revenue Code, 26 U.S.C. § 6103 (2018); and the Administrative Procedure Act, 5 U.S.C. § 706 (2018), and seeking declaratory and injunctive relief, as well as monetary damages. See First Amended Verified Complaint for Declaratory Judgment, Injunctive Relief, and Compensatory, Statutory, and Punitive Damages ("Am. Compl." or the "Amended Complaint") ¶¶ 139–61, 168–206. Currently before the Court are (1) the Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s Mot." or the "motion for attorneys' fees"); (2) the Plaintiff's Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s Supp. Mot." or the "supplemental motion for attorneys' fees"); and (3) the Plaintiff's Motion for Oral

---

[1] The plaintiff also sought monetary damages from several IRS officials in their individual capacities, but the Court dismissed that claim, see True the Vote, Inc. v. IRS, 71 F. Supp. 3d 219, 229–33 (D.D.C. 2013) (Walton, J.), affirmed in part, rev'd in part and remanded, 831 F.3d 551, 555 (D.C. Cir. 2016), and therefore, when referring to the "defendants" throughout this Memorandum Opinion, the Court is referencing only the remaining defendants in this case—the IRS, the United States, and the IRS officials named in their official capacities—not the IRS individuals named in their individual capacities.

Argument ("Pl.'s Oral Argument Mot." or the "motion for oral argument"). Upon careful

consideration of the parties' submissions,[2] the Court concludes that it must grant in part and hold

in abeyance in part the plaintiff's motion for attorneys' fees and hold in abeyance the plaintiff's

supplemental motion for attorneys' fees and motion for oral argument pending further

submission by the plaintiff.

# I.    BACKGROUND

The Court has previously set forth the factual background of this case, see True the Vote,

Inc. v. IRS, 71 F. Supp. 3d 219, 223–25 (D.D.C. 2014) (Walton J.), aff'd in part, rev'd in part

and remanded, 831 F.3d 551 (D.C. Cir. 2016), and therefore will not recite it again here. The

Court will however, briefly summarize the procedural posture of this case, which is pertinent to

the resolution of the pending motions.

As previously noted by this Court, the plaintiff asserted five claims in this action:

> Count one s[ought] declaratory relief that the plaintiff is entitled to enjoy tax-exempt status as a charitable organization described in 26 U.S.C. § 501(c)(3).
> Count two also s[ought] a declaratory judgment that the IRS [t]argeting [s]cheme
> violated the plaintiff's First Amendment rights, and injunctive relief to prevent
> additional violations. Count three s[ought] monetary damages against certain
> defendants in their individual capacities for their alleged participation in the IRS
> [t]argeting [s]cheme. Count four claim[ed] violations of 26 U.S.C. § 6103, which

<hr>

[2] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the Verified Complaint for Declaratory Judgment, Declaratory and Injunctive Relief and Damages ("Compl."); (2) the Motion to Dismiss Counts I, II, IV, and V and Statement of Points and Authorities ("Defs.' Mot. to Dismiss"); (3) the Memorandum of Points and Authorities in Support of Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s Mem."); (4) the Declaration of James Bopp, Jr. in Support of Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Bopp Decl."); (5) the Declaration of John C. Eastman in Support of Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Eastman Decl."); (6) the Declaration of Noel H. Johnson in Support of Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Johnson Decl."); (7) the Declaration of Cleta Mitchell in Support of Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Mitchell Decl."); (8) the United States' Opposition to Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses ("Defs.' Opp'n"); (9) the Plaintiff's Reply to United States' Opposition to Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses ("Pl.'s Reply"); (10) the United States' Opposition to Plaintiff's Motion for Oral Argument ("Defs.' Oral Argument Opp'n"); and (11) the Reply in Support of Plaintiff's Motion for Oral Argument ("Pl.'s Oral Argument Reply").

> relate[d] to unauthorized disclosures and inspection of any tax return or tax return information.  And count five assert[ed] violations of the Administrative Procedure Act for the alleged IRS [t]argeting [s]cheme.

True the Vote, 71 F. Supp. 3d at 224 (third, fourth, sixth, seventh, tenth, and eleventh alterations in original) (citations and internal quotation marks omitted).  On September 20, 2013, the "United States, on behalf of itself, the [IRS], and the [IRS] employees named in their official capacities, [ ] move[d] to dismiss" counts one, two, four, and five of the Amended Complaint. Defs.' Mot. to Dismiss at 1–2.  On October 23, 2014, the Court granted the defendants' motion to dismiss and dismissed counts one, two, and five as moot, see True the Vote, 71 F. Supp. 3d at 226–29, and dismissed counts three and four for failure to state a claim, see id. at 232–35.  On appeal, the Circuit affirmed the dismissal of counts one, three, and four, see True the Vote, 831 F.3d at 556–58, but reversed the dismissal of counts two and five, see id. at 561–64, and remanded those claims to this Court for further proceedings, id. at 564.

Thereafter, the parties submitted a proposed Consent Order resolving the claims that had been reinstated by the Circuit, which the Court signed on January 19, 2018.  See Consent Order at 1 (Jan. 19, 2018), ECF No. 150.  The Consent Order contained, inter alia, a declaratory judgment stating that (1) "it is wrong to apply the United States tax laws . . . to any tax-exempt application or entity based solely on such entity's name, any lawful positions it espouses on any issues, or its associations or perceived associations with a particular political movement, position or viewpoint"; (2) "any action or inaction taken by the IRS must be applied evenhandedly and not based solely on a tax-exempt applicant or entity's name, political viewpoint, or associations or perceived associations with a particular political movement, position, or viewpoint"; and (3) "discrimination on the basis of political viewpoint in administering the United States tax code violates fundamental First Amendment rights."  Id. ¶¶ 48–50.  The plaintiff then timely filed its

motion for attorneys' fees, see generally Pl.'s Mot., as well as a supplemental motion for attorneys' fees seeking costs incurred during the preparation of its motion for attorneys' fees, see generally Pl.'s Supp. Mot., and a motion requesting oral argument on its motion for attorneys' fees, see generally Pl.'s Oral Argument Mot., which are the subjects of this Memorandum Opinion.

