*Declaration of James Bopp, Jr.*

# EXHIBIT 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **True the Vote, Inc.**;<br><br>         *Plaintiff*,<br><br>    v.<br><br>**Internal Revenue Service, et al.**;<br><br>         *Defendants*. | **Civil Case No.** 1:13-cv-000734-RBW<br><br>**Declaration of James Bopp, Jr. in Support of Plaintiff's Notice of Compliance with Court Order** |

**Declaration of James Bopp, Jr.**

I, James Bopp, Jr., make the following declaration pursuant to 28 U.S.C. § 1746:

1. I submitted a previous declaration in support of *Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act* (ECF No. 151) ("**Application**"); (Declaration of James Bopp, Jr., ECF No. 151-1) ("**Bopp Declaration**") and another declaration in support of *Plaintiff's Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act* (ECF No. 157) ("**Supplemental Application**"); (Declaration of James Bopp, Jr., ECF No. 157-2) ("**Bopp Supplemental Declaration**").

2. The Bopp Declaration and the Bopp Supplemental Declaration detailed, *inter alia*, THE BOPP LAW FIRM, PC's ("**BLF**") attorneys' education, experience, and billing practices for the case at bar. I incorporate by reference all of the declarations in both the Bopp Declaration and the Bopp Supplemental Declaration.

3. My practice emphasizes non-for-profit corporate and tax law, campaign finance and elections law, and I and my firm have represented dozens of individuals and organizations in constitutional and civil rights litigation in various state and federal courts, including in the United

**Notice Decl. of James Bopp, Jr.**

States District Court for the District of Columbia.

    4. The attorneys' fees requested total $1,982,109.56, valued at the LSI Matrix rates, which reflects:

- $1,933,888.06 in attorneys' and paraprofessional fees, sought in the Application;

- ($54,730.20) as an adjustment to attorney and paraprofeesional fees, costs, and expenses from TTV's Reply (ECF No. 156) ("**Reply**"). In the Reply, additional reductions were made to Foley's and PILF's billing records for inadvertent charges for unsuccessful claims, media relations charges, fundraising, or other non-legal work ("**Reply Reductions**"). *See* Reply, ECF No. 156 at 22-24. These Reply reductions are now incorporated in the Adjusted Hours as *line-item reductions* in Foley's Billing Records, subtotaled by person, attached as Exhibit 20 to Pl.'s Memo. The Reply Reductions for electronic research, *see* Rely at 24, are now incorporated as line items on PILF and Foley's combined costs and expenses, attached as Exhibit 22 to Pl.'s Memo. *Individual line-item reductions* do not appear in PILF's billing records subtotaled by person, Exhibit 19 hereto, but remain identified by page number reference in the Reply (ECF No. 156) at 22-24 and appear in aggregate on page two of the Consolidated Billing Records, attached as Ex. 21 to Pl.'s Memo;

- $103,049.20 in attorneys' and paraprofessional fees sought in the Supplemental Application;

- ($97.50) as an adjustment to BLF billing records in the Notice which removed a charge for paraprofessinal Matthew Michaloski.

**Notice Decl. of James Bopp, Jr.**                    -2-

5. In the Application and Supplemental Application, the rates charged for myself, an attorney who practices fairly often in the D.C. metropolitan area, using the LSI Matrix, ranged from $826.00 to $865.00 per hour, adjusted for experience and for inflation. During that same time period, the rates BLF would regularly charge, and receive, for my services in similar litigation would be $790 per hour.

6. In the Application and Supplemental Application, the rates charged for Jeffrey P. Gallant, who has been admitted *pro hac vice* in this case, using the LSI Matrix, ranged from $686.00 to $718.00 per hour, adjusted for experience and for inflation. During that same time period, the rates BLF would regularly charge, and receive, for my services in similar litigation would be $500 per hour.

7. In the Application and Supplemental Application, the rates charged for Courtney E. Milbank, who has been admitted *pro hac vice* in this case, using the LSI Matrix, ranged from $342.00 to $358.00 per hour, adjusted for experience and for inflation. During that same time period, the rates BLF would regularly charge, and receive, for my services in similar litigation would be $340 per hour.

8. In the Application and Supplemental Application, the rates charged for Melena S. Siebert, who has been admitted *pro hac vice* in this case, using the LSI Matrix, was $358.00 per hour, adjusted for experience and for inflation. During that same time period, the rates BLF would regularly charge, and receive, for my services in similar litigation would be $300 per hour.

9. BLF, like most law firms I generally am familiar with, have varying rate structures for different types of clients.

10. The rates I charge clients for the services BLF's attorneys provide, are based upon

**Notice Decl. of James Bopp, Jr.**                -3-

different considerations such as the nature and length of the relationship with a particular client, as well as the peculiarities of a specific case.

11. Publicizing BLF's rate structures in one case makes these rate structures a matter of public record and creates unnecessary business challenges as clients with very different legal needs use the publicized rates as uninformed leverage in rate negotiations.

12. In an effort to offer additional proof to the Court of prevailing market rates, BLF requested supporting declarations from attorneys at 17 for-profit law firms, all of whom I know personally and many of whom I have worked with as co-counsel on various cases.

13. Further, BLF requested supporting declarations from attorneys at 20 non-profit organizations or public-interest law firms, all of whom I know personally and many of whom I have represented in litigation.

14. Only two attorneys from for-profit firms not involved in this litigation were willing to provide such declarations. *See* Declaration of Robert J. Cynkar, Declaration of Jason Torchinsky, attached as Exhibits 6 and 7 to *Plaintiff's Notice of Compliance with Court Order*.

15. Only two attorneys from non-profit organizations or public-interest law firms were willing to provide such declarations. *See* Declarations of Catherine Short and Martin S. Kaufman, attached as Exhibits 23 and 24 to *Plaintiff's Notice of Compliance with Court Order*.

16. In my opinion, for-profit firms will typically not be identified with information on their hourly rates and billing practices because doing so creates unnecessary business challenges as clients use the publicized rates as uninformed leverage in rate negotiations.

17. In my experience, and as the responses from many non-profit firms affirm, those firms do not have hourly rates and billing practices that are relevant in establishing the prevailing

**Notice Decl. of James Bopp, Jr.**                -4-

market rate because they are not billing clients. Instead, most if not all fee-shifting statutes provide that their clients are entitled to compensation at the prevailing market rate. Proving the prevailing market rates can be a substantial hurdle, and nonprofit firms and their clients benefit from a simple, feasible means of establishing the prevailing market rate.

18. My firm will file a second supplemental request for attorneys' fees incorporating the time and expenses incurred in responding to this Court's Order for additional evidence and support for the prevailing hourly rates to be applied in the fee requests before the Court.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of June, 2019.

/s/ James Bopp, Jr.
James Bopp, Jr.

**Notice Decl. of James Bopp, Jr.**                -5-