*Declaration of Steven K. Davidson*
**Makray v. Perez**

**EXHIBIT 11**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA J. MAKRAY,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS E. PEREZ,<br>  Secretary Of Labor,<br><br>    Defendant. | Civ. Action No. 12-0520 (BAH) |

DECLARATION OF STEVEN K. DAVIDSON

BACKGROUND AND EXPERIENCE

1.    I am a partner in the law firm of Steptoe & Johnson LLP ("Steptoe"), with my office at 1330 Connecticut Avenue, N.W., Washington, D.C. 20036. I have practiced law at Steptoe since 1985 and have been a partner of the firm since 1993. Throughout my career, I have represented top Fortune 500 corporations, including ExxonMobil, Google, Motorola, and US Airways, in litigation throughout the United States and abroad, as well as in domestic and international arbitrations. I focus on trial and arbitration work, and have substantial experience with complex disputes. Additionally, I maintain an active pro bono practice and have litigated several discrimination cases, including working closely with the Washington Lawyer's Committee for Civil Rights and Urban Affairs on a number of matters. In my thirty years of practice, I have appeared in federal courts, state courts and before various arbitral bodies, in matters covering a wide variety of subjects.

2.    I received a Bachelor of Arts degree in 1982 (summa cum laude and Phi Beta Kappa) and a Master of Arts in 1983, both from Boston University. I received my J.D. degree

1

from Northwestern Law School in 1985. I am a member of the Bars of the District of Columbia (since 1987) and Virginia (since 1985) and numerous federal district courts and circuit courts of appeal.

3. From 2001-2012, I served as the head of Steptoe's commercial litigation group. During my years at Steptoe, I have had a wide variety of firm management responsibilities. Currently, I serve on the firm's Management Committee. Previously, I have served as a member of our Executive Committee—an elected group that essentially manages the firm's affairs and sets policy; the Professional Advancement Committee—an elected group that makes recommendations to the firm's partnership on the professional advancement of the firm's attorneys, including on advancement to partner; and the Strategic Planning Committee. My sustained involvement in the management of a large law firm has given me a great deal of experience with the issues facing a provider of legal services—issues both internal to the firm itself and inherent in the lawyer-client relationship, especially with respect to the setting of hourly billing rates for firm professionals.

4. I have particularly been involved in supervising, as the lead attorney, a number of what are commonly referred to as "complex cases." In my practice, this means that in addition to being analytically complex, the cases are also large in size in terms of the amount of documents and other information that has to be handled in the course of the litigation.

5. In most of the large matters I have handled over the years, I have been not only the lead partner in providing services to the client, I have also been the partner responsible for billing. I have reviewed many hundreds of invoices and submitted them to clients, and I have dealt with any client questions that arose about those billings. In addition, I have consulted with a number of my partners over the years about billing questions involving clients for whom they were responsible. I have also been responsible for negotiating rates with clients on matters based here in D.C. and throughout the

2

world. As a result, I have become quite familiar with the applicable rates lawyers charge for a variety of civil cases, including those charged by D.C. attorneys for work performed in the D.C. courts.

6. Additionally, I have been retained as fee counsel or consulted on a number of cases involving attorneys' fees disputes. Most often, I have represented prevailing plaintiffs and their counsel seeking attorneys' fees and expenses under civil rights laws or other fee-shifting statutes. I have also represented parties opposing an award of fees, and I have served as an expert witness on attorneys' fee issues. Through these representations, I have developed a familiarity with fee shifting statues and fee petitions.

7. I have also represented numerous clients in attorney malpractice, legal ethics, and professional liability matters. These disputes generally require detailed analysis of billing records, time sheets, and expense reports. As a result, I have extensive knowledge of the billing practices and procedures at a number of law firms in the Washington metropolitan area.

8. As a result of the activities described in paragraphs 3 through 7 above, I have reviewed hourly rates and billing practices of a variety of law firms in many different types of cases. In particular, I have significant knowledge of the hourly rates typically charged by firms involved in all types of litigation, including the rates of firms which practice before state and federal courts in Maryland, Virginia, and the District of Columbia. It is also part of my practice to keep current on reported attorneys' fees decisions, so that I can be aware of legal developments in the field and the type, nature, and amount of fees and expenses courts approve as reasonable, including the hourly rates that firms charge and courts approve.

9. I have been asked to make this Declaration in support of Plaintiff's Petition for Partial Award at *Salazar*/LSI Rate ("fee petition"). I understand that it will be filed with the Court in connection with that Petition.

10. I am being compensated for my services as an expert witness in this matter. I am providing this Declaration for a flat fee of $1000. An associate, with an hourly rate of $515, supports me in locating and reviewing materials for my use in forming my expert opinion.

