# United States District Court
# For the District of Columbia

| | |
|---|---|
| **True the Vote, Inc.**;<br><br>*Plaintiff,*<br><br>v.<br><br>**Internal Revenue Service, et al.**;<br><br>*Defendant*s. | Civil Case No. 1:13-cv-000734-RBW<br><br>**Plaintiff's Notice of Supplemental Authority** |

## Plaintiff's Notice of Supplemental Authority

Plaintiff, True the Vote, Inc. ("**TTV**") notifies the Court of the following supplemental authority in support of its Notice of Compliance with Court Order, (ECF No. 165): *DL v. District of Columbia*, No. 18-7004, 2019 U.S. App. LEXIS 14963 (D.C. Cir. May 21, 2019).

The court in *DL* notes that according to the standard announced in *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) and codified in the statute applicable there, statutory attorney's fees are to be awarded at the hourly rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *DL*, 2019 U.S. App. LEXIS at *5 (quoting *Blum*). *DL* vacated an award of attorney's fees and remanded the case to the district court to "recalculate the hourly rate based on evidence that focuses on fees for attorneys practicing complex federal litigation in the District of Columbia." *Id.* at *22.

The Circuit court specifically rejected the use of the USAO II Matrix.[1] *See id.* at *12. The

---

[1] Several rate matrices exist and have been used by the D.C. District and Circuit Courts, and the various names used have created some confusion, as all have been referred to at various times as different types of "Laffey" Matrices. *See, e.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 65 (D.C. Cir. 2015); *Cobell v. Norton*, 407 F. Supp. 2d 140, 152 (D.D.C. 2005). To minimize

**Pl.'s Notice of Supp. Auth.**

court noted that

> [s]imply stated, the question before us is whether the district court abused its discretion in determining that the hourly rates in the USAO's matrix are "reasonable. . . ." We will reverse a district court's determination that certain hourly rates are reasonable when there has been a "clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence."

*Id.* at *11-12 (citations omitted); *see also*, *id.* at *24-25, (Sentelle, J., dissenting) ("the majority reviews the district court's determination . . . as if it were a question of law.").

*DL* was a class action suit based upon the Individuals with Disabilities in Education Act ("**IDEA**"). *Id.* at *9. After plaintiffs prevailed, the matter turned to the question of the fee award. *Id.* at *10. In the district court, the question of fees became a battle pitting the validity of the LSI Matrix vs. the USAO II Matrix. *See id.* The district court had found that both matrices were "presumptively applicable" to "complex federal litigation." *Id.* at *11-12 (quoting *DL v. District of Columbia,* 267 F. Supp. 3d 55, 69 (D.D.C. 2017)). But the Court of Appeals court found two fatal flaws in the *DL* court's validation of the USAO II Matrix.

First, the USAO II data was not from a survey of the relevant population of practitioners—attorneys who practice in a similar area of complex federal litigation; and second, the USAO II was based on attorney data from a geographic area far more broad than the relevant community, i.e., "the one in which the district court sits." *See id.* at *13-16 (citation omitted).

The district court had relied on the USAO II's "more recent raw data and statistically significant sample size" to find it superior to the LSI Matrix. *Id.* at *13. However, the Court of

---

confusion, TTV refers to the pre-2011 version of the USAO Laffey Matrix, as the "USAO I Matrix." The circuit's decision in *DL* only concerned the use of the post-2011 version of the USAO Laffey Matrix and the LSI Laffey Matrix. TTV has and does here refer to these matrices as the "USAO II Matrix" and the "LSI Matrix," respectively.

**Pl.'s Notice of Supp. Auth.** 2

Appeals rejected that proposition, holding that "those traits matter only if the data surveys the relevant population." *Id.* at *14. (noting that, as plaintiffs' expert, Dr. Michael Kavanaugh, put it, "comparable prices are found by observing comparable goods"). The Court of Appeals pointed out that the USAO II Matrix had canvassed "all types of lawyers," including real estate lawyers, family lawyers, and insurance lawyers—"lawyers manifestly not offering 'the kind and quality of services furnished'" by the plaintiffs' attorneys in *DL. Id.* at *14 (citation omitted). The court found it "obvious that the rates charged for, say, simple wills are lower than those for complex federal litigation. Worse still, nothing in the record reveals what percentage of respondents in the USAO's custom cross-section of the ALM data were litigators." *Id.* at *14-15.

