# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| TRUE THE VOTE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-00734-RBW |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## UNITED STATES' OPPOSITION TO PLAINTIFF'S SECOND SUPPLEMENTAL APPLICATION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT

# TABLE OF CONTENTS

Introduction……………………………………………………………………………1

Background……………………………………………………………………….....4

Discussion…………………………………………………………………………6

I.      Plaintiff has not established the but-for causation for entitlement to an enhanced rate for all of its requested attorney and non-attorney fees……………………………….……..6

II.     The Court should use the LSI *Laffey* Matrix to determine comparable market rates in this case should it find that plaintiff is entitled to an enhanced rate for any of its requested fees…………………………………………………………………………...7

III.    Many of plaintiff's specific bills suffer from infirmities that require significant reductions in the amount claimed by plaintiff, and plaintiff is not entitled to recover amounts paid to correct its previous  filing………………………………………………………8

        A.      Plaintiff should not recover for fees spent on its Plaintiff's Notice of Supplemental Authority as it incurred those costs to correct deficiencies in its earlier filing…………………………………….................................10

        B.      Plaintiff has failed to exclude hourly billings related to claims or motions it has not prevailed upon and failed to make adjustments to amounts that partially relate to claims it has not prevailed upon………………………………………...……11

        C.      Plaintiff is not entitled to collect for work that is wholly unrelated to this litigation………………………………………………………………13

        D.      Plaintiff's submission contains numerous vague billing descriptions, which are insufficient to ascertain reasonableness……………………………………16

        E.      Plaintiff engages in numerous other improper billing practices that would warrant an additional across-the-board percentage reduction……………………………18

                1.      *Plaintiff's attorneys use block billing*………………………………...18

                2.      *Plaintiff's bills may contain duplicative billing*...………………………19

                3.      *Many of plaintiff's billing entries are excessive*......................................20

Conclusion……………………………………………………………………………21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abusamhadaneh v. Taylor*,
2013 U.S. Dist. LEXIS 7451 (E.D. Va. Jan. 17, 2013) (Cacheris, J.) ....................................16

*Am. Petroleum Inst. v. EPA*,
72 F.3d 907 (D.C. Cir. 1996) ...............................................................................................9, 20

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
403 U.S. 388 (1971)....................................................................................................................4

*Carter v. Sedgwick County, Kan.*,
36 F.3d 952 (10th Cir. 1994) ......................................................................................................9

*Cobell v. Norton*,
407 F. Supp. 2d 140 (D.D.C. 2005) ..........................................................................................17

*Conservation Force v. Salazar*,
916 F. Supp. 2d 15 (D.D.C. 2013) ..............................................................................................9

*Copeland v. Marshall*,
641 F.2d 880 (D.C. Cir. 1980) ..................................................................................................19

*Doe v. Rumsfeld*,
501 F. Supp. 2d 186 (D.D.C. 2007) ..........................................................................................13

*Ebersole v. Kline-Perry*,
2012 U.S. Dist. LEXIS 138659 (E.D. Va. Sept. 26, 2012) (Cacheris, J.) ...............................18

*Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*,
982 F. Supp. 2d 56 (D.D.C. 2013), *dismissed sub nom. Elec. Privacy Info. Ctr.
v. U.S. Dep't of Homeland Sec.*, No. 13-5113, 2014 WL 590977 (D.C. Cir.
Jan. 21, 2014), and *dismissed sub nom. Elec. Privacy Info. Ctr. v. U.S. Dep't
of Homeland Sec.*, No. 13-5372, 2014 WL 590996 (D.C. Cir. Jan. 21, 2014) .......................19

*F.S. v. District of Columbia*,
307 F.R.D. 28 (D.D.C. 2014) ....................................................................................................11

*Fabi Construction v. Sec. of Labor*,
541 F.3d 407 (D.C. Cir. 2008) ..................................................................................................10

*Freeport Partners, L.L.C. v. Allbritton*,
No. Civ. A. 04-2030 (GK) (D.D.C. March 13, 2006) ..............................................................20

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017) .................................................................................6

*GSS Group Ltd. v. Nat'l Port Auth.*,
    680 F.3d 805 (D.C. Cir. 2012) ...................................................................11

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...............................................................................9, 16

*Kennecott Corp. v. EPA*,
    804 F.2d 763 (D.C. Cir. 1986) ...................................................................16

*Loving v. IRS*,
    2014 WL 12778284 (D.D.C. Sept. 19, 2014) ..............................................9

*Lu v. United States*,
    921 F.3d 850 (9th Cir. 2019) .......................................................................6

*Masonry Masters, Inc. v. Barr*,
    No. 86-201 1992 .........................................................................................20

*McNeil v. District of Columbia*,
    233 F. Supp. 3d 150 (D.D.C. 2017) ...........................................................11

*Means v. District of Columbia*,
    999 F. Supp. 2d 128 (D.D.C. 2013) ...........................................................11

*In re Meese*,
    907 F.2d 1192 (D.C.Cir. 1990) ..................................................................16

*Michigan v. EPA*,
    254 F.3d 1087 (D.C. Cir. 2001) .................................................................20

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ...................................................................................15

*Okla. Aerotronics, Inc. v. United States*,
    943 F.2d 1344 (D.C. Cir. 1991) .................................................................20

*In re Olson*,
    884 F.2d 1415 (D.C. Cir. 1989) (per curiam) .................................10, 16, 17

*Pennsylvania v. Del. Valley Citizen's Council for Clean Air*,
    478 U.S. 546 (1986) ...................................................................................19

*Porter v. Astrue*,
    2013 WL 5978623 (D.D.C. Nov. 12, 2013) ...........................................9, 10

