# United States District Court
## For the District of Columbia

| | | |
|---|---|---|
| **True the Vote, Inc.**; | | |
| | *Plaintiff*, | **Civil Case No.** <u>1:13-cv-000734-RBW</u> |
| *v.* | | |
| **Internal Revenue Service, et al.**; | | **Plaintiff's Reply to Defendants' Opposition to Plaintiff's Notice of Compliance with Court Order** |
| | *Defendants.* | |

## Plaintiff's Reply to Defendants' Opposition to Plaintiff's Notice of Compliance with Court Order

# Table of Contents

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Time Expended Wholly on "Unsuccessful Claims" (Color-Coded Orange)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Time Expended Pursuing a Preliminary Injunction and Discovery (Color-Coded Red) is Compensable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    Many Billing Record Entries Marked by Defendants as Green "Non-litigation" Entries Are Compensable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.    Catherine Engelbrecht, as a Representative of TTV, Was Asked to Testify Before Three Separate Congressional Hearings.. . . . . . . . . . . . . . . . . . . . 8

            a.    On February 6, 2014, Congress held a hearing about the IRS targeting scandal, and the attorney's fees billed for these hearings are compensable.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            b.    In 2015, the Senate held confirmation hearings for Loretta Lynch, and the attorney's fees billed for these hearing are not compensable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            c.    In 2017, Congress held hearings about the repeal or modification of the Johnson amendment, and the attorney hours billed for these hearings are not compensable.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.    The attorney's fees billed for the potential DOJ and FBI interviews following the 2014 Congressional hearings are compensable.. . . . . . . . . 9

        3.    The attorney's fees billed for the preparation and filing of the OCE complaint against Elijah Cummings are compensable.. . . . . . . . . . . . . . 10

        4.    The attorney's fees billed for preparing and submitting various FOIA requests are compensable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5.      The attorney's fees billed for developing and conferencing about Judicial Watch's Continuity of Government theory are compensable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6.      The attorney's fees billed for research on the IRS's statutory authority are compensable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7.      The attorney's fees billed for researching and writing a letter urging settlement to then-Attorney General Jeff Sessions are compensable.. . . . . 12

D.    TTV Has Deducted for Time Spent in Interaction Between Firms... . . . . . . . . . . 12

E.    Records Lacking Sufficient Detail (Color-Coded Purple). . . . . . . . . . . . . . . . . . 13

F.    Reductions for Work on Unsuccessful Claims (Color-Coded Yellow). . . . . . . . . 14

G. General Objections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# Table of Authorities

*DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329 (D.C. Cir.1998). . . . . . . . . . . . . . . . . . 4

*Arizona v. Maricopa County Med. Soc'y*, 578 F. Supp. 1262 (D. Ariz. 1984). . . . . . . . . . 7

*Bennett v. Castro*, 74 F.Supp.3d 382 (D.D.C. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Boehner v. McDermott*, 541 F.Supp.2d 310 (D.D.C. 2008). . . . . . . . . . . . . . . . . . . . . . . 7

*Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . 4

*Campbell v. District of Columbia*, 202 F. Supp. 3d 121(D.D.C. 2016). . . . . . . . . . . . . . . 7

*Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Heller v. District of Columbia*, 832 F. Supp. 2d 32 (D.D.C. 2011).. . . . . . . . . . . . . . . . . 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hernandez v. Chipotle Mexican Grill, Inc.*, 257 F.Supp.3d 100 (D.D.C. 2017). . . . . . . . 17

*Int'l Ctr. for Tech. Assessment v. Vilsack*, 602 F.Supp.2d 233 (D.D.C. 2009) . . . . . . . . 15

*McKenzie v. Kennickell*, 645 F. Supp. 437 (D.D.C. 1986). . . . . . . . . . . . . . . . . . . . . . . 13

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . 18

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Nat'l Black Police Ass'n v. D.C. Bd. of Elections & Ethics*, 168 F.3d 525, 528 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Open Communities Alliance v. Carson*, No. 17-2192, 2018 U.S. Dist. LEXIS 106303 (D.D.C. June 15, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pigford v. Vilsack*, 613 F.Supp.2d 78 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Robinson v. District of Columbia*, 341 F.Supp.3d 97 (D.D.C. 2018) . . . . . . . . . . . . . . . 13

*Role Models Am., Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004). . . . . . . . . . . . . . . . . 17

*SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr.*, No. 112-1904, 2016 U.S. Dist. LEXIS 85115, (D.D.C. June 30, 2016). . . . . . . . . . . . . . . . . . . . . . . . . 17

*Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005) . . . . . . . . . . . . . 3

*Spanski Enters. v. Telewizja Polska S.A.*, 278 F.Supp.3d 210 (D.D.C. 2017).. . . . . . . . . 17

*Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Webb v. Bd. of Educ.*, 471 U.S. 234 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# Introduction

