# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRUE THE VOTE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:13-cv-00734-RBW |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## UNITED STATES' OPPOSITION TO PLAINTIFF'S THIRD SUPPLEMENTAL APPLICATION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT

Plaintiff True the Vote submits its latest in a line of requests for attorneys' fees. The fees requested now are for fees that Plaintiff's attorneys have generated in submitting other requests for fees. This fees-for-fees request has become too attenuated to permit recovery on this latest request. And if the Court is inclined to award anything on this latest round of fees, Plaintiff's billing records submitted with the latest motion suffer from the same deficiencies that have appeared in Plaintiff's previously submitted billing records.

## BACKGROUND

A review of Plaintiff's successive requests for fees shows how attenuated its present request has become. Plaintiff filed its first request for fees in the amount of $1,933,888.06 on February 20, 2018. Plaintiff supplemented its request on April 18, 2019, seeking an additional $103,049.20. These filings contained incomplete declarations and requested reimbursement for several inappropriate categories. The United States originally opposed those requests on March 6, 2018, arguing, in part, that Plaintiff's application should be denied because there was a

1

lack of detail in Plaintiff's billing records. Specifically, the United States argued that Plaintiff charged for unsuccessful claims, charged for non-compensable activity (e.g., fundraising, media, and other non-legal work), potentially double billed, included vague billing record descriptions, and charged for other questionable items. (ECF No. 152 at 17-19.)

On May 30, 2019, the Court issued its Memorandum Opinion and Order granting in part and holding in abeyance in part Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act. (ECF Nos. 161 and 162.) The Court granted the Motion to the extent that it sought a finding that Plaintiff is entitled to attorneys' fees and costs under the Equal Access to Justice Act. The Court, however, did not reach whether Plaintiff had met its burden to establish the reasonableness of its request and specifically reserved "its ruling as to whether the number of hours expended and costs incurred in this matter are reasonable until after the Plaintiff has provided additional information supporting the reasonableness of its requested attorney and non-attorney billing rates." (ECF No. 162 at 24 n.6.) Since Plaintiff had not satisfied its burden of showing the reasonableness of its attorney and non-attorney requested billing rates, the Court gave Plaintiff an opportunity to supplement the record to fix its shortcomings.

In response, Plaintiff filed a supplemental request on June 19, 2019 in the amount of $1,982,109.56, in which it purported to correct the errors in its earlier filing identified by the Court and the United States. At the same time it agreed to reduce some of its request in response to the United States' arguments, Plaintiffs also requested $39,253.20 in additional fees it expended in correcting their inadequate brief. Contrary to Plaintiff's assertion that it had reduced its billing records to eliminate fees "for unsuccessful claims, media relations charges, fundraising, or other non-legal work" (ECF No. 165-11 at 31), an initial review of the records

showed that numerous unreasonable entries still remained. As a result, the United States reviewed Plaintiff's billing entries at length to determine whether Plaintiff's amended request for its fees was reasonable and had eliminated all non-compensable entries. It had not. Despite being given a second bite at the fee apple, Plaintiff continued to include numerous non-compensable amounts in its newly submitted bills. As a result, on June 27, 2019, the United States filed its Memorandum in Opposition to Plaintiff's Supplemental Motion for Attorney Fees, Notice of Compliance and Notice of Supplemental Authority. In its memorandum, the United States objected to and provided color-coded copies of Plaintiff's revised billing records submitted in accordance with the Court's Order. The color-coded categories presented more detailed listings of the objections raised in the United States' response to Plaintiff's initial application. Given Plaintiff's continued failure to adequately establish the reasonableness of its fee request and adjust its records to remove non-compensable entries from its request, the United States needed to highlight the specific entries in each category that were non-compensable. The United States also objected to Plaintiff's supplemental request for fees to fix its errors as the United States should not be financially responsible for the mistakes made by Plaintiff's counsel.

In response, Plaintiff filed an Unopposed Motion for Leave to File a Reply. Nowhere in Plaintiff's Motion (or during the conference with counsel for the United States seeking consent to file the Motion) did Plaintiff state that the United States' Opposition should be struck or contend that the United States waived its right to file an opposition to the specific billing records. Instead, Plaintiff argued that, "In the interest of justice, TTV seeks leave from this Court to reply to these specific allegations, which could have an enormous impact on the fees awarded under the EAJA." (ECF No. 171.) The Court granted Plaintiff's request and gave Plaintiff until July 15, 2019 to file its reply. (Minute Entry July 1, 2019.) Plaintiff subsequently requested another

extension of time to file its Reply because "Counsel for TTV need[ed] additional time to complete their review of the specific objections and to evaluate and respond to the same." (ECF No. 174 at 1.) Once again, Plaintiff did not contend that the United States' Opposition should be struck or that the arguments therein were otherwise untimely. (ECF No. 174.) On July 29, 2019, 32 days after the United States filed its Opposition, Plaintiff filed its Reply. In this Reply, Plaintiff admitted that it had failed to eliminate many non-compensable fees that were included in the United States' color-coded objections and accordingly reduced its fee request by almost $200,000.

