# United States District Court
## For the District of Columbia

| | | |
|---|---|---|
| **True the Vote, Inc.**; | *Plaintiff*, | **Civil Case No.** 1:13-cv-000734-RBW |
| v. | | |
| **Internal Revenue Service, et al.**; | *Defendant*s. | |

## Reply in Support of Plaintiff's Third Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to Justice Act

# Table of Contents

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A. TTV's Motion to Strike Was Proper and Does Not Foreclose Fee Recovery for
          Other Appropriate Work.
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B. This Court Did Not Order TTV To "Correct" its Billing Records. . . . . . . . . . . . . . . . . 4

      C. TTV's Billing Practices Were Proper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          1.      TTV's Billing Records Provide Sufficient Detail.
          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          2.      TTV's Billing Records Are Not Duplicative or Inconsistent.. . . . . . . . . . . 7

          3.      TTV's Billing is Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          4.      TTV Has Not Erroneously Billed for Administrative Tasks. . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Introduction

Plaintiff, True the Vote, Inc., requested an award of $163,042.38 in fees, costs, and expenses in *Plaintiff's Third Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to Justice Act*, ECF No. 180.[1] With the Third Supplemental Application, TTV's request for attorney's fees, costs, and expenses incurred in pursuing a statutory fee award totals $2,145,151.94,[2] sought under 28 U.S.C. § 2412(b), the Equal Access to Justice Act. ("**EAJA**").

TTV is entitled to receive fees under the EAJA because this court ruled that: (1) TTV received declaratory and judicial relief from the IRS's discriminatory actions, Memorandum Opinion, ECF No. 162, at 11; (2) the Defendant's actions underlying this litigation—namely the discriminatory conduct the IRS engaged in against TTV—was not substantially justified, *see id.* at 13-14; and (3) the Defendant could not show that special circumstances exist that would make a fee award unjust. *See id.* at 16. The Court also awarded TTV a "bad faith enhancement" to the EAJA's statutory rate cap because "clear and convincing evidence" existed that the IRS's

---

[1] The Third Application was for fees, costs, and expenses incurred in TTV's submission of work performed since submitting *Plaintiff's Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to Justice Act*, ECF No. 166, including: *Plaintiff's Notice of Supplemental Authority*, ECF No. 167; *Plaintiff's Motion for Leave to Reply to United States' Opposition to Plaintiff's Notice of Compliance with Court Order*, ECF No. 171; *Plaintiff's Reply in Support of Plaintiff's Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to Justice Act*, ECF No. 172; *Plaintiff's Opposition to Defendants' Motion for Partial Reconsideration*, ECF No. 173; *Plaintiff's Reply to Defendants' Opposition to Plaintiff's Notice of Compliance with Court Order*, ECF No. 176; *Plaintiff's Motion to Strike Defendant's Opposition as Untimely and Grant Related Other Relief*, ECF No. 177; and *Plaintiff's Reply in Support of Motion to Strike*, ECF No. 179.

[2] This total reflects the sum of TTV's: $1,933,888.06 in fees, etc. sought in the Application, ECF No. 151; ($54,730.20) as an adjustment to fees, etc. from TTV's Reply, ECF No. 156; $103,049.20 in fees, etc. sought in the Supplemental Application, ECF No. 157; ($97.50) as an adjustment to fees, etc. in the Notice, ECF No. 165; $39,253.20 in fees, etc. sought in the Second Supplemental Application, ECF No. 166; and $163,042.38 in fees, etc. sought in the Third Supplemental Application.

**Pl.'s Reply in Supp.**
**of Third Suppl. Mot. for Fees**                             1

discriminatory conduct underlying this litigation was made in bad faith. *See id.* at 21 (holding the IRS could not possibly "defend its discriminatory conduct on the merits" and failed to offer any justification that its conduct was "narrowly tailored to serve compelling state interests").

This Court held in abeyance an actual award of fees and ordered TTV to produce proof of prevailing market rates and billing records subtotaled by attorney. Order, ECF No. 161 at 2. TTV complied with this order and submitted its Notice of Compliance with the Court Order, ECF No. 165 on June 13, 2019. Subsequently, TTV submitted the motions and notices described *supra* at n. 1. TTV sought an award for this work in its Third Supplemental Application.

