**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TRUE THE VOTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-734 (RBW) |
| | ) | |
| INTERNAL REVENUE SERVICE, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, True the Vote, Inc., brought this civil action against the Internal Revenue Service ("IRS"), the United States of America, and several IRS officials in their official capacities,[1] alleging violations of the First Amendment to the United States Constitution, U.S. Const. amend. I; the Internal Revenue Code, 26 U.S.C. §§ 1–9834 (2018); and the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (2018), and seeking declaratory and injunctive relief, as well as monetary damages. <u>See</u> First Amended Verified Complaint for Declaratory Judgment, Injunctive Relief, and Compensatory, Statutory, and Punitive Damages ("Am. Compl." or the "Amended Complaint") ¶¶ 139–61, 168–206. Currently pending before the Court are (1) the Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s 1st Fees Mot." or the "first motion for fees"); (2) the Plaintiff's Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s 2d Fees Mot." or the "second motion for fees");

---

[1] The plaintiff also sought monetary damages from several IRS officials in their individual capacities, but the Court dismissed that claim, <u>see</u> <u>True the Vote, Inc. v. Internal Revenue Serv.</u>, 71 F. Supp. 3d 219, 229–33 (D.D.C. 2014) (Walton, J.), <u>affirmed in part, rev'd in part and remanded</u>, 831 F.3d 551, 555 (D.C. Cir. 2016), and therefore, when referring to the "defendants" throughout this Memorandum Opinion, the Court is referencing only the remaining defendants in this case—the IRS, the United States, and the IRS officials named in their official capacities—not the IRS officials named in their individual capacities.

(3) the Plaintiff's Motion for Oral Argument ("Pl.'s Oral Arg. Mot." or the "motion for oral argument"); (4) the Plaintiff's Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s 3d Fees Mot." or the "third motion for fees"); (5) the United States' Motion for Partial Reconsideration of Order and Memorandum Opinion (ECF Nos. 161 and 162) and Statement of Points and Authorities ("Defs.' Reconsideration Mot." or the "motion for reconsideration"); (6) the Plaintiff's Motion to Strike Defendant's Opposition as Untimely and Grant Related Other Relief ("Pl.'s Mot. to Strike" or the "motion to strike"); and (7) the Plaintiff's Third Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s 4th Fees Mot." or the "fourth motion for fees"). Upon careful considerations of the parties' submissions,[2]

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s 1st Fees Mem."); (2) the United States' Opposition to Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses ("Defs.' Fees Opp'n"); (3) the Plaintiff's Reply to United States' Opposition to Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses ("Pl.'s 1st Fees Reply"); (4) the United States' Opposition to Plaintiff's Motion for Oral Argument ("Defs.' Oral Arg. Opp'n"); (5) the Reply in Support of Plaintiff's Motion for Oral Argument ("Pl.'s Oral Arg. Reply"); (6) the Plaintiff's Notice of Compliance with Court Order ("Pl.'s Compliance Not."); (7) the Memorandum of Points and Authorities in Support of Plaintiff's Notice of Compliance with Court Order ("Pl.'s Compliance Mem."); (8) the Memorandum of Points and Authorities in Support of Plaintiff's Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s 3d Fees Mem."); (9) the Plaintiff's Notice of Supplemental Authority ("Pl.'s Authority Not."); (10) the United States' Opposition to Plaintiff's Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Defs.' Compliance Opp'n" or the "compliance opposition")(11) the Plaintiff's Reply in Support of Plaintiff's Second Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses [U]nder the Equal Access to Justice Act ("Pl.'s 3d Fees Reply"); (12) the Plaintiff's Opposition to Defendants' Motion for Partial Reconsideration ("Pl.'s Reconsideration Opp'n"); (13) the Reply in Support of United States' Motion for Partial Reconsideration of Order and Memorandum Opinion (ECF Nos. 161 and 162) ("Defs.' Reconsideration Reply"); (14) the Plaintiff's Reply to Defendants' Opposition to Plaintiff's Notice of Compliance with Court Order ("Pl.'s Compliance Reply" or the "compliance reply"); (15) the Plaintiff's Memorandum in Support of Motion to Strike Defendant's Opposition as Untimely and [f]or Other Related Relief ("Pl.'s Mot. to Strike Mem."); (16) the United States' Opposition to Plaintiff's Motion to Strike or Consider Arguments Forfeited and Waived ("Defs.' Mot. to Strike Opp'n"); (17) the Plaintiff's Reply to Defendants' Opposition to Motion to Strike or to Consider Arguments Forfeited and Waived ("Pl.'s Mot. to Strike Reply"); (18) the Memorandum of Points and Authorities in Support of Plaintiff's Third Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s 4th Fees Mem."); (19) the United States' Opposition to Plaintiff's Third Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Defs.' 3d Fees Opp'n"); and (20) the Reply in Support of Plaintiff's Third Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses [U]nder the Equal Access to Justice Act ("Pl.'s 4th Fees Reply").

the Court concludes for the following reasons that it must (1) grant in part and deny in part the plaintiff's first and second motions for fees, (2) deny as moot the plaintiff's motion for oral argument, [3] (3) deny the plaintiff's motion to strike, (4) deny the plaintiff's third and fourth motions for fees, and (5) grant the defendants' motion for reconsideration.

## I.      BACKGROUND

The Court previously set forth the factual background of this case in its Memorandum Opinion issued on October 23, 2014, see True the Vote, Inc. v. Internal Revenue Serv. ("True the Vote I"), 71 F. Supp. 3d 219, 223–25 (D.D.C. 2014) (Walton, J.), aff'd in part, rev'd in part and remanded, 831 F.3d 551 (D.C. Cir. 2016), and the procedural history of this case in its Memorandum Opinion issued on May 30, 2019, see True the Vote, Inc. v. Internal Revenue Serv. ("True the Vote II"), Civ. Action No. 13-734 (RBW), 2019 WL 2304659, at *2 (D.D.C. May 30, 2019) (Walton, J.), and therefore will not recite them in full again here. The Court will, however, briefly summarize the current procedural posture of the case relevant to the resolution of the pending motions.

On February 20, 2018, the plaintiff filed its first motion for fees, see Pl.'s 1st Fees Mot. at 1, and thereafter on April 18, 2018, filed its second motion for fees, see Pl.'s 2d Fees Mot. at 1, and its motion for oral argument, see Pl.'s Oral Arg. Mot. at 1. On May 30, 2019, the Court issued a Memorandum Opinion and corresponding Order (collectively, the "May 30, 2019 decision"), granting in part and holding in abeyance in part the first motion for fees and holding in abeyance the second motion for fees and the motion for oral argument. See Order at 1–2 (May 30, 2019), ECF No. 161. The Court granted the plaintiff's first motion for fees "to the

---

[3] Because the only task remaining is for the parties to determine the amount of attorneys' fees the plaintiff is entitled to recover, the Court denies as moot the plaintiff's motion for oral argument.

extent that it s[ought] a finding that the plaintiff is entitled to attorneys' fees and costs under the Equal Access to Justice Act" ("EAJA"), but held the remainder of the first motion for fees, as well as the second motion for fees and the motion for oral argument, in abeyance "pending further submission by the plaintiff supporting the reasonableness of the requested attorney and non-attorney billing rates." Id. at 1. To assist the Court in resolving the matters held in abeyance, the plaintiff was directed to "submit (1) additional evidence supporting the reasonableness of its requested attorney and non-attorney billing rates and (2) revised billing records separating all entries by timekeeper[,]" and the defendants were directed to "file an opposition, if any, to the plaintiff's response to th[e] [May 30, 2019] Order." Id. at 2.

