# Agreement

This is an agreement between True the Vote, Catherine Engelbrecht, (hereinafter referred to as "TTV") and the Public Interest Law Foundation, Center for Constitutional Jurisprudence, and Foley & Lardner (hereinafter referred to as "PILF" for sake of convenience). The purpose of this agreement is to establish a mutual understanding and agreement relating to the prospective collection of and distribution of expenses and attorney fees that might be negotiated in exchange for a release in the pending lawsuit *True the Vote, Inc., v. Internal Revenue Service, et. al,* No. 1:13-cv-000734-RBW, In the United States District Court for the District of Columbia ("the Litigation"). The parties agree as follows:

1. PILF has significant out of pocket costs related to the Litigation, including attorney fees expended which could and should be recoverable in this matter.
2. PILF agrees to provide suitable summary documentation to explain and establish the litigation expenses incurred by PILF and the attorney fees reasonably charged by PILF in the course of the Litigation, for purposes of settlement negotiations and discussions.
3. TTV will first attempt to negotiate a reasonable settlement with the Internal Revenue Service and its attorneys so as to hopefully minimize the burden on PILF relative to the "prove up" of the litigation expenses and attorney fees. If a settlement is not capable of being achieved and it becomes necessary to present and prove up attorney fees to the court, the parties will later address the allocations and obligations of the parties relative to the prove up of such attorney fees to the court as well as the distribution of such funds.
4. If TTV is successful in negotiating a settlement of litigation expenses and attorney fees, TTV agrees that the funds subject to the negotiated settlement and then collected will be distributed as follows:
    a. The first funds will be used to reimburse PILF for its litigation expenses, which sum is presently known and understood to be $46,000. The next funds will be used to reimburse the Bopp Firm for its litigation expenses, not to exceed $10,000.00.
    b. Of those funds which have been paid and then remain after all litigation expenses have been paid, TTV agrees to pay PILF, or its assigns and designees, a sum which is forty percent (40%) of the total remaining balance.
5. Confidentiality requirements notwithstanding, which may be imposed as a condition of settlement, but which TTV will seek to avoid if at all possible,

PILF will be entitled to review any and all documentation that relates to the negotiated settlement of the Litigation between TTV and the Internal Revenue Service, as well as the list of litigation expenses of The Bopp Firm which are charged and repaid in the second payment of monies. The parties mutually agree that confidentiality of this agreement is in all parties best interests, and agree to not divulge the terms of this agreement to any party that does not have a legal interest in the agreement.

6. Upon settlement of the Litigation, TTV and PILF, on behalf of themselves and their successors and assigns, further hereby release and discharge each other, their current and former employees, partners, officers, directors, agents, attorneys, insurers, affiliated entities, successors, or assigns, including but not limited to the parties named in this Agreement of and from any and all claims, demands, liabilities, causes of action, damages, attorneys' fees, or expenses of any nature whatsoever, whether known or unknown, foreseen or unforeseen, accrued or unaccrued arising out of, related to, or having any connection with the Litigation.
7. This agreement supersedes any and all agreements between the parties which have existed to date, and to the extent that any portion of said agreements are in any way contradicted by the terms of this agreement, this agreement shall apply.
8. There are no other agreements or representations between the parties which are made or which survive the execution of this agreement, which is made by those persons having authority to bind the interested parties for both TTV and the PILF group of counsel.

*The rest of this page left intentionally blank*

AGREED:

Catherine Engelbrecht
CATHERINE ENGELBRECHT
For herself and True the Vote

Date: 12/12/17

The Bopp Law Firm, PC
By its principal

Date: 12/11/17

Brian C. Akers
The Akers Firm
By its MANAGER

Date: 12-12-17

Public Interest Legal Foundation
By its President

Date: 12-13-17

Center for Constitutional Jurisprudence
By its Director

Date: 12/13/2017

Cleta Mitchell
Foley & Lardner, LLP
By its Partner

Date: 12-13-2017

## Certificate of Service

I hereby certify that on October 22, 2020, I caused the foregoing and all attachments thereto in the above-captioned matter to be filed under seal with the United States District Court for the District of Columbia via the Court's CM/ECF system. In addition, pursuant to LCvR 5.1, I served, via email, the foregoing and all attachments thereto upon all parties.

/s/ James Bopp, Jr.

James Bopp, Jr.

