**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRUE THE VOTE, INC.,**<br><br>*Plaintiff*,<br><br>*v.*<br><br>**INTERNAL REVENUE SERVICE, *et al.*,**<br><br>*Defendants*. | Civ. No. 13-cv-00734-RBW |

**Former Attorneys' Response in Opposition to**
**Plaintiff's Motion to Quash Attorney's Charging Lien**

## INTRODUCTION

The Attorney's Charging Lien remains valid. The Public Interest Legal Foundation ("Foundation"), Foley and Lardner LLP ("Foley"), and Center for Constitutional Jurisprudence (together, "Former Attorneys") represented the Plaintiff from the preparation and filing of this lawsuit in May of 2013 until late February 2017. During that nearly four-year period, Former Attorneys diligently worked, *pro bono*, to represent Plaintiff and expose the actions of the Government for which fees are now being awarded. Former Attorneys represented the Plaintiff in responding to the Government's Motion to Dismiss, in appealing this Court's decision on the Motion to Dismiss, and in pursuing that appeal to successful completion. Following the successful appeal, Former Attorneys represented the Plaintiff in responding to the Government's Motion for Summary Judgment. The Plaintiff's original application for fees sought over $1.6 million dollars for 3100 hours of work performed by Former Attorneys and $305,000 for the 815 hours of work performed by its current counsel. (*See* Doc. 151-8 at 27, 151-9 at 125, 151-10 at 161, 151-11 at 15). In other words, even after adjustments for unsuccessful claims and other



"FILED UNDER SEAL"

billing judgment, work performed by Former Attorneys comprises approximately **80 percent** of Plaintiff's original application for fees. Even taking in account the reductions that have been made by the parties and this Court in the time since the original application for fees was filed, the vast majority of the anticipated fee award remains attributable to Former Attorneys' representation. Yet, at the eleventh hour, the Plaintiff moves this Court to quash and invalidate Former Attorneys' lien on the fee award. That request should be denied because the Charging Lien remains valid.

## ARGUMENT

### I. Former Attorneys Have a Valid Express Charging Lien Against a Portion of Plaintiff's Recovery of Attorneys' Fees, Costs, and Expenses.

A charging lien attaches where there exists "an agreement from which the conclusion *may reasonably be reached* that [client and attorney] contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered." *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996) (emphasis in original). Such agreements should be "'liberally construed.'" *Wolf*, 682 A.2d at 201 (quoting *Willoughby v. Mackall*, 5 App. D.C. 162, 166 (1895), *aff'd*, 167 U.S. 681 (1897)).

Such an agreement plainly exists here. In 2013, Plaintiff and Former Attorneys separately agreed that any attorneys' fees recovered belong to the Former Attorneys. *See* Plaintiff's Motion to Quash Exhibit C at Section 3; Plaintiff's Motion to Quash Exhibit D at 6(c). In December 2017, the Plaintiff, Catherine Engelbrecht and Former Attorneys reached an agreement (hereinafter "December 2017 Agreement"). Plaintiff's Motion to Quash Exhibit A.[1] As part of

[1] Former Attorneys do not concede that the December 2017 Agreement supersedes the 2013 Agreements. The December 2017 Agreement involved a total of five parties. The relevant agreements for the Attorneys Lien are the 2013 fee agreements between only two parties, one agreement between the Plaintiff and the Foundation and one agreement between the Plaintiff and Foley. As neither of these 2013 Agreements involve all five parties to the December 2017 Agreement, Plaintiff's argument that the December 2017 Agreement supersedes the 2013



"FILED UNDER SEAL"

the December 2017 Agreement, those parties *mutually* agreed and recognized that Former Attorneys "ha[ve] significant out of pocket costs related to the Litigation, including attorney fees expended which could and should be recoverable in this matter." Exhibit A at ¶ 1. While the December 2017 Agreement principally addressed the situation where Plaintiff successfully negotiated a settlement of attorneys' fees, the parties also expressly agreed that they would address at a later time the terms governing distribution of attorneys' fees in the event that Plaintiff needed to submit the matter to this Court for resolution. The December 2017 Agreement provides,

> If a settlement is not capable of being achieved and it becomes necessary to present and prove up attorney fees to the court, the parties *will later address* the allocations and obligations of the parties relative to the prove up of such attorney fees to the court *as well as the distribution of such funds*.

