**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **True the Vote, Inc.**; *Plaintiff*, v. **Internal Revenue Service, et al.**; *Defendants*. | **Civil Case No.** 1:13-cv-000734-RBW |

# Reply in Support of Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien

The Notice of Attorney's Charging Lien ("**Charging Lien**"), ECF No. 142, filed by Public Interest Legal Foundation ("**PILF**") and Foley and Lardner LLP ("**Foley**") (collectively, "**Former Attorneys**")[1] must be quashed immediately under D.C. law. The agreement TTV and Former Attorneys entered into in December 2017 is the Governing Agreement. Absent a settlement on fees, the Governing Agreement is not an enforceable contract as to Former Attorneys' entitlement to fees after litigation because it does not contain the most material term—that is, the "price," or percentage breakdown of fees due to Former Attorneys. Without this material term, those provisions of the Governing Agreement are merely an "agreement to agree" and cannot form the basis for this Court's administration of fees, via an equitable lien. Moreover, Former Attorneys have no equitable basis for asserting a lien here. Allowing them to invade TTV's fee award would result in at least a threefold windfall.

[1] The Center for Constitutional Jurisprudence ("CCJ") also formerly represented TTV and is included in the collective "Former Attorneys" designation.

**I. The December 2017 Agreement Is the Governing Agreement.**

The Governing Agreement supersedes the PILF and Foley Agreements, which were the agreements in place at the time PILF filed Charging Lien. *See* Plaintiff's Motion to Quash, Exhibits A-D, ECF Nos. 189-3 – 189-6. Both the PILF Agreement and the Foley Agreement were superseded by the Governing Agreement, executed on December 13, 2017. *See* Governing Agreement, Ex. A. This Governing Agreement states:

> 7. This agreement supersedes any and all agreements between the parties which have existed to date, and to the extent that any portion of said agreements are in any way contradicted by the terms of this agreement, this agreement shall apply.
>
> 8. There are no other agreements or representations between the parties which are made or which survive the execution of this agreement, which is made by those persons having authority to bind the interested parties for both TTV and the PILF group of counsel.

*Id.* at ¶¶ 7,8.

PILF argues that the previous agreements still govern because the December 2017 Agreement was between all of the parties and so could not have superseded the agreements that existed between the parties separately. Their argument holds no merit. In this Circuit, "when parties to a contract have executed a completely integrated written agreement, it supersedes all other understandings and agreements with respect to the *subject matter of the agreement* between the parties . . . and is viewed as the sole expression of the parties' intent." *Masurovsky v. Green*, 687 A.2d 198, 202 (D.C. 1997) (emphasis added). In all of the agreements relevant here, the subject matter is the same—the case at bar, the Former Attorneys' representation of TTV, and expected compensation of the same.

If, as PILF argues, the original PILF and Foley Agreements are still in effect, there would

have been no need to enter into the Governing Agreement. Certainly there would have been no need for the Governing Agreement to specify that it supersedes "any and all agreements between the parties which have existed to date," to specify that any contradictory terms would be nullified by the terms in the Governing Agreement, or to specify that no other agreement would survive the Governing Agreement. If all the previous agreements as well as the Governing Agreement were in effect, this Court would be faced with interpreting several contracts whose individual term conflict with one another. Indeed, the purpose of full integration provisions like the that found in the Governing Agreement is to avoid this very problem—to argue that all the previous agreements remain in force is to turn an integration provision on its head.

The Governing Agreement contains full integration provisions and is the Agreement that controls the expectations and contract between the parties. Because the Governing Agreement does not contain material terms related to fee distribution after litigation, it can form no basis for an equitable lien.

**II. The Governing Agreement Is Not an Enforceable Contract That Can Serve as the Basis for an Equitable Lien After Fee Litigation.**

In this Circuit, a lien may be provided by express terms of the parties' contract[2] or as an equitable matter by operation of law. *See Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996). An equitable lien requires "interference by the court to have [a] judgment held as security for [a]

---

[2] PILF argues that Former Attorneys have a "valid express lien" against a portion of TTV's recovery of attorneys' fees. *Former Attorneys' Response in Opposition to Plaintiff's Motion to Quash Attorney's Charging Lien* at 2, ECF No. 194-3. Former attorneys misunderstand an "express lien"—such a lien requires the express right to a *lien* (such as an express lien on property that arises from a mortgage), not the "reasonable conclusion" that the attorneys are entitled to fees. A lien that arises out of such reasonable expectations is always an equitable lien, not an express lien.

