**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRUE THE VOTE, INC.,** | |
| *Plaintiff*, | |
| *v.* | Civ. No. 13-cv-00734-RBW |
| **INTERNAL REVENUE SERVICE,** *et al.*, | |
| *Defendants*. | |

**MOTION FOR LEAVE TO INTERVENE AND FOR ACCESS TO COURT RECORDS**

The Center for Investigative Reporting, Inc., by and through undersigned counsel, hereby moves the Court for leave to intervene under Federal Rule of Civil Procedure 24(b) and for an order granting access to certain judicial records that have been placed under seal. The grounds for this Motion are fully set forth in the accompanying Memorandum of Points and Authorities. A proposed order is also submitted. Pursuant to LCvR 7(m), the undersigned counsel discussed this motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and to narrow the areas of disagreement. The motion is opposed by Plaintiff, True the Vote Inc. and Defendants Steven T. Miller, Douglas H. Shulman, Lois Lerner, William Wilkins, Holly Paz, Cindy M. Thomas, Steven Grodnitzky, David Fish, and Michael Seto. Defendant Internal Revenue Service does not oppose the motion. The remaining parties, Ron Bell, Susan Maloney, Janine Estes, Faye Ng, and the Public Interest Legal Foundation, Inc. take no position regarding the motion. The undersigned counsel also reached out to non-parties Foley & Lardner and the Center for Constitutional Jurisprudence to determine whether they opposed the motion, but received no response.

ORAL HEARING REQUESTED.

Respectfully submitted,

DATED: January 17, 2023

/s/ Alden L. Atkins
Alden L. Atkins [DC 393922]
Charles L. Wesley [DC 252709]
(*Pro hac vice* application / admission pending)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
Telephone: 202-639-6613
Facsimile: 202-879-8813
aatkins@velaw.com
lwesley@velaw.com

D. Victoria Baranetsky
Cal. Bar No. 311892
(*Pro hac vice* application forthcoming)
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 982-2890
vbaranetsky@revealnews.org

Peter Steffensen
Southern District No. 3372006
Texas Bar No. 24106464
(*Pro hac vice* application pending)
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC
P.O. Box 750116
Dallas, Texas 75275
Telephone: (214) 768-4077
Facsimile: (214) 768-1611
psteffensen@smu.edu

*Attorneys for The Center for Investigative Reporting,
Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRUE THE VOTE, INC.,** | |
| *Plaintiff*, | |
| *v.* | Civ. No. 13-cv-00734-RBW |
| **INTERNAL REVENUE SERVICE, *et al*.,** | |
| *Defendants*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOVANT-INTERVENOR'S MOTION FOR LEAVE**
**TO INTERVENE AND FOR ACCESS TO COURT RECORDS**

## Table of Contents

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE AND STAGE OF THE PROCEEDING ............................................. 2

III.    ARGUMENT ...................................................................................................... 4

        A.    CIR Has Standing To Intervene Under The Common Law And Should Be
              Granted The Right To Intervene Under Rule 24(B). ............................... 5

        B.    This Court Should Unseal The Records At Issue Because The Court Did
              Not Meet The Specificity Requirements In Applying The Hubbard
              Factors. ................................................................................................ 7

              1.    The records are improperly sealed because the court's sealing
                    order was not sufficiently specific. ............................................. 9

        C.    Movant And The Public Are Entitled To Inspect The Material Sealed Here
              Under The Common Law Right Of Access To Judicial Records And This
              Circuit's Hubbard Factors. ................................................................ 10

IV.     CONCLUSION ................................................................................................. 15

## Table of Authorities

**Cases**

*Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*,
121 F. Supp. 3d 21 (D.D.C. 2013) ............................................................. 12

*BASF Corp. v. SNF Holding Co.*,
No. 17-cv-251, 2019 WL 3554699 (S.D. Ga. Aug. 5, 2019) ...................... 12

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016) ...................................................................... 6

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
78 F.3d 920 (5th Cir. 1996) ...................................................................... 6

*DRC, Inc. v. Republic of Honduras*,
No. 10-cv-0003, 2011 WL 13257869 (D.D.C. Aug. 22, 2011) ................... 11

*EEOC v. Nat'l Children's Ctr., Inc.*,
146 F.3d 1042 (D.C. Cir. 1998 ............................................................... 6, 7

*\*EEOC v. Nat'l Children's Ctr., Inc.*,
98 F.3d 1406 (D.C. Cir. 1996) ......................................................... passim

