UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


TRUE THE VOTE, INC.,            .
                               .
          Plaintiff,           .   CA No. 13-0734 (RBW)
                               .
      v.                       .
                               .
INTERNAL REVENUE SERVICE,      .   Washington, D.C.
et al.,                        .   Wednesday, July 5, 2023
                               .   3:00 p.m.
          Defendants.          .
. . . . . . . . . . . . . . . . .


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff:              WESLEY TODD BURNS, ESQ.
                           Gregor Wynne Arney, PLLC
                           909 Fannin Street
                           Suite 3800
                           Houston, TX 20004
                           (832) 390-2644

Non-Party Petitioner:      NOEL H. JOHNSON, ESQ.
                           Public Interest Legal Foundation
                           32 East Washington
                           Suite 1675
                           Indianapolis, IN 46204
                           (317) 203-5599

Movant:                    MICHAEL J. LOCKERBY, ESQ.
                           Foley & Lardner LLP
                           3000 K Street NW
                           Suite 600
                           Washington, DC 20007
                           (202) 945-6079

Movant:                    JAMES BOPP, JR., ESQ.
                           The Bopp Law Firm, PC
                           1 South 6th Street
                           Terre Haute, IN 47807
                           (812) 232-2434

```
For Defendants:                 JOSEPH A. SERGI, ESQ.
                                U.S. Department of Justice
                                555 4th Street NW
                                Suite 7207
                                Washington, DC 20001
                                (202) 305-0868

Court Reporter:                 BRYAN A. WAYNE, RPR, CRR
                                U.S. Courthouse, Room 4704-A
                                333 Constitution Avenue NW
                                Washington, DC 20001
                                (202) 354-3186
```

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

1          P R O C E E D I N G S

2              (Via Teleconference)

3          THE DEPUTY CLERK:  This is civil action 13-734,

4    True the Vote, Inc., versus Internal Revenue Service, et al.

5      May I have the parties identify yourselves for the record,

6    beginning with plaintiff's counsel.

7          MR. BURNS:  This is Todd Burns, plaintiff's counsel,

8    True the Vote, with Gregor Wynne & Arney.

9          THE COURT:  Okay.  We're ready to proceed?  Hello?

10         UIDENTIFIED:  Yes, Your Honor.

11         UNIDENTIFIED:  Yes, Your Honor.

12         UNIDENTIFIED:  Yes, Your Honor.

13         THE COURT:  Okay.  Anyone else need to identify

14    themselves?

15         MR. SERGI:  I was going to say, do you need the

16    government to identify themselves?  I was waiting for the

17    pause.  This is Joe Sergi from the Department of Justice.

18         THE COURT:  Good afternoon, everybody.  There are three

19    matters before me today that I need to address; and then there

20    are two other matters which I don't know if we can address

21    today or not, but we'll see.

22      The three matters I understand we need to address is the

23    final amount of attorneys' fees that the plaintiff is entitled

24    to receive, also the date by which the defendant will process

25    the payment of those attorneys' fees and also the plaintiff's

1   motion to quash PILF and Foley's attorney charging liens.

2   And then there are two additional issues which, again, I don't

3   know if we can address today.  I think we might be able to

4   address at least one of those.  One of those is a January 17,

5   2023, motion that was filed by the Center for Investigative

6   Reporting and a second matter which involves the Bopp Law Firm,

7   which I agree we probably won't be able to address today.

8       But in reference to the first issue, the final amount, based

9   upon my determination that only those line items that were

10  designated in yellow that were agreed to that should be omitted

11  by the plaintiff were the only omissions that will apply, and

12  unless there's an issue in reference to that, the amount of the

13  award would be --

14      [Call disconnected; reconnected.]

15          THE COURT:  Okay.  We'll go back through that.

16  The amount -- and there's no disagreement as I understand.

17  But the amount of the award being the $788,539.30 based upon

18  the previous ruling I had made regarding which line items were

19  to be excluded from the amount awarded.  And I think all

20  parties agree that that is the appropriate amount.

