UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRUE THE VOTE, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTERNAL REVENUE SERVICE, et al., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 13-734 (RBW) |

### ORDER

On July 5, 2023, the Court held a motion hearing in this case to address (1) the final amount of the attorneys' fees the plaintiff is entitled to be awarded; (2) the date by which the defendants shall process this payment; and (3) the Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien, ECF No. 190. See Minute ("Min.") Entry (July 5, 2023). At the July 5, 2023 hearing, the Court first awarded attorneys' fees to the plaintiff in the amount of $788,539.30, consistent with the Court's April 20, 2023 Order, see Transcript of Motion Hearing (July 5, 2023) ("Tr.") at 4:8–23, ECF No. 244, which clarified "that only the entries highlighted in yellow by the defendants in their compliance opposition to which the plaintiff conceded are excluded from the attorneys' fees calculation[,]" Order at 6 (Apr. 20, 2023), ECF No. 227. Next, the Court concluded that the date for processing the attorneys' fees award is fourteen days after the Court's final judgment. See Tr. at 4:24–5:2. However, the Court indicated that the fourteen days shall not begin to run until after any appeal of the judgment has been exhausted or the time for filing an appeal has expired. See id. at 5:2–3. Finally, the Court concluded that the Public Interest Legal Foundation, Foley and Lardner LLP, and the Center for Constitutional Jurisprudence (the "Former Attorneys") have a valid charging lien on the attorneys' fees

judgment and, thus, denied the Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien ("Pl.'s Mot. to Quash"), ECF No. 190.[1]  See id. at 19:4–11.

Upon review of the July 5, 2023 motion hearing transcript, the Court has determined that further explanation of its conclusion regarding the Former Attorneys' charging lien is necessary to clarify the Court's rationale for reaching its conclusion.  As a preliminary matter, the plaintiff and the Former Attorneys dispute which contract is the operative agreement in this case, see Memorandum of Points and Authorities in Support of Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien ("Pl.'s Mem.") at 3–4, ECF No. 190-1 (arguing that the agreement executed in December 2017 supersedes the prior agreements executed in 2013); Former Attorneys' Response in Opposition to Plaintiff's Motion to Quash Attorney's Charging Lien ("Former Attorneys' Opp'n") at 2 n.1, ECF No. 196 (stating that the "Former Attorneys do not concede that the [agreement executed in] December 2017 [ ] supersedes the [agreements executed in] 2013").  Additionally, the plaintiff and the Former Attorneys dispute whether the Former Attorneys have a valid charging lien.  See generally Pl.'s Mot. to Quash; Former Attorneys' Opp'n.  Accordingly, the Court will first evaluate which of the agreements—the 2013 Agreements, see Pl.'s Mot. to Quash, Exhibit ("Ex.") C (Legal Services Agreement) at 7–12, ECF No. 190-2; id., Ex. D (Engagement Letter Agreement for Pro Bono Legal Services) at 14–19, ECF No. 190-2, or the December 2017 Agreement, see id., Ex. A (Agreement "December 2017 Agreement")) at 1–3, ECF No. 190-2—is the operative agreement in this case, before turning to the question of whether the operative agreement creates a valid charging lien.

---

[1] The Court also briefly addressed the Center for Investigative Reporting, Inc.'s Motion for Leave to Intervene and for Access to Court Records, ECF No. 214.  See id. at 23:7–25:5.  As the Court indicated during the July 5, 2023 hearing, the Court will issue an appropriate order resolving this motion.  See id. at 24:21–25:1.  Because such an order is forthcoming, the Court will vacate, nunc pro tunc, the motion hearing that was scheduled for July 25, 2023.

