**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **True the Vote, Inc.**; | |
| *Plaintiff,* | |
| *v.* | **Civil Case No.** <u>1:13-cv-000734-RBW</u> |
| **Internal Revenue Service, et al.**; | **Reply of Petitioner The Bopp Law** |
| *Defendants,* | **Firm, PC to Former Attorneys'** |
| and | **Response to Supplemental Brief** |
| **THE BOPP LAW FIRM, PC** | |
| *Non-Party Petitioner,* | |
| and **Public Interest Legal Foundation, Inc.** | |
| *Non-Party Petitioner.* | |

**Response of Petitioner The Bopp Law Firm, PC to Former Attorneys' Supplemental Brief**

On August 15, 2023, this Court ordered supplemental briefing addressing the amount of

attorney's fees claimed to be subject to the parties' valid charging liens, the priority of

distribution of funds given competing charging liens, and the method by which payment should

be distributed between the valid charging liens upon the Court's award of attorney's fees in this

case. Both Petitioner The Bopp Law Firm, PC ("**BLF**") and Petitioner the Public Interest Legal

Foundation and the law firm of Foley & Lardner LLP (collectively, "**Former Attorneys**") filed

responses on September 11, 2023. On September 25, 2023, Former Attorneys filed a motion for

leave to respond to BLF's supplemental brief and proffered their response. ECF Nos. 249, 249-2.

BLF has filed its opposition to that motion, and proffers this reply to Former Attorneys'

response, attached to its motion, filed contemporaneously herewith.

**I. Former Attorneys Conflate the Matter of Proper Compensation to the Plaintiff True the Vote, Inc. (TTV) under the EAJA with the Matter of Recovery under Attorneys' Liens.**

The Former Attorneys' supplemental brief, ECF No. 246, begins by explaining that the amount due them under their lien—which the Court has determined is anchored in its December 2017 agreement with the plaintiff[1] —was "established by the submissions to the Court on behalf of Plaintiff . . . prepared by the Bopp Law Firm, P.C., filings by other parties (including Defendants), the Court's prior rulings on these submissions, and documents prepared by BLF but not filed with the Court in response to the Court's rulings."[2] ECF No. 246 at 1-2. As the citations to filings in the EAJA award determination signal, Former Attorneys believe that the amount due

---

[1]*See* ECF No. 245 at 4-6 (Court determining that "the December 2017 Agreement is the operative agreement,") *id.* at 4, and that under D.C. law, that Agreement effected a valid charging lien, *id.* at 6.

[2]Former Attorneys cite spreadsheets "not previously filed with the Court," ECF No. 246 at 4, and not-so-vaguely suggest that something is untoward about this. Setting aside the unknown provenance of these spreadsheets, they are extraneous to the EAJA calculation on which Former Attorneys fixate, and have nothing to do with the question of the proper amount due BLF under its lien, which is based on its agreement with TTV.

The material is extraneous to the question of compensation to TTV under the EAJA because, as Former Attorney's themselves point out, the spreadsheets were never filed, which means that, as drafts, they do not necessarily represent the changes made in response to the Court's order or the IRS's objections. After Former Attorneys reviewed spreadsheets of their hours marked with IRS objections—likely versions of or the same drafts they cite—they agreed to, or themselves provided, adjustments made by BLF attorneys to Former Attorney's time. Finalized spreadsheets with substantially if not completely identical information, organized by category of IRS objection, were filed in the EAJA litigation. ECF Nos. 176-1-176-13. So the draft spreadsheets now cited by Former Attorneys are extraneous to the EAJA determination, that is, the proper award to TTV under the EAJA. Worse, they are completely irrelevant to the question now before the Court—the amount due to BLF, under its lien, which is based on its agreement with TTV.

