IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| True the Vote, Inc., Plaintiff, vs. Internal Revenue Service, et al., Defendants. | Civil Action No. 13-cv-734<br>MOTION HEARING (Telephonic)<br>Washington, DC<br>August 23, 2024<br>Time: 9:00 a.m. |

TRANSCRIPT OF TELEPHONIC MOTION HEARING
HELD BEFORE
THE HONORABLE JUDGE REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

For Bopp Law Firm: James Bopp, Jr.
THE BOPP LAW FIRM, PC
1 South 6th Street
Terre Haute, IN 47807
(812) 232-2434
Email: Jboppjr@aol.com

Brock Cordt Akers
AKERS FIRM
3401 Allen Parkway
Suite 101
Houston, TX 77019
(713) 877-2500
Email: Bca@akersfirm.com

For Plaintiff Former Counsel: John C. Eastman
CENTER FOR CONSTITUTIONAL JURISPRUDENCE
C/O Chapman University School of Law
One University Drive
Orange, CA 92866
(877) 855-3330, Ext 2
Email: Jeastman@chapman.edu

Former Plaintiff
Counsel:

Michael J. Lockerby
FOLEY & LARDNER LLP
3000 K Street, NW
Suite 600
Washington, DC 20007
(202) 945-6079
Email: Mlockerby@foley.com

Kaylan L. Phillips
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street
Suite 700
Alexandria, VA 22314
(703) 745-5870
Email: Kphillips@publicinterestlegal.org

Noel H. Johnson
PUBLIC INTEREST LEGAL FOUNDATION
32 East Washington
Suite 1675
Indianapolis, IN 46204
(317) 203-5599
Email: Njohnson@publicinterestlegal.org

---

Court Reporter:

Janice E. Dickman, RMR, CRR, CRC
Official Court Reporter
United States Courthouse, Room 6523
333 Constitution Avenue, NW
Washington, DC 20001
202-354-3267

* * * * * * *P R O C E E D I N G S* * * * * * *

THE COURT: Are we ready to proceed?

THE COURTROOM DEPUTY: Your Honor, I'm still checking in former counsel for the plaintiff.

THE COURT: Okay.

MR. EASTMAN: Clerk, this is John Eastman, the Center for Constitutional Jurisprudence, was counsel at the time, it is no longer an entity that practices law, but I'm on the line regarding their interest.

THE COURTROOM DEPUTY: Thank you, Mr. Eastman.

Do I have anyone else that was former counsel on the line?

(No response.)

THE COURTROOM DEPUTY: Okay. Very well. Your Honor, we're ready to proceed in this matter.

THE COURT: Okay.

THE COURTROOM DEPUTY: This is civil action 13-734, *True the Vote, Inc., versus the Internal Revenue Service et al.*

May I have counsel identify yourselves for the record, beginning with current counsel for the plaintiff.

Mr. Bopp, please identify yourself for the record, please.

MR BOPP: I do not represent True the Vote, who is the plaintiff. I represent the Bopp Law Firm that has filed a charging lien that is the subject of this matter.

THE COURTROOM DEPUTY: Okay. Thank you.

Can I have other counsel identify yourselves for the record, please.

MR. LOCKERBY: On behalf of former attorneys, the law firm of Foley and Lardner, LLP, Michael J. Lockerby.

MS. PHILLIPS: Also on behalf of former attorneys, Public Interest Legal Foundation, Kaylan Phillips and Noel Johnson.

MR. EASTMAN: And on behalf of the Center for Constitutional Jurisprudence, which is no longer an entity that practices law, but in my role as prior attorney, John Eastman.

THE COURT: Are we ready to proceed?

UNIDENTIFIED SPEAKER: We are, Your Honor.

THE COURT: Okay. This matter is before me today to assess whether the Bopp Law Firm has a valid charging lien. I've already determined that the former attorneys do in fact have a valid charging lien pursuant to the December 2017 agreement.

