**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TRUE THE VOTE, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>INTERNAL REVENUE SERVICE, <u>et al.</u>, )<br><br>Defendants. ) | Civil Action No. 13-734 (RBW) |

## <u>MEMORANDUM OPINION</u>

The plaintiff, True the Vote, Inc. ("TTV"), brought this civil action against the Internal

Revenue Service ("IRS"), the United States of America, and several IRS officials in their official

capacities, alleging violations of the First Amendment to the United States Constitution, U.S.

Const. amend. I; the Internal Revenue Code, 26 U.S.C. §§ 1–9834; and the Administrative

Procedure Act, 5 U.S.C. §§ 701–706, seeking declaratory and injunctive relief, as well as

monetary damages.  <u>See</u> First Amended Verified Complaint for Declaratory Judgment,

Injunctive Relief, and Compensatory, Statutory, and Punitive Damages ¶¶ 139–61, 168–206,

ECF No. 14.  Currently pending before the Court is the Bopp Law Firm's Amended Motion for

Enforcement of Attorney's Charging Lien ("BLF's Am. Mot."), ECF No. 274, filed by the

plaintiff's current attorney, the Bopp Law Firm, PC ("the BLF").  However, the plaintiff's

former attorneys—the Public Interest Legal Foundation ("PILF"), f/k/a Act Right Legal

Foundation, and Foley & Lardner LLP (collectively, the "Former Attorneys")[1]—appear to

---

[1] The plaintiff notes that the designation "Former Attorneys" includes The Center for Constitutional Jurisprudence ("CCJ"), who "also formerly represented [the plaintiff.]"  Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien ("Pl.'s Mot. to Quash") at 1 n.1.

challenge the validity of the BLF's lien and argues in any event that their charging lien takes

priority over any BLF lien.  See The Former At[t]orneys' Response to The Bopp Law Firm's

Amended Motion for Enforcement of Attorney's Charging Lien ("Former Attorneys' Opp'n") at

2–3, ECF No. 275.  Upon consideration of the submissions from the BLF and the Former

Attorneys,[2] the Court concludes that it must deny the BLF's motion.

## I.    BACKGROUND

The Court previously set forth the factual background of this case in its Memorandum

Opinion issued on October 23, 2014, see True the Vote, Inc. v. Internal Revenue Serv. ("True the

Vote I"), 71 F. Supp. 3d 219, 223–25 (D.D.C. 2014) (Walton, J.), aff'd in part, rev'd in part and

remanded, 831 F.3d 551 (D.C. Cir. 2016), and the procedural history of this case in its

subsequent Memorandum Opinions issued on May 30, 2019, see True the Vote, Inc. v. Internal

Revenue Serv. ("True the Vote II"), No. 13-cv-734 (RBW), 2019 WL 230465, at *2 (D.D.C.

May 30, 2019) (Walton, J.), and September 23, 2020, see True the Vote, Inc. v. Internal Revenue

Serv. ("True the Vote III"), No. 13-cv-734 (RBW), 2020 WL 5656694, at *2 (D.D.C. Sept. 23,

2020).  Therefore, the Court will not reiterate the factual and procedural background of this case

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Notice of Attorney's Charging Lien ("Former Attorneys' Charging Lien"), ECF No. 142; (2) the Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien ("Pl.'s Mot. to Quash"), ECF No. 190; (3) the Former Attorneys' Response in Opposition to Plaintiff's Motion to Quash Attorney's Charging Lien ("Former Attorneys' Opp'n"), ECF No. 196; (4) the Reply in Support of Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien ("Pl.'s Reply in Support of Mot. to Quash"), ECF No. 199; (5) the Notice of Attorney's Charging Lien ("BLF's Charging Lien"), ECF No. 216; (6) the Bopp Law Firm's Motion for Enforcement of Attorney's Charging Lien ("BLF's Mot. to Enforce"), ECF No. 229; (7) The Former At[t]orneys' Supplemental Brief Responding to the Court's August 15, 2023 Order ("Former Attorneys' Suppl. Br."), ECF No. 246; (8) the Supplemental Brief [of the] Non-Party Petitioner[,] The Bopp Law Firm, PC ("BLF's Suppl. Br."), ECF No. 247; (9) The Former Attorneys' Response to the Bopp Law Firm's Supplemental Brief ("Former Attorneys' Resp."), ECF No. 270; (10) the Response of Petitioner[,] The Bopp Law Firm, PC to [the] Former Attorneys' Supplemental Brief ("BLF's Resp."), ECF No. 271; (11) The Bopp Law Firm's Memorandum of Points and Authorities in Support of its Amended Motion for Enforcement of Attorney's Charging Lien ("BLF's Am. Mem."), ECF No. 274-1; (12) The Former At[t]orneys' Response to the Bopp Law Firm's Amended Motion for Enforcement of Attorney's Charging Lien ("Former Attorneys' Opp'n to Am. Mot."), ECF No. 275; and (13) The Bopp Law Firm's Reply In Support of its Amended Motion for Enforcement of Attorney's Charging Lien ("BLF's Reply in Support of Am. Mot."), ECF No. 276.

