**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **TRUE THE VOTE, INC.** <br> **Plaintiff,** <br> **v.** <br> **INTERNAL REVENUE SERVICE, *et al.*,** <br> **Defendants.** | ) | **Civil Action No.: 13-734 (RBW)** |

**THE FORMER ATTORNEYS' SUPPLEMENTAL BRIEF FOLLOWING REMAND**

In response to the Court's June 4, 2026 Minute Order, as amended on June 18, 2026, the "Former Attorneys"[1]—the Public Interest Legal Foundation ("PILF") and Foley & Lardner LLP ("Foley")—respectfully state as follows.

## I. PRELIMINARY STATEMENT

This case has been on the Court's docket for more than thirteen years. When they filed this action in 2023, the Former Attorneys sought to right an injustice that had been perpetrated by the IRS against their former client, True the Vote, Inc. ("TTV"). By the time the Former Attorneys withdrew as counsel of record in February 2017, they had largely succeeded in that effort. At that point, the Former Attorneys had performed nearly all the substantive work on the merits. This included factual development, preparing and filing the Complaint (ECF No. 1), responding to defendants' motions to dismiss (ECF Nos. 65, 72), appealing this Court's decision on the motions to dismiss, and successfully obtaining reversal of the order dismissing the claims against the

[1] The fee award in favor of Former Attorneys also included an award of $24,853.94 to the Center for Constitutional Jurisprudence ("CCJ"), which did not participate in the briefing and argument of the D.C. Circuit appeal that resulted in the remand at issue.



4919-7242-3613.3

government defendants. *True the Vote, Inc. v. IRS*, 831 F.3d 551 (D.C. Cir. 2016). The Former Attorneys also responded to the government's motion for summary judgment (ECF No. 119) and separately prepared a successful motion for discovery under Rule 56(d). (ECF No. 138). Not long thereafter, TTV's claims were resolved by way of a January 21, 2018 consent judgment. (ECF No. 150).

In the interim, the BLF replaced the Former Attorneys as counsel of record for TTV. (ECF Nos. 124, 125, 126, 127, 128, 129, 132, 134). In February 2018, TTV filed a motion for attorneys' fees under the Equal Access to Justice Act (the "EAJA"). (ECF No. 151). That motion sought attorneys' fees for work that had largely been performed by the Former Attorneys. The Former Attorneys devoted considerable time and resources providing essential help to BLF to support TTV's attorneys' fee requests[2]—as the BLF itself has conceded.[3] On August 15, 2023, this Court awarded TTV attorneys' fees under the EAJA in the aggregate amount of $788,539.30, allocated as follows:

Public Interest Legal Foundation: $348,979.81
Foley & Lardner LLP: $264,686.57
Center for Constitutional Jurisprudence: $24,853.94
Bopp Law Firm: $150,018.98

(ECF No. 245, 246 at 4).

---

[2] *See*, *e.g.*, ECF Nos. 151-4, 151-5, 151-5, 151-6, 151-7, 151-9, 151-10, 151-11, 151-12 (Former Attorneys' declarations and billing and expense statements); ECF Nos. 180-5, 180-6, 180-7, 180-8 (Former Attorneys' declarations and billing statements); *see also*, *e.g.*, ECF No. 180-8 ¶ 4 (Declaration of Former Attorney Kaylan L. Phillips stating, "As I am familiar with the services performed regarding the merits of the Plaintiff's claims, it was necessary for me to review Defendants' objections and the underlying billing statements.").

[3] *See* BLF Br. at 5 (App. Doc. 2139034) ("The majority of the 1875 objections were for work Former Attorneys had performed, and over a period of 12 days, using its extensive experience in statutory attorney's fees and ***with extended discussions, review, input and work of Former Attorneys***, BLF drafted responses to each of the objections.") (emphasis added).

