**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **True the Vote, Inc.**; *Plaintiff*, *v.* **Internal Revenue Service, et al.**; *Defendant*s, and **The Bopp Law Firm, PC** *Non-Party Petitioner,* and **Public Interest Legal Foundation, Inc.** *Non-Party Petitioner.* | **Civil Case No.** 1:13-cv-000734-RBW **Supplemental Brief on Remand of Petitioner The Bopp Law Firm, P.C.** |

On October 1, 2024, non-party petitioner The Bopp Law Firm, PC ("**BLF**"), filed a motion asking this Court to enforce its equitable charging lien. ECF 274 ("**Motion**"). On May 30, 2025, this Court denied the Motion. ECF 280. BLF appealed and on April 10, 2026, the United States Court of Appeals for the District of Columbia Circuit vacated that order and remanded this case. *True the Vote, Inc. v. IRS*, 172 F.4th 24, 27 (D.C. Cir. 2026). In the accompanying opinion, the court held that

> to establish an equitable charging lien on a fund awarded to an attorney's client by a court, Indiana law requires *either* (1) a showing that an attorney secured the client's fund *or* (2) a showing that the client agreed to pay the attorney from that fund. "In either event," the attorney has an equitable charging lien.

*Id.* at 26 (quoting *Koons v. Beach*, 46 N.E. 587, 587 (Ind. 1897) ("***Koons II***")). Because the applicable *Koons II* test "is an either/or framework," the court of appeals found that this Court erred "by requiring [BLF] to satisfy *both* parts of the *Koons II* framework," *id.* at 27, and vacated this Court's conclusion that BLF had not established a valid equitable charging lien. *Id.*

Accordingly, the Motion is again before the Court and certain questions are pending relating to the equitable charging lien claimed by BLF in the amount of $505,003.38, Suppl. Br. of BLF, ECF 247, 2–3; *see also* Mem. Supp. Mot., ECF 274-1, 11–12 (citing same), the amount evidenced by the representation agreement between BLF and TTV, ECF 189-7 ("**Representation Agreement**"), and the invoices filed in the docket, ECF 248-1–248-21 (Ex. 1–21) ("**Invoices**"). Specifically, the court of appeals noted three questions possibly needing to be addressed on remand: BLF's establishing an equitable charging lien under the first *Koons II* standard, the priority of the petitioners' respective liens, and the amount subject to BLF's lien. 172 F.4th at 27. On June 4, 2026, this Court ordered that any supplemental briefing on the remanded issues be filed by July 3, 2026. On June 18, 2026, this Court granted BLF's request for a two-week extension, and BLF now responds as follows, showing that this Court should grant the Motion and distribute to BLF the funds subject to its lien.

## I. BLF has an equitable charging lien under *Koons II* because it has shown that it secured the fund from which it seeks payment.

### A. The type of attorney's lien at issue is Indiana's equitable charging lien.

The questions on remand focus directly on BLF's lien under Indiana law. *True the Vote*, 172 F.4th 24, 25–26 (noting this court's determination, and the parties' agreement, "that the validity of [BLF's] charging lien depends on Indiana law"). Accordingly, a brief overview of the types of attorney's lien available under Indiana law is appropriate. Indiana recognizes statutory attorney's liens and two types of equitable attorney's liens: "retaining" liens and "charging" liens.[1] *State Farm Mut. Auto. Ins. Co. v. Ken Nunn Law Office*, 977 N.E.2d 971, 975–76 (Ind. Ct.

[1]Confusingly, some sources refer to Indiana statutory attorney's liens simply as "charging liens" as well. When used herein, "charging lien" refers to the equitable charging lien, and

App. 2012). The lien claimed by BLF is the latter sort of equitable lien, a charging lien. *E.g.*, Suppl. Br. of BLF, ECF 247. Equitable attorney's liens, like all attorney's liens, exist "for the protection of attorney fees," *State Farm*, 977 N.E.2d at 975, and are "available for the security of an attorney in performing services beneficial to his client," *id.* at 976 (quoting *State ex rel. Shannon v. Hendricks Circuit Court*, 183 N.E.2d 331, 333 (1962)). The equitable charging lien "'[is] the equitable right[ ] of attorneys to have the fees and costs due them for services in a suit secured out of the judgment or recovery in that particular suit.'" *Id.* at 977 (citation omitted).

