**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TRUE THE VOTE, INC., Plaintiff, v. INTERNAL REVENUE SERVICE, et al., Defendants. | ) | Civil Action No. 13-734 (RBW) |

# MEMORANDUM OPINION

The plaintiff, True the Vote, Inc. ("TTV"), brought this civil action in 2013 against the Internal Revenue Service ("IRS"), the United States of America, and several IRS officials in their official capacities, seeking declaratory and injunctive relief, as well as monetary damages, for alleged violations of the First Amendment to the United States Constitution, U.S. Const. amend. I; the Internal Revenue Code, 26 U.S.C. §§ 1–9834; and the Administrative Procedure Act, 5 U.S.C. §§ 701–706. See First Amended Verified Complaint for Declaratory Judgment, Injunctive Relief, and Compensatory, Statutory, and Punitive Damages ¶¶ 139–61, 168–206, ECF No. 14. Currently before the Court is the question of allocation of attorneys' fees between several legal groups who represented the plaintiff in this case. Initially, the plaintiff was represented by the Public Interest Legal Foundation ("PILF"), f/k/a Act Right Legal Foundation, and Foley & Lardner LLP (collectively, the "Former Attorneys").[1] See e.g., Minute Order on Motion for Leave to Appear Pro Hac Vice (May 22, 2013). Four years later in 2017, the plaintiff

[1] The attorneys' fee award issued by this Court in favor of the Former Attorneys also included an award of $24,853.94 to the Center for Constitutional Jurisprudence ("CCJ"), which did not participate in the briefing and argument before the District of Columbia Circuit that resulted in the remand to this Court.

retained the services of the Bopp Law Firm ("the BLF") after terminating the services of the Former Attorneys. See Notice of Appearance by James Bopp Jr. (Feb. 22, 2017), ECF No. 124.

Currently pending before the Court is the BLF's Amended Motion for Enforcement of Attorney's Charging Lien ("the BLF's Am. Mot."), ECF No. 274, which seeks enforcement of its alleged equitable charging lien in the amount of $505,003.38, and which is opposed by the Former Attorneys. Upon careful consideration of the parties' submissions, [2] the Court concludes for the following reasons that it will grant in part and deny in part the BLF's request to enforce its equitable charging lien. Specifically, the motion is granted to the extent that the Court recognizes that the BLF has a valid equitable charging lien under Indiana law, and denied to the extent that it seeks to enforce its equitable charging lien in the amount of $505,003.38 against the attorneys' fee awarded by this Court under the Equal Access to Justice Act ("EAJA"). For the reasons outlined below, the Court concludes, pursuant to Indiana law, that the BLF can only enforce its equitable charging lien against the portion of the EAJA award that the Court awarded

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Notice of Attorney's Charging Lien ("the Former Attorneys' Charging Lien"), ECF No. 142; (2) the Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien ("Pl.'s Mot. to Quash"), ECF No. 190; (3) the Former Attorneys' Response in Opposition to Plaintiff's Motion to Quash Attorney's Charging Lien ("the Former Attorneys' Opp'n"), ECF No. 196; (4) the Reply in Support of Plaintiff's Motion to Quash PILF's and Foley's Attorney's Charging Lien ("Pl.'s Reply in Support of Mot. to Quash"), ECF No. 199; (5) the Notice of Attorney's Charging Lien ("the BLF's Charging Lien"), ECF No. 216; (6) the Bopp Law Firm's Motion for Enforcement of Attorney's Charging Lien ("the BLF's Mot. to Enforce"), ECF No. 229; (7) The Former At[t]orneys' Supplemental Brief Responding to the Court's August 15, 2023 Order ("the Former Attorneys' Suppl. Br."), ECF No. 246; (8) the Supplemental Brief [of the] Non-Party Petitioner[,] The Bopp Law Firm, PC ("the BLF's Suppl. Br."), ECF No. 247; (9) The Former Attorneys' Response to the Bopp Law Firm's Supplemental Brief ("the Former Attorneys' Resp."), ECF No. 270; (10) the Response of Petitioner[,] The Bopp Law Firm, PC to [the] Former Attorneys' Supplemental Brief ("BLF's Resp."), ECF No. 271; (11) The Bopp Law Firm's Memorandum of Points and Authorities in Support of its Amended Motion for Enforcement of Attorney's Charging Lien ("the BLF's Am. Mem."), ECF No. 274-1; (12) The Former At[t]orneys' Response to the Bopp Law Firm's Amended Motion for Enforcement of Attorney's Charging Lien ("the Former Attorneys' Opp'n to Am. Mot."), ECF No. 275; (13) The Bopp Law Firm's Reply In Support of its Amended Motion for Enforcement of Attorney's Charging Lien ("the BLF's Reply in Support of Am. Mot."), ECF No. 276; (14) The Former Attorney's Supplemental Brief Following Remand ("the Former Attorneys' Remand Br."), ECF No. 288, and (15) the Supplemental Brief on Remand of Petitioner The Bopp Law Firm, P.C. ("the BLF's Remand Br."), ECF No. 289.