## II.    STANDARD OF REVIEW

The Equal Access to Justice Act ("EAJA") provides, in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (2018).[3] Thus, to award attorneys' fees under the EAJA, the Court must find that "(1) [the plaintiff] is the prevailing party; (2) [the plaintiff] has incurred [reasonable] fees or expenses; (3) the position of the United States in the action was not substantially justified; and (4) no special circumstances make an award of fees unjust." Brooks v. Berryhill, Civ. Action No. 15-00436 (CKK/GMH), 2019 WL 120767, at *3 (D.D.C. Jan. 7, 2019). Once the plaintiff establishes that it is the prevailing party under the EAJA, the government has the burden of showing that its position was "substantially justified" or that special circumstances make the award unjust. See Taucher v. Brown-Hruska, 396 F.3d 1168, 1173 (D.C. Cir. 2005). Finally, if a court concludes that an award of attorneys' fees and costs is warranted, it is incumbent upon the plaintiff to establish that the fees and costs it is seeking are

---

[3] In order to be eligible to receive an award of attorneys' fees and other expenses under the EAJA, a prevailing party must also file its application seeking an award of attorneys' fees "within thirty days of a final judgment," 28 U.S.C. § 2412(d)(1)(B), and must meet the net worth requirements of the EAJA, see id. § 2412(d)(2)(B).

reasonable.  See Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 969–70 (D.C. Cir. 2004)

("[C]ourts properly have required prevailing attorneys to justify the reasonableness of the

requested rate or rates." (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).

### III.    ANALYSIS

The plaintiff argues that it is entitled to an award of attorneys' fees under the EAJA

because

> [it] is the prevailing party in this litigation; [ ] the [defendants] cannot carry [their]
> heavy burden of showing [their] position was substantially justified in either law or
> fact and will not be able to show special circumstances mak[ing] an award of fees
> unjust; and [ ] the requested fees are fair and reasonable.

Pl.'s Mot. at 1–2.  The defendants respond that this Court should not award attorneys' fees to the

plaintiff because the plaintiff does not qualify as a prevailing party under the EAJA, the

defendants' position in this matter was substantially justified, special circumstances exist that

make an award of attorneys' fees and costs to the plaintiff unjust, and the plaintiff's requested

fees and costs are not reasonable.  See Defs.' Opp'n at 2–19.[4]

### A.    Whether the Plaintiff was the Prevailing Party

> In Thomas v. National Science Foundation, the [District of Columbia] Circuit
> distilled a three-part test . . . for an EAJA prevailing party analysis.  First, there
> must be a "court-ordered change in the legal relationship between the plaintiff and
> the defendant."  Second, the judgment must be in favor of the party seeking the
> fees.  Third, the judicial pronouncement must be accompanied by "judicial relief."

Ctr. for Food Safety v. Burwell, 126 F. Supp. 3d 114, 120 (D.D.C. 2015) (citations omitted)

(quoting Thomas v. Nat'l Sci. Found., 330 F.3d 486, 492–93 (D.C. Cir. 2003)).

---

[4] The plaintiff also argues that the EAJA applies to this matter, that it meets the net worth eligibility requirements of
the EAJA, and that its motion for attorneys' fees is timely.  See Pl.'s Mot. at 1.  The defendants do not contest that
these requirements of the EAJA are satisfied, see generally Defs.' Opp'n, and therefore the Court need not address
them.

The plaintiff argues that the Consent Order signed by the Court on January 19, 2018, see generally Consent Order (Jan. 19, 2018), ECF No. 150, and the District of Columbia Circuit's decision issued on August 5, 2016, see generally True the Vote, 831 F.3d 551, accord prevailing party status on the plaintiff, see Pl.'s Mem. at 7–11. The defendants respond that the "[p]laintiff . . . does not qualify as a 'prevailing party' under the EAJA," Defs.' Opp'n at 2, because the "[p]laintiff obtained none of the relief it requested in this suit," through either the Consent Order signed by this Court or the Circuit's August 5, 2016 decision, id. at 3. The Court will first address whether the plaintiff is a prevailing party under the Consent Order.

As to the first prong of the prevailing party test adopted in Thomas, the plaintiff argues that under the Supreme Court's decision in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." Pl.'s Reply at 4–5 (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001)). Specifically, it argues that the Consent Order represents a change in the legal relationship between the parties because "the [defendants] made a wholesale admission [in the Consent Order] that [their] treatment of [the plaintiff] was wrong," Pl.'s Mem. at 9, and "[a]s a direct result [of the Consent Order] . . . , the inappropriate [agency] actions towards [the plaintiff] have fully, unequivocally, and permanently ceased," id. at 11. The defendants respond that the "[p]laintiff points to various parts of the Consent Order as changing the legal relationship between itself and the [defendants], but none of them actually do." Defs.' Opp'n at 4. Specifically, the defendants argue that "[t]he fact that the United States acknowledges that [the] [p]laintiff made certain allegations in this action, and the fact that the Court signed the Consent

Order containing that acknowledgement, do not constitute a finding by the Court that those allegations are true," because "nowhere in the Consent Order is there any conclusion that the stipulated facts give rise to a violation of law." Id. at 5.

The Supreme Court has held that

> settlements agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered chang[e] [in] the legal relationship between [the plaintiff] and the defendant . . . . [E]nforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.