11. Over the course of the last two years, I have represented Seldon, Bofinger & Associates (the "firm") and Mr. Seldon on two matters. I am familiar with the firm, its work and expertise.

12. I have reviewed the firm's fee petition in this matter. The firm is entitled to reasonable attorneys' fees that are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). My years of experience in the setting of rates puts me in a position to be aware of rates generally in the market. It is my understanding that the Government only contests a portion of the fees that Seldon, Bofinger & Associates seeks for Mr. Seldon's time on this matter. The government has agreed to the use of the *Laffey* matrix for an award to Seldon, Bofinger & Associates, taking into account a small downward adjustment made by the firm for the time of one of the attorneys on the case, Charlene Bofinger, because she was second chair to Mr. Seldon. I also understand that the government agreed that the number of hours spent by each attorney was reasonable, after the firm exercised billing judgment to make

4

certain modest adjustments. I understand that the firm is seeking the LSI-adjusted *Laffey* matrix rate for Mr. Seldon's time from denial of summary judgment through trial. As such, I have only assessed the reasonableness of those rates. In my judgment, the rate sought by Seldon, Bofinger & Associates for Mr. Seldon's time is well within the reasonable range of rates for a firm undertaking matters of the complexity of those involved here.

13. The rate sought by Seldon, Bofinger & Associates for Mr. Seldon's time is within the bounds of what is customary in the marketplace in the Washington, D.C. metropolitan area. While information on rates charged by other Washington, D.C. law firms for complex Title VII litigation, such as this, is not readily available to the public, I have consulted sources of information on both rates generally and specific rates charged or sought by firms on specific matters. I have consulted both types of information in reaching my conclusion that the rate sought by Seldon, Bofinger & Associates is reasonable and consistent with the customary market rates for the District of Columbia.

14. I am also knowledgeable about the fact that firms, including my own, represent defendants in employment cases. The hourly rates that are charged for defense work in the employment field are the same as those rates charged by comparably experienced attorneys in other types of litigation in federal court.

15. Employment cases can pose particularly daunting challenges for a plaintiff's lawyer. Perhaps the most prominent one is that employment cases are largely proven with circumstantial evidence, in other words without favorable testimony from decision-makers and officials with inside knowledge. Employment cases are not unique in this respect; anti-trust cases also often have to be proven without direct evidence. Regardless of the stakes, the size

5

of a case, the amount of time spent in trial, or the complexity of particular legal issues, every type of specialized litigation presents its own set of challenges and demands. Whatever those challenges are, the common requirement for the consistent, successful prosecution and defense of cases in federal court are highly experienced, accomplished attorneys. In my expert opinion, there is no reason to charge more or less for an accomplished litigator just because the field in which they specialize is employment law.

16. First, to assess the reasonableness of the rate sought by Seldon Bofinger & Associates for Mr. Seldon's time—$789 per hour—I consulted the widely used *Laffey* matrix, as updated using the nation-wide legal services component of the Consumer Price Index produced by the Bureau of Labor Statistics of the Department of Labor. The *Laffey* matrix consists of a chart delineating "reasonable market rates for the DC market" established by the U.S. District Court for the District of Columbia in *Laffey* v. *Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984) after an extensive survey of rates in Washington, D.C. The matrix, established in 1982 and updated annually, has been accepted as evidence of reasonable market rates for complex litigation in the District of Columbia by D.C. courts, avoiding repetitive wasteful litigation over market rates. *See, e.g., Blackman* v. *District of Columbia,* 59 F. Supp. 2d 37, 43 (D.D.C. 1999). In *Salazar v. District of Columbia,* 123 F. Supp. 2d 8, 14 (D.D.C. 2000), the United States District Court for the District of Columbia performed a thorough examination of the matrix and the methodology employed for adjusting the 1982 rates to account for inflation. The *Salazar* Court found that use of the nationwide legal services component of the Consumer Price Index is the best indicator of the effect of inflation on rates for legal services in the District of Columbia (the "LSI-adjusted *Laffey* matrix"). That methodology has been repeatedly employed by this court. *See Salazar v. District of Columbia*,

6

991 F. Supp.2d 39, 47 (D.D.C. 2014) (applying the LSI–adjusted *Laffey* matrix rather than the USAO matrix in a 42 U.S.C. § 1983 case); *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, No. 11–0754, Mem. Op. (August 4, 2014) (applying the LSI–adjusted *Laffey* matrix in a FOIA case); *Eley v. District of Columbia*, 999 F. Supp. 2d 137 (D.D.C. 2013) (applying the LSI-adjusted *Laffey* matrix in an extensively-litigated IDEA case). I recognize that the LSI-adjusted *Laffey* matrix has not been universally accepted by this court, but in my expert opinion, it is the more accurate schedule of hourly rates.