Next, the court noted that the USAO II matrix surveyed lawyers who practice in the entire "metro area" as defined by the United States Census Bureau—an area that stretches well beyond the District to cover thousands of square miles over three states. *Id.* at *15. The court held that the rates in that broad a geographic area are not sufficiently limited to be representative of the prevailing market rates in the District of Columbia. *See id.*

The court questioned and criticized recent district decisions which failed to address these significant flaws inherent to the USAO II Matrix. *Id.* at *17-18. In doing so, the circuit court rejected the district's "growing consensus" preferring the USAO II Matrix as flawed analyses*. Id.* (citing *Lewis v. District of Columbia*, No. 1:15-cv-521-JEB, 2018 U.S. Dist. LEXIS 203865, at *8-9 (D.D.C. Dec. 3, 2018) (no response to the plaintiff's objection that the new USAO matrix "reflects all types of legal services"); *Gatore v. United States Department of Homeland Security*, 286 F. Supp. 3d 25, 42-43 (D.D.C. 2017) (no response to observation that the USAO's Survey may be "over-inclusive"); *Electronic Privacy Information Center v. United States Drug*

*Enforcement Administration*, 266 F. Supp. 3d 162, 170-71 (D.D.C. 2017) (no discussion of survey composition); and *Clemente v. Federal Bureau of Investigation*, No. 1:08-cv-1252-BJR, 2017 U.S. Dist. LEXIS 141028, at *5 (D.D.C. Mar. 24, 2017) (merely describing the new USAO matrix as "measur[ing] rates in the legal services industry")). While "sympathizing with the *DL* district court's appetite for more recent data," the court was "unpersuaded by its decision to embrace newer but irrelevant figures." *DL,* 2019 U.S. App. LEXIS 14963 at *18*.* In sum, the court's ruling in *DL* specifically rejects the USAO II Matrix as competent evidence of reasonable hourly rates for fees in the District of Columbia. *See id.*

The *DL* opinion is relevant here because it directly impacts the proper analysis for the fee petition at issue in this case. The Court of Appeals has confirmed that the first issue in a fee petition is whether the case is considered "complex federal litigation." *See id.* at *7-8. As noted by TTV, the defendant's lack of challenge to this case's complexity, the fundamental Constitutional principles at issue, and the amount and type of litigation-related work performed all support a finding that the case at bar qualifies as "complex federal litigation." (Pl.'s Memo. Supp., ECF No. 165-1 at 5.)

Once a case has been found to be "complex," the next step is a "burden-shifting framework" in which the plaintiff must present evidence that the fees requested are "reasonable" for the relevant market. *DL*, 2019 U.S. App. LEXIS 14963 at *5. The Court of Appeals has long held that the LSI Matrix is "presumptively reasonable" evidence of prevailing market rates for the District of Columbia. *Id.* at *12 citing *Salazar v. District of Columbia*, 809 F.3d 58,64-65 (D.C. Cir. 2015) (holding that the LSI Matrix is probably a conservative estimate of the actual cost of legal services in the D.C. market). TTV also presented additional evidence suggesting that

the LSI matrix is more representative of actual rates billed and paid. (Pl.'s Memo. Supp., ECF No. 165-1 at 7-9.) The circuit's affirmation of the presumptive value of the LSI Matrix ruling in *DL* supports TTV's contention that a plaintiff should not be required to present evidence supporting rates beyond the LSI Matrix when presenting its initial fee petition to a district court. (*See id.* at 16-20.)

      A defendant may rebut the plaintiff's evidence of prevailing market rates, but must do so with "equally specific countervailing evidence" supporting another or different rates. *DL*, 2019 U.S. App. LEXIS 14963 at *12 (internal quotation marks omitted). However, the effect of the ruling in *DL* is that the USAO II Matrix is no longer competent evidence and cannot be used or supported as specific countervailing evidence to support another rate. *See id.* at *19 (rejecting USAO II Matrix). In addition, this circuit has held that a party "'forfeits an argument by failing to raise it in his opening brief.'" *Id.* at *21 (quoting *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019)). The Defendants have never argued the LSI Matrix does not represent reasonable prevailing market rates in the D.C. area, instead focusing on the argument, rejected by this Court, that TTV is only entitled to the statutory rate under the EAJA.

      In short, the *DL* decision is relevant here because it recognizes that a fee matrix allows a court to ascertain the hourly rate for lawyers performing similar work "with a fair degree of accuracy" while avoiding turning fee calculations into "a second major litigation." *Id.* at *2, *12. Critically, the court also held that the LSI Matrix—which TTV relies upon in its briefing before this Court—is presumptively valid evidence of the prevailing market hourly rates in the D.C. area, and that the USAO II Matrix may *not* be used as competent countervailing evidence of those rates. *Id.* at *19.

**Pl.'s Notice of Supp. Auth.**                           5

| | |
|---|---|
| June 17, 2019 | Respectfully submitted, |
| | /s/ James Bopp, Jr. |
| | James Bopp, Jr. (D.C. Bar No. CO0041) |
| | Courtney Turner Milbank* |
| | Jeffrey P. Gallant* |
| | Melena S. Siebert* |
| | THE BOPP LAW FIRM, P.C. |
| | The National Building |
| | 1 South 6th Street |
| | Terre Haute, Indiana 47807 |
| | (812) 232-2434 |
| | (812) 235-3685 (fax) |
| | *Attorneys for Plaintiff* |
| | *Admitted *pro hac vice* |

## Certificate of Service

I hereby certify that on June 17, 2019 , I caused the *Plaintiff's Notice of Supplemental Authority* in the above-captioned matter to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

<u>/s/ James Bopp, Jr.</u>
James Bopp, Jr.