*Role Models Am., Inc. v. Brownlee,*
     353 F.3d 962 (D.C. Cir. 2004) ...................................................................................... *passim*

*Salazar v. District of Columbia,*
     123 F. Supp. 2d 8 (D.D.C. 2000) ...........................................................................................20

*Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA,*
     169 F.3d 755 (D.C. Cir. 1999) ...............................................................................................19

*True the Vote, Inc. v. IRS,*
     71 F. Supp. 3d 219 (D.D.C. 2014) ....................................................................................11, 12

*True the Vote, Inc. v. IRS,*
     831 F.3d 551 (D.C. Cir. 2016) ...............................................................................................12

*True the Vote, Inc. v. Lerner,*
     137 S. Ct. 1068 (2017) .......................................................................................................5, 12

*United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.,*
     732 F.2d 495 (6th Cir.1984) ...................................................................................................10

*Weisberg v. DOJ,*
     745 F.2d 1476 (D.C. Cir. 1984) .............................................................................................19

**Statutes**

26 U.S.C. § 501(c)(3)....................................................................................................................4

26 U.S.C. § 6103 ...........................................................................................................................4

26 U.S.C. § 7428......................................................................................................................4, 12

26 U.S.C. § 7431 ...........................................................................................................................4

28 U.S.C. § 2412(d)(2)(A)............................................................................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ )
)
TRUE THE VOTE, INC.                )
)
     Plaintiff,                      )
)
     v.                              )     Civil Action No. 1:13-cv-00734-RBW
)
UNITED STATES OF AMERICA, *et al.*, )
)
     Defendants.                     )
_____)


**UNITED STATES' OPPOSITION TO PLAINTIFF'S SECOND SUPPLEMENTAL
APPLICATION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES
UNDER THE EQUAL ACCESS TO JUSTICE ACT**

Defendant United States of America files this response to Plaintiff's Notice of

Compliance with Court Order (DKT 165), Plaintiff's Second Supplemental Application and

Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to Justice Act (DKT

166), and Plaintiff's Notice of Supplemental Authority (DKT 167).

<u>Introduction</u>

On January 16, 2018, plaintiff True the Vote, Inc. and defendant United States of

America[1] reached a settlement of this case which carved out the issue of attorney fees and costs

and provided that plaintiff could seek them under any applicable law.  The Court has

subsequently found that plaintiff is entitled to its reasonable attorneys' fees and costs under the

---

[1] For purposes of the resolution of this case and the matter of plaintiff's request for its attorneys'
fees and costs, defendant United States means the United States, Internal Revenue Service
("IRS"), and any remaining individual federal defendant sued in his or her official capacity.

Equal Access to Justice Act ("EAJA").  Since plaintiff had not satisfied its burden of showing the reasonableness of its attorney and non-attorney requested billing rates, the Court gave plaintiff an opportunity to supplement the record to fix its shortcomings.  Plaintiff's supplemental filings, totaling three separate submissions, still do not meet its burden to establish that the total amount of its requested attorneys' fees and costs are reasonable.

First, as discussed in the United States' Motion for Partial Reconsideration filed concurrently with this response, plaintiff is not entitled to an enhanced attorney and non-attorney billing rate of market rates for all of its requested fees.  Specifically, plaintiff has not established, as required by the Supreme Court, that but for the pre-litigation bad faith that the Court has found in this case plaintiff would have incurred all of its requested fees.  As such, plaintiff's billing rates are limited to the statutory cap, plus inflation, found in EAJA.

Second, even if the Court finds that plaintiff is entitled to enhanced attorney and non-attorney billing rates at comparable market rates, the Court should use the current LSI *Laffey* matrix to determine those rates in this case.  Contrary to plaintiff's request, current D.C. Circuit law does not allow the Court to make a broader holding applicable beyond this case that use of any matrix is "dispositive proof of prevailing market rates for all attorney's fee petitions."

Finally, whatever attorney and non-attorney billing rates the Court finds appropriate in this case, plaintiff has failed to establish that the requested fees and costs are reasonable and not excessive.  As an initial matter, plaintiff improperly submits bills for time charged to correct its previous infirmities, as outlined in Plaintiff's Second Supplemental Application and Motion for Attorney's Fees and Costs.  Moreover, Plaintiff's billing entries suffer from many infirmities: they include charges for work relating to claims that were dismissed; charges for work on an unsuccessful motion for preliminary injunction, to prevent spoliation of evidence, and for

2

expedited discovery; charges for general work on the case that were not discounted for unsuccessful claims as plaintiff alleges it has done;[2] charges for work not related to this litigation, such as communications with donors, media, communications and requests to Congress, and research for claims and issues not in this case; and charges related to descriptions that are vague and lack sufficient detail and that constitute block, double, and excessive billing. To assist with identification of these issues, and as more specifically discussed below, the United States is filing, concurrently with this opposition, plaintiff's billing records with color coding to highlight the various non-compensable or questionable categories.  To avoid confusion, the United States is not renumbering the exhibits and is referring to the original ECF pagination.