On June 27, Defendants filed a Memorandum (ECF No. 169, "**Defs.' Opp.** ") denoted as in opposition to (1) Plaintiff's Supplemental Motion for Attorney's Fees (ECF No. 166)[1]; (2) Plaintiff's Notice of Compliance (ECF No. 165) with this Court's Order (ECF No. 161),[2] and; (3) Plaintiff's Notice of Supplemental Authority (ECF No.167).[3,4] Plaintiff timely replied to the opposition to the supplemental motion for fees and requested and was granted leave to file a reply in support of its Notice of Compliance, (ECF No. 171). After requesting and securing an extension (ECF No. 174), Plaintiff now timely files its Reply to Defendants' Opposition to its Notice of Compliance, and addresses the points Defendants raise therein.[5]

---

[1]Plaintiff has addressed Defendants' criticisms in this regard in a Reply Supporting its Second Supplemental Motion for Attorney's Fees (ECF No.172).

[2]The Court's Memorandum and Order (ECF No. 161, 162) granted in part and held in abeyance in part Plaintiff's Application and Motion for Attorneys' Fees, Costs and Expenses Under the EAJA (ECF No. 151) and required further submission supporting the billing rates and revised billing records separating time entries by timekeeper. Those submissions accompanied Plaintiff's Notice of Compliance (ECF No.165).

[3]Defendants take no issue with the substance of Plaintiff's analysis of *DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019), but concede only that LSI Matrix rates are the applicable rates here. Defs.' Opp. . at 7-8. The parties agree that under *DL*, the LSI Matrix is still presumptively valid evidence and the USAO II Matrix is not. *See* Plaintiff's Notice of Supplemental Authority (ECF No. 167) at 5. But deeming the LSI Matrix to be only presumptive proof of market rates virtually guarantees continuing battles—"second litigations" over fees—fought with data that is difficult to obtain from objective and relevant sources and is generally rejected as proof of the prevailing D.C. federal market rates. Mem. Supp. Notice of Compliance (ECF No. 165-1) at 16-19. Defendants claim that *DL* invites this continuing battle. Defs.' Opp. . at 8. But while the court in *DL* invited the lower court to "take further evidence if necessary," 924 F.3d at 593, it left little room for alternatives to the LSI Matrix. *Id.* at 593 (rejecting alternative data used by the District to demonstrate rates); *id.* at 594 (rejecting "IDEA submarket" rates).

[4]The Opposition is, in fact, almost exclusively an opposition to Plaintiff's Motion for Attorney's Fees, filed nearly 18 months ago. (ECF No. 151 (Feb. 20, 2018)). It included more than 500 pages of color-coded objections to time entries on the case for each of the firms involved. *See infra.*

[5]Defendants insert the *Goodyear* "but-for test" argument featured in their Motion for Partial Reconsideration (ECF No. 170). Defs.' Opp. . at 6-7, n. 3. Here, they essentially concede that under *Goodyear*, "pre-litigation bad faith" would justify the bad faith enhancement for all the fees incurred, *id.,* but claim that "plaintiff did not establish" this as a matter of fact in this case. *Id.* This is incorrect. As trier of fact, this Court found that "the defendants' underlying conduct," i.e., the "conduct that gave rise to the litigation itself," "does in fact rise to the level of pre-litigation bad faith sufficient to justify . . . attorney's fees . . . pursuant to the bad faith enhancement." Defs.' Opp. . (ECF No. 162) at 20. *See also id.* at 20-21 (noting violation of Defendants' clear . . . judicially-imposed duty . . . not to engage in viewpoint discrimination as required by the First Amendment.").

Defendants categorize specific objections as follows: (1) time expended wholly on claims Plaintiff has not prevailed on ("unsuccessful claims") (color-coded orange); (2) time expended in part on unsuccessful claims (color-coded yellow); (3) time expended on the unsuccessful Motion for Preliminary Injunction and Expedited Discovery (ECF No. 83) (color-coded red); time expended on non-litigation issues (color-coded green); (4) time insufficiently described to determine compensability or reasonableness (color-coded purple), and: (5) time spent on inter-firm matters unrelated to the prosecution of the case (color-coded grey). In addition, Defendants make generalized claims of double- and block-billing for which they request an across-the-board 33% reduction.

Plaintiff's current counsel ("**BLF**") evaluated each and every one of the color-coded objections, recording the result in comment form. Counsel for each of the other firms reviewed the objections and the comments for their respective firms' entries. BLF counsel finalized and tallied the resulting reductions for the color-coded objections as follows:

| Firm | Orange | Red | Green | Gray | Purple | Yellow |
|------|--------|-----|-------|------|--------|--------|
| **PILF** | $51,648.53 | $ 0.00 | $15,723.95 | $ 0.00 | $10,282.86 | $64,592.13 |
| **Foley** | $ 3,905.40 | $ 0.00 | $17,823.60 | $ 0.00 | $ 1,080.80 | $ 8,153.11 |
| **CCJ** | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,197.28 |
| **BLF** | $ 2,301.80 | $ 0.00 | $ 6,361.10 | $14,998.15 | $ 34.20 | $ 0.00 |
| **Total** | $57,855.73 | $ 0.00 | $39,908.65 | $14,998.15 | $11,397.86 | $73,942.52 |

**Total Deductions $ 198,102.91**

Color Combinations were evaluated for reductions for objection indicated. Any reductions are accounted for within the individual color in the table above.