Then, after seeking permission to file a reply to address the United States' Opposition, filing an extension of time to fully address the United States' Opposition, and reducing its request because of the merits of the United States' opposition, Plaintiff, for the first time, argued that the United States' Opposition should be stuck as untimely and that the United States has waived any right to object to Plaintiff's revised billing records. If Plaintiff had thought the United States' Opposition should be struck, the time to ask for it was before Plaintiff asked the Court for a reply.[1] Instead, Plaintiff worked hours on its Reply and only then drafted and filed its Motion to Strike, which, if granted, would have obviated the need for any work on the Reply.

Now, Plaintiff has filed yet another request for fees – in the amount of $163,042.38 – for the work undertaken since its last supplemental filing – i.e., the Reply and Motion to Strike. This request contains many of the infirmities of their earlier bills, including block billing and inconsistent entries. Moreover, Plaintiff not only seeks compensation for items on which it has

---

[1] In fact, the time for Plaintiff to mention that it was going to contest any discussion of billing records was when it met and conferred with the United States for its extension request. Resolving this issue in advance would have saved both parties considerable time and effort.

not prevailed, but seeks recovery for motions that seek alternative relief, which would result in double recovery.

## DISCUSSION

A. <u>Plaintiff should not recover for fees as they are far too removed from the original adjudication.</u>

This Court held that Plaintiff's request for its attorneys' fees and costs was insufficient to determine the reasonableness of the rates it is requesting for the attorneys and non-attorneys who performed services in this case. (ECF No. 162 at 24.) The Court also reserved its ruling as to whether the number of hours expended and costs incurred in this matter are reasonable until after Plaintiff provided additional information supporting the reasonableness of its requested attorney and non-attorney billing rates. (ECF No. 162 at 24 n6.) In short, the Court found that what Plaintiff has submitted "is not enough . . . ." (ECF No. 162 at 23.) Plaintiff then filed its Notice of Compliance with Court Order (ECF No. 165) in an attempt to provide the information the Court requested, expending $39,253.20, which it then requested in a Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses. When the United States opposed that fee request, Plaintiff incurred further fees in defending them, including moving to strike the opposition. None of those supplemental fees and costs should be awarded because Plaintiff is solely to blame for the fact that additional work was required to create the supplemental applications. If Plaintiff had submitted the correct information the first time, these fees would not have been incurred. The government should not be forced to fund Plaintiff's failure to submit the appropriate material. The Court should therefore disallow the entire amount. *See McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 162 (D.D.C. 2017) (where the Court "agree[d] about the need to 'draw a line to avoid plaintiffs extending their claims for fees ad infinitum.'") (quoting *F.S. v. District of Columbia*, 307 F.R.D. 28, 29 (D.D.C. 2014)); *Means v.*

5

*District of Columbia*, 999 F. Supp. 2d 128, 136 n.7 (D.D.C. 2013) ("However, fees on fees on fees, as may be pursued by the plaintiff for the successful adjudication of the current claim, may be too removed to be compensable."). "[A]t a certain point fees-on-fees litigation unnecessarily protracts litigation and becomes so far removed from the original adjudication that the prevailing parties' claim may be too attenuated." *Means*, 999 F. Supp. 2d at 136 n.7.

In any event, if the Court were to award fees on fees, it should be in proportion to any reduction the Court makes to Plaintiff's requested fees for the merits litigation. *See Comm'r, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 61 (D.D.C. 2013), *dismissed sub nom. Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 13-5113, 2014 WL 590977 (D.C. Cir. Jan. 21, 2014), *and dismissed sub nom. Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 13-5372, 2014 WL 590996 (D.C. Cir. Jan. 21, 2014) ("This Court will therefore award EPIC the same percentage of fees for fee litigation as it does for fees on the merits."); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 241 (D.D.C. 2012) (awarding only 5.3% of fees sought for litigating the merits, and then "[a]pplying that same 5.3% figure to Judicial Watch's fees on fees request"); *see also Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 31 (D.D.C. 2013) ("At some point, the time attorneys expend to unsuccessfully advocate a higher award must be borne by the attorneys themselves.").