## Argument

### TTV Is Entitled to Attorney's Fees, Costs, and Expenses for the Fees in its Third Supplemental Application.

**A. TTV's Motion to Strike Was Proper and Does Not Foreclose Fee Recovery for Other Appropriate Work.**

Local Rule 7(b) requires that an opposing party "shall" file a memorandum in opposition to a motion within 14 days of the date of service of the motion. "If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." *Id.* A reply memorandum is due within seven days after the memorandum in opposition is filed. LCvR 7(d).

The United States filed its *Opposition to Plaintiff's Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act* ("**Second Opposition**"), ECF No. 169, on June 27, 2019, sixteen months after Plaintiff's original Application, ECF No. 152. In this Second Opposition, the United States asserted, for the first time, that 1875 marked hourly entries should be reduced or eliminated, that all the hours spent on

**Pl.'s Reply in Supp.
of Third Suppl. Mot. for Fees**                             2

the 2014 Motion for Preliminary Injunction and Expedited Discovery, ECF No. 83, should be eliminated, and that the remaining hours should be subject to a 33% across-the-board reduction because of general nonspecific claims of excessiveness and duplication of hours spent on the case. *See* Memo. in Supp. Mot. to Strike, ECF No. 177-1 at 3. In doing so, the United States attempted to evade Local Civil Rule 7(b), which effectively codifies the well-established principle of waiver. *See Plaintiff's Memorandum in Support of Motion to Strike Defendant's Opposition as Untimely and For Other Related Relief*, ECF No. 177-1 at 4-7.

TTV submitted *Plaintiff's Reply to Defendants' Opposition to Plaintiff's Notice of Compliance with Court Order* ("**Notice Reply**"), ECF No. 176, on July 29, 2019, after this Court granted TTV an extension. While technically a reply, TTV's Notice Reply was functionally an opposition to objections the United States raised for the first time. After weighing options, risks, and possible outcomes—especially, of course, possibly waiving the right to reply to these objections under Local Civil Rule 7(b)—Plaintiff chose to first respond fully and in good faith to the objections and to raise the issue of Defendants' second untimely opposition and waiver in a separate filing to which Defendants could respond and which would afford the Court the opportunity to grant relief.

Now, the United States seems to argue that TTV should only have filed its Motion to Strike and should have not filed its Notice Reply until the Motion to Strike was decided upon by this Court. Defendants do not contend that the Motion is an improper vehicle for addressing their untimely objections to hours, but "blame the victim" for choosing to fully respond to those objections in good faith to avoid possibly waiving the chance to do so. That TTV was unwilling

to ignore this well-established principle does not foreclose recovery of fees reasonably incurred in responding to their out-of-time objections.

**B. This Court Did Not Order TTV To "Correct" its Billing Records.**

In its Memorandum Opinion, this Court held that TTV was the prevailing party and therefore entitled to attorneys' fees under the EAJA. ECF No. 162 at 24. Further, it held that TTV was entitled to a "bad faith enhancement" to the attorney's rates because of the "clear and convincing evidence" that the IRS had acted in bad faith when it discriminated against TTV because of its political viewpoint. *Id.* at 21. However, the Court held in abeyance the actual award of attorneys' fees until TTV submitted support for the "reasonableness of its requested attorney and non-attorney billing *rates*." *Id.* at 25 (emphasis added). The Court also "reserve[d] its ruling as to whether the number of hours expended and costs incurred in this matter are reasonable " until after TTV had further supported the *rates* requested. *Id.* at n. 6.

Nowhere in its Opinion did this Court state that the number of hours TTV's attorneys submitted were unreasonable. Nor did this Court ask either TTV or the United States to "correct" or "fix" any mistakes to the billing records.[3] Nor did this Court request, or give permission, to the United States to "supplement" its objections to the billing records that had been properly submitted and fully briefed more than a year prior.

The United States is left arguing that the Court did just that by editorializing that the Court's abeyance on the issue of reasonableness of hours really means,"[i]n short, the Court

---

[3] The Court also ordered the billing records to be reorganized and subtotaled by timekeeper, but this order did not call into question or request a change to the substance of TTV's previously submitted billing records. Order, ECF No. 161 at 2.

**Pl.'s Reply in Supp.
of Third Suppl. Mot. for Fees**                4

found that what Plaintiff has submitted is 'not enough . . . .'" *United States' Opposition to Plaintiff's Third Supplemental Application and Motion for Fees, Costs, and Expenses Under the Equal Access to Justice Act* ("**Third Opposition**"), ECF No. 181 at 5. This Court only held that what TTV had submitted to support the application of the LSI Matrix *rates* to this litigation was "not enough." Memo. Op. at 23. For the United States to imply otherwise is false and misleading.