In response to the Court's May 30, 2019, the plaintiff submitted (1) its notice of compliance, see Pl.'s Compliance Not. at 1; (2) its third and fourth motions for fees, see Pl.'s 3d Fees Mot. at 1; Pl.'s 4th Fees Mot. at 1; and (3) its motion to strike, see Pl.'s Mot. to Strike at 1, and the defendants submitted their (1) compliance opposition, see Defs.' Compliance Opp'n at 1, and (2) motion for reconsideration, see Defs.' Reconsideration Mot. at 1.

The plaintiff's four motions for fees, motion for oral argument, and motion to strike and the defendants' motion for reconsideration are the subjects of this Memorandum Opinion.

## II.   STANDARDS OF REVIEW

### A.   Motions for Attorneys' Fees Under the EAJA

The EAJA provides the following, in relevant part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (2018).[4]  Thus, to be awarded attorneys' fees under the EAJA, the Court must find that "(1) [the plaintiff] is the prevailing party; (2) [the plaintiff] has incurred [reasonable] fees or expenses; (3) the position of the United States in the action was not substantially justified; and (4) no special circumstances make an award of fees unjust."  Brooks v. Berryhill,  Civ. Action No. 15-00436 (CKK/GMH), 2019 WL 120767, at *3 (D.D.C. Jan. 7, 2019).  Once a plaintiff establishes that it is the prevailing party under the EAJA, the government has the burden of showing that its position was "substantially justified" or that special circumstances make the award unjust.  See Taucher v. Brown-Hruska, 396 F.3d 1168, 1173 (D.C. Cir. 2005).  Finally, if the Court concludes that an award of attorneys' fees and costs is warranted, it is incumbent upon a plaintiff to establish that the fees and costs that it is seeking are reasonable.  See Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 969–70 (D.C. Cir. 2004) ("[C]ourts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates." (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984))).

## B.      Motion for Reconsideration Pursuant to Rule 59(e)

Federal Rule of Civil Procedure 59(e) permits a party to file a "motion to alter or amend a judgment" within "[twenty-eight] days after the entry of the judgment."  Fed. R. Civ. P. 59(e). "Motions to alter or amend a judgment under [ ] Rule . . . 59(e) lie within the discretion of the Court."  AARP v. U.S. Equal Emp't Opportunity Comm'n, 292 F. Supp. 3d 238, 241 (D.D.C. 2017) (citing Ciralsky v. Cent. Intelligence Agency, 355 F.3d 661, 671 (D.C. Cir. 2004)). However, motions under Rule 59(e) are "disfavored[,]" and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final judgment.  Niedermeier

---

[4] In order to be eligible to receive an award of attorneys' fees and other expenses under the EAJA, a prevailing party must also file its application seeking an award of attorneys' fees "within thirty days of a final judgment," 28 U.S.C. § 2412(d)(1)(B),  and must meet the net worth requirements of the EAJA, see id. § 2412(d)(2)(B).

v. Office of Baucus, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citing Anyanwutaku v. Moore, 151

F.3d 1053, 1057–58 (D.C. Cir. 1988)). "Rule 59(e) motions need not be granted unless the [ ]

[C]ourt finds that there is an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice." Anyanwutaku, 151

F.3d at 1057–58 (internal quotation marks omitted).

## C.   Motion to Strike Pursuant to Rule 12

The Court, either on its own volition or at the request of a party, may strike from a

pleading any "insufficient defense or any redundant, immaterial, impertinent or scandalous

matter." Fed. R. Civ. P. 12(f). A motion to strike is a "'drastic remed[y] that courts disfavor,'"

and a Court has discretion to either grant or deny such motions. Riddick v. Holland, 134 F.

Supp. 3d 281, 285 (D.D.C. 2015) (quoting United States ex rel. Landis v. Tailwind Sports Corp.,

308 F.R.D. 1, 4 (D.D.C. 2015)). Rule 12(f) itself does not require the striking of prejudicial

matters, and although courts disfavor motions to strike, courts have granted such motions upon a

showing that parts of a pleading were "prejudicial or scandalous." Nwachukwu v. Rooney, 362

F. Supp. 2d 183, 190 (D.D.C. 2005) (collecting cases). Therefore, "absent a strong reason for so

doing, [a] Court will generally not tamper with pleadings." Id. (internal quotation marks

omitted) (citation omitted).

## III.   ANALYSIS

Because the defendants' motion for reconsideration and the plaintiff's motion to strike

may affect the Court's analysis of the reasonableness of the requested fees, the Court will first

address these two motions before addressing the plaintiff's four motions for fees.

## A.      The Defendants' Motion for Reconsideration

The defendants "move[] for partial reconsideration of the Court's Order and Memorandum Opinion . . . entered on May 30, 2019." Defs.' Reconsideration Mem. at 1. Specifically, they "ask[] the Court to reconsider its conclusion that the finding of pre-litigation bad faith justifies the payment of all the requested attorneys' fees at the market rate." Id. They argue that "[b]ecause the Court's blanket enhancement does not trace the fees awarded to its bad-faith findings, the Court improperly awarded fees that would have been incurred even in the absence of any bad-faith conduct[,]" id. at 2, in contravention of Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178 (2017), and Lu v. United States, 921 F.3d 850 (9th Cir. 2019). The defendants argue that "the applicable billing rate for the fees in [the] plaintiff's [fees] request[s] [sh]ould be limited to the statutory cap, plus inflation, under [the] EAJA[,]" and that, "[a]t most, market rates should be awarded for fees claimed on or before September 2[0], 2013[,]" which is "the date that the IRS granted [the] plaintiff's application for tax-exempt status under 26 U.S.C. § 501(c)(3)." Id. at 9.[5]

> In Goodyear, the Supreme Court explained:
>
> [A] sanction [of attorneys' fees], when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. In other words, the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior. . . . [A] sanction counts as compensatory only if it is calibrate[d] to [the] damages caused by the bad-faith acts on which it is based. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment.

---

[5] The plaintiff responds that the defendants' motion for reconsideration should be denied because both Goodyear and Lu were "decided before this Court's [May 30, 2019] Order[,] [b]ut the [d]efendants never raised them, or the arguments they claim flow from them, until now, and it would be improper to consider them at this point in the litigation." Pl.'s Reconsideration Opp'n at 1. The defendants certainly should have raised Goodyear and Lu because they were decided before the Court issued that Order. However, the Court will "exercise its discretion," see Berge v. United States, 949 F. Supp. 2d 36, 41 (D.D.C. 2013) (Walton, J.), in this instance and consider the defendants' motion for reconsideration given the short timeframe between Lu's application of Goodyear in the EAJA context and the fact that the award of fees has not become a final judgment.