TRUE the VOTE

February 21, 2017

Mr. Noel H. Johnson
Public Interest Legal Foundation
32 E. Washington St. Suite 1675
Indianapolis, IN 46204

Mrs. Cleta Mitchell
Foley and Lardner, LLP
Washington Harbour
3000 K Street, NW Suite 600
Washington, DC 20007

Dear Mr. Johnson and Mrs. Mitchell -

Please accept this letter as formal notice that you are hereby released from any obligation and or contract to litigate on my behalf or to represent me as legal counsel, effective immediately.

I will contact you further regarding my new counsel, once counsel is obtained. Any inquiries can be directed to Mr. Brock Akers at 713.877.2500.

Sincerely,

Catherine Engelbrecht
True the Vote

M 713.401.3550 W www.truethevote.org A PO Box 131768 | Houston, Texas 77219-1768

## Certificate of Service

I hereby certify that on October 22, 2020, I caused the foregoing and all attachments thereto in the above-captioned matter to be filed under seal with the United States District Court for the District of Columbia via the Court's CM/ECF system. In addition, pursuant to LCvR 5.1, I served, via email, the foregoing and all attachments thereto upon all parties.

/s/ James Bopp, Jr.

James Bopp, Jr.

# LEGAL SERVICES AGREEMENT

## SUMMARY

This Agreement ("Agreement") is entered into on the 13th day of May, 2013, by, between and among TRUE THE VOTE ("Clients"), ACTRIGHT LEGAL FOUNDATION, 209 West Main Street, Plainfield, Indiana 46168 ("Foundation"). As used herein, the terms "Foundation", "Attorney" and "Client" or their plurals include any subsidiaries, assigns, agents, associates, employees, or subcontractors of the same.

Contact Information:

Foundation
Zachary S. Kester
ActRight Legal Foundation
209 West Main Street
Plainfield, IN 46168
zkester@actrightlegal.org
202-683-9405

Catherine Engelbrecht
True the Vote
7232 Wynnwood Lane
Houston, TX 77008
Catherine@truethevote.org
832-444-7701

Foundation will advise Client regarding its tax-exempt status and also represent Client before the IRS or other relevant administrative body, and bring and see through to completion, including appeals, a lawsuit against the IRS and other relevant defendants regarding Client's Form 1023, Application for Recognition of Exemption, the follow-up questions or requests for additional information from the IRS, and Client's responses to the same, and the Client's tax exemption.

In addition, Foundation will challenge the actions taken by the IRS throughout the application process as being in violation of 26 USC 7431 (unauthorized access of tax return information), and other constitutional doctrines as may be determined.

Other matters apart from the matters described in the preceding paragraphs of this Agreement (excluding, any post-trial motions or appeals of a court decision made in the lawsuit) shall be undertaken only with the prior written consent of the parties hereto and shall be paid on an hourly basis, or such other arrangements, as the parties may then agree upon in writing.

The parties understand that Cleta Mitchell has agreed to represent Client via her work as Of Counsel with Foundation.

and Brett Akers

The parties understand that Cleta Mitchell has agreed to represent Client via her work as Of Counsel with Foundation.
have

In consideration of the mutual promises of the parties and other good and valuable consideration, the parties hereby agree to the terms listed on this page, as well as those contained on the following pages, incorporated herein, and the detailed descriptions of services delineated in the Addendum, incorporated herein.

Signed,

Catherine Engelbrecht
President, True the Vote

Zachary S. Kester
Managing Attorney, Foundation

## **Particular Terms of this Contract**

Client(s) agree(s) to the following, subject to the express terms of the Summary, above.

Section 1. Engagement. During the terms of this Agreement, the Clients engage Attorneys, and the Attorneys provide Clients with legal representation as delineated in Section 4, below. The Attorneys shall be available for work at reasonable times and for reasonable periods of time to perform services under this contract. Attorneys shall report the person delineated on the Summary Page or another agent that the Clients may designate. Clients and Attorneys shall work with any agents, associates, employees, or subcontractors of the other as needed.

Section 2. Compensation. This is a pro bono contract, which may from time to time be amended. Client shall be expected to pay reasonable costs.

Section 3. Payment Schedule. Timely, upon receipt of invoice.

Clients agree to reimburse Foundation for reasonable costs associated with this representation.

Attorneys shall, upon successful completion of the matter and where available, pursue an award of attorneys' fees and costs from the Court against the government. Clients agree that any such fees and costs recovered belong to the Foundation, sans any payment(s) made by Clients to Foundation under this contract. Client agrees not to waive the right to attorney fees or costs.