Exhibit A at ¶ 3 (emphasis added).

This paragraph unambiguously reflects an "agreement from which the conclusion *may reasonably be reached* that [the parties] contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered.'" *Wolf*, 682 A.2d at 197 (emphasis in original). The reasonableness of that conclusion is not altered simply because the parties agreed to address specific terms relating to distribution at a later date. *See EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1003 (D.C. 2008) ("The enforceability of the agreement comes from the definitive character of the *obligation* to perform, not a precise description of the ways in which the obligation might be fulfilled.") (emphasis in original); *see also Hackney v. Morelite Construction*, 418 A.2d 1062, 1068-69 (D.C. 1980) ("[The] mere fact that a contract,

---

agreements fails. However, even if the December 2017 Agreement supersedes the 2013 Agreements, Plaintiff's Motion still fails for the reasons explained in this brief.

definite in material respects, contains some terms which are subject to further negotiation . . . will not bar a decree for specific performance.") (citations and quotations omitted).

Nothing in the December 2017 Agreement can be read or interpreted as a *complete wavier* of Former Attorney's right to recovery, as Plaintiff appears to suggest. Rather, the unmistakable "understanding" is that Former Attorneys would receive at least *some* distribution of the funds,[2] if awarded by this Court, and that the parties would later determine the amount of that distribution.[3] Because that "conclusion *may reasonable be reached*," Former Attorneys' Charging Lien remains valid. *Wolf*, 682 A.2d at 197 (emphasis in original).

Even under Plaintiff's interpretation of the parties' contracts, an agreement creating an attorney's charging lien plainly exists. As Plaintiff tells it, Plaintiff and Former Attorneys have agreed in writing to address at a later date the "distribution" of any attorney's fees awarded by this Court. Under Plaintiff's own argument, this Court therefore "may reasonably"—and easily—conclude that the parties "contracted with the understanding" that Former Attorneys' "were to be paid out of the judgment recovered." *Wolf*, 682 A.2d at 197. Further, the December 2017 Agreement is silent as to the charging lien, despite it being filed with the Court over six

---

[2] That the parties have not yet determined the amount of the distribution is entirely reasonable given that this Court has yet to determine amount it will award. The parties nevertheless remain required by their agreement to set the terms of the distribution.

[3] Further, Plaintiff must have understood the subsequent agreement to mean that Plaintiff retains an obligation to pay Former Attorneys' legal fees out of the fees awarded by this Court. The Equal Access to Justice Act ("EAJA") provides that "a court shall award to a prevailing party . . . fees and other expenses . . . **incurred** by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Courts have interpreted the EAJA to mean that "[i]f the claimant has not paid any attorney's fees, and is under no obligation to pay any attorney's fees, he has not 'incurred' any attorney's fees." *Turner v. Astrue*, 764 F. Supp. 2d 864, 872 (E.D. Ky. 2010); *see also King v. Comm'r of Soc. Sec.*, 230 F. App'x 476, 481 (6th Cir. 2007) ("To be 'incurred' within the meaning of a fee shifting statute, *there must also be an express or implied agreement that the fee award will be paid over to the legal representative*.") (quoting *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991)) (emphasis in original). If this Court awards attorneys' fees to Plaintiff for work performed by Former Attorneys and Plaintiff is, as it claims, "under no legal obligation to pay his attorney anything, [Plaintiff] would pocket the EAJA award himself. The award would be a substantial, and substantially unjustified, windfall." *Turner*, 764 F. Supp. 2d at 877-78. It is therefore reasonable to conclude that the parties understood the December 2017 Agreement to mean that Plaintiff retains the obligation to pay Former Attorneys out of the judgment recovered.