debt." *Lyman v. Campbell*, 182 F.2d 700, 702 (D.C. Cir. 1950) (internal citations omitted). But in order for a court to have the ability to properly assign the remedy of equitable control, the party seeking the lien must be able to prove an enforceable contract that contemplates the lawyer's fee will be paid from the client's judgment. *Peterson v. Islamic Republic of Iran*, 724 F. App'x 1, 4 (D.C. Cir. 2018). *See also, Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 941 F.2d 1217, 1219 (D.C. Cir. 1991) (per curiam); *Yankton Sioux Tribe v. Bernhardt*, No. CV 03-01603 (TFH), 2019 WL 3753616, *4 (D.D.C. Aug. 8, 2019); *Hahn v. Or. Physicians' Serv.*, 786 F.2d 1353, 1355 (9th Cir. 1985). Former Attorneys have not and cannot show an enforceable contract related to fees resulting from litigation.

Under District of Columbia law, a valid and enforceable contract requires "both (1) agreement as to all material terms; and (2) intention of the parties to be bound." *Queen v. Schultz*, 747 F.3d 879, 884 (D.C. Cir. 2014) (quoting *Duk Hea Oh v. Nat'l Capital Revitalization Corp.*, 7 A.3d 997, 1013 (D.C.2010)). The party asserting the existence of a contract bears the burden of proof on both issues. *Id.* The "material terms" of a contract generally include "subject matter, price, payment terms, quantity, quality, and duration." *Rosenthal v. Nat'l Produce*, 573 A.2d 365, 370 (D.C. 1990). A contract's material terms must be "'sufficiently definite' so that each party can be 'reasonably certain' about what it is promising to do or how it is to perform." *Dyer v. Bilaal*, 983 A.2d 349, 356 (D.C.2009) (quoting *Rosenthal*, 573 A.2d at 370) (holding promise to pay mortgage "in full" was "clear enough for the court to determine whether a breach has occurred and to identify an appropriate remedy" even though price could not be fixed at the time of contract because of accruing interest).

This Circuit "adheres to an objective law of contracts, meaning the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake." *Id.* at 354-55 (internal citations omitted).

Here, the language of the Governing Agreement is clear. It specifies the fees and expenses due to PILF **if** "TTV is successful in negotiating a settlement of litigation expenses and attorney fees." Governing Agreement, at ¶ 4. But, if a settlement is not reached, the Governing Agreement states, "the parties will later address the allocations and obligations of the parties relative to the prove up of such attorney fees to the court as well as the distribution of such funds." *Id.* at ¶ 3. Absent a settlement, the obligations of the parties and the allocation and distribution of any court-awarded fees could have been determined and specified in the Governing Agreement. A percentage breakdown of such funds could have been agreed to—as it was in the case of settlement—but it wasn't. The unambiguous language of the Governing Agreement leaves to a later agreement to be negotiated by the parties the issues of the obligations of the parties and the allocation and distribution of funds. Some of the issues left to be discussed and negotiated in any future agreement between the parties are the relative success of Former Attorneys, the impact of Former Attorneys' fundraising to offset litigation costs on any fee allocation, and several other material aspects related to fee allocation.

The Governing Agreement simply is not an enforceable contract regarding to court-awarded fees under which an equitable lien can be supported. The Governing Agreement only

addresses fee expectations and distributions related to a settlement. An agreement between the parties on the allocation and distribution of court-awarded funds is a material term—in fact, it is close to the only material term— in any such agreement. Former Attorneys have the burden of proving an enforceable contract that contemplates the lawyer's fee will be paid from the client's judgment. But in order to prove an enforceable contract exists, this jurisdiction requires proof of agreement on all material terms and that all parties intend to be bound by that agreement. Former Attorneys cannot meet their burden of proof that an agreement as to the material terms and the intention of the parties to be bound by such terms has been reached on court-awarded fees.

Because Former Attorneys cannot show an enforceable contract that contemplates the lawyer's fee will be paid from the client's judgment, they have no basis for an equitable charging lien in this matter.

**III. The Equities Here Militate Against Allowing Former Attorneys to Invade TTV's Attorney's Fee Award.**

The EAJA provides the legal basis for attorney's fee award to a prevailing *plaintiff*. *See*, *e.g.*, *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 155 (1990) ("The Equal Access to Justice Act (EAJA) directs a court to award 'fees and other expenses' to private parties who prevail in litigation against the United States . . . .'"). As noted above, PILF has failed to establish any corresponding *legal* claim or reasonable expectation to share in TTV's fee award. And under applicable equitable principles, it should not be allowed to invade the fee award.