*Flynt v. Lombardi*,
782 F.3d 963 (8th Cir. 2015) .................................................................... 7

*Friedman v. Sebelius*,
672 F. Supp. 2d 54 (D.D.C. 2009) ........................................................... 14

*Hyatt v. Lee*,
251 F. Supp. 3d 181 (D.D.C. 2017) .......................................................... 11

*ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*,
No. 16-cv-00054, 2022 WL 2785985 (D.D.C. July 15, 2022) ................. 1, 8

*In re Fort Totten Metrorail Cases*,
960 F. Supp. 2d 2 (D.D.C. 2013) ...................................................... 2, 10, 14

*In re Nat'l Broad. Co.*,
653 F.2d 609 (D.C. Cir. 1981) ................................................................. 10

*In the Matter of the Application of WP Co. LLC*,
201 F. Supp. 3d 109 (D.D.C. 2016) ........................................................... 2

*Johnson v. Greater Se. Cmty. Hosp. Corp.*,
951 F.2d 1268 (D.C. Cir. 1991) ................................................................. 8

*Leopold v. United States*,
964 F.3d 1121 (D.C. Cir. 2020) ................................................................. 5

*Metlife, Inc. v. Fin. Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017) .............................................................. 9, 10

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) .................................................................................. 5

*Primas v. District of Columbia*,
   719 F.3d 693 (D.C. Cir. 2013) ................................................................................... 9

*Procaps S.A. v. Patheon, Inc.*,
   No. 12-cv-24356, 2013 WL 5928586 (S.D. Fla. Nov. 1, 2013) ............................... 12

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist. (San Jose)*,
   187 F.3d 1096 (9th Cir. 1999) .................................................................................. 5

*U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*,
   818 F. Supp. 2d 64 (D.D.C. 2011) ........................................................................... 12

*United States v. All Assets Held at Bank Julius Baer & Co.*,
   520 F. Supp. 3d 71 (D.D.C. 2020) .................................................................. 9, 11, 13

*United States v. Am. Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) ................................................................................. 6

*\*United States v. Hubbard*,
   650 F.2d 293 (D.C. Cir. 1980) ......................................................................... passim

*United States v. Thomas*,
   840 F. Supp. 2d 1 (D.D.C. 2011) .............................................................................. 8

*Vanda Pharms., Inc. v. Food & Drug Admin.*,
   539 F. Supp. 3d 44 (D.D.C. 2021) ............................................................................. 6

*Zapp v. Zhenli Ye Gon*,
   746 F. Supp. 2d 145 (D.D.C. 2010) ......................................................................... 14

**Rules**

Fed. R. Civ. P. 24(b) .................................................................................................... 6

**Other Authorities**

Cassandra Jaramillo, *She Helped Create the Big Lie. Records Suggest She Turned It Into a Big Grift*, REVEAL (June 8, 2022), https://revealnews.org/article/true-the-vote-big-lie-election-fraud/ ................................................................................................................................ 1

Cecilia Kang, *How a Spreader of Voter Fraud Conspiracy Theories Became a Star*, NY TIMES (Sept. 14, 2022), https://www.nytimes.com/2022/09/14/technology/catherine-engelbrecht-voter-fraud-conspiracy-theories.html ................................................................................. 5

Ian Tuttle, *True the Vote Files Suit Against the IRS*, NATIONAL REVIEW (May 21, 2013), https://www.nationalreview.com/corner/true-vote-files-suit-against-irs-ian-tuttle ................... 1

Juliet Eilperin & Zachary A. Goldfarb; *IRS Officials in Washington Were Involved in Targeting of Conservative Groups*, THE WASHINGTON POST (May 13, 2013), https://www.washingtonpost.com/politics/obama-denounces-reported-irs-targeting-of-conservative-groups/2013/05/13/a0185644-bbdf-11e2-97d4-a479289a31f9_story.htm ........... 1

Matthew Villmer, *Tea Party Group Says IRS Agents Liable for Discrimination* (Nov. 18, 2013), https://www.law360.com/articles/489571/tea-party-group-says-irs-agents-liable-for-discrimination ................................................................................................................... 1

Mike Scarcella, *GOP Donor's Claim Against James Bopp's Law Firm Revived*, REUTERS (Nov. 3, 2022), https://www.reuters.com/legal/government/gop-donors-claim-against-james-bopps-law-firm-revived-2022-11-03/ ................................................................................................ 5