21       Anybody disagree?  If you do, let me know.  Okay.

22  There being no response, I assume there is agreement on the

23  amount of the award to be made.

24      And then the next issue was the processing of the payment

25  date, and as I was indicating, it seems to me that the

1      appropriate time for the payment would be 14 days after any

2      final judgment was entered by this court and then any appeal

3      that would be taken from a final judgment issued by this court.

4        Is there any exception to that being the appropriate timeline

5      for the payment of the attorneys' fees?

6           MR. SERGI:  Yes.  Well, not really yes, Your Honor.

7      Just a clarification.  This is Joe Sergi from the Department

8      of Justice.  I think you said "payment."  What the government

9      can do, because the processing --

10          THE COURT:  Processing.

11          MR. SERGI:  Yes, Your Honor.  We're in agreement.

12          THE COURT:  I understand it may take some time after

13     that processing has taken place for a check to be cut,

14     but the processing itself should take place at that time.

15          MR. SERGI:  Thank you, Your Honor.  That was our

16     clarification.

17          THE COURT:  Anything else on that from anybody?

18      Okay.  And then the third issue relates to the plaintiff's

19     motion to quash that was filed in reference to the position

20     taken but that there is an attorney charging lien that PILF

21     and the Foley attorneys have in reference to the award that

22     would be made in this case.  I have reviewed what the parties

23     have submitted, but I'll hear from counsel in support of why

24     a quashing would be appropriate here.

25          MR. BURNS:  Your Honor, this is Todd Burns again for

1    True the Vote plaintiff.  We've gone into this case of I think

2    a fourth set of attorneys supporting the client.  We learned

3    from the client that she was not in the loop or very

4    knowledgeable of that plan to file that motion.  At this

5    stage, we do not have any additional input into that decision.

6        THE COURT:  Well, is there an issue as to whether there

7    is a lien that applies in this case?

8        MR. BURNS:  Your Honor, that's where the question lies.

9    There's actually -- in which you've seen some recent filings,

10    there's actually some discrepancy or a little bit of a

11    contingency between the two former attorneys, PILF and the

12    Bopp firm.  And those are areas that the client was not

13    completely knowledgeable other than what's on the court

14    record.  So, at this stage, we don't have a position how the

15    fees get split up between the two prior firms.

16        THE COURT:  Very well.  I'll hear from counsel for

17    either one of those individuals.

18        MR. JOHNSON:  Thank you, Your Honor.  This is Noel

19    Johnson on behalf of the Public Interest Legal Foundation.

20    I'm not sure I entirely understand the position of the

21    plaintiff as it stands right now, whether they intend to

22    withdraw their motion or not.  In the event that they are not

23    withdrawing their motion, are simply taking no position now,

24    we would reassert what we've said in our briefing that the

25    charging lien remains valid.

1        Our position is pretty straightforward.  The Court has

2   awarded fees for work we performed on behalf of the plaintiff,

3   and those fees should be paid to us pursuant to both the valid

4   agreement and equitable principles.  From the very onset of

5   this action, the plaintiff agreed that any fees recovered

6   would be paid to its attorneys.

7        We did have a subsequent agreement since 2013, but the

8   agreement to pay the attorneys was retained throughout that

9   agreement, you know, perhaps subject to further refinement in

10  terms of distribution.  But the agreement to pay the attorneys

11  was retained, and I think the Court can draw the conclusion

12  that the client intended the attorneys to recover their fees

13  from anything the Court awarded.

14       I think equity and justice also here, in addition to those

15  written agreements, would be a basis to find that a lien

16  should exist.  Based on the understanding between the parties,

17  my colleagues and I provided considerable assistance to the

18  point of preparing the fee petition.  The entire time we were

19  led to believe that we would be reimbursed for our work.  The

20  plaintiff accepted that assistance.