"A completely integrated agreement is one adopted by the parties as a complete and exclusive statement of the terms of the agreement." Bonfire, LLC v. Zacharia, 251 F. Supp. 3d 47, 52 (D.D.C. 2017) (internal quotation marks omitted). "When parties to a contract have executed a completely integrated written agreement, it supersedes all other understandings and agreements with respect to the subject matter of the agreement between the parties . . . and is viewed as the sole expression of the parties' intent." Id. at 52–53 (internal quotation marks omitted). "To determine whether a writing in fact embodies the parties' entire agreement, the Court must examine [the parties'] intent by looking to the written contract, the conduct and language of the parties[,] and the surrounding circumstances." U.S. ex rel. D.L.I. Inc. v. Allegheny Jefferson Millwork, LLC, 540 F. Supp. 2d 165, 172–73 (D.D.C. 2008) (internal quotation marks omitted). The presence or absence of an integration clause, i.e., a "contract provision[] that generally state[s] that the agreement as written constitutes the entire agreement between the parties and supersedes any prior representations[,]" Jacobson v. Hogfard, 168 F. Supp. 3d 187, 201 (D.D.C. 2016), is a "significant" factor to be considered, Bonfire, 251 F. Supp. 3d at 53. "[U]nder District of Columbia law, [a] completely integrated contract may not be supplemented with prior representations not ultimately included therein, even if those representations are not expressly contradicted by the contract itself." Jacobson, 168 F. Supp. 3d at 201 (internal quotation marks omitted) (second alteration in original).

Here, paragraphs seven and eight of the December 2017 Agreement contain an integration clause. Specifically, paragraph seven of the December 2017 Agreement states that "th[e] agreement <u>supersedes any and all agreements between the parties</u> which have existed to date," Pl.'s Mot. to Quash, Ex. A (December 2017 Agreement) ¶ 7 (emphasis added), and paragraph eight provides that "[t]here are no other agreements or representations between the

3

parties which are made or which survive the execution of this agreement," id., Ex. A (December 2017 Agreement) ¶ 8 (emphasis added). Although "not conclusive[,]" Bonfire, 251 F. Supp. 3d at 53, "the presence of an integration clause weighs heavily in favor of a complete integration[,]" U.S. ex rel. D.L.I. Inc., 540 F. Supp. 2d at 173. Furthermore, the language of the December 2017 Agreement unambiguously states that the agreement "supersedes any and all agreements between the parties which have existed to date," Pl.'s Mot. to Quash, Ex. A (December 2017 Agreement) ¶ 7—which clearly includes the 2013 Agreements—and states that "[t]here are no other agreements or representations between the parties which are made or which survive the execution of this agreement," id., Ex. A (December 2017 Agreement) ¶ 8. See Rocha v. Brown & Gould, LLP, 101 F. Supp. 3d 52, 81 (D.D.C. 2015) ("[I]f a document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent." (internal quotation marks omitted)). Therefore, the Court concludes that the December 2017 Agreement amounts to a completely integrated agreement and that this agreement, rather than the 2013 Agreements, controls the legal obligations between the parties.

Having concluded that the December 2017 Agreement is the operative agreement, the Court now turns to the question of whether this agreement creates a valid charging lien. "[A] 'charging lien' arises when an attorney obtains a judgment or decree for a client[] and has been characterized as merely a claim to the equitable interference by the [C]ourt to have that judgment held as security for [the client's] debt" to his attorney. Wolf v. Sherman, 682 A.2d 194, 197 (D.C. 1996) (internal quotation marks omitted). "In order for a charging lien to attach . . . , 'it is indispensable that there exist between the client and his attorney an agreement from which the conclusion may reasonably be reached that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered.'" Id. (quoting Elam v.

4

Monarch Life Ins. Co., 598 A.2d 1167, 1169 (D.C. 1991)) (emphasis in original). "In other words, a lawyer's lien against a client's funds . . . requires proof of (1) an agreement between lawyer and client (2) contemplating that the lawyer's fee will be paid from the client's judgment." Peterson v. Islamic Republic of Iran, 724 F. App'x 1, 3 (D.C. Cir. 2018).