Former Attorneys' reference to extraneous spreadsheets to flyspeck the calculation of TTV's EAJA compensation—four years after they themselves reviewed copies of their own records used in that calculation—aptly demonstrates their dilatoriness, their predilection to aspersions, and their dogged fixation on the erroneous notion that the method of calculation of what the IRS owes TTV under the EAJA has anything to do with how much TTV owes BLF under their fee agreement and lien.

them under their lien coincides with the EAJA determination;[3] and they insist, and expect the

Court and BLF to agree, that *BLF's* recovery under *its* lien coincides with the EAJA

determination. Former Attorneys go so far as to argue that estoppel of issues resolved in the

EAJA determination applies to BLF's enforcing its lien, *see* ECF No. 246 at 5.[4]

This error—assuming that the terms of an attorney's lien are governed by an EAJA award

determination—is the crux of misplaced, time-wasting, adjective-laden arguments. *See*, *e.g.* ECF

No. 249-2 at 3 (opposing the amount of BLF's lien by saying that "[t]he Court's [EAJA] ruling

and its rationale could not be more clear"); *id.* at 4 (BLF's arguing for fees based on its fee

agreement with TTV is a "'do-over.'"); *id.* (complaining that the amount of BLF's lien includes

_____

[3]The D.C. law of attorney liens links Former Attorneys' lien to the EAJA proceedings insofar as the EAJA determination results in a judgment. ECF No. 245 at 5-6 (citing and applying D.C. law, the Court found from "the clear language of the [December 2017] agreement, . . . that the plaintiff and the Former Attorneys contracted with the understanding that the attorneys' charges were to be paid out of the judgment recovered" (cleaned up)). The Court applied the law of attorney's liens to establish a valid lien—a matter between the attorney and the client, and did not apply the law governing the EAJA determination—a matter between the IRS and TTV.
        BLF's lien is based on an agreement that specifies the conditions and hourly rates and in which BLF and TTV agreed Indiana law applies to questions or disputes about payment, resulting in a valid lien under Indiana law. *See* ECF No. 189-7. BLF's lien is filed in the underlying action, in anticipation of a judgment due TTV to which BLF's lien attaches.
        In both instances, the validity and amount of the respective liens is separate from the determination of an award of fees to TTV under the EAJA.

[4]*See also* ECF No. 249-2 at 1 (asserting that BLF's supplemental brief "seiz[ed] upon the Order as an opportunity to try to relitigate issues that have already been decided."). First, BLF "seized upon" nothing; the validity and amount of the liens were expressly raised in the Court's order, ECF No. 245 at 7. What alarms Former Attorneys is the proposition that the amount of BLF's lien—the issue that they claim BLF is "relitigating"—is not governed by the EAJA determination—the issue that all recognize has already been litigated in this Court. In short, in the Former Attorney's doggedly mistaken view, the EAJA award controls how much BLF is entitled to under its lien, even though the lien is based on BLF's fee agreement with TTV, which specifies the conditions and rates.

"compensation for fees that have been expressly rejected by the Court already [in its EAJA

determination]"); *id.* (labeling as "shenanigans" BLF's seeking recovery of charges earned in

accordance with its agreement with TTV that were not compensable in EAJA proceedings); *id.*

(seeking fees earned and payable in accordance with the fee agreement but not compensable

under the EAJA is "shell games"). Even if Former Attorneys' error is genuine and not

dissembling, their aspersions are not warranted.[5, 6]

The EAJA is a federal statute providing the standards and rules by which "award[s] of

attorney's fees and other expenses [are made] to certain individuals, small businesses, and other

---

[5]As an example of Former Attorneys' dilatoriness and predilection to aspersions, perhaps after finally realizing that the amount due BLF under the lien is based on its agreement with TTV, and ostensibly after reviewing the BLF invoices, Former Attorneys spend a half page summarily questioning the provenance and veracity of the invoices and noting that one of them, "the largest," is dated in February 2023.