I guess the first thing we need to assess in deciding whether the Bopp Law Firm also has a valid charging lien is what law applies. And the agreement that would provide a basis for the Bopp Law Firm being awarded attorney's fees does in fact have a choice of law clause in it, indicating that Indiana law applies.

So I guess I need to know, if there's a position

contrary to that, why that provision setting forth what the choice of law would be does not control.

(No response.)

THE COURT: Nobody takes exception to the fact that it's Indiana law that applies?

MR. LOCKERBY: Your Honor, this is Michael Lockerby, on behalf Foley and Lardner.

As we had cited in prior filings, the law of the forum governs the charging lien, which would be the law of the District of Columbia.

THE COURT: Even if there's a particular clause in the agreement that says that a particular jurisdiction law applies?

MR. LOCKERBY: We believe that to be the case, Your Honor. On the other hand, I'm not certain that the distinction really makes a difference. We certainly cited in our filings authority from both Indiana and the District of Columbia.

THE COURT: Well, unless somebody can convince me otherwise, I think I would have to conclude that Indiana law applies. I think it's correct that if there is no specific clause in an agreement regarding choice of law, then under those circumstances the foreign jurisdiction would apply its own law. But where there is, in fact, a particular clause that says what law applies, absent some compelling reason not to have that clause applicable, then it is, in fact, that decision

made by the parties as to which law applies that controls.

But I think maybe you're correct, that it really doesn't make a distinction, since I think I would agree that both the law of the District of Columbia and Indiana are, in fact, consistent with each other in that there's a two-step assessment that has to be made in determining whether or not a valid charging lien does in fact exist.

Anything else on that issue before we move on?

MR. LOCKERBY: Not from the former attorneys, Your Honor.

UNIDENTIFIED SPEAKER: No, Your Honor.

THE COURT: Very well. Then the question becomes under that two-part test that the Indiana courts have adopted -- and as I indicated before, I believe the District of Columbia law is consistent with that -- what would be the Bopp Law Firm's position as to why it does in fact have a valid charging lien?

MR BOPP: All right. Your Honor, first, of course, the question of the charging lien was raised to the Court by the filing of our notice of the attorney's charging lien on behalf of the Bopp Law Firm, which was filed on March 21, 2023. There was no opposition to that or motion to quash, like True the Vote had filed against former attorneys, and nothing was ever raised about whether or not that lien is valid.

When we filed our motion to enforce the attorney's

charging lien on August 16th, 2023, no pleadings, no opposition, no responses were filed by anyone questioning the charging lien, its validity. And then when we get to the subsequent pleadings that have been filed, which are the former attorneys' supplemental brief, as ordered by the Court, there was no objection made in that pleading to the validity of the charging lien. When the former attorneys filed their response to Bopp Law Firm's supplemental brief, which this Court permitted, there was no objection to the validity of the charging lien.

So we sit here today, no one -- most importantly, in my opinion, True the Vote, because they are the ones against which this charging lien is being assessed -- that no one, True the Vote or former attorneys, objected to the validity of the charging lien. So that, however, can take us, if the Court wishes, to Indiana law, which sets out the requirements for an equitable charging lien. We briefed this in our supplemental briefing on pages 2 to 4.

THE COURT: I don't mean to interrupt, but before we go there, are you eventually saying, based upon what you've already indicated, that because there has not been a challenge to the assertion that the Bopp Law Firm does, in fact, have a valid charging lien, that that has been waived and, therefore, the waiver is controlling?

MR BOPP: We are asserting that, Your Honor.

THE COURT: Let me hear from other counsel as to whether you take exception to that.

MR. LOCKERBY: Your Honor, this is Mike Lockerby on behalf of Foley and Lardner.

The issue, as we see it, is not whether there's a charging lien, but the amount of the charging lien and whether the lien that the Bopp Law Firm is now asserting is consistent with the agreement among all of the parties and their counsel, including True the Vote, the former attorneys, and the Bopp Law Firm itself. And certainly, the former attorneys have not opposed, and in fact we have proposed, that the Bopp Law Firm be distributed the $150,018.98 that under the prior submissions to this Court by the Bopp Law Firm itself represented its share of the attorney's fees.