in full here.  The Court will, however, briefly summarize the current procedural posture of the case relevant to the resolution of the BLF's pending motion.

On May 5, 2017, the Former Attorneys filed a notice of attorney's charging lien "based upon legal services performed and expenses and costs incurred in connection with the representation of [the p]laintiff . . . in this action."  See Former Attorneys' Charging Lien at 1, ECF No. 142.  On October 23, 2020, following the Court's ruling in True the Vote III and the October 20, 2020 status conference, the plaintiff filed a sealed motion to quash the Former Attorneys' charging lien.  See Pl.'s Mot. to Quash at 1.

On March 21, 2023, the BLF filed its own notice of attorney's lien "based upon legal services performed and expenses and costs incurred in connection with the representation of [the] plaintiff . . . in this action."  See BLF's Charging Lien at 1.  Then, on June 16, 2023, the BLF filed a motion for an order to enforce its attorney's charging lien.  See BLF's Mot. to Enforce at 1.

On August 15, 2023, the Court issued an Order, see Order at 1 (Aug. 15, 2023), ECF No. 245, concluding that the Former Attorneys' contract dated December 2017, Pl.'s Mot. to Quash, Exhibit ("Ex.") A (Agreement ("December 2017 Agreement")) at 1–3, ECF No. 190-2, superseded their prior 2013 contract, id., Ex. C (Legal Services Agreement) at 7–12, ECF No. 190-2; id., Ex. D (Engagement Letter Agreement for Pro Bono Legal Services) at 14–19, ECF No. 190-2.  The Court therefore concluded that the December 2017 Agreement is the operative agreement in this case.  See Order at 3–4 (Aug. 15, 2023).  Additionally, the Court held that "the Former Attorneys have a valid charging lien on the attorneys' fees awarded by the Court in this case."  Id. at 6.  The Court also ordered, inter alia, that "the plaintiff [be] awarded attorneys' fees under the Equal Access to Justice Act ['EAJA'] in the amount of $788,539.30."  Id.

The Court's August 15, 2023 Order did not resolve the BLF's motion for an order to enforce its attorney's charging lien, but did order the BLF and the Former Attorneys to file supplemental briefing addressing: (1) "the amount of attorneys' fees that the attorneys claim are subject to their respective charging liens[;]" (2) "the priority of the distribution of funds in the event of competing attorneys' charging liens;" and (3) "the method by which payment should be distributed to the attorneys who the Court concludes have a valid charging lien on the attorneys' fees awarded by the Court in this case."  Id. at 7.

On August 23, 2024, the Court held a motion hearing in this case to address (1) the BLF's Motion for Enforcement of Attorney's Charging Lien, and (2) the priority of the distribution of attorneys' fees awarded by the Court if the Court concluded the BLF had a valid charging lien, therefore resulting in competing charging liens.  See Order at 3 (July 26, 2024), ECF No. 269.  Subsequently, on September 11, 2024, the Court denied without prejudice the BLF's Motion for Enforcement of Attorney's Charging Lien "in order to provide the parties the opportunity to address the applicability and effect of the forum selection clause" in the agreement between the BLF and the plaintiff (the "BLF Agreement"), "which appears to be both binding and inclusive of the [BLF's] motion to enforce a charging lien arising out of work conducted pursuant to the BLF Agreement."  Order at 3 (Sept. 11, 2024), ECF No. 272.  The Court also ordered the BLF to file a new motion to enforce its lien which addressed these issues and ordered the Former Attorneys to file a response doing the same.  See id.  On October 1, 2024, the BLF filed its amended motion to enforce its lien, see BLF's Am. Mot. to Enforce at 1, which the Former Attorneys opposed, see Former Attorneys' Opp'n at 1.[3]

---

[3] On May 6, 2025, the Former Attorneys filed an opposed motion for supplemental briefing and a hearing, in order to apprise the Court of proceedings in the Southern District of Indiana involving the BLF and the plaintiff.  See Former Attorneys' Opposed Motion for Supplemental Briefing and Hearing at 1, ECF No. 278.  In response, the

(continued . . .)