By the time of the August 15, 2023 fee award, the BLF was no longer counsel of record for TTV. Five months earlier, on March 15, 2023, the BLF had filed suit in Indiana seeking to recover unpaid attorneys' fees from TTV. *The Bopp Law Firm, PC v. True the Vote, Inc.*, Case No. 23-cv-00120 (S.D. Ind.). Here is what the BLF's former client had to say about the merits of BLF's claim for attorneys' fees:

> 457. Unreasonable and excessive fees. TTV asserts that the attorney's fees charged by BLF are unreasonable and excessive under the circumstances. TTV maintains that BLF's fees were not commensurate with the level of services rendered or the prevailing market rates for similar legal services.
>
> 458. Failure to mitigate damages. TTV asserts that BLF failed to take reasonable steps to mitigate damages by not addressing TTV's concerns or rectifying any mistakes made in the provision of legal services. TTV asserts that BLF's failure to mitigate damages limits or eliminates TTV's obligation to pay the full amount of attorney's fees.
>
> 459. Unclean hands. TTV asserts that BLF acted with unclean hands by engaging in unethical or improper conduct during the course of the attorney-client relationship or the subsequent collection efforts. TTV asserts that BLF's unclean hands bars or limits BLF's entitlement to the requested attorney's fees.
>
> 460. TTV, as Counter-Plaintiff, denies owing any unpaid invoices to the Plaintiff BLF and asserts that BLF engaged in legal malpractice, misrepresentation by misrepresenting the quality of their legal services, and breach of contract.
>
> . . .
>
> 478. In 2017, BLF knowingly misrepresented to TTV the timing, costs, and reasonably likely outcomes of the *True the Vote, Inc. v. Internal Revenue Service*, Case No. 1:13-cv-00734, claiming that if TTV would retain BLF to represent TTV in this matter, it would cost approximately $50,000 and take no more than thirty days. In reliance on these representations, TTV dismissed [the Former Attorneys] and retained BLF as counsel of record. This case is ongoing, and the fees accumulated by BLF are purported to be $505,003.38.

TTV's Second Amended Answer, Counterclaim, and Affirmative Defenses. *See* ECF No. 55 at 60, 65, *The Bopp Law Firm, PC v. True the Vote, Inc.*, Case No. 23-cv-00120 (S.D. Ind. Mar. 1, 2024).

The dollar amount of attorneys' fees that the BLF sought (unsuccessfully) in Indiana—$505,003.38—is the exact same as the "charging lien" that BLF seeks to have this Court apply to its fee award under the Equal Access to Justice Act. This increase from the $150,018.98 that the Court awarded the BLF would thus reduce the aggregate fee award to PILF, Foley, and the CCJ from $638,520.32 to $283,535.92. The issue before the Court is whether the BLF can now take for itself attorneys' fees that—nearly three years ago—this Court awarded for the Former Attorneys' work based on filings made by the BLF itself as to the amount of fees each firm that represented TTV should receive. To do so, the BLF must clear three separate hurdles, as follows:

1. The BLF must demonstrate that it has an equitable charging lien applicable to this Court's August 15, 2023 fee award.

2. The BLF must demonstrate that its claimed lien—even if it is valid—takes precedence over the Former Attorneys' lien, the validity of which has already been determined by this Court.

3. The BLF must demonstrate that it is entitled to recover more money than this Court previously awarded for the BLF's compensable work, and that the amounts recovered by the Former Attorneys should be reduced correspondingly.

App. Doc. 2167945 at 6-7 (the "Circuit Court Order"). For the reasons explained below, the BLF cannot do any of these things.

## II. ARGUMENT

### A. The BLF Does Not Have a Valid Equitable Charging Lien on the Fees That the Former Attorneys Earned and This Court Previously Awarded.

The D.C. Circuit found two ways of establishing an equitable charging lien under Indiana law. The first is when the fund was secured through the efforts of the attorney. The second is when the client agreed to pay the attorney from that fund. *See* Circuit Court Order at 5 (citing *Koons v. Beach*, 147 Ind. 142, 143, 46 N.E. 587, 587 (1897)). The BLF cannot establish an equitable charging lien either way. The first prong is not satisfied because the BLF's efforts did not create the fees awarded for the Former Attorneys' work. The second prong is not satisfied because the BLF's former client, TTV, agreed to pay the BLF on an hourly basis, not from the fee award—as the BLF itself argued when it unsuccessfully sought to recover $505,003.38 from TTV in federal court in Indiana.

#### 1. The BLF's fee agreement required TTV to be paid hourly, not from the subsequent Equal Access to Justice Act fee award.