**B. Former Attorneys conceded that BLF holds a valid charging lien.**

Regarding the substance of the issues, first, as BLF has consistently noted in this Court and on appeal, neither the client[2] nor Former Attorneys[3] have offered any cogent legally cognizable basis for disregarding BLF's claim to a valid equitable attorney's lien on the funds deposited into the Clerk's registry by the IRS. *See*, *e.g.*, Transcript of September 18, 2024 hearing, ECF 273, 6:18–8:25 (recounting examples of failed opportunities).

To the contrary, Former Attorneys already conceded the existence of a valid charging lien held by BLF. When this Court expressly asked Former Attorneys whether they agreed "that [BLF] does in fact have a valid charging lien," ECF No. 273, 24:5-7, counsel did not answer the question directly, but did say, "We don't contest the charging lien with respect to the 150,000," ECF No. 273, 24:8–9. And in the same hearing, Former Attorneys' counsel had already said,

---

"statutory lien" refers to the lien created by Indiana statute.

[2]The client never contested BLF's lien at all and in fact irrevocably assigned to BLF any and all interest it may have in the fee award held in this Court's registry. ECF 279-1; ECF 279-2.

[3] Herein, Foley & Lardner, the Public Interest Legal Foundation, and the Center for Constitutional Jurisprudence are, collectively, "**Former Attorneys**."

"The issue, as we see it, is not whether there's a charging lien, but the amount of the charging lien[.]" *Id.* at 8:5–6. That means Former Attorneys did not contest the existence of a valid charging lien—rather they acknowledged the existence of "the charging lien," *id.*—but simply what the Court should do *in light of* the lien. A party who "does not contest" a point "therefore concedes" it. *Demartino v. F.B.I.*, 511 F. Supp. 2d 146, 150 (D.D.C. 2007); *Colston v. First Guarantee Commer. Mortg. Corp.*, 665 F. Supp. 2d 5, 9 (D.D.C. 2009); *e.g.*, *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 263 (D.D.C. 2014). Former Attorneys cannot be permitted to change this position midstream. "[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Schneider v. Kissinger*, 412 F.3d 190, 200 (D.C. Cir. 2005).

Beyond this *explicit* concession of the point, Former Attorneys also conceded it by their silence. On appeal, Former Attorneys never pointed to a single instance in the record in which they objected to BLF's lien on the basis of Indiana lien law. Accordingly, in light of these two forms of concession, based on the record before this Court, the court of appeals noted that "the parties may have agreed that [BLF] had an equitable charging lien." *True the Vote*, 172 F.4th at 27 (citing ECF 273 at 8, 11 ("The issue, as [Former Attorneys] see it, is not whether there's a charging lien"; this Court observing that "it seems like there is no challenge as to whether the Bopp Law Firm has a valid charging lien in reference to litigation here in Washington . . . .")).

It is thus well-established at this stage that Former Attorneys have conceded that BLF holds a valid lien.[4] Although core precepts of fairness and judicial efficiency prohibit them from

[4]Prior to BLF's appeal, Former Attorneys claimed they had not made such a concession. ECF 275, 3. That is plainly contrary to the facts; such contentions should be afforded no weight. Moreover, Former Attorneys still declined, even in that very brief, to argue that BLF's lien is not

now taking the opposite position, it must be noted that it is not only discretionary considerations that prevent such a course. Instead, although this Court considered the validity of BLF's lien *sua sponte*, ECF 280, the United States Supreme Court subsequently issued its opinion in *Margolin v. National Association of Immigration Judges*, which confirms that a court may not consider an argument never meaningfully raised. The Court instructed there that "[f]ederal courts adhere to the principle of party presentation," that is, "the rule that points not argued will not be considered." 146 S. Ct. 1285, 1288 (2026) (internal quotation marks and citations omitted). "Because courts are essentially passive instruments of government," states the opinion, "[they] rely on the parties to frame the issues for decision and decide only the questions presented," and it is an "abuse of discretion" to depart from this principle. *Id.* (internal quotation marks and citations omitted). Because Former Attorneys *never* raised a single argument under Indiana law concerning the validity of BLF's lien, *supra* n.4, this Court may not consider such arguments.