to the BLF for its own services provided to the plaintiff in this case, which amounts to $150,018.98.

## I. BACKGROUND

The Court previously set forth the factual background of this longstanding case in its Memorandum Opinion issued on October 23, 2014, see True the Vote, Inc. v. Internal Revenue Serv. ("True the Vote I"), 71 F. Supp. 3d 219, 223–25 (D.D.C. 2014) (Walton, J.), aff'd in part, rev'd in part and remanded, 831 F.3d 551 (D.C. Cir. 2016), and the procedural history of this case in its subsequent Memorandum Opinions issued on May 30, 2019, see True the Vote, Inc. v. Internal Revenue Serv. ("True the Vote II"), No. 13-cv-734 (Walton, J.), 2019 WL 230465, at *2 (D.D.C. May 30, 2019) (Walton, J.), and September 23, 2020, see True the Vote, Inc. v. Internal Revenue Serv. ("True the Vote III"), No. 13-cv-734 (Walton, J.), 2020 WL 5656694, at *2 (D.D.C. Sept. 23, 2020). Therefore, the Court will not reiterate the factual and procedural backgrounds of this case in full here. However, the Court will briefly summarize the current procedural posture of this case.

On August 15, 2023, the Court ordered that "the plaintiff [be] awarded attorneys' fees under the Equal Access to Justice Act ['EAJA'] in the amount of $788,539.30." Order at 6 (Aug. 15, 2023), ECF No. 245. The Court also concluded in that same Order that "the Former Attorneys have a valid charging lien on the attorneys' fees awarded by the Court in this case." Id. at 6. After further supplemental briefing and a motion hearing to discuss whether the BLF also had an attorney's charging lien and, if so, the priority of the distribution of the attorneys' fees awarded by the Court, see Order at 3 (July 26, 2024), ECF No. 269, the Court issued a Memorandum Opinion and Order denying the BLF's amended motion to enforce its purported charging lien, "conclude[ing] that the BLF ha[d] failed to establish that it ha[d] a valid charging

lien under Indiana law, a decision that, because it [] [was] equitable in nature, is left to the Court's sound discretion to make[,]" Memorandum Opinion (May 30, 2025) at 16 ("May 30, 2025 Mem. Op."), ECF No. 280. See also Order (May 30, 2025), ECF No. 281. Specifically, the Court held that under Indiana law, the BLF could not demonstrate that it had a valid charging lien because:

> there is no indication that the BLF would be reimbursed from the funds secured through an award of attorneys' fees by the Court . . . [, n]or does the BLF's notice of attorney's charging lien provide any indication that the BLF and the plaintiff had an agreement or otherwise understood that the BLF's attorneys' fees would be paid directly out of any attorney's fee award rather than out of the plaintiff's personal obligation under the agreement.