Buckhannon, 532 U.S. at 604 (first, second, and third alterations in original) (citations and internal quotation marks omitted). "This case does not involve a mere '[p]rivate settlemen[t]' which this [C]ourt has no jurisdiction to enforce. Rather, the 'terms of the [parties'] agreement are incorporated' into the Consent [Order]" signed by the Court. Ctr. for Food Safety, 126 F. Supp. 3d at 120–21 (D.D.C. 2015) (first and second alterations in original) (quoting Buckhannon, 532 U.S. at 604 n.7); see Consent Order at 2 (Jan. 19, 2018), ECF No. 150. Moreover, in the Consent Order, the defendants admitted to conduct, albeit indirectly, which the Court declared "violates fundamental First Amendment rights." Compare Consent Order ¶ 40 (Jan. 19, 2018), ECF No. 150 (incorporating admission by the defendants that they "screen[ed] [the plaintiff's] application based on its name or policy positions, subject[ed] the application to heighted scrutiny and inordinate delays, and demand[ed] of [the] [p]laintiff some information that the [the] [United States Treasury Inspector General for Tax Administration ("TIGTA")] determined was unnecessary to the defendants' determination of [the plaintiff's] tax-exempt status"), with id. ¶¶ 48, 50 (declaring that "it is wrong to apply the United States tax laws . . . to any applicant or entity based solely on such entity's name, any lawful positions it espouses on

any issues, or its associations or perceived associations with a particular political movement, position, or viewpoint" and that "discrimination on the basis of political review in administering the United States tax code violates fundamental First Amendment rights"); cf. Buckhannon, 532 U.S. at 604 (noting that a consent decree may constitute a material alteration of the legal relationship between the parties even when it contains no admission of liability by the defendant). Accordingly, the Court concludes that the Consent Order in this case "create[d] the material alteration of the legal relationship of the parties," Buckhannon, 532 U.S. at 604, and the first Thomas prong is satisfied.

As to the second prong of the Thomas prevailing party test, the plaintiff argues that the Consent Order was issued in its favor because "[t]he Consent Order negotiated between the parties does contain the type of declaratory judgments against viewpoint discrimination sought by [the plaintiff] in its [Amended] Complaint." Pl.'s Reply at 3. The defendants respond that the Consent Order was not favorable to the plaintiff because the "[p]laintiff sought a declaration that the [defendants] had violated its First Amendment rights . . . [and] also sought injunctive relief," but "the Consent Order contains no such declaration . . . [and] includes no injunction." Defs.' Opp'n at 5.

In order for a judicial action to have been rendered in the plaintiff's favor within the meaning of Thomas, the plaintiff must demonstrate that,

> [a]s a result of the judicial action, [ ] the plaintiff [ ] receive[d] a substantial part of what [the] plaintiff asked the [C]ourt for in the first place. At the same time, however, [the] plaintiff need not prevail on the central issue in the litigation to be a prevailing party under the EAJA; it is sufficient for a party to prevail on an important matter in the course of litigation, even when that party does not prevail on all issues.

Ctr. for Food Safety, 126 F. Supp. 3d at 120 (citations and internal quotation marks omitted).

Here, the plaintiff sought, <u>inter alia</u>, "[a] declaration that the IRS [t]argeting [s]cheme and any other similar policies are unconstitutional under the First Amendment."  Am. Compl. at 47.  As previously indicated, the Consent Order includes a declaratory judgment stating that "any action or inaction taken by the IRS must be applied evenhandedly and not based solely on a tax-exempt applicant or entity's name, political viewpoint, or associations or perceived associations with a particular political movement, position, or viewpoint" and that "discrimination on the basis of political viewpoint in administering the United States tax code violates fundamental First Amendment rights."  Consent Order ¶¶ 49–50 (Jan. 19, 2018), ECF No. 150.  Thus, the plaintiff was accorded at least some of the relief sought in the Amended Complaint.  And, "[e]ven [though] the [d]efendants question the 'degree of the plaintiff's success,' this bears on 'the size of a reasonable fee, not [the] eligibility for a fee award at all.'"  <u>Ctr. for Food Safety</u>, 126 F. Supp. 3d at 122 (fourth alteration in original) (quoting <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 790 (1989)); <u>see</u> <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992) ("[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained.").  The Court therefore concludes that the second prong under <u>Thomas</u> is also satisfied.

Finally, as to the third prong of the <u>Thomas</u> prevailing party test, the plaintiff argues that the Consent Order accords it judicial relief because "this Court [ ] issue[d] declaratory judgments in the Consent Order."  Pl.'s Mem. at 9.  The defendants respond that "[e]ven if this Court had declared that the[ir] conduct at issue violated [the] [p]laintiff's constitutional rights, . . . [a] claimant is not a 'prevailing party' merely by virtue of having 'acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by judicial relief,'" Defs.' Opp'n at 5–6 (internal quotation marks omitted) (quoting <u>Thomas</u>, 330 F.3d at

493), and "[t]he only specific adjudication in the Consent Order of [the plaintiff's] claims . . . is that they are dismissed with prejudice," id. at 6.

The Supreme Court has explained that

> [a] plaintiff "prevails" . . . "when actual relief on the merits of [its] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." And we have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test.

Lefemine v. Wideman, 568 U.S. 1, 4 (2012) (quoting Farrar, 506 U.S. at 111–12); cf. Hewitt v. Helms, 482 U.S. 755, 760 (1982) (concluding that the plaintiff was not a prevailing party because "[n]o injunction of declaratory judgment was entered in his favor[,] [n]or did [he] obtain relief without the benefit of a formal judgment—for example, through a consent decree or settlement").