17.     Using the LSI-adjusted *Laffey* matrix, the highest experience tier is for attorneys with twenty years of experience or more. Those attorneys—such as Mr. Seldon, with thirty-nine years of experience—have a LSI-adjusted *Laffey* matrix rate of $789 per hour. This is the rate that the firm seeks for Mr. Seldon's time from the denial of summary judgment through trial. The LSI-adjusted *Laffey* matrix indicates that the fees sought are reasonable.

18.     A second source of information on rates is the court filings of other counsel with similar experience. In *McKesson Corp. v, Islamic Republic of Iran*, the lead attorney, Mark Bravin, a 1978 law school graduate, was awarded rates of $780 per hour, whereas the LSI-adjusted *Laffey* matrix rate at that time would have been $771. *See McKesson Corp. v. Islamic Republic of Iran*, 935 F. Supp. 2d 34, 43 (D.D.C. 2013) (granting fee award), vacated in part on other grounds, 753 F.3d 239 (D.C. Cir. 2014); Exhibit A (attached), Exhibit to Declaration of Mark N. Bravin (listing rates). I examined this filing, which sets out the rate of a lead trial attorney with a level of experience similar to Mr. Seldon, in the course of arriving at my opinion that the rate sought by the firm in this case is reasonable.

7

19. A third source of information on market rate generally is local and national publications that survey firms on rates. In analyzing the rates sought here, I consulted the National Law Journal's annual survey of billing rates for 2014. Exhibit B attached hereto lists the responses from Washington, D.C. law firms. Each of the twelve firms that participated in the survey provided a range of partner billing rates. The average low end billing rate for a Partner was $571.67. The average high end billing rate for a partner was $1,032.92. The average partner billing rate across the firms surveyed is $742.67. The rate sought for Mr. Seldon's time—$789 per hour— for a discrete part of *Makray* is within the range of the firms surveyed. In fact, it is well below the average high partner rate and within $50 per hour of the average partner billing rate. Based on my experience, it is reasonable that Mr. Seldon's rate would be higher than the average partner rate, as he has upwards of thirty years more experience than many junior partners at those firms. These rates are equally indicative of reasonable rates for specialized small firms, such as Seldon, Bofinger & Associates. *See Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, No. 11–00374, Mem. Op. (February 11, 2015) (looking "to law firm billing rates as a benchmark for the reasonableness of the rates proposed" for a public interest attorney and a solo practitioner).

20. Over the course of the last two years, I have had the occasion to become familiar with the nature of Mr. Seldon's practice and his skill as a civil litigator. I am particularly familiar with another cutting-edge case with vigorously disputed medical issues handled by Seldon, Bofinger & Associates against the Department of Labor that arose under the Americans With Disabilities Act, 42 U.S.C. § 12112. After reviewing that case in detail and select records in this case, I have concluded that a rate of $789 per hour for Mr. Seldon's time from the denial of summary judgment through trial is reasonable. Mr. Seldon is a skilled civil

8

litigator with close to forty years of experience. He is well respected by his colleagues and adversaries. Mr. Seldon has had extensive success litigating employment claims and often against the Federal government and has developed expertise in a particularly specialized area of law. He is a full-time practitioner in this unique area of law. As a result, he is in a better position to appreciate the nuances and complexity of these cases, to have access to high caliber lay and expert witnesses, and to maintain the respect of his adversaries.

21. This case presented a number of difficulties which Mr. Seldon—through his talent and experience—was able to negotiate, including a challenging discovery schedule, complicated summary judgment proceedings, demanding pre-trial procedures, in limine practice regarding claims of reverse race discrimination, a mediation and ultimately an eight day jury trial in Federal Court with fifteen witnesses.

22. It is my opinion that the rate of $789 per hour sought by Seldon, Bofinger & Associates for Mr. Seldon's time from denial of summary judgment through trial is reasonable and consistent with the prevailing market rates in the DC metropolitan area. I see no reason why they should not be honored by this court.

23. All opinions expressed by me in this Declaration have been stated within a reasonable degree of professional certainty.