A summary of the amounts that should be completely disallowed is as follows:

| Color | Type | Amount |
|---|---|---|
| Orange | Entries related solely to claims on which plaintiff was unsuccessful | $67,570.88 |
| Red | Entries related to the unsuccessful Motion for Preliminary Injunction and Expedited Discovery to Prevent Further Spoliation of, and to Preserve and Restore, Evidence and Discoverable Information (DKT 83) | $150,712.90 |
| Green | Non-litigation related issues | $81,840.00 |
| Gray | Dispute between present and former counsel over fees | $15,870.80 |
| Purple | Entries that lack sufficient detail to determine whether they are case related and/or reasonable | $48,251.10 |
| Color Combinations for 100% | Entries that should be | $50, 288.80 |

---

[2] In fact, on at least some occasions, plaintiff actually made an upward adjustment where it appears a reduction was in order. *See, e.g.*, DKT 165-20 at 137, 151; DKT 165-21 at 115, 116.

| reduction | completely disallowed for a combination of reasons, as indicated by the different coding colors shown in those entries | |
|---|---|---|

Additionally, the entries highlighted in yellow reflect instances where plaintiff has not taken any reduction to account for work on unsuccessful claims.  Further, plaintiff's billings contain several other infirmities, such as double, block, and excessive billing.  These deficiencies require an across-the-board reduction of 33% on the remaining bills after disallowing the specific color-coded items.

<u>Background</u>

Plaintiff, an applicant seeking tax-exempt status under 26 U.S.C. § 501(c)(3), filed its original Complaint in this matter on May 21, 2013, seeking: monetary damages from the named individual defendants pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for alleged violations of its rights under the First Amendment to the United States Constitution; equitable relief, both declaratory and injunctive, against the United States and the Internal Revenue Service ("Government Defendants"), for alleged violations of its rights under the First Amendment to the United States Constitution; a determination of its tax-exempt status under 26 U.S.C. § 7428; and monetary damages against the United States, under 26 U.S.C. § 7431, for alleged violations of 26 U.S.C. § 6103.  Plaintiff filed a First Verified Amended Complaint on July 22, 2013 ("Complaint") seeking the same relief, and adding the Administrative Procedure Act (5 U.S.C. § 702, et seq.) as a ground for its original claim for declaratory and injunctive relief.  Plaintiff made numerous unsuccessful motions throughout the case, including a Motion to Stay Agency Action (DKT 60) and a Motion for Preliminary Injunction and Expedited Discovery to Prevent Further Spoliation of, and to

Preserve and Restore, Evidence and Discoverable Information (DKT 83).  In addition, plaintiff

filed numerous motions and responses to motions related to the *Bivens* claims, including a

Motion to have a Guardian Ad Litem appointed (DKT 58), Opposition to a Motion for Extension

of Time to Respond to Plaintiff's First Amended Complaint (DKT 56) and a Motion for Leave to

File Consolidated Oversized Memorandum in Opposition to Individual Defendants' Motions

(DKT 66).

       This court dismissed the claims in the Complaint by order of October 23, 2014, and

entered a final judgment.  Following a timely appeal by plaintiff, the United States Court of

Appeals for the District of Columbia Circuit, by order of August 5, 2016, affirmed in part and

reversed in part, reinstating plaintiff's claims for equitable relief (except the claim for a

determination of its tax-exempt status) against the Government Defendants and affirming the

dismissal of the claims against the individual defendants.  Because plaintiff did not prevail in its

*Bivens* claim against the Individual Defendants, it filed a petition for writ of certiorari directed

solely to that claim, which was denied on February 21, 2017.  *True the Vote, Inc. v. Lerner*, 137

S. Ct. 1068 (2017).  On January 16, 2018, the parties entered into a Consent Order that resolved

the remaining issues in this case, except for the issue of attorneys' fees.

       Plaintiffs filed an Application and Motion for Attorneys' Fees, Costs, and Expenses

under EAJA (DKTs 161 and 162) on February 20, 2018. On May 30, 2019, the Court issued its

Memorandum Opinion and Order granting in part and holding in abeyance in part plaintiff's

motion.  The Court granted plaintiff's motion to the extent that it seeks a finding that plaintiff is

entitled to attorneys' fees and costs under EAJA and ordered plaintiff to file a supplemental

submission with evidence supporting the reasonableness of its requested attorney and non-

attorney billing rates and revised billing records separating all time entries by timekeeper; the

United States was allowed to file a response, if any to plaintiff's submission.  (DKT 161).

Plaintiff filed its Notice of Compliance with Court Order (DKT 165) and a Second Supplemental

Application and Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to

Justice Act (DKT 166), which requests costs and fees incurred since May 30, 2019, to comply

with the Court's Order.

      The Notice of Compliance includes approximately 550 pages of billing descriptions.

These bills contain numerous hours charged for activities that should not be reimbursed.  And

while plaintiff claims that "reductions were made to Foley's and PILF's (prior counsel for

plaintiff) billing records for inadvertent charges for unsuccessful claims, media relations charges,

fundraising, or other non-legal work," (DKT 165-1 at fn 10) plaintiff's bills still contain

numerous non-reimbursable entries, or at least entries that require a reduction.

Discussion

I.     <u>Plaintiff has not established the but-for causation for entitlement to an enhanced rate for all of its requested attorney and non-attorney fees.</u>

      In its May 30, 2019 Order, the Court concluded that "the plaintiff is entitled to an award

of attorneys' fees calculated at prevailing market rates pursuant to the bad faith enhancement to

the EAJA."  Memorandum Opinion, p. 22 (DKT 162).  Because plaintiff did not establish that

but for the pre-litigation bad faith found by the Court it would have incurred all of its requested

fees, as required by the Supreme Court,[3] and in fact the Court specifically found that the United

---

[3] The Supreme Court has stated the test as "a but-for test: The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct."  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (citations omitted); *see also Lu v. United States*, 921 F.3d 850 (9th Cir. 2019) (recent case applying the *Goodyear* but-for analysis to a bad-faith enhancement in an EAJA case).