2

## I. Discussion

### A.   Time Expended Wholly on "Unsuccessful Claims" (Color-Coded Orange)[6]

Defendants claimed to have located entries related solely to plaintiff's unsuccessful claims valued at a total of $67,570.88. After a good-faith and informed evaluation, Plaintiff's counsel agrees to a reduction of $57,855.73 for time expended on unsuccessful claims by all TTV attorneys. *See supra*. The majority of the $9700 difference between Defendants' and Plaintiff's evaluations lies within PILF's time entries, and is explained by Defendants calling for reductions for time that was not expended on an unsuccessful claim, *see* PILF Orange Unsuccessful Claims (Exhibit 1) at 6, 21, 22, 23, 30, 32, 33, 38, 64, 65, 67, 92, 94, 98, 108, 113, 114; for time expended on Count 1, which became moot when the IRS granted TTV's application,[7] *id.* at 39, 99, 101, 102; for time on work that was already properly apportioned, *id.* at 7, 19; for time spent reviewing other relevant cases with similar claims, *id.* at 112, or for time that was otherwise used in support of a successful claim or the Motion for Preliminary Injunction and other relief. *See id.* at 32.

---

[6]Defendants listed all objections in one copy of each firm's records. The fully-reviewed billing records (attached as Exhibits 1-13) are organized by the color-coded objections addressed and by Firm. For example, the PILF "yellow" Summary has all Plaintiff's comments to Defendants' "yellow" objections to PILF's records, but the "yellow" Summary also shows other objections, to which comments are made in that color's Summary. In short, in the "yellow" Summary, only the yellow "partial success" objections have comments/responses, even though other objections are recorded. Each Summary has the comments for that color-coded objection, and not the comments for the other objections.

[7] Defs.' Opp. . at 12, n.7. But a moot claim is not unsuccessful claim. *See Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 950 (D.C. Cir. 2005) (holding plaintiff's single, mooted claim to be the basis for "prevailing part[y]" status under the EAJA, entitling plaintiff to attorney's fees and costs); *see also Nat'l Black Police Ass'n v. D.C. Bd. of Elections & Ethics*, 168 F.3d 525, 528 (D.C. Cir. 1999) (subsequent mootness of a case does not necessarily alter the plaintiffs' status as prevailing parties).

**B.**   **Time Expended Pursuing a Preliminary Injunction and Discovery (Color-Coded Red) is Compensable.**

Defendants argue that the time spent on the unsuccessful motion for preliminary injunction and expedited discovery to preserve and restore evidence ("**PI Motion**") is not compensable. Defs.' Opp. at 13. They are incorrect. Lack of success disqualifies time spent in pursuit of *claim*, not a *motion* (and then only when the unsuccessful claim is "truly fractionable"[8]). "[A] litigant 'who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage.'" *Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1335 (D.C. Cir.1998) (quoting *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)). Plaintiff was ultimately successful in the litigation, and "plaintiff's counsel reasonably expended time on the[ ] motion[ ]." *Heller*, 832 F.Supp.2d at 55. The goal and the pursuit of the PI Motion—to preserve and recover relevant evidence—was eminently reasonable.

No one denies that the Defendant lost relevant emails and other electronically stored information ("ESI") from the hard drives of government computers, or that the loss occurred after the acts underlying this case were already the subject of litigation, or that Defendant knew of the loss and failed to disclose it for more than three years—until nine months after this litigation ensued, after receiving standard litigation hold letters and rebuffing Rule 26(f)-required discussions of ESI treatment. Pl.'s Mem. Supp. Prelim. Inj. at 4-5 (ECF No. 83-2). After learning of the loss from published reports and before seeking relief from the Court, Plaintiff's counsel sought assurances from Defendant that documents were being preserved, asked about the circumstances and scope of the loss and requested that a computer forensics expert be employed

---

[8] *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 55 (D.D.C. 2011).

to examine the computers at issue and attempt to restore the lost data. *Id.* 6-7. Defendants responded to the requests as "unwarranted attacks," denied responsibility, or committed to boilerplate "legal and ethical obligations." *Id.* at 8, 21-22. At a meet and confer Defendants refused to discuss what steps had been taken to preserve evidence, suggested that potentially relevant documents were not really evidence "yet," and confirmed that they would not consent to any forensic examination of any computers in question. *Id.* at 9. It was publicly revealed that Defendant had failed to secure the hard drives and other electronic devices used by Defendants in their official duties, *id.* at 17, 25, yet Defendants refused to even discuss what measures had been taken to preserve the electronically stored information relevant to this litigation, *id.* at 18. At the time of filing the PI Motion, Defendants remained unwilling to provide *any* information regarding the whereabouts of ESI and hard copy evidence in their possession, custody and control, or what or even whether any safeguards were in place to maintain the integrity of the ESI, hard copies or other relevant evidence. *Id.* at 23.