B. <u>Plaintiff has engaged in numerous improper billing practices.</u>

1. *Plaintiff's supplemental bills are vague.*

Plaintiff's billing descriptions are vague. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S.

6

424, 433 (1983); *see also Abusamhadaneh v. Taylor*, 2013 U.S. Dist. LEXIS 7451 at *63-64 (E.D. Va. Jan. 17, 2013) (Cacheris, J.) (reducing fee award for insufficiently descriptive documentation of tasks). "Fee applicants bear the heavy obligation to present well-documented claims." *Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986) (citations and internal quotations omitted). Billing entries "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989)).

The court in *Role Models*, after noting that several of the entries there included descriptions such as "research and writing for appellate brief," and other "time spent in teleconferences or meetings," held that "[s]uch generic entries [were] inadequate to meet a fee applicant's 'heavy obligation to present well-documented claims.'" *Id.* (quoting *Kennecott Corp.*, 804 F.2d at 767); s*ee also In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (reducing an award because "[t]he time records maintained by the attorneys, paralegals and law clerks are replete with instances where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed"); *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) ("[T]here are multitudinous billing entries, included among other entries for a particular day, that wholly fail to state, or to make any reference to the subject discussed at a conference, meeting or telephone conference.").

Time entries that are so vague that a court "cannot determine with certainty whether the activities they purport to describe were … reasonable" include: (1) entries that provide "little or no reference to the substance of the work claimed," such as "read cases" or "document review"; (2) entries that make "no mention … of the subject matter of a meeting, telephone conference or

Case 1:13-cv-00734-RBW   Document 181   Filed 09/18/19   Page 8 of 12

the work performed," such as "conference call with [co- counsel]" and "telephone call re: general update"; and (3) entries that contain "vague and cryptic designations," such as "Discussed strategy w/ [co-counsel]" and "conference with [co-counsel] regarding strategy." *Cobell v. Norton*, 407 F. Supp. 2d 140, 158-59 (D.D.C. 2005).

As with its earlier fee requests, a large number of Plaintiff's time entries are vague and fail to provide sufficient information to establish the reasonableness and appropriateness of Plaintiff's fee request. The entries "lack adequate detail" and "do not adequately describe the legal work for which the client is being billed." *Role Models*, 353 F.3d at 971. D.C. Circuit precedent makes clear that such vague entries make "it impossible for the court to verify the reasonableness of the billings, as to the necessity of the particular service or the amount of time expended on a given legal task." *Id.* For example, Kaylan Philips' bills, which total $13,595.40, are for activities such as government objections, next steps and review opposition. (ECF No. 180-7 at page 1 of 1.)

2. *Plaintiff's bills appear to contain duplicative and inconsistent billing.*

Because of the vague descriptions included, it is impossible to determine whether multiple attorneys are billing for the same work. *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980). If two different attorneys were to bill a client for the same work, "there would be a windfall of 100%." *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 982 F. Supp. 2d at 62; *Copeland*, 641 F.2d at 891 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.") Counsel seeking attorneys' fees must subtract from their fee requests hours that are "excessive, redundant or otherwise unnecessary." *Weisberg v. DOJ*, 745 F.2d 1476, 1499 (D.C. Cir. 1984); *see also Pennsylvania v. Del. Valley Citizen's Council for Clean Air*, 478 U.S. 546, 554 n.2, 566-67

(1986) (affirming fee reductions of 48% and 33.33% for work that was "unnecessary, unreasonable or unproductive"). As the court in *Role Models* explained, the "[d]uplication of effort is another basis on which [the] hours seem excessive." *Role Models*, 353 F.3d at 972 (citing *Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999)). In *Role Models*, several entries indicated that multiple attorneys billed time for the same activity. *Role Models*, 353 F.3d at 947. The court in *Role Models*, trying to give the attorneys the benefit of the doubt, pondered whether something about the case required such duplicative billing. However, given the sparseness of the descriptions in the records, the court had "no basis for concluding that hours that appear to be excessive and redundant are in fact anything other than excessive and redundant." *Id.*

Taking a look at the billings, it is clear that Attorneys Bopp, Gallant and Siebert are apparently doing the same work. For example, on July 3, 2019, all three attorneys bill for reviewing the draft Reply. Here, Plaintiff has made no effort to account for or reduce any potential double-billing, even though many of its entries reflect multiple people working on the same task. It also is unclear why one of Plaintiff's attorneys reasonably could claim fees for reviewing a final draft of the Reply on the day after it was filed. (ECF No. 180-2 at page 4 of 29 (showing time billed for the review on July 30, when the Reply had been filed the day before).)