The United States editorializes again when it claims that "If Plaintiff had submitted *the correct information* the first time, these fees would not have been incurred." *Id.* (emphasis added). Plaintiff did not submit "incorrect" information to the Court—the question of which rates district courts in the District of Columbia were to apply to fee-shifting statutes was an unsettled question of law when this Court issued its Opinion. Indeed, seventeen days after this Court issued its Opinion, TTV submitted a Notice of Supplemental Authority, drawing this Court's attention to *DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019), which is dispositive authority in this Circuit specifically upholding the LSI Matrix and rejecting the USAO II Matrix. *See Plaintiff's Notice of Supplemental Authority*, ECF No. 167. TTV is not to "blame" for the additional work required in order to comply with this Court's order regarding the applicable rates. Nor is it to "blame" for the additional work required to argue a material and emerging question of law.

The United States then copies, directly from their Second Opposition, the argument that TTV's entire supplemental request should be disallowed because the work is "too far removed" from the litigation. *Compare* Third Opposition at 5 to Second Opposition at 11 (citing *McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 162 (D.D.C. 2017); *Means v. District of Columbia*,

999 F. Supp. 2d 128, 136 n.7 (D.D.C. 2013); and *F.S. v. District of Columbia*, 307 F.R.D. at 29). TTV has already thoroughly analyzed the United States' misreading of this case law and incorporates by reference that analysis here. Reply Supp. Second Suppl. Application, ECF No. 172 at 3-4.

Plaintiff has also previously analyzed the United States' next argument—that a court should reduce an award for fees-on-fees work by the same percentage as it does for fees on the merits. *See* Second Supplemental Memo., ECF No. 166-1 at 3-4, n. 2. In short, TTV already reduced the work for unsuccessful claims, so the fee-on-fee work was unrelated to any unsuccessful claim and a wholesale percentage reduction to the fees-on-fees would be inconsistent with the purposes of the EAJA. *Id.*

**C. TTV's Billing Practices Were Proper.**

In its Third Opposition, the United States copies, beginning on the bottom of page 6 and continuing through the middle of page 9, and again for most of page 10, the exact arguments they already asserted on pages 16-20 of its Second Opposition. Most of these arguments have been thoroughly addressed in TTV's Notice Reply. TTV directs this Court's attention to that Notice Reply, but has summarized or supplemented here, as appropriate.

      1.      **TTV's Billing Records Provide Sufficient Detail.**

TTV agrees that the billing records provided to the court under a fee-shifting statute must contain sufficient detail to enable a court to determine the reasonableness of the time billed. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 158-59 (D.D.C. 2005). TTV analyzed such "vagueness" objections in its Notice Reply at 13-14. TTV has provided this Court with records that contain

**Pl.'s Reply in Supp.
of Third Suppl. Mot. for Fees**                6

sufficient detail at every stage of this litigation, most recently in this "fees-on-fees" stage.

As discussed, *supra*, the "fees-on-fees" work is related to specific motions, notices, oppositions, and replies concerning fees, easily determined by both the descriptions in the records and the timing of various filings in the docket. The United States asserts an unspecified number of TTV's entries are "vague" or "lack sufficient detail" but ironically references almost no specific entries to do so. *See* Third Opposition at 6-8. The one and only specific objection the United States does make for "vagueness" is inaccurate and misleading. The United States claims attorney Kaylan Phillips' bills are "for activities such as government objections, next steps and review opposition." *Id.* at 8. TTV can only guess that the United States might be referring to the following types of entries: "Emails re: Government objections. Phone call with Jeff Gallant re same[,]" or "Emails re: next steps in addressing Government's objections." *See* PILF Billing Records, ECF No. 180-7. None of Ms. Phillips' complete entries, specified here, are vague. All of Ms. Phillips' entries spanned approximately two weeks, coinciding with the time frame when TTV was reviewing the nearly 2,000 color-coded objections made by the United States in preparing its Notice Reply. *See id.* The entries are clearly related to reviewing these objections, and this Court can readily evaluate their reasonableness by the descriptions provided.