137 S. Ct. at 1186 (fifth and sixth alterations in original) (citations and internal quotation marks omitted). Thus, "when using its inherent sanctioning authority (and civil procedures)," the Court is required to "establish a causal link[] between the litigant's misbehavior and legal fees paid by the opposing party." Id. "That kind of causal connection . . . is appropriately framed as a but-for test[.]" Id. at 1187.

> This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment. The court's fundamental job is to determine whether a given legal fee— say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued. . . . The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. Accordingly a district court may take into account [its] overall sense of a suit, and may use estimates in calculating an attorney's time.

Id. (second alteration in original) (citations and internal quotation marks omitted). However, "[i]n exceptional cases, the but-for standard [ ] permits a trial court to shift all of a party's fees, either from the start or from some midpoint of a suit, in one fell swoop." Id.

As a preliminary matter, as the defendants correctly note, see Defs.' Reconsideration Mot. at 2, the but-for causation standard articulated in Goodyear, which is applicable to attorneys' fee awards "imposed pursuant to civil procedures," Goodyear, 137 S. Ct. at 1186, is also applicable to attorneys' fees awards imposed pursuant to the bad faith enhancement of the EAJA. In Lu, the Ninth Circuit explained:

> In Goodyear, the [Supreme] Court reaffirmed that courts have inherent, common law authority to assess attorneys' fees as a sanction for bad faith conduct. A court would be precluded from assessing attorneys' fees against the United States unless it waived its sovereign immunity. Accordingly, the EAJA provided such a waiver for attorneys' fees awards in civil cases in which the United States is a party. Under the EAJA, [u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States . . . [and] to the same extent that any other party

would be liable under the common law or under the terms of any statute which specifically provides for such an award.

We have interpreted the statute's reference to the common law as including the common law authority of courts to assess attorneys' fees pursuant to their inherent powers. Said otherwise, [s]ection 2412(b) codified the bad faith exception to the American rule against the award of attorney's fees and made that exception applicable in suits against the United States. Because the ability of a court to award attorneys' fees against the government for bad faith conduct is the same as the court's inherent power to do so against other litigants, absent another statute that confers additional powers, any analysis of the bad faith exception under the EAJA draws upon the well of cases decided in other contexts.

921 F.3d at 861–62 (second through ninth alterations in original) (citations and internal quotation marks omitted).

In its May 30, 2019 decision, "the Court conclude[d] that the plaintiff is entitled to an award of attorneys' fees calculated at prevailing market rates pursuant to the bad faith enhancement to the EAJA." True the Vote II, 2019 WL 2304659, at *11. In reaching this decision, the Court relied on Gray Panthers Project Fund v. Thompson, 304 F. Supp. 2d 36 (D.D.C. 2004), a case decided before Goodyear, which held that

[a] prevailing party may be entitled to receive a bad faith enhancement to an award of attorneys' fees based on conduct occurring during the litigation or conduct that gave rise to the litigation. A court can find pre-litigation bad faith where a party confronted [with] a clear statutory duty or judicially-imposed duty toward another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights.

True the Vote II, 2019 WL 2304659, at *10 (internal quotation marks omitted) (quoting Gray Panthers Project Fund, 304 F. Supp. 2d at 39). However, as the defendants now correctly note, the holding in Gray Panthers Project Fund "runs counter to Supreme Court's requirements in Goodyear, [and therefore] [ ] may not form the basis of an enhancement fee award in this case." Defs.' Reconsideration Mem. at 4–5. Consistent with Goodyear, when analyzing whether a bad faith enhancement under § 2412(b) was appropriate in this case, the Court should have utilized

the "but-for causation standard" to "assess and allocate specific litigation expenses" attributable

to the defendants' pre-litigation bad faith conduct. Goodyear, 137 S. Ct. at 1187. Instead, the

Court issued a blanket "award [that] extend[ed] . . . to fees that would have been incurred

without the misconduct[,]" which "crosse[d] the boundary from compensation to punishment."

Id. at 1186. Thus, the Court finds that reconsideration is appropriate "to correct a clear error[,]"

Anyanwutaku, 151 F.3d at 1058, and therefore grants the defendants' motion for reconsideration.

Having concluded that reconsideration is appropriate, the Court will revisit its bad faith

award, this time utilizing Goodyear's "but-for causation standard[.]" Goodyear, 137 S. Ct. at

1187. In its May 30, 2019 decision, the Court "concluded that the defendants' position regarding

mootness was substantially justified, and [ ] similarly conclude[d] that the defendants'

advancement of the mootness argument during the course of this litigation was not in bad faith."

True the Vote II, 2019 WL 2304659, at *11. Thus, it cannot be said that "everything the

defendant[s] did—'[their] entire course of conduct' throughout—and indeed, preceding, the

litigation—was 'part of a sordid scheme' to defeat a valid claim[.]" Goodyear, 137 S. Ct. at

1188 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 51, 57 (1991)). Therefore, this is not the

"exceptional case[]" where "the but-for standard [ ] permits [the] [ ] [C]ourt to shift all of [the]

[plaintiff's fees, from [ ] the start . . . of a suit, in one fell swoop[,]" id. at 1187 (emphasis added),

and thus, it would be inappropriate for the Court to award to the plaintiff attorneys' fees

calculated at prevailing market rates pursuant to the bad faith enhancement to the EAJA for all of

the fees incurred by the plaintiff throughout the pendency of this litigation.

However, the Court does find that the award of attorneys' fees incurred prior to

September 20, 2013, the date that the IRS granted the plaintiff's application for tax-exempt

status, see Consent Order ¶ 22 (Jan. 19, 2018), ECF No. 150, is appropriate, because such fees

compensate the plaintiff for "'only the portion of [its] fees that [it] would not have paid but for'

the misconduct[,]" Goodyear, 137 S. Ct. at 1187 (quoting Fox v. Vice, 563 U.S. 826, 836

(2011)). This "sanction counts as compensatory . . . [because] it is 'calibrate[d] to [the] damages

caused by' the bad-faith acts on which it is based." Goodyear, 137 S. Ct. at 1186 (third and

fourth alterations in original) (quoting Mine Workers v. Bagwell, 512 U.S. 821, 834 (1994)).

Accordingly, the Court will (1) grant the defendants' motion for reconsideration;

(2) award attorneys' fees calculated at prevailing market rates pursuant the bad faith

enhancement to the EAJA only for fees incurred prior to September 20, 2013; and (3) award

attorneys' fees calculated at the EAJA statutory rate for all fees incurred after September 20,

2013.

## B.      The Plaintiff's Motion to Strike

The plaintiff "requests that the Court strike as untimely" the defendants' compliance

opposition. Pl.'s Mot. to Strike at 1. The plaintiff argues that "[t]hough purporting to be a

response to [the] [p]laintiff['s] [n]otice of [c]ompliance with the Court's [May 30, 2019] Order

[ ], [the] [d]efendants' [compliance] [o]pposition [ ] is simply another opposition to [the]

[p]laintiff's original [a]pplication for [a]ttorney[s'] fees" and "[a]s such, it is sixteen months out

of time and should be struck as untimely." Pl.'s Mot. to Strike Mem. at 8. The plaintiff further

argues that

> [t]o the extent that it is a response to [the] [p]laintiff's [a]pplication with respect to
> the reasonable number of hours expended on the case, [the] [d]efendants'
> [compliance] [o]pposition violates the common law doctrine and specifically Local
> [Civil] Rule 7(b), and the Court should deem its arguments and materials addressing
> the reasonable number of hours to have been forfeited and not consider them in its
> deliberations on the [a]pplication.