Section 4. Duties. Clients will cooperate fully in providing documents and information, answering questions, and in preparing and handling the matter in general.

Clients will be truthful at all times and reveal all information necessary and relevant to the prosecution of this legal representation and shall fully cooperate in all legal proceedings, including recovery of attorneys' fees and costs.

Attorneys provide consulting and litigation representation in all matters relating to this case. Specifically, Attorneys provide representation protecting freedom of religion, other constitutional rights and related claims in proactive litigation challenging infringing laws and regulations, as needed.

Section 5. Indemnification. Client will indemnify and hold harmless the Foundation and well as pay any claims, costs, attorneys' fees or expenses of whatever nature awarded by the court or agreed to in settlement of this matter, if applicable.

Section 6. Privilege & Confidentiality. This relationship is protected by the Attorney/Client Privilege and the parties agree that any conversation made between Foundation and Clients in confidence for the purpose of seeking, obtaining, or providing legal assistance is privileged and shall not be disclosed except to further the representation of Clients.

Section 7. Publicity, Media and Fundraising. Clients understand that this representation may include communication with the news media. Clients agree to allow Foundation to control the interaction and communication with the media, and further agrees not to make any statements to representations to the news media regarding the subject(s) of this representation without prior approval of the Foundation.

Clients understand that the ability of the Foundation to provide this legal representation is directly connected to the ability of Foundation to inform supporters of the Foundation about the work done by the Foundation. Clients agree to fully cooperate with the Foundation in the publicizing of non-privileged, non-confidential, or otherwise public information relating to the representation, including participation in recorded interviews and testimonials. All such communications shall be made pursuant to the applicable canons of professional conduct. Clients agree to allow Foundation to use Clients' image and relevant, non-privileged, non-confidential, or otherwise public information in materials intended to communicate to the supporters of the Foundation and in furtherance of the Foundation's mission.

Specifically, but not limiting the generality of the foregoing, Clients authorize Attorney to disclose information that is contained in the public record, facts set forth in a demand letter, or other facts and circumstances consistent with objectives of Attorney's representation, including increasing publicity and assisting in fundraising.

Section 8. Term. This Agreement shall commence on the date signed by at least two of the parties on the Summary Page, above, and shall terminate pursuant to Section 10, below.

Section 9. Records and Use and Storage of Software and Data. The Clients and Attorneys shall keep full and accurate records of all work performed under this Agreement. Records will be maintained for six years. Clients permit Attorney to use all forms of electronic communication, document and data management and storage, and word processing for all matters related to the representation (including the use of email and facsimile) so long as reasonable precautions are taken to maintain Client confidences and protect the Attorney/Client privilege.

Section 10. Termination. Termination of this Agreement by either party shall be pursuant to Rule 1.16 of the Indiana Rules of Professional Conduct, Declining or Terminating Representation.

Section 11. Time. Time is of the essence of the Agreement.

Section 12. Waiver. The waiver by Client of any breach of any provision of this Agreement shall not constitute a continuing waiver or a waiver of any subsequent breach of the same or a different provision hereof.

Section 13. Assignment. No party hereto may transfer or assign this Agreement without the prior written consent of the other party.

Section 14. Law Governing. This Agreement shall be governed by and construed in accordance with the laws of Indiana.

Section 15. Presumption. This Agreement or any section thereof shall not be construed against any party due to the fact that said Agreement or any section thereof was drafted by said party.

Section 16. Sole Agreement. This Agreement constitutes the sole and complete agreement of the parties as to the subject matters of this Agreement, and correctly sets forth the rights and obligations of the parties hereto. Any agreement or representation between the parties hereto respecting the subject matter of this Agreement, whether oral or in writing, which is not expressly set forth in this instrument, is null, void, and of no legal effect.

The parties understand that Attorneys have an agreement between them as to how they will operate with regards to the matters at issue under this Agreement. This agreement is unaffected by this "Sole Agreement" provision.

Section 17. Modification. This Agreement may be modified only by a written agreement signed by both Clients and Attorneys, and any attempted oral modification of this Agreement, whether real or purported, shall be of no force or effect. An email exchange evincing a "meeting of the minds" sent from user-identified email or device shall be adequate to modify this Agreement.

Section 18. Severability. In the event that any part of this Agreement is construed or declared unenforceable, the remainder shall continue in full force and effect as though the unenforceable portion or portions were not included herein.