"FILED UNDER SEAL"

months prior. Had the parties intended to dispense with the lien, they would have done so in the December 2017 Agreement.

The parties' actions have at all prior times been consistent with the understanding that the Former Attorney' fees and expenses would be paid out of the judgment recovered. Until the filing of the Plaintiff's Motion to Quash, neither Plaintiff nor its counsel ever indicated—by word or act—that they would contest Former Attorneys' right to receive attorneys' fees, costs, or expenses awarded by this Court. In fact, at all times, Plaintiff's counsel's actions led Former Attorneys to reasonably believe that Plaintiff was pursuing recovery of fees for Former Attorneys. Relying on that understanding, Former Attorneys provided considerable assistance to Plaintiff with the preparation of the documentation supporting the requested fee award. Former Attorneys should not be punished for such reliance. And Plaintiff—having accepted assistance and waiting nearly *three and a half years* to contest the Charging Lien for the first time—should not now be enriched at Former Attorneys' expense.

Former Attorneys' work comprises the lion's share of the expected fee award. Yet Plaintiff asks this Court to conclude that simply by agreeing to address certain contract terms at a later date, Former Attorneys *completely waived* their entitlement to compensation for their work. Such a conclusion is not just unreasonable, it defies the unambiguous intent of the parties (and their subsequent actions) and would result in an inappropriate windfall to a client who was not charged a single cent for legal services rendered.

For these reasons, this Court should adhere to "the trend of the modern decisions . . . to protect the right of the attorney to receive compensation for his services." *Elam v. Monarch Life Ins. Co.*, 598 A.2d 1167, 1170 (D.C. 1991) (citations and quotations omitted) and recognize the validity of Former Attorneys' Charging Lien.



**"FILED UNDER SEAL"**

## II. Alternatively, a Valid Equitable Charging Lien Should Be Recognized.

"Broadly speaking, equity may impose a lien to effectuate some underlying agreement between debtor and creditor or in other circumstances where justice requires." *Wolf*, 682 A.2d at 197. As explained, Plaintiff and Former Attorneys have an underlying agreement that was plainly written with the understanding that Former Attorneys would receive a portion of the funds awarded by this Court. Plaintiff's Motion to Quash Exhibit A. Further, in light of Former Attorneys' substantial work in this litigation and Plaintiff's failure to contest the Charging Lien until *well after* Former Attorneys provided Plaintiff with numerous hours of assistance with the preparation of the fee petition, equity and justice require the recognition of an equitable charging lien.

Former Attorneys invested a substantial amount of time and money litigating this action on Plaintiff's behalf, (*see* Doc. 151-4, 151-6, 151-7), including out-of-pocket litigation expenses totaling nearly $46,000. *See* Plaintiff's Motion to Quash Exhibit A at Section 4(a). Plaintiff was represented on a *pro bono* basis and so was not charged *anything* for the legal services rendered. Plaintiff now seeks to completely deny Former Attorneys' the ability to receive compensation for their work. Justice requires that Plaintiff fail.

Former Attorneys filed the Notice of Attorney's Charging Lien on May 5, 2017. (Doc. 142.) Plaintiff did not contest it then. Seven months later, Plaintiff and Former Attorneys entered into the December 2017 Agreement. *See* Plaintiff's Motion to Quash Exhibit A. Yet Plaintiff did not then contest the Charging Lien either. Plaintiff filed the Motion for Attorneys Fees on February 20, 2018 (Doc. 151), which sought, *inter alia*, recovery for attorneys' fees, costs, and expenses incurred by Former Attorneys. (*See*, *e.g.*, Declaration of James Bopp, Jr., Doc. 151-1 at 5 ("Likewise, Foley and PILF incurred expenses in prosecution of this case for which they



"FILED UNDER SEAL"

normally charge fee-paying clients."), Doc. 151-8 at 27, 151-9 at 125, 151-10 at 161, 151-11 at 15.) Former Attorneys assisted Plaintiff's counsel with the preparation of documents necessary to establish Plaintiff's entitlement to recover those funds. (*See* Doc. 151-4, 151-6, 151-7).