"[C]ourts have generally held that the statutory language expresses a congressional directive for courts 'to apply traditional equitable principles' in determining whether a prevailing party should receive a fee award under EAJA." *Air Transp. Ass'n of Canada v. F.A.A.*, 156 F.3d

1329, 1333 (D.C. Cir. 1998). *See also Oguachuba v. I.N.S.*, 706 F.2d 93, 98 (2d Cir. 1983) (denying fee award under "unclean hands" consideration where plaintiff prevailed on a technical error despite having repeatedly violated relevant laws); *Taylor v. United States*, 815 F.2d 249 (3rd Cir. 1987) (denying attorney's fees under EAJA where applicant took advantage of government's unlawful action and then challenged the action to avoid serving a conviction).

Similarly, "traditional equitable principles" bar PILF from invading TTV's fee award because to allow them to do so will provide them a windfall. *See U.S. Dep't of Labor v. Rapid Robert's Inc.*, 130 F.3d 345, 349 (8th Cir. 1997) (denying attorney's fees where the district court relieved applicant of over seven times the amount of actual penalties from invalidated regulations, noting that "[t]o add to that windfall by requiring the government to pay attorneys' fees and expenses would be patently unjust."). In short, as their own records establish, PILF has already received an amount equal to approximately twice the actual cost basis of services and expenses incurred on TTV's behalf in this case.

In June of 2017, PILF provided BLF with an "IRS Litigation Financial Summary" ("IRS LFS") and relevant contemporaneous-recorded time and expense records. PILF provided that they had raised approximately $1,250,727.10 to a "Litigation Fund" for the benefit of TTV and another client in litigation against the IRS and reported that about 58% of the IRS LFS funds ($724,111.22) raised were applied to providing TTV's legal services in this case.[3]

Using the IRS LFS, contemporaneous time records, and the then-available 990s, BLF

---

[3]The IRS LFS reported the hours of the other Former Attorneys as "donated to PILF" and did not include them in any of their calculations of fees incurred.

calculated that the actual cost basis[4] for PILF's representation of TTV was approximately $267,419. That is, they have already received funds for the fees and costs of providing legal services provided to TTV in an amount equal to more than two and a half times what the representation actually cost to provide. To allow them additional funds out of TTV's fee award would provide another windfall. Moreover, inasmuch as the fees paid by clients in a public interest case should be at an actual cost basis, *see supra* n.4, to instead award fees on the basis of prevailing market rates is yet another windfall. It is patently unjust to allow PILF to invade TTV's fee award in this way and under these circumstances.

**Conclusion**

The Governing Agreement supersedes the previous PILF and Foley Agreements because it contains full integration provisions, and so it is the Agreement that controls the expectations and contract between the parties. Because the Governing Agreement does not contain material terms relative to the obligations of the parties and as to the allocation and distribution of fees after a court award, it is not an enforceable contract that contemplates the lawyer's fee will be paid from the client's judgment. Therefore, the Governing Agreement cannot form the basis of an equitable lien. Former Attorneys' equitable charging lien must be quashed as a matter of law.

This Circuit reads the EAJA to express a congressional directive for courts "to apply traditional equitable principles" to fee awards. Here, PILF raised funds for the litigation that are equal to approximately twice the actual costs of the services they have provided, and allowing them to invade TTV's fee award—and calculated at prevailing market rates, would be a two-or

[4] A nonprofit law firms' fees in a public-interest case that are paid by a client are not more than the actual costs incurred in the case. IRS Publication 557, Chapter 3, page 29 (Jan. 2020).

three-fold windfall. Former attorneys have not legal claim to a lien and the equities militate that they not be allowed to invade TTV's legal claim to a fee award.

November 30, 2020

Respectfully submitted,
/s/ James Bopp, Jr.

James Bopp, Jr. (D.C. Bar No. CO0041)
jboppjr@aol.com
Jeffrey P. Gallant*
jgallant@bopplaw.com
Courtney Turner Milbank*
cmilbank@bopplaw.com
Melena S. Siebert*
msiebert@bopplaw.com
THE BOPP LAW FIRM, P.C.
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
(812) 232-2434
(812) 235-3685 (fax)
*Attorneys for Plaintiff*
*Admitted *pro hac vice*

## Certificate of Service

I hereby certify that on November 30, 2020, I caused the foregoing and all attachments thereto in the above-captioned matter to be filed under seal with the United States District Court for the District of Columbia via the Court's CM/ECF system. In addition, pursuant to LCvR 5.1, I served, via email, the foregoing and all attachments thereto upon all parties.

/s/ James Bopp, Jr.
James Bopp, Jr.