Natalia Contreras, *In Heated Exchange, Federal Judge Demands True the Vote Identify Who Provided Access to Poll Worker Data*, THE TEXAS TRIBUNE (Oct. 7, 2022), https://www.texastribune.org/2022/10/07/true-the-vote-lawsuit-texas-konnech/ ...................... 5

Stuart A. Thompson, *How a Tiny Elections Company Became a Conspiracy Theory Target*, NY TIMES (Oct. 3, 2022) https://www.nytimes.com/2022/10/03/technology/konnech-election-conspiracy-theories.html (updated Nov. 12, 2022).................................................................... 5

## I.    INTRODUCTION

The Center for Investigative Reporting, Inc. ("CIR" or "Movant" or "Intervenor"), a national nonprofit news organization, seeks leave to intervene for the purpose of unsealing judicial records to be used in its reporting on a matter of great public interest.[1]  As a member of the press and a representative of the public, CIR has a presumptive common law and First Amendment right to access the court records at issue.  That access is particularly important in this case which involves the conduct of a critical government entity, and matters that impact the public fisc.  Despite the importance of these issues, certain records have been improperly shielded from the public without any rationale as to why sealing those records would be justified.  The motions to file these records under seal were themselves filed under seal, and the Court's orders allowing the records to be sealed contain no justification other than "for good cause shown."  Thus, the public has no explanation about why the parties or the Court believe these records should be kept from them.  *See ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs.*, Inc., No. 16-cv-00054, 2022 WL 2785985, at *6 (D.D.C. July 15, 2022) (holding that a party's "naked assertion that there is no need for public access . . . without more, is insufficient to meet" the burden of demonstrating the absence of a need for public access) (internal quotation marks omitted).  This falls well below the standard under which records can permissibly be sealed, which requires an articulation of the reasoning behind any decision to seal documents.  *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996) ("it is imperative that a district court articulate its

---

[1] *See, e.g.*, Ian Tuttle, *True the Vote Files Suit Against the IRS*, NATIONAL REVIEW (May 21, 2013), https://www.nationalreview.com/corner/true-vote-files-suit-against-irs-ian-tuttle/; Juliet Eilperin & Zachary A. Goldfarb; *IRS Officials in Washington Were Involved in Targeting of Conservative Groups*, THE WASHINGTON POST (May 13, 2013), https://www.washingtonpost.com/politics/obama-denounces-reported-irs-targeting-of-conservative-groups/2013/05/13/a0185644-bbdf-11e2-97d4-a479289a31f9_story.html; Cassandra Jaramillo, *She Helped Create the Big Lie. Records Suggest She Turned It into a Big Grift*, REVEAL (June 8, 2022), https://revealnews.org/article/true-the-vote-big-lie-election-fraud/; Matthew Villmer, *Tea Party Group Says IRS Agents Liable for Discrimination* (Nov. 18, 2013), https://www.law360.com/articles/489571/tea-party-group-says-irs-agents-liable-for-discrimination.

reasons for electing to seal or not to seal a record"); *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980) ("We cannot determine from the trial judge's orders what factors entered into his initial decision to unseal or even if he found a weighing of these generalized interests appropriate. For this reason alone we must remand."). While some of the records at issue have been re-filed in redacted form, this does not cure the absence of any rationale for why any form of sealing is warranted. In addition to these procedural errors, Movant has a common law right of access to these judicial records.[2] For these reasons, the records should be unsealed.

## II.   NATURE AND STAGE OF THE PROCEEDING

In May 2013, Plaintiff True the Vote, Inc. ("TTV") filed a Complaint for Declaratory Judgment, Declaratory and Injunctive Relief and Damages against Defendants the United States of America, the Internal Revenue Service ("IRS"), and various IRS employees (collectively, "IRS"). Dkt. 1. In July 2013, Plaintiff TTV amended its Complaint to add additional IRS employees. Dkt. 14 ("Amended Complaint"). Plaintiff TTV claimed that Defendants "deliberately subjected" TTV to "numerous unnecessary, burdensome, and unlawful requests for information about its operations, activities, leadership, volunteers, associations, and affiliations" and to delays in considering TTV's application and consideration as a tax-exempt organization, all because of TTV's "perceived association with 'Tea Party' organizations." *Id.* ¶ 5. This "unlawful scheme," according to TTV, was "intended to harass [TTV] and to have a chilling effect on the First Amendment rights of current and prospective members and donors." The public has a

---

[2] Although Movant focuses on the common law right of access in this motion, Movant also has a First Amendment right of access to the records. *In the Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 117 (D.D.C. 2016) (citing *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 (D.D.C. 2013)) ("The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment").

significant interest in this case given TTV's role in the political realm and the allegations against the government. *Id.* ¶ 6.