21       Only after we helped them prepare and file the fee petition

22  did they object and seek to deny us entirely our right to

23  recover any money in this case.  They represented to the Court

24  in their filings that we did the work they did.  They asked

25  the Court to award fees based on those representations, and

1    I think they should be estoped from changing its mind.  As

2    I understand now, they may have no position on that, and maybe

3    their mind has changed again.  And if that's the case, we

4    would gladly accept them withdrawing their objection to our

5    lien.

6        I think there's, you know, just in closing here, there's

7    no dispute that my firm and the other former attorneys here

8    performed nearly all the work on the merits of this case, and

9    under D.C. law I think justice requires that those fees go to

10   the parties that actually performed the work.  Thank you.

11       MR. LOCKERBY:  Your Honor, this is Michael J. Lockerby

12   with Foley & Lardner LLP.  If I may be heard, I would like to

13   supplement a few of the remarks that were made on behalf of

14   the Public Interest Legal Foundation.

15       THE COURT:  Very well.

16       MR. LOCKERBY:  Thank you, Your Honor.

17       Foley was not previously served with any of these motions

18   because Foley has not represented PILF for quite some time.

19   But in reviewing the Court's orders and what was previously

20   filed, it does seem that the Bopp Law Firm, at the very least,

21   is seeking a do-over of at least two prior orders of the

22   Court.

23       Now, one is the Court's order dated September 23, 2020,

24   Docket No. 183, where the Court clearly ruled the motion is

25   granted to the extent that it seeks an attorneys' fee award

1    for work performed in the underlying litigation until the

2    first motion for fees was filed.  And then on April 20th of

3    this year, ECF No. 227, that's where the Court again clarified

4    the appropriate number.

5        Now, before the Court ruled the first time, on September

6    23, 2020, PILF, through its counsel of record, which was the

7    Bopp Law Firm at the time, submitted various amounts on behalf

8    of various lawyers and law firms.  And in the case of our law

9    firm, Foley, the amount PILF submitted saying that Foley was

10   entitled to was $205,106.42.  And that's detailed in ECF

11   No. 151-9, and there were some costs on top of that as well.

12       PILF, of course, prevailed on that motion, and would be

13   judicially estopped, is judicially estopped from taking a

14   different position now.  So we would respectfully request

15   that the fees in that amount be paid to Foley & Lardner.

16       Thank you, Your Honor.

17           THE COURT:  Any response from plaintiff's counsel to

18   either remarks made by other counsel?

19           MR. BURNS:  No, Your Honor.  We just respect the

20   Court's discretion and want an equitable division in the fees.

21           THE COURT:  Very well.  I think the position

22   articulated by both counsel in support of being awarded

23   attorneys' fees out of the funds that are awarded to the

24   plaintiff is [audio interference], so I would adopt what

25   counsel represented in the absence of any contradictory

1    position being taken at this time.  Therefore, I would adopt

2    those positions, and I will indicate those rulings in a

3    written order that I will issue.

4         MR. BOPP:  Your Honor, this is Jim Bopp from the Bopp

5    Law Firm.  I think our position -- and obviously this is

6    awkward.  I've never had to file an attorneys' lien before.

7    But I think our position is contrary to what they just said,

8    that is Foley and PILF, and if I could explain?

9         THE COURT:  Okay.  I guess I'm perplexed at how you

10   would have standing to challenge the positions that they're

11   taking about their entitlements for attorneys' fees for the

12   work that they performed.

13        MR. BOPP:  Well, what I think is the problem here is

14   conflating your processing of the petition for attorneys'

15   fees, which of course is, under 42 U.S.C. 1988, which is --

16   well, I'm sorry.  In this case -- usually -- sorry,

17   Your Honor.  But now under the Equal Access to Justice Act.

18       And the question is, under that statute, how do you compute

19   reasonable attorneys' fees to be awarded from a defendant to a

20   prevailing plaintiff that meets the standards under that act.

21   So that is a matter between the IRS and the plaintiff True the

22   Vote.

23       In other words, how much does the IRS have to pay True the

24   Vote to reimburse them for attorneys' fees.  The question of

25   attorneys' liens has nothing to do with that other than

1    creating the total award, which is 700 and some thousand

2    dollars.