Here, the Court can "reasonably [ ] reach" the conclusion that the plaintiff and the Former Attorneys "contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered." Wolf, 682 A.2d at 197. The explicit purpose of the December 2017 Agreement was "the prospective collection of and distribution of expenses and attorney[s'] fees[,]" Pl.'s Mot. to Quash, Ex. A (December 2017 Agreement) at 1, and the agreement acknowledged that the Former Attorneys "ha[ve] significant out of pocket costs related to the [l]itigation, including attorney[s'] fees expended which could and should be recoverable in this matter[,]" id., Ex. A (December 2017 Agreement) ¶ 1. Furthermore, the December 2017 Agreement indicated that the parties to the agreement would "later address the allocations and obligations of the parties relative to the prove up of such attorney[s'] fees to the [C]ourt as well as the distribution of such funds[,]" id., Ex. A (December 2017 Agreement) ¶ 3 (emphasis added), which the Court concludes can reasonably be interpreted to mean that the amounts of attorneys' fees later to be determined would be paid to the Former Attorneys out of the judgment itself, rather than from some other source of funds. See Elam, 598 A.2d at 1169 ("The test is whether the parties looked to the fund itself for payment[] and did not rely upon the personal responsibility of the owner of the claim of which the fund was the result." (internal quotation marks omitted)). Based on the clear language of the agreement, see Yankton Sioux Tribe v. Bernhardt, No. 03-cv-1603 (TFH), 2019 WL 3753616, at *3 (D.D.C. Aug. 8, 2019) ("[W]hether or not an attorney's charging lien has been created depends upon the language and surrounding

5

circumstances of the employment agreement." (quoting Elam, 598 A.2d at 1168)), the Court finds that "the conclusion [can] reasonably be reached that [the plaintiff and the Former Attorneys] contracted with the understanding that the attorney[]s['] charges were to be paid out of the judgment recovered[,]" Wolf, 682 A.2d at 197 (emphasis in original).  Thus, because there exists "(1) an agreement between lawyer and client (2) contemplating that the lawyer's fee will be paid from the client's judgment[,]" Peterson, 724 F. App'x at 3, the Court concludes that the Former Attorneys have a valid charging lien on the attorneys' fees awarded by the Court in this case.

Therefore, in accordance with the oral rulings issued by the Court at the motion hearing held on July 5, 2023, and as supplemented herein, it is hereby

**ORDERED** that the plaintiff is awarded attorneys' fees under the Equal Access to Justice Act in the amount of $788,539.30.  It is further

**ORDERED** that, within fourteen days of the date of this Order, the defendant shall submit all necessary paperwork to process the payment for the attorneys' fee award.  However, the fourteen-day period shall not begin to run until after any appeal has been exhausted or the time for filing an appeal has expired.  It is further

**ORDERED** that the defendants shall deposit the attorneys' fee award amount of $788,539.30 into the registry of the Clerk of the Court, where it will be held pending the Court's resolution of the attorneys' charging lien disputes in this case.  It is further

**ORDERED** that the Clerk of the Court is directed to accept the deposit of $788,539.30 from the defendants and deposit these funds into an interest-bearing account under the terms and conditions set forth in Federal Rule of Civil Procedure 67.  It is further

**ORDERED** that the Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien, ECF No. 190, is **DENIED**. It is further

**ORDERED** that, on or before September 11, 2023, the Former Attorneys and the plaintiff's current attorney, the Bopp Law Firm, PC (the "BLF"), shall file supplemental briefing addressing the following three issues: (1) the amount of attorneys' fees that the attorneys claim are subject to their respective charging liens; (2) the priority of the distribution of funds in the event of competing attorneys' charging liens in the District of Columbia; and (3) the method by which payment should be distributed to the attorneys who the Court concludes have a valid charging lien on the attorneys' fees awarded by the Court in this case. It is further

**ORDERED** that, on October 18, 2023, at 10:00 a.m., the parties, the Former Attorneys, and the BLF shall appear before the Court for a hearing to address the Former Attorneys' charging lien and the Bopp Law Firm, PC's Motion for Enforcement of Attorney's Charging Lien, ECF No. 229. The parties, the Former Attorneys, and the BLF shall appear before the Court, via teleconference, by calling 1-877-873-8017 and entering the Court's access code (8583213) followed by the pound key (#). It is further

**ORDERED** that the hearing on The Center for Investigative Reporting, Inc.'s Motion for Leave to Intervene and for Access to Court Records, ECF No. 214, previously scheduled for July 25, 2023, is **VACATED** nunc pro tunc. It is further

**ORDERED** that the hearing on the Bopp Law Firm, PC's Motion for Enforcement of Attorney's Charging Lien, ECF No. 229, previously scheduled for August 14, 2023, is **VACATED** nunc pro tunc.

Case 1:13-cv-00734-RBW   Document 245   Filed 08/15/23   Page 8 of 8

8

**SO ORDERED** this 15th day of August, 2023.

<div style="text-align: right;">
REGGIE B. WALTON<br>
United States District Judge
</div>

8