First, the invoices, as the notice of lien attests, are accurate, ECF No. 248 (errata correcting ECF No. 216). Though new copies of the invoices would have been just as accurate, the copies filed are contemporaneous with those sent to TTV. Because of an informal interim billing arrangement between BLF and TTV, the final invoice, covering work from the start of that billing arrangement to the end of BLF's representation of TTV in the matter is dated February 8, 2023. Each of the invoices was sent to TTV, on or about the date they carry, both by mail and by email, and BLF had regular and frequent contact with TTV during the period covered by the invoices.

[6]Former Attorneys' predilection to aspersions compels them to mention the suit between BLF and TTV, *The Bopp Law Firm, PC v. True the Vote, Inc*, 23-cv-00120 (S.D. Ind.), a development that is hardly at odds with an action to enforce a lien against the same client. *See* ECF No. 249-2 at 5-6. Nor is it unusual or untoward that BLF submits the same invoices in an action to collect from TTV and in an action to collect from a judgment awarded to TTV. And if it needs to be said again, as has previously been explained, ECF No. 236 at 2 n.2, BLF will, of course, offset the amount it recovers from TTV's EAJA judgment from the amount it seeks in its suit against TTV (and vice versus).

If Former Attorneys and the Court think that the Court would benefit from further briefing regarding the proper fees billed to TTV by its attorneys in the underlying matter,  BLF would welcome that opportunity with the understanding that the Court would consider relevant materials presently outside the record.

entities who prevail against the federal government in judicial proceedings and certain adversary

adjudications when the government's position is not substantially justified."[7] As should be

apparent, the question of a valid lien against a judgment—funded through operation of EAJA or

otherwise—is a question of state law. The questions answered by the EAJA and cases applying it

are not at issue here; the validity and terms of the petitioners' attorney's liens are.[8]

## II. BLF Has a Valid Lien, Based on its Agreement with TTV.

Former Attorneys suggest, without much reason, that BLF's lien is invalid. ECF No. 249-2

at 6. As BLF has explained, ECF No. 247, TTV entered an agreement with BLF in February

2017, ("**BLF Agreement**"), ECF No. 189-7 (under seal). The BLF Agreement has a choice of

law provision expressly providing that "[a]ny dispute arising under or in connection with the

agreement or related to any matter which is the subject of this Agreement shall be resolved on the

basis of Indiana law . . ." *Id.* As BLF has pointed out, the law in this Circuit is that "[c]ontractual

choice of law provisions are enforceable as long as there is no compelling or countervailing

reason making enforcement unreasonable." *CapitalKeys, LLC v. Democratic Republic of Congo,*

278 F. Supp. 3d 265, 284 (D.D.C. 2017). *See* ECF No. 247 at 2. Put more plainly, "[c]hoice of

---

[7]Administrative Conference of the United States, *Background about EAJA*.
https://www.acus.gov/eaja/background.

[8]To illustrate the point, the BLF fee agreement with TTV provides for an hourly rate for
Mr. Bopp, for instance, at $790 an hour, which is the hourly rate used to calculate what TTV
owes BLF under the agreement and which is what the BLF lien against TTV is based on. *See,*
*e.g.* ECF No. 248-1 (Exhibit 1 to Notice of Attorney's Charging Lien). However, in computing
what the IRS must pay TTV under the EAJA, the statutory rate of $150 per hour, adjusted for
inflation, is generally applied and is applied here by this Court to Mr. Bopp's hourly charges to
compute what the IRS owes TTV under the EAJA. The method of calculation for what the IRS
owes TTV under the EAJA has nothing to do with how much TTV owes BLF under their fee
agreement and lien.

law provisions in contracts are enforceable, and, when they exist, *courts must apply the state law specified in the contract.*" *Fuentes-Fernandez & Co., PSC v. Corvus Grp., Inc.*, 174 F. Supp. 3d 378, 386 (D.D.C. 2016) (emphasis added).