What we've objected to is now the Bopp Law Firm is claiming that it's entitled to $505,003.38, and that happens to be the amount that the Bopp Law Firm claims to have expended in the entire litigation, and there's several problems with that. One is that's not what the Bopp Law Firm represented to this Court previously, when the submissions were made seeking attorney's fees and the Bopp Law Firm was judicially estopped.

Second, there are fees included in that amount that this Court reviewed and expressly rejected, and our filings cite those. Third, there are fees that have never been submitted to this Court and any other court. And then, fourth,

the issue of the $505,003.38 is before the court in Indiana, scheduled to go to trial next summer, in July of next year. And in that case the Bopp Law Firm has put the entire amount of its claim at issue. And True the Vote has vigorously contested that as a counterclaim. It has said that -- it's alleged malpractice. It's also alleged that the Bopp Law Firm represented to True the Vote that it could resolve this case in 30 days for $50,000, and now it's ten times that amount.

And the Bopp Law Firm is, as we said in our papers, seeking a second and, really, a third bite at the apple. I think it's telling that True the Vote is not here. True the Vote has notified all the other parties that it has -- takes no position on the outcome of these motions because the understanding that everyone had at the time, is that the allocation of attorney's fees was governed by the prior filings, and now the Bopp Law Firm wants a do-over.

So, certainly, we haven't opposed distribution, as I said, of the $150,000. And that, of course, would be a deduction from any recovery in Indiana. But we do oppose, after the fact, the Bopp Law Firm trying to rewrite the charging lien and expand its scope to include fees that were never intended to be covered.

THE COURT: Okay. Well, educate me about that litigation you're talking about out there in Indiana. I'm not familiar with that and what the circumstances were that

resulted in that lawsuit being filed and who is involved in that lawsuit.

MR. LOCKERBY: The plaintiff --

MR. BOPP: The lawsuit in Indiana is brought by the Bopp Law Firm to True the Vote on approximately 20 matters where amounts have been invoiced to True the Vote and they have not paid. The total amount is about $1 million. And included in that is the $505,000 that True the Vote -- or, that Bopp Law Firm asserts is owed by True the Vote. That is also the amount of our charging lien. And, of course, as we repeatedly say, is that if there is any payment from the funds currently in the Court as a result of the award of attorney's fees reimbursement from the IRS to True the Vote, which is held by this Court at this time, if there is any payment out of those funds, of course that would be a credit against amount owed by True the Vote to the Bopp Law Firm with respect to the IRS litigation.

THE COURT: Let's talk about the funds being sought. In the Indiana litigation, are also the same -- some of the same funds for some of the same work for which compensation is being sought in this case?

MR. BOPP: Yes. We -- you know, there's an amount due and owing, $505,000, we've sued to collect that, and we've also filed a charging lien to recover those -- that amount from the funds held by this Court that the IRS paid in. And, of course, the reconciliation is, as we've said multiple times,

would be anything that we obtained in enforcing our charging lien in your Court would be a credit to any amounts that are due in the litigation.

THE COURT: Well, since it seems like there is no challenge as to whether the Bopp Law Firm has a valid charging lien in reference to litigation here in Washington, explain to me why the $100,000 amount is not appropriate to award, compared to the $500,000 amount that's been mentioned?

MR. BOPP: Sure. Thank you, Your Honor. You have to divide this, really, into two parts, because there's apples in one part and oranges in another part. The apple part was after settlement, as the Court will recall, by the IRS, we filed a petition for attorney's fees reimbursement under the Equal Access to Justice Act.