With this supplemental information, the Court will first address whether the BLF has established that it has a valid charging lien.

## II.    ANALYSIS

### A.    Whether the BLF Has a Valid Charging Lien

The BLF asserts that it has a valid charging lien under Indiana law that takes priority over the Former Attorneys' charging lien.  See BLF's Am. Mot. at 1; see also BLF's Suppl. Resp. at 2–3.  Although the Former Attorneys have at times made conflicting representations regarding the BLF's lien, they appear to take issue with the validity of the BLF's lien and, in any event, argue that their lien takes priority.  See Former Attorneys' Opp'n at 2–3.

Charging liens emerged from the common law and have been described as a "claim to the equitable interference by the court . . . ." Lyman v. Campbell, 182 F.2d 700, 702 (D.C. Cir. 1950) (citation omitted); see also Sutton v. N.Y. City Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006) ("A charging lien, although originating at common law, is equitable in nature . . . .") (internal citations omitted).  "[C]ourts are presumed to possess the full range of remedial powers—legal as well as equitable—unless Congress has expressly restricted their exercise." Cobell v. Norton, 240 F.3d 1081, 1108 (D.C. Cir. 2001) (quoting Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 749 (D.C. Cir. 1995)).  "Whether or not equitable relief will be granted rests in

---

(. . . continued)

BLF argued that "there is nothing to be taken from the dismissal of the Indiana [l]itigation that is relevant here[,]" and that as part of the stipulation of dismissal between the BLF and the plaintiff in the Indiana litigation, the plaintiff "has irrevocably assigned to [the] BLF any and all interest it may have in the fee award held in this Court's registry."  Response of Petitioner The Bopp Law Firm, P.C. [to] Former Attorney's Motion for Supplemental Briefing and Hearing at 4, ECF No. 279.  On May 21, 2025, the Court denied the Former Attorneys' motion for leave to file supplemental briefing, stating that it would set forth the reasons for that denial in this Memorandum Opinion.  See Minute ("Min.") Order (May 21, 2025).

Specifically, the Court concludes that such briefing is unnecessary because it ultimately concludes that the BLF's agreement with the plaintiff does not establish a lien under Indiana law or District of Columbia law, and therefore, the Former Attorneys' lien has priority.  And, to the extent that the plaintiff has assigned its interest in the fee award in this case to the BLF, that interest is still subject to the Former Attorneys' prior existing lien.  Therefore, even had the Court granted leave to file further supplemental briefing, it would not have altered the Court's analysis.

the sound discretion of the [C]ourt."  Petroleum Expl. v. Pub. Serv. Comm'n of Ky.,

304 U.S. 209, 218 (1938).  Therefore, as other courts have noted, the recognition of a valid

charging lien lies within the "sound discretion" of the Court.  See SFR Invs. Pool 1, LLC v.

NewRez LLC, No. 2:22-CV-195 JCM (BNW), 2022 WL 17061225, at *5 (D. Nev.

Nov. 17, 2022) (noting that "the [C]ourt retains its sound discretion to impose an [ ] equitable

lien"); Moran v. Ruan Logistics Corp., 652 F. Supp. 3d 921, 928 (S.D. Ohio 2023) ("Ultimately

though, the decision to impose an attorney charging lien is based on the facts and circumstances

of the particular case and is left to the sound discretion of the court." (quoting Ohio Willow

Wood Co. v. Alps S., LLC, No. 2:04-CV-1223, 2019 WL 2537477, at *2 (S.D. Ohio

June 20, 2019)); Joffe v. King & Spalding LLP, 337 F. Supp. 3d 366, 369 (S.D.N.Y. 2018) ("The

decision to fix a charging lien lies within the discretion of the Court.") (citation omitted).  The

Supreme Court has defined sound discretion as "a discretion exercised not arbitrarily or willfully,

but with regard to what is right and equitable under the circumstances and the law, and directed

by the reason and conscience of the judge to a just result."  Langnes v. Green, 282 U.S. 531, 541

(1931).