This Court should reaffirm its prior ruling that the BLF does not have a valid lien under the first prong of the *Koons* test. (ECF No. 280). The fee agreement between the BLF and TTV "states that the parties agree to an advance by the plaintiff for legal services contemplated by the agreement, as well as the BLF's hourly rates for the requested legal services, to be paid by the plaintiff." (*Id*. at 15). Payment of the BLF's fees "was to come directly from the plaintiff, rather than from designated funds resulting from the services provided to the plaintiff by the attorneys." (*Id*.) Because TTV did not agree to pay the BLF from the fee award, the BLF cannot satisfy the first prong of the *Koons* test.

**2. The BLF's efforts did not create the Former Attorneys' portion of the EAJA fee award that the BLF now seeks to reallocate.**

The BLF similarly cannot establish that the entire fee award was "secured by the client through the efforts of the attorney." *Koons*, 46 N.E. at 587. The D.C. Circuit recognized the unique nature of the fee award: "The fee award is not a pool of money that was won through the efforts of a settlement or damages award, but rather is meant to compensate attorneys for specific billings." Circuit Court Order at 7. Indeed, at the BLF's request, this Court reviewed all billing entries and awarded fees for each firm's compensable work. (ECF No. 184). In other words, the amount of the fee award—specifically including the allocation among the law firms—is based on the "efforts" of each attorney that performed compensable work. *See Koons*, 46 N.E. at 587. Therefore, the Former Attorneys' "efforts" secured the Former Attorneys' portion of the fee award, notwithstanding the fact that a BLF attorney signed the fee petition.

This outcome makes sense because, in Indiana, equitable liens are grounded in the principle of *quantum meruit*. *See In re Estate of Johnson*, 855 N.E.2d 686, 700 (Ind. Ct. App. 2006) (explaining that an attorney's "lien was not being granted by statutory allowance, but rather by the equitable principle of *quantum meruit*"). "*Quantum meruit* is an equitable doctrine that prevents ***unjust enrichment*** by permitting one to recover the 'value of work performed or material furnished if used' by another if valuable." *Id*. (citation omitted) (emphasis added). When applying the principle of *quantum meruit*, "there must be a determination of the dollar value of the attorney's services to offset the unjust enrichment and based on the value conferred on the client." *Major v. OEC-Diasonics, Inc.*, 743 N.E.2d 276, 282 (Ind. Ct. App. 2001) (citations and quotations omitted). This Court determined the dollar value of the services performed by the BLF and the Former Attorneys when it awarded fees based on each firm's billing records. (ECF No. 184). That valuation is exactly what the BLF asked for when it told the Court that, under the charging lien

claimed by the BLF, "the value of [its] time will ultimately depend on what the Court determines is reasonable. . . ." (ECF No. 216 ¶ 13). Therefore, with respect to fee awards and the "efforts" prong under *Koons*, an equitable charging lien should attach only to work performed by the specific attorney asserting the lien—not work performed by other attorneys.

Equity further compels that result here. A BLF attorney signed the fee request submitted to this Court, which attested to the fees requested by each firm, including the Former Attorneys. (ECF No. 151-8 at 28). The BLF is estopped from now claiming those fees as its own. "This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citations and quotations omitted). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id*. (citations and quotations omitted).

The Former Attorneys not only acquiesced in BLF's prior position, they spent considerable time and resources helping the BLF support the attorneys' fees requests.[4] The BLF even represented to the D.C. Circuit that "[t]he majority of the [government's] objections were for work Former Attorneys had performed" and those objections were overcome only "***with extended discussions, review, input and work of Former Attorneys*** . . . ." App. Doc. 2139034 at 5 (emphasis added). The BLF's about-face might therefore implicate the promissory estoppel doctrine as well. *See Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001) (explaining that "one who by deed or conduct

[4] *See*, *e.g.*, ECF Nos. 151-4, 151-5, 151-6, 151-7, 151-9, 151-10, 151-11, 151-12, 180-5, 180-6, 180-7, 180-8, No. 180-8 ¶ 4, *infra*, n.2.

has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other.”). The BLF led the Former Attorneys to reasonably believe that, if they assisted the BLF with the fee petition, they would recover fees for their compensable work. Now, however, the BLF claims entitlement to the very fees generated by that work. Equity does not tolerate a lawyer’s attempt to benefit from deception. *See In re Estate of Johnson*, 855 N.E.2d at 701 (“The purpose of the unclean hands doctrine is to prevent a party from reaping benefits from his misconduct.”).