**C. BLF has a valid charging lien under controlling authority.**

Even if Former Attorneys had not conceded the point, the validity of BLF's lien is clear in light of the appellate court's holding that under the controlling authority, *Koons II*, the existence of an equitable attorney's charging lien has always turned on whether *one* of two conditions has been met. *Supra* p. 1. BLF has shown that it has satisfied the first condition—whether "an

---

valid under Indiana law, or even to cite a single Indiana case on the subject. *See generally* ECF 275. Accordingly, even *after* purporting to change their position on their concession, they *still* declined to present any argument concerning the validity of the lien under Indiana law and thus, in reality, continued to concede the point even then. *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) (a "cursory," "bare-bones" assertion "does not properly raise an issue" (internal quotation marks and citations omitted)). Additionally, in the same document, Former Attorneys characterized BLF's reference to this Court's then-pending decision on the validity of BLF's lien as a "conce[ssion]." *Id.* (citing ECF 274-1 at 8). Describing procedural posture is not a concession of any substantive issue.

attorney secured the client's fund," *Koons II*, 46 N.E. at 587. *E.g.*, ECF 247, 4–5 (citing record entries showing BLF's securing Equal Access to Justice Act ("**EAJA**") award and associated efforts). Indeed, this Court hinted at the fact that BLF satisfied that test, noting that BLF's arguments concerning the "significant resources" it invested in this case "may establish that the BLF's efforts contributed to the existence of the award of attorneys' fees to the plaintiff in this matter[.]" ECF 280, 16.

More directly to the point, however, Former Attorneys themselves recognize in their brief on appeal that a "portion of the fee award [is] attributable to BLF's work[.]" Br. Appellees Public Interest Legal Foundation and Foley & Lardner LLP at 35 (ECF 2150642), *True the Vote, Inc. v. IRS*, 172 F.4th 24, No. 25-5219. This concedes that BLF did "secure[] the client's fund," *Koons II*, 46 N.E. at 587—at least, as Former Attorneys would have it, part of it. But it misses the fact that securing *part of* the fund is all that is required under *Koons II* to establish a valid lien. Citing *Koons II*, the Indiana Court of Appeals stated concisely that the test asks whether the "fund" in which attorneys claim to have a lien was "secured or created through or as a result of their efforts, singly *or in conjunction with the efforts of others*[.]" *United States Fid. & Guar. Co. v. Macksville Gravel Co.*, 150 N.E. 390, 391 (1926) (citing *Koons II*, 46 N.E. at 587) (emphasis added). Indeed, *Koons II* describes one of the "illustrations" for this test very carefully: "an attorney, *although not retained in the case to the end*, was entitled to a lien on the fund which his exertions had *aided* in producing." 46 N.E. at 587 (citation omitted) (emphases added). That this attorney, who was not retained to secure the client's fund, was not the attorney whose *sole* efforts secured that fund is not merely common sense, but is confirmed by the fact that he merely "aided" in securing the fund. *Id.* In another illustrative case cited by *Koons II*, an attorney

"partially prosecuted a claim" but "did not prosecute the claim to judgment"; "another [] recovered the money"—yet the court found the former attorney held an equitable lien. *Id.* So the test for whether an attorney holds an equitable lien is not whether that attorney, alone, secured the fund. It is whether that attorney *aided* in the creation of the fund. As noted, BLF has established that it did so—and the point is beyond cavil following Former Attorneys' concession that BLF's efforts did aid in securing the fund. Accordingly, BLF does hold an equitable charging lien under Indiana law.

**D. This Court must enforce BLF's lien.**

Having established that BLF holds a valid lien, the remainder of the analysis is simple. This becomes clear when we return to the fundamental fact of what a charging lien is. It is *not* simply a claim to statutorily-determined attorneys fees. *Contra* Former Attys.' Resp. Bopp Law Firm's Suppl. Br., ECF 249-2, 2, 6 (claiming that pursuant to the EAJA award BLF is entitled only to $150,018.98 and that, effectively, BLF's lien has no effect). Instead, "charging liens [] are the *equitable* rights of attorneys to have the fees and costs due them for services in a suit secured *out of* the judgment or recovery in that particular suit." *Bennett v. NSR, Inc.*, 553 N.E.2d 881, 882 n.1 (Ind. Ct. App. 1990) (emphases added). In other words, under Indiana law, the equitable charging lien secures attorney "fees and costs" by pulling them from the fund—the sum of money—represented by the judgment. *Id.* A conceit under which such an equitable lien simply secures attorney fees determined by a formulation other than that provided by Indiana law (which, in other words, secures attorney's fees that have already been secured) would, of course, render meaningless Indiana law on determining the amount secured by a lien. That a federal court may not do.