May 30, 2025 Mem. Op. at 15–16. The Court cited the Indiana Supreme Court case of Koons v. Beach ("Koons II") in analyzing whether an equitable charging lien had been established. 46 N.E. 587, 587 (Ind. 1897).

The BLF appealed the Court's May 30, 2025 Memorandum Opinion and Order on the issue of "whether [this C]ourt erred in its application of Indiana law [as to] the question of whether [the] BLF's charging lien was valid."[3] Br. of Appellants at 2, True the Vote, Inc. v. IRS, et al. 172 F. 4th 24 (D.C. Cir. 2026) (No. 25-5219). The District of Columbia Circuit agreed with the BLF, holding that this Court "erred by requiring [the BLF] to satisfy both parts of the Koons II framework" since "Indiana law [only] requires either (1) a showing that an attorney secured the client's fund or (2) a showing that the client agreed to pay the attorney from that fund." True the Vote, 172 F. 4th at 27. The Circuit therefore vacated this Court's May 30, 2025 Order and remanded the case to this Court for further consideration. Id. In its Opinion, the

[3] The BLF also appealed the question of "[w]hether [this C]ourt erred by allowing litigation over the validity of [the] BLF's charging lien to continue when no interested party objected to the lien or offered or advanced a legally cognizable objection and by adjudicating the validity of [the] BLF's charging lien on the basis of substantive legal arguments that were never made, prompted, or suggested by any interested party[,]" id. at 2. However, the Circuit's Opinion reversing and remanding this case did not address this question. See generally, True the Vote, Inc. v. IRS, et al., 172 F. 4th 24 (D.C. Cir. 2026).

Circuit noted that "reconsideration of [the BLF]'s motion for enforcement of the lien may require [this C]ourt to decide whether [the BLF] has established an equitable charging lien under the first Koons II prong[,]" but that "[e]ven if [the BLF] has a lien, the Former Attorneys may have a lien with priority." Id. Further, the Circuit stated that "[i]f [the BLF] has a lien with priority, [this] [C]ourt may also need to decide whether [the BLF]'s efforts to secure the fee-award entitled [the BLF] to the amount of money that [it] seeks." Id.

## II. ANALYSIS

### A. Whether the BLF Has an Equitable Charging Lien Under Indiana Law

As instructed by the Circuit, the Court must first determine whether the BLF has an equitable charging lien under Indiana law. Id. As discussed above, the controlling law for determining whether there is an equitable attorney charging lien under Indiana law is discussed in Koons II. There, the Indiana Supreme Court held that the relevant questions were:

> Was the fund secured by the client through the efforts of the attorneys? And another is, was the compensation of the attorney, expressly or by implication, such a charge against the fund as to amount to an assignment of some part thereof? In either event equity will aid the attorney in the enforcement of his claim, ordinarily called a "lien."

46 N.E. at 587. As noted by the Circuit, the Koons II test is an either/or test. True the Vote, 172 F. 4th at 27. In other words, the BLF must demonstrate only that it has satisfied one of the two prongs identified by the Indiana Supreme Court. Id.

The BLF argues that it has done so by demonstrating that it "secured the client's fund." The BLF's Remand Br. at 5 (citing Koons II, 46 N.E. at 587). The BLF points to the Court's conclusion in its May 30, 2025 Memorandum Opinion "that [the] BLF's arguments concerning the 'significant resources' it invested in this case 'may establish that the BLF's efforts contributed to the existence of the award of attorneys' fees to the plaintiff in this matter.'" Id. at