Contrary to the defendants' assertion, the Consent Order does not merely contain a "judicial pronouncement that the defendant[s] ha[ve] violated the Constitution unaccompanied by judicial relief." Defs.' Opp'n at 5–6 (internal quotation marks omitted). As previously indicated, in the Amended Complaint, the plaintiff requested, inter alia, a declaratory judgment that "the IRS [t]argeting [s]cheme and other similar policies are unconstitutional under the First Amendment to the United States Constitution." Am. Compl. at 7. And, the Court issued a declaratory judgment in the Consent Order that "any action or inaction taken by the IRS must be applied evenhandedly and not based solely on a tax-exempt applicant or entity's name, political viewpoint, or associations or perceived associations with a particular political movement, position, or viewpoint," Consent Order ¶ 49 (Jan. 19, 2018), ECF No. 150, and that "discrimination on the basis of political viewpoint in administering the United States tax code violates fundamental First Amendment rights," id. ¶ 50. And, "[b]ecause the [C]ourt issued a

declaratory judgment in [the] [p]laintiff's favor, [the] [p]laintiff obtained a 'judicial pronouncement,' which was 'accompanied by judicial relief.'" Daniels v. District of Columbia, Civ. Action No. 14-665 DAR, 2017 WL 1154948, at *4 (D.D.C. Mar. 27, 2017) (quoting District of Columbia v. Straus, 590 F.3d 898, 901 (D.C. Cir. 2010)); see Infiniti Info. Sols., LLC v. United States, 94 Fed. Cl. 740, 748 (2010) ("[T]he declaratory judgment in [the plaintiff's] favor engendered a 'material alteration of the legal relationship between [the plaintiff] and the government." (quoting Tex. State Teachers Ass'n, 489 U.S. at 792–93)). The Court therefore concludes that the third Thomas prong is satisfied.

Because the plaintiff has satisfied its burden of demonstrating that the three prongs under the Thomas prevailing party test are satisfied with respect to the Consent Order issued in this case, the Court concludes that the plaintiff is a prevailing party within the meaning of the EAJA.[5]

## B. Whether the Defendants' Position was Substantially Justified

The plaintiff argues that the defendants' position was not substantially justified because "[n]either the [defendants'] discriminatory conduct which led to th[is] litigation, nor the [defendants'] actions during this litigation[,] can be justified, and the [defendants] must justify both." Pl.'s Reply at 13. The defendants respond that "[t]he position on mootness that [they] advanced in [their] motion to dismiss is supported by relevant legal authority and thus is substantially justified." Defs.' Opp'n at 11.

"The government's position is substantially justified if it is 'justified to a degree that could satisfy a reasonable person' or, in other words, has 'a reasonable basis both in law and fact.'" Taucher, 396 F.3d at 1173 (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

---

[5] Because the Court concludes that the plaintiff is a prevailing party within the meaning of the EAJA under the Consent Order, the Court need not consider the plaintiff's alterative argument that it is a prevailing party under the Circuit's August 5, 2016 decision.

"The [government] must show '<u>both</u>' that (1) the 'underlying agency action' and (2) 'the arguments defending that action in court' satisfy that standard." <u>Nat'l Venture Capital Ass'n v. Nielson</u>, 318 F. Supp. 3d 145, 149 (D.D.C. 2018) (quoting <u>Halverson v. Slater</u>, 206 F.3d 1205, 1208 (D.C. Cir. 2000)).

In regards to whether the defendants' position during the litigation was substantially justified, despite the Circuit's conclusion that counts two and five of the Amended Complaint were not in fact moot, given that the Court itself concurred with the defendants' position in their motion to dismiss regarding mootness and this conclusion was supported by case law, <u>see</u> <u>True the Vote</u>, 71 F. Supp. 3d at 226–29, the Court concludes that the defendants have satisfied their burden of showing that their position during litigation was "justified to a degree that could satisfy a reasonable person," <u>Pierce</u>, 487 U.S. at 565.

However, as to whether the defendants' underlying action challenged by the plaintiff was justified, the Court concludes that the defendants have not satisfied their burden of showing that it was justified. The plaintiff argues, and the Court agrees, that the defendants, in their opposition, "virtually ignore[] the[ir] [ ] conduct underlying the litigation" and "focus[] primarily on [their] argument that [their] mootness defense was justified." <u>Id.</u> As noted earlier, it is the incumbent upon the defendants to "demonstrate the reasonableness of <u>both</u> its litigation position and the agency position being challenged," <u>Animal Legal Def. Fund, Inc. v. Perdue</u>, 292 F. Supp. 3d 315, 318 (D.D.C. 2018); however, the only argument that the defendants offer in support of the reasonableness of the underlying conduct is that "[e]ven if the[ir] [ ] administrative conduct is considered, and because mootness was the[ir] . . . position, the appropriate focus is what the [defendants] did to change the complained-of conduct," Defs.' Opp'n at 13. The fact that by the time this civil action was instituted in 2013, <u>see</u> Compl. at 1, the defendants purportedly "already

had made meaningful strides to correct the conduct at issue and ensure that it never happened

again," Defs.' Opp'n at 14, does not convince this Court that a reasonable person would have

found the conduct—which began three years earlier in 2010, see Consent Order ¶ 7 (Jan. 19,

2018), ECF No. 150—to have been justified, particularly given the Circuit's observation that

"[i]t is plain to the Inspector General, th[is] [ ] [C]ourt, and th[e] [Circuit itself] that the

[defendants] cannot defend [their] discriminatory conduct on the merits," True the Vote, 831

F.3d at 561. "While it may have been reasonable for the [defendants] to continue defending

the[ir] [ ] position in the case, that position was not itself reasonable," and "[a]s a result, the

[defendants] ha[ve] not met [their] burden of demonstrating that both [their] position and the

underlying agency action were justified." Animal Legal Def. Fund, 292 F. Supp. 3d at 318; see

Nat'l Venture Capital Ass'n, 318 F. Supp. 3d at 151 ("[The] [d]efendants [ ] claim that they were

'substantially justified' in raising a standing defense, but even were that so, it would speak only

to the [g]overnment's 'arguments defending th[e] action in court.' It would have no bearing on

whether 'the underlying agency action' was itself substantially justified." (quoting Halverson,

206 F.3d at 1208)). Because the defendants have not satisfied their burden of demonstrating that

the underlying agency action was justified, the Court concludes that the defendants' position was

not substantially justified within the meaning of the EAJA. See Nat'l Venture Capital Ass'n,

318 F. Supp. 3d at 151 ("The EAJA, of course, requires that the agency justify both the action

'upon which the civil action is based' 'in addition to the position taken by the United States in

the civil action.' If it fails to make either showing, [the] [p]laintiff[] [is] entitled to fees."