9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Washington, D.C.
April 20, 2015

_____
Steven K. Davidson

# Exhibit A

# TAB 1

**Tab 1**

## WINSTON & STRAWN LLP TIMEKEEPER RATES/HOURS/FEES
### July 1, 2012 through April 15, 2013

|  |  | 2012 | 2013 | Total Hours and Fees |
|---|---|---|---|---|
| **Partners:** |  |  |  |  |
| Bravin, Mark N. | Level (years) | 34 | 35 |  |
|  | Rate | $780.00 | $810.00 |  |
|  | Hours | 204.80 | 73.80 | 278.60 |
|  | Fees | $159,744.00 | $59,778.00 | $219,522.00 |
|  |  |  |  |  |
| Schaerr, Gene C. | Level (years) | 27 | 28 |  |
|  | Rate | $970.00 | $995.00 |  |
|  | Hours | 6.20 | 1.10 | 7.30 |
|  | Fees | $6,014.00 | $1,094.50 | $7,108.50 |
| **Of Counsel:** |  |  |  |  |
| Wallace, Don | Level (years) | 55 | 56 |  |
|  | Rate | $735.00 | $770.00 |  |
|  | Hours | 0.30 | 2.80 | 3.10 |
|  | Fees | $220.50 | $2,156.00 | $2,376.50 |
| **Associates:** |  |  |  |  |
| Goldstein, Eric M. | Level (years) | 4 | 5 |  |
|  | Rate | $460.00 | $525.00 |  |
|  | Hours | 301.60 | 84.80 | 386.40 |
|  | Fees | $138,736.00 | $44,520.00 | $183,256.00 |
|  |  |  |  |  |
| Waring, Christine M. | Level (years) | <1 | 1 |  |
|  | Rate | $370.00 | $390.00 |  |
|  | Hours | 34.70 | 8.50 | 43.20 |
|  | Fees | $12,839.00 | $3,315.00 | $16,154.00 |
| **Professional Support Staff:** |  |  |  |  |
| Esquibel, Barbara | Rate | $260.00 | $275.00 |  |
|  | Hours | 4.90 | 2.00 | 6.90 |
|  | Fees | $1,274.00 | $550.00 | $1,824.00 |
|  |  |  |  |  |
| Archambo, Avery | Rate | $160.00 | $170.00 |  |
|  | Hours | 25.90 | 0.00 | 25.90 |
|  | Fees | $4,144.00 | $0.00 | $4,144.00 |
|  | **TOTAL HOURS** |  |  | 751.40 |
|  | **TOTAL FEES** |  |  | $434,385.00 |

# Exhibit B

## 2014 National Law Journal Billing Survey
## for Washington, D.C. Firms

| Year | Firm Name | Location | Average FTE Attorneys | Partner Billing Rate High | Partner Billing Rate Low | Partner Billing Rate Avg | Associate Billing Rate High | Associate Billing Rate Low | Associate Billing Rate Avg |
|---|---|---|---|---|---|---|---|---|---|
| 2014 | Akin Gump Strauss Hauer & Feld | Washington, DC | 809 | $1220.00 | $615.00 | $785.00 | $660.00 | $365.00 | $525.00 |
| 2014 | Arent Fox | Washington, DC | 330 | $860.00 | $500.00 | $650.00 | $595.00 | $275.00 | $395.00 |
| 2014 | Arnold & Porter | Washington, DC | 720 | $950.00 | $670.00 | $815.00 | $610.00 | $345.00 | $500.00 |
| 2014 | Covington & Burling | Washington, DC | 760 | $890.00 | $605.00 | $780.00 | $565.00 | $320.00 | $415.00 |
| 2014 | Dickstein Shapiro | Washington, DC | 254 | $1250.00 | $590.00 | $750.00 | $585.00 | $310.00 | $475.00 |
| 2014 | Hogan Lovells | Washington, DC | 2,313 | $1000.00 | $705.00 | $835.00 | | | |
| 2014 | Holland & Knight | Washington, DC | 956 | $1085.00 | $355.00 | $625.00 | $595.00 | $210.00 | $340.00 |
| 2014 | Pillsbury Winthrop Shaw Pittman | Washington, DC | 591 | $1070.00 | $615.00 | $865.00 | $860.00 | $375.00 | $520.00 |
| 2014 | Sterne, Kessler, Goldstein & Fox | Washington, DC | 122 | $795.00 | $450.00 | $577.00 | $470.00 | $265.00 | $346.00 |
| 2014 | Venable | Washington, DC | 533 | $1075.00 | $470.00 | $660.00 | $575.00 | $295.00 | $430.00 |
| 2014 | Wiley Rein | Washington, DC | 277 | $950.00 | $550.00 | $665.00 | $535.00 | $320.00 | $445.00 |
| 2014 | Wilmer Cutler Pickering Hale and Dorr | Washington, DC | 988 | $1250.00 | $735.00 | $905.00 | $695.00 | $75.00 | $290.00 |
| | Average | | 721 | $ 1,032.92 | $ 571.67 | $ 742.67 | $ 613.18 | $ 286.82 | $ 425.55 |

Copyright 2014 ALM Media properties, LLC. All rights reserved.　　　1　　　888-770-5647
www.alm.com