States' conduct during the litigation was substantially justified and not in bad faith, the United

States is filing a Motion for Partial Reconsideration concurrently with this response.  The United

States' Motion for Partial Reconsideration is relevant here because plaintiff's supplemental

filings have only requested plaintiff's attorney and non-attorney fees based on prevailing market

rates.  If the United States prevails in whole or in part on its Motion for Partial Reconsideration,

however, the applicable billing rate for most of the fees in plaintiff's request would be limited to

the statutory cap, plus inflation, under EAJA.  That would substantially reduce the amount of the

award for plaintiff's attorneys' fees and costs in this case.

II.   The Court should use the LSI *Laffey* Matrix to determine comparable market rates in this
      case should it find that plaintiff is entitled to an enhanced rate for any of its requested
      fees.

        If the Court ultimately determines that plaintiff is entitled to an enhancement of any of its

requested attorney and non-attorney billing rates to comparable market rates, the United States

does not contest that, *in this* case, the Court should use the LSI *Laffey* Matrix to determine those

rates.  As plaintiff correctly points out in its Notice of Supplemental Authority (DKT 166), the

D.C. Circuit recently rejected the use of the "USAO II Matrix" in establishing the comparable

market rate for fees in the District of Columbia.  *DL v. District of Columbia*, 924 F.3d 585, 591-

93 (D.C. Cir. 2019).  Further, although plaintiff submitted declarations with its supplemental

filings, they are too flawed to be of use: they are too limited in number of responses, are too

conclusory to be able to establish a comparable market rate, and do not establish that the

declarants' listed work was done in comparable cases.[4]  Plaintiff concedes that the declarations

---

[4] The Court should not consider the declarations of Cleta Mitchell and James Bopp, Jr., as they
are the attorneys of record for plaintiff in this case.

are problematic as it does not argue for fees in the amounts set forth in the declarations, but instead argues for use of the LSI *Laffey* matrix.  *See* Memorandum of Points and Authorities in Support of Plaintiff's Notice of Compliance with Court Order, pp. 15, 18-19 ("Plaintiff's Memo") (DKT 165).  Thus, the Court should not consider the declarations in determining the comparable market rate.

Contrary to the request on pages 16-19 of Plaintiff's Memo, however, the Court should not find that use of the LSI *Laffey* Matrix is dispositive proof of prevailing market rates for all attorneys' fee petitions.  Although the D.C. Circuit found that a party seeking fees could rely on the LSI *Laffey* matrix to meet its initial burden to support its request with specific evidence, it also found that the opposing party could challenge the use of that matrix by either submitting contrary evidence concerning the comparable market rate or challenging the matrix's methodology.  *DL v. District of Columbia*, 924 F.3d at 593-94.  That the United States does not make any of these arguments here is of no consequence.  Current D.C. Circuit law would preclude any finding, as urged by plaintiff, that use of the LSI *Laffey* matrix is *dispositive* proof of prevailing market rates for all attorneys' fee petitions.  Accordingly, the Court should decline plaintiff's request to make such a finding.

III.   <u>Many of plaintiff's specific bills suffer from infirmities that require significant reductions in the amount claimed by plaintiff, and plaintiff is not entitled to recover amounts paid to correct its previous filing.</u>

Plaintiff makes two separate requests for attorneys' fees and costs under the EAJA.  Its first application is for $1,982,109.56.  Plaintiff's second supplemental request included bills for $39,253.20 that were incurred for it to comply with the Court's Order because it had not satisfied its burden of showing the reasonableness of its attorney and non-attorney requested billing rates.  The second application should be denied outright, because it relates to activities caused by

8

plaintiff's failure to show the reasonableness of its attorney and non-attorney requested billing rates, and the first application should be greatly reduced because it requests fees for work pertaining to claims or issues plaintiff lost or for work unrelated to and unnecessary for this litigation.  Thus, plaintiff still has not shown the reasonableness of its bills.

Plaintiff's requests total more than $2 million.[5]  This is a high amount for a case that did not go to trial nor involve much discovery.  A district court may reduce the reasonable hours awarded if "the number [of compensable hours] claimed by counsel included hours that were unnecessary, irrelevant and duplicative."  *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994).  The EAJA authorizes courts to award "reasonable attorney fees."  28 U.S.C. § 2412(d)(2)(A).  The general rule under the EAJA is that "plaintiffs 'bear the burden of demonstrating the reasonableness of each element of their fee request.'"  *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 28 (D.D.C. 2013) (quoting *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996)).  "Degree of success is 'the most critical factor' in evaluating the reasonableness of a fee award."  *Loving v. IRS*, 2014 WL 12778284, at *7 (D.D.C. Sept. 19, 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  Also, fees may be awarded only for "time reasonably expended" on the litigation.  *Porter v. Astrue*, 2013 WL 5978623, at *5 (D.D.C. Nov. 12, 2013).  Time that was wasted or otherwise unnecessary for the matter should be excluded.  *Id.*  The Court has wide discretion in reducing fee requests; it may reduce

---

[5] Plaintiff has had four different law firms representing it in this case: The Public Interest Legal Foundation ("PILF"), The Center for Constitutional Jurisprudence ("CCJ"), Foley & Lardner ("Foley"), and The Bopp Law Firm, PC ("BLF").  Multiple attorneys from each firm billed time to the case.  PILF, CCJ, and Foley represented plaintiff initially; plaintiff discharged them, and it hired BLF to take over.  Plaintiff does not explain what, if anything, was done to avoid duplication of efforts.  It is plaintiff's burden to show that its attorneys worked efficiently.  Plaintiff has not done so.

the requested hours by a percentage or may reduce particular line items in the fee request.  *Id*.