Even without these remarkable circumstances, filing a motion aimed at securing ESI and hard copies and seeking to recover critical "lost" ESI would be a reasonable move. Given the absence of assurances and the mounting evidence that evidence had already been lost—to ineptness or otherwise, Plaintiff's filing a well-supported and legally comprehensive motion to secure evidence was *eminently* reasonable.

And that it was denied says nothing about the reasonableness of its filing. Indeed, the PI Motion was denied in large part because the government was to do precisely what Plaintiff requested. The Court denied the Motion, finding a lack of irreparable harm because the TIGATA

had initiated[9] a "forensic investigation and recovery effort centered on the loss of the emails at issue in the plaintiff's motion," (ECF No.97) at 5,[10] and concluded that "the issuance of an injunction will not further aid in the recovery of the emails, if such recovery is possible, but will rather only duplicate and potentially interfere with ongoing investigative activities." *Id.* at 6.

## C. Many Billing Record Entries Marked by Defendants as Green "Non-litigation" Entries Are Compensable.

Fee awards under [fee-shifting statutes] are only permitted for time that was "reasonably expended on the litigation." *Webb v. Bd. of Educ.*, 471 U.S. 234, 242 (1985) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (noting compensable examples include "the drafting of the initial pleadings and the work associated with the development of the theory of the case"). However, the Supreme Court further refined that edict by finding that work performed for separate proceedings may be compensable if that work was "both useful and of a type ordinarily necessary" to achieve the result obtained in litigation. *Webb*, 471 U.S. at 243 (holding attorney's fees incurred to pursue an optional administrative hearing were not compensable because no statutory requirement required administrative remedies be exhausted prior to litigation).

---

[9]The Court sought and secured sworn explanations of any past forensic examinations and sworn assurances from the IRS guaranteeing a competent attempt at recovering and securing the emails and other ESI relevant to this case. *See*, *e.g.*, Order (July 11, 2014) (ECF No. 91).

[10]Although Defendants select a quote from the Opinion to suggest otherwise, Defs.' Opp. at 13, it was because the Court had secured assurances, including sworn statements, detailing a forensic examination "conducted by individuals with 'in-depth knowledge of investigative principles, techniques, methods, and procedures [who] have received professional investigative training'" that there was no longer a "factual basis" for Plaintiff's "general distrust." (ECF No. 97 at 13). *See id.*:

> *Accordingly*[—i.e., *because* the TIGATA investigation would be conducted with "technical special agents" with extensive expert training . . . .] despite the general distrust of defendants expressed by the plaintiff, the Court [*now*] has no factual basis to concur with that distrust, . . . and therefore concludes that the issuance of an injunction will not further aid in the recover of the emails . . . but will rather only duplicate and potentially interfere with . . . investigative activities."

Similarly, the Court found no irreparable harm based on spoliation—in large part "[b]ecause efforts to recover the emails at issue are ongoing"—and did not in any way suggest that the argument, or any other rationale for the PI Motion, was unreasonable.

This district has found work on an amicus brief was compensable because the plaintiff provided a "clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed." and a "prudent attorney would have done the same." *Boehner v. McDermott*, 541 F.Supp.2d 310, 317 n.8 (D.D.C. 2008) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1334-35 (D.C. Cir. 1982)). The *Boehner* Court agreed that the basic question regarding compensability for ancillary work is:

> Would the [ancillary work] have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in this case? Stated more simply, is it reasonable to conclude that a client would have authorized the requested sum in fees in a true attorney-client relationship?

*Boehner*, 541 F. Supp. 2d at 319 (quoting *Arizona v. Maricopa County Med. Soc'y*, 578 F. Supp. 1262, 1268 (D. Ariz. 1984)). This district has awarded fees for depositions taken in a completely separate court because the plaintiff used those deposition testimonies "to develop case strategy, to draft cross-examination questions, to determine which witnesses to call at trial, and to provide additional evidence for the jury at trial." *Campbell v. District of Columbia*, 202 F. Supp. 3d 121, 135 (D.D.C. 2016).

TTV has submitted attorneys' hours for some work that was outside the strict boundaries of work related to this matter's pleadings, briefing, and other traditional litigation efforts. Rather than being "wholly unrelated to this litigation," Defs.' Opposition, ECF No. 169 at 13, much of the time devoted to this work was specifically expended in pursuit of a successful resolution of this case. Defendants highlighted alleged "non-litigation" records in green.[11] *Id.* at 3. Among

---

[11] TTV agrees with Defendants that the time erroneously included for media-related activities, communications with TTV's donors, and strictly administrative tasks are not compensable. Defendants did not make specific objections to time on these bases, and consequently these entries are incorporated among all Summaries of Comments, attached as Exhibits 1-13, and are noted by "Deduct" in the comment.

these entries, TTV submits several large categories are wholly compensable as they fit within this district's application of *Webb*'s principal holdings.