Additionally, multiple attorneys attending the same event, such as a conference call, have billed different numbers of hours. Presumably, if they were on the phone with each other, they should have billed the same amount of time. *See, e.g.*, 6/14/19 conference call between Bopp (.6 hours) and Siebert (.2 hours); 6/17/19 conference call between Bopp (.9 hours) and Gallant (.2 hours); 6/17/2019 call between Bopp (.9 hours), Gallant (.5) and Siebert (.5 hours); 7/2/19 call between Bopp (.8 hours) and Siebert (.2 hours).

9

Moreover, Plaintiff is seeking fee reimbursement on both the Reply to the Application and the Motion to Strike the government's opposition. Not only has the Court not ruled on these motions, if Plaintiff were to win its Motion to Strike, it cannot collect fees for drafting the Reply as it was unnecessary.

3. *Many of Plaintiff's billing entries are excessive.*

In addition to multiple attorneys performing the same task, Plaintiff's lawyers also billed for far too much individual time on projects. Similar to *Role Models*, other cases have also concluded that excessive billing comparable to this case should result in significant fee reductions. In one case, the court found that 1,104 hours spent drafting eight documents (or 138 attorney hours on each document) to be "excessive." *Freeport Partners, L.L.C. v. Allbritton*, No. Civ. A. 04-2030 (GK) at *14 (D.D.C. March 13, 2006); *see also Michigan v. EPA*, 254 F.3d 1087, 1093 (D.C. Cir. 2001) (holding that 20 hours spent on a reply brief was reasonable but nonetheless reducing a claim for 90 hours on an opening brief by 50%); *American Petroleum v. EPA*, 72 F.3d 907, 917 (D.C. Cir. 1996) (reducing a claim for 120 hours on a reply brief by 50%, finding that 60 hours was a reasonable amount of time); *Masonry Masters, Inc. v. Barr*, No. 86-201 1992 LEXIS 158 (D.D.C. Jan 9, 1992) (reducing a claim for 68.1 hours on a reply brief by 70%); *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 16 (D.D.C. 2000) (reducing a claim for 44 hours spent on a legal memorandum by 50%). Here, four attorneys spent a combined 261 hours to reply to a fee opposition.

4. *Plaintiff has erroneously billed for administrative tasks.*

Plaintiff includes billing for clerical work and general administrative tasks, such as time regarding the filing of courtesy copies with the Court. *Missouri v. Jenkins*, 491 U.S. 274 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who

performs them."). Plaintiff is not only attempting to bill clerical tasks at the rate of a paralegal, but also the rate of an attorney.

Plaintiff also submits a separate bill in the amount of $1,113.00 for LexisNexis research and $562.23 for printing color copies of the exhibits. It is not clear what this work is for and why 3 minutes of research varies from $6.00 (on 6/15/2019) to $255.00 (on 7/30/2019) or why $562.23 worth of copies were necessary. There are also two entries, totaling $246.00, that are for nothing at all.

## CONCLUSION

Based on the foregoing, the Court should deny completely or greatly reduce the fees and costs requested in Plaintiff's Third Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to Justice Act.

DATED: September 18, 2019                Respectfully submitted,

                                         RICHARD E. ZUCKERMAN
                                         Principal Deputy Assistant Attorney General
                                         Tax Division

                                         s/ Joseph A. Sergi
                                         JOSEPH A. SERGI (DC 480837)
                                         Senior Litigation Counsel
                                         U.S. Department of Justice, Tax Division
                                         555 4th Street, N.W., JCB 7207
                                         Washington, D.C. 20001
                                         (202) 305-0868; (202) 307-2504 (FAX)
                                         Joseph.A.Sergi@usdoj.gov

                                         LAURA M. CONNER (VA 40388)
                                         STEVEN M. DEAN (DC 1020497)
                                         JEREMY N. HENDON (OR 982490)
                                         Trial Attorneys
                                         U.S. Department of Justice, Tax Division
                                         555 4th Street, N.W.
                                         Washington, D.C. 20001
                                         (202) 514-2000

Of Counsel:
JESSIE K. LIU
United States Attorney

                              ATTORNEYS FOR THE UNITED STATES