   2.   **TTV's Billing Records Are Not Duplicative or Inconsistent.**

The United States' objections that TTV's billing records are duplicative and inconsistent are copied from its Second Opposition at 19. As such, TTV has responded to those legal objections and directs this Court to its Notice Reply at 17-18. To summarize, subjective criticisms of "duplicative" billing are rejected because, "[b]y and large, the court should defer to

the winning lawyer's professional judgment as to how much time was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacremento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

In one of the United States' few semi-specific objections, it alleges that attorneys Bopp, Gallant and Siebert are "apparently doing the same work." Third Opposition at 9. But the work cited is not "*unnecessarily* duplicative" at all. *Moreno*, 534 F.3d at 1112. The Bopp Law Firm's normal practice is to work collaboratively in order to provide the highest level of legal services to its clients. In short, it is the Firm's practice for one attorney to take the primary lead on drafting a motion and for other attorneys to review that motion and provide input. This is exactly what the time records show. *See*, *e.g.*, BLF Billing Records, ECF No. 180-2 at 16-19 (Motion to Strike and briefing drafted by Jeffrey P. Gallant); *id.* at 4 (review of same by James Bopp), 29 (review of same by Melena Siebert). In addition, it is unremarkable for the Firm's owner, James Bopp, Jr. to briefly review a document after filing, because it falls to him to make oral arguments and to zealously assert clients' interests, especially when, as here, a large financial interest for the client is at stake. *See id.* at 4. So, rather than "doing the same work," TTV's counsel engaged in their normal and appropriate collaborative practice of researching, drafting, and editing motions before this Court. Likewise, BLF's owner appropriately reviewed a submission to this Court which could significantly impact the client and the firm. None of that is inappropriate or unreasonable—rather, it is prudent and reasonable provision of quality legal representation.

Next, the United States alleges BLF's billing records are inconsistent because the "same event(s)" were billed "different numbers of hours." Third Opposition at 9. Putting aside that

**Pl.'s Reply in Supp.
of Third Suppl. Mot. for Fees**                     8

attorneys billing different time for the same event is likely simply a *mistake* and not nefarious, that did not happen here. The United States cites as an example a conference call on 6/14/19. *Id.* An even cursory view of the respective attorney's complete descriptions, versus the summary provided by the government, explains why James Bopp, Jr. billed 0.6 hours and Melena Siebert billed 0.2 hours. The work performed by James Bopp Jr. was "Review new D.C. Circuit decision; phone conference with Melena Siebert regarding Notice of Supplemental Authority." BLF Billing Records, ECF No. 180-2 at 1. Melena Siebert's work and description was "Phone conference with James Bopp, Jr. regarding Notice of Supplemental Authority." *Id.* at 20. Mr. Bopp clearly combined 0.4 hours of reviewing the new Circuit decision and 0.2 hours for the conference call. Similar descriptive differences account for the other two examples the government misidentifies as "inconsistent." (*See id.* at 1, 6, 20 for complete descriptions of the work noted on 6/17/19; *id.* at 2, 23 for the work on 7/2/19). Quoting partial descriptions of work to show billing inconsistency is as inaccurate and misleading as the government's allegations of "vague" descriptions that are not actually vague. *See supra* at C.1.

      The United States argues that TTV should not be awarded fees for work on the Notice Reply and the Motion to Strike because if the Motion to Strike is granted, "drafting the Reply [ ] was unnecessary." Third Opposition at 10. As discussed, *supra* at A., TTV was not obligated to file the Motion to Strike first, potentially losing any right to respond to the financially significant objections in the government's Second Opposition.

### 3. TTV's Billing is Reasonable.

The United States' objections that TTV's billing is excessive, copied from its Second Opposition at 20, are repeated although TTV responded thoroughly in its Notice Reply at 18. Now, the United States objects that four attorneys spent "a combined 261 hours to reply to a fee opposition." Third Opposition at 10. Again, the government paints an incomplete picture. The time spent on the Notice Reply was spent evaluating nearly 2,000 individual, color-coded objections to the attorneys' work over a six-year period of time. *See supra* at A. Responding to such voluminous objections at this stage of the litigation did take time, and TTV's attorneys billed and described that time appropriately.