Id. The defendants respond that the plaintiff's motion to strike should be denied because "the

[defendants] complied with the Court's May 30, 2019 Order." Defs. Mot. to Strike Opp'n at 6–7

(footnote omitted).  Specifically, the defendants argue that the "[p]laintiff was ordered to file revised billing records, and the [defendants] w[ere] ordered to respond to [the] [p]laintiff's filing," and that "since [the] [p]laintiff filed revised billing records, the [defendants] properly responded to them."  Id.

The defendants are correct that the Court ordered the plaintiff to "submit (1) additional evidence supporting the reasonableness of its requested attorney and non-attorney billing rates and (2) revised billing records separating all entries by timekeeper" and for the defendants to "file an opposition, if any, to the plaintiff's response to this Order."  Order at 2 (May 30, 2019), ECF No. 161 (emphasis added).  In its May 30, 2019 Memorandum Opinion, the Court identified deficiencies in the plaintiff's first and second motions for fees and allowed the plaintiff an opportunity to cure those deficiencies by submitting revised billing records.  See id.  The defendants responded to the revised billing records by noting their objections to those revised billing records.  See generally Defs.' Compliance Opp'n.  Thus, contrary to the plaintiff's argument that the "[d]efendants' [second fees] opposition is simply a second opposition to [the] [p]laintiff's original [fees] [a]pplication, filed nearly sixteen months after the [first fees] [a]pplication was filed[,]" Pl.'s Mot. to Strike Mem. at 3, it is a timely submission by the defendants responding to, inter alia, the revised billing records presented by the plaintiff for the first time.

Moreover, even if the Court were inclined to grant the plaintiff's motion to strike—which it is not—it could not do so.  Rule 12(f) provides that "[t]he [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).  However, the defendants' compliance opposition "is not a pleading, as defined in [ ] Rule . . . 7(a), and motions to strike only apply to pleadings[.]"

Nwachukwu, 362 F. Supp. 2d at 190; see Fed. R. Civ. P. 7(a) (defining a "pleading[]" as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; [or] (7) if the [C]ourt orders one, a reply to an answer."). Therefore, "the plaintiff's motion to strike is improperly directed" at the defendants' compliance opposition. Nwachukwu, 362 F. Supp. 2d at 190 (denying the plaintiff's motion to strike the defendants' reply in support of their motion to dismiss).

Accordingly, because it would be inappropriate for the Court to strike the defendants' compliance opposition as untimely, the plaintiff's motion to strike must be denied.

## C. The Plaintiff's Motions for Fees

In assessing the reasonableness of the attorneys' fees requested by the plaintiff, the Court will first address the reasonableness of the billing rates and will then address the reasonableness of the number of hours billed.

### 1. The Reasonableness of the Requested Billing Rates

#### a. Attorney Billing Rates

As previously discussed, the Court finds it appropriate to award the plaintiff attorneys' fees calculated at prevailing market rates pursuant to the bad faith enhancement for fees incurred prior to September 20, 2013. See Part III.A, supra.; see also True the Vote II, 2019 WL 2304659, at * 13. The plaintiff argues its "requested attorneys' fees, valued at the [Legal Services Index ('LSI') Laffey] [m]atrix [('LSI Laffey matrix')] rates, are reasonable for this litigation[,]" Pl.'s Compliance Mem. at 3 (capitalization removed),[6] because "the LSI [Laffey]

---

[6] Because the plaintiff did not insert page numbers in its compliance memorandum, the page numbers when referencing this filing are the automatically-generated page numbers assigned by the Court's Case Management/Electronic Case Filing system

[m]atrix accurately reflects the prevailing market rate for substantially similar litigation[,]" id. It further argues that "matrices should be dispositive, not just presumptive, proof of the prevailing market rates." Id. at 17. The defendants "do[] not contest that, in this case, the Court should use the LSI Laffey [m]atrix" to determine prevailing market rates. Defs.' Compliance Opp'n at 7. However, they do argue that "the Court should not find that the use of the LSI Laffey [m]atrix is dispositive proof of prevailing market rates for all attorneys' fee[s] petitions" because "[c]urrent [District of Columbia] Circuit law would preclude any finding, as urged by [the] plaintiff, that the use of the LSI Laffey [m]atrix is dispositive proof of prevailing market rated for all attorneys' fee[s] petitions." Id. at 8.

> Fee matrices are one type of evidence that provide[] a useful starting point in calculating the prevailing market rate. A fee matrix is a chart averaging rates for attorneys at different experience levels. For decades, courts in this [C]ircuit have relied on some version of what is known as the Laffey matrix. The original Laffey matrix, which was created in the 1980s, relied upon a relatively small sample of rates charged by sophisticated federal-court practitioners in the District of Columbia, but it has undergone several changes since then and over time two competing matrices have emerged—the [LSI Laffey matrix] and the USAO [m]atrix, and the rates included in the LSI [Laffey matrix] are the higher of the two. While the LSI [Laffey] [m]atrix is designed to reflect the hourly rates charged by complex, federal court practitioners in Washington, D.C., the USAO [m]atrix has been based since 2015 on data for all types of lawyers—not just those who litigate complex federal cases—from the entire metropolitan area.

Barton v. U.S. Geological Survey, Civ. Action No. 17-1188 (ABJ), 2019 WL 4750195, at *5 (D.D.C. Sept. 29, 2019) (citations and internal quotation marks omitted).

As a preliminary matter, the Court rejects the plaintiff's contention that "the use of matrices as dispositive proof of prevailing market rates should be adopted in all attorney's fee petitions." Pl.'s Compliance Mem. at 20. As the Court previously explained in its May 30, 2019 decision, the "[C]ourt may not rely by default on a version of the Laffey [m]atrix without additional evidence from the party seeking attorneys' fees to determine whether the rates charged

are in line with those prevailing in the community for similar legal services[,]" True the Vote II, 2019 WL 2304659, at *12 (second alteration in original) (quoting Swanson v. Martins, 232 F. Supp. 3d 23, 28 (D.D.C. 2017)), and it would contravene Circuit precedent to "not requir[e] [the moving party] to demonstrate that [its] suggested rate was in line with those prevailing in the community[,]" id. (second alteration in original) (quoting Eley v. District of Columbia, 793 F.3d 97, 105 (D.C. Cir. 2015); see Eley, 793 F.3d at 105 (concluding that the district court abused its discretion "[b]y concluding that some version of the Laffey matrix is presumptively reasonable, settling on the LSI Laffey [m]atrix[,] and applying it because no evidence was produced disproving that [the] [ ] litigation was sufficiently complex" (internal quotation marks omitted)). Thus, the Court refuses to "adopt[] in all attorney's fee petitions," as the plaintiff suggests, "the use of matrices as dispositive proof of prevailing market rates[,]" Pl.'s Compliance Mem. at 20, and will instead evaluate whether the additional evidence submitted by the plaintiff in response to the Court's May 30, 2019 decision "support[s] the reasonableness of [the plaintiff's] requested attorney and non-attorney billing rates[,]" Order at 2 (May 30, 2019), ECF No. 161.