Section 19. Breach. If any party violates this Agreement, that party shall pay such damages as the Court may reasonably impose, including, but not limited to, all attorney's fees and costs associated with enforcing the Agreement.

Section 20. Notices. All notices or communications required or permitted by this Agreement shall be deemed duly served and given when (i) personally delivered to the party to whom directed, (ii) mailed, first-class postage prepaid, when addressed to the person identified in the Summary Page of this Agreement, or at such other address as may be specified by addressee from time to time; or (iii) via email to the appropriate email address provided in the Summary Page, or at such other email address as may be specified by the party from time to time.

Section 21. Facsimile/Electronic Signatures. Facsimile or electronic transmission of any signed (physically or electronically) original document, and the retransmission of any signed facsimile transmission, shall be the same as delivery of the original signed document. At the request of any party, a party shall confirm documents

with a facsimile transmitted signature by signing an original document.

Section 22. Authority and Representations Thereof. By signing on the Summary Page, the signatories each have and represent that they have the authority to bind the person for whom they are signing and each intends by signing to bind Clients, and Attorneys, independently and respectively, to this Agreement.

## Certificate of Service

I hereby certify that on October 22, 2020, I caused the foregoing and all attachments thereto in the above-captioned matter to be filed under seal with the United States District Court for the District of Columbia via the Court's CM/ECF system. In addition, pursuant to LCvR 5.1, I served, via email, the foregoing and all attachments thereto upon all parties.

/s/ James Bopp, Jr.

James Bopp, Jr.

FOLEY
FOLEY & LARDNER LLP

ATTORNEYS AT LAW
WASHINGTON HARBOUR
3000 K STREET, N.W.
SUITE 600
WASHINGTON, D.C. 20007-5109
202.672.5300 TEL
202.672.5399 FAX
foley.com

WRITER'S DIRECT LINE
202.295.4081
cmitchell@foley.com EMAIL

CLIENT/MATTER NUMBER
999999-0310

June 24, 2013

**VIA E-MAIL**

Mr. Zachary S. Kester
ActRight Legal Foundation
209 West Main Street
Plainfield, IN 46168
Email: zkester@actrightlegal.org

Ms. Catherine Engelbrecht
President
True the Vote, Inc.
7232 Wynnwood Lane
Houston, TX 77008
Email: catherine@kingstreetpatriots.org

Re: Engagement Letter Agreement for Pro Bono Legal Services

Dear Mr. Kester and Ms. Engelbrecht:

We are pleased that Foley & Lardner LLP (the "Firm") will be providing legal services to ActRight Legal Foundation and True the Vote, Inc. We strive to deliver high quality, cost effective legal services and will always work in your best interests, subject to our duties of professional responsibility. Please do not hesitate to contact us if you have any concerns.

**1. Scope of Engagement**

This letter sets forth our agreement of the terms and conditions under which we will provide legal services ("the Agreement").

a. Our clients are ActRight Legal Foundation and True the Vote, Inc. (the "Organizations"), and not any other affiliated entities, or employees, officers, directors or other individuals.

b. The scope of our engagement will be the representation of True the Vote, Inc. in a civil action filed in the United States District Court for the District of Columbia, styled: *True the Vote, Inc. v. Internal Revenue Service, et al.*, Case No. 1:13-cv-00734. In addition, we will assist ActRight Legal Foundation, both in connection with such civil action, and in

connection with issues arising out of ActRight Legal Foundation's other litigation matters involving the IRS. (Collectively, we refer the engagement, as defined, as the "Matters").

c. Act Right Legal Foundation's lawyers will also be co-counsel with the Firm in the civil action, and the firm will serve as both lead and local counsel. As local counsel, we are obligated to make "reasonable inquiry" and determine that any document to be signed by us is well grounded in fact and warranted by existing law or a good faith argument for its change. The law in this jurisdiction does not permit us to simply delegate to forwarding co-counsel our duty of reasonable inquiry.

d. While we will make every effort not to unduly delay the matter, the length of our inquiry necessarily will depend upon the complexity of the issues and how well we have been informed of the facts at the time we receive the pleading. For litigation matters, we ask that any papers to be filed with the court be prepared and sent to us in sufficient time for our review.

e. The provision of legal services on a *pro bono* basis is limited to the specific Matters identified above. If the Organizations request additional or other work, or specifically, if the civil action results in an appeal or related proceedings or transactions, we will at that time consider the terms of our representation on such additional work, appeals, related proceedings or transactions. However, we reserve the right to limit our *pro bono* representation to these particular Matters.