On May 30, 2019, this Court held that Plaintiff was entitled to attorneys' fees and costs under the EAJA and held the motion in abeyance pending further submission by the Plaintiff supporting the reasonableness of the requested attorney and non-attorney billing rates. (Doc. 161.) Former Attorneys *again* assisted Plaintiff with preparing the filings requested by the Court. (*See* Doc. 165-10, 165-15, 165-16, 176 at 2 ("Counsel for each of the other firms reviewed the objections and the comments for their respective firms' entries.") In subsequent filings, Plaintiff even agreed to seek recovery for Former Attorneys' time spent assisting Plaintiff's counsel with preparation of those materials. (*See* Docs. 180 at 2 ("In addition, attorneys from TTV's former counsel, Foley & Lardner and PILF, assisted in reviewing billing records for TTV's Reply to Defs.' Opp., ECF No. 176."), 180-5 through 180-8.) At no time throughout this process did Plaintiff or its counsel contest the validity of Former Attorneys' Charging Lien.

On September 23, 2020, this Court granted in part and denied in part Plaintiff's Motion for Attorneys' fees and invited the parties, at a telephonic status conference, to advise the Court regarding the exact amount owed to the plaintiff in attorneys' fees. (Doc. 183.) Yet Plaintiff did not then contest the validity of the Charging Lien.

On October 16, 2020, Former Attorneys—without objection from any party—sought leave to participate in the telephonic status conference, (Doc. 185), which the Court granted in minute order on October 20, 2020.



**"FILED UNDER SEAL"**

Following the status conference, on October 22, 2020—*nearly three and a half years* after Former Attorneys filed the Charging Lien, Plaintiff filed the instant motion to quash, (Docs. 189-190), seeking to completely deny Former Attorneys' right to be compensated for their work.

Plaintiff does not come to this Court with clean hands. Plaintiff waited more than three years to contest the Charging Lien, during which time Plaintiff silently accepted the benefit of Former Attorneys' assistance with the preparation of a seven-figure fee petition. Under these circumstances, both "equity" and "justice" require that a lien be imposed to effectuate the unambiguous intent of the parties that Former Attorneys would receive a portion of the funds awarded by this court. *Wolf*, 682 A.2d at 197.

**CONCLUSION**

For these reasons, Plaintiff's Motion to Quash should be denied.

Dated: November 13, 2020

Michael J. Lockerby (D.C. 502987)
Cleta Mitchell (D.C. 433386)
FOLEY & LARDNER, LLP
3000 K Street NW Suite #600
Washington Harbour
Washington, DC 20007
(202) 672-5300 (telephone)
(202) 672-5399 (fax)
mlockerby@foley.com
cmitchell@foley.com

William E. Davis (D.C. 280057)
FOLEY & LARDNER, LLP
One Biscayne Tower
2 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 482-8404 (telephone)
(305) 482-8600 (fax)
wdavis@foley.com

*/s/ Kaylan L. Phillips*
Kaylan L. Phillips (D.C. 1110583)
Noel H. Johnson (Wisc. 1068004)
Public Interest Legal Foundation
32 E. Washington, Suite 1675
Indianapolis, IN 46204
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@publicinterestlegal.org
njohnson@publicinterestlegal.org



"FILED UNDER SEAL"

John C. Eastman
Center for Constitutional Jurisprudence
c/o Chapman University Fowler School of Law
One University Dr.
Orange, CA 92866
(877) 855-3330
jeastman@chapman.edu



**"FILED UNDER SEAL"**