In October 2014, the Court granted Defendants' motions to dismiss.  *See* Dkts. 102, 103. However, in September 2016, the D.C. Circuit revived portions of TTV's claims.  *See* Dkt. 106. In May 2017, the Public Interest Legal Foundation ("PILF") and the law firm Foley and Lardner LLP ("Foley") asserted an attorneys' charging lien based upon legal services performed and expenses and costs incurred in connection with their representation of TTV.  Dkt. 142.  In January 2018, Plaintiffs and Defendants reached an agreement to "resolve all remaining claims in this action, except any request for attorneys' fees and costs that Plaintiff might make under any applicable law."  Dkt. 149 at 1.  The Court approved the parties' Consent Judgment on January 21, 2018.  Dkt. 150.

In February 2018, TTV filed a motion seeking to recover attorneys' fees.  Dkt. 151.  In May 2019, the Court found that TTV was "entitled to an award of attorneys' fees and costs" but held the motion in abeyance in all other respects pending further submissions by TTV demonstrating the reasonableness of its requested attorney and non-attorney billing rates.  Dkt. 162 at 25.  In September 2020, the Court ruled on additional motions relating to Plaintiff's efforts to recover attorneys' fees and ordered the parties to calculate the amount owed to TTV so as to be consistent with the Court's Memorandum Opinion.  Dkt. 184 at 29.

In October 2020, TTV asked for and received the Court's permission to file under seal a motion to quash PILF and Foley's attorneys' lien.  *See* Dkts. 189, 190 (under seal).  On November 13, 2020, PILF filed its response to TTV's motion, and on November 30, 2020, TTV filed its reply. *See* Dkts. 194, 198 (under seal).  All of the related filings were filed under seal, and the parties' motions for leave to file under seal were also sealed.  *See* Dkts. 189, 190, 194, 196, 198, 199, and

the Court's minute orders of October 23, 2020, November 17, 2020, and December 8, 2020.  In its November 17, 2020 and December 8, 2020 Minute Orders, the Court directed the parties to file proposed redacted versions of their substantive motions and any supporting exhibits on the public docket by certain dates in December.  On December 11, 2020 TTV filed redacted versions of eight documents that were previously under seal:

1. Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien, Dkt. 190;

2. Memorandum of Points and Authorities in Support of Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien, Dkt. 190-1;

3. Governing Agreement, Dkt. 190-2;

4. Terminating Letter, Dkt. 190-3;

5. PILF Agreement, Dkt. 190-4;

6. Foley Agreement, Dkt. 190-5

7. BLF Agreement, Dkt. 190-6;

8. Reply in Support of Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien, Dkt. 198-1.

*See* Dkt. 200.  The same day, PILF filed a proposed redacted version of its response in opposition to TTV's motion to quash.  See Dkt. 201.  Since then, the parties have filed various motions for leave to file supplemental briefing; however, the Court has not taken any further action in connection with TTV's motion to quash.

## III.   ARGUMENT

At least three crucial judicial records on this docket are currently under seal in redacted form that Movant wishes to unseal entirely: (1) TTV's Motion to Quash PILF's and Foley's Attorney's Charging Lien and its related exhibits (Dkts. 200-1 – 200-7); (2) a response in opposition to that motion filed by PILF, Foley, and the Center for Constitutional Jurisprudence (together "Former Attorneys") (Dkt. 201-1); and (3) TTV's reply to the Former Attorneys'

opposition (Dkt. 200-8).   In addition, the parties' motions for leave to file their respective documents under seal, should also be unsealed.   *See* Dkts. 189, 194, 198.

Movant, as a member of the press and surrogate of the public, has an interest in these judicial records as they relate to actions and allegations made by TTV against the IRS, which are of great interest to the public.   Indeed, multiple news outlets around the country have published information about TTV and their dealings.[3]   In addition, the procedural deficiencies in the sealing of these records and the lack of any demonstrated interest that could justify the continued sealing of these juridical records also warrants unsealing.