3        The attorneys' liens involve the relationship between,

4    in my case, the Bopp Law Firm and True the Vote and our

5    entitlement to fees under our fee agreement from True the Vote

6    for the services we rendered.  And then as to PILF and Foley,

7    their attorneys' lien involves whatever agreement or legal

8    justification they have to collect attorneys' fees from True

9    the Vote.

10       So all the petition for attorneys' fees and the way -- and,

11   you know, and the calculations that are made under that which

12   include, of course, a review of the services provided and

13   then, you know, a statutory $150 rate unless an enhancement

14   is justified under the statute, all of that is just creating

15   a gross amount of attorneys' fees that the IRS pays as a

16   reasonable attorneys' fees to True the Vote.

17       The division of that, which is of course what is before the

18   Court now, or any entitlement under a lien, has to do with our

19   agreements and whether or not our agreements have been

20   fulfilled and paid based upon the rates that we were charging

21   under our agreement.

22       Now, of course, as to PILF and Foley, when we represented

23   True the Vote and at their consent we objected to on their

24   behalf the claim that PILF or Foley was entitled to attorneys'

25   fees because there was no -- I mean, for multiple reasons, one

of which was that there was no legal entitlement to that, to
them being paid any amount of attorneys' fees and that they
did not have a valid lien.

Now, as to our lien, as based upon our retainer agreement,
the services we provided, the charges that resulted from the
fees that were agreed to that we charged, and of course True
the Vote has not objected to that lien.

So, in that respect, Foley is in error when they say we're
asking you to change any ruling you've made.  No.  Nobody's
asking you, neither True the Vote under their motion to strike
the lien, the PILF lien, or us in our claim for attorneys'
fees pursuant to our lien, we're not asking you to change
anything you decided in terms of the IRS vis-à-vis True the
Vote.  You've, under a statute, determined an amount that is
to be awarded from the IRS to True the Vote.

What we are saying is we agree with what True the Vote
said.  And, of course, Judge, I'm happy to deal with this
today.  I know you've set a hearing on this on the 14th of
August.  But in any event, what we are saying is, No. 1, we
agree with what True the Vote said, that PILF and Foley have
no valid lien, which they have asserted, and we agree with
that.

And then if you do determine that there is a valid lien
by PILF and Foley, then you would be dealing with two liens:
one lien which we assert with specificity, 505,000 plus some

change, and which Foley and Lardner and PILF estimate at
550,000 or more.  They give no specific calculation.  And
of course, that added together is over a million dollars, and
you're award is just shy of 800,000.  So the issue that we
then address in our pleading is, well, how would you deal
with this?  Okay?

You obviously can't order the IRS to pay more than what
they are required to pay True the Vote.  Then how do you divvy
up 800,000?  And we propose that that be done proportionally;
that is, we're entitled to $505,000.  Whatever amount -- and
I'm, you know, not sure at this point even -- I mean, since
they have no specific amount, exactly how you're going to
figure out what their lien is since they don't assert an
amount of a lien.

But in any event, if you do, whatever that is, let's say
it's $550,000.  Then you would be apportioned, you know, like
47 percent, 53 percent, because that would be how those
proportionally turn out, and that percentage would be applied
to what the IRS is obligated to pay True the Vote.

So I think that the main point is, to me, is that the
calculation under the petition for attorneys' fees that is
based upon a federal statute and how you -- how and under what
circumstances you use market rates as opposed to a $150 rate
has nothing to do with the liens, because those are based on
contract.  The amounts per hour are agreed to in those

1    contracts and then form the basis for the total amount due.

2    Those have nothing to do with each other.  Other than you have

3    created a fund that is certainly adequate, it's less than the

4    total amount of liens if you recognize PILF's as well as ours.

5    And then what do you do about that is that you apportion it

6    vis-à-vis a fair and equitable way to address it.

7        So thank you for letting me address that, Your Honor.

8        THE COURT:  How much are PILF and Foley alleging that

9    you're entitled to receive?