Former Attorneys ignore this rule, oblivious to the conflict of law issue that arises. ECF No. 249-2 at 6. The maxim that "there is no federal common law or statute providing for an attorney's lien; federal courts follow their forum state's law," *Holly v. Rent-A-Center*, No. 00-580, 2000 U.S. Dist. LEXIS 11504, at *1 (S.D. Ind. Aug. 9, 2000), does not address the question of whether the attorney lien law of the forum state or some other state applies.[9] Former Attorneys wrongly suggest the dichotomy "forum law or nothing." That is not the law.

"'[A]n effective choice of law by the parties . . .'" generally resolves, without further analysis, a putative conflict of laws over which state's attorney lien law applies. *In re Am. Metrocomm Corp.*, 274 B.R. 641, 659 (Bankr. D. Del. 2002) (quoting *Restat 2d of Conflict of Laws*, § 188 (2nd 1988)). That is, the choice of law provision in BLF's contract with TTV resolves the choice of law question arising when an attorney's lien is litigated in federal court. There is no need, nor would it be proper, to resort to forum law to resolve this issue. Put another way, applying the choice of law provision—meaning that Indiana law governs the question of BLF's lien against TTV—both applies the law specified in BLF's contract, fulfilling the D.C. requirement recognized in *Fuentes-Fernandez*, and it supplies the proper state law governing BLF's attorney's lien in this, a federal court. BLF has a valid equitable charging lien, based on

---

[9]And, contrary to Former Attorneys' suggestion, as a matter of logic and law, whether the "pot of money" is a judgment from an EAJA determination or from a settlement is irrelevant to the question of what state law applies to an attorney lien that seeks a share of that pot. *Cf.* ECF No. 249-2 at 6 n.3.

Indiana law, and the Court should rule on BLF's lien accordingly.

**A. BLF's lien has priority**

As the Court has ruled, Former Attorneys' lien rests on the December 2017 lien. ECF No.

245. In arguing priority of distribution in their response, Former Attorneys retreat to the position

that the lien can be and is anchored in the 2013 agreement, a proposition that this Court has

necessarily rejected. *See id.* at 2-4 (the Court evaluated which agreement was the operative

agreement in the case *before* determining whether the operative agreement creates a valid

charging lien). If the second agreement supersedes the first, yet a lien based on the first,

superseded, agreement remains valid, then the Court's evaluation was pointless. Such a position

directly contradicts the rule in this Circuit that requires proof of an agreement contemplating the

fee to be paid from a judgment, *see Peterson v. Islamic Republic of Iran*, 724 F. App'x 1, 4 (D.C.

Cir. 2018). The only valid agreement that could meet that condition is the December 2017

agreement. BLF's lien is based on the February 2017 agreement.

Since BLF's lien predates theirs, Former Attorneys' theory of priority must rest on the

premise that BLF has no valid lien or that it would be "unfair" for Former Attorneys to collect

anything less than what they expect to collect using the EAJA determination in place of a lien. As

explained *supra*, those arguments are without merit, and BLF's lien has priority.

The Court should finally put to rest the Former Attorneys' mistaken argument that the EAJA

determination controls the determination and treatment of attorney's liens. The Court should no

further entertain Former Attorneys' dilatoriness, wastefulness, and predilection to aspersions

with further briefing. BLF has a valid attorney's lien that has priority over Former Attorneys' and

the Court should rule accordingly.

October 9, 2023.                          Respectfully submitted,

                                          /s/ James Bopp, Jr.
                                          James Bopp, Jr., D.C. Bar No. CO0041
                                           jboppjr@aol.com
                                          Melena S. Siebert*
                                           msiebert@bopplaw.com
                                          THE BOPP LAW FIRM, P.C.
                                          The National Building
                                          1 South 6th Street
                                          Terre Haute, Indiana 47807
                                          (812) 232-2434
                                          (812) 235-3685 (fax)
                                          *Attorneys for Non-Party Petitioner*
                                          *THE BOPP LAW FIRM, PC*
                                          *Admitted pro hac vice