The Equal Access to Justice Act governs when and also how much reimbursement occurs under the Equal Access to Justice Act from a federal agency to someone who's been aggrieved. And, of course, that first involves a determination that the federal agency's -- federal agency's action, vis-a-vis the group, i.e., True the Vote here, was not substantially justified when they targeted True the Vote's 501(c)(4) application, delayed it, asked for, you know, questions and all that, questions that were inappropriate. And so, the Court found, this Court found that that action was not substantially justified.

If nothing else would have happened with respect to the Equal Access to Justice Act, then the attorney's fees rate for reimbursement is $150 an hour under the statute. That's capped at 150. And so what would have happened was, as is normal, if, you know, the invoices are filed -- and then there can be challenges, of course, to the particular line items and all that. Once those line items are resolved, then the number of hours is multiplied by $150, and that's how you get the reimbursement amount.

So, I mean, it's pretty favorable to the federal government. Not many lawyers can function at $150. But in any event, that's what the statute provides.

Well, but, there is also a provision that says that if the federal agency had also operated in bad faith, then in that circumstance, instead of $150 per hour for attorneys, it's a market rate. And, of course, True the Vote filed a motion that argued that the IRS had, in fact, operated in bad faith and that the True the Vote was entitled to market rates, not the $150 cap. This Court found that, yes, the IRS had operated in bad faith and had -- and awarded -- I'm going to say some, because there's another development -- some of the fees at market rate.

And ultimately what the Court found was that it wasn't all of the hours spent by lawyers litigating the case, but it was only a portion of that litigation that was

specifically related to the bad faith -- or, arose as a result of the bad faith element. And since this is all about, you know, what the IRS did to the client before suit, this Court said, well, the first half, maybe -- maybe two-thirds of the litigation was related to the bad faith element, and you awarded market rates.

Now, as it happens, of course, that's the former attorneys. In other words, they -- nearly all of their -- I think all of their time was in the period of time where this Court found that those hours should be -- based upon bad faith, should be awarded market rates, as far as reimbursement to True the Vote. With respect to -- we came in, of course, after the True the Vote discharged the former lawyers, and some of our hours were computed on basis of market rate, but most of them were not, they were computed at $150.

And so while the amount of work that each of us performed on the case was pretty similar -- in other words, total hours -- the amount awarded as reimbursement from the IRS to True the Vote with respect to the time committed by the former lawyers, was way more because this Court applied the market rate, not the 150. Right?

So that's how the figure 150,000 regarding our work arises. It was -- it arises because the vast majority of our work under the Equal Access to Justice Act was computed using $150 statutory limit on attorney's fees and not the market

rates that the time that the former lawyers provided -- or, charged, what was accorded for reimbursement purposes at market rate. So that's how the 150 arose.

Now what does that have to do with the enforcement of an attorney's lien? Nothing. Nothing. That is a peculiar statute that governs one transaction, and that transaction is: What does the IRS owe True the Vote as reimbursement for attorney's fees? The question of an attorney's lien has nothing to do with how the pot of money that is now subject to the lien has been -- has arisen; it could be settlement, it could be a damage award through judgment, in some cases it's a partial settlement before judgment. I mean, it could be under the Equal Access to Justice Act.

The source of the pot of money now which is -- True the Vote is entitled to is irrelevant to the agreement between True the Vote and the Bopp Law Firm on what they, True the Vote, owe the BOP Law Firm, and that is governed by the attorneys fee pro -- the attorney fee agreement between True the Vote and the Bopp Law Firm.

So our lien, of course, is based on that agreement, the agreement between True the Vote and the Bopp Law Firm and the amounts that we have invoiced and what they have paid.

Now, in the charging lien, on paragraph 12, we set out and provided to the Court as exhibits, we set out what True the Vote had paid up to the filing of the lien, which is

$77,000, and what was due and owing, which was an additional $505,000. And we provided all the invoices, with all the detailed information about what -- what services we provided.