        Nevertheless, the Court's sound discretion, while broad, is not limitless.  For example,

this discretion does not extend to "order[ing] relief that conflicts with a clear and constitutionally

valid statute[,]" Goodluck v. Biden, 104 F.4th 920, 924 (D.C. Cir. 2024) (citations omitted), or

providing remedies not "traditionally afforded by the equity courts" in the absence of express

Congressional authorization, id. (citing Grupo Mexicano de Desarollo, S.A. v. Alliance Bond

Fund, Inc., 527 U.S. 308, 318–19 (1999)).  The District of Columbia Circuit reviews the Court's

decision as to whether or not to grant equitable relief "only for abuse of discretion."

Massachusetts v. Microsoft Corp., 373 F.3d 1199, 1207 (D.C. Cir. 2004).

Here, as indicated above, the Former Attorneys appear to challenge the validity of the BLF's charging lien, <u>see</u> Former Attorneys' Opp'n at 2–3; <u>see also</u> Former Attorneys' Resp. at 6 ("The Court has spoken to the validity of only one charging lien—that of the Former Attorneys."), despite having represented to the Court at its August 23, 2024 motion hearing that they did not oppose the BLF's lien, but argued instead that their lien has priority over any BLF lien. In light of the Former Attorneys' apparent opposition to the BLF's lien, and because the Court concludes that the determination of whether to recognize an equitable charging lien "rests in the sound discretion of the [C]ourt[,]" <u>Petroleum Expl.</u>, 304 U.S. at 218; <u>see also</u> <u>SFR Invs. Pool 1, LLC</u>, 2022 WL 17061225, at *5 (concluding the same); <u>Moran</u>, 652 F. Supp. 3d at 928 (same), the Court will exercise its discretion and independently assess whether the BLF indeed has a valid charging lien based on the record, rather than deferring to the BLF's representations regarding its agreement with TTV, which may or may not be consistent with the terms of the parties' contract and the legal requirements of the law of the jurisdiction that controls the issue. Therefore, it is the obligation of the Court to first decide: (1) whether Indiana law or District of Columbia law governs that determination, and then (2) whether the BLF has established that it has a valid charging lien under the controlling jurisdiction's law. And, because the Court ultimately concludes that the BLF has not established that it has a valid charging lien, the Court need not assess the priority of competing charging liens.

**1. Whether Indiana Law or District of Columbia Law Governs Whether the BLF Has a Valid Charging Lien**

The BLF argues that Indiana law, not District of Columbia law, governs whether it has a valid charging lien because "[t]he BLF Agreement has a choice of law provision expressly providing that '[a]ny dispute arising under or in connection with the agreement or related to any matter which is the subject of this Agreement shall be resolved on the basis of Indiana

law . . . [.]'" <u>See</u> BLF's Resp. at 5 (quoting Pl.'s Mot. to Quash, Ex. E (Agreement for Legal

Services ("BLF Agreement")) ¶ 7, ECF No. 190-2).  On the other hand, the Former Attorneys

contend that the Court should instead apply District of Columbia law in deciding whether the

BLF has established that it has a valid charging lien because "[f]ederal courts apply the forum

state's law when resolving questions of attorney liens."  <u>See</u> Former Attorneys' Resp. at 6

(quoting <u>Browne v. Waldo</u>, No. 2:20-CV-196-JVB-APR, 2023 WL 2482847, at *1 (N.D. Ind.

Feb. 23, 2023)).

"Under American law, contractual choice-of-law provisions are usually honored."

<u>Milanovich v. Costa Crociere, S.p.A.</u>, 954 F.2d 763, 767 (D.C. Cir. 1992) (citing Restatement

(Second) of Conflict of Laws § 187 (Am. L. Inst. 1971)); <u>see also</u> <u>Fuentes-Fernandez & Co.,</u>

<u>PSC v. Corvus Grp., Inc.</u>, 174 F. Supp. 3d 378, 386 (D.D.C. 2016) ("Choice of law provisions in

contracts are enforceable, and, when they exist, courts must apply the state law specified in the

contract.").  However, the Court must first determine whether the choice-of-law provision

contained within the BLF Agreement applies to the dispute at hand, <u>i.e.</u>, "if its scope

encompasses the dispute, which [courts] assess using normal principles of contract

interpretation."  <u>Azima v. RAK Investment Auth.</u>, 926 F.3d 870, 874 (D.C. Cir. 2019) (noting

the same in the context of a forum-selection clause); <u>see, e.g.</u>, <u>Lynx Tech. Partners, Inc. v. Pitts</u>

<u>Mgmt. Associates, Inc.</u>, No. 18-cv-3881 (ENV) (PK), 2021 WL 2516111, at *4 (E.D.N.Y.