The BLF’s signature on the fee petition does not sanitize its unclean hands. In fact, another court has rejected such an artificial view of “effort” when it comes to attorneys’ liens:[5]

> Importantly, an attorney cannot recover on a charging lien merely because the fund at issue would not exist but for his work. This court repudiated the “but for” test because “any one participant in a combined legal effort, no matter how remote their contribution, could stretch a ‘but for’ standard to invoke a charging lien.” Instead of adopting the broader “but for” test, we strictly applied the standard set forth in *Cohen*: ***whether the attorney created the fund at issue with his service and skills.***

*Slater v. Ohio Dep’t of Rehab. & Corr.*, 111 N.E.3d 492, 503 (Ohio Ct. App. 2018) (emphasis added) (citations omitted). The Former Attorneys’ detailed billing entries establish that their “service and skills” created their portion of the fee award. There is no credible evidence or argument to the contrary.

In contrast to the BLF—whose position on the fee award has been a moving target[6]—the Former Attorneys have consistently conceded that the BLF has (or had) a valid claim to the portion

---

[5] It also implicates serious ethical concerns about receiving a fee for which no work was performed. *See In re Zachary S. Kester*, No. 24S-DI-153 (Ind. Sup. Ct. Sept. 26, 2025) (explaining that charging unreasonable fees implicates Indiana Rules of Professional Conduct). An unearned fee would seem to be even more problematic than an unreasonable one.

[6] *See* Argument II.C., pp. 12–13, *infra*.

of the fee award attributable to the BLF's work, *i.e.*, $150,018.98. But it would be inequitable for the BLF to receive a penny more.[7] Because the BLF does not have a valid lien on the Former Attorneys' fees, the inquiry ends there.

### B. The Former Attorneys' Lien Has Priority Over the Charging Lien That the Bopp Law Firm Now Claims With Respect to the EAJA Fee Award.

The BLF argued that the validity of its alleged lien should be judged under Indiana law, and this Court agreed. *See* ECF No. 280 at 10 ("[T]he Court must apply Indiana law to determine whether the BLF has established a valid charging lien."). Because the firms' respective "efforts" determine their fee share under Indiana law, priority is effectively a moot issue. If this Court reaches the issue, the result is the same. It makes no difference whether lien priority is evaluated under the law of Indiana or the District of Columbia because the Former Attorneys' lien is senior either way.

#### 1. The record is incontrovertible that, as a matter of Indiana law, the Former Attorneys' "efforts" predate the BLF's "efforts."

Because the BLF's agreement with TTV does not create a lien (ECF No. 280), the BLF can establish a lien only under the second *Koons* prong, *i.e.*, "efforts." The Former Attorneys' compensable work in this case predates the BLF's compensable work, so the Former Attorneys' lien has priority over any lien the BLF might claim. The billing records that the BLF filed in support of the fee petition establish this conclusively. The Former Attorneys filed this action on May 21, 2013. (ECF No. 1). The Former Attorneys then performed nearly all the substantive work on the merits, including factual development, responding to the Government's Motion to Dismiss, appealing this Court's decision on the Motion to Dismiss, and pursuing that appeal to

[7] Arguably, equity demands that it now receive less. *See* Argument II.C., pp. 12–13, *infra*.

successful completion. The Former Attorneys also responded to the Government's Motion for Summary Judgment and separately prepared a winning Motion for Discovery under Rule 56(d). The Former Attorneys withdrew from this action between February 23 and February 27, 2017. (ECF Nos. 125–129, 132, 134).

The BLF began representing TTV on February 22, 2017. (ECF No. 216 ¶ 1). The BLF appeared in this action that same day. (ECF No. 124). The BLF did no more than argue the summary judgment and Rule 56(d) motions that the Former Attorneys had previously briefed[8] before ceasing all substantive work to pursue settlement. (ECF Nos. 148–49). The bulk of the BLF's remaining work was done in pursuit of its own fees and those of the Former Attorneys before the BLF withdrew as counsel of record for TTV in March 2023. (ECF Nos. 218–20, 223). In short, the Former Attorneys performed compensable work in this action between May 2013 and February 2017. The BLF performed no work in this action until February 2017. Because the Former Attorneys' "effort" is first in time, it has priority over the BLF's effort-created lien—assuming one even exists. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010), citing *Jones v. Rhoads*, 74 Ind. 510 (1881) ("Under the common law, priority in time gives a lien priority in right.").