*In re Innkeepers of New Castle, Inc.*, 671 F.2d 221 (7th Cir. 1982), illustrates the point. In that case, the Seventh Circuit reversed the trial court after it "refused . . . to enforce" valid attorney's liens held under Indiana law and instead set "the attorney fees awards on a 'reasonable fee' basis." *Id.* at 222. The Seventh Circuit noted that *limited* cases, including those involving bankruptcy proceedings, may require a Court to determine an appropriate lien amount using standards outside an agreement between attorney and client if such agreement does not specify the amount an attorney is to be paid. *Id.* at 230. Where, however, a "fee contract specifically state[s]" the attorney's fee, that "contract [i]s the basis for determining the extent of [the] lien," and it is "error to use a 'reasonable fee' standard in lieu" thereof. *Id.* In this case, documents in the record—the Representation Agreement and the Invoices—show the specific amount claimed. Standards outside that evidence, which "specifically stat[es]" that amount, *id.*, cannot be imposed.

The Seventh Circuit's decision in *Innkeepers* is well in accord with Indiana law.[5] The rule in Indiana—a bedrock rule predating even the *Koons* litigation—has always been that the amount of a lien is determined simply by the agreement of the parties to the contract for attorney fees. In *Adams v. Lee*, the Indiana Supreme Court explicitly set out to answer the question, "[W]ere the appellants bound to prove the value of the professional services for which they entered a lien upon the judgment . . . ?" 82 Ind. 587, 590 (1882). It answered in the affirmative, explaining the necessity of proving what is due the attorney—which is best done by showing "compensation

[5] Nor does any other applicable federal law establish some other controlling framework; to the contrary, federal law recognizes that determining the amount of an attorney's lien is entirely distinct from determining the judgment amount and that where a lien is held upon a judgment, it must be paid. *Infra* Part III.

was fixed by contract." *Id.* at 590–91. Where there was no contract and thus the attorney asserting the lien could not prove that the legal services had any value, the court observed, "If there had been a contract fixing the compensation of the appellants, a very different case would have been presented." *Id.* at 591. In short, *Adams* establishes that *the* preferred way of determining the amount of an attorney's lien is by reference to the agreement between attorney and client.

BLF has provided that preferred form of evidence, showing that the amount of the lien is $505,003.38. Thus, in sum, BLF has shown that it has a charging lien in that amount.

**II. BLF's lien has priority.**

The appellate court also noted that "if BLF has a lien, . . . the district court may need to rule on the priority of the parties' liens." 172 F.4th at 27. This question is guided by a simple rule and has a simple answer.

While few courts have directly addressed the priority between two attorney's liens, at least one court has done so. In *Royce v. Michael R. Needle, P.C.*, a federal district court addressed whether a law firm's "prior perfected security interests" (specifically, a lien, as claimed by the law firm, 381 F. Supp. 3d 968, 974 (N.D. Ill. 2019), and as described by the Seventh Circuit, *Royce v. Michael R. Needle P.C.*, 950 F.3d 481, 487 (7th Cir. 2020)) took priority over a "later attorneys' lien[]" in an analysis rooted in the same equitable principles that apply to charging liens. 381 F. Supp. 3d at 989. The court found that "the weight of authority holds that" the first perfected lien has priority. *Id.*; *accord Cont'l Cas. Co. v. Kelly,* 106 F.2d 841, 843 (D.C. Cir. 1939) ("This right is a contract lien and even if, as has been suggested, the lien is

inchoate before judgment, it relates back and takes effect from the time of the commencement of the suit and is, therefore, superior to rights of set off which arise subsequently.”).

Cases such as *Royce* and *Kelly* apply the first-in-time rule to attorney’s liens for a simple reason: it is the rule generally applicable to liens, as recognized within this Circuit. Where, as here, there are multiple creditors with common law liens and like interests, the prior lienholder’s interest is superior. *United States v. City of New Britain*, 347 U.S. 81, 87 (1954) (applying common law rule that, as between liens attached to the same property, “the first in time is the first in right”); *McCarthy v. BMW Bank of N. Am. (In re Dorton)*, Civil Action No. 05-1409 (GK), 2006 U.S. Dist. LEXIS 54577, at *7 (D.D.C. Aug. 8, 2006), *rev’d on other grounds*, *McCarthy v. BMW Bank of N. Am.*, 379 U.S. App. D.C. 1, 3, 509 F.3d 528, 530 (2007) (as between competing liens, “the common law rule of first in time, first in right” controls absent statute to the contrary); *see United States v. Leventhal*, 316 F.2d 341, 343 (D.C. Cir. 1963) (citing *New Britain*, 347 U.S. at 85–86) (noting that, only with exceptions not applicable here, “a perfected lien . . . could only be displaced . . . by a prior choate or perfected lien”). Nor can there be any argument that some other rule must be applied, as both Indiana and District of Columbia case law apply the same rule. *E.g.*, *Franklin Inv. Co. v. D.C.*, 462 A.2d 447, 450 (D.C. 1983) (noting that is “axiomatic[] . . . that a prior lien gives a prior legal right (‘first in time, first in right’), except where statute varies the common law rule” (cleaned up; citation omitted)); *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010) (citing *Jones v. Rhoads*, 74 Ind. 510 (1881)) (“Under the common law, priority in time gives a lien priority in right”).