6 (citing May 30, 2025 Mem. Op. at 16). Additionally, the BLF argues that the "Former Attorneys themselves recognize[d] in their brief on appeal that a 'portion of the fee award [is] attributable to [the] BLF's work[,]'" id. (citing Br. Appellees Public Interest Legal Foundation and Foley & Lardner LLP at 35, True the Vote, Inc. v. IRS, et al., 172 F. 4th 24 (D.C. Cir. 2026) (No. 25-5219)) (second alteration in the original), and that Koons II states that whether "the fund [was] secured by the client through the efforts of the attorneys[,]" id. (quoting Koons II, 46 N.E. at 587), may be satisfied if the lien was "secured or created through or as a result of their efforts, singly or in conjunction with the efforts of others[,]" id. (quoting United States Fid. & Guar. Co. v. Macksville Gravel Co., 150 N.E. 390, 391 (Ind. Ct. of App. 1926) (en banc) (quoting Koons II, 46 N.E. at 587)). Thus, according to the BLF, "the test for whether an attorney holds an equitable lien is not whether that attorney, alone, secured the fund. [Instead, i]t is whether that attorney aided in the creation of the fund." Id. at 7.

The BLF also argues that the Former Attorneys have already "conceded the existence of a valid charging lien held by [the] BLF." Id. at 3. As support for this position, the BLF points to the Former Attorneys' response during a motion hearing held on August 23, 2024, in which the Former Attorneys stated "[w]e don't contest the [BLF's] charging lien with respect to the [$]150,000[,] . . . [t]he issue, as we see it, is not whether there's a charging lien, but the amount of the charging lien." Id. at 2–3 (quoting Transcript of Telephonic Motion Hearing (August 23, 2024) at 24:8–9, 8:5–6, ECF No. 273). Additionally, the BLF claims that the "Former Attorneys [have] never pointed to a single instance in the record in which they objected to [the] BLF's lien on the basis of Indiana lien law." Id. at 4. Therefore, the BLF contends that "[b]ecause [the] Former Attorneys never raised a single argument under Indiana law concerning the validity of [the] BLF's lien[,] . . . this Court may not consider such arguments." Id. at 5 (emphasis omitted).

In response, the Former Attorneys argue that the BLF has not demonstrated that it has established an equitable charging lien under Koons II due to the fact that "[t]he first prong is not satisfied because the BLF's efforts did not create the fees awarded for the Former Attorneys' work [and] [t]he second prong is not satisfied because the . . . [plaintiff] agreed to pay the BLF on an hourly basis, not from the fee award." The Former Attorneys' Remand Br. at 5. For these reasons, the Former Attorneys ask this Court to "reaffirm its ruling that the BLF does not have a valid lien under the [second] prong[4] of the Koons II test" because "TTV did not agree to pay the BLF from the fee award, [thus] the BLF cannot satisfy the first prong of the Koons test." Id. at 5.

As to the first prong of the Koons II test, the Former Attorneys argue that "BLF similarly cannot establish that the entire fee award was 'secured by the client through the efforts of the attorney[,]'" i.e., through the efforts of [the] BLF. Id. at 6 (quoting Koons II, 46 N.E. at 587). The Former Attorneys contend that "in Indiana, equitable liens are grounded in the principle of quantum meruit[,] . . . an equitable doctrine that prevents unjust enrichment by permitting one to recover the 'value of work performed or material furnished if used' by another if valuable.'" Id. at 6 (quoting In re Estate of Johnson, 855 N.E.2d 686, 700 (Ind. Ct. App. 2006).

Thus, according to the Former Attorneys, "an equitable charging lien should attach only to work performed by the specific attorney asserting the lien—not work performed by other attorneys." Id. at 7. The Former Attorneys also argue that because "[a] BLF attorney signed the fee request submitted to this Court, which attested to the fees requested by each firm, including the Former Attorneys[,] [t]he BLF is estopped from now claiming [that the entirety of] those fees

[4] The Court notes that the Former Attorneys appeared to have confused prongs one and two of the Koons II test. See Former Attorneys Remand Br. at 5 (stating that "the BLF cannot satisfy the first prong of the Koons test" while referencing prong two of Koons II test).

as its own." Id. (citing Mem. in Support of Pl.'s Mot. for Attorneys' Fees at 28, ECF No. 151-8). The Former Attorneys note that "they spent considerable time and resources helping the BLF support the attorneys' fees requests." Id. at 7. Further, they contend that "[the] BLF led the Former Attorneys to reasonably believe that, if they assisted the BLF with the fee petition, they would recover fees for their compensable work. Now, however, the BLF claims entitlement to the very fees generated by that work." Id. at 8.