(citation omitted) (quoting 28 U.S.C. § 2412(d)(2)(D)); Animal Legal Def. Fund, 292 F. Supp.

3d at 318 (concluding that "a fee award [wa]s warranted" because "the government ha[d] not met

its burden of demonstrating that <u>both</u> its position and the underlying agency action were justified").

## C.     Whether Special Circumstances Make an Award of Fees Unjust

The plaintiff argues that no special circumstances exist that make an award of attorneys' fees unjust and that "refusing [ ] an award [of attorneys' fees] would [ ] be manifestly unjust," Pl.'s Mem. at 19, because the defendants' "actions underlying this litigation were more than 'vigorous enforcement efforts'" and the defendants "admit[ted] multiple instances of wrongdoing," <u>id.</u> at 18 (quoting <u>Wilkett v. ICC</u>, 844 F.2d 867, 873 (D.C. Cir. 1988)).  The defendants respond that "[t]he equities do not favor an award of attorneys' fees and costs here" because "the award of a large amount of fees claimed by [the] [p]laintiff would be grossly disproportional in comparison to the limited success it achieved," and "[a] fee award is particularly inequitable given the treatment of the similarly situated plaintiffs in <u>Linchpins[ of Liberty v. United States</u>]," whose "identical claims . . . were dismissed without an award of attorneys' fees."  Defs.' Opp'n at 15 (referencing <u>Linchpins of Liberty v. United States</u>, 71 F. Supp. 3d 236 (D.D.C. 2014), <u>aff'd in part, rev'd in part and remanded sub nom.</u>, <u>True the Vote, Inc. v. IRS</u>, 831 F.3d 551 (D.C. Cir. 2015)).

The "EAJA does not define the term 'special circumstances' or provide examples of the circumstances that would make a fee award unjust."  <u>Brooks</u>, 2019 WL 120767, at *4.

> Courts have generally found that the "statutory language expresses a congressional directive for courts to apply traditional equitable principles in determining whether a party should receive a fee award under [the] EAJA."  In determining the circumstances under which th[e] [special circumstances] exception applies, the scope of a district court's equitable powers is broad, and the equitable doctrine of "unclean hands pervades the jurisprudence of special circumstances under [the] EAJA."

Id. (citations and internal quotation marks omitted) (quoting Air Transp. Ass'n of Can. v. FAA, 156 F.3d 1329, 1333 (D.C. Cir. 1998)). The Circuit has explained that, "[i]n deciding whether such special circumstances exist, the [d]istrict [c]ourt can . . . consider the 'pyrrhic' nature of [the] plaintiff['s] victory." Miller v. Staats, 706 F.2d 336, 343 (D.C. Cir. 1983) (quoting Comm'rs Ct. of Medina Cty., Tex. v. United States, 683 F.2d 435, 443 (D.C. Cir. 1982)).

As to the defendants' argument that an award of attorneys' fees would be unjust because such an award "would be grossly disproportional to the limited success [the plaintiff] achieved," Defs.' Opp'n at 15, although the defendants are correct that the plaintiff did not receive all of the relief it requested, compare Am. Compl. at 47 (requesting (1) a declaratory judgment that the plaintiff "is exempt from federal income taxation"; (2) a declaratory judgment that "the IRS [t]argeting [s]cheme and other similar policies are unconstitutional under the First Amendment to the United States Constitution"; (3) an injunction "to prevent the IRS from further implementing the IRS [t]argeting [s]cheme"; (4) an injunction "to prevent the IRS from illegally inspecting [the plaintiff's] t[ax] return information"; and (5) "[a]n award to [the plaintiff] of $1,000 in damages for each unauthorized inspection of its return information"), with Consent Order ¶ 50 (Jan. 19, 2018), ECF No. 150 (issuing a declaratory judgment that "discrimination on the basis of political viewpoint in administering the United States tax code violates fundamental First Amendment rights"), the Court has already concluded that the plaintiff was accorded at least some of the relief it sought, see Part III.A, supra, and therefore, it cannot be said that "the net result obtained . . . [was] so insignificant that it would be unjust to shift [the] plaintiff['s] counsel fees to the defendant[s]," Miller, 706 F.2d at 343 n.38. And, as to the defendants' argument that the plaintiffs in Linchpins did not receive attorneys' fees, see Defs.' Opp'n at 15, the fact that the plaintiffs in a separate, but related, case purportedly either chose not to request or were not

eligible to seek attorneys' fees under the EAJA has no bearing on this case and this particular plaintiff's entitlement to fees. Moreover, the defendants have not alleged, nor can the Court discern, any unclean hands on the part of the plaintiff. See Defs.' Opp'n at 14–15. Accordingly, the Court concludes that the defendants have not satisfied their burden to demonstrate that special circumstances exist that would render an award of attorneys' fees unjust.

Because the plaintiff has demonstrated that it was a prevailing party in this litigation, and because the defendants have not demonstrated that their challenged conduct was substantially justified or that special circumstances exist that would make a fee award unjust, the Court concludes that the plaintiff is entitled to attorneys' fees under the EAJA.

**D.      Whether the Requested Attorneys' Fees and Costs are Reasonable**

Having concluded that the plaintiff is entitled to attorneys' fees under the EAJA, the Court must now determine whether the amount of the requested fees and costs are reasonable.