Fees must be sufficiently documented to be allowed.  *Fabi Construction v. Sec. of Labor*, 541

F.3d 407, 411 (D.C. Cir. 2008).  Supporting documentation "must be of sufficient detail and

probative value to enable the court to determine with a high degree of certainty that such hours

were actually and reasonably expended."  *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per

curiam) (emphases omitted) (quoting *United Slate, Tile & Composition Roofers v. G & M

Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n. 2 (6th Cir.1984)); *see Role Models Am., Inc. v.

Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004).

As discussed below, plaintiff has not carried its burden.  It has included numerous hours

for work that is wholly unrelated to this action and on claims on which it has not prevailed.  In

addition, the vague descriptions behind many of plaintiff's fees do not allow the Court to analyze

reasonableness or even the claim to which they relate.  Moreover, plaintiff makes no attempt to

discount or explain the potentially double, triple, or even quadruple billing performed by the four

firms it retained, let alone the multiple billing within each firm for the same work—performed by

law clerks, associates, and partners—that is envisioned in the case law.

A. <u>Plaintiff should not recover for fees spent on its Plaintiff's Notice of
Supplemental Authority as it incurred those costs to correct deficiencies in its
earlier filing.</u>

This Court held that plaintiff's request for its attorneys' fees and costs was insufficient to

determine the reasonableness of the rates it is requesting for the attorneys and non-attorneys who

performed services in this case.  (DKT 162 at 24.)  The Court also reserved its ruling as to

whether the number of hours expended and costs incurred in this matter are reasonable until after

the plaintiff has provided additional information supporting the reasonableness of its requested

attorney and non-attorney billing rates.  (DKT 162 at fn 6.)  In short, the Court found, "what the

plaintiff has submitted "is not enough . . . ."  (DKT 162 at 24.)  Plaintiff then filed its Notice of

10

Compliance with Court Order (DKT 165) in an attempt to provide the information the Court requested, expending $39,253.20, which it then requested in a Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses. These fees and costs in its Second Supplemental Application should not be awarded because plaintiff is solely to blame for the fact that additional work was required to create the Second Supplemental Application. If plaintiff had submitted the correct information the first time, these fees would not have been incurred. The government should not be forced to fund plaintiff's failure to submit the appropriate material. The Court should therefore disallow the entire amount. *See McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 162 (D.D.C. 2017) (where the Court "agree[d] about the need to 'draw a line to avoid plaintiffs extending their claims for fees ad infinitum.'") (quoting *F.S. v. District of Columbia*, 307 F.R.D. 28, 29 (D.D.C. 2014)); *Means v. District of Columbia*, 999 F. Supp. 2d 128, 136 n.7 (D.D.C. 2013) ("However, fees on fees on fees, as may be pursued by the plaintiff for the successful adjudication of the current claim, may be too removed to be compensable."); *see also F.S. v. District of Columbia*, 307 F.R.D. at 29 (resolving a motion for reconsideration, which may not be used to "raise arguments or present evidence that could have been raised prior to the entry of judgment" (quoting *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012)).

      B. <u>Plaintiff has failed to exclude hourly billings related to claims or motions it has not prevailed upon and failed to make adjustments to amounts that partially relate to claims it has not prevailed upon.</u>

While it is true that this Court has found that plaintiff is the overall prevailing party under EAJA, plaintiff also requested various forms of judicial relief that it failed to obtain from the Court and therefore has not prevailed upon. For example, this Court dismissed plaintiff's *Bivens* (Count III) and wrongful inspection (Count IV) claims, *True the Vote, Inc. v. IRS*, 71 F. Supp. 3d

219, 229-35 (D.D.C. 2014), the D.C. Circuit affirmed the dismissal of those claims, *True the Vote, Inc. v. IRS*, 831 F.3d 551, 556-58 (D.C. Cir. 2016), and the Supreme Court denied a petition for writ of certiorari regarding the *Bivens* claim, *True the Vote*, 137 S. Ct. at 1068.[6]  In addition, plaintiff's § 7428 claim became moot shortly after it filed its complaint,[7] and plaintiff filed a Motion to Stay Agency Action, *i.e.* publication of information, which was denied and not appealed.  While plaintiff claims that it reduced, or eliminated, hours related to these activities (DKT 151-16), it has not successfully done so.

Entries related solely to plaintiff's unsuccessful claims are highlighted in Orange and total $67,570.88.  This figure only includes amounts where the entire entry is shaded Orange.[8]

Further, there are substantial numbers of entries referencing work performed on tasks that are not broken down by claims, and there is no way to know how much of the work or task was related to unsuccessful claims.  Plaintiff has not taken any reduction in these entries to account for work on unsuccessful claims.  These entries are highlighted in yellow and are too numerous to be able to indicate the dollar value at issue.

---

[6] Any fees and expenses related to the *Bivens* claim would be the responsibility of the Individual Defendants as that claim was not against the United States.  However, because that claim was dismissed, those amounts are not recoverable at all.

[7] Plaintiff's claim under 26 U.S.C. § 7428 for a determination of its tax-exempt status (Count I) became moot, prior to any Court action on the claim, when the IRS granted plaintiff's application soon after it filed its complaint.  Plaintiff ultimately conceded that this claim was moot, and the Court dismissed it.  *True the Vote*, 71 F. Supp. 3d at 226.  Plaintiff did not appeal the dismissal of that claim.

[8] Even in entries where plaintiff has taken a reduction for unsuccessful claims, plaintiff has not adequately documented the adjustments.  Although there is no way to verify whether the adjustments have accurately been made, the United States has not highlighted those entries in the attached billing records.