**1. Catherine Engelbrecht, as a Representative of TTV, Was Asked to Testify Before Three Separate Congressional Hearings.**

**a. On February 6, 2014, Congress held a hearing about the IRS targeting scandal, and the attorney's fees billed for these hearings are compensable.**

Ms. Engelbrecht was invited to testify, as a representative of TTV, in front of the House Oversight & Government Reform Subcommittee on Regulatory Affairs. This hearing took place during the earliest stages of this litigation, when discovery from the IRS was being sought. This hearing involved the testimony not only of Ms. Engelbrecht, but of other representatives of conservative organizations targeted for the IRS's heightened scrutiny. The sworn testimony given at this hearing was directly relevant to the continuing development of the case strategy and was relevant to the settlement negotiations that eventually concluded in the Consent Order resolving this litigation. *See* Consent Order, ECF No. 150 at ¶¶ 17, 24. In this way, the preparation for and participation in the 2014 Congressional hearing affirmatively satisfies this district's basic requirement—any reasonable and prudent attorney would have undertaken these hours billed in order to advance her client's case. Therefore, the attorney's fees billed for this hearing, totaling $6639.20 are compensable.

**b. In 2015, the Senate held confirmation hearings for Loretta Lynch, and the attorney's fees billed for these hearing are not compensable.**

Ms. Engelbrecht was again asked to testify in the Senate confirmation hearings for then-nominee for Attorney General Loretta Lynch. While relevant to the DOJ's interactions with TTV regarding the sought-after investigation into the IRS's targeting scheme, this testimony was not

used to move the case at bar forward. Therefore, the attorney's fees billed for this hearing are not compensable. All entries related to this hearing have been marked "Deduct" in the Summary of Comments, attached as Exhibits 3-4.

      **c.   In 2017, Congress held hearings about the repeal or modification of the Johnson amendment, and the attorney hours billed for these hearings are not compensable.**

Ms. Engelbrecht was again asked to participate in hearings regarding the repeal or modification of the Johnson Amendment. While relevant to organizations like TTV, this testimony was not used to move the case at bar forward. Therefore, the attorney's fees billed for this hearing are not compensable.

      **2.   The attorney's fees billed for the potential DOJ and FBI interviews following the 2014 Congressional hearings are compensable.**

Even though TTV urged the DOJ to investigate the IRS targeting scheme, no one at the DOJ or the FBI made any efforts to do so at the earliest stages of this litigation. During the 2014 Congressional hearings, members of the subcommittee expressed incredulity that the DOJ had not reached out to any of the organizations impacted by the IRS's actions. Right after this 2014 Congressional subcommittee hearing concluded, both the DOJ and the FBI reached out to TTV's then-counsel, proposing an interview with Ms. Engelbrecht regarding the IRS's targeting scheme. Over the course of the next several months, counsel and the DOJ and FBI negotiated the terms of such an interview. TTV wanted to limit the scope of the interview to the IRS targeting scheme.[12] TTV's counsel and the DOJ/FBI could not reach an agreement on the limitation of scope of such

_____

[12] During this timeframe, TTV was also involved in a DOJ case against the State of Texas, involving requiring photo ID for voting. TTV wanted to ensure that the DOJ/FBI interviews would be contained to the instant litigation.

an interview, so the interview between Ms. Engelbrecht and the DOJ/FBI never took place. *The DOJ initially set it up as an interview about the IRS targeting scandal*, and the fact that they later declined to limit it to that should not inoculate it from being compensable as part of the litigation. Talking with the DOJ about the activities giving rise to the case is a valid pursuit of the same TTV interests pursued in the case. The work done in preparation for such an interview was directly relevant to the development of the legal strategy for this case and potential evidence to be used. Not every strategy contemplated for a case is ultimately used, but wide latitude in developing such strategy is encouraged. Development of such strategy unrelated to any specific claim is compensable, especially, like here, at relatively early stages of litigation. Therefore, the attorney's fees billed for the DOJ/FBI negotiations, totaling $20,994.90, are compensable.

3. **The attorney's fees billed for the preparation and filing of the OCE complaint against Elijah Cummings are compensable.**

On February 5, 2014, Ms. Engelbrecht submitted a complaint to the Office of Congressional Ethics ("**OCE**") against Representative Elijah Cummings. Exhibit. 14. This complaint detailed concerns TTV had about Rep. Cummings' involvement in the actions taken by various federal agencies, including the IRS actions at issue here. The OCE complaint was part of an effort to obtain more information about what other government officials or agencies were involved in the IRS's targeting scheme, and to what extent. This was vital to not only the development of the legal strategy, but was also an important attempt at discovering information that could potentially be used as evidence in this litigation. The hours counsel devoted to the OCE complaint were reasonable and prudent expenditures of time spent toward advancing this case. Therefore, the attorney's fees billed for the OCE complaint, totaling $11,967.50, are compensable.