### 4. TTV Has Not Erroneously Billed for Administrative Tasks.

The United States objects to TTV's billing for administrative tasks by copying its argument from its Second Opposition at 15. Since the government offered no specific billing record citation to support this objection here, TTV can only guess which records might have been objectionable. But TTV finds no entries for administrative work and submits that entries such as Attorney Siebert's for "Final edits to Opposition to Motion for Partial Reconsideration; filing same; email to client regarding same," BLF Billing Records, ECF No. 180-2 at 26, describe time appropriately billed for edits to a motion.

The United States objects to a $562.23 cost for color copies. Third Opposition at 11. The United States submitted 1,875 color-coded objections in its Second Opposition.[4] *See*, *e.g.*, BLF

---

[4]When converting the cost and expense records to a format appropriate for submission to this Court, the amount for the cost per minute for computer aided legal research ($3 per minute) was erroneously noted instead of the number of minutes of research done. *See*, *e.g.*, BLF Costs and Expenses, ECF No. 180-3 at 1. TTV's counsel has now corrected this as well as the two entries previously lacking the description (also erroneously left out during conversion of formatting). *See* Exhibit 1, BLF Corrected Costs and Expenses. None of these corrections impact the

**Pl.'s Reply in Supp.
of Third Suppl. Mot. for Fees**                10

Billing Record Objections, ECF No. 169-1. Each color represented a different category of objection, and TTV's counsel needed to evaluate each separately. *See* Second Opposition at 3-4. TTV's counsel asked the United States' counsel for a color-coded electronic version that could be easily sorted and separated. *See* Email Exchange between Melena Siebert, Joseph Sergi, and Laura Connor, July 17, 2019, attached as Exhibit 2. The United States advised that it had applied the colored highlights "manually" within the pdf format, a process that did not yield reproducible electronic color-coding. *Id.* For this reason, TTV's counsel needed to have color copies produced to divide the objections by color in order to work efficiently through each type. TTV's counsel also printed color copies of the fully evaluated objections to include in the Court's courtesy copies.

TTV did not bill inappropriately for administrative tasks and the costs and expenses submitted are accurate and appropriate for the work performed.

## Conclusion

TTV's motion to strike was proper and does not foreclose fee recovery for other appropriate work. This court did not order TTV to "correct" its billing records, but rather asked it to support the rates sought. TTV's billing practices were proper, including sufficient detail for this Court to evaluate the reasonableness of the hours billed. TTV's billing is not excessive, duplicative, or inconsistent, and the examples provided by the United States in an attempt to claim otherwise are inaccurate and misleading. TTV has not erroneously billed for administrative tasks and has submitted the record of costs and expenses accurately reflecting the actual time

---

amount sought in costs and expenses, as the total sought was correct in the original submission.

**Pl.'s Reply in Supp.
of Third Suppl. Mot. for Fees**             11

spent researching various issues rather than just the cost per minute of research.

Therefore, Plaintiff submits that it is entitled to its reasonable request of $163,042.38 in fees, costs, and expenses detailed in its Third Supplemental Application. And, as detailed *supra* at n.2, TTV requests a total of $2,145,151.94 in attorneys' fees, costs, and expenses for work on the merits of this case and in pursuit of reasonable attorneys' fees.[5]

September 25, 2019

Respectfully submitted,
/s/ James Bopp, Jr.
James Bopp, Jr. (D.C. Bar No. CO0041)
 jboppjr@aol.com
Courtney Turner Milbank*
 cmilbank@bopplaw.com
Melena Siebert*
 msiebert@bopplaw.com
Jeffrey P. Gallant*
 jgallant@bopplaw.com
THE BOPP LAW FIRM, P.C.
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
(812) 232-2434
(812) 235-3685 (fax)
*Attorneys for TTV*
\*Admitted pro hac vice

---

[5] TTV's counsel has incurred $5,424.20 in fees to prepare this Reply. (10 hours at $328/hr. for Melena Siebert as the primary drafter, 1.8 hours at $718/hr. for Jeffrey P. Gallant for review, and 0.4 hours at $865/hr. for James Bopp, Jr. for review). Rather than submit another supplemental application, TTV respectfully requests this court add $5,424.20 to the final award of fees.

**Pl.'s Reply in Supp.**
**of Third Suppl. Mot. for Fees**          12

## Certificate of Service

I hereby certify that on September 25, 2019 , I caused the *Reply in Support of Plaintiff's Third Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to Justice Act* in the above-captioned matter to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.

/s/ James Bopp, Jr.
James Bopp, Jr.