Upon review of the plaintiff's submission in response to the Court's May 30, 2019 Order, the Court agrees with the plaintiff that it "has justified the rates requested as accurately representative of prevailing market rates." Pl.'s Compliance Mem. at 15 (capitalization removed). Here, the plaintiff "has provided declarations from attorneys both from outside and within this litigation attesting to the fact that they have charged and have been paid rates comparable to the LSI [Laffey] [m]atrix rates for litigation substantially similar to the case at bar." Id. at 12 (emphasis removed); see id., Exhibit ("Ex.") 6 (Declaration of Robert J. Cynkar) ¶ 5 (declaration of an attorney not representing the plaintiff stating that he "ha[s] practiced in the same, or similar, type of litigation as the case at bar" and "charged, and ha[s] been paid, rates

15

comparable to those requested by [the] [p]laintiff's attorneys for this case for work on the same sort of case or substantially similar types of cases" and that "[t]he rates requested by [the] [p]laintiff in the [attorneys' fees] [a]pplication accurately represent reasonable rates attorneys in the metropolitan Washington, D.C. area routinely charge and are paid for litigation similar to the case at bar")); id., Ex. 7 (Declaration of Jason Torchinsky) ¶ 5 (same); id., Ex. 9 (Declaration of Cleta Mitchell ("Mitchell Decl.")) ¶¶ 7–33 (declaration of one of the plaintiff's attorneys stating that the rates charged and received by the attorneys employed by Foley & Lardner LLP ("Foley") staffed on this litigation were in line with the applicable LSI Laffey matrix rates); id., Ex. 10 (Declaration of James Bopp, Jr.) ¶¶ 5–8 (declaration of one of the plaintiff's attorneys stating that the rates charged and received by the attorneys at the Bopp Law Firm ("Bopp") staffed on this litigation were in line with the applicable LSI Laffey matrix rates); id., Ex. 14 (Declaration of John C. Eastman ("Eastman Decl.")) ¶¶ 4, 11 (declaration of one of the plaintiff's attorneys stating the rates charged by the attorney employed by the Center for Constitutional Jurisprudence ("the Center") were in line with the applicable LSI Laffey matrix rates).

Accordingly, based on the evidence submitted by the plaintiff supporting the reasonableness of the requested attorney billing rates in this case, the Court concludes that, for all work performed by attorneys in this case prior to September 26, 2013, it is appropriate to award to the plaintiff fees calculated at the applicable rates for attorneys set forth in the LSI Laffey matrix.[7]

---

[7] As previously discussed, the Court will award the plaintiff fees calculated at the applicable EAJA rates for attorneys for work performed in this case by attorneys after September 20, 2013.  See Part III.A, supra.; see also True the Vote II, 2019 WL 2304659, at * 13.

b.    **Non-Attorney Billing Rates**

In addition to requesting fees calculated at the LSI Laffey matrix rates for work performed by the attorneys in this case, the plaintiff also requests fees calculated at the LSI Laffey matrix rate for work performed by the non-attorneys in this case. See Pl.'s 1st Fees Mem. at 23 (requesting compensation for hours billed by the "clerks[] or paralegals" (footnote omitted)). The defendants do not address the appropriateness of the requested non-attorney billing rates in this case, see generally Defs.' Compliance Opp'n, but do concede that "the Court should use the LSI Laffey [m]atrix to determine [ ] [prevailing market] rates[,]" id. at 7.

"Paralegal fees are not subject to the EAJA cap, and so may be recovered at prevailing market rates." Conservation Force v. Salazar, 916 F. Supp. 2d 15, 27 (D.D.C. 2013); see also Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 590 (2008) ("[A] prevailing party that satisfies [the] EAJA's other requirements may recover its paralegal fees from the [g]overnment at prevailing market rates."). "Parties requesting attorneys' fees carry the burden of justifying requested rates for law clerks or paralegals by providing sufficient information detailing the non-attorneys' experience and education." McAllister v. District of Columbia, 21 F. Supp. 3d 94, 105 (D.D.C. 2014) (citing Role Models Am., Inc., 353 F.3d at 970).

Here, in response to the Court's May 30, 2019 Order, the plaintiff "submit[ted] [ ] affidavit[s] detailing the non-attorneys' experience and education." True the Vote II, 2019 WL 2304569, at *12 (quoting Role Models Am., Inc., 353 F.3d at 970); see Pl.'s Compliance Not., Ex. 9 (Mitchell Decl.) ¶¶ 15–33 (detailing the experience and education of the non-attorneys employed by Foley who provided services in this litigation); id., Ex. 14 (Eastman Decl.) ¶¶ 9–10 (detailing the experience and education of the non-attorney employed by the Center who provided services in this litigation); id., Ex. 15 (Declaration of Noel H. Johnson ("Johnson

17

Decl.")) ¶¶ 6–9 (detailing the experience and education of the non-attorneys employed by the Public Interest Legal Foundation ("Legal Foundation") who provided services in this litigation).

Accordingly, based on the evidence submitted by the plaintiff supporting the reasonableness of the requested non-attorney billing rates in this case, the Court concludes that, for all work performed by non-attorneys in this case—both before and after September 26, 2013—it is appropriate to award to the plaintiff fees calculated at the applicable rate for non-attorneys set forth in the LSI <u>Laffey</u> matrix.

**2.    The Reasonableness of the Number of Hours Billed**

Having settled on the how the billing rates should be calculated in this case, the Court must next analyze whether the number of hours billed by the plaintiff's counsel is reasonable.

**a.    The Plaintiff's First and Second Motions for Fees**

In its first motion for fees, the plaintiff requests compensation for hours billed from the outset of this litigation until the moment the first motion for fees was filed, <u>see</u> Pl.'s 1st Fees Mot. at 1 n.1, and in its second motion for fees, the plaintiff requests to be compensated for additional hours billed following the filing of the first motion for fees through the date when "briefing in the [first fees] m[otion] had concluded[,]" Pl.'s 2d Fees Mot. at 1.[8] In total, the plaintiff seeks to be compensated for 4545.15 hours billed by attorneys and 368.5 hours billed by