2. **Joint Representation**

Our work for the Organizations in connection with the civil action may be considered a joint representation of ActRight Legal Foundation and True the Vote, Inc. As we have discussed, one way to proceed with civil action is for each of you to have separate counsel. There are issues where you may have potential conflicts such as, for example, contribution, indemnification and the desirability of settlement, just to name a few. Nevertheless, you have each indicated that you want us to represent both of you. We do not believe that there are currently any conflicts in your position and, as a result, we do not believe our representation of one of you will be affected by our representation of the other.

If you disagree on issues going forward or if your interests in the litigation should for whatever reason no longer be common, everyone agrees that we may continue to represent ActRight Legal Foundation in the civil action and True the Vote, Inc. will make arrangements to obtain separate counsel. If you disagree on any issue, we will not be able to represent any one of you with respect to that issue if you are not able to resolve it. If the differences are serious enough, we may be required by the applicable ethical rules to withdraw from the civil action completely, in which case you will each have to seek other counsel.

FOLEY
FOLEY & LARDNER LLP



You agree that the Firm may disclose and discuss confidential or otherwise privileged information obtained in the course of its representation in the Matters with both Organizations. However all confidential information from each Organization shall be treated as confidential with respect to any third party, and all communications between the Firm and each Organization shall be deemed protected from disclosure to third parties by various privileges and immunities as applicable, including, without limitation, the attorney-client privilege and the doctrines of attorney work product, joint defense, and community of interest, or any other protections which would normally exist with respect to any third party.

**3. Staffing**

Michael Lockerby and I will retain primary responsibility for the legal services provided to the Organizations and will involve other attorneys and legal assistants in the Organizations' work when we believe that will be appropriate. We will keep the Organizations informed of our progress, and utilize our best efforts to respond to the Organizations as promptly as possible. In return, we need the Organizations to keep us informed of any developments that affect the Matters as soon as the Organizations become aware of them, and to be available when we need to consult with the Organizations.

**4. Conflicts of Interest**

We have checked our records and have determined that there is no conflict of interest that prevents us from working on the Matters.

**5. Advance Waiver of Conflict**

a. Our Firm has many other clients, and during our work for the Organizations, we might be asked by other clients to represent them in unrelated matters that involve the Organizations. We believe that we can handle these unrelated matters without affecting our ability to represent the Organizations vigorously in these Matters. Our ethical rules require us to obtain the Organization' consent to this advance waiver in writing.

b. The Organizations agree that, even though we represent the Organizations in these Matters, we may represent current or new clients in matters where their interests are directly adverse to the Organizations, but where the work is substantially unrelated to the Organizations' Matters. This will include our being trial counsel in litigation adverse to the Organizations. We agree that we will not use any confidential information obtained in representing the Organizations, and that we will, at the Organizations' request, screen other Firm lawyers from the Organizations' Matters to be sure that confidential information is not exchanged between the teams working on the Organizations' Matters and that of the other client(s).

FOLEY
FOLEY & LARDNER LLP

Mr. Zachary S. Kester
Ms. Catherine Engelbrecht
June 24, 2013
Page 4

6. **Fees and Billing**

a. Our Firm will represent the Organizations in the Matters on a *pro bono* basis; that is, the Organizations will not be charged for time spent by attorneys or paralegals on the Matters. However, ActRight Legal Foundation will be responsible for all costs generated in the course of our representation in the Matters, including court costs, filing fees, and other expenses (which we may ask ActRight Legal Foundation to pay directly) and costs incurred by us internally on the Organizations' behalf, such as faxing, photocopying and delivery costs (for which we will invoice ActRight Legal Foundation periodically).

b. We may send you an accounting of the value of time, using our standard rates, expended on behalf of the Organizations. We ask that the Organizations consider regarding this as the value of our in-kind donation to the Organizations and reflect this contribution in any way that you regularly recognize contributions of money or services.

c. Should we determine at any point during our representation or upon completion of this Matters to recover attorneys' fees or expenses from the opposing party or the court, the Organizations agree to cooperate fully in our effort to do so, and the Organizations further agree that any such recovery will belong exclusively to Foley & Lardner LLP.