### A.     CIR Has Standing To Intervene Under The Common Law And Should Be Granted The Right To Intervene Under Rule 24(B).

It is well established under common law that nonparties, particularly news media organizations, have standing to intervene to gain public access to sealed court documents.   *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). The D.C. Circuit has long acknowledged this right, as have sister circuit courts around the country.   *See Leopold v. United States*, 964 F.3d 1121, 1123 (D.C. Cir. 2020); *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist. (San Jose)*, 187 F.3d 1096, 1101-02 (9th Cir. 1999); *Bernstein v.*

---

[3] *See, e.g.*, Natalia Contreras, *In Heated Exchange, Federal Judge Demands True the Vote Identify Who Provided Access to Poll Worker Data*, THE TEXAS TRIBUNE (Oct. 7, 2022), https://www.texastribune.org/2022/10/07/true-the-vote-lawsuit-texas-konnech/; Mike Scarcella, *GOP Donor's Claim Against James Bopp's Law Firm Revived*, REUTERS (Nov. 3, 2022), https://www.reuters.com/legal/government/gop-donors-claim-against-james-bopps-law-firm-revived-2022-11-03/; Cecilia Kang, *How a Spreader of Voter Fraud Conspiracy Theories Became a Star*, NY TIMES (Sept. 14, 2022), https://www.nytimes.com/2022/09/14/technology/catherine-engelbrecht-voter-fraud-conspiracy-theories.html; Stuart A. Thompson, *How a Tiny Elections Company Became a Conspiracy Theory Target*, NY TIMES (Oct. 3, 2022) https://www.nytimes.com/2022/10/03/technology/konnech-election-conspiracy-theories.html (updated Nov. 12, 2022).

*Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016); *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 926–27 (5th Cir. 1996).

Here, Movant has standing to intervene under the common law.  *See EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (holding "that third parties may be allowed to permissively intervene . . . for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order").  This Circuit has regularly permitted nonparties, even those not representing the news media, to intervene for the purpose of unsealing judicial records. *See id.*  This motion also meets all requirements under Rule 24(b) for permissive intervention. Fed. R. Civ. P. 24(b); *see also Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 50 (D.D.C. 2021) ("[w]here intervention is sought only for a collateral purpose like unsealing documents, the ordinary requirements for permissive intervention are relaxed").

*First*, this motion to intervene is timely.  *See United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) ("timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case"); *Vanda Pharms., Inc.*, 539 F. Supp. 3d at 50 (quoting and citing *Nat'l Children's Ctr.*, 146 F.3d at 1047) ("'Rule 24(b)'s timeliness requirement,' the purpose of which 'is to prevent prejudice in the adjudication of the rights of the existing parties,' need not apply 'when the existing parties have settled their dispute and intervention is for a collateral purpose'); *Nat'l Children's Ctr.*, 146 F.3d at 1047 (holding that a motion to intervene filed almost two years after the original parties had settled the case was timely).  Movant only recently became aware of the sealed documents on this docket and now files

this motion. *Id.*; *see also Flynt v. Lombardi*, 782 F.3d 963, 967 n.2 (8th Cir. 2015) (motion to intervene for unsealing purposes was timely in a case dismissed a year earlier).

*Second*, this motion satisfies Rule 24's "claim-or-defense" requirement, which is construed liberally in the context of unsealing motions, because whether records should remain under seal is a common question of law or fact in this case. *Nat'l Children's Ctr.*, 146 F.3d at 1047 ("'no particularly strong nexus of fact or law need exist between the two suits' when a nonparty seeks to intervene for the sole purpose of gaining access to documents subject to a confidentiality order") (citation omitted). *Finally*, this motion does not unduly delay or prejudice any party's rights because Movant does not seek to disturb the underlying matter.

Thus, in order to give substance to CIR's and the public's right to access court proceedings and related records, CIR must be afforded a reasonable opportunity to oppose the continued sealing of court records in this case.