10       MR. JOHNSON:  Your Honor, this is Noel Johnson from

11   the Public Interest Legal Foundation.  We have some specifics

12   in mind.  I believe, under the adjusted calculations, the

13   attorneys' fees amount for [audio interference] would be

14   326,000 and some change along with some costs and expenses on

15   top of that.

16       MR. LOCKERBY:  Your Honor, this is Michael J. Lockerby

17   on behalf of Foley & Lardner LLP.  PILF is not entitled to

18   relitigating issues each time it gets a new set of lawyers,

19   and we're on probably the third or fourth at this point.

20   In fact, this issue was already submitted to and decided by

21   the Court when the Bopp Law Firm was counsel.

22       At the time, the amounts submitted were, in the case

23   of Foley, $205,106.42.  That was ECF 169-9.  In the case of

24   PILF, $373,462.68.  That was ECF 151-10.  CCJ was $25,260.18.

25   That's 151-11.  And the Bopp Law Firm was $114,569.17.  That's

1    ECF 151-13.

2      And when the Court ruled on that submission, the Court said,

3    "The motion is granted to the extent it seeks an attorneys' fee

4    award for work performed in the underlying litigation until the

5    first motion for fees was filed.  The motion is denied in all

6    other respects."

7      There have been subsequent fee petitions by the Bopp Law

8    Firm, but that's the law of the case at this point.  So it's

9    not a matter of allocating the $788,539.30 based on what's

10   ultimately spent, but rather the fee award was based on the

11   application back in 2018 and we would respectfully submit that

12   the Court's prior order in that regard ought to stand.

13      THE COURT:  That would seem to me to be the correct

14   position to take, and to the extent that things have occurred

15   subsequent to that and whether that generates the entitlement

16   to additional funds is not an issue that has been raised

17   before me.  But I would tend to agree that, having previously

18   made a ruling in reference to what some of the respective

19   parties are entitled to, that that is the law of the case.

20      MR. LOCKERBY:  And, Your Honor, my apologies.

21   I've referred to the plaintiffs as PILF.  The plaintiff

22   was obviously True the Vote.  PILF was one of the law firms

23   representing True the Vote.

24      MR. BOPP:  Your Honor, if I may comment further?  This

25   is Jim Bopp, Bopp Law Firm.

1        THE COURT:  Yes.

2        MR. BOPP:  The calculation you did for 114,000 owed to

3   the Bopp Law Firm was based upon the statutory rate of $150

4   an hour.  That statutory rate is imposed when the Court is

5   determining what is a reasonable attorneys' fee under the

6   Equal Access to Justice Act where the defendant pays the

7   plaintiff.  What are they going to reimburse the plaintiff for

8   whatever attorneys' fees they paid or are obligated to pay?

9   Doesn't matter.

10       In other words, the calculation of what the IRS pays has

11  nothing to do with the rates that True the Vote agreed to pay

12  us under our retainer agreement and what is currently due and

13  owing to us under that agreement.  That's what the lien is

14  for.  The lien is between me and -- me, the Bopp Law Firm, and

15  True the Vote.  It has nothing to do with the IRS other than,

16  under a statute, a fund has been created under a statute.

17       So the calculation of 114,000, based upon a statutory rate

18  under a reimbursement from the defendant to the plaintiff, has

19  absolutely nothing to do with what True the Vote owes us.  You

20  know, there are plenty of cases that my firm has been involved

21  with, numerous, thousands of civil rights firms have been

22  involved with where they have an agreement with their

23  plaintiff on what they're going to be paid.

24       Now, at the end of the case, if they prevail in this case

25  in a way that results in an award under the Equal Access to

Justice or against a stay under 1988, then that is simply a
reimbursement from the defendants for what the plaintiffs
incurred as far as attorneys' fees.  Sometimes that is less,
as in this case, sometimes that is pretty comparable, and
sometimes it's more, even.