So it's what is due and owing from True the Vote -- not the IRS, True the Vote -- to the Bopp Law Firm that is the subject of the lien. So we're talking apples and oranges here, and that is why we have filed a lien of $505,000, which, by the way, has never been contested. There was no motion to quash the lien. There was -- you know, there was nothing until -- there was nothing in the former attorney's supplemental filing with the Court about this. And we ended up -- you know, their contest of the amount now boils down to a -- some very minor allegations in their response to our supplement, which you allowed.

So, you know, they have been fixated on what was the calculation for reimbursement by the IRS to True the Vote governed by the Equal Access to Justice Act. That is completely irrelevant to what True the Vote owes us.

I mean, I've been involved in a ton of 1983, 1988 attorney's fees cases where we prevail against the state and 1988 permits an award of attorney's fees to be provided to the plaintiff who has prevailed in that litigation. And, again, 1988 has its own peculiar, you know, requirements on how to figure out how much the state owes a successful plaintiff who has sued a state law and prevailed.

Now, fine, okay, that's what, you know, the plaintiff gets from the state. But that doesn't affect what we, as the fee agreement between the plaintiff and the Bopp Law Firm, on what they owe us. And it's not unusual for -- because of the peculiar requirements of 1988 -- and I'm sure you've handled some of these -- where that full reimbursement to the plaintiff is not achieved in terms of what the plaintiff has greed to pay the Bopp Law Firm. But that's just irrelevant. They still are obligated to pay that amount, and customarily do.

So this is not an unusual situation. It's just they are fixated on something that we believe is totally irrelevant and does not affect the amount of the lien which we have asserted, which, frankly, is uncontested.

THE COURT: Okay. Before I have counsel for the former lawyers weigh in, let me just ask: Other than the credit that you've mentioned that might come into play out in Indiana, in that litigation, what's going to take place out there have any other impact on what's taking place here?

MR BOPP: Not in my view. No, not at all.

THE COURT: Okay. Let me hear from other counsel.

MR. LOCKERBY: Your Honor, this is Mike Lockerby on behalf of Foley, Lardner.

Both sides have cited this Court's precedence that fundamental fairness determines the award of attorney's fees. And the Bopp Law Firm admits that the more challenging work

that was the subject of the fee award was done by the former attorneys, not the Bopp Law Firm. And now what the Bopp Law Firm is trying to do is take money away from the former attorneys for the more challenging work and take it for itself, and that's particularly inappropriate. Not only is it unfair, but it is procedurally wrong; it's forum shopping.

And what counsel for the Bopp Law Firm has failed to mention is the actual allegations in that case. On page 2 of ECF No. 265, we cite the style of the pending litigation in the Southern District of Indiana, the *Bopp Law Firm, PC versus True the Vote*. And the Bopp Law Firm has put all of these claims for attorney's fees in issue in that Court. We go on, on that same page, to quote and cite the allegations of True the Vote's second amended answer, counterclaim, and affirmative defenses.

I'm not going to do a dramatic reading of those paragraphs, but they're in black and white. But paragraph 457 is entitled Unreasonable and Excessive Fees; 458 is Failure to Mitigate Damages; 459 is Unclean Hands; and in paragraph 460 True the Vote denies owing any unpaid invoices to the plaintiff BLF, and asserts that BLF engaged in legal malpractice, misrepresentation by misrepresenting the quality of their legal services, and breach of contract.

And then in paragraph 478, True the Vote expressly mentions this case. And in 478 True the Vote alleges -- and I'm quoting now -- "In 2017 BLF knowingly misrepresented to TTV

the timing, costs, and reasonably likely outcomes of the *True the Vote, Inc. versus Internal Revenue Service*, case No. 1:13-cv-00734" -- in other words, this one -- "claiming that if TTV would retain BLF to represent TTV in this matter, it would cost approximately $50,000 and take no more than 30 days."

In reliance on these representations, TTV dismissed prior counsel and retained BLF, this counsel of record. But this case is ongoing and the fees accumulated by BLF are purported to be $505,003.38. In other words, the exact amount of the claim that the Bopp Law Firm is now asserting in this court.