June 6, 2021) (concluding that an equitable claim fell outside the scope of a choice of law

provision that provided only that Louisiana law "shall govern this Agreement").

Once a court determines that the contractual choice of law provision applies to the

dispute at hand, it will honor the provision "as long as there is some reasonable relationship with

the state specified[,]" <u>D&E Sec. & Logistics, LLC v. 650 Lamont BL LLC</u>, No. 22-cv-03775

(CRC), 2023 WL 10553625, at *2 (D.D.C. July 28, 2023) (quoting PCH Mut. Ins. Co. v. Cas. &

Sur., Inc., 569 F. Supp. 2d 67, 72 (D.D.C. 2008), and "as long as there is no compelling or

countervailing reason making enforcement unreasonable[,]" CapitalKeys, LLC v. Democratic

Republic of Congo, 278 F. Supp. 3d 265, 284 (D.D.C. 2017) (citing Milanovich, 954 F.2d at

766–67). In determining whether it is unreasonable to enforce a contractual choice of law

clause, courts generally consider if "(1) fraud or overreaching induced their formation; (2) the

plaintiff is then deprived of his or her day in court; (3) the unfair nature of the chosen law may

deprive the plaintiff of a remedy; or (4) their enforcement would conflict with the forum state's

strong public policy." Id. (citing Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)).

      Here, the BLF's agreement with the plaintiff provides:

> This Agreement shall be governed by Indiana law and Indiana courts. Any
> dispute arising under or in connection with the agreement or related to any matter
> which is the subject of this Agreement shall be resolved on the basis of Indiana
> law without giving effect to Indiana's conflict of law principles and brought in a
> court located in Indiana.

Pl.'s Mot. to Quash, Ex. E (BLF Agreement) ¶ 7.[4]

      The Former Attorneys argue that—notwithstanding this clause in the BLF's agreement—

the Court must nonetheless apply District of Columbia law because "[f]ederal courts apply the

forum state's law when resolving questions of attorney liens." Former Attorneys' Resp. at 6

(quoting Browne, 2023 WL 2482847, at *1). To be sure, in the absence of a contractual choice

of law clause evidencing the parties' intent that another jurisdiction's law should govern, federal

---

[4] Although the BLF Agreement also contains a forum selection clause indicating that disputes must be brought in Indiana, the BLF argues that "both parties to the BLF agreement have waived their right to enforce the forum selection clause[,]" BLF's Am. Mem. at 6, and therefore the Court should proceed to resolve the parties' charging lien dispute. The BLF further argues that the Court need not certify the question of the existence of a valid charging lien to an Indiana court because the matter is not dispositive of the case and there is clear precedent governing the matter. See id. at 11–12. Although not a party to the BLF Agreement, the Former Attorneys "concur that this Court is the proper forum to resolve the attorneys' fees dispute . . ." Former Attorneys' Opp'n at 1. Therefore, in light of the parties' waiver of the forum selection clause, the Court will proceed to adjudicate the attorneys' fees.

courts will apply the law of the forum state.  However, because the BLF is located in Indiana, "there is some reasonable relationship with the state specified[,]" D&E Sec. & Logistics, 2023 WL 10553625, at *2 (quoting PCH Mut. Ins. Co., 569 F. Supp. 2d at 72); see Leitner-Wise v. Koniag, Inc., 798 F. App'x 672, 673 (D.C. Cir. 2020) (per curiam) (concluding that there was a "reasonable relationship" where one of the parties was a corporation in the designated state), and therefore, the Court will enforce choice of law clauses as drafted unless there is a "compelling or countervailing reason making enforcement unreasonable[,]" CapitalKeys, LLC, 278 F. Supp. 3d at 284.  Therefore, the Court concludes that it must apply Indiana law so long as the contractual choice of law clause is applicable and enforceable.

The BLF's agreement with the plaintiff unambiguously demonstrates the parties' intent for Indiana law to apply to "[a]ny dispute arising under or in connection with the agreement or related to any matter which is the subject of this Agreement[,]" Pl.'s Mot. to Quash, Ex. E (BLF Agreement) ¶ 7, which, the Court concludes, includes the instant dispute over the existence of an equitable charging lien.  Further, there is no indication whatsoever that the clause is the product of fraud or is otherwise prejudicial to the plaintiff, who does not dispute its enforcement.  See CapitalKeys, LLC, 278 F. Supp. 3d at 284; see generally Pl.'s Mot. to Quash (seeking to quash the Former Attorneys' charging lien, arguing that it was superseded by TTV's agreement with the BLF).  Finally, there is no indication that enforcement of the contractual choice of law clause would conflict with any "strong public policy" of the District of Columbia regarding charging liens.  See id.; CapitalKeys, LLC, 278 F. Supp. 3d at 284.  Therefore, the Court concludes that the BLF's contractual choice of law provision is enforceable, and that the Court must apply Indiana law to determine whether the BLF has established a valid charging lien.