If the BLF's oral argument before the D.C. Circuit is any indication, the BLF will likely seek to inflate its contributions and even argue that the BLF alone is responsible for the parties' settlement and the subsequent fee award. Whatever credit BLF may now try to claim, the BLF cannot turn back the hands of time. Nor can the BLF now argue that the Former Attorneys' time had no value and is not worth what the Court previously found it to be worth. The BLF itself asked the Court to award fees for the Former Attorneys' work, endorsing its value and necessity for the

[8] *See* Minute Entry, April 6, 2017.

successful prosecution of this action. And the Court agreed. For the BLF to even suggest that Former Attorneys' work has no value while pursuing a six-year quest for unearned money is a posture too tortured to be taken seriously.

### 2. Under the law of the District of Columbia, the BLF has no valid charging lien with respect to the attorneys' fee award.

For an equitable charging lien to exist under District of Columbia law, "it is indispensable that there exist between the client and his attorney an agreement from which the conclusion may reasonably be reached that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered." *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996) (citations omitted).

This Court has held that the Former Attorneys have a valid charging lien under District of Columbia law. (ECF No. 245 at 6). This Court also held that the BLF has no valid charging lien under Indiana or District of Columbia law because the BLF did not contract with TTV to be paid from the fee award. *See* ECF No. 280 at 16 n.7 ("Even if the Court concluded that District of Columbia law must be applied, the BLF's lien would fail for the same reasons its lien fails under Indiana law.").[9] Because the Former Attorneys' lien is the only valid lien under District of Columbia law,[10] it must have priority.

Even if BLF could establish an effort-based lien under Indiana law, it should not be given priority under District of Columbia law for the fundamental reason that the District of Columbia

---

[9] The BLF's right to recover under its fee agreement was also extinguished when it settled its claims against TTV in the Indiana litigation. That litigation and the resulting settlement determined BLF's right to recover under its agreement with TTV. By settling and dismissing its claim, BLF has forgone any right to recover the Former Attorneys' portion of the fee award in this action via the BLF's fee agreement.

[10] The BLF did not appeal the order recognizing the validity of the Former Attorneys' lien. The BLF cannot relitigate that issue now.

does not recognize effort-based liens. *Wolf*, 682 A.2d at 197. In contrast, the Former Attorneys can establish a valid and superior lien under Indiana law through the *Koons*' efforts prong. Allowing the BLF to leverage an effort-based lien in the District of Columbia while denying the Former Attorneys the same benefit would be manifestly unjust. The Court can ultimately avoid this multi-jurisdiction doctrinal tension by apportioning fees based on the efforts of each firm. *See* Argument I.A,ii, *supra*, p. 5.

**3. The Former Attorneys' right to recover attorneys' fees has existed seamlessly since the representation began in 2013.**

While the Former Attorneys' December 2017 agreement with TTV may be the "operative" agreement between those parties (ECF No. 245 at 4), that agreement seamlessly retained the 2013 agreement's "understanding that the attorney's charges were to be paid out of the judgment recovered." *Wolf*, 682 A.2d at 197. At no time did the foregoing "understanding" between the Former Attorneys and TTV not exist, such that the BLF's "efforts" could sneak in and take priority. *See* ECF No. 244 at 19:7–11 ("And to the extent [the 2013 agreement] was to some degree modified by the 2017 agreement, I don't think that modification abolished the lien that otherwise the litigants have entitled to recover for the services they provided to True the Vote."). Regardless, the "understanding" that this Court recognized in the December 2017 agreement relates to the Former Attorneys "efforts" before the BLF even entered an appearance in this case. Any lien the BLF could possibly establish is subordinate to the Former Attorneys' lien. The BLF's quest ends there.

**C. Under No Circumstances Does the BLF Have Any Entitlement to Recover Fees Earned by the Former Attorneys in Representing TTV.**

Even if the BLF could somehow establish priority, its recovery remains capped at the value of its compensable work, as determined by this Court, which is exactly what the BLF's "Notice of Attorney's Charging Lien" asked for. *See* ECF No. 216 ¶ 13 (representing that "the value of this

time will ultimately depend on what the Court determines is reasonable."). For the reasons previously discussed, the BLF is not entitled to recover "more under its lien than [its] portion of the EAJA award." (App. Doc. 2167945 at 7). Whatever its hourly rate, the BLF's "efforts" did not create the Former Attorneys' portion of the fee award. *Koons*, 46 N.E. at 587.