Accordingly, the simple rule is that the first perfected lien has priority. And the simple answer to the question presented is that BLF's lien has priority over Former Attorneys'. The answer is simple because the Court has already precisely addressed a crucial question on the issue, providing a crystal clear analysis that has the effect of showing BLF's lien was first in time. The Court addressed whether "Former Attorneys have a valid charging lien" by "first evaluat[ing] which of the[ir] agreements" with TTV "is the operative agreement," then turning to whether that "agreement creates a valid charging lien." Order, ECF 245, 2. The Court determined that their "December 2017 Agreement," and not any prior agreement, "controls the legal obligations between the parties," including whether Former Attorneys hold a valid lien. *Id.* at 4. In so finding, the Court noted that the December 2017 Agreement "unambiguously" superceded prior agreements. *Id.* That means that the December 2017 Agreement "'may not be supplemented with prior representations not ultimately included therein, even if those representations are not expressly contradicted by the contract itself.'" *See id.* at 3 (quoting *Jacobson v. Hogfard*, 168 F. Supp. 3d 187, 201 (D.D.C. 2016)). Former Attorneys may not claim that they had an earlier lien since any such claim was extinguished when they chose to supercede any purported earlier agreements. *See id.* at 3–4 (citing various cases). Indeed, the December 2017 Agreement could hardly be clearer in recognizing this reality: "[t]here are no other agreements or representations between the parties which are made or which survive the execution of this agreement," ECF 189-3, Pl.'s Mot. to Quash, Ex. A (December 2017 Agreement) ¶ 8.

The Court was also clear that the time of that agreement was the earliest possible time that the lien claimed by Former Attorneys' could have attached, noting that under the law applicable to that lien—the law of the District of Columbia—an attorney-client agreement

showing intent to create a lien is "indispensable" to the lien attaching. Order, ECF 245, 4 (quoting *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996)). So December 2017 was the earliest possible time that the lien claimed by Former Attorneys could have attached.

BLF's lien attached earlier. Indiana law concerning the attachment of equitable attorney's liens also looks to the time of the agreement establishing the lien.[6] The Indiana Supreme Court held in *Justice v. Justice*, for example, that although the judgment lien held by the appellee attorney, James Justice, Sr., had "attached . . . before" the "*statutory* lien" acquired by the appellant, James Justice, Jr., the critical fact was that the latter had not, in fact, sought to enforce his statutory lien, but instead asserted "an *equitable* lien . . . under a contract . . . which *antedated* the" appellee's lien. 16 N.E. 615, 618 (1888) (emphases added). The court therefore held that Justice, Jr.'s, lien, because it pre-dated Justice, Sr.'s, constituted a "prior equitable interest" and thus had priority. *Id.* This seminal case therefore shows that under Indiana law on the lien-priority analysis, equitable attorney's liens attach at the time of the fee agreement between attorney and client.

The fact that it is now clear that *Koons II* is the controlling authority also leads to this conclusion, since one of the main points of *Koons II* is that "it could not be said that a judgment in favor of the client is indispensable" for a lien to attach. 46 N.E. at 587. To the contrary, the opinion opens by *distinguishing* cases holding that a "lien does not obtain until the judgment is rendered," noting that that rule applies only to "statutory liens" and matters involving settlement. *Id.* Later, in discussing precedent for the proposition that *equitable* liens attach without judgment,

---

[6] As noted, statutory liens in Indiana are analyzed differently. *Supra* Part I.A. The operation of statutory liens need not be examined here, as the lien held by BLF is an equitable lien.

the opinion notes the critical fact of "an agreement upon a designated sum to be paid from the amount recovered." *Id.*; *see also Pearman v. Szakaly*, 126 N.E.3d 55, ¶ 17 (Ind. Ct. App. 2019) (citing *Koons II*, 46 N.E. at 587) (noting that *Koons II* stands against the assertion "that a charging lien must be filed after final judgment"). Thus, under *Koons II*, an equitable charging lien attaches at the time of the attorney-client agreement and Indiana law requires only such an agreement in order for an equitable lien to attach.