The Court agrees with the BLF that it has satisfied prong one of the Koons II test by demonstrating that "the fund [was] secured by the client through the efforts of the attorneys." Koons, 46 N.E. at 587.[5] This is demonstrated by the fact that the BLF was the attorney of record when the Consent Order in this case was issued, see Consent Order at 14 (Jan. 21, 2018), ECF No. 150, which "aided in the creation of the fund[,]" the BLF's Remand Br. at 7. Further, as noted by the BLF, the Former Attorneys stated that they did not "contest the charging lien with respect to the [$]150,000[,] id. at 3 (citing Transcript of September 18, 2024 Hearing 6:18–8:25, ECF No. 273), and they do so again in their remand brief[,] Former Attorneys' Remand Br. at 8–9 ("[t]he Former Attorneys have consistently conceded that the BLF has (or had) a valid claim to the portion of the fee award attributable to the BLF's work, i.e., $150,018.98.").

### B. Whether the BLF's Attorney Lien Attaches to All of the EAJA Award

The Circuit also noted that this Court "may also need to decide whether [the BLF]'s efforts to secure the fee-award entitle[s] [the BLF] to the amount of money that [the BLF] seeks [as] . . . the fee award is not a pool of money that was won through the efforts of a settlement or damages award, but rather is meant to compensate attorneys for specific billings." True the

[5] For the reasons stated in the Court's May 30, 2025 Memorandum Opinion, the Court finds that the BLF cannot satisfy Koons II's second prong, May 30, 2025 Mem. Op. at 15–16, a conclusion that the BLF does not contest in its brief. See generally the BLF's Remand Br.

Vote, 172 F. 4th at 27. While the Court agrees with the BLF that because its effort "merely 'aided' in securing the fund" and thus it has satisfied prong one of the Koons II test, it cannot agree with the BLF that its equitable charging lien applies to the entire EAJA award fee when the work in this case it provided "only secure[d] part of the fund." BLF Remand Br. at 6 (citing Macksville Gravel Co., 150 N.E. at 391 (citing Koons II, 46 N.E. at 587)) (emphasis added).

The BLF argues that the amount of a lien "is determined simply by the agreement of the parties to the contract for attorney's fees." Id. at 8 (citing Adams v. Lee, 82 Ind. 587, 590 (Ind. 1882)). The Court agrees that the BLF has a charging lien against the plaintiff in the amount of $505,003.38. However, that reality still does not answer the question as to whether the BLF is entitled to payment from the EAJA award in that entire amount pursuant to its lien.[6] The BLF also relies on the Seventh Circuit decision in Matters of Innkeepers of New Castle Inc., which held that "'[the] contract [i]s the basis for determining the extent of [the] lien,' and it is 'error to use a 'reasonable fee' standard in lieu'" thereof. Id. (citing Matters of Innkeepers of New Castle Inc., 671 F. 2d 221, 230 (7th Cir. 1982)). However, that case involved a statutory lien under an Indiana statute and not an effort based equitable charging lien like the one at issue here. Matters of Innkeepers of New Castle 671 F. 2d at 228. Further, Matters of Innkeepers of New Castle decided the question of how the provisions of "Bankruptcy Rules 219 and 220" would affect an attorneys' lien in regards to "the basis for determining the amount of the attorney fee award," id. at 227–28, which is a distinctly different statutory scheme from the EAJA.

It appears to the Court that the BLF contends that to establish its equitable charging lien it only needs to demonstrate that it "merely aided in securing the fund[,]" the BLF Remand Br. at

[6] Because the Court holds that the BLF's lien only applies to the portion of the EAJA award that was awarded based on the hours the BLF performed in this case, it need not decide whether the BLF's or the Former Attorneys' lien has priority.