"Fee applicants 'bear the burden of demonstrating the reasonableness of each element of their fee request.'" Loving v. IRS, Civ. Action No. 12-385 (JEB), 2014 WL 12778284, at *7 (D.D.C. Sept. 19, 2014) (quoting Am. Petroleum Inst. v. EPA, 72 F.3d 907, 912 (D.C. Cir. 1996)). "In determining whether fees are reasonable, courts ordinarily focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable—i.e., did the attorneys waste or otherwise unnecessarily spend time on the matter." Id. (quoting In re Donovan, 877 F.2d 982, 990 (D.C. Cir. 1989) (per curiam)). "[A] district court [has] . . . substantial discretion in fixing the amount of an EAJA award." Comm'r, INS v. Jean, 496 U.S. 154, 163 (1990).

The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the

limited availability of qualified attorneys for the proceedings involved, justifies a higher fee" (the "special factor enhancement").  28 U.S.C. § 2412(d)(2)(A)(ii).  "There is[] also a lesser used waiver of sovereign immunity against attorneys' fees in 28 U.S.C. § 2412(b)[,] . . . [which] makes "[t]he United States . . . liable for [attorneys'] fees and expenses to the same extent that any other party would be liable under the common law," Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 219 (D.C. Cir. 1991) (quoting Pierce, 487 U.S. at 575) (sixth, seventh, and eighth alterations in original), which "precludes the award of attorneys' fees from the losing party to the prevailing party . . . [unless] the losing party has acted in 'bad faith'" (the "bad faith enhancement"), id. (quoting F.D. Rich Co. v. United States, 417 U.S. 116, 129 (1974)).

Here, the plaintiff requests "attorneys' fees of $1,982,207.06, pursuant to a 'bad faith' enhancement under 28 U.S.C. § 2412(b), based upon the [defendants'] actions, or a 'special factor' enhancement under § 2412(d)(2)(A), based upon the [defendants'] unusually litigious position," or in the alternative, $761,550.77, pursuant to the EAJA statutory rate, adjusted for inflation."  Pl.'s Supp. Mot. at 2.  The defendants respond that "[b]oth of [the] [p]laintiff's requests are excessive, and it has not carried its burden to show that either is reasonable."  Defs.' Opp'n at 16.  The Court will address separately the parties' arguments regarding whether the plaintiff is entitled to either enhancement under the EAJA.

1.    **The Special Factor Enhancement**

The plaintiff first argues that "this Court should award an enhancement under the 'special factor' analysis of § 2412(d)(2)(A) because the [defendants'] litigation strategy was unnecessarily aggressive."  Pl.'s Mem. at 22.  Specifically, the plaintiff argues that "[t]he government's 'unusually litigious position' [ ] constitute[s] [ ] a special factor if it c[an] be shown that its aggressive strategy was adopted in order to deter attorneys subject to a statutory

cap to operate at a loss," id. (citing Jean v. Nelson, 863 F.2d 759, 776 n.13 (11th Cir. 1988)), and that the defendants' choice to "continu[e] to litigate a case when very little factual dispute exist[ed] and in the face of the TIGTA report [was] unnecessarily litigious," id.

The Supreme Court has "interpret[ed] [§ 2412(d)(2)(A)(ii)] narrowly" and "has held that it refers to 'attorneys having some distinctive knowledge or specialized skill.'" F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 598 (D.C. Cir. 1996) (quoting Pierce, 487 U.S. at 572). This Circuit "ha[s] interpreted [the Supreme Court's decision in Pierce] to mean that [ ] [the special factor] enhancement is available only for lawyers whose specialty 'requir[es] technical or other education outside the field of American law.'" Id. (second alteration in original) (emphasis added) (quoting Waterman Steamship Corp. v. Maritime Subsidy Bd., 901 F.2d 1119, 1124 (D.C. Cir. 1990)); see Role Models Am., 353 F.3d at 969 ("Pierce made clear that an increase in the cap is justified only by work requiring specialized skills or knowledge beyond what lawyers use on a regular basis." (emphasis added)).

Although the plaintiff is correct that the Eleventh Circuit in Jean held that "if the government . . . advance[s] litigation for any improper purpose such as harassment, unnecessary delay[,] or increase in the plaintiff['s] expense, then consistent with Pierce, its action warrants the imposition of a special factor," 863 F.2d at 776 n.13, its reliance on Jean is misplaced because that is not the standard in this Circuit, see Role Models Am., 353 F.3d at 969; F.J. Vollmer Co., 102 F.3d at 598. As previously discussed, this Circuit will only apply a special factor enhancement to "work requiring specialized skills or knowledge beyond what lawyers use on a regular basis." Role Models Am., 353 F.3d at 969. Here, the plaintiff has not alleged that its counsel engaged in such work. Accordingly, the Court concludes that the plaintiff is not entitled to a special factor enhancement.

## 2. The Bad Faith Enhancement

The plaintiff next argues that "[b]ecause the [defendants] abrogated the public trust in [their] treatment of [the plaintiff], [the plaintiff] is entitled to a 'bad faith' enhanced attorney fee rate over the EAJA statutory cap under § 2412(b)." Pl.'s Mem. at 22. The defendants respond that a bad faith enhancement is not appropriate because "there is no evidence that the [defendants] acted in bad faith during this litigation." Defs.' Opp'n at 17.

A prevailing party may be entitled to receive a bad faith enhancement to an award of attorneys' fees

> based on conduct occurring during the litigation or conduct that gave rise to the litigation itself. A court can find pre-litigation bad faith "where a party confronted a clear statutory duty or judicially-imposed duty toward another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights."

Gray Panthers Project Fund v. Thompson, 304 F. Supp. 2d 36, 39 (D.D.C. 2004) (citation omitted) (quoting Am. Hosp. Ass'n, 938 F.2d at 219). "[T]he substantive standard for a finding of bad faith is stringent and attorney's fees will be awarded only when extraordinary circumstances or dominating reasons of fairness demand." Id. (internal quotation marks omitted) (quoting Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton, 187 F.3d 655, 660 (D.C. Cir. 1999)). "[T]he finding of bad faith must be supported by clear and convincing evidence, which generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is searching." Ass'n of Am. Physicians & Surgeons, 187 F.3d at 660 (citations and internal quotation marks omitted). "No statutory ceiling on the hourly rate used to calculate fees under § 2412(b) exists; thus, an award of attorney[s'] fees for bad faith can be calculated at market rates." Gray Panthers Project Fund, 304 F. Supp. 2d at 38.