Plaintiff also inappropriately claims significant fees related to filing a Motion for

Preliminary Injunction and Expedited Discovery to Prevent Further Spoliation of, and to

Preserve and Restore, Evidence and Discoverable Information that the Court denied.  Not only

did it deny the Motion, but the Court stated that, "despite the general distrust of the defendants

expressed by the plaintiff, the Court has no factual basis to concur with that distrust. . . ." (DKT

97 at 6) and "the plaintiff has presented no credible evidence to support its allegations that the

defendants have spoliated evidence or its suspicion that they will do so in the future," (DKT 97

at 10).  As a result, plaintiff should not be able to collect attorneys' fees related to these

activities. Entries related to this unsuccessful motion are highlighted in Red and total

$150,712.90.  This figure only includes amounts where the entire entry is shaded Red.

        C.   Plaintiff is not entitled to collect for work that is wholly unrelated to this litigation.

Plaintiff's fee application also warrants reductions for the numerous entries that are

unrelated to this case and non-compensable as a matter of law.  *Doe v. Rumsfeld*, 501 F. Supp. 2d

186, 193 (D.D.C. 2007) (denying plaintiffs' motion for attorneys' fees and costs due to, in part,

their attempt to bill for work unrelated to the litigation on which they prevailed).  For example,

plaintiff is still including hours that plaintiff's attorneys spent on various media- and publicity-

related activities even though plaintiff represents that it reduced such activities from its billing

records.[9]  Time spent on media relations are not compensable.  *Role Models*, 353 F.3d at 973

---

[9] *See, e.g.,* DKT 165-17 at 55 (*Washington Examiner* article), 61 (press release); DKT 165-18 at 5 ("video regarding consent order"); 12 ("Review script"); DKT 165-20 at 24 ("Press/Sound Bites"), 25 (press release), 26 (media), 99 (Website and email with press), 107 ("marketing firm"), 159 ("media inquiries"); DKT 165-21 at 7 (website to post pleadings), 10 (publicizing litigation and website to post pleadings), 30 (call with *Baltimore Sun*), 32 ("circulate letter to reporters"), 33 ("questions from reporters"), 35 ("appear on programs"), 43 (media interviews), (continued...)

("In this circuit, the government cannot be charged for time spent in discussions with the press.").

Plaintiff also includes hours for other tasks that were unrelated to the advancement of this litigation, including but not limited to: a variety of purely Congressional matters,[10] including testimony of plaintiff's principal before Congress[11] and plaintiff's pursuit of an ethics complaint against Maryland Representative Elijah Cummings;[12] communications with then-Attorney General Jeff Sessions;[13] training on "Working with Experts" for a paralegal;[14] finding contact information for White House officials;[15] research about "IRS's statutory authority";[16] communications with plaintiff's donors;[17] time regarding repealing the Johnson amendment;[18] change of venue for an Ohio case to Washington, D.C.;[19] unfiled claims and motions;[20] FOIA

---

(… continued)
45 (forward declarations to reporters), 49 ("Judicial Watch press release"), 68 ("press statement"), 84 ("*Washington Post* article").

[10] *See, e.g.,* DKT 165-21 at 11, 24, 25, 28, 50, 57-59.

[11] *See, e.g.,* DKT 165-21 at 57-59, 121.

[12] *See, e.g.,* DKT 165-21 at 25, 26, 28, 29, 30, 50, 51, 63, 117.

[13] *See, e.g.,* DKT 157-17 at 10, 12, 13, 17, 22, 47, 49, 50.

[14] *See,* DKT 165-21 at 76.

[15] *See* DKT 165-17 at 10.

[16] *See* DKT 165-20 at 6 ("Congressional grant of authority to IRS in Code"), 150.

[17] *See* DKT 165-17 at 26, 28-30, 35, 56; DKT 165-21 at 27.

[18] *See* DKT 165-17 at 47.

[19] *See* DKT 165-21 at 26.

requests;[21] fees related to switching attorneys;[22] and interviewing with the DOJ and FBI regarding the separate IRS criminal investigation.[23]  Also, plaintiff includes billing for clerical work and general administrative tasks, such as researching local rules and court admission, which are not attributable to the current litigation.  *Missouri v. Jenkins*, 491 U.S. 274 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them.").  Plaintiff is not only attempting to bill clerical tasks at the rate of a paralegal, but also the rate of an attorney.[24]

Plaintiff goes as far as to ask the Court to order the government to subsidize plaintiff's attorneys' arguments over how the fees in this case should be split, including the filing of a lien (DKT 142).  As this is unrelated to any claim in this case, and the United States was not involved in the dispute over fees, those hours should be disregarded.  Such activities are non-compensable.  *Role Models*, 353 F.3d at 973 ("The government should not have to pay for administrative matters relating to the formal relationship between Role Models and its attorneys.").

---

(… continued)

[20] *See, e.g.,* (Conspiracy) DKT 165-20 at 24, 25, 148, 149 156, 157, 216; (Privacy Act) DKT 165-20 at 4, 149, 150, 161, 163; (Unfiled Supplemental Authority) DKT 165-20 at 235, 236

[21] *See, e.g.,* DKT 165-20 at 17, 96, 98, 234, 279; DKT 165-21 at 28-30, 46, 59, 117.

[22] *See, e.g.,* DKT 165-20 at 91-94, 128, 146, 148, 212, 213, 215, 229, 291.

[23] *See* DKT 165-21 at 27, 28, 45, 47, 58, 90, 117.