4.   **The attorney's fees billed for preparing and submitting various FOIA requests are compensable.**

At various times during this litigation, counsel submitted FOIA requests to various

government agencies, in an effort to obtain information directly relevant to the case at hand. As

detailed in the OCE complaint regarding Rep. Cummings, these FOIA requests were made to

"seek answers and root causes regarding the executive branch agencies' sudden 'interest' in [Ms.

Engelbrecht's] family." OCE Complaint, Ex. 14 at 6. While those FOIA requests were not made

to the IRS, they were directly relevant to the question of whether the IRS's targeting scheme

developed into a coordinated targeting scheme involving many agencies. Again, the hours

devoted to the FOIA request were expended in an effort to build evidence for the ultimate

resolution of this case. Therefore, the attorney's fees billed for filing the FOIA requests, totaling

$6217.10, are compensable.

5.   **The attorney's fees billed for developing and conferencing about Judicial Watch's Continuity of Government theory are compensable.**

During the course of this litigation, thousands of emails by Lois Lerner, then-Director of the

EO Division of the IRS, were lost. After that revelation, TTV's counsel explored what the

government might keep in terms of back-ups where we could recover the "lost" data. During this

time frame, Judicial Watch, a non-partisan educational foundation, dedicated to promoting

transparency, accountability and integrity in government, raised concerns about the challenges

such "lost" emails pose to the continuity of government (i.e., the general principle for

government data backup so it can continue to operate in the event of a catastrophe). TTV's

counsel expended a reasonable amount of hours conferring with Judicial Watch on this theory, to

determine if this theory could assist the legal strategy utilized in this case. Several entries refer to

Dr. Pawlowski, who is an expert in this field. Development of such strategy unrelated to any specific claim is compensable, especially, like here, during the discovery phase of the litigation. Therefore, the attorney's fees billed related to the Judicial Watch continuity of government theory, totaling $5738.40, are compensable.

### 6. The attorney's fees billed for research on the IRS's statutory authority are compensable.

What authority the IRS has, and more importantly, does not have, is foundational to this litigation. TTV's counsel expended a reasonable amount of time researching various specific questions of the IRS's valid statutory authority, in an effort to develop the case strategy for question central to this litigation. Therefore, the attorney's fees billed related to researching the IRS's authority, totaling $2347.50, are compensable.

### 7. The attorney's fees billed for researching and writing a letter urging settlement to then-Attorney General Jeff Sessions are compensable.

In June, 2017, TTV's counsel sent a letter to then-Attorney General Jeff Sessions. This letter gave the Attorney General both the history of this litigation as well as the IRS's response to date. This letter was sent in an effort to urge settlement of the case at bar. Since the Department of Justice was responsible for representing the Defendants in this case, such a letter was a reasonable and appropriate use of counsel's time expended in order to reach a final resolution of this case. Therefore, the attorney's fees billed related to the letter sent to Attorney General Sessions, totaling $4543.30, are compensable.

### D. TTV Has Deducted for Time Spent in Interaction Between Firms.

TTV changed counsel in early 2017. Time spent by new counsel "getting up to speed" is inevitable, and time spent consulting with former counsel for this purpose is compensable when

reasonable in amount. *See*, *e.g.*, *McKenzie v. Kennickell*, 645 F. Supp. 437, 450, n. 18 (D.D.C. 1986). BLF agrees that time spent between firms on matters unrelated to the litigation, even if in furtherance of the client's interest, are not attributable to the case and therefore not compensable under a fee-shifting scheme. BLF counsel has reviewed Defendants' objections in this regard and agrees to a reduction of $14,998.15 in fees for work done for TTV involving former counsel.

**E.   Records Lacking Sufficient Detail (Color-Coded Purple)**

Defendants contend that $48,251.10 in billing records "lack sufficient detail to determine whether they are case related and/or reasonable." Defs.' Opp. at 17. After evaluation, comment, and review by the time-keeping firms, TTV's counsel agrees, in good faith, to $11,397.86 in reductions for this reason.

The vast majority of instances of insufficient detail that Defendants cite are in PILF records, and of the 218 PILF time entries listed, most are either "clearly sufficiently specific," or while "closer to the line, [are] yet nevertheless reasonable." *Bennett v. Castro*, 74 F.Supp.3d 382, 405 (D.D.C. 2014). "'[A] fee application need not present "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."''" *Robinson v. District of Columbia*, 341 F.Supp.3d 97, 121 (D.D.C. 2018) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327, (D.C. Cir. 1982) (in turn quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980). Examples of "sufficiently specific" entries are "R attachments to the complaint," Exhibit 8 at 1, "Fill in blank citations in DOJ response draft," *id.* at 5; "C[onference] . . . re schedule going forward," *id.* at 38; "C[onference with co-counsel] re needs for complaint and ongoing RS [Research]," *id.* at 77; "Review Cleta's draft letter to opposing counsel re: meet and confer, rereview local rules," *id.* at 94; "R[eview]