---

[8] As to the plaintiff's request to be compensated for hours spent preparing and briefing its first motion for fees, as opposed to the hours expended litigating the underlying action, it "is settled in this [C]ircuit" that "[h]ours reasonably devoted to a request for fees are compensable." <u>Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.</u>, 771 F.2d 521, 528 (D.C. Cir. 1985). "However, fees on fees must be reasonable, and not excessive." <u>Boehner v. McDermott</u>, 541 F. Supp. 2d 310, 325 (D.D.C. 2008) (internal quotation marks omitted). "Courts, therefore, have an obligation to scrutinize the hours [expended] preparing fee petitions to [e]nsure that the total is reasonable and that it does not represent a windfall for the attorneys." <u>Id.</u> (internal quotation marks omitted). Thus, the Court will not necessarily exclude from its calculation of attorneys' fees the hours expended preparing and briefing the plaintiff's first motion for fees, which are detailed in the plaintiff's first and second motions for fees, but will "scrutinize th[ose] hours[.]" <u>Id.</u>

non-attorneys.[9]   See Pl.'s Compliance Not., Ex. 21 (Consolidated Totals of Billing Records by Person) at 2.  The defendants respond that "[m]any of [the] plaintiff's specific bills suffer from infirmities that require significant reductions in the amount [of hours] claimed by [the] plaintiff," Defs.' Compliance Opp'n at 8, because they relate to "work pertaining to claims or issues [the] plaintiff lost or for work unrelated to and unnecessary for this litigation[,]" id. at 9, which are "[one hundred percent] non-compensable[,]" id. at 21.  They further argue that "there should be a [thirty-three percent] across-the-board discount of the remaining fees[,]" id., in light of the "[p]laintiff's attorneys['] use [of] block billing[,]" id. at 18, the facts that the "[p]laintiff's bills may contain duplicative billing[,]" id. at 19, and that "[m]any of [the] plaintiff's billing entries are excessive[,]" id. at 20.  The Court will first address whether certain hours billed by the plaintiff are non-compensable, and will then address whether the compensable hours billed by the plaintiff should be deducted.

i.      **Whether Certain Hours Are Non-Compensable**

In their compliance opposition, the defendants contend that certain billing entries should be excluded from the Court's attorneys' fees calculation as "non-compensable[,]" Defs.' Compliance Opp'n at 21, and highlights them in different colors in the exhibits submitted in support of their compliance opposition, see generally id., Ex. 1 (Bopp Law Firm Billing Records by Attorney ("Bopp Records")); id., Ex. 2 (Bopp Law Firm Supplemental Billing Records by Attorney ("Bopp Supp. Records")); id., Ex. 3 (Center for Constitutional Jurisprudence Billing Records ("the Center's Records")); id., Ex. 4 (Public Interest Legal Foundation Billing Records ("Legal Foundation Records")); id., Ex. 5 (Foley and Lardner Billing Records ("Foley Records")); id., Ex. 6 (Public Interest Legal Foundation, Foley and Lardner Expense Records

---

[9] In response to the defendants' compliance opposition, the plaintiff agreed to reduce the number of hours requested in its first and second motion for fees, see Pl.'s Compliance Reply at 3–15, as discussed infra.

("Legal Foundation, Foley and Lardner Expense Records")).  Specifically, the defendants argue that (1) entries highlighted in red should be excluded because they relate to the plaintiff's "unsuccessful motion" for a preliminary injunction, id. at 13; (2) entries highlighted in orange should be excluded because they relate to the "plaintiff's unsuccessful claims[,]" id. at 12; (3) entries highlighted in yellow should be excluded because they "referenc[e] work performed on tasks that are not broken down by claims, and there is no way to know how much of the work or task was related to unsuccessful claims[,]" id.; (4) entries highlighted in green should be excluded because they are "unrelated to the advancement of the litigation of [the] plaintiff's claims[,]" id. at 16; (5) entries highlighted in gray should be excluded because they relate to a "fee dispute between [the] plaintiff's former counsel and current counsel[,]" id.; and (6) entries highlighted in purple should be excluded because they "lack sufficient detail to determine whether they are case related and/or reasonable[,]" id. at 17.  The Court will address each set of color-coded entries in turn.

As to the entries highlighted in red, which the defendants contend should be excluded because they relate to the plaintiff's "unsuccessful motion" for a preliminary injunction, id. at 13, the plaintiff responds that "[l]ack of success disqualifies time spent in pursuit of [a] claim, not a motion (and then only when the unsuccessful claim is 'truly fractionable')[,]" Pl.'s Compliance Reply at 4 (footnote omitted) (quoting Heller v. District of Columbia, 832 F. Supp. 2d 32, 55 (D.D.C. 2011)), and that the "[p]laintiff's filing [of] a well-supported and legally comprehensive motion to secure evidence was eminently reasonable[,]" id. at 5.  The Court agrees with the plaintiff.

> [A] litigant who is unsuccessful at a stage of litigation that is a necessary step to [its] ultimate victory is entitled to attorney's fees even for the unsuccessful stage. After all, it is a rare litigant indeed who doesn't lose some skirmishes on the way to winning the war.  Lawsuits usually involve many reasonably disputed issues and

a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning.

Ashraf-Hassan v. Embassy of Fr. in the U.S., 189 F. Supp. 3d 48, 61 (D.D.C. 2016) (citations and internal quotation marks omitted) ("declin[ing] to reduce the fee award on account of [the] [p]laintiff's lack of success in certain pretrial motions"). Here, "the hours spent on the[] motion[] w[as] not 'excessive, redundant[,] or otherwise unnecessary,' and thus may form part of [the] [p]laintiff's reasonable fee award." Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); see also Gilbrook v. City of Westminster, 177 F.3d 839, 876 (9th Cir. 1999) (affirming the district court's granting of a fee award in conjunction with the prevailing plaintiff's unsuccessful efforts to gain injunctive relief), as amended on denial of reh'g (July 15, 1999). The Court therefore concludes that the entries highlighted in red identified by the defendants in their compliance opposition should not be excluded.

As to the entries highlighted in orange, which the defendants contend relate to the "plaintiff's unsuccessful claims[,]" Defs.' Compliance Opp'n at 12, the plaintiff concedes that the majority of these entries, which relate to the plaintiff's claims that were dismissed, see id. at 11–12 (detailing the procedural history of the plaintiff's "unsuccessful claims"), should be excluded, see Pl.'s Compliance Reply at 3. However, the plaintiff maintains that contrary to the defendants' assertion otherwise, some of the billing entries highlighted in orange, entered by the Legal Foundation, one of the four organizations representing the plaintiff in this matter, were not "expended wholly on 'unsuccessful claims[,]'" id. (capitalization removed). Specifically, the plaintiff argues that these billing entries relate to hours that (1) "w[ere] not expended on an unsuccessful claim[,]" (2) were "expended on Count 1 [of the Amended Complaint,] which became moot when the IRS granted [the plaintiff's] application" for 501(c)(3) tax-exempt status; (3) "w[ere] already properly apportioned"; (4) were "spent reviewing other relevant cases with

21

similar claims"; or (5) were "used in support of a successful claim or the [m]otion for [p]reliminary [i]njunction and other relief." Id. at 3.