7. **Limitations of Liability**

Foley & Lardner LLP is a limited liability partnership under the laws of Wisconsin. This means the Organizations' right to recover damages in a legal malpractice action that may exceed our insurance and Firm assets is limited to the personal assets of the attorneys whose acts or omissions gave rise to the Organization' claim.

8. **Termination of Representation**

a. Either of us may terminate this agreement at any time for any reason by written notice. Our Firm is subject to applicable rules of professional conduct when terminating a client engagement. If we terminate the engagement, our Firm will take all reasonable and practical steps to protect the Organizations' interests in the Matters and, at the Organizations' request, suggest possible new counsel. We will provide new counsel with any papers the Organizations have given us. If permission from the court is necessary for withdrawal, we will promptly apply for it, and the Organizations will engage new counsel to represent the Organizations.

b. After our representation of the Organizations in connection with the Matter is concluded, changes may occur in the applicable laws or regulations which could have an impact on the Organizations' future rights and liabilities. While we would be happy to

FOLEY
FOLEY & LARDNER LLP



continue to represent the Organizations, we can assume no continuing obligation to advise the Organizations, on a *pro bono* basis or otherwise, with respect to future legal developments, unless the Organizations specifically engage us to provide additional advice.

9. **Disposition of Files and Records**

Following the termination of our representation in the Matters, any otherwise nonpublic information the Organizations have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional conduct. At the Organizations' request, the Organizations' papers and property will be returned to the Organizations promptly. Our own files, including lawyer work product, pertaining to the matter will be retained by the Firm. These Firm files include, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal lawyers' work product such as drafts, notes, internal memoranda and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers. All such documents retained by the Firm will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials retained by us within a reasonable time after the termination of the Matters, unless the Organizations request otherwise.

10. **Communication**

a. Periodically, the Firm may send information to clients about our Firm or legal matters that may be of general interest. The Organizations agree that our Firm may send the Organizations this material by electronic mail, among other means. The Organizations also agree that we may communicate with the Organizations on matters related to this representation by electronic mail on an unencrypted basis.

b. Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning the Organizations' Matters and the results that might be anticipated. Any such statement made by any partner or employee of our Firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed by the Organizations as a promise or guarantee.

If the arrangement described in this letter is acceptable to the Organizations, please confirm the Organizations' agreement by signing the attached Engagement Agreement in the space provided and return it to us.

FOLEY
FOLEY & LARDNER LLP

Mr. Zachary S. Kester
Ms. Catherine Engelbrecht
June 24, 2013
Page 6

We appreciate the opportunity to represent the Organizations in these Matters and look forward to working with the Organizations.

Very truly yours,

FOLEY & LARDNER LLP

By: ______________________
Cleta Mitchell

Enclosure

**AGREED & ACCEPTED:**

**ACTRIGHT LEGAL FOUNDATION**

By: ______________________
Zachary S. Kester

Managing Attorney

8/19/13
Date

**TRUE THE VOTE, INC.**

By: ______________________
Catherine Engelbrecht

President

______________________
Date

## Certificate of Service

I hereby certify that on October 22, 2020, I caused the foregoing and all attachments thereto in the above-captioned matter to be filed under seal with the United States District Court for the District of Columbia via the Court's CM/ECF system. In addition, pursuant to LCvR 5.1, I served, via email, the foregoing and all attachments thereto upon all parties.

/s/ James Bopp, Jr.

James Bopp, Jr.

## AGREEMENT FOR LEGAL SERVICES

THIS AGREEMENT, is made and entered into by and between True the Vote, Inc., hereinafter referred to as "Client", and The Bopp Law Firm, P.C., hereinafter referred to as "The Firm." This agreement supersedes any and all previously executed agreements between the parties with respect to the services contemplated herein.

THE PARTIES AGREE as follows:

1. **Scope of Presently Contemplated Work.** Client desires to retain The Firm to represent Client in the case of *True the Vote, Inc. v. Internal Revenue Service, et al.*, Case No. 1:13-cv-00734, in the D.C. District Court and in any subsequent appellate proceedings.

2. **Advance.** The Client shall pay to The Firm, in advance, the sum of $5,000.00 for the legal advice services contemplated by this Agreement, (the "advance payment") to be withdrawn by The Firm as fees are earned and expenses incurred as recorded by the statement or invoice. Fees and expenses shall be due and payable on the date of the statement or invoice and credited against the advance payment on that date.