**B.    This Court Should Unseal The Records At Issue Because The Court Did Not Meet The Specificity Requirements In Applying The *Hubbard* Factors.**

The documents still under seal in redacted form are (1) TTV's Motion to Quash PILF's and Foley's Attorney's Charging Lien and its related exhibits (Dkts. 200-1 – 200-7); (2) a response in opposition to that motion filed by the Former Attorneys (Dkt. 201-1); and (3) TTV's reply to the Former Attorney's opposition (Dkt. 200-8).  In addition, the parties' motions for leave to file their respective documents under seal, remain completely under seal.  *See* Dkts. 189, 194, 198. These documents were originally sealed pursuant to Minute Orders filed on October 23, 2020, November 17, 2020, and December 8, 2020.  Prior to each of those Minute Orders, the parties filed sealed motions for leave to file the materials under seal.  *See* Dkts. 189, 194, 198.  In response to each of the "sealed motions for leave to file under seal," the Court issued Minute Orders granting each motion to file under seal.  However, rather than engaging in any substantive analysis, the

Court merely granted each motion "for good cause shown," and then accepted the proposed filings as filed and ordered the Clerk of the Court to file the records as separate entries on the docket. *See* Minute Orders filed on October 23, 2020, November 17, 2020, and December 8, 2020. In the Court's November 17, 2020 and December 8, 2020 Minute Orders the Court also ordered the parties to "file proposed redacted versions" of their substantive filings under seal by certain dates in December 2020 and to file those proposed redacted versions on the public docket. The parties filed proposed redacted versions on December 11, 2020. *See* Dkts. 200, 201.

The D.C. Circuit, alongside other courts, requires a certain measure of specificity in order to justify sealing. Parties seeking to restrict disclosure must "come forward with specific reasons why the record, or any part thereof, should remain under seal," *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991). Here, the motions for leave to file documents under seal were themselves filed under seal, thus it is impossible for Movant to know why the parties felt these documents needed to be shrouded from public view. Dkts. 194, 198; *see ICC Evaluation Serv.,* 2022 WL 2785985, at *6 (holding that a party's "naked assertion that 'there is no need for public access . . . without more, is insufficient to meet" the burden of demonstrating the absence of a need for public access) (internal quotation marks omitted); *see also United States v. Thomas*, 840 F. Supp. 2d 1, 4 (D.D.C. 2011) (a party's "conclusory assertion" that there was "no need for the public to have access to" the document was "unavailing" and gave "no authority for the proposition that there [was] 'no need' for the public to have access" to the document). Further, "it is imperative that a district court articulate its reasons for electing to seal or not to seal a record," including by applying the factors set out in *Hubbard*. *Nat'l Children's Ctr.*, 98 F.3d at 1409-10 (citing *Hubbard*, 650 F.2d at 317-22). In cases with deficiencies in specificity or failures to apply the *Hubbard* factors by the district court, a reviewing court will remand for consideration of those

factors.  *See Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 675 (D.C. Cir. 2017); *Primas v. District of Columbia*, 719 F.3d 693, 699 (D.C. Cir. 2013).

Here, the documents should not have been sealed without explanation of the Court's application of the *Hubbard* factors.  This lack of specificity, as well as the parties' inadequate efforts to seek leave to file the records under seal, led to improper sealing without the necessary findings.

### 1.   The records are improperly sealed because the court's sealing order was not sufficiently specific.

To properly seal records, the court must evaluate each sealing request and apply the factors set out in *Hubbard*. *Nat'l Children's Ctr.,* 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317-22). The *Hubbard* factors include "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Id.* The Court's sealing order in this case fails to meet the burden required in this Circuit.  Instead, in each instance the Court merely stated that "upon consideration" and "for good cause shown," the motions for leave to file documents under seal would be granted.  *See* Court's Minute Orders from October 23, 2020, Nov. 17, 2020, and Dec. 8, 2020.  The orders do not contain sufficient detail to permit appellate review, nor do they reflect an application of the *Hubbard* factors.  *Cf. United States v. Hubbard*, 650 F.2d at 324; *Primas*, 719 F.3d at 699.  Additionally, the Court, in its orders, did not fully account for the various public and private interests at stake in determining whether to place the documents under seal.  *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 78-79 (D.D.C. 2020) (citing *Metlife, Inc.*, 865 F.3d at 665; *Nat'l Children's Ctr.*, 98 F.3d at

1409). Given these deficiencies, the materials should never have been sealed in the first place, and should be unsealed now.

### C.   Movant And The Public Are Entitled To Inspect The Material Sealed Here Under The Common Law Right Of Access To Judicial Records And This Circuit's *Hubbard* Factors.