But that reimbursement doesn't have anything to do with
the obligation between the plaintiffs and their lawyers on
what they are to pay them.  And if, as in this case, they have
not yet paid a substantial fee that we are owed and there's no
-- True the Vote's not objecting to this.  They don't object
to what we have billed and are claiming to have owed and to
our lien -- then that's the amount of the lien.

Now, I would say one other thing, Your Honor.  Foley &
Lardner and PILF did not answer your question, and there's
nothing in the filings that answers the question, What is
their lien?  That is a word that has meaning.  What is the
lien.  It isn't go calculate it or we'll come up with a number
in the future or whatever.  It is a specific amount that then
has to be dealt with when you have a fund created to which it
applies as in this case.

So I think, you know, right off the bat, you know, they
have failed in their required proof to assert a lien.  There
is no lien.  There's a theory that they have asserted without
ever going to the trouble of coming up with an exact number
that they are claiming, and it's too late to do that now.

1          MR. BURNS:  Your Honor, this is Todd Burns, if I may,

2     for True the Vote.  I do want to make something a little more

3     precise.  One of the points that Mr. Bopp brought up is that

4     we -- and this is on the record in the recent filings by

5     Mr. Bopp -- that the Bopp Law Firm has brought suit against

6     True the Vote for what they assert are outstanding fees.

7     They've included this exact amount that they have in their

8     charging lien.

9          So I would say at this point, that is not a settled issue

10    between True the Vote and between the Bopp Law Firm, just to

11    have that on the record just so we all have the background

12    whenever a decision is made here.

13         THE COURT:  Yes.  I mean, it seems to me the only issue

14    I'm dealing with is what are the lawyers entitled to receive

15    out of the amount of money I've concluded can be recovered

16    from the IRS as a result of this litigation based upon

17    existing federal law.  And to the extent that there are other

18    financial obligations that True the Vote owes to lawyers for

19    representation provided to it, that's not an issue that's

20    before me.

21         Therefore, I don't see why I need to really deal with that

22    particular issue.  That's a separate matter, it seems to me,

23    for the parties to either resolve through negotiations or

24    resolve through some separate litigation.  But I don't see

25    that as an issue that's before me to decide.  We're only

1    talking about what amounts are the lawyers entitled to receive

2    out of the money that I've concluded the government has an

3    obligation to pay pursuant to federal law.

4        And I guess I don't agree with the position that a lien

5    does not exist as far as PILF and the Foley firm are

6    concerned.  I think there is.  I think the 2013 agreement

7    did in fact create a lien.  And to the extent it was to some

8    degree modified by the 2017 agreement, I don't think that

9    modification abolished the lien that otherwise the litigants

10   have entitled to recover for the services they provided to

11   True the Vote.

12       Okay.  Anything else we need to address?

13       MR. SERGI:  Your Honor, this Joe Sergi from the

14   Department of Justice, the government.  The only question we

15   have in this is we're assuming that when we have to make a

16   payment, we we're paying it to True the Vote and let that sort

17   out?  I'm just making sure.

18       THE COURT:  Yes.

19       MR. SERGI:  Okay.  So it won't be that X gets this

20   and Y gets that and we'll have to cut two checks and three

21   checks.  So to us it's the same number, and it's going to go

22   to True the Vote.

23       THE COURT:  No, True the Vote is the party who's

24   entitled to the funds, and then it's True the Vote's

25   obligation pursuant to any agreement it has with the lawyers

1  or some equitable principles that will come into play that

2  would dictate what True the Vote has an obligation to pay

3  then.

4       MR. SERGI:  Okay.  Then the government is absolutely

5  fine, Your Honor.

6       THE COURT:  Okay.  Anything else on issues we've

7  discussed so far?

8       MR. BOPP:  This is Jim Bopp from the Bopp Law Firm.

9  Your Honor, I don't understand lien law to mean what was

10 just discussed.  We own the lien, and the lien -- and as I

11 understand it is that the check would be written to PILF,

12 Foley Law Firm, however you decide we're -- whatever you

13 decide we're entitled to, that it's written to us, the check

14 is written to each of us for the amount of the lien.