One potential outcome -- and we have no views as to whether it's likely -- is that the Southern District Indiana could invalidate the agreement altogether and conclude that True the Vote owes nothing to the Bopp Law Firm. The Bopp Law Firm commenced this litigation and now it's trying to short circuit it and have two chances to win. And if it doesn't prevail here, then it can still assert these same arguments in Indiana.

But we would respectfully submit that the Bopp Law Firm ought to be held to the amount that everyone agreed at the time was the amount of the fee award that should be paid to the Bopp Law Firm, $150,000.

THE COURT: Let me just ask, is there any reason for me to defer a ruling here and await what happens out in

Indiana?

MR. LOCKERBY: Well, Your Honor -- I'm sorry I didn't mean to interrupt.

MR. BOPP: I'm not sure who that question was asked of.

MR. LOCKERBY: This is Mike Lockerby. In this case there's no dispute that the $150,000 -- although we've probably spent that much on all the Bopp Law Firm's motions -- at this point the $150,000 is not contested, that that should come out of the fee award. But, of course, we can't speak for True the Vote. True the Vote hasn't taken a position. But any award greater than that would short circuit the case in Indiana.

So if this Court were to find that $150,000 of what's already been paid into the court ought to be distributed to the Bopp Law Firm, then that could be deducted in Indiana. Alternatively, because the Bopp Law Firm has placed the entire amount of the fees, including the $150,000, at issue in Indiana, this Court could -- and we would request should -- hold the amount payable to the Bopp Law Firm in escrow. But there would be no reason to delay any further payment to the former attorneys.

THE COURT: Okay. Mr. Bopp, anything you want to say what's just been indicated?

MR BOPP: Yeah. I mean, this is just shocking, honestly, Your Honor. Let's start with this: True the Vote is

a party in this litigation. If they had any reason or interest in preventing the Bopp Law Firm from collecting its fees under its retainer agreement from these proceeds, they would be here. Who is the former attorneys to be arguing this? A matter that is before a federal judge in the Southern District of Indiana is being litigated. The True the Vote has not objected in any way, at any time, to the lien, to the validity of the lien, to the retainer agreement, to the amount that we have asserted as the amount of the lien in this case. And who are the former attorneys that were fired by True the Vote? The ones to even raise this issue.

Now, the case in South -- in Southern District of Indiana is far from over. And, yes, they have read allegations, some allegations that have been asserted in that case. But this case has not been litigated, and we are in discovery. But, look, where is True the Vote? If anything that the former attorneys just said had any validity or justification or affect on True the Vote, then it's for them to assert, not the former attorneys.

Now, we did not agree -- and, you know, they keep saying this, they say, well, the Bopp Law Firm agreed to the $150,000 as an award of attorney's fees. Well, see, that doesn't provide the Court the necessary condition to that, quote, agreement, end of quote, which was it was under the Equal Access to Justice Act. In other words, when you apply

the $150 to the hours that the Court ruled the $150 limit should be applied to, then you calculate what the Court has ruled is the proper hourly rate to be applied under the Equal Access to Justice Act, not under the -- what True the Vote owes us under our attorney's lien.

So, I mean, I just -- I've been practicing for 51 years and I've never had such scandalous things thrown at me. And I would -- and it -- those questions will be resolved in the Southern District of Indiana. I think it's your obligation to resolve -- and True the Vote has made no objection to you awarding $105,000 to the Bopp Law Firm and having us paid from this award, and we belive you should do that.

THE COURT: Anything else before I move on?

MR. LOCKERBY: Your Honor, Mike Lockerby on behalf of Foley and Lardner.

The charging lien that the former attorneys have, in any event, has priority over the Bopp Law Firm's charging lien. And all of -- except for the $150,000, all of the issues related to the amount that the Bopp Law Firm is seeking are properly before the court in Indiana, as Mr. Bopp has conceded. There's discovery ongoing about those, and the Court ought not resolve those.