**2.  Whether the BLF Has Established That It Has a Valid Charging Lien Under Indiana Law**

The BLF asserts that it has a valid equitable charging lien under Indiana law "based on an agreement that specifies the conditions and hourly rates and in which BLF and TTV agreed that Indiana law applies to questions or disputes about payment, resulting in a valid lien under Indiana law."  BLF's Resp. at 3 n.3.  As noted earlier, the Former Attorneys do not appear to challenge the validity of the BLF's charging lien but instead insist that their charging lien has priority over any BLF charging lien.  See Former Attorneys' Resp. at 6.  However, because the Former Attorneys appear to take issue with the BLF's charging lien, and because the determination of whether to grant an equitable charging lien "rests in the sound discretion of the [C]ourt[,]" Petroleum Expl., 304 U.S. at 218, the Court must analyze the validity of the BLF's asserted charging lien based on the record and the law of the controlling jurisdiction, rather than rely merely on the parties' positions.

Under Indiana law, "[a] statutory attorney fee lien is governed by Ind[iana] Code § 33-43-4-1, which provides that '[a]n attorney practicing law in a court of record in Indiana may hold a lien for the attorney's fees on a judgment rendered in favor of a person employing the attorney to obtain the judgment.'"  State Farm Mut. Auto. Ins. Co. v. Ken Nunn L. Off., 977 N.E.2d 971, 975–76 (Ind. Ct. App. 2012) (quoting Ind. Code § 33-43-4-1 (2004)).  However, "Indiana courts have also recognized liens which arise in equity to protect attorney fees[,]" including a charging lien.  Id. at 976; see State ex rel. Shannon v. Hendricks Cir. Ct., 183 N.E. 2d 331, 333 (Ind. 1962) ("The rule is well established in Indiana that the statutory lien is not the only lien available for the security of an attorney in performing services beneficial to his client, but that equity supplies a lien independent of statute.") (citing Koons v. Beach, 45 N.E. 601 (Ind. 1897)).  In Indiana, "[a] charging lien is the equitable right of attorneys to have the fees and costs

11

due to them for services in a suit secured out of the judgment or recovery in that particular suit."
State Farm Mut. Auto. Ins. Co., 977 N.E.2d at 977 (quoting Wilson v. Sisters of St. Francis
Health Servs. Inc., 952 N.E.2d 793, 796 (Ind. Ct. App. 2011)).

Few Indiana courts in recent years have addressed the elements required to establish an
equitable charging lien under Indiana law.  See Browne, 2023 WL 2482847, at *2 (emphasizing
that it "ha[d] not been able to find a case applying Indiana law that . . . provides factors to
consider when determining whether equity directs the Court to find a lien exists").  Nonetheless,
early Indiana case law indicates that, similar to other jurisdictions whose doctrines on charging
liens also grew out of the original common law doctrine, an attorney seeking to establish a lien
must show that (1) the client secured the fund through the efforts of the attorney; and (2) there
was some agreement, express or implied, that the attorney's compensation would come from that
fund, rather than from the client's personal obligation to pay the attorney.  See Koons v. Beach,
46 N.E. 587, 587 (Ind. 1897); Hammond, W. & E.C. Ry. Co. v. Kaput, 110 N.E. 109, 111 (Ind.
Ct. App. 1915); Blankenbaker v. Bank of Com., 85 Ind. 459, 462–63 (Ind. 1882).

Indeed, in Koons v. Beach, the Indiana Supreme Court set forth a framework for
assessing whether an equitable charging lien had been established:

> One test of this claim, as originally shown, is this: Was the fund secured by the
> client through the efforts of the attorneys?  And another is, was the compensation
> of the attorney, expressly or by implication, such a charge against the fund as to
> amount to an assignment of some part thereof?  In either event equity will aid the
> attorney in the enforcement of his claim, ordinarily called a "lien."