### D. The BLF Has No Equitable or Legal Right to Fees Greater than the Prior Award, and Its Inequitable Conduct Arguably Warrants Reducing Them.

In response to the fee petition prepared by the BLF itself, this Court determined that the appropriate amount for recovery by the BLF was $150,018.98. The BLF hoped to recover more than it was awarded. So did the Former Attorneys. No law firm was awarded the full amount it sought to recover. But rather than respect the process and the Court's fee award—which the BLF never challenged on appeal or otherwise—the BLF has been less than straightforward in its dealings with the Court and the Former Attorneys.

When it seemed to be advantageous to the BLF, the BLF sought the Former Attorneys' assistance preparing the fee petition, representing to the Court that each law firm should receive the portion attributable to the firm's respective work. Once the BLF no longer needed the Former Attorneys' help, the BLF moved—ostensibly on behalf of TTV—to quash the Former Attorneys' charging lien. (ECF No. 190). When TTV later fired the BLF, the BLF asserted a lien against the Former Attorneys' portion of the fee award in this Court in the hope of recovering the entire amount it had billed TTV, $505,003.38. (ECF No. 216). Simultaneously, the BLF sought to recover the exact same amount in a separate federal action. *The Bopp Law Firm, PC v. True the Vote, Inc.*, 23-cv-00120 (S.D. Ind. filed March 16, 2023). The BLF did not alert either court to its forum shopping and efforts to obtain two bites at the same apple.

When TTV pushed back with fraud and malpractice claims in Indiana, the BLF took its forum shopping cart back to this Court. The BLF argued that its fee agreement with TTV—and

***only*** its fee agreement—created a lien against the Former Attorneys' portion of the fee award. (ECF No. 271 at 3 n.3; ECF No. 280 at 11). After this Court rejected that argument (ECF No. 280), the BLF argued for the first time on appeal that its efforts created a lien against the fee award. *See, e.g.*, App. Doc. 2139034 at 47.

Whatever the BLF argues next—including its filing today—it will certainly be whatever the BLF believes is advantageous in the moment. The Equal Access to Justice Act empowers a district court to reduce fees owed to an attorney who unduly prolongs litigation. *See Commissioner v. Jean*, 496 U.S. 154, 155 (1990) ("28 U.S.C. 2412(d)(1)(C) empowers the District Court, in its discretion, to reduce the amount awarded, . . . or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy."); *see also Thomas v. Comm'r of Soc. Sec.*, No. 2:19-CV-1774-DMC, (ECF No. 31 at 7) (E.D. Cal. Feb. 1, 2024) ("This Court finds that scattershot briefing 'with little attempt to focus the case on the strongest grounds for remand' may warrant a reduction in fees.") (citations omitted). Under the circumstances, such a reduction may well be warranted here.

## III. <u>CONCLUSION</u>

"'[C]ompensation paid to attorneys for legal services is largely a question of fundamental fairness.'" *Hill v. Gray*, No. 13-cv-1 (TSC), 2019 U.S. Dist. LEXIS 149349, at *7 (D.D.C. Sept. 3, 2019) (quoting *Connelly v. Swick & Shapiro, P.C.*, 749 A.2d 1264, 1267 (D.C. 2000)). Fundamental fairness would see Former Attorneys compensated for work performed. A contrary ruling would countenance greed and deception, and undermine a federal law designed to bestow equal access to justice.

Date: July 17, 2026

Respectfully submitted,

*s/ Michael J. Lockerby*
Michael J. Lockerby (D.C. Bar No. 502987)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300
mlockerby@foley.com

*Counsel for Former Attorneys*
*Foley & Lardner LLP*

*/s/ Noel H. Johnson*
Kaylan L. Phillips (D.C. Bar. No. 1110583)
Noel H. Johnson (admitted *pro hac vice*)
Public Interest Legal Foundation
107 South West Street, Suite 700
Alexandria, VA 22314
Telephone: (703) 745-5870
kphillips@publicinterestlegal.org
njohnson@publicinterestlegal.org

*Counsel for Former Attorneys*
*Public Interest Legal Foundation*