BLF's Representation Agreement is dated February 22, 2017. ECF 189-7. It therefore pre-dates Former Attorneys' December 2017 Agreement. Accordingly, BLF's lien has priority.

**III. Attorney's liens and the EAJA serve different purposes that are completed at different stages, requiring distinct analyses.**

Finally, the appellate panel observed that it may be necessary for this Court to address whether BLF is entitled to the full amount of money subject to its lien. 172 F.4th at 27. This question too has a simple answer. Observing two judicial commonplaces concerning the nature of attorney fee recovery is all that is needed.

**A. The EAJA award belongs to the prevailing party, not that party's attorneys.**

The first judicial commonplace is that while the EAJA calculates the amount to be awarded based on specified criteria to determine the amount of attorney *fees* subject to payment, the award is neither payable to nor even belongs to any attorney at all. It goes to the successful party. 28 U.S.C.S. § 2412(d)(1)(A). This is plain on the face of the statute. *Id.* ("a court shall award to a *prevailing party* . . . fees and other expenses . . . incurred by *that party* . . . " (emphases added)). It is also recognized in this Court's Order on attorneys' fees. ECF 245, 1 (noting that motion hearing leading to the Order addressed the "amount of the attorneys' fees *the plaintiff* is entitled to be awarded" (emphasis added)), 6 ("*the plaintiff* is awarded attorneys' fees

under the Equal Access to Justice Act" (emphasis added)). Absent any judicially-enforceable obligations upon the judgment, the EAJA "does not . . . award the fees directly to the attorney," but "the statute's plain text does the opposite—it awards the fees to the litigant." *Astrue v. Ratliff*, 560 U.S. 586, 593 (2010) (cleaned up). This may enable that party to pay attorneys fees it has incurred, but there is no support for the proposition that the party is obligated to pay those fees pursuant to EAJA's regime for calculating same. As the following will explain, quite the opposite is true: if the award is subject to an obligation, that obligation must, quite simply, be paid.

While an attorney may have a contractual right in such awards, "[t]he fact that the statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right" does not change the operation of the EAJA. *Id.*; *see also id* at 595–96 (rejecting the notion that the EAJA authorizes "direct payments to attorneys"; noting that an EAJA "award belongs to the claimant"); *Skvorak v. Berryhill*, Civil Action No. 1:16-cv-00044 (JEB/GMH), 2017 U.S. Dist. LEXIS 138788, at *22 (D.D.C. July 10, 2017) ("fairly read, the Court held in *Ratliff* that an EAJA fee award not only *belongs* to the prevailing party but is *payable* to the litigant, not the litigant's attorney" (cleaned up; citation omitted)). Accordingly, absent obligation *outside* of the EAJA, it is up to the party who is awarded the judgment to determine how to distribute it. *McGraw v. Barnhart*, 450 F.3d 493, 503 (10th Cir. 2006) (an "EAJA fee[] . . . award is to the claimant, who may or may not tender that award to counsel, regardless of their agreement").

None of this, however, "preclude[s] . . . the contractual assignment of an EAJA award from a prevailing party to his or her attorney." *Skvorak*, 2017 U.S. Dist. LEXIS 138788, at *22.

In such a case, the EAJA award may be used "to satisfy a pre-existing debt that the litigant owes[.]" *Astrue*, 560 U.S. at 589.[7] Such contractual rights are, of course, separate from the EAJA itself. It is not the purpose of the EAJA to enable the party to then pay counsel an agreed rate. Instead, courts enforcing the EAJA "have a special responsibility to . . . taxpayers" to ensure that "only those fees and expenses actually needed to achieve the favorable result" are reimbursed. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir. 2004). This highlights the fact that the EAJA is concerned with limiting what must be paid by the taxpayer-funded *government* (in this case, the IRS)—not what a *client's* obligations might be. That the EAJA is not aimed at eliminating a client's obligations is also clear in the fact that the EAJA has the "specific purpose of" "eliminat[ing] for the average person the financial disincentive to challenge unreasonable governmental actions." *Commissioner v. Jean*, 496 U.S. 154, 163 (1990). Logically, this means that it does *not* have the purpose of second-guessing a party's choice to invest *above*-average resources in counsel by ordering a lesser obligation than agreed. That that was not the EAJA's purpose is also clear in the text cited by the *Jean* Court, the EAJA's preface: "It is the purpose of this title . . . to *diminish* the deterrent effect of seeking review of . . . governmental action." *Id.* at 163 n.11 (quoting Congressional Findings and Purposes, note following 5 U.S.C. § 504) (emphasis added). Diminishing such deterrence is not the same as eliminating it entirely. So the purpose of the EAJA was *not* to fully eliminate financial obligations arising from a party's free contractual choice to select counsel with fees higher than that covered by the EAJA.