6, but also argues that from the EAJA award it "is entitled to the full amount claimed in the lien[,]" id. at 19, regardless of the number of hours it actually contributed to the litigation. Additionally, the BLF included the hours the Former Attorneys performed in its motion for attorney fees, but now the BLF argues that its equitable charging lien requires that it be paid out of the EAJA award for those hours and that the Former Attorneys not be compensated for the services they provided from the EAJA award. See generally Plaintiff's Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Equal Access to Justice Act ("Pl.'s Mot. for Attorneys' Fees"), ECF No. 151.

What the BLF proposes is not in accordance with Indiana law. Under Indiana law, an equitable charging lien is "the equitable right of attorneys to have the fees and costs due to them for services in a suit secured out of the judgment or recovery in that particular suit." State Farm Mut. Auto. Ins. Co., 977 N.E. 2d 971, 977 (quoting Wilson v. Sisters of St. Francis Health Servs. Inc., 952 N.E. 2d 793, 796 (Ind. Ct. App. 2011)); see also Browne v. Waldo, No. 2:20-cv-196 (JVB-APR), 2023 WL 2482847 at *2 (N.D. Ind. Feb. 23, 2023) ("[T]he Court finds that equity does demand that, in the circumstances presented here, a lien be found to exist . . . ."); Miller v. Up in Smoke, Inc., No. 1:09-cv-242, 2011 WL 3022402, at *2 (N.D. Ind. July 22, 2011) (holding that "a charging lien is not dependent on possession but is based on natural equity—the client should not be allowed to appropriate the whole of the judgment without paying for the services of the attorney who obtained it.") (citing 23 Richard A. Lord, Williston on Contracts § 62:11 (4th ed.)) (citation modified). The key principle expressed in these cases is that the attorneys' lien is an equitable remedy to prevent a client from profiting from an attorney's labor without properly compensating attorneys for their work.

As the BLF notes in its brief, in "Koons II[,] the Indiana Court of Appeals stated concisely that the test asks whether the 'fund' in which attorneys claim to have a lien was 'secured or created through or as a result of their efforts, singly or in conjunction with the efforts of others[.]'" The BLF's Remand Br. at 6 (quoting Macksville Gravel Co., 150 N.E. at 391). And, in Macksville Gravel Co.,[7] the Indiana Court of Appeals affirmed the Indiana trial court in holding that the court was correct "in ordering said fund to be distributed pro rata among several claimants[,]" who contributed in the creation of the fund. 150 N.E. at 391 (emphasis added) (citing Koons II). The Indiana Court of Appeals reached this conclusion because "the contractors, each helped to create the fund in which they now ask to share along with other creditors who also helped to produce said fund . . . ." Id. In other words, the court found that because multiple parties were involved in the creation of a fund, they were each entitled to a share of the fund in the amount they contributed to the fund. This is the same situation here: a fund was created by the attorneys' fee awarded by the Court as a result of the efforts of multiple attorneys, as conceded by the BLF. The logic expressed by the Indiana Court of Appeals in Macksville Gravel Co. accords well with basic principles of fairness and equity. That is, if the services of multiple lawyers result in the creation of a fund—here the Court's attorneys' fee award—each should be paid out of the fund consistent with their contribution to the fund.