As a preliminary matter, the Court agrees with the plaintiff that "the [defendants] virtually ignore[] any substantial justification analysis of [their] conduct underlying this litigation and instead focus[] [their] analysis o[n] whether the [defendants'] mootness argument during the litigation was justified."  Pl.'s Reply at 14.  However, as previously explained, "[a]n award of attorney[s'] fees under § 2412(b) can be based on conduct occurring during the litigation or conduct that gave rise to the litigation itself."  Gray Panthers Project Fund, 304 F. Supp. 2d at 39 (emphasis added).  As to the defendants' conduct during this litigation, the Court has already concluded that the defendants' position regarding mootness was substantially justified, see Part III.B, supra, and therefore similarly concludes that the defendants' advancement of the mootness argument during the course of this litigation was not in bad faith.  However, as to the defendants' underlying conduct, the Court concludes that this conduct does in fact rise to the level of pre-litigation bad faith sufficient to justify an award of attorneys' fees above the EAJA statutory cap pursuant to the bad faith enhancement.  The Court reaches this conclusion because the defendants "were confronted with a clear . . . judicially-imposed duty," Am. Hosp. Ass'n, 938 F.2d at 220, not to engage in viewpoint discrimination as required by the First Amendment.  As explained by the Circuit in the context of this litigation:

> [U]nder the First Amendment, the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.  Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.  A more blatant and egregious form of content discrimination is viewpoint discrimination, which occurs when a government regulation targets not subject matter, but particular views taken by speakers on a subject . . . . [I]n administering the tax code, the IRS may not discriminate on the basis of viewpoint . . . . [T]o process exemption applications pursuant to different standards and at different rates depending upon the viewpoint of the applicants is a blatant violation of the First Amendment.  The tax code may not discriminate invidiously . . . in such a way as to aim at the suppression of dangerous ideas.

True the Vote, 831 F.3d at 560–61 (fifth alteration in original) (citations and internal quotation marks omitted). Collectively, the First Amendment's well-recognized prohibition of viewpoint-based discrimination, see id.; the admissions of wrongdoing by the defendants in the Consent Order, see, e.g., Consent Order ¶¶ 40 (Jan. 19, 2018), ECF No. 150 (incorporating admission by the defendants that, during the tax-exempt determinations process, they "screen[ed] [the plaintiff's] application based on its name or policy positions, subject[ed] the application to heightened scrutiny and inordinate delays, and demand[ed] of [the] [p]laintiff some information that [the] TIGTA determined was unnecessary to the [defendants'] determination of [the plaintiff's] tax-exempt status"); and the Circuit's observation that "the IRS cannot defend its discriminatory conduct on the merits," True the Vote, 831 F.3d at 561, coupled with the defendants' failure to offer any justification that their conduct was "narrowly tailored to serve compelling state interests," id. at 560 (quoting Reed v. Town of Gilbert, Ariz., 135 S. Ct. 2218, 2226 (2015)), provide the Court with the "clear and convincing" evidence necessary for a finding of bad faith on the part of the defendants. Ass'n of Am. Physicians & Surgeons, 187 F.3d at 660; see Gray Panthers Project Fund, 304 F. Supp. 2d at 41 (concluding that "[t]he Secretary's actions in direct contradiction of congressional directives coupled with his failure to consult with or notify beneficiaries were 'extraordinary circumstances' warranting an award of bad faith attorney's fees" (quoting Ass'n of Am. Physicians & Surgeons, 187 F.3d at 660)); cf. GasPlus, L.L.C. v. U.S. Dep't of Interior, 593 F. Supp. 2d 80, 88 (D.D.C. 2009) (denying the plaintiff enhanced attorneys' fees under § 2412(b) because "[t]he fact that [the statute] had only recently been adopted; that no precedent existed to guide [the Interior Board of Indian Appeals ("BIA")] or [the] [Department of the Interior ("DOI")]; and that [the] BIA and [the] DOI acted on the suddenly-outdated presumption that it should err, if at all, in the Tribe's favor, sap the record of

clear and convincing evidence that the government acted in bad faith").  Accordingly, the Court

concludes that the plaintiff is entitled to an award of attorneys' fees calculated at prevailing

market rates pursuant to the bad faith enhancement to the EAJA.

### 3.       The Prevailing Market Rates

The plaintiff argues that an award of attorneys' fees should be calculated using the rates

set forth in the LSI <u>Laffey</u> matrix because "[t]he LSI <u>Laffey</u> rates [a]re the [p]revailing [m]arket

[r]ates in the [r]elevant [c]ommunity."  Pl.'s Mem. at 25.

"[E]vidence of the prevailing market rate can take many forms, but courts have found

evidence such as affidavits reciting the precise fees that attorneys with similar qualifications

have received . . . in comparable cases, and evidence of fee awards in similar cases, valuable in

assessing fee requests."  <u>Swanson v. Martins</u>, 232 F. Supp. 3d 23, 28 (D.D.C. 2017) (alterations

in original) (citations and internal quotation marks omitted).  "[T]he <u>Laffey</u> rate is intended to

assist in setting reasonable rates in fee-shifting cases brought against the government."  <u>Cobell v.

Jewell</u>, 234 F. Supp. 3d 126, 168 (D.D.C. 2017).  The "LSI[] <u>Laffey</u> matrix[] [ ] is 'a version of

the rate table that judges in this district frequently use to calculate prevailing hourly rates for

'complex federal litigation' services, as adjusted for inflation.'"  <u>Nat'l Venture Capital Ass'n</u>,

318 F. Supp. 3d at 151–52 (quoting <u>Citizens for Responsibility & Ethics in Wash. v. DOJ</u>, Case

No. 1:11-cv-00374 (CRC), 2016 WL 554772, at *1 (D.D.C. Feb. 11, 2016)).