[24] *See, e.g.,* DKT 165-20 at 90 (Local Rules and ECF), 113, 114, 265-266 (application for admission to the D.C. Circuit), 268 (redo of D.C. Circuit application).

In short, despite assuring the Court that it has excluded non-compensable hours (DKT 151-16; 165-10 at fn 4), plaintiff still includes numerous hours in its billing for activity wholly unrelated to the litigation of this case.  Entries unrelated to the advancement of the litigation of plaintiff's claims are highlighted in Green and total $81,840.00.  Entries related in particular to the fee dispute between plaintiff's former counsel and current counsel are highlighted in Gray and total $15,870.80.  These figures only include amounts where the entire entries are shaded either Green or Gray.

    D.  <u>Plaintiff's submission contains numerous vague billing descriptions, which are insufficient to ascertain reasonableness.</u>

Plaintiff's billing descriptions are also vague.  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433; *see also Abusamhadaneh v. Taylor*, 2013 U.S. Dist. LEXIS 7451 at *63-64 (E.D. Va. Jan. 17, 2013) (Cacheris, J.) (reducing fee award for insufficiently descriptive documentation of tasks).  "Fee applicants bear the heavy obligation to present well-documented claims."  *Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986) (citations and internal quotations omitted).  Billing entries "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended."  *Role Models*, 353 F.3d at 970 (quoting *In re Olson*, 884 F.2d at 1428).

The court in *Role Models*, after noting that several of the entries there included descriptions such as "research and writing for appellate brief," and other "time spent in teleconferences or meetings," held that "[s]uch generic entries [were] inadequate to meet a fee applicant's 'heavy obligation to present well-documented claims.'"  *Id.* (quoting *Kennecott Corp.*, 804 F.2d at 767); s*ee also In re Meese*, 907 F.2d 1192, 1204 (D.C.Cir. 1990) (reducing an award because "[t]he time records maintained by the attorneys, paralegals and law clerks are

16

replete with instances where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed"); *In re Olson*, 884 F.2d at 1428 ("[T]here are multitudinous billing entries, included among other entries for a particular day, that wholly fail to state, or to make any reference to the subject discussed at a conference, meeting or telephone conference.").

Time entries that are so vague that a court "cannot determine with certainty whether the activities they purport to describe were … reasonable" include: (1) entries that provide "little or no reference to the substance of the work claimed," such as "read cases" or "document review"; (2) entries that make "no mention … of the subject matter of a meeting, telephone conference or the work performed," such as "conference call with [co- counsel]" and "telephone call re: general update"; and (3) entries that contain "vague and cryptic designations," such as "Discussed strategy w/ [co-counsel]" and "conference with [co-counsel] regarding strategy." *Cobell v. Norton*, 407 F. Supp. 2d 140, 158-59 (D.D.C. 2005).

A large number of plaintiff's time entries are vague and fail to provide sufficient information to establish the reasonableness and appropriateness of plaintiff's fee request. The entries "lack adequate detail" and "do not adequately describe the legal work for which the client is being billed." *Role Models*, 353 F.3d at 971. D.C. Circuit precedent makes clear that such vague entries make "it impossible for the court to verify the reasonableness of the billings, as to the necessity of the particular service or the amount of time expended on a given legal task." *Id.*

Many of the billing records filed in support of plaintiff's application lack sufficient detail to determine whether they are case related and/or reasonable. These entries have been highlighted Purple and amount to $48,251.10. This figure only includes amounts where the entire entry is shaded Purple.

E.  <u>Plaintiff engages in numerous other improper billing practices that would warrant an additional across-the-board percentage reduction.</u>

*1.  Plaintiff's attorneys use block billing*

Plaintiff's Notice of Compliance includes approximately 550 pages of billing descriptions.  Many of these descriptions contain so-called "block billing", an accounting technique whereby lawyers aggregate multiple smaller tasks into a single "block" entry, for which a single time value is assigned.  Block billing time entries are too vague for a court to make a reasoned determination of whether the time spent on tasks was appropriate.  Courts have held that "[i]nadequate documentation practices like block billing or lumping are 'a proper basis for reducing a fee because they prevent an accurate determination of the reasonableness of the time expended in a case.'"  *Ebersole v. Kline-Perry*, 2012 U.S. Dist. LEXIS 138659, at *14-15 (E.D. Va. Sept. 26, 2012) (Cacheris, J.) (internal citations omitted) (citing cases and noting that courts apply a 10% to 25% block billing reduction).

Here, a review of the records shows a number of instances of block billing.  For example, a PILF attorney billed 1.7 hours for "Work on response to gov't motion. Email with MG re: same. Write sections on Payne v. U.S."  (DKT 165-25 at 77).  Another PILF attorney billed 8 hours for "JAV- R complaint/arguments, r cases and law, outline mootness section, r ems. C NHJ re arguments."  Similarly, a BLF attorney charged 3.9 hours for "Research/outline for argument for special factor for higher rates; research need for individual declarations (as opposed to one from supervising attorney/partner); research Laffey LSI vs. USAO rates."  DKT 165-17 at 69.  Lead counsel from Foley frequently billed in blocks with lengthy decriptions.  *See, e.g.,* DKT 165-21 at 15 (5.1 hours); 17 (4.7 and 3.9 hours); 35 (8.5 hours); 40 (11.8 hours), 41 (8.9 hours), and 42 (12.9 hours).