13

dockets and filings in related cases," *id.* at 112. If not "clearly sufficiently specific," entries such

as these are "sufficiently detailed," as is an entry that "states that the attorney sent an e-mail

regarding a phone call with the opposing party. It is difficult to imagine that such an e-mail, or

the underlying call itself, would not be properly billable to a client." *Bennett*, 74 F.Supp.3d at

405. Entries "seem ambiguous at first glance but make sense in context." *Id.* Indeed, Defendants

seem to often affirmatively *ignore* context[13] to find an entry to be puzzling. *See*, *e.g.*, Exhibit 8 at

56-59 (objections to time entries surrounded by explanatory entries to which Defendants do not

object. After reviewing each and every objection in a good faith review by BLF and PILF

lawyers, Plaintiff submits to a reduction of $10,282.86 to the time expended by PILF lawyers.[14]

## F.   Reductions for Work on Unsuccessful Claims (Color-Coded Yellow)

Defendants object to over 1300 of PILF's time entries as not having been reduced "to

account for work on unsuccessful claims."[15] Defs.' Opp. at 12. Defendants argue that because the

entries "referenc[e] work performed on tasks that are not broken down by claims, . . . there is no

way to know how much of the work . . . was related to unsuccessful claims." Time records are

never completely divided by claim—that does not make them suspect. Defendants use this

pretense to assert that nearly 40% of PILF's total time entries should be reduced "to account for

work on unsuccessful claims," *id.*, instead of making a good faith attempt to target time that *was*

*actually spent* on unsuccessful claims. Plaintiff's counsel had already made a good-faith effort to

---

[13]Because Defendants used the records separating time by timekeeper (submitted in response to the Court's Order), the context is slightly more difficult to follow than it would be in a purely chronologically arranged billing record. But it would strain credulity to conclude that the context could not be ascertained from the records employed.

[14]Defendants also claim 14 entries in Foley records suffer from similar insufficiency. After good faith review, Plaintiff's counsel agrees to $1080.80 in entries to be deducted. Defendants found one entry in BLF records as insufficient, and on review, counsel finds the entry to be clear, but in error and agrees to a reduction of $34.20.

[15]Defendants similarly suspect 166 of Foley's time entries failed to take proper reductions.

reduce for partial success by first no-charging time explicitly described as being spent on an unsuccessful claim. Counsel then reviewed the docket, the briefing record, and the actual briefing[16] to establish a proxy for the time expended on the unsuccessful claims and then applied the resulting reductions to the non-claim-specific work. Plaintiff's Mem. Supp. Mot. Attys' Fees (ECF No.151-8) at 24. At bottom, Defendants argue that all non-claim-specific time *must* be reduced. They fail to calculate the value of these reductions (they're "too numerous to be able to indicate the dollar value at issue"), and compile them with other, general objections to request an across-the-board reduction. Their position is incorrect as a matter of law and the "too numerous to count" reductions are almost completely unwarranted.

Defendants' objections ignore the reality that when there are unsuccessful and successful claims in the same suit, plaintiffs will have spent a good deal of time "'working on other issues not directed to any of the [unsuccessful] claims specifically, but which was necessary to plaintiffs' successes.'" *Pigford v. Vilsack*, 613 F.Supp.2d 78, 85 (D.D.C. 2009) (citation omitted). "Moreover, [a plaintiff] likely would have had to perform certain litigation-related tasks whether or not it brought the unsuccessful claims." *Id.* (citing *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988)). Put another way, to evaluate non-claim-specific time expenditures is to ask whether the time spent on a task would be less (or not expended at all) if the unsuccessful claim was not part of the suit. *Ustrak*, 851 F.2d at 988-989. This means, of course, that not all non-claim-specific time on litigation in general or on briefing in particular is affected by the presence of a claim that proved unsuccessful. Certain tasks would be done regardless of the claims made and they and other tasks would take no less time if the unsuccessful claim had not

---

[16] *See Int'l Ctr. for Tech. Assessment v. Vilsack*, 602 F.Supp.2d 228, 233 (D.D.C. 2009) (adopting such an approach).

been brought. A large majority of Defendants' "yellow" partial-success objections target tasks that would be performed regardless of whether the unsuccessful claims had been brought and time that is unaffected by any unsuccessful claim.

Nearly every page of Defendants' "yellow" objections has at least one objection based on their flawed view of the law, and most pages have three or more. *See*, *e.g.*, PILF Yellow Summary of Comments Exhibit 11 at 1 (call with client and lead attorneys regarding "[i]ssues affecting filing the complaint"); *id.* at 3 (addressing service issues); *id.* at 7 (rs on rules, effecting service); *id.* at 12 (editing briefs); *id.* at 15, (reviewing order, begin work on framing an appeal); *id.* at 17 (briefing tasks). *See also id.* at 18-42; 44-47; 51; 53-66; 75; 79-80; 85-90; 94-99; 101-118; 124-130; 132-136; 141; 146; 149-152; 155-156; 161; 166-176; 179-182; 184; 188-196; 198-200. *Every* page of the yellow partial-success objections to Foley and CCJ time records has instances of this flaw. Exhibits 12, 13, respectively. Notwithstanding this misdirected and overbroad attack on the billing records, BLF counsel evaluated and commented in writing on every one of Defendants' "yellow" objections. Those evaluations were reviewed in turn by the former counsel recording the time. In a good faith attempt to resolve the issue of attorney's fees and bring the matter to a close, TTV's attorneys have agreed, in good faith, to $73,942.52 in reductions for time spent in part on unsuccessful claims.