Upon review of the plaintiff's objections to the exclusion of entries highlighted in orange by the defendants in their compliance opposition, the Court agrees that while most of the entries highlighted in orange identified by the defendants should be deducted, the entries highlighted in orange identified by the plaintiff in its compliance reply should not be excluded. As to the hours expended on Count I of the Amended Complaint, which was mooted when "the IRS ultimately approved the plaintiff's application for tax-exempt status[,]" True the Vote, Inc. v. Internal Revenue Serv., 71 F. Supp. 3d 219 at 226 ("not[ing] that the plaintiff d[id] not contest that [C]ount [I] of its [Amended] [C]omplaint [was] moot"), the Court agrees with the plaintiff that "a moot claim is not [an] unsuccessful claim" within the meaning of the EAJA, Pl.'s Compliance Reply at 3 n.7; see Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 948, 950 (D.C. Cir. 2005) (explaining that "the subsequent mootness of a case does not necessarily alter the plaintiffs' status as prevailing parties" and "affirm[ing] the [d]istrict [c]ourt's decision that [the plaintiffs] [were] entitled to attorney's fees and costs" pursuant to the EAJA). And, for the reasons discussed supra, the entries relating to the preparation of the plaintiff's motion for a preliminary injunction will also not be excluded. Finally, the Court agrees that the other entries highlighted in orange and identified by the plaintiff were "properly apportioned." Pl.'s Compliance Reply at 3 (citing Pl.'s Compliance Reply, Ex. 1 (Public Interest Legal Foundation Orange Unsuccessful Claim Objections ("Pl.'s Orange Objections")) at 7, 19 (indicating amounts already reduced)). Accordingly, the Court concludes that, with the exception of the billing entries highlighted in orange and identified by the plaintiff in its reply, see id. (identifying the entries highlighted in orange that should not be excluded); see also Pl.'s Compliance Reply, Ex.

1 (Pl.'s Orange Objections)  at 6, 21, 23, 30, 32, 33, 38, 64, 65, 67, 92, 94, 98, 99, 101, 102, 108, 112, 113, and 114 (providing  the reasoning  for why certain entries  highlighted  in orange should not be excluded), all other entries  highlighted  in orange and identified  by the defendants  in their compliance  opposition  will  be excluded.

As to the entries  highlighted  in yellow, which  the defendants  contend "are not broken down by claims[,]" Defs.' Compliance  Opp'n at 12, the plaintiff  responds that "[t]ime  records are never completely  divided  by claim—that  does not make them suspect[,]" Pl.'s Compliance Reply at 14, and that "[a] large majority  of [the] [d]efendants'  'yellow' partial-success  objections target tasks that would be performed  regardless  of whether  the unsuccessful  claims  had been brought and time that is unaffected  by any unsuccessful  claim[,]" id. at 16. However, "[i]n a good faith attempt to resolve the issue of attorney[s']  fees and bring th[is]  matter to a close, [the plaintiff's]  attorneys  have agreed, in good faith, to . . . reductions  for time spent in part on unsuccessful  claims[,]" i.e., the billing  entries  highlighted  in yellow. Id. Accordingly,  based on the plaintiff's  concession, the Court concludes  that the entries  highlighted  in yellow by the defendants  in their compliance  opposition  should be excluded.

As to the entries  highlighted  in green, which  the defendants  contend are "unrelated  to the advancement  of the litigation  of [the] plaintiff's  claims[,]" Defs.' Compliance  Opp'n at 16, the plaintiff  responds that it "submitted  attorneys'  hours for some work that was outside  the strict boundaries  of work related to this matter's pleadings,  briefing,  and other traditional  litigation efforts[,]" Pl.'s Compliance  Reply at 7. The plaintiff  therefore  "agrees with [the] [d]efendants that the time erroneously  included  for media-related  activities,  communications  with [the plaintiff's]  donors, and strictly  administrative  tasks are not compensable[,]" id. at 7 n.11, but argues that "much of the time  devoted to th[e]  work [identified  by the entries  highlighted  in

green] was specifically expended in pursuit of a successful resolution of this case[,]" id. at 7. Specifically, the plaintiff argues that hours billed (1) preparing for a February 6, 2014 congressional "hearing about the IRS targeting scandal[,]" id. at 8; (2) preparing for "potential [United States Department of Justice] and [Federal Bureau of Investigation] interviews following the 2014 [c]ongressional hearings[,]" id. at 9; (3) "prepar[ing] and filing [ ] the [Office of Congressional Ethics] complaint against Elijah Cummings[,]" id. at 10; (4) "prepar[ing] and submitting various [Freedom of Information Act] requests[,]" id. at 11; (5) "developing and conferencing about Judicial Watch's [c]ontinuity of [g]overnment theory[,]" id.; (6) "research[ing] [ ] the IRS's statutory authority[,]" and (7) "researching and writing a letter urging settlement to then-Attorney General Jeff Sessions[,]" id. at 12, are compensable.

As to whether time is compensable, the Circuit has explained that "[c]ompensable time should not be limited to hours expended within the four corners of the litigation. And, there must be a clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed." Nat'l Ass'n of Concerned Veterans v. Sec. of Def., 675 F.2d 1319, 1335 (D.C. Cir. 1982). In determining whether time is compensable, the Court should consider whether the work would "have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest . . . . Stated more simply, is it reasonable to conclude that a client would have authorized [the requested sum] in fees in a true attorney-client relationship?" Boehner v. McDermott, 541 F. Supp. 2d 310, 319 (D.D.C. 2008) (citation and internal quotation marks omitted) (awarding to the plaintiff "fees he incurred while participating as amicus curiae" in a different case because he "expended time on the amicus brief in pursuit of a successful resolution in this matter and a reasonably prudent attorney would have done the same"). Here, the Court agrees with the plaintiff that some of the entries highlighted in green

and identified by the plaintiff—specifically (2), (4), (6), and (7) above—in its compliance reply "w[ere] relevant to the settlement negotiations that eventually concluded in the Consent Order resolving this litigation[,]" Pl.'s Compliance Reply at 8, and "w[ere] directly relevant to the development of the legal strategy for this case and potential evidence to be used[,]" id. at 10, and therefore, they were "expended . . . in pursuit of a successful resolution in this matter and a reasonably prudent attorney would have done the same[,]" Boehner, 541 F. Supp. 2d at 319. However, the Court fails to see how (1), (3), and (5) would qualify for compensation, as it is quite unclear to the Court how that "time was expended in pursuit of a successful resolution of" this case. See Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1335. Accordingly, the Court concludes that, with the exception of the billing entries highlighted in green and identified by the plaintiff as to (2), (4), (6) and (7) above, see Pl.'s Compliance Reply at 8–12, all other entries highlighted in green and identified by the defendants in their compliance opposition, as well as (1), (3), and (5) above, should be excluded.

As to the entries highlighted in gray, which the defendants contend relate to a "fee dispute between [the] plaintiff's former counsel and current counsel[,]" Defs.' Compliance Opp'n at 16, the plaintiff "agrees that time spent between firms on matters unrelated to the litigation, even if in furtherance of the client's interest, are not attributable to the case and therefore not compensable under a fee-shifting scheme[,]" Pl.'s Compliance Reply at 13. Accordingly, based on the plaintiff's concession, the Court concludes that the entries highlighted in gray by the defendants in their compliance opposition should be excluded.

Finally, as to the entries highlighted in purple, which the defendants contend "lack sufficient detail to determine whether they are case related and/or reasonable[,]" Defs.' Compliance Opp'n at 17, the plaintiff responds that even "[i]f not 'clearly sufficiently specific,

[the] entries [identified by the defendants in purple] . . . are 'sufficiently detailed,'" Pl.'s

Compliance Reply at 14 (quoting Bennett v. Castro, 74 F. Supp. 3d 382, 405 (D.D.C. 2014)), and

that the "[d]efendants seem to often affirmatively ignore context to find an entry to be

puzzling[,]" id. (footnote omitted).   However, the plaintiff concedes that certain entries by

lawyers from the Legal Foundation and Foley, two of the organizations representing the plaintiff

in this litigation, should be deducted.   See id. & n.14 (identifying which entries highlighted in

purple should be excluded).   Upon review of these entries, the Court agrees with the plaintiff that

its concessions concerning the Legal Foundation and Foley entries highlighted in purple lack

sufficient detail and should be excluded, but that the remaining entries highlighted in purple

should not be excluded.