2.1 If the advance payment is exhausted in The Firm's performance of services under paragraph 1 this Agreement, the amount of fees and expenses listed in a statement or invoice that exceeds that provided in the advance payment shall be due and payable on the date of the statement or invoice.

2.2 At the termination of The Firm's employment by Client, any funds from the advance payment not yet earned as evidenced by the statement or invoice encompassing the date of termination shall be refunded to Client.

3. **Hourly Rates.** The Firm agrees to provide Client the requested legal services. Client will pay The Firm the usual and customary hourly rates plus reimbursable expenses. The hourly rates are $790.00 for James Bopp, Jr. and $300.00 for Courtney Turner Milbank. Other attorneys may assist with the Client at The Firm's discretion at their usual and customary hourly rates. In addition, The Firm may charge an agreed-to flat fee for specific services, when the results in the matter justify the flat fee.

3.1 Costs and expenses are in addition to fees and are to be paid by Client in advance or upon billing. Costs and expenses include, but are not limited to, court charges, copies, postage, telephone, fax, travel, parking, special materials, exhibits, photographs, investigators, experts, computer assisted legal research and all other disbursements, costs, or expenses attributable to said legal services. Client agrees to pay for computer assisted legal research at the rate of $3.00 per minute. Client agrees to pay for copies and facsimiles (incoming or outgoing) at the rate of $.25 per page for 1-25 total pages, $.15 per page for 26-100 total pages, and $.10 per page for more than 100 total pages. Total pages are those copied or facsimiled during a copying or facsimiling event.

4. **Statements**. The Firm will regularly and at least once per month provide Client with statements of fees, costs, and expenses accrued ("statement" or "invoice"). A monthly statement of attorney fees, costs and expenses will be rendered. All such statements are due and payable within 30 days. If any monthly statements are not paid when due, legal interest of 1.5% shall be assessed per month until paid. Client agrees to pay reasonable attorney fees and costs of collecting Client's account if legal action is taken to collect any attorney fees or costs and expenses due to The Firm.

5. **Termination**. If Client elects to abandon Client's case or to substitute counsel, Client is responsible for all attorney fees, costs and expenses already incurred and, if applicable, for such additional fees, costs and expenses for services as may be required to effect a termination of the proceeding or to obtain a court order permitting withdrawal. The Firm will be obligated to honor any instructions of Client requesting termination of proceedings or substitution only if such instructions are delivered to The Firm in writing bearing the signature of an individual authorized to sign on behalf of Client. Should The Firm be required to perform any services or functions regarding Client's case after receipt of such instructions, Client is responsible for attorney fees, costs, and expenses for these services. If Client has a deposit balance, this balance will be refunded. Any time spent by The Firm in response to any inquiry by or on behalf of Client concerning the Client's case following termination is subject to charge at the rates provided for hourly fees.

6. **File Retention and Destruction.** At the conclusion of the matter, The Firm shall retain the Client's legal files for an indefinite period. At any time after five years have elapsed since the conclusion of the matter, after ten business days of notifying the Client in writing, including by electronic mail sent to your last known electronic mail address, The Firm may destroy these files unless the Client notifies The Firm in writing that the Client wishes to take possession of them. The Firm reserves the right to charge administrative fees and costs associated with researching, retrieving, copying and delivering such files.

7. **Disputes.** This Agreement shall be governed by Indiana law and Indiana courts. Any dispute arising under or in connection with the agreement or related to any matter which is the subject of this Agreement shall be resolved on the basis of Indiana law without giving effect to Indiana's conflict of law principles and brought in a court located in Indiana.

The undersigned persons represent that they are duly authorized to sign this agreement and hereby agree to the terms and conditions of legal employment, as specified above.

Signed on February 22, 2017.

______________________________, for Client
Catherine Engelbrecht, President
True the Vote, Inc.

______________________________, for The Firm
James Bopp, Jr.
The Bopp Law Firm, P.C.
The National Building
1 South 6th Street
Terre Haute, Indiana 47807-3510
812/232-2434 812/235-3685 (fax)
812/243-0825 (cell)

## Certificate of Service

I hereby certify that on October 22, 2020, I caused the foregoing and all attachments thereto in the above-captioned matter to be filed under seal with the United States District Court for the District of Columbia via the Court's CM/ECF system. In addition, pursuant to LCvR 5.1, I served, via email, the foregoing and all attachments thereto upon all parties.

/s/ James Bopp, Jr.

James Bopp, Jr.