Movant, like all members of the public, has a common law "right to inspect and copy public records and documents, including judicial records and documents." *Metlife*, 865 F.3d at 665. "This common law right . . . is fundamental to a democratic state," *id.,* and "serves the important function[s] of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." *In re Nat'l Broad. Co.*, 653 F.2d 609, 612 (D.C. Cir. 1981) (quoting *Hubbard*, 650 F.2d at 314-15). There is a strong presumption in favor of public access to judicial proceedings. *Metlife*, 865 F.3d at 665.

When a court in this Circuit is presented with a motion to seal or unseal, it should weigh the factors set out in *Hubbard*. *Nat'l Children's Ctr.,* 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22). The *Hubbard* test serves as a "lodestar because it ensures that we fully account for the various public and private interests at stake." *Metlife,* 865 F.3d at 666 (citing cases). A seal on documents should be maintained only "if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires." *Id.* at 665–66. Here, the records should be disclosed under the common law because the balancing of interests weighs in favor of disclosure.

As a preliminary matter, the sealed materials are undoubtedly "'judicial records' to which the common law right of access attaches." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 7 (D.D.C. 2013) (Walton, J.). The records consist of motions, and exhibits cited in those motions, submitted by the parties. Thus, they play a significant role in the adjudicatory process because

10

they are the materials that the Court evaluated to issue rulings on the parties' motions to seal, and the Court will also rely on them to issue a ruling on TTV's motion to quash. *Id.* (holding that "filings upon which the Court relied" on when deciding various motions were judicial records due to the significant role they played in the adjudicatory process).

Regarding the first *Hubbard* factor, because the government is a party to the suit, the presumption of transparency is "particularly strong." *All Assets Held*, 520 F. Supp. 3d at 81 (citing case); *see also Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017) ("The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation") (internal quotation marks omitted).  Here, the IRS and its agents are parties to the underlying litigation, so the need for public access to the documents is great.  In addition, the sealed records at issue pertain to whether or not TTV's former attorneys are entitled to a portion of any fee award in the case.  Any such fee in this case will be paid by the IRS, which is funded by taxpayers and involves the public fisc.  As courts in this circuit recognize, "the need for public access is strengthened when the records pertain to financial arrangements involving the public fisc." *DRC, Inc. v. Republic of Honduras*, No. 10-cv-0003, 2011 WL 13257869, at *4 (D.D.C. Aug. 22, 2011).  Furthermore, the dispute between TTV and its Former Attorneys implicates the funding of public interest groups like PILF, which is a 501(c)(3) public interest law firm.  The D.C. Circuit has recognized that "[t]he public should be able to learn how the money it has contributed to a charitable organization is being spent," and therefore the issue of whether PILF is able to secure the funding for its efforts that it anticipated it would be entitled to is an issue of significant public importance. *Nat'l Children's Ctr.*, 98 F.3d at 1410.  Thus, the first *Hubbard* factor weighs heavily in favor of unsealing the documents.

The second *Hubbard* factor deals with whether there has been prior public access to the documents at issue.  If the information is in the public domain, there is support for this factor weighing in favor of disclosure, but if the information was never in the public domain, the second *Hubbard* factor is "'neutral' where there has been no previous access."  *Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 24 (D.D.C. 2013); *see also U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 67 (D.D.C. 2011) ("Of course, '[d]etermining whether ... the public has already had access to court records in a given case cannot ... guide [a] decision concerning whether ... the public should have access as an original matter'") (quoting *Hubbard*, 650 F.2d at 318).  Here, related information is in the public domain, and therefore this factor weighs in favor of disclosure.  The documents at issue have been filed in redacted form, and therefore are largely already in the public domain.  The unredacted portions of the records make it clear that the redacted portions deal with various agreements between TTV, the Former Attorneys, and TTV's current attorneys, that govern the allocation of recovered attorney fees, costs, and expenses.  Thus, the contours of those agreements are largely already described in the parties' unredacted filings.  To the extent that the parties' concerns about these documents relate to the disclosure of attorney hourly rates or other financial terms, such information is regularly disclosed in public filings.  *See, e.g.*, *BASF Corp. v. SNF Holding Co.*, No. 17-cv-251, 2019 WL 3554699, at *9 (S.D. Ga. Aug. 5, 2019) (finding "that a purported concern over the public filing of counsel's hourly rates is not a sound legal basis to seal"); *Procaps S.A. v. Patheon, Inc.*, No. 12-cv-24356, 2013 WL 5928586, at *4 (S.D. Fla. Nov. 1, 2013) (observing that "[a]ttorney's [sic] hourly rates are routinely publically [sic] disclosed and discussed in judicial opinions at all levels").  In addition, as previously noted, there has been extensive reporting about the underlying case, further demonstrating the level of existing disclosure.