15   You know.  You don't -- and that's the way I understand

16 the lien law to work.  A bank has a mortgage, they have a

17 lien, you know, somebody pays, you know, an invoice to a

18 business that has a lien on it.  They gotta pay the lienholder.

19      THE COURT:  Well, again --

20      MR. BOPP:  That's what I understand.

21      THE COURT:  That wasn't the issue that was previously

22 raised.  The only issue I was addressing today was the

23 entitlement of the attorneys who are seeking to recover from

24 the amount that I've concluded should be awarded.  That's the

25 only thing I was dealing with.  I wasn't really prepared to

1    address how those funds are paid out.  That issue had not been

2    raised before me.

3         MR. BOPP:  Okay.  Well, I understood we were just

4    discussing it, and I wanted --

5         THE COURT:  I mean, anybody else want to weigh in on

6    that?

7         MR. JOHNSON:  Your Honor, this is Noel Johnson, Public

8    Legal Interest Foundation.  Again, we were not necessarily

9    prepared to address direct distribution of the funds either,

10   but we would certainly think that directing the funds to each

11   party to the extent that you -- any subsequent order entitles

12   them to a certain amount of fees would be the best way to go

13   about this.

14      If the Court needs from us specifics in terms of an amount

15   that we feel we are entitled to from the existing fee award,

16   we're happy to file that with the Court if that's something

17   the Court intends to do in terms of distribution.

18        MR. LOCKERBY:  Your Honor, on behalf of Foley &

19   Lardner, we would also respectfully request the opportunity

20   to file an affidavit as to the amount and the extent to which,

21   because of the lien, that Your Honor recognized from the bench

22   as to how the payment should be made.

23        THE COURT:  I think that's appropriate.  As far as

24   how payment is made pursuant to the liens that are recognized,

25   again, I've researched that issue.  I don't think the IRS has

1    an obligation to cut its checks specifically to the attorneys.

2    I think they cut the check to True the Vote, and then there

3    may be some mechanism in place that puts some restriction on

4    True the Vote's distribution of those funds pursuant to a lien

5    that's been recognized by the Court.  But, again, I wasn't

6    prepared to address that particular issue about how the

7    plaintiffs are able to recover pursuant to the liens that

8    they're entitled to recover on.

9        So, I mean, if that's an issue that needs to be addressed,

10   then it's something that needs to be briefed so that I can

11   assess exactly how it's done.  But my ruling is that the

12   amount that I previously indicated, the 700,000-plus amount,

13   is an amount that the IRS has an obligation to pay to True

14   the Vote.  And then once True the Vote gets those funds,

15   then obviously the lawyers are entitled to whatever they

16   are entitled to receive based upon the work they performed

17   pursuant to the liens that exist based upon that work.

18       So, if the parties want to submit something in reference

19   to that, obviously I will consider that, but my ruling, as

20   I said, at this time is the gross amount that the IRS is

21   obligated to pay and a ruling indicating that PILF and the

22   Foley firm do in fact have a legitimate entitlement to funds

23   coming from that gross amount.

24       Okay.  If there's nothing else on that, we did have the

25   two other issues, one regarding the Center for Investigative

1       Reporting, its request to intervene and also to have the

2       submissions that were made regarding the motion to quash

3       unsealed, and also the Bopp Law Firm's submission that it's

4       made that it made that I don't think I'm prepared to deal

5       with at this time.  I don't even know if the other parties

6       have weighed in in reference to that.

7           But regarding the motion to intervene and to unseal, do

8       the other parties, other than the movant on that motion, have

9       anything to say in reference to that?  It does seem to me --

10      this got past me as far as these submissions being filed under

11      seal because -- I mean, I don't know what the basis was for

12      the submissions being made under seal.

13          I mean, we are talking about public funds that the

14      taxpayers bear the responsibility of paying, even though it's

15      money coming from the government since we are talking about

16      taxpayers' funds that pays the money, and it would seem to me

17      that the public has a right to know how its funds are being

18      distributed.  But if there's some issue in reference to that,

19      then obviously I would entertain any briefing that the parties

20      would want to submit to me as to why they're kept from the

21      public.