But there's no reason to wait for the Indiana court to resolve those unrelated issues, which have nothing to do with the payment to the former attorneys and whether the Bopp

Law Firm, quote, agreed, close quote, to the $150,000. The Bopp Law Firm did represent in filings to this Court that that was the appropriate amount to be paid to the Bopp Law Firm out of the attorney's fee award, and that's something that everyone signed off on.

THE COURT: Okay. One moment. I'm going to put you on pause and I'll talk to my law clerk for a minute. Hold on.

(Pause.)

THE COURT: Okay. I think I understand the respective positions of the parties and I need to think through it before I make a final ruling. And I'll try and do that expeditiously and get something to you as quickly as possible with the massive amount of other matters I have to deal with. But we'll get it done expeditiously.

Anything else before we terminate the call?

MR. BOPP: Yes. Sorry, Your Honor. I would like to briefly discuss the priority issue that was argued by the other side.

THE COURT: This is Mr. Bopp?

MR BOPP: Yes. Yes, it is. I'm sorry, Your Honor. Mr. Bopp.

Both parties -- all the parties agree that the first lien in time is entitled to be fully paid. We agree with that, the former attorneys agree with that. So the question is which agreement that created a lien is first in time? We filed --

nobody has disputed the validity of the Bopp Law Firm agreement which was executed in February 2017. You have litigated the question of whether or not the 2013 agreement with the former attorneys or the December 2017, which is -- which is what? ten months later than the Bopp firm agreement -- which governs this question of priority.

Well, this Court has already decided that issue. You decided, in August 15, 2023, that the December 2017 agreement superseded, was a superseding agreement, is the operational agreement, that it controls. And the 2013 is superseded, so it has no legal effect, and that the 2017 agreement is the one that created the lien.

So there's no doubt, based upon this Court's ruling, that it is -- that December 2017 agreement between True the Vote and the former attorneys is the agreement upon which they claim their lien, and that was later than the Bopp Law Firm agreement under which everyone agrees we have our lien. So that means that as far as the result here, is the Bopp Law Firm should be awarded the $505,000 and the former attorneys the remainder because their lien exceeds the remainder of the $788,000.

And also, we briefed this also, because you asked about it, also, and that that -- those checks from the court, court clerk, should be made to the Bopp Law Firm and the former attorneys directly. And we briefed the issue, and that is when

you have an attorney's lien and you have an attorney's fees award, under Indiana law that constitutes an equitable assignment of the proceeds, so that we are legally entitled to it, not True the Vote.

THE COURT: Let me just ask counsel for prior lawyers whether you agree that the Bopp Law Firm does in fact have a valid charging lien?

MR. LOCKERBY: We don't contest the charging lien with respect to the 150,000, but the Bopp Law Firm does not have priority. And, yes, the 2017 agreement governs, but the 2017 agreement continued in effect the provisions of the March 2013 agreement and those were unchanged at all by the 2017 agreement. So the obligation to pay the attorney's fees that were the subject of the fee award has existed continuously since March 2013 and the 2017 agreement simply confirmed and extended that. It did not for the very first time create that obligation.

THE COURT: So your position is that the prior attorney's lien has priority over the Bopp charging lien?

MR. LOCKERBY: Yes, Your Honor.

THE COURT: Okay. Anything else before we terminate the call? And we'll get to work so we can get you something as soon as we can. But anything else?

MR. BOPP: I have nothing else. Thank you, Your Honor.

THE COURT: Okay. If there's nothing else, thank you. It's been helpful. And we'll get you something as soon as we can. Thank you.

MR. BOPP: Thank you, Your Honor.

MR. LOCKERBY: Thank you, Your Honor.

THE COURT: Have a great weekend.

* * *

CERTIFICATE OF OFFICIAL COURT REPORTER

I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 18th day of September, 2024

________________________________

Janice E. Dickman, CRR, CMR, CCR
Official Court Reporter
Room 6523
333 Constitution Avenue, N.W.
Washington, D.C. 20001