46 N.E. at 587 (emphasis added).  Although the Indiana Supreme Court's language in Koons
could be interpreted to mean that an attorney may establish a lien under either of the above two
circumstances, the Court's review of subsequent case law and the practices in other jurisdictions
arising from the same common law leads it to conclude that Koons should instead be viewed as a

two-prong test.  See Hammond, W. & E.C. Ry. Co., 110 N.E. at 111 ("Where a fund has been secured to the client by the efforts of his attorney, and the compensation for the attorney's services is either expressly or impliedly such a charge against the fund as to amount to an assignment of some part therefore, 'equity will aid in the enforcement of his claim, ordinarily called a lien.'" (quoting Koons, 46 N.E. at 587)) (emphasis added).[5]  This reading of Koons is also consistent with Blankenbaker v. Bank of Commerce, the first case in Indiana to address attorney's charging liens, in which the Supreme Court of Indiana recognized a charging lien because the plaintiff attorneys' services "were useful and beneficial to [the client]" in obtaining a judgment for alimony and because "it was mutually agreed and understood between [the] plaintiffs and [the client] that said judgment and recovery for alimony should be and constitute a fund to which [the] plaintiffs should look, and out of which they should receive their fees and expenditures[.]"  85 Ind. at 461 (emphasis added).

        This reading of Indiana law also accords with the law of other state courts, including the District of Columbia Court of Appeals, which have found liens where either the terms of the contract itself or the surrounding circumstances indicated that the attorneys' fees were to be paid out from the fund recovered and not merely the client's personal funds.  See Wolf v. Sherman, 682 A.2d 194, 197 (D.C. 1996) ("In order for a charging lien to attach . . . , 'it is indispensable that there exist between the client and his attorney an agreement from which the conclusion may reasonably be reached that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered.'"  (quoting Elam v. Monarch Life Ins. Co., 598 A.2d 1167, 1169 (D.C. 1991)) (emphasis in original); Recht v. Urb. Redevelopment Auth. of

_____

[5] Similarly, in Alden v. White, the Appellate Court of Indiana—following Koons—denied the attorney's claim of a lien because "[h]e did not, by his labor, create the judgment lien."  68 N.E. 913, 915 (Ind. Ct. App. 1903).  The court there did not address the second prong in Koons, which would have provided a basis for relief if interpreted as an alternative and independent test.

City of Clairton, 168 A.2d 134, 138–39 (Pa. 1961) (holding that in order for a charging lien

under Pennsylvania law to be recognized and applied, the attorney must show, inter alia, "(1) that

there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that

the services of the attorney operated substantially or primarily to secure the fund out of which he

seeks to be paid, [and] (3) that it was agreed that counsel look to the fund rather than the client

for his compensation[]") (emphasis added); Daniel Mones, P.A. v. Smith, 486 So. 2d 559, 561

(Fla. 1986) (holding that an "attorney must show: (1) an express or implied contract between

attorney and client; (2) an express or implied understanding for payment of attorney's fees out of

the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4)

timely notice[]") (emphasis added).[6]

Here, the BLF asserts that it has a valid equitable charging lien "based on an agreement

that specifies the conditions and hourly rates and in which BLF and TTV agreed that Indiana law

applies to questions or disputes about payment, resulting in a valid lien under Indiana law."

BLF's Resp. at 3 n.3.  In its notice of attorney's charging lien, the BLF asserts that its charging

lien is based on (1) its agreement with the plaintiff, "under which [the] BLF agreed to provide

legal services to the plaintiff in connection with this litigation[,]" BLF's Charging Lien ¶ 1; (2)

its agreement with the plaintiff that "[the plaintiff] . . . would pay BLF's hourly rates and would

---

[6] As support of its alleged lien, the BLF cites a single Indiana federal district court case, Browne, as what should be the basis for the Court's analysis.  See BLF's Suppl. Br. at 2–3, ECF No. 247.  However, the District Court in Browne did not address Koons or subsequent opinions interpreting Koons' two-prong test.  Nor did the District Court address other early Indiana case law, such as Blankenbaker, which emphasize the existence of an agreement that the fund would be the source of the attorney's fees.  See Blankenbaker, 85 Ind. at 461.  Rather, the District Court merely noted that it "ha[d] not been able to find a case applying Indiana law that . . . provides factors to consider when determining whether equity directs the Court to find a lien exists."  Browne, 2023 WL 2482847, at *2.  Therefore, without consideration of this Indiana case law, the District Court concluded that considerations of equity required it to find that a valid lien existed.  Id. at *3.  Because federal courts are "bound by the decisions of the state's highest court interpreting that state's law" in determining state substantive law, Saiyed v. Council on Am.-Islamic Rels. Action Network, Inc., 346 F. Supp. 3d 88, 94 (D.D.C. 2018) (citing Wainwright v. Goode, 464 U.S. 78, 84 (1983)), and not interpretations of state law by other federal district courts, the Court concludes that it must apply the two-prong test set forth in Koons and subsequent cases.