---

[7]In *Astrue*, the Supreme Court's specific holding was that the EAJA award in question was "subject to a Government offset to satisfy a pre-existing debt" to the United States. *Id.* Nothing indicates, however, that the same principle would not apply to other pre-existing debts, *see generally id.*, and, as discussed below, ensuring the payment of such debts is precisely the purpose of attorney's liens, *infra* Part III.B.

In short, the EAJA neither requires a client to pay counsel, nor is even intended to enable such payment (and it certainly was not intended to establish any priority in which multiple attorneys must be paid). Accordingly, if a client has contractually agreed to pay an attorney some higher rate than what is available under the EAJA and the attorney wishes to ensure such payment is received, some mechanism other than the EAJA must be employed. As discussed in the next subsection, that is precisely the role that an attorney's lien serves.

**B. An attorney's lien is precisely the sort of obligation that must be paid from an EAJA award.**

In this case, there is at least one judicially-enforceable obligation upon the judgment—BLF's lien, which has priority. *Supra* Part II. That leads to the second judicial commonplace: an attorney's lien, rooted in the attorney-client relationship,[8] is an attorney's claim upon the judgment secured for the client. "The [lienholding] attorney is regarded as an assignee of the judgment produced by his efforts." *Stroup v. Klump-O'Hannes*, 749 N.E.2d 622, 625 (Ind. Ct. App. 2001) (citing 7A C.J.S. Attorney & Client § 359 (1980)). The lien itself "is considered an assignment of the judgment." *Id.* "Thus, when [an attorney] obtain[s] [an] attorney's fee lien on [the prevailing party's] money judgment, he essentially receive[s] a partial assignment of the judgment itself." *Id.* Again, then, the precise purpose of an attorney's lien is to ensure that the

---

[8] All forms of attorney's liens are, ultimately, anchored in the attorney-client relationship. *See*, *e.g.*, *Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98, 107 (D.D.C. 2016) (agreement between lawyers was "insufficient to establish an underlying attorney-client agreement justifying a charging lien."); *State Farm*, 977 N.E.2d at 977 (noting lack of authority for the position that an attorney's lien can be had against anyone aside from the attorney's client); *Wilson v. Sisters of St. Francis Health Servs., Inc.*, 952 N.E.2d 793, 796 (Ind. Ct. App. 2011) (equitable charging lien is the "right of attorneys to have the fees and costs due them for services in a suit secured out of the judgment or recovery in that particular suit," but not from "payments made to a third party under the client's health insurance policy . . . .").

attorney who holds a lien with priority receives, *from the judgment*, the amount due *under the lien*. That the judgment, which belongs to the client, was determined via a framework for determining what fees are due pursuant to a particular statute has no effect upon the amount of the lien. Accordingly, once the prevailing party is awarded a judgment under the EAJA, it is the lien alone that determines the amount that actually must go to the lienholder out of that judgment.

The appellate panel's framing of the issue as "whether [BLF's] efforts to secure the fee-award entitle [BLF] to the amount of money that [BLF] seeks" in light of the fact that "[t]he fee award . . . is meant to compensate attorneys for specific billings"—about which the panel "express[ed] no view," 172 F.4th at 27—does not change this. To the contrary, the panel's focus on "efforts to secure the fee-award" as evidenced by "specific billings" is consistent with BLF's argument concerning its lien throughout this litigation, focusing on those specific billings and providing numerous exhibits to evince them. *E.g.*, ECF 247, 3–4. And that, in turn, is consistent with (**1**) the purpose of attorney's liens, which, by definition, are "for the protection of attorney fees," *State Farm*, 977 N.E.2d at 975, 977; and (**2**) Indiana law on the amount that may be claimed in a lien, *e.g.*, *Harshman v. Armstrong*, 21 N.E. 662 (1889) (holding that fees due from other litigation may not be included in the amount claimed in a lien).[9] And under Indiana law,