When the Court made its EAJA award to the plaintiff, it did so by calculating the total hours of legal service the plaintiff's attorneys submitted for payment, multiplied by the then

[7] The Court notes that although Macksville Gravel Co. interpreted the test outlined in Koons II, the case did not involve an attorneys' lien but instead involved various contractors and suppliers who sought payment from a fund distributed by the State's highway commission. Id. at 390. Nonetheless, the Court finds that the same principle expressed in the case applies to an attorney's lien that is sought to be enforced against a fund that was created by the efforts of multiple attorneys, as is the case here.

statutory rate,[8] with a reduction for billings related to the unsuccessful claims. Order (Aug. 15, 2023), ECF No. 245. The motion for the award of attorneys' fees was submitted by the BLF, and it documented the total number of legal service hours each of the attorneys provided in this case. See generally Mem. in Support of Pl.'s Mot. for Attorneys' Fees at 27–28, ECF No. 151-8. The BLF documented that it provided 815.60 adjusted hours,[9] Pl.'s Mot. for Attorneys' Fees Ex. 5 at 77, ECF No. 151-13, the Center for Constitutional Justice represented that it contributed 132 adjusted hours, Pl.'s Mot. for Attorneys' Fees Ex. 3 at 7, ECF No. 151-11, the Public Interest Law Firm represented that it provided 1999.54 adjusted hours, Pl.'s Mot. for Attorneys' Fees Ex. 2 at 156, ECF No. 151-10, and Foley and Lardner represented that it provided 1,060.50 adjusted hours, Pl.'s Mot. for Attorneys' Fees Ex. 9 at 242. As the Circuit noted, this Court's EAJA attorneys' fee award was not "a pool of money that was won through the efforts of a settlement or damages award, but rather is meant to compensate attorneys for specific billings." See True the Vote, 172 F. 4th at 27 (emphasis added).

At bottom, the BLF is attempting to enforce its equitable charging lien against the EAJA award that the Court ordered for the hours of legal services provided by the Former Attorneys. That request conflicts with the principle that, "an attorney's charging lien [only] attaches to the fruits of the attorney's skill and labor . . . [,]'" Miller, 2011 WL 3022402, at *4 (citing 2 Robert L. Rossi, Attorneys' Fees § 12.27 (3d ed.)) (citation modified). But here, the BLF is arguing that its equitable lien should also attach to the work performed by the Former Attorneys. As noted by the Former Attorneys, an equitable charging lien is "grounded on the principle of quantum

[8] The Court awarded attorneys' fees calculated at the prevailing market rates pursuant to the "bad faith enhancement" provision of the EAJA for fees incurred prior to September 20, 2013, for the reasons set forth in its September 23, 2020 Memorandum Opinion. See True the Vote III at 11 (citing Goodyear & Tire Rubber Co. v. Haeger, 581 U.S, 101 108 (2017).

[9] The hours were adjusted for travel time and for unsuccessful claims brought by the plaintiff. Pl.'s Mot. for Attorneys' Fees Ex. 1 at 1, ECF No. 151-9.

meruit[,]" id. at 6 (citing In re Estate of Johnson, 855 N.E.2d 686, 700 (Ind. Ct. App. 2006)), which is "an equitable doctrine that prevents unjust enrichment by permitting one to recover the value of work performed . . .[,]" In re Estate of Johnson, 855 N.E.2d at 700 (citing Galanis v. Lyons & Truitt, 715 N.E.2d 858, 861 (Ind. 1999)). In that regard, this litigation commenced in May of 2013, when the plaintiff filed its Complaint. See generally, Complaint, ECF No. 1. But, the BLF did not enter an appearance in this case until February of 2017, see Notice of Appearance (Feb. 22, 2017), ECF No. 124, almost four years after this case was initiated, and after multiple motions were filed and two memorandum opinions were issued by the Court, see, Memorandum Opinion (Aug. 7, 2014), ECF No. 97; Memorandum Opinion (Oct. 23, 2014), ECF No. 103. And, the BLF has not provided the Court with any legal authority from Indiana or any other jurisdiction to support the proposition that it would be equitable for it to receive compensation for services performed exclusively by the Former Attorneys.