In support of its request for attorneys' fees calculated at the billing rates set forth in the

LSI <u>Laffey</u> matrix, the plaintiff submitted (1) a chart of the applicable LSI <u>Laffey</u> rates, <u>see</u> Pl.'s

Mot., Exhibit ("Ex.") 6 (LSI <u>Laffey</u> Rates); (2) resumes or sworn declarations from each of the

plaintiff's law firms describing the credentials of the attorneys who provided services in this

case, <u>see id.</u>, Ex. 3 (Bopp Law Firm Members of the Firm); Eastman Decl. ¶¶ 3–8; Johnson Decl.

¶¶ 2–5; Mitchell Decl. ¶¶ 2–5; and (3) the billing records in the case, <u>see generally</u> Pl.'s Mot., Ex. 1 (Foley Billing Records); <u>id.</u>, Ex. 2 (PILF Billing Records); <u>id.</u>, Ex. 3 (CCJ Billing Records); <u>id.</u>, Ex. 5 (Bopp Billing Records).  The plaintiff also points to the decision in <u>Cobell v. Norton</u>, which "validated the use of the [USAO] <u>Laffey</u> [m]atrix when enhanced fees apply to an EAJA award," Pl.'s Mem. at 25 (citing <u>Cobell v. Norton</u>, 407 F. Supp. 2d 140, 170 (D.D.C. 2005)), and the decision in <u>Salazar ex rel. Salazar v. District of Columbia</u>, which "upheld the use of a more recently updated matrix, the LSI <u>Laffey</u> [m]atrix," in a case involving "a claim for attorneys' fees based on 42 U.S.C. § 1983," <u>id.</u> (citing <u>Salazar ex rel. Salazar v. District of Columbia</u>, 809 F.3d 58, 65 (D.C. Cir. 2015)), as support for its argument that the LSI <u>Laffey</u> matrix is the appropriate method for calculating billing rates in EAJA cases.

However, what the plaintiff has submitted "is not enough[,] as 'a court may not rely by default on a version of the <u>Laffey</u> [m]atrix without additional evidence from the party seeking attorneys' fees to determine whether the rates charged are in line with those prevailing in the community for similar legal services.'"  <u>Swanson</u>, 232 F. Supp. 3d at 28 (quoting <u>Ventura v. L.A. Howard Constr. Co.</u>, 134 F. Supp. 3d 99, 105–06 (D.D.C. 2015)).  Specifically, regarding the requested attorney billing rates, the plaintiff has neither provided the Court with its counsel's regular billing rates or the rates charged by other lawyers for similar services, nor has it cited to any case applying the LSI <u>Laffey</u> rates to an award of attorneys' fees pursuant to the EAJA.  And, regarding the requested non-attorney billing rates, the plaintiff has done even less, having failed to "even take[] the basic step of submitting an affidavit detailing the non-attorneys' experience and education."  <u>Role Models Am.</u>, 353 F.3d at 970; <u>see</u> Eastman Decl. ¶ 6 (providing only the names and no additional details about the non-attorneys who provided services in this case); Johnson Decl. ¶ 12 (same); Mitchell Decl. ¶ 10 (same); <u>see also</u> <u>Role</u>

Models Am., 353 F.3d at 970 (reducing the requested law clerk and legal assistant rates by twenty-five percent based on the plaintiff's "fail[ure] to carry its burden"). Thus, it would not be appropriate for the Court to conclude, based on the evidence submitted by the plaintiff, that the LSI Laffey rates represent the prevailing market rates for attorneys and non-attorneys in the type of litigation involved in this case. See Eley v. District of Columbia, 793 F.3d 97, 105 (D.C. Cir. 2015) ("By concluding that some version of the Laffey [m]atrix is presumptively reasonable, settling on the LSI Laffey [m]atrix[,] and applying it because no evidence was producing disproving that [Individuals with Disabilities Education Act] litigation is sufficiently complex, the district court erred in not requiring [the moving party] to demonstrate that her suggested rate was in line with those prevailing in the community." (citations and internal quotation marks omitted)). The Court therefore finds that the plaintiff has not satisfied its burden of demonstrating the reasonableness of its requested billing rates for attorneys and non-attorneys and, before ruling on the reasonableness of the plaintiff's requested billing rates, will require the plaintiff to submit additional evidence on the rates prevailing in the community for similar services by comparable attorneys and non-attorneys and the qualifications of the non-attorneys who provided services in this case. Accordingly, the Court will grant in part and hold in abeyance in part the plaintiff's motion for attorneys' fees and hold in abeyance the plaintiff's supplemental motion for attorneys' fees and motion for oral argument pending further submission by the plaintiff supporting the reasonableness of the rates it is requesting for the services of attorneys and non-attorneys who performed services in this case.[6]

---

[6] Because the Court has not reached a conclusion regarding whether the hourly rates charged in this matter are reasonable, the Court will reserve its ruling as to whether the number of hours expended and costs incurred in this matter are reasonable until after the plaintiff has provided additional information supporting the reasonableness of its requested attorney and non-attorney billing rates.

### IV.     CONCLUSION

For the foregoing reasons, the Court grants the plaintiff's motion for attorneys' fees to the extent that it seeks a finding by this Court that the plaintiff is entitled to an award of attorneys' fees and costs under the EAJA and holds in abeyance the motion in all other respects pending further submission by the plaintiff supporting the reasonableness of its requested attorney and non-attorney billing rates.  The Court also holds in abeyance in the plaintiff's supplement motion for attorneys' fees and motion for oral argument for the same reason.[7]

**SO ORDERED** this 30th day of May, 2019.


REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.