18

*2.  Plaintiff's bills may contain duplicative billing*

Moreover, because of the vague descriptions included, it is impossible to determine

whether multiple attorneys are billing for the same work.  *Copeland v. Marshall*, 641 F.2d 880,

891 (D.C. Cir. 1980).  If two different attorneys were to bill a client for the same work, "there

would be a windfall of 100%."  *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*,

982 F. Supp. 2d 56, 62 (D.D.C. 2013), *dismissed sub nom. Elec. Privacy Info. Ctr. v. U.S. Dep't*

*of Homeland Sec.*, No. 13-5113, 2014 WL 590977 (D.C. Cir. Jan. 21, 2014), and *dismissed sub*

*nom. Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 13-5372, 2014 WL 590996

(D.C. Cir. Jan. 21, 2014); *Copeland*, 641 F.2d at 891 ("Hours that are not properly billed to one's

client also are not properly billed to one's adversary pursuant to statutory authority.")  Counsel

seeking attorneys' fees must subtract from their fee requests hours that are "excessive, redundant

or otherwise unnecessary."  *Weisberg v. DOJ*, 745 F.2d 1476, 1499 (D.C. Cir. 1984); *see also*

*Pennsylvania v. Del. Valley Citizen's Council for Clean Air*, 478 U.S. 546, 554 n.2, 566-67

(1986) (affirming fee reductions of 48% and 33.33% for work that was "unnecessary,

unreasonable or unproductive").  As the court in *Role Models* explained, the "[d]uplication of

effort is another basis on which [the] hours seem excessive."  *Role Models*, 353 F.3d at 972

(citing *Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755,

761 (D.C. Cir. 1999)).  In *Role Models*, several entries indicated that multiple attorneys billed

time for the same activity.  *Role Models*, 353 F.3d at 947.  The court in *Role Models*, giving the

attorneys the benefit of the doubt, pondered whether something about the case required such

duplicative billing.  However, given the sparseness of the descriptions in the records, the court

had "no basis for concluding that hours that appear to be excessive and redundant are in fact

anything other than excessive and redundant."  *Id.*

Here, plaintiff has made no effort to account for any potential double-billing even though many of its entries reflect multiple people working on the same task.

### 3.   Many of plaintiff's billing entries are excessive

In addition to multiple attorneys performing the same task, plaintiff's lawyers also spent far too much individual time on projects.  Similar to *Role Models*, other cases have also concluded that excessive billing comparable to this case should result in significant fee reductions.  In one case, the court found that 1,104 hours spent drafting eight documents (or 138 attorney hours on each document) to be "excessive."  *Freeport Partners, L.L.C. v. Allbritton*, No. Civ. A. 04-2030 (GK) at *14 (D.D.C. March 13, 2006); *see also Michigan v. EPA*, 254 F.3d 1087, 1093 (D.C. Cir. 2001) (holding that 20 hours spent on a reply brief was reasonable but nonetheless reducing a claim for 90 hours on an opening brief by 50%); *American Petroleum v. EPA*, 72 F.3d 907, 917 (D.C. Cir. 1996) (reducing a claim for 120 hours on a reply brief by 50%, finding that 60 hours was a reasonable amount of time); *Masonry Masters, Inc. v. Barr*, No. 86-201 1992 LEXIS 158 (D.D.C. Jan 9, 1992) (reducing a claim for 68.1 hours on a reply brief by 70%); *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 16 (D.D.C. 2000) (reducing a claim for 44 hours spent on a legal memorandum by 50%). Here, in June/July 2015, multiple attorneys worked on a motion to remand filed in the D.C. Circuit, charging multiple hours.  *See, e.g.,* DKT 165-20 at 125-127, 276-277; DKT 165-21 at 61-62, 99, 138.

In addition, the amount of time plaintiff seeks to recover for time spent preparing for oral argument and attending a moot are also excessive.  As recognized in *Role Models*, "there is a point at which thorough and diligent litigation efforts become overkill."  *Role Models*, 353 F.3d at 972 (citing *Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991)). Here multiple attorneys billed time for attending the oral argument (including multiple attorneys

from the same firm) and multiple moots, while only one attorney presented the argument.  DKT

165-19 at 5, 6; DKT 165-20 at 138, 139 ("Attend oral argument. Debrief after. Lunch with

client"), 285, 286 ("DC Circuit oral argument; lunch with client after"); DKT 165-21 at 64, 102,

126, 139.

Conclusion

Based on the foregoing, the Court should disallow or greatly reduce plaintiff's requested

attorneys' fees and costs.  The United States suggests that $414,534.48 should be completely

disallowed for the specific infirmities identified above that are 100% non-compensable, and

there should be a 33% across-the-board discount of the remaining fees.

DATED: June 27, 2019                Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
Tax Division

s/ Joseph A. Sergi
JOSEPH A. SERGI (DC 480837)
Senior Litigation Counsel
U.S. Department of Justice, Tax Division
555 4th Street, N.W., JCB 7207
Washington, D.C. 20001
(202) 305-0868; (202) 307-2504 (FAX)
Joseph.A.Sergi@usdoj.gov

LAURA M. CONNER (VA 40388)
STEVEN M. DEAN (DC 1020497)
JEREMY N. HENDON (OR 982490)
Trial Attorneys
U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C.  20001
(202) 514-2000

Of Counsel:
JESSIE K. LIU
United States Attorney

ATTORNEYS FOR THE UNITED STATES

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TRUE THE VOTE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 1:13-cv-00734-RBW

**CERTIFICATE OF SERVICE**

I hereby certify that on June, 27, 2019, the *UNITED STATES' OPPOSITION TO PLAINTIFF'S NOTICE OF COMPLIANCE WITH COURT ORDER, PLAINTIFF'S SECOND SUPPLEMENTAL APPLICATION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT, AND PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY* was filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

s/ *Joseph A. Sergi*
JOSEPH A. SERGI

22