## G. General Objections

Defendants ask for an across-the-board reduction of 33% *after* deducting for their specific objections. They claim this general reduction is justified by "block-billing," Defs.' Mem. at 18, possible duplicative billing, *id.* at 19, and "many" excessive billing entries. *Id.*

Block-billing "is not per se impermissible." *Open Communities Alliance v. Carson*, No. 17-2192, 2018 U.S. Dist. LEXIS 106303, at *7 (D.D.C. June 15, 2018). "Where it prevents the court from assessing the reasonableness of time expended, it has caused courts to reduce fee awards. *Spanski Enters. v. Telewizja Polska S.A.*, 278 F.Supp.3d 210, 220 (D.D.C. 2017). It is where vague and "crowded" entries are "so numerous and/or unintelligible as to preclude the court's ability to assess the reasonableness of the time expended" that block billing warrants an across-the-board reduction. *Id.* at 221. Defendants point to nine instances among more than 500 pages of entries, a frequency which would not warrant fixed a reduction even if the instances actually precluded assessment of the reasonableness of time. But the offending entries "describe complementary tasks that would seamlessly occur and for which disaggregation would be difficult." *Open Communities Alliance*, 2018 U.S. LEXIS 106303 at *8. "[E]ntries that are not limited to a single task . . . [but] involve one filing" are not the sort of "block-billing" that justifies a reduction. *SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr.*, No. 112-1904, 2016 U.S. Dist. LEXIS 85115, at *14 (D.D.C. June 30, 2016). Plaintiff's counsel "simply provide significant detail about related tasks and the defendants 'appear[ ] to conflate entries in which plaintiff[s'] counsel has provided greater detail with . . . block billing." *Open Communities Alliance*, 2018 LEXIS 106303 at *8 (quoting *Hernandez v. Chipotle Mexican Grill, Inc.*, 257 F.Supp.3d 100, 112 (D.D.C. 2017). The entries do not lump together work on unrelated matters," *id.* at *9, and, in short, the entries are "'of sufficient detail and probative value' . . . to show that the time billed is reasonable. *Id.* at *10 (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004).

Defendants point to no instances of "duplicative billing" but ask the Court to treat the records as though they had. Defs.' Opp. at 19. Simply implying that duplicative billing is lurking, hidden in the records, does not justify a specific reduction, let alone an across-the-board one.

Defendants parade instances of "excessive" time on briefing *in other cases* but fail to demonstrate the same in *this case*. They claim that "multiple attorneys" spent "multiple hours" on a motion, while the record they cite shows a relatively modest amount of time spent on cross motions (i.e, drafting a response and a reply as well as a motion). Defendants end with the claim that Plaintiff's counsels' "thorough and diligent litigation efforts [were] overkill." They provide no basis for evaluating the time that was actually spent on the moot court and argument and cite time that is unrelated (and was deducted). We are left with a subjective criticism, one to which the Ninth Circuit has quipped "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

### Conclusion

Defendants request misdirected and overbroad reductions to Plaintiff's fee request, based on misstatements and misunderstanding of the applicable law. Notwithstanding this, Plaintiffs' counsel have reviewed and evaluated every one of their objections. In a good faith effort to bring the matter to a close, Plaintiff has reduced its request by $ 198,102.91 as more particularly explained *supra*. The total in fees, expenses and costs requested was previously $2,021,362.76. *See* ECF No. 166 at 3. After reductions explained herein, the total requested is $1,823,259.85, subject to change to reflect the fees and expenses expended for this Reply.

July 29, 2019                                Respectfully submitted,

                                             /s/ James Bopp, Jr.
                                             James Bopp, Jr. (D.C. Bar No. CO0041)
                                             Courtney Turner Milbank*
                                             Jeffrey P. Gallant*
                                             Melena S. Siebert*
                                             THE BOPP LAW FIRM, P.C.
                                             The National Building
                                             1 South 6th Street
                                             Terre Haute, Indiana 47807
                                             (812) 232-2434
                                             (812) 235-3685 (fax)
                                             *Attorneys for Plaintiff*
                                             *Admitted *pro hac vice*

# Certificate of Service

I hereby certify that on July 29, 2019 , I caused the *Reply to Defendants' Opposition to Plaintiff's Notice of Compliance with Court Order* and exhibits thereto in the above-captioned matter to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

/s/ James Bopp, Jr.
James Bopp, Jr.