Accordingly, the Court concludes that certain hours billed by the plaintiff in its first and

second motions for fees are non-compensable and will exclude those hours from its attorneys'

fees calculation as set forth above.

### ii.   Whether a Percentage of the Compensable Hours Should Be Deducted

In addition to requesting that specific billing entries, identified by color-coding, be

excluded from the plaintiff's fee award, the defendants also argue that the "[p]laintiff engages in

numerous other improper billing practices that would warrant an additional across-the-board

[thirty-three] percentage reduction" of the remaining fees."   Defs.' Compliance Opp'n at 18.

Specifically, the defendants argue that (1) the plaintiff's use of "[b]lock billing time entries are

too vague for [ ] [the] [C]ourt to make a reasoned determination of whether the time spent on

tasks was appropriate[,]" id. at 18; (2) the "plaintiff has made no effort to account for any

potential double-billing even though many of its entries reflect multiple people working on the

same task[,]" id. at 20; and (3) the "plaintiff's lawyers [ ] spent far too much individual time on

projects[,]" <u>id.</u>  The plaintiff responds that (1) "[b]lock-billing 'is not per se impermissible[,]'" Pl.'s Compliance Reply at 17 (quoting <u>Open Cmtys. All. v. Carson</u>, Civ. Action No. 17-2192 (BAH), 2018 WL 8622230, at *2 (D.D.C. June 15, 2018)), (2) the "[d]efendants point to no instances of 'duplicative billing'" and that "[s]imply implying that duplicative billing is lurking, hidden in the records, does not justify a specific reduction, let alone an across-the-board one[,]" <u>id.</u> at 18; and (3) the "[d]efendants parade instances of 'excessive' time on briefing <u>in other cases</u> but fail to demonstrate the same in <u>this case</u>[,]" <u>id.</u>

Here, as to the defendants' contention that a percentage of the hours billed should be reduced based on the plaintiff's use of block billing, another member of this Court observed that

> [a]lthough block billing, where time records lump together multiple tasks, can mak[e] it impossible to evaluate their reasonableness, contrary to the defendants' review, such billing is not <u>per se</u> impermissible.  Instead, a fee petition need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.  Block billing is even less concerning . . . where block billing does not interfere[] with the [C]ourt's ability to evaluate the reasonableness of billed hours spent on specific motions or filings[.]

<u>Open Cmtys. All.</u>, 2018 WL 8622230, at *23 (second and fourth alterations in original) (citations and internal quotation marks omitted).  The Court then aptly noted that, "[u]ltimately, the test of the plaintiff['s] timesheets is whether they are 'of sufficient detail and probative value to enable the [C]ourt to determine with a high degree of certainty that such hours were actually and reasonably expended[,]'" <u>id.</u> at 3 (quoting <u>Role Models Am., Inc.</u>, 353 F.3d at 970), and here "the[] entries describe complementary tasks that would seamlessly occur and for which disaggregation would be difficult[,]" <u>id.</u>  And, as to the defendants' argument that a percentage of the hours billed should be reduced based on the possibility that they are "duplicative[,]" Defs.' Compliance Opp'n at 19, or "excessive[,]" <u>id.</u>, these entries have already been accounted for by deductions already made by the Court, <u>see</u> Part III.C.2.a.i., <u>supra</u>.  Accordingly, the Court denies

the defendants' request for a thirty-three percent reduction of the remaining hours requested in the plaintiff's first and second motions for fees.

The Court therefore grants in part and denies in part the plaintiff's first and second motions for fees. Specifically, the Court grants the plaintiff's first and second motions to the extent that they seek an attorneys' fee award for work performed in the underlying litigation and in preparing the first motion for fees, but denies the motions in all other respects.

### 3.    The Plaintiff's Third and Fourth Motions for fees

In its third motion for fees, the plaintiff requests compensation for hours billed by its counsel in "responding to th[e] [Court's May 30, 2019] Order[,]" Pl.'s 3d Fees Mot. at 1 n.1, and in its fourth motion for fees, the plaintiff requests compensation for hours billed by its counsel for "work performed since submitting" its third motion for fees, Pl.'s 4th Fees Mot. at 1 (listing the additional submissions that the plaintiff has filed since the Court's May 30, 2019 decision). The defendants respond to these fee requests, arguing that

> [t]he[] fees and costs in . . . . [the third and fourth motions for fees] should not be awarded because [the] plaintiff is solely to blame for the fact that additional work was required to create the[se] . . . [a]pplication[s]. The government should not be forced to fund [the] plaintiff's failure to submit the appropriate material. The Court should therefore disallow the entire amount.

Defs.' Compliance Opp'n at 11.

Here, although the Court found it appropriate to compensate the plaintiff for hours documented in the first and second motions for fees, some of which were incurred in preparing and briefing the plaintiff's first motion for fees, which qualify as a permissible fees-on-fees award, the Court does not find it appropriate to compensate the plaintiff for the hours set forth in the third and fourth motions for fees. Such an award "would effectively be a 'fees-on-fees-on-fees' award because . . . [the plaintiff's third and fourth motions for fees] only address[] [the

plaintiff's] request for a fees-on-fees award.  Such a 'fees-on-fees-on-fees' award is too attenuated from [the] original adjudication to be compensable." Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation, 80 F. Supp. 3d 149, 162 (D.D.C. 2015) (citing Means v. District of Columbia, 999 F. Supp. 2d 128, 136 n.7 (D.D.C. 2013)); see Means, 999 F. Supp. 2d at 136 n.7 ("not[ing] that at a certain point fees-on-fees litigation unnecessarily protracts litigation and becomes so far removed from the original adjudication that the prevailing parties claim may be too attenuated").  Moreover, the Court agrees with the defendants that they "should not be forced to fund [the] plaintiff's failure to submit the appropriate material" in support of its first and second motions for fees. Def.'s Compliance Opp'n at 11; see True the Vote, Inc., 2019 WL 2304659, at *12–13 (identifying the deficiencies in the plaintiff's first and second motions for fees and providing the plaintiff an opportunity to cure those deficiencies).  Accordingly, the Court denies the plaintiff's third and fourth motions for fees in their entirety and will not permit the plaintiff to recover any fees incurred after May 30, 2019.

## IV.    CONCLUSION

For the foregoing reasons, the Court (1) grants in part and denies in part the plaintiff's first and second motions for fees, (2) denies as moot the plaintiff's motion for oral argument, (3) denies the plaintiff's motion to strike, (4) denies the plaintiff's third and fourth motions for fees, and (5) grants the defendants' motion for partial reconsideration.  The Court will defer issuance of a final Judgment until the parties have calculated the exact amount owed to the plaintiff, consistent with the ruling in this Memorandum Opinion.

**SO ORDERED** this 23rd day of September, 2020.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.