The Third *Hubbard* factor weighs whether someone has objected to disclosure, and the identity of that person.  Here, the relevant parties, TTV and the Former Attorneys, presumably object to the unsealing of these records because they initially moved to file them under seal.  However, they have already un-sealed portions of the records in subsequently filed redacted versions after being ordered to do so by the Court—suggesting that they may not object to additional unsealing of these records.  In addition, because the parties' motions for leave to file these records under seal are also sealed, there is no known basis for any parties' objection to the unsealing of these records.  Thus, there is no indication as to whether the parties' objections to unsealing are based on the kinds of property and privacy rights that would sometimes weigh in favor of keeping records sealed.   Further weighing in favor of disclosure is the fact that, unlike in *Hubbard*, the records do not implicate a third party's property and privacy rights.  Rather, all of the relevant parties are subject to the underlying motion to quash the attorneys' lien.  *See Hubbard*, 650 F.2d at 319 (finding that "where a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great").

The fourth *Hubbard* factor examines the strength of the objecting party's privacy or property interest in the documents at issue.  In *Hubbard*, the court explained that when unsealing the documents would "implicate cognizable interests because they contained material protected by attorney-client privilege, discussed tax returns, or included information about an individual's sex life, or other intimate details," this factor weighs in favor of sealing the documents.  *All Assets Held*, 520 F. Supp. 3d at 83 (citing *Hubbard*, 650 F.2d at 323-24).   Those kinds of interests, however, are not at play in this case.  The documents do not implicate those particularized privacy or property interests, and thus unsealing is favored.  Instead, the documents contain information

regarding business relationships that could inform the public about matters of public interest—rather than private matters.  *Id.*; *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 149 (D.D.C. 2010).

The fifth *Hubbard* factor weighs whether disclosure of the documents at issue would prejudice future litigation involving the party seeking the seal.  For the fifth *Hubbard* factor to weigh in favor of continued sealing, the party opposing disclosure "must have identified how the . . . disclosure" of the relevant material "causes . . . legal prejudice." *Zapp*, 746 F. Supp. 2d at 150. Further, references "only to generalized reputational harm" do not satisfy establishment of future prejudice.  *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 60 (D.D.C. 2009).  Here, the parties have not identified how disclosing the records would prejudice them in future litigation, so this factor weighs in favor of disclosure.

The sixth *Hubbard* factor also weighs in favor of disclosure because the purpose for which the documents were introduced was to shed light on the agreements between TTV, its current attorneys, and its Former Attorneys which implicate the allocation of any awarded attorneys' fees. As discussed above, the disclosure of these records will ensure that the public is well informed as to the allocation of public funds as well as the funding of non-profit public organizations.  Thus, as in *Hubbard*, the disclosure of the records here will serve an important policy interest by increasing transparency and public scrutiny of these kind of fee arrangements that impact public institutions and non-profit organizations.  *See In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d, at 10-11 (finding that the policy interest of protecting minors would be vindicated, rather than undermined, by the disclosure of records in connection with a court's approval of a minor settlement).

## IV.     CONCLUSION

For these reasons, the Court should grant Movant-Intervenor leave to intervene and to access all records that are currently sealed on the docket in this matter.

Respectfully submitted,

DATED: January 17, 2023

*/s/ Alden L. Atkins*
Alden L. Atkins [DC 393922]
Charles L. Wesley [DC 252709]
(*Pro hac vice* application / admission pending)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
Telephone: 202-639-6613
Facsimile: 202-879-8813
aatkins@velaw.com
lwesley@velaw.com

D. Victoria Baranetsky
Cal. Bar No. 311892
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 982-2890
vbaranetsky@revealnews.org
(*Pro hac vice* application forthcoming)

Peter Steffensen
Southern District No. 3372006
Texas Bar No. 24106464
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC
P.O. Box 750116
Dallas, Texas 75275
Telephone: (214) 768-4077
Fax: (214) 768-1611
psteffensen@smu.edu
(*Pro hac vice* application pending)

*Attorneys for The Center for Investigative Reporting, Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2023, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent by email to all parties by operation of the Court's CM/ECF system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Alden L. Atkins*
Alden L. Atkins