22          MR. JOHNSON:  Your Honor, this is Noel Johnson, Public

23      Interest Legal Foundation.  I think the initial basis for the

24      parties filing things under seal had to do with confidentiality

25      provisions in the agreements that were filed along with those

1    motions.  But as it pertains to the intervenors' motion, we've

2    taken no position on it.

3        MR. SERGI:  Your Honor, this is Joe Sergi from the

4    government.  We actually are not participating in any of

5    those motions nor in the motions to seal.  So it wasn't the

6    government's interest that was being sought to protect.  It

7    was I think attorney-client, things like that.

8        THE COURT:  Okay.  Anybody else want to weigh in on

9    that as to why these submissions should remain under seal?

10       MR. BURNS:  Yes, Your Honor.  Tom Burns, True the Vote.

11   It's the same basis.  It's just that some of the exhibits

12   contain attorney-client agreements, confidential agreements.

13   But other than that, we didn't have any additional input.

14       THE COURT:  I mean, do you want to file something in

15   reference to the issue as to why they should remain under

16   seal?  Because right now there has been no opposition filed to

17   the Center's application.

18       MR. BURNS:  Not at this point, Your Honor.

19       MR. JOHNSON:  Same for the Public Interest Legal

20   Foundation.  We don't intend to file anything further.

21       THE COURT:  Very well.  Then I will issue an

22   appropriate order.  There are -- based upon what my law clerk

23   briefed me on today, there are six issues or six matters I

24   have to consider in deciding whether the matter should remain

25   under seal, and I'll address those and issue an appropriate

order in reference to those six.  But it does seem to me, as
I indicated, that the appropriate thing to do would be to make
the information, unless otherwise it would be inappropriate,
available to the public in light of the fact that we are
talking about public funds.

Okay.  In reference to the second matter, the Bopp Law Firm
submission that was made on February 22, is there any other
party that wants to weigh in in reference to that?

MR. JOHNSON:  This is Noel Johnson, Public Interest
Legal Foundation.  We filed a response and opposition to the
Bopp firm's motion to enforce its charging lien.  I don't want
to re-cover all of the issues that were discussed before, but
I think, to cut through what Mr. Bopp has said, that to
enforce his lien would require this court to take money that
has been awarded for work by my firm and any other former
attorneys and give it to the Bopp firm for work that was not
awarded by this court, work that was performed by his firm for
True the Vote for which True the Vote may owe him or not owe
him additional monies.  But to the extent he requests that
that money be taken from our firms and given to him, we would
vehemently oppose that request.

THE COURT:  And my law clerk didn't really prepare me
on this issue, but you say that you have filed a submission as
to why the Bopp Law Firm's position is incorrect?

MR. JOHNSON:  We have done that.  And I apologize for

1    not having the docket entry before me, but it's one of the

2    more recent entries.

3        THE COURT:  I'll look at that and see what my position

4    is.  But my thinking is -- I mean, obviously, if we're talking

5    about two different liens, I would assume the work that would

6    have been performed first and the creation of the lien in

7    reference to that work would be the lien that would have

8    priority.  But, again, I'll look at what's been submitted, and

9    I'll issue a ruling consistent with my understanding of in

10   what line the several liens of, you know, where they lie in

11   reference to who is entitled to the funds first.

12       MR. LOCKERBY:  Michael J. Lockerby on behalf of Foley.

13   We have nothing to add to what PILF has already said on this

14   issue, and the written submission made by the Public Interest

15   Legal Foundation was ECF No. 230, filed on June 21.

16       THE COURT:  Okay.  If there's nothing else, thank you,

17   and I'll issue the appropriate orders forthwith.

18     Thank you.

19      (Proceedings adjourned at 3:46 p.m.)

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*/s/ Bryan A. Wayne*
Bryan A. Wayne