14

reimburse BLF for reasonable costs and expenses incurred in connection with [the] BLF's representation of [the plaintiff,]," id. ¶ 5; (3) the Court's decision to award the plaintiff attorneys' fees and costs under the EAJA, see id. ¶ 8; (4) the BLF's claim that "[r]elying on the [agreement with the plaintiff], attorneys from [the] BLF have invested significant time and resources into pursuing [the] plaintiff's claims in this litigation[,]" id. ¶ 11; (5) that "[i]n the course of the representation, [the] BLF has incurred fees, costs, and expenses for [its] representation of [the plaintiff,]" id. ¶ 12; and (6) "[p]ursuant to the [agreement with the plaintiff], [the] BLF maintains a substantial interest that might ultimately be obtained by TTV[,]" id. ¶ 14.

However, based on the language of the agreement, there is no indication that the BLF would be reimbursed from the funds secured through an award of attorneys' fees by the Court. The agreement states that the parties agree to an advance by the plaintiff for legal services contemplated by the agreement, as well as the BLF's hourly rates for the requested legal services, to be paid by the plaintiff. See Pl.'s Mot. to Quash, Ex. E (BLF Agreement) ¶¶ 2–3. The agreement also clarifies that "[the plaintiff] agrees to pay reasonable attorney fees and costs of collecting [the plaintiff's] account if legal action is taken to collect any attorney fees or costs and expenses due to [t]he [BLF]." Id. ¶ 4 (emphasis added). The agreement further states that "[i]f [the plaintiff] elects to abandon [its] case or to substitute counsel, [the plaintiff] is responsible for all attorney fees, costs[,] and expenses already incurred" or required to be incurred to effect the termination or court order permitting withdrawal. Id. ¶ 5. Such language strongly indicates that, pursuant to the BLF Agreement, it was understood that the BLF's reimbursement was to come directly from the plaintiff, rather than from designated funds resulting from the services provided to the plaintiff by the attorneys.

Nor does the BLF's notice of attorney's charging lien provide any indication that the BLF and the plaintiff had an agreement or otherwise understood that the BLF's attorneys' fees would be paid directly out of any attorney's fee award rather than out of the plaintiff's personal obligation under the agreement.  Instead, the BLF's notice merely emphasizes that the BLF has "invested significant time and resources into pursuing [the] plaintiff's claims in this litigation." See BLF's Charging Lien ¶ 11.  While the BLF's assertions that it has invested significant resources in pursuing the plaintiff's claims in this case may establish that the BLF's efforts contributed to the existence of the award of attorneys' fees to the plaintiff in this matter, the BLF has made no showing that its compensation was "expressly or by implication, such a charge against the fund as to amount to an assignment of some part thereof[.]"  Koons, 46 N.E. at 587. Therefore, the Court concludes that the BLF has failed to establish that it has a valid charging lien under Indiana law, a decision that, because it is equitable in nature, is left to the Court's sound discretion to make based on the record in this case and the law of the controlling jurisdiction, not merely the parties' representations.[7]

### III.    CONCLUSION

For the foregoing reasons, the Court denies the BLF's amended motion to enforce its charging lien.

---

[7] Even if the Court concluded that District of Columbia law must be applied, the BLF's lien would fail for the same reasons its lien fails under Indiana law.  Under District of Columbia law, "[i]n order for a charging lien to attach . . . , it is indispensable that there exist between the client and his attorney an agreement from which the conclusion may reasonably be reached that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered."  Wolf, 682 A.2d at 197 (quoting Elam, 598 A.2d at 1169) (emphasis added).  Because nothing in the BLF's agreement indicates that the BLF would be paid out of the judgment recovered, rather than out of the plaintiff's personal obligation, the BLF has not established a valid charging lien under District of Columbia law.  See Pl.'s Mot. to Quash, Ex. E (BLF Agreement) ¶ 4 (noting that BLF was to provide the plaintiff with monthly statements to be paid within thirty days of receipt, and further noting that "[the plaintiff] agrees to pay reasonable attorney fees and costs of collecting [the plaintiff's] account if legal action is taken to collect any attorney fees or costs and expenses due to [t]he [BLF].").

**SO ORDERED** this 30th day of May, 2025.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.