---

[9]Moreover, the fact that an attorney's costs in securing an EAJA award may rightfully be relatively substantial is confirmed by the Supreme Court: "The EAJA applies to a wide range of awards in which the cost of litigating fee disputes would equal or exceed the cost of litigating the merits of the claim." *Jean*, 496 U.S. at 163–64. Accordingly, to the extent Former Attorneys may question the amount claimed by BLF, *e.g.*, ECF 249-2, 2, *Jean* confirms that the reality of such costs is not a matter to simply be gainsaid. That is particularly true here, where BLF attorneys not only secured attorney's fees under the EAJA, prepared and defended Former Attorney's fees, and won enhanced, prevailing-market-rate fees for Defendants' bad faith, but also had already secured the settlement—in a very difficult case—that is the basis of the fee award. D. 247, 4–5

which controls in analyzing BLF's lien, an attorney's "efforts to secure the fee-award," 172 F.4th at 27, simply show that a valid lien *exists*. *Cf. Koons II*, 46 N.E. at 587 (the applicable test is whether "the fund [was] secured by the client through the efforts of the attorneys"). The fact that BLF's services satisfy that test is discussed above. *Supra* Part I. Accordingly, this language from the appellate panel should be understood simply as advising that the Court may need to consider whether the amount BLF claims in its lien is, indeed, consistent with BLF's "specific billings," *see* 172 F.4th at 27.

In sum, the EAJA establishes the amount awarded *to the plaintiff by the defendant*, while attorney's liens determine the amount that must actually be assigned and distributed *to the attorney* who holds the lien.[10] Neither mechanism overrides or takes priority over the other, but instead they simply represent altogether different calculations and obligations. This is also demonstrated by the fact that an equitable lien is a claim *upon* the judgment. *Lyman v. Campbell*, 182 F.2d 700, 702 (D.C. Cir. 1950) (noting that the common-law charging lien is "a claim to the equitable interference by the court" to hold any judgment "obtained for a client by" that attorney "as security" for payment of the attorney's fee (cleaned up)); *Wilson v. Sisters of St. Francis Health Servs., Inc.*, 952 N.E.2d 793, 796 (Ind. Ct. App. 2011) ("A charging lien is the equitable right of attorneys to have the fees and costs due them for services in a suit secured out of the judgment or recovery in that particular suit"). This reflects the purpose of such liens: equitable charging liens are recognized because, when an attorney's services "have . . . created the fund,"

---

(citing record).

[10]In this case, not only did the lien establish such assignment, requiring distribution—TTV also explicitly assigned proceeds for its award in this case to BLF, establishing yet another ground requiring such distribution. *Supra* n.2.

"he ought in good conscience to be protected" via a lien for his costs upon that fund. *Koons v. Beach*, 45 N.E. 601, 602 (Ind. 1896) (quotation marks omitted).

Because an EAJA award and an attorney's lien represent entirely different calculations and obligations, the determination of how much BLF is owed pursuant to its valid and superior equitable charging lien depends only upon the amount of the lien itself, assuming the amount has been or can be evidenced by documented agreement and billing records. That gives effect to the purpose of the lien. Indeed, without an agreement, the attorney would have no basis for a "lien" at all—he would have no basis for payment of any sort except by recognizing that at some point, the client agreed to pay him for work. Every lien operates on this basis—BLF's, as well as the lien Former Attorneys claim, although the latter does not have priority. As noted, BLF has already evidenced the amount subject to its lien.

Former Attorneys and BLF ultimately want the same thing—to receive the amount claimed in their respective liens. This amount must be pulled from the judgment, which belongs to the client (but for the obligation upon it represented by the lien). The manner in which that judgment was calculated does not change the lien amount. BLF's lien has priority; it must be paid.

## IV. Conclusion.

For the foregoing reasons, this Court should find that BLF has an attorney's lien in the amount of $505,003.38; that BLF's lien has priority; and that BLF is entitled to the full amount claimed in the lien and evidenced by its Representation Agreement and Invoices. As a result, the Court should grant the Motion and order that $505,003.38 should be distributed to BLF.

Dated: July 17, 2026

Respectfully submitted,
/s/ James Bopp, Jr.

James Bopp, Jr. (D.C. Bar No. CO0041)
jboppjr@aol.com
THE BOPP LAW FIRM, P.C.
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
(812) 232-2434
(812) 235-3685 (fax)
*Attorneys for Non-Party Petitioner THE BOPP LAW FIRM, PC*