The Indiana Supreme Court decided a case with similar facts involving an attorneys' fees dispute between a law firm that was previously discharged by a client and the client's new counsel. See generally Galanis, 715 N.E.2d. at 858. There, the Indiana Supreme Court held that a former attorney was entitled to quantum meruit relief even though the client had already discharged the former attorney, because the former attorney had "contributed significantly to the result." Id. at 861. The Indiana Supreme Court noted that "allowing a full contingency to a successor may be unreasonable . . . [as] the successor gets a windfall in the form of being relieved of the efforts contributed by the first lawyer but nonetheless receives a full contingent fee." Id. at 861. As acknowledged by the BLF, "charging liens [] are the equitable rights of attorneys to have the fees and costs due [to] them for service." The BLF's Remand Br. at 7 (quoting Bennett v. NSR, Inc., 553 N.E.2d 881, 882 n.1 (Ind. Ct. App. 1990)). And, as the

Indiana Supreme Court held, an attorney's charging lien will only be enforced as warranted "in equity and good conscience." Justice v. Justice, 16 N.E. 615, 617 (Ind. 1888); see also Koons II 46 N.E. at 587 (holding that an equitable charging lien should only be enforced "in good conscience."). The Court fails to appreciate how allowing the BLF to receive compensation for work performed by the Former Attorneys would be warranted "in equity and good conscience." Justice, 26 N.E. at 617.

The BLF also argues that "because an EAJA award and an attorney's lien represent entirely different calculations and obligations, the determination of how much [the] BLF is owed pursuant to its valid and superior equitable charging lien depends only upon the amount of the lien itself[.]" Id. at 19. This, according to the BLF, is because "the EAJA award belongs to the prevailing party, not the party's attorneys" and "an attorney's lien is precisely the sort of obligation that must be paid from an EAJA award." Id. at 13, 16. The Court agrees that it is well-settled law that an award of EAJA fees is "payable to the litigant" and not directly to the attorney. See Astrue v. Ratliff, 560 U.S. 586, 593 (2010). However, the plaintiff cites no authority for its proposition that "the EAJA award may be used to 'satisfy a pre-existing debt that the litigant owes[,]'" the BLF's Remand Br. at 15 (citing Astrue, 560 U.S. at 589), other than in the context of a "'[g]overnment offset to satisfy a pre-existing debt' to the United States[,]" id. As noted by the Former Attorneys, the BLF and the plaintiff have already reached a settlement agreement regarding the attorneys' fees for their services provided in this case as well as other cases in which the BLF represented the plaintiff. See The Bopp Law Firm, P.C. v. True the Vote, Inc., No. 2:23-cv-120, Complaint at ¶ 169 (S.D. Ind. 2023), ECF No. 1; The Bopp Law Firm, P.C. v. True the Vote, Inc., No. 2:23-cv-120, Report of Mediator (Mar. 3, 2025) (S.D. Ind. 2023), ECF No. 110.

While the BLF contends that the "Former Attorneys and [the] BLF ultimately want the same thing—to receive the amount claimed in their respective liens[,]" the BLF's Remand Br. at 19, it nonetheless "argues that it is owed more under its lien than under the portion of the EAJA award resulting from its submission because the latter compensates at lower hourly rates than [the BLF] billed under its agreement with True the Vote[,]" True the Vote, 172 F. 4th at 27. But, that can be the consequence for many attorneys who seek EAJA awards for their client's behalf, and, therefore is of no consequence here.

Therefore, while the Court agrees with the BLF that it does in fact have an equitable charging lien under Indiana law, the Court holds that the BLF's lien as applied to the Court's EAJA award is valued only in the amount of the legal services it provided to the plaintiff in this case which the Court previously determined to be $150,018.98 as provided pursuant to the EAJA.

## III. CONCLUSION

For the following reasons, the Court concludes that it must (1) grant in part the BLF's motion to enforce its equitable charging lien (2) and deny in part the BLF's motion to the extent that it seeks to enforce its equitable charging lien in the amount of $505,003.38 against the EAJA award as the Court finds that the BLF can only enforce its equitable charging lien to the amount of $150,018.98.

**SO ORDERED** this 9th day of November, 2026.[10]

REGGIE B. WALTON
United States District Judge

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.